QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
Margaret H.S. Shyr (Bar No. 300253)
margaretshyr@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Anne S. Toker (*pro hac vice*)
annetoker@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., <br><br> Plaintiff and Counterclaim-Defendant, <br><br> vs. <br><br> NATERA, INC, <br><br> Defendant and Counterclaim-Plaintiff. | Case No. 21-cv-04062-EMC <br><br> **NATERA'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OR ARGUMENT THAT THE ACCUSED NATERA ADVERTISEMENTS ARE LITERALLY FALSE** <br><br> **REDACTED FOR PUBLIC FILING** <br><br> **Pretrial Conference:** <br> Date: June 28, 2023 <br> Time: 3:00 pm <br> Ctrm: 5 – 17th Floor <br> Judge: Hon. Edward M. Chen <br><br> **Trial:** <br> Date: July 24, 2023 |

## I. INTRODUCTION

Natera moves *in limine* to exclude evidence or argument that the accused Natera advertisements are literally false. Guardant's claim at trial should be limited to a theory that Natera's advertisements—even though literally true—are misleading. The law of false advertising delineates between advertisements that are literally false and those that, even if not literally false, are misleading. Important evidentiary presumptions flow from this distinction, and the lines should not be blurred.

The Natera advertisements at issue cannot be "literally false" because they accurately present numbers from two studies: Reinert (related to Natera's Signatera product) and Parikh (related to Guardant's Reveal product). The advertisements were not "false on their face," as this Court previously found. Guardant's claim, however, is that it was false advertising to compare the studies in a single advertisement to send a message that Natera's product is superior to Guardant's product (the two products are head-to-head rivals in the marketplace). The gravamen of Guardant's claim therefore is that the advertisements were misleading by presenting one product as superior to a rival product based upon different studies.

Guardant, however, seeks to blur the important lines between the two theories of false advertising—literally false versus misleading—by arguing Natera's advertisements are literally false "by necessary implication." It should not be permitted to do so. To allow Guardant to assert literal falsity by "necessary implication" here would render any distinction between the literally false and the misleading meaningless. Indeed, the leading treatise MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION has criticized use of "necessary implication" to make hazy the otherwise clear distinctions in false advertising cases.

The "necessary implication doctrine" is a limited subspecies of literal falsity and is applied in two situations in the caselaw: where the target competitor is not mentioned (*Castrol*) or where two non-comparable products are compared (*Clorox* "apples-to-oranges" products cases). There is no dispute that Natera's and Guardant's products are comparable: they are both MRD blood tests used to detect colorectal cancer recurrence using cell-free DNA. Although this issue was not fully joined in summary judgment briefing, the line of cases using the "apples-to-oranges" analogy is

inapplicable here because in those cases the ***products*** were not comparable. Here, both products are apples. The dispute is whether the different studies are comparable.

Allowing Guardant to argue literally falsity by necessary implication would misapply the law, mislead the jury, and unfairly prejudice Natera. Allegations of literal falsity as to Natera's advertisements should be excluded under Federal Rules of Evidence 401, 402, and 403.

## II.   ARGUMENT

### A.   Natera's Advertisements Accurately Present the Studies' Data

There is no dispute that the data set forth in Natera's advertisements is literally true. As this Court recognized in its summary judgment order: "Here, all Natera's advertising statements at issue are directly derived from the Reinert study and the Parikh study. The numbers are not literally false on their face." Dkt. 326 at 13. Guardant's witnesses and expert admitted the same at deposition. *E.g.*, Ex. 3 (Heitjan Tr.) at 117:9-10 ("So I'm not saying -- I'm not saying that anybody calculated these numbers wrong."). The crux of Guardant's false advertising claim is that while it is ***true*** that the study data showed higher performance for Signatera versus Reveal in certain metrics, it is nevertheless ***misleading*** to imply that Signatera is therefore superior because there were certain differences between the studies. To make that claim, however, Guardant must follow the elements of the law for a claim under § 43(a) of the Lanham Act.

### B.   The Law Delineates Between Literal Falsity Versus Misleading

The first element of a false advertising case is "a false statement of fact by the defendant in a commercial advertisement about its own or another's product." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). To show falsity within the meaning of the Lanham Act, Guardant must show either (1) "that the statement was literally false, either on its face or by necessary implication" or (2) "that the statement was literally true but likely to mislead or confuse consumers." *Id.* (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993)).

Importantly, if an advertisement is ***literally*** false, the statements are presumed to deceive the purchasing public. The plaintiff is relieved of proving deception only if the falsity is so clear that that it "is '*indisputably* false' or 'bald-faced, egregious, *undeniable*, [and] over the top.'" *Bidi Vapor, LLC v. Vaperz LLC*, 543 F. Supp. 3d 619, 626-27 (N.D. Ill. 2021) (alteration in original)

(quoting *Schering-Plough Healthcare Prod., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512-13 (7th Cir. 2009)).  Literal falsity is a high standard and is distinguished from advertising statements that are "literally true but likely to mislead or confuse consumers."  *Southland Sod*, 108 F.3d at 1139.

In this case, because there is no dispute that Natera's advertisements accurately present the data from the Parikh and Reinert studies, Guardant should not be permitted to argue literal falsity and thus improperly gain the advantage of the presumption of deception.

### C. The Limited Doctrine of "Literally False by Necessary Implication" From *Castrol* Does Not Apply Here

Natera expects Guardant to argue that Natera's ads were literally false "by necessary implication."  By doing so, Guardant hopes to gain the advantage of the presumption of deception and confusing the jury on the elements of the claim.  It should not be permitted to do so.

The doctrine of literal falsity by necessary implication is a narrow sub-species of literally false claims that applies only in limited circumstances which are not present here.  As cited by the Ninth Circuit in the *Southland Sod* decision, the leading case on false by necessary implication is *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993).  In *Castrol*, Pennzoil advertised that its oil "outperforms any leading motor oil against viscosity breakdown" *Id.* at 941.  This claim was demonstrably false as compared to Castrol's oil.  The issue for falsity was that Pennzoil's advertisement did not mention Castrol by name.  In affirming summary judgment, the Third Circuit held that the necessary implication was that Pennzoil's oil outperformed Castrol's product in viscosity because the market knew Castrol was the leading competitor.  Thus, the implication at issue was the identity of the target competitor.

For Guardant, the "implication" it seeks to establish is wholly different from *Castrol*.  The "necessary implication" that Guardant seeks to assert is that Natera's product is superior to Guardant's.  But that is no different than asserting that the advertisements are misleading.  By transposing the necessary implication doctrine into a case of alleged misleading advertising, Guardant will eliminate any distinction between "literal falsity" versus "literally true but misleading."

The leading treatise recognizes the issue of using the doctrine of "necessary implication" to blur the lines as Guardant seeks to do here:

> For reasons never clearly explained, some courts will place in the "literally false" category claims that are not explicitly false, but are said to be literally false by "necessary implication." ***The problem is that this in-between category creates a hazy zone in the law between the otherwise discrete categories of "literally false" and "misleading." This false by "necessary implication" category smudges an otherwise clear line of demarcation between "literally false" and "misleading."*** In the author's view, it serves to make the rules of false advertising more unpredictable and uncertain, raising the costs of litigation.

Ex. 16 (J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:54.50 (5th ed. 2017) (emphasis added)).  In other words, McCarthy warned that, because of the blurred borders created by the false by necessary implication doctrine, claims that are not explicitly false but misleading could be treated as literally false claims.

### D. This Court's Summary Judgment Decision Should Not Prevent the Result Sought Here Because the Products Are Comparable.

As described above, this Court established that the data in Natera's advertisements "are not literally false on their face." Dkt. 326 at 13.  Natera expects Guardant to argue that this Court ruled that a reasonable jury could find that Natera's statements—though not false on their face—could be literally false by necessary implication.  Natera submits, however, that this issue was not properly joined in summary judgment briefing, and requests this Court address the law and treatise that Natera sets forth in this Motion.  The caselaw in the summary judgment order addressed a situation not present here: two ***products*** that are not comparable.  Here, Natera's and Guardant's products ***are*** comparable; they are direct competitors—both are blood tests for cell-free DNA, both are intended for the same patient population (early-stage CRC patients), both detect the presence or absence of minimal residual disease (MRD), and both are used in post-treatment and surveillance settings.  Guardant has never argued that the basis for its false advertising claims is that the ***tests themselves*** (i.e., Signatera and Reveal) are not comparable. Nor could it. *See, e.g.*, Ex. 17 (Sood Tr.) at 105:15-106:6 (emphasis added).  The issue of comparison in this current case is not the products, but the studies used to validate each product.

On summary judgment, this Court ruled Guardant *may* be able to establish falsity using an "apples-to-oranges" theory of falsity for false by necessary implication, citing *Clorox Co. v. Reckitt Benckiser Group PLC*, 398 F. Supp. 3d 623 (N.D. Cal. 2019). Dkt. 326 at 13-14. Natera respectfully submits that the *Clorox* case is inapplicable because it was the products at issue that were not comparable—and the non-comparability of the products themselves was the basis of the alleged falsity. *Id.* at 636-39 (Clorox versus Lysol). In other words, the "apples-to-oranges" comparison in *Clorox* was the products themselves. For Guardant, the apples-to-oranges analogy does not work because Signatera and Reveal *are* comparable products.

Similarly, this Court's order also cited *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192 (3d Cir. 2014), but that case also involved non-comparable products. *Id.* at 202. The products-at-issue were steam irons for laundry, and the *Groupe* court found that products were not comparable because they had substantially different price points. *Id.*

The third and final case cited in the summary judgment order also compared different products: *Doctor's Associates, Inc. v. QIP Holder LLC*, No. 3:06-cv-1710(VLB), 2010 WL 669870 (D. Conn. Feb. 19, 2010). There, the advertising at issue was a side-by-side of a Subway sandwich next to a Quiznos sandwich, with the ad claiming Quiznos has "2x the meat." *Id.* at *17. The issue in *Doctor's Associates* was that Quizno's compared its premium sandwich to the entry level Subway sandwich. *Id*. The two products were not comparable.

None of these ads in the cases discussed above—*Castrol*, *Clorox*, and *Doctor's Associates*—involved a comparison of different metrics that were accurately reported from cited studies. Rather, they all involved simple comparisons between consumer products that were not in the same category—they were true "apples-to-oranges" cases. In similar circumstances involving advertising comparing two studies, courts have held that where "the conclusions reported [in the two studies] are not literally false, and are based upon reliable tests, the issue becomes whether a cross-study comparison of the two tests ***is likely to mislead and confuse consumers***." *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 455 (D. Conn. 1994) (internal quotation marks and citation omitted). Comparing (accurate) data from different ***scientific studies*** is fundamentally different from comparing consumer products. Scientific studies are much more multi-faceted and complex, and when

comparing them there is no necessary implication that the *studies* are "otherwise equivalent," as in the case of product comparisons. The audience reading scientific studies—here, highly educated, data-driven oncologists—would readily understand there are differences between two studies beyond the compared data metrics. *Id.* ("[P]hysicians are presumably aware of the inherent limitations in cross study comparisons . . . ."). Guardant has never suggested otherwise.

Indeed, the record confirms the cited studies, Parikh and Reinert, are directly comparable despite the alleged differences. The Parikh Study refers repeatedly to producing "comparable" performance "with previously reported tumor-informed approaches," and cites the Reinert Study as one of those tumor-informed approaches. Dkt. 90-1 at ECF page 6 of 11. Guardant itself compared the two studies to one another, both internally and externally. For example, Guardant relied on the comparability of the two studies when seeking Medicare coverage for Reveal. In attempting to demonstrate Reveal has equivalent or superior performance compared to the test already approved for coverage (Signatera), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Its expert likewise testified the comparison was reasonable, and neither false nor misleading. Ex. 3 (Heitjan Tr.) at 164:3-13, 166:4-8, 167:3-10.

In light of the McCarty Treatise, and the law's clear delineation between literal falsity and misleading advertisements, Natera respectfully asks that this Court revisit the applicability of the literal falsity by necessary implication doctrine to Guardant's claims. To permit Guardant to proceed under a theory of literal falsity by necessary implication would permit an elimination of the misleading theory of liability and permit Guardant to avoid proving deception—a normally critical element of a false advertising case.

### III. CONCLUSION

For the reasons stated above, Natera's motion *in limine* should be granted.

|   |   |   |
|---|---|---|
| 1 | DATED:  May 26, 2023 | Respectfully submitted, |
| 2 |   | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By  */s/ Kevin P.B. Johnson*
Kevin P.B. Johnson
Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

| | |
|---|---|
| 1 | **Saul Perloff (157092)** |
| | saul.perloff@shearman.com |
| 2 | **Katharyn Grant** *(pro hac vice)* |
| | kathy.grant@shearman.com |
| 3 | **Andre Hanson** *(pro hac vice)* |
| | andre.hanson@shearman.com |
| 4 | **Olin "Trey" Hebert** *(pro hac vice)* |
| | trey.hebert@shearman.com |
| 5 | **SHEARMAN & STERLING LLP** |
| | 300 W. Sixth Street, 22nd Floor |
| 6 | Austin, Texas 78701 |
| | Telephone   (512) 647-1900 |
| 7 | |
| 8 | **Lillian Mao (267410)** |
| | lillian.mao@shearman.com |
| | **SHEARMAN & STERLING LLP** |
| 9 | 1460 El Camino Real, 2nd Floor |
| | Menlo Park, CA 94025 |
| 10 | Telephone   (650) 838-3600 |
| 11 | **Christopher LaVigne** *(pro hac vice)* |
| | christopher.lavigne@sherman.com |
| 12 | **SHEARMAN & STERLING LLP** |
| | 599 Lexington Ave |
| 13 | New York, NY 10022 |
| | Telephone   (212) 848-4000 |
| 14 | |
| 15 | **Attorneys for Plaintiff/Counter-claim defendant GUARDANT HEALTH, INC.** |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| GUARDANT HEALTH, INC., | | Case No. 3:21-cv-04062-EMC |
| | Plaintiff, | **PLAINTIFF GUARDANT HEALTH, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT NATERA, INC'S MOTION IN LIMINE NO. 1: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT THAT THE ACCUSED NATERA ADVERTISEMENTS ARE LITERALLY FALSE** |
| vs. | | |
| NATERA, INC., | | |
| | Defendant. | |
| | | **Pretrial Conference:** |
| | | Date:           June 28, 2023 |
| | | Time:          3:00 p.m. |
| | | Place:         Courtroom 5 |

Plaintiff/Counter-defendant Guardant Health, Inc. ("Guardant") respectfully opposes Defendant/Counter-plaintiff Natera, Inc.'s Motion *in Limine* No. 1, "to exclude evidence or argument that the accused Natera advertisements are literally false" ("Natera MIL No. 1").

## I. INTRODUCTION

Following extensive briefing and oral argument, the Court denied Natera's summary judgment motion on the issue of literal falsity by necessary implication. *See* Dkt. 326 (Mar. 22, 2023) at 30 ("In sum, a reasonable jury could find that Guardant presented sufficient evidence for a jury to find that Natera's advertising statements regarding 'presurgical sensitivity,' 'failure rate,' 'serial longitudinal sensitivity,' 'diagnostic lead time,' 'PPV, NPV, and hazard ratio,' and 'CHIP filter' were literally false by necessary implication.") Reciting the same arguments, evidence, and some of the same cases it offered on summary judgment, Natera impermissibly uses its Motion *in Limine* No. 1 to seek reconsideration, asking: "that this Court revisit the applicability of the literal falsity by necessary implication doctrine to Guardant's claims." Natera MIL No. 1 at 6.

Natera's use of its MIL No. 1 to move for reconsideration of the Order on summary judgment is wholly improper: "A motion *in limine* is not the proper vehicle by which to seek reconsideration." *Mindlab Media, LLC v. LWRC Int'l, LLC*, No. 11-cv-3405, 2013 WL 1688309, at *2 (C.D. Cal. Apr. 15, 2013) ("Defendant's motion is without merit. First, the Court already considered and rejected defendant's argument in ruling on plaintiff Mindlab's motion for summary judgment.") In fact, this Court's Local Rules prescribe specific procedures and standards for motions to reconsider, N.D. Cal. LR 7.9, none of which Natera even tried to follow or meet.

To the extent the Court considers the dubious merits of Natera's procedurally frivolous motion, Natera fails to show (and again, does not try to show) that the Court improperly construed and applied controlling Ninth Circuit precedent on the doctrine of literal falsity by necessary implication. Natera's contention that the Court misunderstood persuasive authority—including this Court's own prior ruling in *Clorox Co. v. Reckitt Benckiser Grp. PLC,* 398 F. Supp. 3d 623 (N.D. Cal. 2019)—is simply wrong. Each of these cases was properly construed by the Court in its summary judgment Order. Each of these cases considered comparative advertising that was literally false by necessary implication because the advertising withheld critical information that, had it been

1   reported, would have shown that the ads' claims of superiority were untrue. So too here: Natera's

2   failure to disclose, for example, that the Parikh Study samples were between

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 220 at 14-15, or that Natera's "lead time"

4   comparison relied on dissimilar standards of care between Denmark and the U.S., and also

5   compared the earliest positive result with Signatera to the latest positive result with Reveal, *id.* at

6   20-21, renders its comparative ads' claims of superiority literally false by necessary implication.

7        Natera MIL No. 1 is procedurally defective and substantively meritless. It should be denied.

8/9  **II.   NATERA'S ATTEMPT TO USE A MOTION *IN LIMINE* TO RE-ARGUE SUMMARY JUDGMENT SHOULD BE REJECTED**

10       The law of the case doctrine "generally precludes reconsideration of 'an issue that has

11  already been decided by the same court, or a higher court in the identical case.'" *Rocky Mountain*

12  *Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019). "The law of the case doctrine exists

13  so that, for important policy reasons, parties in such situations are not allowed 'a second bite at the

14  apple.'" *Thomas v. Hickman*, No. 06-cv-215, 2008 WL 2233566, at *3 (E.D. Cal. May 28, 2008);

15  *see also United States v. Lewis*, 611 F.3d 1172, 1179 (9th Cir. 2010) (law of the case doctrine

16  "'expresses the practice of courts generally to refuse to reopen what has been decided'").

17       Here, Natera expressly seeks reconsideration of this Court's Order denying its motion for

18  summary judgment on the application of the doctrine of literal falsity by necessary implication. *See*

19  Natera MIL No. 1 at 6 ("Natera respectfully asks that this Court revisit the applicability of the literal

20  falsity by necessary implication doctrine to Guardant's claims.") But in this District, such a request

21  is controlled by Local Rule 7.9, which in the first instance requires prior leave of the Court: "No

22  party may notice a motion for reconsideration without first obtaining leave of Court to file the

23  motion." N.D. Cal. L.R. 7.9(b).To even ask for permission, Natera would have to show:

24/25/26  1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

27/28  (2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

LR 7.9(b) (1)-(3). Further, "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party" on the order at issue. LR 7.9(c).[1]

Natera fails to comply with any aspect of LR 7.9. It did not seek prior leave of this Court before bringing its MIL No. 1; it does not cite any new material facts or a change of the law; and it cites no "manifest failure" by the Court to consider materials facts or dispositive legal arguments.

Natera's contention that "the issue" of literal falsity by necessary implication "was not properly joined in summary judgment briefing," Natera MIL No. 1 at 4, is untrue; Natera entitled a section of its opening brief as: "Guardant Cannot Show Any Literally False Claims by Necessary Implication." Dkt. 220 at 8-10. Indeed, in its MIL, Natera recites the exact same arguments, evidence, and at least some of the cases it raised in its summary judgment motion and reply:

| **Natera MIL No. 1** | **Natera's summary judgment** |
|---|---|
| "The Natera advertisements at issue cannot be 'literally false' because they accurately present numbers from two studies." MIL No. 1 at 1. | "it is undisputed that the Natera statements at issue accurately report study data from the cited sources and are thus literally true" Dkt. 220 at 1 (Natera's summary judgment motion). |
| [citing] (Heitjan Tr.) at 117:9-10 ("So I'm not saying--I'm not saying that anybody calculated these numbers wrong."). MIL No. 1 at 2. | [citing] Heitjan Tr. at 116:20-117:11 ("*I'm not saying – I'm not saying that anybody calculated these numbers wrong.*"), Dkt. 281 at 5 (Natera's summary judgment reply). |
| "The plaintiff is relieved of proving deception only if the falsity is so clear that that it 'is 'indisputably false' or 'bald-faced, egregious, undeniable, [and] over the top.' *Bidi Vapor, LLC v. Vaperz LLC,* 543 F. Supp. 3d 619, 626-27 (N.D. Ill. 2021) (alteration in original) (quoting *Schering-Plough Healthcare Prod., Inc. v. Schwarz Pharma, Inc*., 586 F.3d 500, 512-13 (7th Cir. 2009))." MIL No. 1 at 2-3. | "Courts have recognized that 'a literally false statement is one that is '*indisputably* false' or 'bald-faced, egregious, undeniable, [and] over the top.' *Bidi Vapor, LLC v. Vaperz LLC*, 543 F. Supp. 3d 619, 626 (N.D. Ill. 2021) (quoting *Schering-Plough Healthcare Prod., Inc. v. Schwarz Pharma, Inc*., 586 F.3d 500, 513 (7th Cir. 2009))." Dkt. 220 at 4 (Natera's summary judgment motion). |

Nor are these procedural failings somehow remedied because Natera styled this as a motion *in limine*: "A motion *in limine* is not an opportunity to relitigate a summary judgment order." *Miranda v. U.S. Sec. Assoc., Inc.*, No. 18-cv-734, 2019 WL 2929966, at *3 (N.D. Cal. Jul. 8, 2019) (rejecting "Defendant's arguments and citations to parole evidence" as "a transparent attempt to

---

[1] Notably, "motions to reconsider are generally disfavored, and are not granted absent a change in the law, newly discovered evidence, or manifest error or injustice." *Mateo-Sandoval v. Cty of Sonoma*, No. 11-cv-5817, 2013 WL 415588, at *1 (N.D. Cal. Jan. 31, 2013) (denying motion to reconsider) (citing *School Dist. No. 1J v. ACandS, Inc.*, 5 F3d 1255, 1263 (9th Cir. 1993)).

1   relitigate issues already decided at summary judgment.") (citing *Dominguez v. City of Los Angeles*,
2   2018 WL 6164278, at *11 (C.D. Cal. Oct. 9, 2018); *Atencio v. TuneCore, Inc.*, 2018 WL 6265073,
3   at *5 (C.D. Cal. Nov. 13, 2018) ("The parties may not relitigate the summary judgment motion
4   using motions in limine."); *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214315, at *3 n.31
5   (C.D. Cal. Mar. 7, 2011) (stating in a motion *in limine* order that the court "will not indulge
6   plaintiff's efforts to revive its unsuccessful summary judgment arguments"); *accord*, *Mindlab*
7   *Media*, 2013 WL 1688309, at *2; *see also Mims v. Federal Express Corp.*, 13-cv-3947, 2015 WL
8   12711651, at *3 (C.D. Cal. Jan. 15, 2015) ("a motion *in limine* is not a substitute for summary
9   judgment and is not the appropriate venue to determine whether FedEx has sufficient evidence to
10  succeed on its defense."); *Quinn v. Fresno Cty. Sheriff,* No. 1:10-cv-1617, 2013 WL 12309356, at
11  *1 (E.D. Cal. Oct. 9, 2013) ("Plaintiff's motion *in limine* is not a proper motion *in limine*; instead,
12  it is a motion that seeks reconsideration of the Court's ruling on the parties' prior motions for
13  reconsideration. This motion *in limine* is therefore DENIED.")

Because Natera's Motion is procedurally improper, it should be denied.

### III.    THE COURT DID NOT MISREAD OR MISAPPLY ANY CASES

As Natera begrudgingly concedes, Natera MIL No. 1 at 2, the Ninth Circuit adopted the literal falsity by necessary implication doctrine in *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139-40 (9th Cir. 1997).[2] Natera does not argue the Court misapplied this, or any, Ninth Circuit authority. Indeed, Natera cites *Southland Sod* only in passing, and does not address its explanation as to why the ads at issue there could be found literally false by necessary implication:

> First, a reasonable jury could conclude that the bar chart is in fact intended to represent year-round growth characteristics of mature turfgrass. Relevant in such a determination is the following statement, located directly above the bar chart: "PROOF THAT BONSAI DWARF GROWTH HABIT SAVES TIME AND MONEY." This claim would be nonsensical if the bar chart were only intended to

---

[2] Natera's extensive citation to the McCarthy treatise, Natera Mil No. 1 at 1, 4, & 6, illustrates that its disagreement is with the law of the Ninth Circuit rather than this Court's ruling. McCarthy is overtly hostile to any application of the doctrine, referring to it as "hazy" and "oxymoronic." McCarthy on Trademarks & Unfair Competition at §27:54.50. While the treatise authors are welcome to their opinion, the Ninth Circuit is one of those courts which adopted and applies the doctrine in Lanham Act false advertising cases. E.g., *NEO4J, Inc. v. PureThink, LLC*, No. 21-16029, 2022 WL 781037, at *1 (9th Cir. Mar. 14, 2022); *Aussie Nads U.S. Corp.,* 41 Fed. Appx. 977, 978 (9th Cir. 2002); *Core-Vent v. Nobel Indus. Sweden A.B.*, 163 F.3d 605, n.3 (9th Cir. 1998).

> represent the turf's growth characteristics during the spring months in the first year following germination. If the jury were to find that the bar chart is intended to represent year-round growth characteristics, Plaintiffs' evidence, as well as Ledeboer's own admissions regarding Bonsai's unique spring growth characteristics, provides adequate support for the conclusion that this representation is literally false.

*Southland Sod,* 108 F.3d at 1144.

This Court's summary judgment analysis is entirely consistent with *Southland Sod.* With respect to presurgical sensitivity as one example, a reasonable jury could find that Natera's advertising failed to disclose that both Signatera and Reveal call for the same amount of blood for testing, that lower sample size adversely impacts sensitivity (and does so similarly for both assays), and that the Reinert Study samples were ███████████████, while the Parikh Study samples were as low as 1 mL, and at most 4 mL of plasma. Dkt. 326 at 14-15 (Order on summary judgment). On these facts, a jury also could find that Natera's claims of superior pre-surgical sensitivity, based on its apples-to-oranges comparison of data from unequal test conditions, are literally false by necessary implication. *Id.* at 15 ("Instead of comparing truly comparable metrics, Natera compared the sensitivity of two tests using different amounts of plasma.") As in *Southland Sod,* it in fact would be "nonsensical" for anyone to draw a different conclusion from Natera's ads.

Natera nevertheless insists, based on non-binding authority cited in this Court's Order, that "an 'apples-to-oranges' analogy is inapplicable here because in those cases the products were not comparable," because "[h]ere, both products are apples." Natera MIL No. 1 at 1-2; *id.* at 5 ("For Guardant, the apples-to-oranges analogy does not work because Signatera and Reveal *are* comparable products.")[3] Natera in effect argues the Lanham Act draws a sharp line prohibiting the use of necessarily implied falsehoods to claim that non-comparable products are comparable, but would allow Natera to rely on necessarily implied falsehoods to tout its comparable Signatera as superior to Reveal despite undisclosed but key differences in the studies cited in its ads.

Natera's argument makes no sense, and is unsupported by any of the cases it would have the Court reconsider. To begin, Natera's claim that this Court misunderstood its own analysis in

---

[3] Natera's failure to argue the Court misapplied *controlling* authority itself is sufficient to warrant denial of a reconsideration motion. *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-5623, 2020 WL 5653153, at *5 (N.D. Cal. Sept. 23, 2020) ("the Court's failure to consider non-controlling authority does not constitute a manifest failure to consider dispositive legal arguments").

1    *Clorox* is befuddling, as surely this Court is in the best position to construe its own precedent. In
2    that case, this Court assessed ads comparing Lysol's cleaning products to Clorox's products, and
3    held a jury could find that several were literally false by necessary implication as unfair, "apples to
4    oranges" comparisons. *Clorox*, 398 F. Supp. 3d at 640. As here, the ads were literally false by
5    necessary implication because they claimed superiority only by concealing key information. E.g.,
6    *id.* ("The key difference is between wipes and sprays, not Clorox and Lysol.") So too here; Natera
7    can only claim that its assay has superior presurgical sensitivity by concealing that the Reinert
8    Study used samples that were ████████ than those used in the Parikh Study, and that this
9    difference mattered. While Natera now insists that Signatera and Reveal are comparable products,
10   and the dispute "is whether the different studies are comparable," Natera MIL No. 1 at 2, Natera
11   fails to explain why this distinction could possibly allow it to engage in literally false advertising
12   by necessarily implying that the test conditions were comparable. If anything, the use of dissimilar
13   tests to falsely claim superiority of one comparable product over another is even more
14   fundamentally dishonest than comparing two products which, on their face, appear to be dissimilar.

15         Nor does *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993), cited by Natera, compel
16   a different result. There, the Third Circuit held that Pennzoil's ads for its motor oil were literally
17   false, both facially and by necessary implication. The ads first claimed that "viscosity breakdown
18   leads to engine failure. Pennzoil then claim[ed], albeit falsely, that it outperforms *any leading motor*
19   *oil* against viscosity breakdown." *Id.* at 947 (emphasis in original). "The implication is that Pennzoil
20   outperforms the other leading brands with respect to protecting against engine failure, because it
21   outperforms them in protecting against viscosity breakdown, the cause of engine failure." This
22   necessarily implied message of superiority was literally false. *Id.* at 947. And again, there is no
23   inconsistency in the Third Circuit's application of the necessary implication doctrine on the specific
24   facts of that case and this Court's well-reasonable application on the facts here.[4]

---

[4] Natera inaptly argues *Castrol* can be distinguished because "[t]he 'necessary implication' that Guardant seeks to assert is that Natera's product is superior to Guardant's. But that is no different than asserting that the advertisements are misleading." Natera MIL No. 1 at 3. As Natera concedes, *id.* at 2, the Ninth Circuit distinguishes between a statement which is literally false by necessary implication and one which is literally true but misleading. *Southland Sod*, 108 F.3d at 1139. And here, the "crux" of Guardant's claims is that the unambiguous message implicitly conveyed by

In *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192 (3d Cir. 2014), the Third Circuit revisited the necessary implication doctrine, again applied in the context of a claim of superiority in comparative advertising. The District Court had held that an ad claiming that a steaming iron had the "#1 MOST POWERFUL STEAM" was literally false by necessary implication: "Recognizing that the reference to this claim explicitly restricts the claim to comparisons to steam irons in the same price range and that Rowenta steam irons are in a higher price range, the District Court still found an unambiguous message of superiority over Rowenta steam irons conveyed by necessary implication due to the claim's close proximity to the 'MORE POWERFUL STEAM vs. Rowenta" claim." *Id.* at 199. The Third Circuit agreed and affirmed:

> The question here is whether, "based on a facial analysis of the product name or advertising, the consumer will unavoidably receive a false message." Here, the answer is yes. The "# 1 MOST POWERFUL STEAM" claim appears directly above the "MORE POWERFUL STEAM vs. Rowenta" claim, and the proximity of the two claims necessarily and unavoidably conveys a message that Shark steam irons offer the most powerful steam, even when compared to Rowenta steam irons.

*Id.* at 202 (citations omitted). And finally, in *Doctor's Assoc., Inc. v. QIP Hodler LLC*, No. 3:06-cv-1710, 2010 WL 669870 (D. Conn. Feb. 19, 2010), the court held Quiznos' claims of offering "twice the meat" in its sandwiches compared to Subway's was literally false by necessary implication because both fast food chains offered comparable sandwiches at comparable prices:

> Despite knowing that Subway offered a more comparable double portion of meat on its Cheesesteak sandwich, Quiznos opted to air the Cheesesteak Commercial comparing a sandwich it had specifically designed to contain a double portion of meat to a Subway sandwich with a single portion of meat. The Commercial did not disclose that Subway offered a double portion of meat.

*Id.* at *17. Again, as here, the issue lay in the advertisers' attempts to claim superiority in a comparative ad without sufficiently disclosing key information that belied that claim to superiority.

The Court extensively and accurately summarized the evidence and law, and properly held this is an issue for the jury. Nothing in Natera's MIL supports, much less compels, a different result.

### IV. CONCLUSION

The Court should deny Natera MIL No. 1 in its entirety.

---

Natera's ads is not only that Signatera is "superior" to Reveal, but that the tests Natera's ads cite establish that superiority. The jury may (and likely will) find that Natera's necessarily implied message is literally false for the reasons extensively catalogued by the Court. Dkt. 326 at 14-26.

Dated: June 5, 2023

**SHEARMAN AND STERLING, LLP**

By: /s/ *Saul Perloff*
     Saul Perloff

Attorneys for Plaintiff/Counter-Defendant
GUARDANT HEALTH, INC.