| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| Kevin P.B. Johnson (Bar No. 177129) | Anne S. Toker (*pro hac vice*) |
| kevinjohnson@quinnemanuel.com | annetoker@quinnemanuel.com |
| Victoria F. Maroulis (Bar No. 202603) | 51 Madison Avenue, 22nd Floor |
| victoriamaroulis@quinnemanuel.com | New York, New York 10010-1601 |
| Andrew J. Bramhall (Bar No. 253115) | Telephone: (650) 801-5000 |
| andrewbramhall@quinnemanuel.com | Facsimile: (650) 801-5100 |
| Margaret H.S. Shyr (Bar No. 300253) | |
| margaretshyr@quinnemanuel.com | |
| 555 Twin Dolphin Drive, 5th Floor | |
| Redwood Shores, California 94065-2139 | |
| Telephone: (650) 801-5000 | |
| Facsimile: (650) 801-5100 | |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., <br><br> Plaintiff and Counterclaim-Defendant, <br><br> vs. <br><br> NATERA, INC, <br><br> Defendant and Counterclaim-Plaintiff. | Case No. 21-cv-04062-EMC <br><br> **NATERA'S MOTION IN LIMINE NO. 4 TO EXCLUDE ARGUMENT OR EVIDENCE THAT THE JOINT STIPULATION HAS PREVENTED GUARDANT FROM ENGAGING IN CORRECTIVE ADVERTISING** <br><br> **Pretrial Conference:** <br> Date: June 28, 2023 <br> Time: 3:00 pm <br> Ctrm: 5 – 17th Floor <br> Judge: Hon. Edward M. Chen <br><br> **Trial:** <br> Date: July 24, 2023 |

## I.   INTRODUCTION

Natera moves *in limine* to exclude any argument that the parties' Joint Stipulation (Dkt. 25-3) has prevented Guardant from engaging in corrective advertising.  This (untrue) assertion is irrelevant to Guardant's damages calculations, and permitting Guardant to make it will unduly prejudice Natera, confuse and mislead the jury, and waste time.  Reference to, or introduction of the Joint Stipulation, including to argue it has prevented Guardant from conducting corrective advertising, should be excluded.

## II.   ARGUMENT

Guardant's damages expert has suggested that the parties' Joint Stipulation has prevented Guardant's from performing corrective advertising to date.  *See* Dkt. 241-8 (Malackowski Rpt.) at 59 (the Joint Stipulation ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉[1] Dkt. 243 at 5-6 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  But this assertion is not supported by a shred of evidence.  Tellingly, at no point did Guardant seek to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  In fact, Guardant vehemently opposed Natera's efforts to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Dkt. 144-2, 151.  Guardant should not be permitted to use this made-for-litigation argument to weaponize the parties' Joint Stipulation.  Allowing Guardant to do so would only serve to confuse and mislead the jury and unduly prejudice Natera.

The Joint Stipulation has no place in this jury trial at all; but Guardant certainly should not be allowed to use it as a sword and a shield.  Guardant arrives at its exorbitant ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, including during the time period that the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  In other words, Guardant *credits* Natera's corrective advertising activities, but then wants to tell the jury that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  But the Joint Stipulation has the same effect on both parties, and it does not prevent either party from truthfully discussing

---

[1] Mr. Malackowski's "legal interpretation" of the Stipulation is improper and outside his expertise.

1  or criticizing studies and data reported for either Signatera or Reveal.  Dkt. 25-3 at 2.  Indeed, it was
2  not even in place until June 2021, months after Guardant claims Natera began making
3  false/misleading statements.

4        Permitting Guardant to baselessly argue or otherwise suggest that it was somehow ▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is highly likely to unduly prejudice
6  Natera, mislead the jury and result in a distracting side show in this already complex trial.  First,
7  such an argument will not only mislead the jury into (wrongly) believing that the Joint Stipulation
8  unfairly and unilaterally ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  This threat is not imaginary: Guardant's damages expert
10 has stated Guardant ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Dkt. 241-8 at 23; *id*.
11 at 39 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮  Of course, Guardant's "belief" is irrelevant and wrong—Natera has not ▮▮▮▮
13 ▮▮▮▮▮▮▮ and the Court has never found otherwise.  But a suggestion to the contrary would
14 surely inflame the jury into believing that Natera is a bad actor, which would necessarily unduly
15 prejudice Natera.  Indeed, Guardant not only wants to suggest that Natera ▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See, e.g.*, Ex. 4 (Malackowski Dep. Tr.) at 154:25-
18 155:23, 161:14-162:1 (testifying that Guardant did not want to ▮▮▮▮▮▮▮▮▮▮ by engaging
19 in "mitigating efforts").  Allowing Guardant to make this inaccurate assertion will not only unduly
20 prejudice Natera, it will require Natera to introduce the Joint Stipulation to show the terms and thus
21 that it does not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Not only will that distract and confuse the
22 jury and waste time, introducing the Joint Stipulation into evidence is itself unduly prejudicial to
23 Natera.  The Stipulation expressly references ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which was never filed.  Dkt. 25-3 at 3.

25
26
27
28

Guardant should not be permitted to weaponize the Joint Stipulation to paint Natera as a bad actor and (wrongly) suggest its failure to mitigate its purported harm was justified by a Court Order. Evidence of or reference to Joint Stipulation should be excluded.

## III. CONCLUSION

For at least the reasons stated above, Natera's motion *in limine* should be granted.

DATED: May 26, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Kevin P.B. Johnson*
Kevin P.B. Johnson
Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

| | |
|---|---|
| 1 | **Saul Perloff (157092)** |
| | saul.perloff@shearman.com |
| 2 | **Katharyn Grant** *(pro hac vice)* |
| | kathy.grant@shearman.com |
| 3 | **Andre Hanson** *(pro hac vice)* |
| | andre.hanson@shearman.com |
| 4 | **Olin "Trey" Hebert** *(pro hac vice)* |
| | trey.hebert@shearman.com |
| 5 | **SHEARMAN & STERLING LLP** |
| | 300 W. Sixth Street, 22nd Floor |
| 6 | Austin, Texas 78701 |
| | Telephone   (512) 647-1900 |
| 7 | |
| | **Lillian Mao (267410)** |
| 8 | lillian.mao@shearman.com |
| | **SHEARMAN & STERLING LLP** |
| 9 | 1460 El Camino Real, 2nd Floor |
| | Menlo Park, CA 94025 |
| 10 | Telephone   (650) 838-3600 |
| | |
| 11 | **Christopher LaVigne** *(pro hac vice)* |
| | christopher.lavigne@sherman.com |
| 12 | **SHEARMAN & STERLING LLP** |
| | 599 Lexington Ave |
| 13 | New York, NY 10022 |
| | Telephone   (212) 848-4000 |
| 14 | |
| | **Attorneys for Plaintiff/Counter-claim** |
| 15 | **defendant GUARDANT HEALTH, INC.** |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| GUARDANT HEALTH, INC., | | Case No. 3:21-cv-04062-EMC |
| | Plaintiff, | **PLAINTIFF GUARDANT HEALTH, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT NATERA, INC'S MOTION IN LIMINE NO. 4: TO EXCLUDE ARGUMENT OR EVIDENCE THAT THE ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ HAS PREVENTED GUARDANT FROM ENGAGING IN CORRECTIVE ADVERTISING** |
| vs. | | |
| NATERA, INC., | | |
| | Defendant. | |
| | | **Pretrial Conference:**<br>Date:          June 28, 2023<br>Time:          3:00 p.m.<br>Place:         Courtroom 5 |

1    Plaintiff/Counter-defendant Guardant Health, Inc. hereby opposes Defendant/Counter-
2 plaintiff Natera, Inc.'s Motion *in Limine* No. 4, to "Exclude Argument or Evidence that the ▮
3 ▮▮▮ has Prevented Guardant from Engaging in Corrective Advertising" ("MIL No. 4").

**I.      INTRODUCTION**

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮ Dkt. 25-3. For two years, ▮▮▮ served as Natera's shield, ▮▮ ▮▮▮ including by showing that ▮▮ ▮▮▮ ▮▮▮ But now, Natera wants to use it a sword. Natera intends to tell the jury that Guardant had a duty to "mitigate" its injuries by engaging in the very advertising ▮▮▮, while at the same time preventing Guardant from explaining *why* it was unable to correct Natera's falsehoods. Natera cites no authority for its argument, and merely insists the ▮▮▮ is "irrelevant" and would "prejudice" it. MIL No. 4 at 1.

Natera is wrong. The ▮▮▮ is relevant both to rebut Natera's "mitigation" argument, and is further pertinent to show that Natera's false advertising was willful and malicious. It is undisputed that, even after it ▮▮▮, Natera continued to disseminate ads comparing Reveal and Signatera, based on metrics specifically identified by ▮▮▮ as off-limits. Willfulness remains an important factor for disgorgement, which the Parties agree may be tried to the jury. And Natera has shown no *undue* prejudice that could arise from a reference to ▮▮▮; it is merely ▮▮▮.

Natera's unsupported MIL No. 4 lacks any merit. It should be denied.

**II.     ▮▮▮ IS RELEVANT TO A "MITIGATION" DEFENSE**

As the Court assessed at length in rejecting Natera's *Daubert* motion to exclude Guardant's damages expert, James Malackowski, a significant component of Guardant's damages case is an ▮▮▮. *See* Order Granting in Part and

Denying In Part Motions to Exclude Expert Testimony of Malackowski and Stec (Dkt. 322) (Mar. 1, 2023) at 2-6. While Natera dismisses the opinion allowed by the Court as "exorbitant," MIL No. 4 at 1, Mr. Malackowski's analysis—as this Court concluded—is sound, because:

- "a party need not incur past corrective advertising costs to receive damages for costs it will have to incur in the future," Dkt. 322 at 3;[1]

- "Guardant may base its prospective corrective advertising damages on Natera's actual expenses on Natera's anti-Reveal campaign." Dkt. 322 at 4,[2] and:

- Mr. Malackowski's "methodology" in relying ▮▮▮▮▮ "was rational and supported." Dkt. 322 at 6.

Notwithstanding the Court's *Daubert* order, Natera signals it will try to convince the jury that Guardant had a duty to "mitigate" its damages, MIL No. 4 at 3, even though the Lanham Act does not require mitigation. *Nateron, Inc. v. Ixoreal Biomed, Inc.*, No. 16-cv-4735, 2017 WL 3131975, at *7 (D.N.J. Jul. 21, 2017). In support of this argument, Natera contends ▮▮▮ ▮▮▮ did not prevent Guardant from engaging in corrective advertising, MIL No. 4 at 1-2; *see also* Dkt. 226-6 (Stec Rebuttal Report) at 37-38 (offering opinions on impact of ▮▮▮▮

Notwithstanding Dr. Stec's legal opinions about ▮▮▮▮, it seems unlikely that Natera's "mitigation" theme will be well received once the jury learns ▮▮▮▮ ▮▮▮▮ Natera thus asks the Court to bar any reference of ▮▮▮▮ on the grounds it is *irrelevant*.

"Relevance," however, is defined broadly. Under Rule 401, "Evidence is relevant if:"

(a)   it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b)   the fact is of consequence in determining the action.

---

[1] Citing *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988–89 (9th Cir. 1995) ("The district court declined to award such costs on the ground that prospective costs should be allowed only where the plaintiff demonstrates he was financially unable to conduct a corrective advertising campaign before trial. We see no reason to so limit the availability of essentially compensatory damages."); *see also Marketquest Grp., Inc. v. BIC Corp.*, No. 11-cv-618, 2018 WL 1756117, at *5 (S.D. Cal. Apr.12, 2018) ("Recovery of both past and future corrective advertising costs is permitted.").
[2] While Natera refers to its advertising spend in Orwellian terms as ▮▮▮▮ ▮▮▮▮ MIL No. 4 at 1, that characterization is blatantly untrue. These are the ▮▮▮▮ of dollars Natera spent on its negative, comparative, and literally false ad campaign against Reveal.

Fed. R. Evid. 401. This "is a liberal" standard, *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) (quoting *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 587 (1993)), and imposes only "a 'minimal requirement . . . .'" *Id.* (quoting *United States v. Whitehead*, 200 F.3d 634, 640 (9th Cir. 2000)). And unless barred by a statute or rule, "Relevant evidence is admissible," Fed. R. Evid. 402.

Particularly given this common sense (and undemanding) standard, ▓▓▓▓▓ of course is "relevant" to Natera's mitigation defense. Whether Guardant was precluded from making *comparative* advertising claims is highly pertinent to whether it could engage in the necessary scope of *corrective* advertising. As Mr. Malackowski opined, "the market today continues to operate under the impression rooted in Natera's false advertising," which consisted of virtually nothing *but* negative and *comparative* advertising. (Malackowski Opening Report (Ex. 1361) at 59; *see also,* e.g. Dkt. 326 (Order on summary judgment motions) at 5-9 ▓▓▓▓▓ ▓▓▓▓▓ While Guardant has undertaken *non-comparative* corrective advertising, it cannot undertake *comparative corrective advertising* in light of ▓▓▓▓▓. E.g., Malackowski Dep. (Ex. 1444) at 237:22-239:3 (while Guardant has taken corrective action, ▓▓▓▓▓ ▓▓▓▓▓

And to be clear, Guardant certainly could have offered some very effective *comparative* corrective ads. For example, in addition to directly addressing and correcting Natera's side-by-side comparisons, Guardant could have also highlighted that while Reveal's Landmark sensitivity in the Parikh Study was 56%, Signatera's Landmark sensitivity in the Reinert Study was only (an unreported) 41%. Ex. 39 (Parikh and Corcoran response to Natera letter to the editor). And Guardant could have reported that when both assays ▓▓▓▓▓ ▓▓▓▓▓ Ex. 723, GHI00042554 (Jul. 15, 2021). Guardant, however, ▓▓▓▓▓, and did not develop a marketing plan built around these truthful comparisons.

Natera also argues there is not "a shred of evidence" that ▓▓▓▓▓ 'has limited Guardant's response to the falsehoods published by Natera since at least mid-2021.'" MIL No. 4 at 1 (quoting Malackowski Rpt. (Dkt. 241-8) at 59). But as this Court explained, "factually,

Guardant's CEO has testified that it did contemplate, and has incurred costs for, corrective advertising." Dkt. 322 at 3; *see also See* Talasaz Dep. (Ex. 1445) at 141:4-7 ▇

▇

▇ But the Court recognized that "Guardant claims that it has yet to engage fully in further corrective advertising against Signatera at least in part because the ▇

▇ Dkt. 322 at 3; Talasaz Dep.(Ex. 1445) at 142:3-5 ▇

▇

▇ (emphasis added).

Beyond this testimony, the plain language of ▇ ▇ a point Natera raised in deposing Guardant's other CEO:

▇

Eltoukhy Dep. (Ex. 1446) 344:2-6. Natera's counsel went on emphasize ▇ ▇

▇

Eltoukhy Dep. (Ex. 1446) 345:25-346:7. And Dr. Eltoukhy testified that both he and Guardant's marketing team were trained to ▇

▇

▇

Natera's contention that ▇ had *no* impact on Guardant's advertising also is belied by Natera's aggressive efforts to ▇. Less than two weeks after the Parties' ▇, Natera moved to hold Guardant in contempt for allegedly violating it. See Dkt. 38 (Jun. 16, 2021). As a reminder, Natera complained because a pre-recorded

1  ASCO presentation included a statement from the Parikh Study that Reveal had favorable
2  sensitivity to tumor-informed approaches. The Court denied Natera's motion, given Natera's failure
3  to meet-and-confer in good faith. Dkt. 54. But as the Court's Order to Show Cause, Dkt. 40, and
4  Guardant's response, Dkt. 43, reflect, that Guardant has always taken ▅▅▅▅▅ seriously.
5  Finally, Natera states—falsely—that "at no point did Guardant seek to modify ▅▅▅
6  ▅▅▅▅" MIL No. 4 at 1. Natera knows that is untrue. *See* Dkt 128 (Feb. 1, 2022) (Minute
7  Order) ("The parties have engaged in discussion about [the] possibility of stipulating to modified
8  statement/agreement.") Between December 2021 and February 2022, the Parties participated in
9  multiple conferences and exchanged multiple proposals. Dkt. 144 (Feb. 24, 2022 Guardant Letter
10 Brief). Natera was unwilling to compromise, and the negotiations ultimately did not result in any
11 modifications. But this was not for lack of trying on Guardant's part.

12 **III.    THE ▅▅▅▅▅▅ IS RELEVANT TO NATERA'S WILLFULNESS**

13 Natera also asserts it is concerned that mentioning ▅▅▅▅ might "mislead the
14 jury into (wrongly) believing that ▅▅▅▅ unfairly and unilaterally ▅▅▅▅
15 ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅
16 ▅▅▅▅" MIL No. 4. But of course the jury would not be *misled* into a conclusion that
17 Natera did ▅▅▅▅▅▅▅▅; such a conclusion would naturally be drawn from
18 ▅▅▅▅▅▅▅▅▅▅▅.

19 It is undisputed that, in the days and weeks and months following the entry of ▅▅▅
20 ▅▅▅ Natera continued to send out emails to oncologists and other customers, making the
21 exact same negative, comparative (and, as Guardant will prove, literally false) ad claims.

1  Ex. 315 (June 7, 2021 email); *see also* Ex. 317 (Jul. 9, 2021 email); *accord,* Dkt. 144 (Feb. 24,
2  2022 Guardant Letter Brief) (citing additional examples, and explaining: ▮
3  ▮ Natera ▮
4  ▮
5  ▮ *E.g.,* Ex. 319 ▮
6  ▮
7  ▮
8
9
10
11
12  Natera tried ▮
13  ▮ *Id.* ▮
14  ▮
15  ▮; *see also* Masukawa Dep. at 329:18-19 ▮
16  ▮

   Natera's ongoing negative, comparative advertising is direct evidence that its false advertising continued well past the date of ▮, and accordingly is relevant both to liability and damages. But the fact that these ads continued *despite* ▮ also evidence that Natera's ongoing false advertising was *willful*. And while willfulness is no longer a prerequisite for disgorgement under the Lanham Act, it remains an important factor for the jury to consider. *See Grasshopper House, LLC v. Clean and Sober Media, LLC*, No. 19-56008, 2021 WL 3702243, at *3 (9th Cir. Aug. 20, 2021) ("while a defendant's mental state is 'a highly important consideration in determining whether an award of profits is appropriate,' willfulness is not a prerequisite for disgorgement for a Lanham Act claim") (quoting *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020)).[3] Willfulness is also relevant to whether Natera acted with

---

[3] Natera and Guardant agree that the Court should refer the issue of disgorgement to the jury, as allowed by 15 U.S.C. § 1117(a).

Case 3:21-cv-04062-EMC   Document 363-3   Filed 06/08/23   Page 12 of 12

"malice." E.g., *Binder v. Disability Group, Inc.,* 772 F. Supp. 2d 1172, 1184 (C.D. Cal. 2011) ("In assessing the appropriateness of punitive damages, we look to whether a defendant's actions were done with malice, oppression, or fraud." (citing Cal. Civ. Code § 3294)).

### IV. THERE IS NO RISK OF UNDUE PREJUDICE OR CONFUSION

Finally, Natera argues that allowing the jury to learn that Guardant was unwilling to violate ▮▮▮▮ "will not only unduly prejudice Natera, it will require Natera to introduce ▮▮▮▮ to show the terms and thus that it does not preclude numerous types of advertising." MIL No. 4 at 2. But learning that Guardant did not wish to ▮▮▮▮ could not possibly be prejudicial, much less *unduly* prejudicial. "Under Rule 403, the prejudicial effect of evidence must 'substantially outweigh' its probative value before it is properly excluded." *Jackson v. Fed. Ex.*, No. 10-cv-1760, 2011 WL 13267994, at *4 (C.D. Cal. Jun. 16, 2011). "'Undue prejudice,' moreover, means 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting Fed. R. Evid. 403 Adv. Comm. Notes).

If Natera is allowed to pursue a "mitigation" argument, then Guardant must be allowed to respond to it. And if Natera argues that Guardant could have and should have engaged in corrective advertising, the Guardant must be ▮▮▮▮ which would have been the most direct, effective and efficient means of correcting Natera's lies. If Natera wishes to argue that Guardant could have spent even more on non-comparative ads, it is free to do so—and then to explain why *Natera* relied so heavily on comparative ads in its own marketing campaign.

### V. CONCLUSION

The Court should deny Natera MIL No. 4 in its entirety.

Dated: June 5, 2023

**SHEARMAN AND STERLING, LLP**

By: */s/ Saul Perloff*
Saul Perloff

Attorneys for Plaintiff/Counter-Defendant
GUARDANT HEALTH, INC.

OPPOSITION TO NATERA MIL NO. 4        - 7 -        CASE NO. 3:21-CV-04062-EMC