QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
Margaret H.S. Shyr (Bar No. 300253)
margaretshyr@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Anne S. Toker (*pro hac vice*)
annetoker@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., <br><br> Plaintiff and Counterclaim-Defendant, <br><br> vs. <br><br> NATERA, INC, <br><br> Defendant and Counterclaim-Plaintiff. | Case No. 21-cv-04062-EMC <br><br> **NATERA'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE SOWERS SURVEY ON QUESTION OF DECEPTION** <br><br> **Pretrial Conference:** <br> Date:  June 28, 2023 <br> Time:  3:00 pm <br> Ctrm:  5 – 17th Floor <br> Judge: Hon. Edward M. Chen <br><br> **Trial:** <br> Date:  July 24, 2023 |

## I. INTRODUCTION

As this Court knows, Guardant claims that Natera's advertisements—which accurately set forth multiple results from two separate studies, Reinert and Parikh—constitute false advertising. Guardant's theory is that the studies are not comparable and that the allegedly false message from the advertisements is that Natera's product is superior to Guardant's product. To prevail, Guardant must offer proof of actual deception of a substantial segment of the target audience. In support of its claim, Guardant offers the results of a survey (the "Sowers survey"). The Sowers survey, however, addresses neither of the premises of Guardant's actual claim in this case. The survey neither asks whether the studies can be considered comparable, nor whether doctors believed Natera's product overall was superior based on the advertisement.

Instead, the survey was extremely narrow: it queried the participants about only two performance metrics in the stimulus (which was based on a single at-issue Natera email)—presurgical detection and relapse sensitivity. The survey asked—***only as to these two metrics***—whether Natera's product was superior to Guardant's. There are at least three other performance metrics in the email that were not tested. Importantly, the Sowers survey did not ask a single question about comparing studies overall or superiority overall. The survey does not support Guardant's theory and is therefore inadmissible.

Use of the Sowers study at trial will cause jury confusion because the narrow answers to the two questions do not relate to the actual allegations in this case: comparison of studies and/or overall superiority. Guardant will seek to extrapolate the results of two questions on two performance metrics (accurately reported from the studies) to a generalized conclusion of deception as to whether it was fair to compare the results or whether one product was overall superior to another. This Court should not permit that and any argument by Guardant that the Sowers' survey establishes deception should be excluded under Federal Rules of Evidence 401, 402, and 403.

## II. ARGUMENT

To show falsity where an advertisement is literally true, a plaintiff must show "that the advertisement has misled, confused, or deceived the consuming public." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997). If plaintiff attempts to meet this requirement

with survey evidence, that survey must "support a conclusion by a reasonable person that [the advertising] claim either was false or implied a falsehood." *Mead Johnson & Co. v. Abbott Lab'ys*, 209 F.3d 1032, 1034 (7th Cir. 2000). Where a "survey did not test" questions relevant to the at-issue advertising and the offering party "has failed to coherently articulate how or why that is relevant to [the opposing party's] theory of the case," the survey is appropriately excluded. *Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSx), 2023 WL 2628620, at *17 (C.D. Cal. Mar. 15, 2023).

### A.     Natera's Advertisements Citing Multiple Metrics Are Not False On Their Face

The Natera advertisements at issue set forth the results from two separate studies. The advertisements set forth at least seven separate metrics from the studies. *See* Ex. 23 ("Signatera vs. Reveal performance comparison."). As this Court recognized in its summary judgment order: "Here, all Natera's advertising statements at issue are directly derived from the Reinert study and the Parikh study. The numbers are not literally false on their face." Dkt. 326 at 13. ███████ ███████████████████████████████████████████████████████████████████████████████████ Guardant's false advertising claim is that Natera's publication of both studies in a single advertisement was misleading because the two studies could not be fairly compared, and that the message of the ad was Natera's product was superior. Dkt. 261 at 11 ("***Natera's ads present non-comparable studies as equivalent, with the unambiguous message that the tests establish Natera's Signatera as superior to Reveal***.") (emphasis added).

### B.     The Sowers Survey Does Not Support the Allegation of Deception for the Disputed Advertisement

As part of expert discovery, Guardant submitted an expert report and survey from Mr. Brian Sowers.[1] The goal of the survey was ostensibly to evaluate deception. However, the survey did not

---

[1] Because the Sowers survey was—from Natera's standpoint—fundamentally flawed in numerous respects, Natera moved to exclude Mr. Sowers's opinions based on the survey under *Daubert* and Federal Rule of Evidence 702. The Court denied the motion. Natera's motion, and the Court's order, did not address the question of whether or not the Sower's survey—even if was not so flawed and unreliable to be wholly excluded—could actually establish deception to support false advertising. The answer to this question, as explained herein, is that it cannot.

evaluate the relevant inquiry: whether the studies could be fairly compared, and whether the message of the advertisements was that Natera's product was superior overall.  Rather, the survey asked whether respondents believed the reported performance data implied Signatera was superior to Reveal *"in terms of" that particular metric only*:

> Q6a. Based on your review of the email, do you believe…? (*Select one only*)
> ○ Signatera is superior to Guardant in terms of *pre-surgical sensitivity*
> ○ Signatera is equivalent to Guardant in terms of *pre-surgical sensitivity*
> ○ Signatera is inferior to Guardant in terms of *pre-surgical sensitivity*
> ○ No opinion
> ○ Don't know/Unsure

> Q7a. Based on your review of the email, do you believe…? (*Select one only*)
> ○ Signatera is superior to Guardant in terms of *relapse sensitivity during surveillance monitoring*
> ○ Signatera is equivalent to Guardant in terms of *relapse sensitivity during surveillance monitoring*
> ○ Signatera is inferior to Guardant in terms of *relapse sensitivity during surveillance monitoring*
> ○ No opinion
> ○ Don't know/Unsure

Dkt. 217-2 (Sowers Report) ¶¶ 54, 56.  The problem with these narrow questions is that they do not support the propositions that underlie Guardant's theory of the case.  None of the questions ask about whether the doctors consider the studies to be equivalent or their comparison to be fair—and oncologists in this field might very well have strong opinions one way or the other.  And none of the questions ask whether the message of the advertisement is that Natera's product is superior overall.  If this case were about these two performance metrics only, then this study might be relevant.  But because this case is about comparing studies and overall superiority, it would be hopelessly confusing to a jury in an already complex and technical case to proffer this survey as relevant.

Indeed, Sowers' own testimony revealed the limited nature of the survey.  As Sowers testified, his survey sought to answer the **specific questions** of whether, based on the Natera email, the respondents believed Signatera to be "superior," "equivalent," or "inferior" with regard to the two specific metrics.  Dkt. 216-1 (Sowers Tr.) at 83:23-84:10; Dkt. 217-2 (Sowers Report) ¶¶ 54, 56.  ███████████████████████████████████████████████████████  Dkt. 216-1

(Sowers Tr.) at 100:11-20 (emphasis added).

Based on the survey results, Sowers concluded, among other things, that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Dkt. 217-02 (Sowers Report) ¶ 76. In particular, he concluded:

- ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

*Id.* ¶¶ 77-79 (emphases added).

While Sowers referred to ███████ in his conclusions, his survey established none.[2] Even accepting the results at face value, his results show—*at most*—that respondents could take away a narrow message of implied superiority for Signatera over Reveal *that is limited to the two tested metrics*. But this is not evidence of deception—all it means is that the audience may perceive a test with higher reported numbers for the two advertised metrics to be "superior" in those metrics to a test with lower reported numbers.[3] That perception, however, is entirely irrelevant to whether physicians were deceived about whether the studies are equivalent to one another or whether Signatera as a product is superior to Reveal—the actual basis of Guardant's claim against Natera.

Importantly, the Sowers survey did not test any of Guardant's alleged reasons for why it is

---

[2] Natera maintains its objections and criticisms of the Sowers survey, for example as stated in its briefing on its Motion to Exclude Mr. Sowers.

[3] Notably, while Guardant has claimed Natera's ads imply a "false" superiority claim, Guardant has not, and cannot, show that Signatera is *not* superior to Reveal in terms of pre-surgical detection or relapse sensitivity for surveillance monitoring. And its own survey includes support in the form of survey responses that Signatera is in fact superior. For example, respondents, when asked why they answered that Signatera was superior with respect to the tested metrics, answered: "[b]ased on my real practice experience" and "[b]ased on experience. Not this email." Dkt. 217-2 (Sowers Survey) App. G, at G-81 (record 3041), G-83 (record 3105). Others identified the basis for their beliefs as "several recent studies" and "[m]edical studies." *Id.* at G-98 (records 3170, 3339).

false to compare the study results to one another. For example, in the context of "pre-surgical detection," Guardant argues the studies on the parties' tests cannot be compared because of differences in sample volumes between the two studies. *See, e.g.*, Dkt. 326 at 13-15. But Guardant's survey ***did not test*** whether respondents took away any belief about the sample volumes between the two studies or the overall comparability of the data. In the context of "relapse sensitivity during surveillance monitoring," Guardant argues that comparisons between the studies cannot be made because of differences in the structure and timing of sample collection. Dkt. 326 at 17-18. But again, Guardant's survey ***did not test*** whether respondents took away any message about how the studies collected samples.

Thus, Guardant failed to test the actual bases for its false advertising claim against Natera with the Sowers survey. Having completely missed the mark, the Sowers survey and its results are wholly irrelevant to the issue of deception and should be excluded.

### C. Guardant Will Seek to Use the Sowers Survey at Trial to Mislead Jurors About Physicians Being Deceived

Natera expects Guardant will use the survey at trial to suggest physicians were deceived by Natera's advertising into thinking that data from the cited studies could be compared in an "apples-to-apples" fashion, when such comparison would be misleading. But no question in the survey tested this, and any suggestion that the survey did test—much less establish—this premise would be highly misleading to the jury and prejudicial to Natera. As discussed above, there is a complete disconnect between the implied statements Guardant tested (alleged superiority based on two specific performance metrics) and the supposed implied statements that form the basis of Guardant's false advertising claims (alleged lack of equivalence between the studies and overall product superiority). Guardant's survey does not show a single respondent took away a false belief from the advertising regarding the latter.

Had it designed the survey properly, Guardant could have tested deception. It could have asked respondents about overall superiority and could have asked about study comparisons. For example: Do you take away a message from these statements that Signatera is an overall superior/equivalent/inferior test to Reveal? Does the email's statement about "pre-surgical

detection" lead you to believe the two studies had the same or different samples volumes for each test? Or, does the email's statement about "longitudinal sensitivity" lead to you believe that the two studies collected samples according to the same schedule? Any of these questions might have shed light on the relevant question. But Guardant must now live with its deliberate decision not to ask about the actual issues that are the basis for its false advertising claims. Having failed to so ask, Guardant should not now be permitted to confuse and mislead the jury into thinking that it did ask the relevant questions for deception when it did not.

### III.     CONCLUSION

For all these reasons, Guardant should be precluded from arguing the survey is proof of deception. And because the Sowers survey cannot establish any other fact of consequence in the case, it should be excluded in its entirety.

DATED:  May 26, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    */s/ Kevin P.B. Johnson*
Kevin P.B. Johnson
Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

1. **Saul Perloff (157092)**
   saul.perloff@shearman.com
2. **Katharyn Grant** *(pro hac vice)*
   kathy.grant@shearman.com
3. **Andre Hanson** *(pro hac vice)*
   andre.hanson@shearman.com
4. **Olin "Trey" Hebert** *(pro hac vice)*
   trey.hebert@shearman.com
5. **SHEARMAN & STERLING LLP**
   300 W. Sixth Street, 22nd Floor
6. Austin, Texas 78701
   Telephone  (512) 647-1900
7.
   **Lillian Mao (267410)**
8. lillian.mao@shearman.com
   **SHEARMAN & STERLING LLP**
9. 1460 El Camino Real, 2nd Floor
   Menlo Park, CA 94025
10. Telephone  (650) 838-3600

11. **Christopher LaVigne** *(pro hac vice)*
    christopher.lavigne@sherman.com
12. **SHEARMAN & STERLING LLP**
    599 Lexington Ave
13. New York, NY 10022
    Telephone  (212) 848-4000
14.
    **Attorneys for Plaintiff/Counter-claim**
15. **defendant GUARDANT HEALTH, INC.**

16.
                    UNITED STATES DISTRICT COURT
17.                 NORTHERN DISTRICT OF CALIFORNIA
18.                     SAN FRANCISCO DIVISION

19. GUARDANT HEALTH, INC.,                    Case No. 3:21-cv-04062-EMC

20.           Plaintiff,                      **PLAINTIFF GUARDANT HEALTH, INC.'S RESPONSE IN OPPOSITION TO**
21. vs.                                       **DEFENDANT NATERA, INC'S MOTION IN LIMINE NO. 5: MOTION TO EXCLUDE**
22. NATERA, INC.,                             **SOWERS SURVEY ON QUESTION OF DECEPTION**
23.           Defendant.
                                              **Pretrial Conference:**
24.                                           Date:       June 28, 2023
                                              Time:       3:00 p.m.
25.                                           Place:      Courtroom 5

26.
27.
28.

Plaintiff/Counter-defendant Guardant Health, Inc. opposes Defendant/Counter-plaintiff Natera, Inc.'s Motion *in Limine* No. 5, to exclude the Sowers Survey. ("MIL No. 5").

## I.     INTRODUCTION

Motions *in limine* "that simply seek to reargue matters already decided" "should be denied as motions for reconsideration[.]" *Williams v. Artic Cat, Inc.*, No. 3:11-cv-445, 2014 WL 2589195, at *5 (N.D.N.Y. Jun. 10, 2014); *see also* N.D. Cal. LR 7.9. Natera already challenged Guardant expert Brian Sowers' Survey, and this Court rejected, in its entirety, Natera's *Daubert* motion:

> The Sowers Survey is probative. It is the only consumer survey about Natera's alleged false advertising. And it is not unduly prejudicial.

Dkt. 323 (Mar. 1, 2023) (Order on Sowers *Daubert* motion) at 9.[1] Natera goes on to argue, in the first two sentences of MIL No. 5, that its advertisements "accurately set forth multiple results" from the Parikh and Reinert Studies, and that "Guardant must offer proof of actual deception." MIL No. 5 at 1. But here again, Natera ignores this Court's express ruling:

> A reasonable jury could find that many of Natera's advertising statements were literally false.

Dkt. 326 (Mar. 22, 2023) (Order on summary judgment) at 12. The jury may indeed find that some of Natera's advertising is literally false *on its face*, *id.* at 22 ("A reasonable jury could find that Natera's statement that Reveal's PPV was 'not reported' was literally false on its face"), and may also find that *all of* Natera's comparative advertising claims (with the sole exception of "quantitation") are literally false by necessary implication. *Id.* at 12-26.

There is no dispute about the interpretation of the Sowers Survey's results, as Natera's own survey expert admitted: ████████████████

████████████████████████████████████████

---

[1] In a footnote, Natera asserts that its *Daubert* motion "did not address the question of whether or not the Sower's survey . . . could actually establish deception to support false advertising." MIL No. 5 at 2, n.1. But this is incorrect. *See* Dkt. 217 at 6 ("The only element to which the Sowers Survey could conceivably be relevant is whether Natera's advertisements are likely to deceive a substantial segment of the intended audience. To satisfy this element, Guardant would need to prove that Natera's advertising itself was (or could be) a source of deception. The Sowers Survey does nothing to advance this or any other aspect of Guardant's case.")

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ McDonald Dep. (Ex. 1357) at 222:13-21. These results are
unsurprising; the whole point of Natera's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 284, NATERA_345228 (emphasis added). Thus, survey respondents viewing Natera's comparative advertising (a *verbatim* copy of an actual Natera email blast) saw that, by design and intent and on every metric reported, Signatera outperformed Reveal. Of course they took away a belief that Signatera's performance was superior to Reveal in terms of pre-surgical sensitivity and relapse sensitivity during surveillance monitoring.

The Sowers Survey is clearly *relevant* to Guardant's case. Its findings go to the meaning of Natera's advertising, which is central in a Lanham Act case. It goes to materiality, as "superiority" is inherently material, and represents an inherent quality or characteristic of these products. And it pertains to *deception:* It is undisputed that Reveal, as a plasma-only assay, enjoys key advantages over tissue-dependent Signatera, including logistical simplicity, turn-around-time, and failure rate. But the evidence shows that, through its aggressive advertising campaign, Natera managed to ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓, kept Reveal's sales stagnant, and boosted Signatera's sales. On these facts, and because Natera's advertising of Signatera's superiority over Reveal is ***literally false***, the jury could find—and may *presume*—that Natera's advertising deceived consumers. E.g., *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997). And because Natera articulates no undue prejudice in the use of the Sowers Survey, MIL No. 5 should be denied in its entirety.

## II.     THE COURT ALREADY REJECTED NATERA'S ATTACKS ON THE SURVEY

Much of Natera's MIL No. 5 merely restates arguments it raised in its unsuccessful *Daubert* motion, Dkt. 217, including criticisms of the scope of the questions asked respondents:

| Dkt. 217 at 2 | MIL No. 5 at 1 |
|---|---|
| Sowers chose to test only the following two statements: (1) "[p]re-surgical detection 89-94% 1-3 for Signatera vs. 47% * 4 for Guardant"; and (2) "Guardant's claim of 91% "surveillance" sensitivity in CRC is not representative; true longitudinal sensitivity is 69%." Id. ¶ 9. He did not test any other marketing statements Guardant alleges are false and/or misleading, including those reflected in his survey stimulus. | the survey was extremely narrow: it queried the participants about only two performance metrics in the stimulus (which was based on a single at-issue Natera email)—presurgical detection and relapse sensitivity. |

The specific questions asked:

Case 3:21-cv-04062-EMC   Document 363-4   Filed 06/08/23   Page 11 of 15

| Dkt. 217 at 15: | MIL No. 5 at 3 |
|---|---|
| The offending questions, Q6a and Q7a, are reproduced below:  | the survey asked whether respondents believed the reported performance data implied Signatera was superior to Reveal *"in terms of"* that particular metric only: |

And Mr. Sowers' opinion that the Survey results support a finding of deception:



| Dkt. 217 at 4 | MIL No. 5 at 4 (notes omitted) |
|---|---|
| While Sowers refers to ▆▆▆ in several places in his report, (*id.* ¶ 79), Sowers testified that he was ▆▆▆ Ex. B (Sowers Tr.) at 81:4-11. He had no opinion on whether the statements were false or misleading, and ▆▆▆ *Id.* at 82:7-15; *see also id.* at 22:14-17, 82:21-83:5 ▆▆▆ | While Sowers referred to ▆▆▆ in his conclusions, his survey established none. Even accepting the results at face value, his results show—*at most*—that respondents could take away a narrow message of implied superiority for Signatera over Reveal *that is limited to the two tested metrics*. But this is not evidence of deception—all it means is that the audience may perceive a test with higher reported numbers for the two advertised metrics to be "superior" in those metrics to a test with lower reported numbers. |

This Court considered Natera's arguments, and rejected them all. Dkt. 323 at 2-9.

Natera also now argues that Mr. Sowers could and should have asked *different* questions in his Survey, and argues that his failure to anticipate Natera's suggestions renders the questions he did ask irrelevant and prejudicial. MIL No. 5 at 5-6. But Natera had every opportunity to conduct its own survey, and even retained a purported survey expert who could have undertaken such a task. Natera declined to undertake this exercise, and its hypothetical "could have should have" after-the-fact proposals cannot impact the validity and admissibility of Mr. Sowers' opinions:

> We have long held that survey evidence should be admitted "as long as [it is] conducted according to accepted principles and [is] relevant." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir.1997); *see Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir.2001); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir.1997); *E & J Gallo Winery*, 967 F.2d at 1292; *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir.1988). Furthermore, we have made clear that

OPPOSITION TO NATERA MIL NO. 5     - 3 -     CASE NO. 3:21-CV-04062-EMC

"technical inadequacies" in a survey, "including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Keith*, 858 F.2d at 480; *see Wendt*, 125 F.3d at 814 ("Challenges to survey methodology go to the weight given the survey, not its admissibility.").

*Fortune Dyn., Inc. v. Victoria's Secret Stores Brand Mgt., In.*, 618 F.3d 1025, 1036 (9th Cir. 2010).

Natera also argues Mr. Sowers should have tested "Guardant's alleged reasons for why" Natera's claim of superior pre-surgical sensitivity "is false" MIL No. 5 at 4-5 (complaining the Survey did not test "sample volumes," the "overall comparability of the data," or the "structure and timing of sample collection"). But while the Parikh Study was transparent regarding the low sample volumes used to test Reveal, Natera ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. E.g., Ex. 183, NATERA_082364, at 82381. Thus, even if a survey design could have broached this issue in a meaningful way, Natera's own demand for secrecy precluded any such questions.

This Court, faced with Natera's *Daubert* arguments against Mr. Sowers and his Survey, concluded that Natera was wrong and Mr. Sowers' opinions were admissible. Dkt. 323 at 9 ("The Sowers Survey is probative. It is the only consumer survey about Natera's alleged false advertising. And it is not unduly prejudicial."). Natera offers no reasons at all for this Court to re-plow old ground. E.g., *Mindlab Media, LLC v. LWRC Int'l, LLC*, No. 11-cv-3405, 2013 WL 1688309, at *2 (C.D. Cal. Apr. 15, 2013) ("A motion *in limin*e is not the proper vehicle by which to seek reconsideration.") Natera's under-the-radar motion for reconsideration of its *Daubert* motion should, again, be denied.

**III.   THE SOWERS SURVEY IS RELEVANT TO MULTIPLE ISSUES**

While Natera again argues that the Sowers Survey is inadmissible under Rule 402, MIL No. 5 at 1, it focuses exclusively on whether the Sowers Survey independently establishes "deception," ignoring both the presumption of deception to which Guardant will be entitled upon a finding of literal falsity, as well as other purposes for which the Sowers Survey may be used. But even on this point, Natera is wrong.  "Relevance" is broadly defined, Fed. R. Evid. 401, and the Sowers Survey "has [a] tendency to make" several elements, including deception, more [] probable than [they]

1 would be without the evidence." Fed. R. Evid. 401.

2     To begin, the Sowers Survey tests how the Parties' customers and prospective customers interpret Natera's advertising. This is relevant to evaluating the advertising "in its full context," as the Ninth Circuit requires. *Southland Sod*, 108 F.3d at 1139. The results also may impact the jury's finding as to the *materiality* of Natera's false advertising, as "superiority" is an inherent characteristic that is material by any measure. E.g., *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 479 (D.N.J. 2009) (agreeing that "GEH's [alleged] false and misleading claims of superior safety are material to customers"). And Mr. Sowers Survey may also inform and support the jury's finding that Natera's literally false claims are *deceptive*.[2]

The evidence to be presented at trial will show that, as ███████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████ Ex.1388, NATERA_237622 at 623-24. ██████████████████████████████
████████████████████████████████████████████████████████████████████ Ex. 172,
NATERA_015589. When i██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████ Ex. 284, NATERA_345228, and specifically
██████████████████████████████████████. Ex. 289, NATERA_005902 at 904 (Mar. 3, 2021).

The evidence also supports that Natera succeeded in its goal; ██████████████
████████████████████████████ Dkt. 326 at 29, while Guardant's sales for Reveal following its launch ████████████████████████. Dkt. 322 (Mar. 1, 2022) (Order on Stec and Malackowski) at 7 (discussing Malackowski opinions). In light of this evidence, as well as the evidence showing that Natera's advertising is literally false, e.g., Dkt. 326 at 12-26 (analyzing evidence and denying

---

[2] Natera asserts the "goal of the [Sowers] survey was ostensibly to evaluate deception." Natera MIL No. 5 at 2. As Mr. Sowers explained, ██████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ Dkt. 217-2 at ¶¶ 8-9.

Natera's motion for summary judgment on literal falsity), it will be reasonable for the jury to conclude that Natera's advertising of Signatera as "superior" to Reveal succeeded in driving sales for Signatera by *deceiving* customers: The jury could reasonably conclude that oncologists and other customers would not have ordered a more complicated, prone to failure, and time-consuming tissue-dependent ctDNA assay when a simpler, faster and more reliable, plasma-only assay with comparable if not better sensitivity and specificity was available. Thus, the Sowers Survey, demonstrating that the message of Natera's advertising was that Signatera is superior to Reveal, is "relevant" to a jury finding of deception.[3]

## IV. NATERA FAILS TO SHOW THAT THE SOWER SURVEY WILL (OR COULD REMOTELY BE THOUGHT TO) CAUSE CONFUSION OR PREJUDICE

In denying Natera's previous *Daubert* motion, this Court recounted Natera's argument "urg[ing] the Court to exclude Sowers's testimony as irrelevant and unduly prejudicial," purportedly because it has "little probative value," and is prejudicial because Mr. Sowers "could extrapolate these results to other 'allegedly deceptive advertising.'" Dkt. 323 at 8-9. The Court, again, disagreed:

> The Sowers Survey is probative. It is the only consumer survey about Natera's alleged false advertising. And it is not unduly prejudicial. As discussed above, the survey is not so flawed as to render it unreliable. And Sowers has not offered any opinion on extrapolation of the survey results. The Court declines to exclude Sowers's opinions under Rules 402 or 403.

*Id.* at 9. Natera again asserts, without addressing this Court's prior Order, offering apt or controlling authority, or even citing any evidence, that the Sowers Survey will be used by Guardant "to confuse and mislead the jury." MIL No. 5 at 6.

*Ipse dixit* is no more probative or useful in attorney argument than in expert opinions, and

---

[3] In a footnote, Natera argues: "Guardant has not, and cannot, show that Signatera is not superior to Reveal in terms of pre-surgical detection or relapse sensitivity for surveillance monitoring." MIL No. 5 at 4, n.3. Again, Natera knows this is untrue. As the Court is aware, there is evidence that ███████████████████████████████████████████████████ Dkt. 326 at 15 ███████████████████████████████████████████████████ citing Dkt. No. 249, Exh. 723 at 42554). Comparing the Reinert and Parikh Studies, Guardant's 91% surveillance sensitivity is numerically higher than Signatera's 88%-- ███████████████████████████████████████████████████ Ex. 437, NATERA_320143 (Feb. 8, 2021); Ex. 439, NATERA_320165 (Feb. 10, 2021); Ex. 137, NATERA_320165 (Feb. 10, 2021); Ex. 772, NATERA_28812 (Feb. 10, 2021).

Natera's unsupported claims of prospective prejudice should be rejected out of hand. Mr. Sowers is an experienced survey expert, and will offer the opinions presented in his Report, on which he already has been extensively examined by Natera, and which have been thoroughly vetted by this Court.

## V. CONCLUSION

The Court should deny Natera MIL No. 5 in its entirety.

Dated: June 5, 2023

**SHEARMAN AND STERLING, LLP**

By: */s/ Saul Perloff*
     Saul Perloff

Attorneys for Plaintiff/Counter-Defendant
GUARDANT HEALTH, INC.