QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
Margaret H.S. Shyr (Bar No. 300253)
margaretshyr@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Anne S. Toker (*pro hac vice*)
annetoker@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NATERA, INC,<br><br>Defendant and Counterclaim-Plaintiff. | Case No. 21-cv-04062-EMC<br><br>**NATERA'S MOTION *IN LIMINE* NO. 6 TO EXCLUDE EVIDENCE OF UNRELATED LITIGATIONS, PUBLICATIONS, AND MEDIA COVERAGE**<br><br>**Pretrial Conference:**<br>Date:      June 28, 2023<br>Time:     3:00 pm<br>Ctrm:    5 – 17th Floor<br>Judge:   Hon. Edward M. Chen<br><br>**Trial:**<br>Date:     July 24, 2023 |

## I. INTRODUCTION

Natera moves *in limine* to exclude evidence and argument about unrelated litigation, publications, and media coverage that have no bearing on the claims and defenses in this case and would only serve to inflame the jury and unduly prejudice Natera. Specifically, Natera seeks to exclude evidence and argument regarding:

- prior unrelated litigation between Natera and CareDx about an unrelated product to assess a patient's risk of kidney transplant rejection,

- unrelated pending class action lawsuits, including those about unrelated non-invasive prenatal testing ("NIPT') products and allegedly deceptive billing practices;

- an irrelevant January 2022 New York Times article cited in the complaints of the aforementioned class action lawsuits incorrectly criticizing the accuracy of several companies', including Natera's, NIPT products; and

- an irrelevant, biased March 2022 paper published by Hindenburg Research entitled "Natera: Pioneers in Deceptive Medical Billing," inaccurately criticizing Natera's NIPT products and billing practices (and referencing the aforementioned class action lawsuits).

Such evidence is irrelevant, and allowing it to be presented at trial would confuse the issues, mislead the jury, waste time, and unfairly prejudice Natera. Yet Guardant's line of questioning in depositions suggests that is what it intends to do—distract from the issues at hand in an attempt to inflame the jury by (wrongly) suggesting that Natera generally engages in untoward business practices. This irrelevant, unduly prejudicial evidence should be excluded.

## II. ARGUMENT

Prior unrelated litigation, media coverage thereof, and irrelevant publications have no bearing on this case and should be excluded under Rule 402. Even if this evidence had any probative value—it does not—it should be excluded because any minimal probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Fed. R. Evid. 403.

### A. Evidence of Prior Unrelated Litigation Between Natera and CareDx Should Be Excluded

Evidence of Natera's prior litigation with CareDx about unrelated products is irrelevant, highly prejudicial, improper character evidence, and should be excluded.

Natera and CareDx have been involved in false advertising litigation since 2019 over a Natera product called Prospera that assesses the risk of a patient rejecting a transplanted kidney. *CareDx, Inc. v. Natera, Inc.*, No. 1:19-cv-00662-CFC, Compl. Dkt. 1 (D. Del. Apr. 10, 2019). There was a Delaware jury trial where the jury awarded damages against Natera (*id.* Dkt. 329), and post-trial briefing remains pending (*id.* Dkt. 339). That case, brought by a different plaintiff over different advertisements for different products, has nothing to do with any issue in this case. Nonetheless, Guardant has injected that litigation and the jury award against Natera into this case. *See, e.g.*, Ex. 1 (Chapman Dep. Tr.) at 303:13-24, 304:14-18 (questioning Natera's CEO about the allegations that it "intentionally and recklessly misled the [organ] transplant community by engaging in false advertising and promoting and marketing Prospera"); Ex. 6 (Moshkevich Dep. Tr.) at 231:18-22.

Evidence of unrelated prior litigations is regularly excluded as more prejudicial than relevant. *See, e.g.*, *Ohio House LLC v. City of Costa*, No. 19-cv-1710, 2022 U.S. Dist. LEXIS 110571, at *5 (C.D. Cal. Mar. 28, 2022) (granting motion "to exclude evidence of prior litigation" because "[t]he Court finds that the rulings and disposition of those case[s] will shed no light on any issue in this case. (Fed. R. Evid. 401.) . . . To show that prior litigants have lost, says nothing about the merits of this case, and would clearly be prejudicial with no counterbalancing probity. (Fed. R. Evid. 403)"); *Reddy v. Nuance Communs., Inc.*, No. 5:11-cv-05632-PSG, 2015 U.S. Dist. LEXIS 102739, at *2-3 (N.D. Cal. Aug. 5, 2015). In fact, even when the prior litigation was between the same parties as the present case, which is not true here, courts exclude reference to that litigation. *See, e.g.*, *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2015 U.S. Dist. LEXIS 92776, at *18-19 (N.D. Cal. July 16, 2015) ("The probative value of the prior litigation between the parties is far outweighed by its potential to cause unfair prejudice and to confuse the issues."); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451-RMW, 2013 U.S. Dist. LEXIS 202254, at *22 (N.D. Cal. Nov. 13, 2013) (excluding reference to other litigations between

the same parties because those lawsuits were "irrelevant to the issues in the present case[,]" and noting that if "[e]ven if such evidence were relevant, the likelihood of unfair prejudice outweighs any relevance").

Nor should Guardant be permitted to reference the jury's verdict or damages award against Natera in the *CareDx* case (which is the subject of a pending post-trial motion—*CareDx*, No. 1:19-cv-00662-CFC, Dkt. 339 and 340). *Engquist v. Or. Dep't of Agr.*, 478 F.3d 985, 1009 (9th Cir. 2007) ("Commentators agree that most courts forbid the mention of verdicts or damage amounts obtained in former or related cases.") (citations omitted); *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK, 2020 U.S. Dist. LEXIS 7883, at *6-7 (N.D. Cal. Jan. 15, 2020) ("Indeed, a jury is likely to give a prior verdict against the same defendant more weight than it warrants. The admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it.") (internal quotation omitted); *Kakkis v. Provident Mut. Life Ins. Co. of Phil.*, No. CV 00-08297 DDP (JWJx), 2002 WL 34357203, at *2 (C.D. Cal. Oct. 7, 2002) (excluding under Rule 403 "evidence of verdicts or judgments in other cases" as "more prejudicial than probative").

The ***only*** purpose this evidence would serve—which Guardant admitted during the parties' meet and confer—is to inflame the jury into thinking that Natera has a propensity to engage in false advertising, which is irrelevant to whether Natera did so here. *See Grace*, 2020 U.S. Dist. LEXIS 7883, at *6-7. It also is inadmissible character evidence. Fed. R. Evid. 404; *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 189272, at *49-50 (N.D. Cal. Aug. 22, 2016) (granting motion to exclude evidence of defendant's unrelated prior litigation "on the grounds that [plaintiff] aims to use this evidence to impugn the character of [defendant] and [its] employees," which is "improper and impermissible under Federal Rule of Evidence 404"). Further, explaining the issues in that trial would waste time in this already complex trial. *Grace*, 2020 U.S. Dist. LEXIS 7883, at *7-8 (excluding evidence of prior litigations to avoid "time-consuming tangents" and a "side trial," among other Rule 403 considerations); *Fahmy v. Jay Z, et al.*, No. 2:07-cv-05715, 2015 U.S. Dist. LEXIS 129446, at *45-46 (C.D. Cal. Sept. 24, 2015) (excluding evidence of prior unrelated copyright infringement claims as "minimally probative to establish the defendants'

willfulness" while carrying "a substantial risk of prejudicing the jury" and "result[ing] in mini-trials [which would] unduly delay" the trial). Any argument or reference to the *CareDx* case should be excluded.

**B. Unrelated Class Action Lawsuits, and Related Media Coverage Should Be Excluded**

In 2022, consumer class action lawsuits were filed against Natera alleging that the results from Natera's prenatal tests are not reliable. *Davis v. Natera*, No. 4:22-cv-00985, Compl. Dkt. 1 (N.D. Cal. Feb. 17, 2022); *Law v. Natera*, No. 4:22-cv-01162, Compl. Dkt. 1 (N.D. Cal. Feb. 24, 2022). The product at issue in those lawsuits is a Natera product called Panorama, which is a Non-Invasive Prenatal Test ("NIPT"). This case has nothing to do with Panorama, prenatal testing or NIPTs generally. Like with the *CareDx* litigation, permitting reference to or evidence of these pending lawsuits on completely unrelated Natera products and health conditions would only serve to unduly prejudice Natera by suggesting that all of Natera's tests are unreliable. That is improper. Permitting such evidence also will result in time-consuming mini-trials as Natera will be required to explain to the jury why the allegations in these lawsuits are untrue, which will involve explaining the science and studies behind products and health conditions not at issue here. The inevitable undue prejudice and time consumption that will result from allowing this irrelevant evidence far outweighs any marginal relevance there might be in introducing these class action lawsuits.

Notwithstanding the lack of relevance of these unrelated suits, Guardant has injected them into this case, along with an inflammatory January 2022 New York Times article entitled "When They Warn of Rare Disorders, These Prenatal Tests Are Usually Wrong" that is cited in the complaints. *See* Ex. 18 (claiming the Times's analysis showed test results are "incorrect about 85 percent of the time" and one Natera prenatal screening in particular is wrong three times as often as it is right); Ex. 1 (Chapman Dep. Tr.) at 299:11-17 (Counsel for Guardant asking Natera's CEO, "Let's talk about the New York Times. New York Times published an exposé on Natera in January 2022, right?"); *id.* at 301:2-3 ("And the article did mention Natera specifically by name, right?"); *id.* at 301:6-9.

Allowing argument or evidence about this irrelevant article, or other similar ones, or the

lawsuits they fueled will unduly prejudice Natera and will result in a time-consuming mini-trial as Natera will have to address the inaccuracy of the statements in the lawsuits and NYT article about its NIPT product, which is also confusingly lumped together with other companies' products discussed in the article.  Moreover, Natera will need to introduce rebuttal evidence showing that, after this NYT article was published, it was "immediately rebutted by medical societies and peer-reviewed evidence, including the largest multisite prospective study that's ever been done in the field of non-invasive prenatal testing. . . ." Ex. 1 (Chapman Dep. Tr.) at 300:8-18; 302:3-15; 302:20-303:11 (explaining the largest peer reviewed study that has ever been performed "invalidated the reports of the New York Times"); Ex. 19 (Am. College of Medical Genetics Systematic Evidence Review) at 1 ("NIPS is a highly accurate screening method for T21, T18, and T13 in both singleton and twin pregnancies."); Ex. 20 (Am. College of Medical Genetics and Genomics Practice Guideline Paper) at 1 ("ACMG strongly recommends NIPS over traditional screening methods for all pregnant patients with singleton and twin gestations for fetal trisomies 21, 18, and 13 and strongly recommends NIPS be offered to patients to screen for fetal sex chromosome aneuploidy."); Exs. 21a, 21b (Am. Journal of Obstetrics and Gynecology Jan. 13, 2022  Paper) at 1 ("Noninvasive cell-free DNA prenatal screening for 22q11.2 deletion syndrome can detect most affected cases, including smaller nested deletions, with a low false positive rate.").

This case is complicated enough without interjecting evidence or argument about unrelated lawsuits about unrelated diagnostic tests for completely different medical conditions.  All such evidence should be excluded under Rules 402 and 403.  Additionally, the article is inadmissible hearsay and should be excluded for that independent reason.  *Larez v. City of Los Angeles*, 946 F.2d 630, 641-44 (9th Cir. 1991) (finding newspaper articles inadmissible hearsay); *Hackworth v. Rangel*, 649 F. App'x 525, 526 (9th Cir. 2016) (affirming decision to exclude emergency room report, investigative report, and audio in the interview video as hearsay); *Escobar v. Airbus Helicopters SAS*, No. 13-00598 HG-RLP, 2016 U.S. Dist. LEXIS 140152, at *16 (D. Haw. Oct. 7, 2016) ("News articles, videos, or press reports are inadmissible hearsay.").

**C. Guardant Should Not Be Allowed to Present Evidence of an Irrelevant Paper that Can Serve No Purpose But to Tarnish Natera's Reputation**

Similarly, Guardant also should be precluded from introducing or referencing a biased 2022 paper published by a company shorting Natera stock—Hindenburg Research—entitled "Natera: Pioneers in Deceptive Medical Billing." Ex. 22.

First, the Hindenburg Paper is about Natera's same NIPT product discussed above and Natera's purported billing practices related to those tests, and includes discussion of the aforementioned unrelated lawsuits and the NYT article. *Id*. As discussed above, Natera's NIPT product is entirely irrelevant to this case, as are Natera's billing practices. Nonetheless, Guardant has interjected it into this case. *See, e.g.*, Ex. 1 (Chapman Dep. Tr.) at 298:18-20 (asking Natera's CEO "Is your position that the statements made in that Hindenburg Research report regarding Natera's medical billing practices are false?"). Because this evidence is irrelevant, any reference to it should be excluded.

Second, allowing reference to, or the introduction of, this paper is likely to result in unfair prejudice to Natera. The prejudice is apparent from the title alone: "Natera: Pioneers in Deceptive Medical Billing." Of course, this case has nothing to do with allegedly deceptive billing practices. The only purpose reference to or argument about this paper would serve is to paint Natera as a bad actor generally based on purported practices that have nothing to do with this case.

Third, if reference to this paper is allowed, it would result in an undue waste of time in an already-complex case. As Mr. Chapman explained at his deposition, Natera's position is that the paper is inaccurate, and Natera issued a response the morning after it was released "rebutting every point made in the Hindenburg report." Ex. 1 (Chapman Dep. Tr.) at 298:10-12. It would also result in a detour into confusing issues around short sales of Natera stock for Natera to explain the biased nature of the paper. As the paper acknowledges, the authors had shorted Natera's stock at the time they wrote the article, thus providing them with a strong incentive to disseminate negative information about Natera—even if untrue—to negatively impact the price of Natera's stock price:

> [W]e have taken a short position in shares of Natera, Inc. (NASDAQ:NTRA). . . . You should assume that as of the publication date of any short-biased report or letter, Hindenburg Research (possibly along with or through our members, partners,

affiliates, employees, and/or consultants) along with our clients and/or investors ***has a short position in all stocks*** (and/or options of the stock) covered herein, ***and therefore stands to realize significant gains in the event that the price of any stock covered herein declines.***

Ex. 22 (Hindenburg Paper) (emphasis added); *id.* ("**Disclosure: We are short shares of Natera, Inc. (NASDAQ:NTRA)**") (emphasis in original).  To demonstrate this bias, Natera would have to give the jury a lesson on shorting stock and how it works, none of which is relevant to this false advertising case.  Permitting evidence of or reference to this paper poses serious dangers of undue prejudice and consumption of time.  The Court should exclude this irrelevant, inflammatory evidence.

Finally, this paper is inadmissible hearsay and should be excluded on that independent ground.  Fed. R. Evid. 801(c); *Escobar*, 2016 U.S. Dist. LEXIS 140152, at *16 ("News articles, videos, or press reports are inadmissible hearsay.") (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 640-44 (9th Cir. 1991) and *Hackworth v. Rangel*, 649 Fed. Appx. 525, 526 (9th Cir. 2016)).

### III.  CONCLUSION

For at least the reasons stated above, Natera's motion *in limine* should be granted.

DATED:  May 26, 2023                    Respectfully submitted,

                                                  QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP

By      */s/ Kevin P.B. Johnson*
     Kevin P.B. Johnson
     Attorneys for Defendant and Counterclaim-
     Plaintiff NATERA, INC.

**Saul Perloff (157092)**
saul.perloff@shearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@shearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@shearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@shearman.com
**SHEARMAN & STERLING LLP**
300 W. Sixth Street, 22nd Floor
Austin, Texas 78701
Telephone   (512) 647-1900

**Lillian Mao (267410)**
lillian.mao@shearman.com
**SHEARMAN & STERLING LLP**
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone   (650) 838-3600

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**SHEARMAN & STERLING LLP**
599 Lexington Ave
New York, NY 10022
Telephone   (212) 848-4000

**Attorneys for Plaintiff/Counter-claim defendant GUARDANT HEALTH, INC.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>NATERA, INC.,<br><br>Defendant. | Case No. 3:21-cv-04062-EMC<br><br>**PLAINTIFF GUARDANT HEALTH, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT NATERA, INC'S MOTION IN LIMINE NO. 6: MOTION TO EXCLUDE EVIDENCE OF UNRELATED LITIGATIONS, PUBLICATIONS, AND MEDIA COVERAGE**<br><br>**Pretrial Conference:**<br>Date:           June 28, 2023<br>Time:          3:00 p.m.<br>Place:         Courtroom 5 |

I.     INTRODUCTION

Guardant will introduce evidence at trial that Natera intended to harm Guardant and mislead consumers as part of its █████████████████ advertising campaign. Natera will challenge this characterization and instead argue that this campaign was designed to help patients and educate oncologists about Guardant's alleged misinformation. Natera's prior false advertising course of conduct is highly probative of Natera's true intent and will rebut the narrative that its witnesses—including its CEO—have spun in depositions. Recently, a jury found on remarkably similar facts that Natera intentionally and willfully engaged in false and misleading advertising in violation of the Lanham Act. As here, the jury found that Natera made false performance comparisons between its product and that of its competitor (CareDX), based on data from different, unrelated studies, and awarded CareDX $44.9MM (the "CareDX False Advertising Evidence"). This evidence is admissible pursuant to Federal Rule of Evidence 404(b) as evidence of Natera's intent, motive, and *modus operandi*. Natera's false advertising conduct has also extended to its non-invasive prenatal tests (the "NIPT Evidence"), which has precipitated similar allegations by class action plaintiffs and which is admissible for similar reasons. Natera has also engaged in deceptive billing practices, which have been the subject of a settlement with the Department of Justice and a scathing public report (the "Deceptive Billing Evidence"). This is probative of Natera's alleged reputational harm, which Natera has put at issue in the case. For all of these reasons, Natera's motion should be denied.

II.    **THE CAREDX FALSE ADVERTISING EVIDENCE IS ADMISSIBLE**

*The CareDX False Advertising Evidence Is Relevant*

"Generally speaking, evidence of other lawsuits against a party is admissible where relevant and offered for a proper purpose under Rule 404(b)." *Jackson v. Federal Express,* No. CV 10-01760, 2011 WL 13268074, at * 2 (C.D. Cal. June 13, 2011); *see also Chaudhry v. Smith,* No. 1:16-cv-01243-SAB, 2020 WL 869115, at * 3 (E.D. CA Feb. 21, 2020) ("[T]here are instances where a prior case, including the verdict or damages, are relevant and admissible."). As set forth below, the CareDX False Advertising Evidence meets both requirements.

In the CareDX litigation, CareDx alleged, and the jury ultimately found, that Natera utilized

a false advertising campaign in 2018-2019. Like here, the campaign was designed to deceive doctors, insurance companies, and other healthcare professionals into believing that Natera's Prospera—a diagnostic assay that uses cfDNA in blood to predict transplant rejection—was superior to its key competitor's test (CareDX's AlloSure assay). Ex. 1438 (CareDX First Amended Compl. ¶¶ 1, 3-4); Ex. 1439 (CareDX jury verdict form). The overlap between the cases is striking:

- In both cases, Natera falsely claimed its product was superior to its competitor based on purported performance comparisons. *Compare* Ex 1439 at 5 ("When comparing published clinical validation studies, Prospera demonstrated better performance in correctly classifying patients with active rejection."), *with* Ex. 304 at NATERA_449106 ("███████████████"); 

- In both cases, Natera falsely claimed its product's sensitivity was higher than that of its competitor. *Compare* Ex. 1439 at 5 (showing 89% sensitivity for Prospera and 59% sensitivity for AlloSure), 6 (citing "higher sensitivity . . . than the competitive cfDNA assay"), 7 ("Natera reported higher sensitivity (89% vs. 59%) . . . than [AlloSure]"), *with* Ex. 304 at NATERA_449106 █████████████████████), Ex. 315 (█████);

- In both cases, Natera falsely claimed that its product's NPV was higher than that of its competitor. *Compare* Ex. 1439 at 8 (showing NPV of 95% for Prospera and 84% for AlloSure), *with*  Ex. 304 at NATERA_449106 (████████████████████, Ex. 139 at NATERA_001786 ████████████████████, Ex. 175 at NATERA_003295 (same);

- In both cases, Natera falsely claimed that its product was superior to its competitor based on false and misleading side-by-side performance comparisons that suggested the listed metrics were based on apples-to-apples comparisons. *Compare* Ex. 1439 at 10 (comparing Prospera with AlloSure on various metrics), 12 (same) *with* Ex. 304 at NATERA_449106 (███████████████████); and

- In both cases, Natera based its performance comparisons on *different* studies, involving *different* patient populations, conducted at *different* times, using *different* methodologies. *Compare* Ex. 1438 ¶¶ 4, 37 ("[T]he methodology of the two studies differs so significantly that no meaningful or reliable conclusions can be drawn between the performance of the two products."), *with* Dkt. 326 at 14 (denying summary judgment in part because "advertising statements are literally false under the Lanham Act when two products portrayed as comparable in an advertisement are not actually comparable–that the advertisement omits differences which would have been material to recipients." (internal quotations omitted).

The jury awarded compensatory damages to CareDX in the amount of $21,200,000 and punitive damages in the amount of $23,700,000. Ex. 1439 at 17-18. This evidence is relevant to assessing

whether Natera engaged in similar false advertising in this case. *See Engquist v. Oregon Dept. of Agriculture,* 478 F.3d 985, 1009 (9th Cir. 2007) (prior jury verdict of discrimination "is relevant evidence in that it has some tendency to make the fact of discrimination by the same Defendants more probable than without the evidence").

### *The CareDX False Advertising Evidence Is Admissible Pursuant to FRE 404(b)*

Moreover, the CareDX False Advertising Evidence squarely fits within the permissible avenues of Federal Rule of Evidence 404(b)—*i.e.* to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Ninth Circuit has repeatedly emphasized that this is "a rule of inclusion." *United States v. Lague,* 971 F.3d 1032, 1040 (9th Cir. 2020) (internal quotations omitted). The applicable standard—which Natera entirely ignores—requires only that: "(1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged." *United States v. Ayers,* 924 F.2d 1468, 1473 (9th Cir. 1991). Each element is satisfied here.

**First**, the jury's verdict establishes that Natera engaged in false and misleading advertising towards CareDX—Guardant is not relying on unproven allegations.

**Second**, Guardant is offering the CareDX False Advertising Evidence to show Natera's motive, intent, absence of mistake or accident, and *modus operandi*. Intent and motive are relevant issues: If Guardant establishes that Natera intended to deceive consumers, there is a presumption that consumers were in fact deceived. *See, e.g., William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258-59 (9th Cir. 1995). In addition, Guardant seeks punitive damages which can be awarded if Guardant establishes that Natera acted maliciously. *See, e.g., Binder v. Disability Group, Inc.,* 772 F. Supp. 2d 1172, 1184 (C.D. Cal. 2011); *see also Grasshopper House, LLC v. Clean and Sober Media, LLC*, No. 19-56008, 2021 WL 3702243, at *3 (9th Cir. Aug. 20, 2021) (explaining that "Defendants' mental state" is relevant to disgorgement).

The parties dispute Natera's motive and intent. Guardant contends that Natera intended to

1  deceive consumers as part of its ▮▮▮▮ advertising campaign, which was designed to derail
2  Guardant Reveal by "▮▮▮▮▮▮▮▮▮▮," Ex. 289 at NATERA_005904, and "
3  ▮▮▮▮▮▮▮▮▮▮" Ex. 134 at NATERA__439539. ▮▮▮▮ was motivated by Natera's fear
4  that Guardant could "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 435 at NATERA__439084,
5  given Reveal's performance, speed, and simplicity. This caused Natera to make false comparisons.
6  Natera, by contrast, asserts that it was motivated by altruism and crafted ▮▮▮▮ to save
7  patients and educate oncologists. Ex. 1440 (Chapman Dep. 202:9-12 (asserting that Natera's "
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮ 202:2-5 ▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮) As discussed below, the CareDX False Advertising
11 Evidence is probative of both issues, and demonstrates Natera's *modus operandi*.

12     **Third,** the CareDX False Advertising Evidence is not remote in time to the false advertising
13 here. The former spanned from 2018-2019, and Natera's Anti-Reveal campaign principally started
14 in early 2021 (before Reveal's launch) and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 432 at
15 NATERA_226835. *See, e.g., United States v. Flores-Blanco,* 623 F.3d 912, 919 (9th Cir. 2010)
16 ("The prior acts, which took place approximately two years before the present offenses, were not
17 too remote in time.").

18     **Fourth,** the CareDX False Advertising Evidence is substantially similar to the alleged false
19 advertising in this case. As highlighted above, Natera's conduct towards CareDX targeted similar
20 recipients, presented the Natera product as superior to its key competitor on overlapping metrics
21 (including sensitivity and NPV), used similar means and methods (such as false side-by-side
22 comparisons), and relied on separate and non-comparable studies without disclosing the
23 differences. This rebuts Natera's claim that it acted out of altruism and establishes that Natera acted
24 intentionally and maliciously. *See, e.g., Brighton Collectibles, Inc. v. Coldwater Creek Inc.,* No.
25 06-CV-01848-H (POR), 2009 WL 10671818, at * 6 (S.D. Cal. April 22, 2009) (admitting prior
26 efforts to "knock off" handbag designs in copyright infringement case because it was "highly
27 relevant to prove Coldwater's intent and absence of mistake in knocking off Brighton designs, and
28 thus admissible under Rule 404(b)"); *TrafficSchool.com, Inc. v. Edriver, Inc.,* 633 F. Supp. 2d 1063,

1081, 1081 n.4 (C.D. Cal. 2008) (admitting prior "pattern of registering misleading domain names" in Lanham Act case as the evidence shows "intent to register misleading domain names . . . and is therefore admissible"), *aff'd in part, rev'd in part on other grounds and remanded*, 653 F.3d 820 (9th Cir. 2011); *United States v. Beckman,* 298 F.3d 788, 794 (9th Cir. 2002) (evidence of prior drug runs "establishes knowledge, intent, and lack of mistake").

And given the striking similarities between the two schemes, the CareDX False Advertising Evidence is also admissible as Natera's false advertising *modus operandi*. *See United States v. Dhingra*, 371 F. 3d 557, 566-67 (9th Cir. 2004) ("[T]he prior incident was highly probative of Dhingra's intent and *modus operandi* with respect to the present act. In both instances, Dhingra contacted a minor under the age of 18 years over IM for the purpose of soliciting sexual activity, arranged to meet, and at the meeting attempted to engage in sexual activity by persuasion and coercion."). Natera's position that the CareDX False Advertising Evidence is inadmissible because it was "brought by a different plaintiff over different advertisements for different products" (Natera Mot. at 2) is sophistry. It is well-settled that the key test under Rule 404(b) is the "nature of the activity" at issue—here, false comparative advertising—not the specific product or victim. *United States v. Bibo-Rodriguez,* 922 F.2d 1398, 1402 (9th Cir. 1991) ("The relevant factor is the type of activity taken, not the identity of the drugs") (internal quotations omitted).

### The CareDX False Advertising Evidence Is Not Barred By Rule 403 or Otherwise

As set forth above, the probative value of this evidence is high. This fact pattern is therefore distinguishable from many of Natera's cited cases in which prior lawsuits and verdicts were offered merely as background or anecdotal information.[1] Furthermore, any danger of unfair prejudice or confusion of the issues can be addressed through a proper limiting instruction. *See, e.g., United States v. Boulware,* 384 F.3d 794, 808 (9th Cir. 2004) ("Any danger that the jury would have given

---

[1] *See, e.g., Grace v. Apple, Inc.,* No 17-CV-00551-LHK, 2020 WL 227404, at *2 (N.D. Cal. Jan. 15, 2020) (characterizing at-issue litigation as "background information"); *Kakkis v. Provident Mut. Life Ins. Co. of Phil.,* No. CV 00-08297 DDP (JWJx), 2002 WL 34357203, at * 2 (C.D. Cal. Oct. 7, 2002) (characterizing at-issue litigation as "anecdotal" and of "minimum probative value"); *Ohio House LLC v. City of Costa Mesa*, 2022 WL 2189541, at *2–3 (C.D. Cal. Mar. 28, 2022) (challenging *plaintiff's* prior litigation); *Reddy v. Nuance Commc'ns, Inc.,* 2015 WL 4648008, at *1–2 (N.D. Cal. Aug. 5, 2015) (same).

1  undue weight to the state court judgment could have been dealt with by a cautionary instruction.");
2  *Duckworth v. Ford,* 83 F.3d 999, 1001-1002 (8th Cir. 1996) (holding that adverse jury verdict
3  against defendant was properly admitted under 404(b); limiting instruction cured any unfair
4  prejudice). There also is no risk of a "mini-trial" because Natera lost the actual trial with CareDX.
5  Guardant intends to introduce the First Amended Complaint (Ex. 1438), the jury's verdict form
6  (Ex. 1439), and to briefly question Natera executives Steve Chapman and Solomon Moshkevich
7  about the underlying facts; both were involved in the underlying activities (Chapman is specifically
8  named in the FAC (Ex. 1438 ¶ 45), and Moshkevich was deposed in the CareDX case.).[2]

## III.    THE NIPT EVIDENCE IS ADMISSIBLE

Natera's false advertising has extended to its NIPT products. Consumers recently filed class actions against Natera, alleging that Natera failed to disclose that its NIPT products have high false positive rates but instead advertised its tests as reliable detectors of fetal abnormalities. Ex. 1441 (FAC ¶¶ 2-3, 6, 35 (alleging that Natera falsely claims it is "the most reliable way of noninvasively assessing a baby's health"); 42 (alleging that Natera falsely claims its tests "are validated with >99% sensitivity and specificity"); 49 (alleging that certain Natera tests have PPV of only 18%); 52 (alleging that certain Natera tests have PPV of only 2-5%).) One Complaint cited a January 1, 2022 New York Times article and study that reported that Natera's and its competitors' prenatal blood testing generated false positives about 85 percent of the time. (Natera Mot. Ex. 18 at 4). The raw data caused the FDA to warn consumers that NIPT manufacturers' claims about tests being reliable or highly accurate "may not be supported with sound scientific evidence." Ex. 1442.  The FDA cited the risks of false positives from these prenatal tests and warned consumers against making decisions about pregnancies based solely on them. *Id.*

The NIPT Evidence is admissible to rebut Natera's claim that it suffered reputational harm

---

[2] Though not explicitly raised by Natera, Guardant submits that the First Amended Complaint and verdict form should be admitted as an exception to the hearsay rule as a public record, *see* 803(8), or under the residual exception to the hearsay rule, *see* FRE 807. Both documents are supported by "sufficient degrees of trustworthiness" as they are public records and the jury's verdict form is "more probative" of the trial result than any other evidence that Guardant can reasonably obtain. *See, e.g., Grant v. CRST Expedited, Inc.,* No. 1:18-CV-433, 2021 WL 2099314, at *4-5 (E.D. Tex. March 23, 2021) (admitting jury verdict form under FRE 807). In addition, the Court should take judicial notice of the jury's verdict pursuant to Federal Rule of Evidence 2w01. *See id.* at *4-5.

1  through Guardant's alleged false and misleading advertising campaign. Ex. 1440 (Chapman Dep.
2  Tr. 295:9-296:3 ████████████████████
3  ██████) Guardant is permitted to introduce evidence that shows other factors that may have
4  impacted Natera's reputation over the last two years (a non-hearsay purpose), including the NIPT
5  Evidence. *See, e.g., Chaudhry*, 2020 WL 869115, at *3.[3]

6  Additionally, the facts underlying the NIPT Evidence are admissible pursuant to Rule
7  404(b) for similar reasons as the CareDX False Advertising Evidence. It too is probative of Natera's
8  motive, intent, and absence of mistake. Natera's NIPT false advertising is similar in time and scope
9  to the false advertising Natera has done in this case, including by overstating key metrics of its
10 products' performance. *Compare* Ex. 1441 ¶¶ 42, 49, 52 (falsely inflating sensitivity and specificity
11 metrics), *with* Dkt. 326 at 16, 19-20 (Natera overstating its failure rate and lead times). While there
12 has not been a finding against Natera concerning these allegations, Natera can explain that it
13 contests them. Any prejudice can similarly be cured with a limiting instruction.[4]

### IV. THE DECEPTIVE BILLING EVIDENCE IS ADMISSIBLE

In 2018, Natera settled a *qui tam* action with the United States Department of Justice for $10.6 million. The DOJ's allegations included that Natera misrepresented to federal healthcare programs the services for which Natera billed. Ex. 1443 ¶¶ E (c)-(d). Four years later, Hindenburg Research published a report regarding similar overbilling schemes based in part on interviews with former Natera employees (Natera Mot. Ex. 22 at 1-3). This evidence is also admissible to rebut Natera's claims that it has suffered reputational harm in the marketplace, as these reports had an immediate impact on Natera's stock price. Ex. 1440 (Chapman Tr. 307:21-25).

### V. CONCLUSION

The Court should deny Natera MIL No. 6 in its entirety.

---

[3] This is an alternative basis to admit the CareDX False Advertising Evidence.
[4] To the extent the Court permits Natera's expert to offer opinion testimony concerning purported issues with Guardant's Reveal's "false positive" rates, Guardant should be permitted to cross-examine the expert with respect to the high false-positive rates of Natera's NIPT.

Dated: June 5, 2023

**SHEARMAN AND STERLING, LLP**

By: */s/ Saul Perloff*
     Saul Perloff

Attorneys for Plaintiff/Counter-Defendant
GUARDANT HEALTH, INC.