# EXHIBIT 1

[redacted]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GUARDANT HEALTH, INC., a Delaware corporation,

Plaintiff,

vs.

NATERA, INC., a Delaware corporation,

Defendant.

No. 3:21-cv-04062

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF STEVE CHAPMAN
Redwood Shores, California
Tuesday, July 26, 2022
Volume I

Reported by:
CATHERINE A. RYAN, RMR, CRR, B.S.
CSR No. 8239
Job No. 5316632

PAGES 1 - 354

[redacted]

MS. MAROULIS: Objection. Form.

THE WITNESS: I don't -- I don't have all the exact details.

BY MR. LaVIGNE:

Q You're also aware of the paper that Hindenburg Research published in March 2022, right?

A Yes.

Q And that was published about your company, Natera, right?

A Yes.

Q Entitled "Pioneers in Deceptive Medical Billing."

Do you see that?

A I saw that, yes.

Q You're familiar with it?

A We immediately responded the next morning.

Q That caused a harm to Natera's goodwill and reputation, right?

MS. MAROULIS: Objection. Form.

//

BY MR. LaVIGNE:
Q Would you say, since you're testifying about the goodwill and reputation --
A I believe the --
Q Can I finish my question?
A -- misleading short-seller report, you know, by a company, Hindenburg, that stands to significantly profit by misleading customers about Natera's practices, did harm us.
We responded immediately the next morning and provided significant facts rebutting every point made in the Hindenburg report.
Q So do you view Hindenburg as biased?
A In that context, I believe they've noted in their report that they have had a significant short position of Natera stock, which means they stand to gain by the stock going down. So, yes.
Q Is it your position that the statements made in that Hindenburg Research report regarding Natera's medical billing practices are false?
A Yes.
Q Even though it was based on interviews with over two dozen former Natera employees, patients, and industry experts?
MS. MAROULIS: Objection. Form.

[redacted]

THE WITNESS: Yes.
BY MR. LaVIGNE:
Q Your position is that that --
A It was false.
Q I'm sorry. Go ahead.
A It was false, yes.
Q So your position is the report is false?
A Yes.
Q And it has no basis in fact?
A Yes.
Q Let's talk about the New York Times.
New York Times published an exposé on Natera in January 2022, right?
MS. MAROULIS: Objection. Form. Misleading.
THE WITNESS: I don't know if it's an exposé, and it wasn't about Natera.
They published an article in 20- -- in early 2022 about non-invasive prenatal testing, and Natera was one of five companies listed, including Roche Diagnostics, Quest Diagnostics, LabCorp, Myr- -- and Myriad.
BY MR. LaVIGNE:
Q And the headline was "These prenatal tests are usually wrong when warning of rare disorders";

is that right?

A I'm not sure if that was the headline at the time. I don't recall specifically, but I know the article had several edits made post-publication, where they had to make corrections to the article.

And I believe that headline may have been corrected; although, I -- I can't remember.

Q Do you think the New York Times is biased?

A I think sometimes they get it wrong. And this article, in many cases, was inaccurate. And it was immediately rebutted by medical societies and peer-reviewed evidence, including the largest multisite prospective study that's ever been done in the field of non-invasive prenatal testing, which was published in mid-January, only about 15 days after the New York Times article came out, that showed that Natera got accurate results greater than 99 percent of the time.

Q But in terms of their reputation, you would agree that the New York Times has wide readership in the United States, right?

MS. MAROULIS: Objection. Form.

THE WITNESS: I don't know their readership.

//

[redacted]

BY MR. LaVIGNE:

Q And the article did mention Natera specifically by name, right?

A Yes, among five other -- or four other companies.

Q And this article was cited in multiple class action consumer lawsuits patients have filed against Natera for false positive results from Natera's prenatal tests, right?

MS. MAROULIS: Objection. Form.

THE WITNESS: I'm not sure if patients had filed them or if, sort of, plaintiffs' attorneys, you know, created these lawsuits after seeing what they thought was an opportunity.

BY MR. LaVIGNE:

Q There have been a number of class action lawsuits filed against Natera as of May 2022, right?

A I wouldn't say that. I'm --

Q What would you say?

A I believe there's a handful --

Q Handful?

A -- related to the -- these false and misleading articles.

Q Oh, so you're saying the New York Times article is false and misleading?

[redacted]

A Yes.

MS. MAROULIS: Objection. Form.

THE WITNESS: And it was immediately rebutted by professional medical societies that made statements about it, including the American College of Medical Genetics.

And there was a -- within 15 days of the article coming out, there was a peer-reviewed paper in the Journal of the Society of Maternal-Fetal Medicine, I believe, the Gray Journal, which rebutted the claims made in the New York Times article.

So, yes, it was inaccurate, and there were many corrections issued as a result of the inaccurate reporting.

BY MR. LaVIGNE:

Q So the New York Times article, according to you, was false and misleading?

MS. MAROULIS: Objection. Form.

THE WITNESS: The New York Times article had many inaccuracies, and they've had to issue many corrections because the information that they described in the article was inaccurate.

It was immediately rebuked by professional medical societies, including the American College of

[redacted]

Medical Genetics. And in approximately 15 days after the article came out, the Journal for the Society of Maternal-Fetal Medicine, I believe the Gray Journal -- I might be getting the exact title wrong. It might be the Journal for Obstetrics and Gynecology -- published the largest peer-reviewed study that's ever been performed, which was a five-year follow-up study of 25,000 prenatal patients with genetic testing performed on all live births, and they completely invalidated the reporting of the New York Times.

BY MR. LaVIGNE:

Q In March 2022, Natera lost a jury trial with CareDx relating to its advertising of Prospera; is that right?

A No, that's not correct. The jury found that both CareDx and Natera were liable. Natera didn't lose.

Q The jury returned a 45-million-dollar verdict against Natera, correct?

A Well -- but that verdict has not been confirmed by the judge. And there's a motion pending in front of the judge to overturn that, and we believe that will be overturned.

Q My question is simple: The jury, 12

people, in the Federal District Court of Delaware, returned a 45-million-dollar verdict against Natera.

That's what the jury found, right?

A The jury found --

MS. MAROULIS: Objection. Form.

THE WITNESS: It's my understanding that the jury found CareDx and Natera were both liable. They did enter a monetary verdict against Natera; however, the judge never confirmed the verdict, and now there's a motion pending in front of the judge to overturn the jury verdict, and we believe he will based on comments that the judge has made.

BY MR. LaVIGNE:

Q The allegations were that Natera intentionally and recklessly misled the transplant community by engaging in false advertising and promoting and marketing Prospera.

Those were the core allegations, right?

A I don't recall.

Q Do you recall that $23.7 million in punitive damages was awarded by the jury?

MS. MAROULIS: Objection. Form.

THE WITNESS: I'd have to review the exact amounts, but as I mentioned, the -- the -- any -- any verdict entered by the jury is -- has not been



Veritext Legal Solutions
800-336-4000

[redacted]

confirmed by the judge, and we believe the judge is going to overturn any verdict entered by the jury.

BY MR. LaVIGNE:

[redacted]

[redacted]

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ X ] was [ ] was not requested.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney or any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: 07/28/2022



Catherine A. Ryan, RMR, CRR, B.S.

CSR No. 8239