QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Anne S. Toker (*pro hac vice* pending)
annetoker@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

Attorneys for Defendant
NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., | CASE NO. 3:21-CV-04062-EMC |
| Plaintiff, | **NATERA, INC.'S OPPOSITION TO GUARDANT HEALTH, INC.'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT OF HOWARD S. HOCHSTER** |
| vs. | |
| NATERA, INC., | |
| Defendant. | Judge:     Edward M. Chen |
| | **REDACTED FOR PUBLIC FILING** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.    DR. HOCHSTER'S UPDATE IS TIMELY AND APPROPRIATE ..................................... 2

    A.    The Report Is Limited To An Important Recent Event That Confirms Key Opinions In The Original Report ............................................. 2

    B.    The FRCP And Case Law Fully Support Dr. Hochster's Supplement ............... 3

    C.    Dr. Hochster's Opinions Are Already Part Of The Case ................................. 4

    D.    Dr. Hochster Is Qualified To Offer His Opinions On The COBRA Trial ......... 4

    E.    There Is No Prejudice To Guardant ............................................................. 6

II.    THE COBRA CLINICAL TRIAL AND ITS DATA ARE HIGHLY RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES IN THIS CASE ....................................... 7

    A.    The COBRA Trial Is An Important Neutral Clinical Trial ............................... 7

    B.    The COBRA Clinical Trial Is Directly Relevant To Natera's Claims ............... 8

III.    GUARDANT SHOULD HAVE PRODUCED THE COBRA DATA EARLIER IN THE CASE ............................................................................................................ 11

CONCLUSION ............................................................................................................. 13

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*Akeva L.L.C. v. Mizuno Corp.*,
5
    212 F.R.D. 306 (M.D.N.C. 2002) ............................................................................. 3

6

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018) .............................................................................. 6

7

*Brown v. DirecTV, LLC*,
8
    No. CV 13-1170-DMG (EX), 2022 WL 2117803 (C.D. Cal. May 19, 2022) .......................... 12

9

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) .................................................................................. 10

10

*Erhart v. BofI Holding, Inc.*,
11
    445 F. Supp. 3d 831 (S.D. Cal. 2020) ...................................................................... 5

12

*Exeltis USA Inc. v. First Databank, Inc.*,
13
    No. 17-cv-04810-HSG, 2020 WL 7025089 (N.D. Cal. Nov. 30, 2020) .................................... 6

14

*Lanard Toys Ltd. v. Novelty, Inc.*,
    375 F. App'x 705 (9th Cir. 2010) ............................................................................ 12

15

*Luke v. Family Care and Urgent Med. Clinics*,
16
    323 Fed. Appx. 496 (9th Cir. 2009) .......................................................................... 3

17

*Martinez v. Costco Wholsesale Corp.*,
18
    336 F.R.D. 183 (S.D. Cal. 2020) ............................................................................ 12

19

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*,
    No. C-06-1066PJH(EMC), 2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) .............................. 3

20

*Talbert v. City of Chicago*,
21
    236 F.R.D. 415 (N.D. Ill. 2006) .............................................................................. 3

22

*United States v. 1003.58 Acres of Land*,
23
    No. LACV1601014VAPSPX, 2018 WL 4945309 (C.D. Cal. Jan. 31, 2018) ........................... 12

24

*Wechsler v. Macke Int'l Trade, Inc.*,
    221 F.R.D. 619 (C.D. Cal. 2004) ............................................................................. 3

25

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
26
    259 F.3d 1101 (9th Cir. 2001) ............................................................................... 12

27

28

## **Rules**

Fed. R. Civ. Proc. 26(e)...............................................................................................3, 11

Fed. R. Civ. Proc. 37 ......................................................................................................11

Fed. R. Evid. 703 .............................................................................................................5

# INTRODUCTION

There are no grounds to strike the January 31, 2024 Report of Dr. Howard S. Hochster because—contrary to Guardant's allegation—the report is timely and does **not** contain novel opinions. The report is a timely update to already existing opinions based on the recent conclusion and public reporting of data on January 20, 2024 from a prospective clinical trial known as "COBRA" sponsored by a cancer group funded by the National Cancer Institute, a government entity. The recent results of the COBRA clinical trial confirm Dr. Hochster's pre-existing opinions about the rate of false positives from Guardant's Reveal test and attendant patient safety risks.

In his August 22, 2022 opening report, Dr. Hochster opined that Guardant's Reveal test was more prone to false positive results (i.e., positive test results where the patient did not, in fact, have recurring colorectal cancer (CRC)), which could mislead physicians and lead to undesirable health consequences. This opinion supports Natera's claim that Guardant's performance claims about Reveal in its advertising were false and misleading because Guardant based its advertised rates on a flawed and unreliable study (the Parikh Study) that could not be replicated in the real world with actual cancer patients, and because Guardant knew that its test could not in fact achieve the advertised "100% PPV" or "100% specificity," both of which imply <u>no</u> false positives. Guardant took Dr. Hochster's deposition on his opinions regarding Reveal, and this Court overruled Guardant's *Daubert* challenge. As the sole practicing CRC oncologist to testify live, Dr. Hochster's opinions—and his credibility—are a central part of the case.

Dr. Hochster's opening report recognized that there were ongoing trials – specifically referencing the COBRA clinical trial—regarding Reveal but noted that there was no measurable clinical data generated to date from which he could draw conclusions. The lack of measurable data changed on January 16, 2024—when, following a late 2023 trial suspension and then termination, the clinical data from COBRA was revealed. The new data confirmed Dr. Hochster's prior opinions, and he promptly updated his report, which was served on January 31, 2024. This procedure—updating a report to disclose new confirming data—is exactly in line with the Federal Rules of Civil Procedure. Indeed, Natera offered Dr. Hochster for a supplemental deposition on his update, which Guardant has so far refused.

The results of the COBRA trial—and its mid-stream termination due to excessive false positives from the Reveal test—are devastating to Guardant's continued positions in this case and likely the marketplace. It is a significant event when a neutral group terminates a trial under these circumstances. It is no surprise that Guardant seeks to strike a report related to this development. But the COBRA trial and the allegations about Reveal's false positives are already in the case. The COBRA results—bad facts for Guardant which have real-world human consequences to patients—cannot be excised from the world of facts to be presented to the jury. Dr. Hochster and Natera complied with their disclosure obligations at every step of this case. Indeed, from its participation in the trial Guardant had advance knowledge of the results yet said nothing and even now seeks to silence public discussion of this issue. It cannot claim surprise. Guardant's complaints regarding Dr. Hochster's update lack merit, and its motion should be denied.

## ARGUMENT

## I.    DR. HOCHSTER'S UPDATE IS TIMELY AND APPROPRIATE

### A.    The Report Is Limited To An Important Recent Event That Confirms Key Opinions In The Original Report

Dr. Hochster's Opening Report set forth that Guardant's Reveal assay, due to its unique approach to recurrence detection, was prone to false positives and false negative results. Dkt. 224-8, Ex. 1305 ("Op. Report") ¶ 24 ("Reveal, as a tumor-uninformed, non-bespoke MRD assay, is more prone to false positive or false negative ctDNA calls than tumor-informed assays because of the non-specific basic biology of these tests."). He further opined that that "the performance metrics of Reveal as marketed by Guardant are not supported by the actual clinical data generated by the ongoing clinical trials." *Id.* ¶ 122. At the time that Dr. Hochster submitted his Opening Report, the COBRA clinical trial was underway, but was "at an early stage and no measurable clinical data [had] been generated." *Id.* ¶ 120. Because there was no measurable clinical data at that time, Dr. Hochster could not include a detailed analysis of the COBRA trial in his Opening Report. Nor could he opine on the COBRA trial's impact on his analysis of Reveal's performance metrics and how those metrics compare to those marketed by Reveal.

The Supplemental Report properly builds on the opinions that Dr. Hochster included in his

Opening Report based on data released at the ASCO-GI Conference on January 16, 2024.[1]  Dr. Hochster submitted his Supplemental Report just days later, on January 31, 2024.

**B.      The FRCP And Case Law Fully Support Dr. Hochster's Supplement**

Because Dr. Hochster submitted a narrow supplement to his Opening Report, building on his existing opinions with newly released data, Dr. Hochster's Supplemental Report is appropriate under Rule 26(e).  *See Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619, 623 (C.D. Cal. 2004) (supplemental report before trial appropriate because original report put party on notice of intent to testify on particular subject matter and expert was offered for deposition).  Guardant's cited authority is not to the contrary.  In *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066PJH(EMC), 2008 WL 4601038, at *2 (N.D. Cal. Oct. 15, 2008), on which Guardant relies (Mot. at 5), the Court allowed a supplement following the close of fact discovery, noting that any prejudice suffered by the supplemental report could be cured by a continued deposition, as Natera has offered here.  Similarly, *Talbert v. City of Chicago*, 236 F.R.D. 415 (N.D. Ill. 2006), cited by Guardant (Mot. at 6), supports permitting Dr. Hochster's Supplemental Report, as the court permitted a supplemental report where the opinions "were not changed but simply 'bulked up.'" *Id.* at 425.  In *Luke v. Family Care and Urgent Med. Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009), the challenged expert declarations "asserted a new theory of causation" and did not "fill in a gap based on information previously unavailable." *Id.*  Here, Dr. Hochster's Supplemental Report simply "fills in the gap" of information regarding ongoing clinical trials (which were addressed in his Opening Report) with relevant information that was not available to him prior to the close of expert discovery.  And in *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (cited Mot. at 6), the court raised concerns that supplementation was intended to rectify "inadequate or incomplete preparation" of the initial report.  There was nothing inadequate about Dr. Hochster's

---

[1]  Although the COBRA clinical trial was terminated due to the unexpectedly poor performance of Reveal in August 2023, it was not until the ASCO-GI Conference in January 2024 that the underlying clinical data supporting the NCI's decision to terminate the study was made available to the public.  Specifically, an abstract describing the underlying data was first published in an abstract on the ASCO-GI website on January 16, 2024, and the results were presented orally during the ASCO-GI Conference on January 20, 2024.  As a practicing physician, Dr. Hochster attended the ASCO-GI Conference and listened to the presentation on the COBRA clinical trial.

1    Opening Report or his preparation thereof; the relevant data simply was not available until days

2    before he provided his Supplemental Report.

3          **C.      Dr. Hochster's Opinions Are Already Part Of The Case**

4          Guardant moved to exclude Dr. Hochster's opening and rebuttal reports (Dkt. 224-10), a

5    motion that this Court largely denied.  Dkt. 328.  The Court found that Dr. Hochster is permitted to

6    testify "as to the underlying characteristics of the MRD tests," including his opinion that "Reveal is

7    more prone to false calls that can lead to negative, undesirable health consequences for patients."

8    *Id.* at 11.  The supplemental report does just that with respect to the new, highly relevant data just

9    revealed.

10          Guardant previously sought to exclude Dr. Hochster's opinions regarding other studies

11    examining the performance of Signatera and Reveal, a challenge the Court rejected.  Dkt. 328.  With

12    respect to the Fakih study, a retrospective study of Signatera, the Court found that "[a]lthough he

13    did not firsthand participate in the study, Dr. Hochster can base his substantive criticism upon his

14    review of the Fakih study and his own expertise in the field."  *Id.*  Similarly, Guardant sought to

15    exclude Dr. Hochster's opinions on the COSMOS study, a prospective observational study in Japan

16    to assess the clinical performance of Reveal.  *Id.* at 17.  The Court rejected Guardant's challenge.

17    *Id.* at 18.  In so doing, the Court correctly reasoned that "[a]lthough neither Guardant nor Natera

18    cites the COSMOS study in any advertisement challenged in this case, the data from the COSMOS

19    study purportedly shows a high number of false positives and a corresponding low specificity for

20    Reveal, which would undermine Guardant's advertising claims of high specificity for Reveal."  *Id.*

21          As such, this Court has already permitted Dr. Hochster to provide his opinions on the rate of

22    false positives for Reveal, and the recent COBRA data are important results confirming his opinions

23    and reflecting critically important information which Guardant has known (but never disclosed) and

24    which bear on its clinical performance claims.

25          **D.      Dr. Hochster Is Qualified To Offer His Opinions On The COBRA Trial**

26          Guardant argues that Dr. Hochster is unqualified to put forth the opinions offered—which is

27    an improper attempt to revisit and seek reconsideration of this Court's prior Daubert decision.  The

28    Court should once again reject the argument.

1    _Dr. Hochster's Opinions Are Not Speculative._    Guardant argues (Mot. at 10) that Dr.

2    Hochster's opinions are speculative, as he was not an investigator in the COBRA clinical trial.  This

3    is not true.  The COBRA clinical trial was sponsored by the National Cancer Institute (NCI), and

4    Dr. Hochster's institution, Rutgers Cancer Institute, is one of the few NCI-designated

5    Comprehensive Cancer Centers in the country that actively participates in NCI trials.  Dr. Hochster

6    is personally knowledgeable of the COBRA clinical trial not only by virtue of his position as the

7    Associate Cancer Center Director for Clinical Researches of Rutgers Cancer Institute, overseeing

8    all clinical trials, but he also encouraged his own patients to participate in the COBRA trial (placing

9    his trust in NCI) if they were eligible.  In fact, Guardant has already cross-examined Dr. Hochster

10    about his involvement and knowledge of the COBRA trial during his deposition.  Ex. 6 (Hochster

11    Tr.) at 226:18-227:21 (asking about Dr. Hochster's knowledge of how Reveal is being used in the

12    COBRA trial and how many patients Dr. Hochster enrolled in the COBRA trial while raising no

13    question or skepticism regarding the depth or veracity of his knowledge).

14    Regardless, "an expert witness is 'permitted wide latitude to offer opinions, including those

15    that are not based on firsthand knowledge or observation.'"  _Houserman_, 509 F. Supp. 3d at 1305.

16    Given Dr. Hochster's extensive experience reviewing and evaluating published literature, he is well

17    situated to "interpret them based on his knowledge, experience, training, and education."

18    Indeed, Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case

19    that the expert _**has been made aware of**_ or personally observed."  Fed. R. Evid. 703 (emphasis

20    added); _Daubert_, 509 U.S. at 592 ("Unlike an ordinary witness, an expert is permitted wide latitude

21    to offer opinions, including those that are not based on firsthand knowledge or observation.").

22    _Dr. Hochster's Opinions Are Not Hearsay._    Guardant contends (Mot. at 13) that Dr.

23    Hochster's citation to the social media posts of other oncologists is inadmissible hearsay.  The Court

24    has already considered and rejected this argument.  Dkt. 328 (citing _Erhart v. BofI Holding, Inc._,

25    445 F. Supp. 3d 831, 839 (S.D. Cal. 2020) ["Experts may offer opinions based on otherwise

26    inadmissible testimonial hearsay if experts in the particular field would reasonably rely on those

27    kinds of facts or data in forming an opinion on the subject, and if they are applying their training

28    and experience to the sources before them and reaching an independent judgment, as opposed to

1   merely acting as a transmitter for testimonial hearsay.'"]).

2       The same result is appropriate here.  Dr. Hochster does not merely intend to repeat what is

3   contained in documents, or to read hearsay to a jury.  And he does not rely on social media posts for

4   their truth.  Instead, he reviewed and analyzed the evidence and, applying his expertise, developed

5   opinions about the implications, import, or meaning of the evidence.

6       _Guardant May Cross Examine Dr. Hochster._  Guardant faults Dr. Hochster for not including

7   Dr. Parikh's assessment of the COBRA trial in his report (Mot. at 10), but Dr. Hochster is under no

8   obligation to present another clinical oncologist's interpretation of the results.  In any event,

9   Guardant "is free to explore [these], and his opinions, during cross-examination.  And the jury may

10  decide what, if any, weight to give his conclusions at that time."  _Exeltis USA Inc. v. First Databank,_

11  _Inc._, No. 17-cv-04810-HSG, 2020 WL 7025089, *4 (N.D. Cal. Nov. 30, 2020); _In re Arris Cable_

12  _Modem Consumer Litig._, 327 F.R.D. 334, 364 (N.D. Cal. 2018) (Guardant may discredit [Dr.

13  Hochster's] interpretation of the [results] through competing evidence and incisive cross

14  examination.").

15      All of Dr. Hochster's opinions derive from his training, experience, and specialized

16  knowledge obtained over the course of his decades in the field, are well grounded in the evidence

17  and will help a jury understand the complicated technical concepts and specialized professional

18  practices at issue in this case.  They should be admitted.

19      **E.      There Is No Prejudice To Guardant**

20      Contrary to Guardant's complaints (Mot. at 8), there is no "ambush" or surprise to Guardant.

21  Dr. Hochster specifically referenced the ongoing COBRA clinical trial in his original report.  Op.

22  Report ¶ 120.  And importantly, as a participant, Guardant knew the results were forthcoming.  In

23  addition, when Natera served the report it concurrently offered a continued deposition of Dr.

24  Hochster—at that point over eight weeks away from trial.  Guardant chose not to take the deposition.

25      The "prejudice" to Guardant is that the trial turned out to support Natera's position.  If the

26  trial had turned out to the contrary—then Guardant would certainly be seeking to introduce its own

27  supplements.  The facts, however, are what they are.  The jury is entitled to evaluate the credibility

28  of the witnesses' testimony and opinions.  Dr. Hochster's actual beliefs and opinions are reflected

in his reports and should be allowed at trial.

## II.    THE COBRA CLINICAL TRIAL AND ITS DATA ARE HIGHLY RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES IN THIS CASE

The COBRA clinical trial—as Dr. Hochster flagged in his opening report—is an essential milestone in the field and directly relevant to many of the issues for trial.  The Court has already considered Guardant's motion regarding the appropriate scope of Dr. Hochster's opinions and permitted his opinions regarding the ongoing clinical trials – including the COBRA trial.  That opinion, however, is incomplete without the additional information that now exists regarding the early termination of the COBRA clinical trial.

### A.    The COBRA Trial Is An Important Neutral Clinical Trial

*The COBRA Clinical Trial.*  The COBRA clinical trial (which stands for **C**irculating tum**O**r DNA as a Predictive **B**ioma**R**ker in  **A**djuvant Chemotherapy in Patients with Stage IIA Colon Cancer) was initiated and sponsored in 2019 by NRG Oncology, a branch of the National Cancer Institute ("NCI"), a government entity.  Dkt. 447-2 ("Supp. Report") ¶¶ 2, 11.  Unlike the Parikh Study, the COBRA trial is a true prospective and randomized clinical trial.  *Id.* ¶¶ 16-17.  While initially projected to enroll over 1400 patients, the COBRA trial ultimately enrolled 635 participants who were randomized into two arms:  standard of care treatment (observation) versus prospective ctDNA-assigned treatment.  *Id.* ¶ 18.  Those who were in the ctDNA-assigned treatment group had their ctDNA tested at the baseline; those who tested negative for ctDNA were put on observation, and those who tested positive for ctDNA were given chemotherapy.  The participants received another ctDNA test at the six-month mark to determine who had achieved ctDNA "clearance" (*i.e.*, going from a positive ctDNA result to a negative ctDNA result).  Relying on the data reported in the Parikh Study, the NCI selected the commercial version of Guardant's Reveal test as the ctDNA test for the COBRA clinical trial.  *Id.* ¶ 23.

Unlike the Parikh Study, Guardant had no room to manipulate or influence the outcome of the COBRA clinical trial.  No Guardant employee was an investigator of the COBRA trial, and Guardant provided no financial funding other than providing the Reveal test.  More fundamentally,

data were being reported and analyzed in parallel in over 400 sites across the country without going through Guardant.  Thus, the COBRA trial reflects the true, real-world performance of Reveal.

_The Results of the COBRA Clinical Trial._  On July 5, 2023, the NRG Oncology announced the suspension of the COBRA trial in order to perform a preplanned endpoint analysis.  *Id.* ¶ 24. The endpoint analysis data showed that Guardant's Reveal could not accurately detect the presence and/or absence of ctDNA, generated higher-than-expected number of false positive results, and failed to meet the preset threshold of the reliability test by a wide margin.

The data also demonstrated that Reveal's performance was a failure from a statistical standpoint.  In statistics, a measurement called "p-value" is used to indicate the statistical significance of the observed differences between two groups.  *Id.* ¶ 21.  The reported p-value from the COBRA endpoint analysis was an astounding 0.98, meaning that Reveal only has a 2% chance of accurately predicting ctDNA clearance.  *Id.* ¶ 34.

Reveal's performance forced the NRG to terminate the COBRA clinical trial and suspend enrollment of patients *for futility* in August 2023.  As a result of Reveal's disappointing performance, countless hours devoted by the medical personnel running the COBRA trial across over 400 sites nationwide, the time of hundreds of participating patients, and millions of dollars of government funding poured into this massive scale national trial, were all wasted.  The announcement that the COBRA trial would be halted shook the field of oncology.  *Id.* ¶ 25.  Many oncologists lamented the failure of the COBRA trial on social media.  *Id.* ¶ 41.

The results of the endpoint analysis, however, were not released to the public until many months later at the ASCO-GI Conference in January 2024.  *Id.* ¶ 26.

**B.**    **The COBRA Clinical Trial Is Directly Relevant To Natera's Claims**

The COBRA clinical trial and its results are directly and highly relevant to Natera's claims. There can be no genuine dispute over this, and Guardant has waived any argument to the contrary. The parties conducted both fact and expert discovery on the COBRA clinical trial, and at no time did Guardant move for a protective order to prevent that discovery.  Furthermore, the Court has already ruled that Dr. Hochster's opinions about COBRA (and other clinical trials involving Reveal) are permissible.

1    In terms of particular relevance, the COBRA trial and its results are relevant to Natera's

2  claims and defenses in numerous respects, including the following:

3       • For example, the COBRA trial and its results support Natera's assertion that

4         ███████████████████████████████, rendering the study unreliable and
          fraudulent. Dkt. 90 (Natera Counterclaims). As Natera has demonstrated,

5         ████████████████████████████████████████████████████████████

6         ████████—the Parikh study would not have reported the "91% sensitivity"
          clinical performance metric that Guardant false and misleadingly advertises for

7         Reveal. *Id.*, ¶¶ 63-78.

8       • As another example, the COBRA trial and its results support Natera's assertion that
          Guardant falsely and misleadingly advertised clinical performance claims that

9         implied Reveal does not have false positive results, such as "100% PPV" and
          "100% specificity." ████████████████████████████████

10        ███████████████████████████████████████████. The COBRA trial
          results, in fact, suggest a much higher false positive rate when used clinically with

11        early-stage patients.

12      • Additionally, the COBRA trial and its results are relevant because they confirm
          Natera's assertions that Reveal is far more prone to false positives than Signatera

13        (which has a specificity of over 99%), and that false positives can have serious
          adverse consequences for patients in the real-world, including by leading those

14        patients to get unnecessary cancer treatments. These risks to patient safety help
          explain why Natera took the actions it did, including corrective advertising, in

15        response to Guardant's misinformation.

16      • The COBRA clinical trial and its results also have direct bearing on damages,
          including on the ████████ that Guardant is seeking from Natera. The newly

17        released data support Natera's assertions that physicians had reasons other than
          Natera's allegedly false advertising to choose Signatera over Reveal, including

18        skepticism about and unwillingness to use an unproven test that eschews tumor
          tissue. They also support Natera's argument that Guardant's claimed lost profits

19        are not the result of Natera's advertisements but rather the poor performance of
          Reveal in real world scenarios.

20

21    Notwithstanding the above, Guardant argues that Dr. Hochster's Supplemental Report is not

22  relevant because the COBRA clinical trial is not the basis for the Party's advertising claims (Mot.

23  at 9). But this takes an improperly narrow view of relevance, and is contrary to Guardant's own

24

25

26  [2] Prospective studies are distinguished from retrospective studies in that they are forward-looking
    and follow plans determined in advance, without knowledge of the clinical outcomes of patients.

27  As Natera's expert Dr. Rebecca Betensky (Chair of the Department of Biostatistics at the NYU
    Global School of Public Health) explained, retrospective studies are considered to provide a lower

28  level of scientific evidence than prospective studies as they admit the possibility of bias and may
    not represent a random selection of patients or of data from patients.

1  arguments in the case about other studies.[3]  Given Natera's allegations regarding the Parikh Study,

2  there can be no real debate that data from ***another, more extensive, truly prospective*** study—the

3  COBRA trial—that is consistent both with Natera's advertising claims about Reveal, and with ████

4  ████████████████████████ would have reported, is relevant to establishing the truth of Natera's

5  advertising and the falsity of Guardant's.  This clears the low bar for relevance, and Guardant cites

6  zero authority supporting its extreme application of the relevance standard.  *Cooper v. Brown*, 510

7  F.3d 870, 942 (9th Cir. 2007) (Evidence is relevant if it "assist[s] the trier of fact in understanding

8  or determining a fact in issue").  Indeed, the Court overruled Guardant's equivalent relevance

9  objection regarding the COSMOS study.  Dkt. 328 at 18.[4]  In allowing Dr. Hochster's opinions

10  regarding COSMOS, the Court recognized the relevance of data showing "a high number of false

11  positives and a corresponding low specificity for Reveal . . . would undermine Guardant's

12  advertising claims of high specificity for Reveal."  *Id.*  So too with respect to the even larger and

13  more reliable COBRA clinical trial.

14       Guardant also incorrectly argues (Mot. at 10) that this data is not relevant because the Court

15  dismissed Natera's contention that Reveal's 100% specificity claim is false and misleading.  The

16  Court in fact ***denied*** Guardant's motion for summary judgment on Guardant's "sensitivity and

17  specificity" claims.  Dkt. 326 at 37-40.  The Court found there was a "genuine issue of material fact

18  of whether this advertising is literally false on its face or by necessary implication."  *Id.* at 39.  These

19  sensitivity and specificity metrics are the very metrics for which the results of the COBRA trial are

20  relevant.  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████.  *See e.g.* Ex. 1 (GHI00043910).

23

24  _____

25  [3]  Guardant's Motion to Strike criticizes Dr. Hochster for *failing* to address COSMOS, another
    ongoing clinical trial which does not form the basis of Guardant's advertising claims at issue.
26  Characteristically, Guardant seeks to broadcast data it perceives as favorable and bury data it does
    not.

27  [4]  Guardant's argument that Dr. Hochster's Supplemental Report does not mention the
    COSMOS study misses the mark – Dr. Hochster's Opening Report discusses COSMOS, but the
    Supplemental Report is narrowly focused on the newly released data from the COBRA study.
28  Regardless, this goes to weight, not admissibility, as Guardant is free to cross examine Dr. Hochster
    on other studies not mentioned in his supplemental report.

In fact, Guardant itself previously recognized the relevance of the COBRA trial.  Guardant produced communications (though limited in number) between Guardant, NRG, and Dr. Morris (lead investigator of the COBRA trial) about the COBRA trial in its very early days.  *See* Ex. 2 (GHI00053772); Ex. 3 (GHI00053784); Ex. 4 (GHI00032793) (internal Guardant email showing Guardant employees texting Dr. Van Morris regarding the COBRA trial);[5] Ex. 5 (GHI00038272) (Guardant plans to ask Dr. Van Morris to be a media spokesperson for Reveal on the topic of the COBRA trial).  Guardant's document production concedes the relevance of the COBRA trial.  Its argument to the contrary now—ginned up after receiving the negative results of the clinical trial— should be rejected.

## III.    GUARDANT SHOULD HAVE PRODUCED THE COBRA DATA EARLIER IN THE CASE

Guardant criticizes Natera for serving its supplemental report days after the public disclosure of the COBRA data, but Guardant itself should have produced the data in its possession.  Despite having an ongoing obligation to supplement discovery responsive to Natera's requests under Fed. Rule Civil Proc. 26(e),[6] Guardant withheld that data from Natera.  Guardant thereby prevented Natera from learning this highly relevant information until last month, January 2024.  Any claim of prejudice caused by the timing of Dr. Hochster's Supplemental Report is a product of Guardant's own actions.

Because Natera's submission of the Supplemental Report was proper under Rule 26(e), no analysis under Rule 37 is necessary.  Even if the Court were to consider the factors considered under Rule 37, however, supplementation is still proper.  *First,* it should come as no surprise to Guardant that Natera believes the data underlying the COBRA clinical trial are relevant to Natera's claims, as Guardant has been sitting on that data for months.  *Second*, any purported prejudice may be cured by a deposition of Dr. Hochster.  During a deposition, Guardant could probe the basis for Dr.

---

[5]  Texts which, notably, were not ever produced.

[6]  The COBRA study data is responsive to at least Natera Request for Production No. 1, which seeks "[d]ocuments concerning the Clinical Performance of Reveal," and to which Guardant committed to produce "documents concerning the clinical performance of the commercial version of Reveal for CRC" and Natera Interrogatory No. 6, which asks Guardant to "[i]dentify all studies and data that you contend validate the Clinical Performance of Reveal, and the number of unique patients represented in those data" and to which Guardant provided a substantive response.

1  Hochster's opinions and challenge his conclusions.  Guardant, however, rejected Natera's offer to

2  make Dr. Hochster available for a continued deposition.  And Guardant's claim that it requires third

3  party discovery or an expert witness to rebut Dr. Hochster's opinions rings hollow.  Guardant has

4  been aware of this data for months and apparently chosen to do nothing in response.  Guardant did

5  not retain a clinical oncologist to rebut Dr. Hochster's Opening Report, and the opinions expressed

6  in his Supplemental Report are consistent with those in his Opening Report.  *Third*, there is no

7  likelihood of disruption at trial.  The opinions in Dr. Hochster's Supplemental Report are consistent

8  with those in his Opening Report, and Guardant has several weeks in which to probe those opinions.

9  *Fourth*, there is no bad faith in the timing of the Dr. Hochster's Supplemental Report.  Dr. Hochster

10  could not have provided these opinions before the relevant data was presented on January 20, 2024.

11  *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (articulating factors and

12  permitting supplemental expert declaration where appellants "made no effort whatsoever to depose"

13  the expert and the testimony was not a "surprise" to appellants).

14         The cases on which Guardant relies are not to the contrary.  In *Yeti by Molly, Ltd. v. Deckers

15  Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001), the court upheld the exclusion of an expert

16  report where no report had been disclosed prior to the discovery deadline.  In so doing, the court

17  noted that "defendants could have issued a preliminary report to be supplemented" upon receiving

18  additional information.  In *Brown v. DirecTV, LLC*, No. CV 13-1170-DMG (EX), 2022 WL

19  2117803, at *5 (C.D. Cal. May 19, 2022), the court excluded a report where it was clear that the

20  "analysis will be an entirely new endeavor."  In *Martinez v. Costco Wholsesale Corp.*, 336 F.R.D.

21  183, 190 (S.D. Cal. 2020), the court found that "Plaintiff's expert was in possession of all deposition

22  transcripts and discovery materials she needed prior to" the initial disclosure deadline and her report

23  was therefore not "based on information that was not available at the time of the initial disclosure."

24  (internal quotation and citation omitted).  And in *United States v. 1003.58 Acres of Land*, No.

25  LACV1601014VAPSPX, 2018 WL 4945309, at *4 (C.D. Cal. Jan. 31, 2018), the court excluded an

26  expert report where the government delayed in obtaining the information contained in the

27  supplemental report.  None of these cases support excluding Dr. Hochster's Supplemental Report,

28  which was served within days of learning high relevant information regarding Reveal's

1  performance.

2          Guardant has not articulated any prejudice that could possibly outweigh the highly probative

3  value of Dr. Hochster's opinions on the significance of the COBRA clinical trial with respect to the

4  clinical performance of Reveal.  Given the significant probative value Dr. Hochster's opinions bring,

5  and the timeliness with which they were disclosed following the public release of the underlying

6  data, there is no basis for exclusion.

7                              **<u>CONCLUSION</u>**

8          For the foregoing reasons, Natera respectfully asks the Court to deny Guardant's Motion to

9  Strike Dr. Hochster's Supplemental Report.

10

11  DATED:  February 12, 2024              QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
12

13

14                                  By */s/ Andrew J. Bramhall*
                                       Andrew J. Bramhall
15                                     Attorneys for NATERA, INC., a Delaware
                                       corporation, Defendant and Counterclaim Plaintiff
16

17

18

19

20

21

22

23

24

25

26

27

28