Saul Perloff (157092)
saul.perloff@shearman.com
Kathy Grant *(pro hac vice)*
kathy.grant@shearman.com
Andre Hanson *(pro hac vice)*
andre.hanson@shearman.com
Olin "Trey" Hebert (*pro hac vice*)
trey.hebert@shearman.com
SHEARMAN & STERLING LLP
300 W. Sixth Street, 22nd Floor
Austin, Texas 78701
Telephone (512) 647-1900

Christopher LaVigne *(pro hac vice)*
christopher.lavigne@sherman.com
SHEARMAN & STERLING LLP
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

Jennifer L. Keller (84412)
jkeller@kelleranderle.com
Chase Scolnick (227631)
cscolnick@kelleranderle.com
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

Attorneys for Plaintiff/Counterclaim Defendant GUARDANT HEALTH, INC.

Kevin P.B. Johnson (SBN 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (SBN 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (SBN 253115)
andrewbramhall@quinnemanuel.com
Margaret Shyr (SBN 300253)
margaretshyr@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone (650) 801-5000
Facsimile (650) 801-5100

Anne S. Toker (*pro hac vice*)
annetoker@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Telephone (212) 849-7000
Facsimile (212) 849-7100

Valerie Lozano (SBN 260020)
valarielozano@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone (213) 443-3000
Facsimile (213) 443-3100

Attorneys for Defendant/Counterclaim-Plaintiff NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., a Delaware corporation,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>NATERA, INC., a Delaware corporation,<br><br>Defendant and Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**JOINT [PROPOSED] JURY INSTRUCTIONS**<br><br>**REDACTED FOR PUBLIC FILING** |

## Table of Contents[1]

Page

Disputed Instruction No. 1 re Claims and Defenses offered by Guardant .................................. 5
Disputed Instruction No. 1 re Claims and Defenses offered by Natera....................................... 7
Stipulated Instruction No. 2 re Duty of the Jury** ....................................................................... 9
Stipulated Instruction No. 3 re Burden of Proof -- Preponderance of the Evidence ................. 10
Disputed Instruction No. 4 re Burden of Proof -- Clear and Convincing Evidence offered by Guardant ..................................................................................................................... 11
Stipulated Instruction No. 5 re What is Evidence** ................................................................. 12
Stipulated Instruction No. 6 re What is Not Evidence** .......................................................... 13
Stipulated Instruction No. 7 re Evidence for Limited Purpose ** ............................................. 14
Stipulated Instruction No. 8 re Direct and Circumstantial Evidence**..................................... 15
Stipulated Instruction No. 9 re Credibility of Witnesses**........................................................ 16
Disputed Instruction No. 10 re Impeachment Evidence—Witness** offered by Natera.......... 17
Disputed Instruction No. 11 re Use of Interrogatories** offered by Natera ............................. 18
Disputed Instruction No. 12 re Use of Requests for Admission** offered by Natera ............. 19
Stipulated Instruction No. 13 re Charts and Summaries Not Received in Evidence**............ 20
Stipulated Instruction No. 14 re Charts and Summaries Received in Evidence** ................... 21
Stipulated Instruction No. 15 re Stipulations of Fact** ............................................................ 22
Stipulated Instruction No. 16 re Deposition in Lieu of Live Testimony ................................... 23
Stipulated Instruction No. 17 re Expert Opinion ...................................................................... 24
Disputed Instruction No. 18 re Corporations and Partnerships – Fair Treatment** offered by Guardant ..................................................................................................................... 25
Disputed Instruction No. 19 re Liability of Corporations – Scope of Authority Not in Issue** offered by Guardant ...................................................................................................... 26
Stipulated Instruction No. 20 re Ruling on Objections** ......................................................... 27
Stipulated Instruction No. 21 re Conduct of the Jury** ............................................................ 28
Stipulated Instruction No. 22 re Publicity During Trial** ........................................................ 30
Stipulated Instruction No. 23 re No Transcript Available to Jury** ......................................... 31
Stipulated Instruction No. 24 re Taking Notes**........................................................................ 32
Stipulated Instruction No. 25 re Questions to Witnesses by Jurors During Trial**.................. 33
Stipulated Instruction No. 26 re Bench Conferences and Recesses** ...................................... 34
Stipulated Instruction No. 27 re Outline of Trial** ................................................................... 35
Stipulated Instruction No. 28 re Cautionary Instructions** ...................................................... 36
PROPOSED FINAL JURY INSTRUCTIONS............................................................................ 37
Stipulated Instruction No. 29 re Duty of the Jury** ................................................................... 38

[1] A double asterisk indicates the proposed instruction is identical to the Ninth Circuit's Model Instructions.

Stipulated Instruction No. 30 re Duty to Deliberate** .......... 39
Stipulated Instruction No. 31 re Consideration of Evidence – Conduct of Jury** .......... 40
Stipulated Instruction No. 32 re Communication with the Court** .......... 42
Disputed Instruction No. 33 re False Advertising offered by Guardant .......... 43
Disputed Instruction No. 34 re False Advertising – Lanham Act – Elements .......... 45
Disputed Instruction No. 35 re False Advertising – Lanham Act – Element One .......... 49
Disputed Instruction No. 36 re False Advertising – Lanham Act – Element One: Commercial Advertisement or Promotion .......... 56
Disputed Instruction No. 37 re False Advertising – Lanham Act – Element One: Establishment Claims Offered by Natera .......... 59
Disputed Instruction No. 38 re False Advertising – Lanham Act – Claims Relating to Peer-Reviewed, Published Articles offered by Guardant .......... 62
Disputed Instruction No. 39 re False Advertising – Lanham Act – Element Two .......... 67
Disputed Instruction No. 40 re False Advertising – Lanham Act – Element Three .......... 75
Disputed Instruction No. 41 re False Advertising – Lanham Act – Element Four .......... 78
Disputed Instruction No. 42 re False Advertising – Lanham Act – Element Five .......... 80
Disputed Instruction No. 43 re False Advertising – Lanham Act - Explanations and Disclaimers offered by Guardant .......... 82
Disputed Instruction No. 44 re False Advertising – Lanham Act – Puffery offered by Natera 84
Disputed Instruction No. 45 re False Advertising – Lanham Act – Opinions offered by Natera .......... 85
Disputed Instruction No. 46 re California State Common Law Unfair Competition offered by Guardant .......... 86
Disputed Instruction No. 47 re Lanham Act False Advertising – Monetary Recovery .......... 89
Disputed Instruction No. 48 re Lanham Act False Advertising – Actual Damages .......... 92
Disputed Instruction No. 49 re Lanham Act False Advertising – Disgorgement of Profits .......... 98
Disputed Instruction No. 50 re Damages under California State Common Law offered by Guardant .......... 106
Disputed Instruction No. 51 re Mitigation offered by Natera .......... 115
Stipulated Instruction No. 52 re Return of Verdict** .......... 118
Stipulated Instruction No. 53 re Post-Discharge Instruction** .......... 119

PRELIMINARY NOTE:

Where possible, "disputed" jury instructions have been consolidated into a single instruction. "Green" highlighting (____) represents Guardant's proposed language with which Natera disagrees. "Yellow" highlighting (____) represents Natera's proposed language with which Guardant disagrees.

# PRELIMINARY INSTRUCTIONS

**Disputed Instruction No. 1 re Claims and Defenses offered by Guardant**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This is a false advertising case between two medical diagnostic testing companies.

The plaintiff and counterclaim defendant is Guardant Health, Inc., which I'll call Guardant.

The defendant and counterclaim plaintiff is Natera, Inc., which I'll call Natera.

Guardant and Natera compete in the market for cancer detection tests. Guardant markets a product called "Reveal." Natera markets a product called "Signatera." Reveal and Signatera are used to detect colorectal cancer, or "CRC." Specifically, they are used to detect if cancer is still present, or has recurred, after a CRC patient has been treated with surgery to remove the cancer tumor, and often treated with chemotherapy.

In this lawsuit, both parties allege that the other engaged in false advertising related to the Reveal and Signatera products. Both parties deny the other's allegations.

**Guardant's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.5 (2017 edition, updated August 2023).

**<u>Natera's Position:</u>**

Guardant's proposal does not provide sufficient information regarding the claims that each party is alleging. Natera's proposal describes the specific claims at issue while still keeping the instruction brief and concise. Natera's instruction properly reflects that both parties have claims against the other and does not give undue weight to Guardant being the first to win the race to this courthouse. It is unfair to imply that Guardant sued as plaintiff and Natera is somehow only bringing retaliatory claims.

**<u>Guardant's Position:</u>**

Guardant's instruction complies with the Court's for the Parties to provide "a simplified statement of the case to be read to the jury during voir dire and as part of the proposed jury instructions." Dkt. 302 at 6. It is neutrally worded and provides useful information regarding the

case.

**Disputed Instruction No. 1 re Claims and Defenses offered by Natera**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This is a false advertising case between two medical diagnostic testing companies.

Each party has false advertising claims against the other.

The first party I will introduce is Guardant Health, Inc., which I'll call Guardant.

The second party is Natera, Inc., which I'll call Natera.

Guardant and Natera compete in the market for cancer detection tests. Guardant markets a product called "Reveal." Natera markets a product called "Signatera." They are marketed to, and ordered by, oncologists and other doctors treating cancer patients.

In this lawsuit, both parties allege that the other engaged in false advertising related to the Reveal and Signatera products.

Guardant alleges that Natera engaged in false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Guardant has the burden of proof by a preponderance of the evidence on its claims. Natera denies those claims.

Natera alleges that Guardant engaged in false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Natera has the burden of proof by a preponderance of the evidence on its claims. Guardant denies those claims.

Because both parties have claims, both parties are both plaintiffs and defendants. Guardant is the plaintiff with respect to its claims against Natera, and Natera is the plaintiff with respect to its claims against Guardant.

**Natera's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.5 (2017 edition, updated August 2023); Judge Chen's Civil Pretrial Instructions Section C.3; *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691 (N.D. Cal. 2022).

**<u>Natera's Position:</u>**

Guardant's proposal does not provide sufficient information regarding the claims that each

party is alleging. Natera's proposal describes the specific claims at issue while still keeping the instruction brief and concise. Natera's instruction properly reflects that both parties have claims against the other and does not give undue weight to Guardant being the first to win the race to this courthouse. It is unfair to imply that Guardant sued as plaintiff and Natera is somehow only bringing retaliatory claims.

**Guardant's Position**

Guardant believes that its statement provides a useful summary of information to the jury while avoiding an introduction as to burden of proof. The last paragraph of Natera's proposed instruction—that both parties are both plaintiffs and defendants—is inaccurate, unnecessary, and will needlessly confuse the jury. As set forth in Guardant's Oppn. to Natera's Motion in Limine No. 7, Guardant is the true plaintiff in this case and Natera is the defendant.

**Stipulated Instruction No. 2 re Duty of the Jury**[2]**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.3 (2017 edition, updated August 2023).

[2] A double asterisk indicates the proposed instruction is identical to the Ninth Circuit's Model Instructions.

**Stipulated Instruction No. 3 re Burden of Proof -- Preponderance of the Evidence**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.6 (2017 edition, updated August 2023).

**Disputed Instruction No. 4 re Burden of Proof -- Clear and Convincing Evidence offered by Guardant**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Guardant's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.7 (2017 edition, updated August 2023).

**Natera's Position:**

Natera only agrees to this instruction if the final jury instructions include claims where the burden of proof is by clear and convincing evidence. Although punitive damages are governed by a clear and convincing standard of proof, as discussed further below, Natera does not believe an instruction on punitive damages is legally proper.

**Guardant's Position**

Both Parties have asserted claims under common law unfair competition which seek punitive damages, which are governed by a "clear and convincing" burden of proof. Accordingly, the instruction is appropriate and necessary.

**Stipulated Instruction No. 5 re What is Evidence****

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits that are admitted into evidence;
3. any facts to which the lawyers have agreed; and
4. any facts that I [may instruct] [have instructed] you to accept as proved.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.9 (2017 edition, updated August 2023).

**Stipulated Instruction No. 6 re What is Not Evidence****

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.
2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.
3. Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.
4. Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.10 (2017 edition, updated August 2023).

**Stipulated Instruction No. 7 re Evidence for Limited Purpose ****

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.11 (2017 edition, updated August 2023).

**Stipulated Instruction No. 8 re Direct and Circumstantial Evidence****

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.12 (2017 edition, updated August 2023).

**Stipulated Instruction No. 9 re Credibility of Witnesses****

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;
2. the witness's memory;
3. the witness's manner while testifying;
4. the witness's interest in the outcome of the case, if any;
5. the witness's bias or prejudice, if any;
6. whether other evidence contradicted the witness's testimony;
7. the reasonableness of the witness's testimony in light of all the evidence; and
8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.14 (2017 edition, updated August 2023).

**Disputed Instruction No. 10 re Impeachment Evidence—Witness** offered by Natera**

The evidence that a witness [e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Natera's Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.9 (2017 edition, updated August 2023).

**Natera's Position:**

This instruction is appropriate because it is a model instruction applicable to all witnesses. Witness credibility will be an important issue in this trial and the jury should be instructed as to how that credibility can be evaluated. *See*, *e.g.*, Fed. R. Evid. 607, 608. Contrary to Guardant's contention, and as described in Natera's Opposition to Guardant's Motion *in Limine* No. 6 (Dkt. 358-13), there is, at a minimum, an "indication" that at least one witness has lied under oath.

**Guardant's Position:**

This is unnecessary in the circumstances of this suit, where there is no indication any witnesses have been convicted of any crimes or lied under oath.

**Disputed Instruction No. 11 re Use of Interrogatories** offered by Natera**

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Natera's Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.11 (2017 edition, updated August 2023).

**Natera's Position:**

Natera proposes incorporating this instruction from the Ninth Circuit model jury instructions. Natera designated discovery responses, including written interrogatories, pursuant to Judge Chen's Pretrial Order (Dkt. 302). Therefore, the jury should be instructed about how to interpret written interrogatories. Additionally, per the Ninth Circuit model jury instructions, this instruction is given during trial, just before interrogatories and answers are read to the jury. It would therefore be used only if it becomes necessary at trial, and does not risk cluttering the preliminary or final jury instructions with excessive or unnecessary instructions.

**Guardant's Position:**

Guardant does not believe this instruction is appropriate in light of its objections to Natera's excessive proposed use of written discovery responses, particularly in light of the availability of live witnesses.

**Disputed Instruction No. 12 re Use of Requests for Admission** offered by Natera**

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**Natera's Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.12 (2017 edition, updated August 2023).

**Natera's Position:**

Natera proposes incorporating this instruction from the Ninth Circuit model jury instructions. Natera designated discovery responses, including requests for admissions, pursuant to Judge Chen's Pretrial Order (Dkt. 302). Therefore, the jury should be instructed about how to interpret requests for admissions.

**Guardant's Position:**

Guardant does not believe this instruction is appropriate in light of its objections to Natera's excessive proposed use of written discovery responses, particularly in light of the availability of live witnesses.

**Stipulated Instruction No. 13 re Charts and Summaries Not Received in Evidence****

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.14 (2017 edition, updated August 2023).

**Stipulated Instruction No. 14 re Charts and Summaries Received in Evidence****

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.15 (2017 edition, updated August 2023).

**Stipulated Instruction No. 15 re Stipulations of Fact****

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.2 (2017 edition, updated August 2023).

**Stipulated Instruction No. 16 re Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

You should consider any deposition testimony presented to you in court in lieu of live testimony in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.4 (2017 edition, updated August 2023).

**Stipulated Instruction No. 17 re Expert Opinion**

You are about to hear testimony from [name]who will testify about [his/her] opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinions, and all the other evidence in the case.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.13 (2017 edition, updated August 2023).

**Disputed Instruction No. 18 re Corporations and Partnerships – Fair Treatment** offered by Guardant**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**<u>Guardant's Source:</u>** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 4.1 (2017 edition, updated August 2023).

**<u>Guardant's Position:</u>**

While both Parties are corporations, there may be a tendency among some jury members to view corporations with distrust. This is a brief and accurate instruction that will benefit both Parties.

**<u>Natera's Position:</u>**

The Ninth Circuit Model Instructions "must be reviewed carefully before use in a particular case." *Manual of Model Civil Jury Instructions for the Ninth Circuit*, Introduction (2017 edition, updated August 2023). While this instruction may be warranted in a case between an individual and corporation, it is not justified here. Since both parties are corporations, this instruction would only serve to inundate the jurors with instructions and therefore dilute the effect of the critical instructions in this case. The superfluous nature of this instruction in a case between two corporations is also reflected by the Court's instructions to the jury in *Moonbug Entertainment Ltd. v. Babybus (Fujian) Network Technology Co., LTD*, No. 3:21-cv-06536-EMC (N.D. Cal. Aug. 24, 2021). Although *Moonbug* also involved corporate parties, the Court did not administer this instruction. *See* Dkt. 562.

**Disputed Instruction No. 19 re Liability of Corporations – Scope of Authority Not in Issue** offered by Guardant**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**Guardant's Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 4.2 (2017 edition, updated August 2023).

**Guardant's Position:**

This is brief and accurate instruction will benefit both Parties by ensuring that the jury understands that corporations may act only through their agents, including employees and officers. Natera's speculation that this Model Instruction could somehow "create . . . confusion" and force the jury to "struggle to ascertain what such terms mean" is unsupported and contrary to common sense.

**Natera's Position:**

The Ninth Circuit Model Instructions "must be reviewed carefully before use in a particular case." *Manual of Model Civil Jury Instructions for the Ninth Circuit*, Introduction (2017 edition, updated August 2023). This instruction is unwarranted here because it creates more confusion than it resolves. Since the instruction does not define "employees," "agents," "directors," "officers," or "scope of authority," jurors could needlessly struggle to ascertain what such terms mean instead of focusing on the critical instructions in this case.

**Stipulated Instruction No. 20 re Ruling on Objections****

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.13 (2017 edition, updated August 2023).

**Stipulated Instruction No. 21 re Conduct of the Jury****

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this

case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.15 (2017 edition, updated August 2023).

**Stipulated Instruction No. 22 re Publicity During Trial****

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.16 (2017 edition, updated August 2023).

**Stipulated Instruction No. 23 re No Transcript Available to Jury****

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.17 (2017 edition, updated August 2023).

**Stipulated Instruction No. 24 re Taking Notes****

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.18 (2017 edition, updated August 2023).

**Stipulated Instruction No. 25 re Questions to Witnesses by Jurors During Trial****

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

**Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.19 (2017 edition, updated August 2023).

**Stipulated Instruction No. 26 re Bench Conferences and Recesses****

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Source:** Manual of Model Civil Jury Instructions for the Ninth Circuit, 1.20 (2017 edition, updated August 2023).

**Stipulated Instruction No. 27 re Outline of Trial**[3]**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

Guardant will then present evidence, and counsel for Natera may cross-examine. Then Natera may present evidence, and counsel for Guardant may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.21 (2017 edition, updated August 2023).

[3] Natera reserves all rights to amend this instruction. It is premature to propose the order of trial in these instructions because the parties have not resolved this issue. Guardant disagrees, as it is plainly the plaintiff in this case, and Natera is the defendant and counter-claimant.

**Stipulated Instruction No. 28 re Cautionary Instructions****

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So, you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 2.0 (2017 edition, updated August 2023).

# PROPOSED FINAL JURY INSTRUCTIONS

**Stipulated Instruction No. 29 re Duty of the Jury****

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.] OR [A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 1.4 (2017 edition, updated August 2023).

**Stipulated Instruction No. 30 re Duty to Deliberate****

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 3.1 (2017 edition, updated August 2023).

**Stipulated Instruction No. 31 re Consideration of Evidence – Conduct of Jury****

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.
>
> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has

been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circui*t, 3.2 (2017 edition, updated August 2023).

**Stipulated Instruction No. 32 re Communication with the Court****

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk or bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circui*t, 3.3 (2017 edition, updated August 2023).

**Disputed Instruction No. 33 re False Advertising offered by Guardant**

The false advertising law balances several goals, which may conflict: 1) protecting the public from being misled about the nature and quality of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives varies from case to case. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if either party is liable to the other party for false advertising. These facts are relevant to whether either party is liable for false advertising, by making a false statement that was material and that tended to deceive consumers, injuring the other party in the market.

**Guardant's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 15.5 (2017 edition, updated August 2023) (modified for use in false advertising case); *K&N Engineering, Inc., v Spectre Performance*, No. 09-cv-1900-VAP-DTB, Dkt. 274 (C.D. Cal. 2011) (Jury Instructions Given in Open Court).

**<u>Natera's Position:</u>**

Natera respectfully requests that this Court does not adopt an instruction regarding the policy objectives of false advertising law as unnecessary. The version that Guardant modified is based on trademark law, not false advertising law. If false advertising policy was important for the jury to consider as an explicit instruction, then the Ninth Circuit would have issued a model instruction. As it stands, the proposed instruction is incomplete because, for instance, it does not include the policy support and First Amendment implications of liability for commercial speech and the public benefit to commercial speech. *See, e.g.*, *Bates v. State Bar*, 433 U.S. 350 (1977). Numerous other, more recent false advertising courts have not given an instruction on the policy objectives of false advertising law. *See, e.g.*, *Strategic Partners, Inc. v. Vestagen Protective*

*Techs., Inc.*, No. 16-05900-RGK, Dkt. 215 (C.D. Cal. 2017) (Jury Instructions Given in Open Court); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. 17- 01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court). This instruction is also improper in that it asks the jury to balance policy objectives, which is not within the scope of the jury's role as fact finder.

**Guardant's Position:**

Guardant believes that background instruction will be helpful to the jury, and is based on the Model Instruction for Lanham Act claims that specifically include false advertising. Subsequent instructions proposed by both Parties expressly instruct the jury on the role of "commercial speech," and adding an additional instruction of the First Amendment—which does not protect false advertising—would only confuse the jury. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of NY*, 447 U.S. 557, 563 (1980) ("there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity").

**Disputed Instruction No. 34 re False Advertising – Lanham Act – Elements**

Guardant claims that Natera is liable for false advertising, and Natera claims that Guardant is liable for false advertising. To succeed on this claim, the party must prove each of the following by a preponderance of the evidence:

1. The other party made one or more false or misleading statements of fact about Reveal or Signatera in a commercial advertisement or promotion.

2. The false or misleading statement(s) deceived or had the tendency to deceive a substantial segment of its audience;

3. The deception was material, in that it was likely to influence the purchasing decision;

4. The other party caused the false or misleading statement(s) to enter interstate commerce; and

5. The party was or is likely to be injured as a result of the false or misleading statement(s).

If you find that a party has proved each of these elements, then you must find for it. If, on the other hand, you find that a party has failed to prove any one of these elements, you must find for the other party. You must evaluate the elements for each allegedly false statement.

Guardant claims the advertisements set forth in Exhibit X[4] are false advertising under the Lanham Act. Guardant claims it was false advertising for Natera to distribute advertisements that compared the products using the results of two studies, which we have been referring to as the Reinert and Parikh studies. There is no dispute that Natera's advertisements accurately reflect the data from the studies. This means the advertisements are not literally false. Guardant, however, may still assert its claim for false advertising even if the advertisement is not literally false, if it can prove by the preponderance of the evidence that Natera's advertisements misled, confused or deceived the consuming public.

As you have heard, Natera has its own false advertising claims against Guardant. Natera

[4] Natera intends that the final verdict form and jury instructions will include exhibit copies of the advertisements at issue introduced at trial. Depending on how the evidence is entered and disputed motions are resolved, the exhibits may include all advertisements at issue or representative samples. Examples of the advertisements that would be provided with the jury instructions as Exhibits X include, but are not limited to: TX-0053 and TX-0116.

claims the advertisements set forth in Exhibit Y[5] are false advertising under the Lanham Act. Natera claims that Guardant's advertisements are literally false because the Parikh study is not reliable and also does not establish the performance metrics advertised by Guardant. If an advertisement is literally false, then deception is presumed. In addition to literal falsity, Natera also claims in the alternative that Guardant's advertisements misled, confused or deceived the consuming public.

**Guardant's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit* 15.5 Comments (2017 edition, updated August 2023) at 346 ("Elements required for a false advertising claim . . . are set forth in *Rice v. Fox Broadcasting Co*., 330 F.3d 1170, 1180 (9th Cir. 2003)."); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc*., No. 17-01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court); *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997) (listing elements).

**Natera's Sources:** 15 U.S.C. § 1125; *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) (listing elements); Federal Civil Jury Instructions of the Seventh Circuit, No. 13.3.1; *Order Granting in Part and Denying in Part Parties' Cross Motions for Summary Judgment*, Dkt. 326 (Mar. 22, 2023); *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014); *Pipe Restoration Techs. v. Co. V.*, No. 8:13-cv-00499 JDE, 2018 U.S. Dist. LEXIS 244808, at *7 (C.D. Cal. May 23, 2018) ("Where an advertisement is literally false, a presumption arises that consumers were in fact deceived . . . .").

**<u>Natera's Position:</u>**

Natera respectfully requests that the Court adopt its proposed instruction because the parties are asserting different theories of liability against the other. The starting point is the statutory elements of 15 USC § 1125, which Natera has included for both claims. A Lanham Act

[5] Natera intends that the final verdict form and jury instructions will include exhibit copies of the advertisements at issue introduced at trial. Depending on how the evidence is entered and disputed motions resolved, the exhibits may include all advertisements at issue or representative samples. Examples of the advertisements that would be provided with the jury instructions as Exhibits Y include, but are not limited to: TX-0546, TX-0549, TX-0550, TX-0576.

claim, however, can be proven by either literal falsity or misleading. *Southland Sod Farms v. Stover Seed Co*. describes the difference between these two theories of liability. 108 F.3d 1134, 1140 (9th Cir. 1997) ("Even if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public."). The Natera advertisements at issue accurately reflect the data from two separate studies; this Court found that "[t]he numbers are not literally false on their face." Dkt. 326 at page 13. Thus, as set forth in Natera MIL No. 1, there can be no literal falsity here, and Guardant must proceed on a theory that the advertisements comparing the studies were misleading. *See* Natera MIL No. 1.

In contrast, Natera's claims against Guardant are directed to literal falsity and also that the advertisements were misleading. Natera is proceeding under *Southland Sod*, 108 F.3d at 1139 in asserting that Guardant's claims are literally false by (1) "attacking the validity of the defendant's tests directly" ***and*** (2) showing "that the tests even if reliable, do not establish the proposition asserted" by Guardant. Natera can prove literal falsity under either theory, *id*., and Natera asserts the advertisements are misleading in the alternative.

Natera's instruction is proper and appropriate because it acknowledges the differences in the claims being asserted and will best assist the jury in evaluating the different advertisements. Guardant is incorrect that any orders have issued on the parties' motions *in limine*, including Natera's motion *in limine* No. 1.

**<u>Guardant's Position</u>**

The stipulated portion of the instruction appropriately instructs the jury as to the elements of both parties' false advertising claims. Natera's proposed addition is needlessly complicated, relies on "exhibits" that do not exist, is inaccurate to the extent it purports to describes the parties' claims, and presumes that the Court will revisit its order on summary judgment, Dkt. 326, grant Natera's motion *in limine* No. 1, and hold that Guardant is precluded from showing the jury that Natera's advertising is literally false by necessary implication, even though the Court already stated during oral argument that it would not revisit this issue and expressly denied Natera's motion

to reconsider. *See* Tr. of Proceedings (Feb. 26, 2024) at 89:11-25 ("So my ruling stands. I'm not going to reconsider it. So any motion to reconsider that is denied.")

**Disputed Instruction No. 35 re False Advertising – Lanham Act – Element One**

The Lanham Act is primarily intended to protect commercial interests from being harmed by unfair competition created by a competitor who uses false or misleading advertising to promote its products.

[Either Guardant or Natera may prove a statement is false or misleading in one of two ways:] [There are two potential ways to prove that a statement is false or misleading:]

1. By showing that the statement is literally false. Only an unambiguous message can be literally false. A statement may be literally false on its face, that is, when it explicitly states something untrue. A statement also may be literally false by necessary implication. A statement is literally false by necessary implication when it does not explicitly state something that is untrue, but considering the advertisement in its entirety, the only reasonable interpretation of the statement is that it is untrue. Advertisements using an "apples-to-oranges" comparison are literally false by necessary implication where non-comparable circumstances are portrayed as otherwise equivalent.

2. By showing that a statement is misleading. A statement is misleading if it is literally true or ambiguous but misled, confused, or deceived a significant portion of the consuming public or is likely to mislead, confuse, or deceive consumers.

Guardant asserts that Natera's advertising statements were misleading.

Natera asserts that Guardant's advertising statements were either literally false on their face or that they were misleading.

**Guardant's Sources:** *Order Granting in Part and Denying in Part Parties' Cross Motions for Summary Judgment*, Dkt. 326 (Mar. 22, 2023) at 13-14; *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 635 (N.D. Cal. 2019); *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 18-CV- 923-SVW, ECF 349 (C.D. Cal. 2018) (Jury Instructions Given in Open Court); *Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*, No. 16-05900-RGK, Dkt. 215 (C.D. Cal. 2017) (Jury Instructions Given in Open Court); *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997) ("To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."); *Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, Civ. No. S-09-580 FCD/JFM, 2009 WL 2462505 at *3 (E.D. Cal. Aug. 11, 2009) ("As such, 'the Lanham Act is primarily intended to protect

commercial interests from being harmed by the unfair competition created by a competitor … using false or misleading advertising' to promote its products.").

**Natera's Sources:** *Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*, No. 16-05900-RGK, Dkt. 215 (C.D. Cal. 2017) (Jury Instructions Given in Open Court); 15 U.S.C. § 1125; *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134 (9th Cir. 1997) (listing elements); Federal Civil Jury Instructions of the Seventh Circuit, No. 13.3.1; *Order Granting in Part and Denying in Part Parties' Cross Motions for Summary Judgment,* Dkt. 326 (Mar. 22, 2023); *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc*., No. 17- 01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court); *In re Century 21–RE/MAX Real Estate Adver. Claims Litig.*, 882 F.Supp. 915, 923 (C.D. Cal. 1994) (only an unambiguous message can be literally false).

**<u>Natera's Position:</u>**

Natera respectfully requests that the Court adopt its proposed instruction because the parties are asserting different theories of liability against each other. Guardant's instruction is improper because it seeks to assert theories of literal falsity against Natera's advertisements, when this Court has found that "[t]he numbers are not literally false on their face." Dkt. 326 at page 13. In other words, the results from the two separate studies are accurately reflected in Natera's advertisements. As such, as set forth in Natera MIL No. 1, there can be no literal falsity here, and Guardant must proceed on a theory that the advertisements comparing the studies were misleading. *See* Natera MIL No. 1.

Guardant's instruction improperly seeks to misapply "apples to oranges" caselaw and the doctrine of "necessary implication" to try to assert a theory of literal falsity against Natera. As described in Natera MIL No. 1, the doctrine of literal falsity by necessary implication is a narrow sub-species of literally false claims that applies only in limited circumstances which are not present here—namely, where *products* that are literally *not comparable* are portrayed as equivalent. Guardant's proposed instruction partially recognizes this requirement in its language showing that advertising must imply things are "otherwise equivalent," but errs by including "non-comparable

circumstances" as the relevant comparison. There is no support in the law that "non-comparable circumstances" can be the basis of a claim for false advertising under the false-by-necessary-implication doctrine. This language misstating the law is also vague and would confuse the jury, as it is unclear what "circumstances" would be relevant under the law. The "implication" at issue under that doctrine is the implication that the comparison is between two equivalent products (or the identity of an equivalent product). That implication is literally false when the products compared are fundamentally different. If the *comparison itself* is "apples-to-oranges," as Guardant alleges, those comparisons may be misleading, but the implication that the products are otherwise equivalent (i.e., directly competitive) is not false.

As cited by the Ninth Circuit in the *Southland Sod* decision, the leading case on false by necessary implication is *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993). In *Castrol*, Pennzoil advertised that its oil "outperforms any leading motor oil against viscosity breakdown." *Id.* at 941. This claim was demonstrably false as compared to Castrol's oil. The issue for falsity was that Pennzoil's advertisement did not mention Castrol by name. In affirming summary judgment, the Third Circuit held that the necessary implication was that Pennzoil's oil outperformed Castrol's product in viscosity because the market knew Castrol was the leading competitor. Thus, the implication at issue was the identity of the target competitor. The identity of the target competitor is not in question in this case.

For Guardant, the "implication" it seeks to establish is wholly different from *Castrol*. The "necessary implication" that Guardant seeks to assert is that Natera's product is superior to Guardant's. But that is no different than asserting that the advertisements are misleading. By transposing the necessary implication doctrine into a case of alleged misleading advertising, Guardant will eliminate any distinction between "literal falsity" versus "literally true but misleading." The leading treatise recognizes the issue of using the doctrine of "necessary implication" to blur the lines as Guardant seeks to do here. J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:54.50 (5th ed. 2017) ("<u>The problem is that this in-between category creates a hazy zone in the law between the otherwise discrete categories of "literally false" and "misleading." This false by "necessary implication" category smudges an</u>

otherwise clear line of demarcation between "literally false" and "misleading.").

Guardant's discussion of the case law and the allegations in this case are both wrong. In *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143-45 (9th Cir. 1997), the Court analyzed the advertising statements at issue as "establishment claims," not as statements that are false by necessary implication. The issue in *Southland Sod* was whether the express claims in the advertising were supported by the cited tests. *Id.* There was no dispute about whether the tests were "apples-to-oranges"—the only issue was whether the express statements in the challenged advertisements were supported by the tests. *Id.* Similarly, Guardant misstates the facts of *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993). The implication at issue was the identity of the "major competitors" (e.g., Castrol)—not any implication about the test itself. *Id.* at 946. When analyzing whether the advertising claim was false, the Court found that the test relied on "is not a scientifically accurate test for the purpose for which Pennzoil attempts to utilize it," i.e., the advertising claim was not established by the test. *Id.* at 947. Guardant has not alleged any of Natera's advertising is false based on an "establishment claim" theory. Nor is there any dispute about the source of support for the claims in Natera's advertising, as the sources are clearly cited.

Guardant should not be permitted to assert that its claims fall under the "apples to oranges" caselaw. On summary judgment, this Court referred to the "apples to oranges" theory, citing *Clorox Co. v. Reckitt Benckiser Group PLC*, 398 F. Supp. 3d 623 (N.D. Cal. 2019). Dkt. 326 at 13-14. Natera respectfully submits that the *Clorox* case is inapplicable because it was the ***products*** at issue that were not comparable—and the non-comparability of the products themselves was the basis of the alleged falsity. *Id.* at 636-39 (discussing a comparison of the Clorox product, which was formulated as a heavy-duty cleaner and disinfectant with higher concentrations of bleach, with the Lysol product, which was "heavily diluted" and intended for less-intensive cleaning). In other words, the "apples-to-oranges" comparison in *Clorox* was the products themselves. For Guardant, the apples-to-oranges analogy does not work because Signatera and Reveal ***are*** comparable products.

Similarly, this Court's order also cited *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192 (3d Cir. 2014), but that case also involved non-comparable products. *Id.* at 202. The

products-at-issue were steam irons for laundry, and the *Groupe* court found that products were not comparable because they had substantially different price points. *Id.* The third and final case cited in the summary judgment order also compared different products: *Doctor's Associates, Inc. v. QIP Holder LLC*, No. 3:06-cv-1710(VLB), 2010 WL 669870 (D. Conn. Feb. 19, 2010). There, the advertising at issue was a side-by-side of a Subway sandwich next to a Quiznos sandwich, with the ad claiming Quiznos has "2x the meat." *Id.* at *17. The issue in *Doctor's Associates* was that Quiznos compared its premium sandwich to the entry level Subway sandwich. *Id.* The two products were not comparable.

None of these ads in the cases discussed above—*Castrol*, *Clorox*, and *Doctor's Associates*—involved a comparison of different metrics that were accurately reported from cited studies. Rather, they all involved simple comparisons between consumer products that were not in the same *category*—they were true "apples-to-oranges" cases. The "implication" in those cases was that the products are "otherwise equivalent," i.e., directly competitive, when in fact they were not. An advertisement implying that the products are competitive when they are not can be literally false. For example, "Fords are faster than Chevrolets" is literally false if Ford is comparing a Ford sports car to a Chevrolet economy hatchback as the basis of this advertising claim. If Ford is comparing its sports car to Chevrolet's competitive sports car, the comparison may or may not be misleading, but cannot be literally false by necessary implication. The fact that the two products at issue in this case, Signatera and Reveal, are directly competitive does not need to be implied here because both parties agree that they are. In similar circumstances involving advertising comparing two studies, courts have held that where "the conclusions reported [in the two studies] are not literally false, and are based upon reliable tests, the issue becomes whether a cross-study comparison of the two tests ***is likely to mislead and confuse consumers***." *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 455 (D. Conn. 1994) (internal quotation marks and citation omitted). Comparing (accurate) data from different ***scientific studies*** is fundamentally different from comparing consumer products. Scientific studies are much more multi-faceted and complex, and when comparing them there is no necessary implication that the ***studies*** are "otherwise equivalent," as in the case of product comparisons. The audience reading scientific studies—here, highly

educated, data-driven oncologists—would readily understand there are differences between two studies beyond the compared data metrics. *Id.*

In light of the McCarthy Treatise, and the law's clear delineation between literal falsity and misleading advertisements, Natera respectfully asks that this Court revisit the applicability of the literal falsity by necessary implication doctrine to Guardant's claims. Guardant is incorrect that any orders have issued on the parties' motions *in limine*, including Natera's motion *in limine* No. 1. To permit Guardant to proceed under a theory of literal falsity by necessary implication would permit an elimination of the misleading theory of liability and permit Guardant to avoid proving deception—a normally critical element of a false advertising case.

Guardant's attempted application of "false by necessary implication" in this case would result in the exception swallowing the rule. There would be no need for "misleading" as a category of false advertising if any case could be recast as "false by necessary implication." That is not the law.

**<u>Guardant's Position</u>**

Natera's 1,567 word regurgitation of its failed summary judgment arguments is wildly inappropriate for what the Court instructed should be a "brief argument." Its proffered construction of case authority relied on by this Court—some of which was *authored* by this Court—is simply off-base. As this Court held in rejecting in main Natera's summary judgment motion: "'advertisements using an 'apples-to-oranges' theory of falsity' are literally false by necessary implication 'where non-comparable products are portrayed as otherwise equivalent (except for the superior or inferior aspect being illustrated in the advertisement).'" Dkt. 326 at 13-14 (quoting *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 637 (N.D. Cal. 2019)). Natera also misstates other case authority, including *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997), which adopted the "literally false by necessary implication doctrine,' and applied it to tests of equivalent products—turfgrass—that were literally false because they necessarily (but falsely) implied that the tests reflected year-round growth. *Id.* at 1144. Similarly, in *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993), cited by *Southland Sod.*, the Third Circuit concluded that Pennzoil necessarily (but falsely) implied that it had tested the performance

of its motor oil against "its major competitors," *id.* at 947, but also necessarily implied that measuring viscosity breakdown through an industry test, ASTM D-3945, is an accurate measure of engine wear, which too was literally false. *Id.* at 948.

Guardant's proposed instruction accurately describes the law and reflects the law of the case, including the Court's holding that the jury may find that Natera's advertising is literally false by necessary implication. *See* Dkt. 326. Natera's proposed addition presumes that the Court will revisit its order on summary judgment, Dkt. 326, grant Natera's motion *in limine* No. 1, and hold that Guardant is precluded from showing the jury that Natera's advertising is literally false by necessary implication, even though the Court already stated during oral argument that it would not revisit this issue and expressly denied Natera's motion to reconsider. *See* Tr. of Proceedings (Feb. 26, 2024) at 89:11-25 ("So my ruling stands. I'm not going to reconsider it. So any motion to reconsider that is denied.")

**Disputed Instruction No. 36 re False Advertising – Lanham Act – Element One: Commercial Advertisement or Promotion**

[To establish that a false or misleading statement was made in *commercial advertising or promotion*, the party asserting the claim must prove that the statement was:] [An advertisement constitutes a commercial advertisement or promotion if it is:]

1. Commercial speech;
2. Made by one party that is in commercial competition with the other party;
3. made for the purpose of influencing customers to buy the products of the party making the statement; and
4. was sufficiently disseminated to the relevant purchasing public to constitute promotion within that industry.

To determine whether the statement was sufficiently disseminated to constitute promotion, you may consider the size of the market, the frequency and means of dissemination of the statement, and the number of recipients of the statement.

The statement need not be made in a traditional advertising campaign and may consist instead of less formal types of advertising and promotion.

**Guardant's Sources:** *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 18-CV- 923-SVW, ECF 349 (C.D. Cal. 2018) (Jury Instructions Given in Open Court); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (listing elements); *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (same); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002); *Brion Jeannette Arch. v. KTGY Grp. Inc.*, No. 07-cv-691, 2009 WL 10673200, at *4, n.2 (C.D. Cal. Jul. 30, 2009).

**Natera's Sources:** *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 ( 9th Cir. 1999) (listing elements); *Good Technology Corporation v. MobileIron, Inc.*, No. CV-12-05826 PSG, Dkt. 259 (N.D. Cal. 2015) (Jury Instructions Given in Open Court).

**Natera's Position:**

Natera respectfully requests that the Court adopt its proposed instruction regarding commercial speech because it follows 9th Circuit precedent. Natera and Guardant propose the same instruction, except that Natera adds two elements necessary to determine whether an advertisement constitutes a commercial advertisement or promotion: (1) commercial speech, and (2) made by one party that is in commercial competition with the other party.

The Ninth Circuit recognizes that, "[i]n order to be considered 'commercial advertising or promotion,' the misrepresentations must be: '*(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff*; (3) for the purpose of influencing consumers to buy defendant's goods or services'; . . . and the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *See, e.g., Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (emphasis added). Therefore, Natera respectfully requests that the Court incorporate into the jury instructions the two elements of (1) commercial speech, and (2) by a defendant who is in commercial competition with plaintiff, which comport with the Ninth Circuit's definition across many cases. These requirements are relevant in this case because certain of Natera's "advertisements" Guardant alleges are false were directed to investors, not consumers. Guardant has the burden to demonstrate that these were "commercial advertisements or promotions."

*Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1120 (9th Cir. 2021), cited by Guardant, did not decide the issue. The parties agreed in that case that the "commercial competition" element was likely abrogated by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), and the Ninth Circuit therefore did not reach the issue. Natera's instruction follows Ninth Circuit precedent.

**Guardant's Position**

Guardant's proposed instruction accurately states the current state of the law. In *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1120 (9th Cir. 2021), the Ninth Circuit noted that *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), "likely abrogated" the commercial competition element. *See also Roy's Holdings, Inc. v. OS Pacific, LLC*, No. 19-cv-

469, 2022 WL 1018235, at *3, n.5 (D. Haw. Apr. 5, 2022) ("OSP relies on an out-of-date proposition; as *Lexmark* explained, the parties do not need to be competitors to engage in conduct violating the false advertising provisions of the Lanham Act.")

**Disputed Instruction No. 37 re False Advertising – Lanham Act – Element One: Establishment Claims Offered by Natera**

Advertisements based on testing—also known as establishment claims—are literally false if the tests are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made.

Natera's claims against Guardant are establishment claims. Natera may meet its burden to prove this element either by attacking the validity of the tests directly or by showing that the tests are contradicted or unsupported by other scientific tests.

Establishment claims also may be proven false by showing that the tests did not establish the proposition for which they were cited. If Natera shows that the tests, even if reliable, do not establish the proposition asserted by Guardant, Natera has met its burden of demonstrating literal falsity.

**Natera's Sources:** *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Order Granting in Part and Denying in Part Parties' Cross Motions for Summary Judgment,* Dkt. 326 (Mar. 22, 2023); *Castrol Inc. v. Pennzoil Co.*, 987 F. 2d 939, 946-48, 952 (3d Cir. 1993); *Eastman Chem. Co. v. PlastiPure, Inc.*, 775 F.3d 230, 236 (5th Cir. 2014).

**Natera's Position:**

Natera's proposed instruction follows 9th Circuit precedent and should be given. Natera is proceeding under *Southland Sod*, 108 F.3d at 1139 in asserting that Guardant's claims are literally false by (1) "attacking the validity of the defendant's tests directly" ***and*** (2) showing "that the tests even if reliable, do not establish the proposition asserted" by Guardant. Natera can prove literal falsity under either theory, *id.*, and Natera asserts the advertisements are misleading in the alternative. Natera's claim provides the legal framework for the jury to evaluate the establishment claim in this case. Guardant does not dispute that Natera's proposed instruction accurately states the law and instead only offers the conclusory statement that "it will not be meaningful to the jury" and "may create the risk of confusion." The Court's Order Granting in Part and Denying in Part

Parties' Cross Motions for Summary Judgment (Dkt. 326) did not grant summary judgment as to Natera's establishment claims, which are based on (1) lack of support and (2) lack of reliability. *See* Dkt. 326 at 43-44; *Southland Sod*, 108 F.3d at 1139; L.R. 56-3; *Dessar v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 353 F.2d 468, 470 (9th Cir. 1965) ("There is no merit in appellant's claims that the denial of appellee's first motion for summary judgment was a ruling that the trust is invalid, or that such a ruling is the law of the case. The order does not purport to decide the question. It merely denies the motion because, in the court's then view, there were 'issuable facts.' Such a denial merely postpones decision of any question; it decides none. To give it any other effect would be entirely contrary to the purpose of the summary judgment procedure. The court did nothing more than it purported to do, that is, refuse to grant the motion."). Natera will not be arguing that the Parikh Study "could be improved, optimized, or clarified," i.e., "inflated performance" claims. Dkt. 326 at 37, 43.

Guardant's objection that Natera's proposed instruction is not "neutral" ignores the allegations in this case. Guardant has not alleged Natera has engaged in false advertising under an "establishment claim" theory in this case, whereas Natera has made such allegations against Guardant. Moreover, the Court granted summary judgment as to Guardant's unclean hands defense regarding the Reinert Study. *See* Dkt. 326 at 42-43. The Reinert Study reliability of the Reinert Study is not at issue in this case. Guardant's proposed instruction no. 38 does not sufficiently instruct the jury regarding false advertising under an "establishment claim" theory.

**Guardant's Position:**

Natera's proposed instruction does not accurately state the law applicable to the facts in this case, and Guardant does not believe this instruction is appropriate in light of the Court's Order granting summary judgment against Natera's "inflated performance" claims. *See* Dkt. 326 at 32, 36-37. As this Court held, "claims directed at studies themselves which have been peer-reviewed are treated differently. Statements in peer-reviewed, published scientific articles are entitled to protection against Lanham Act liability" as nonactionable opinions. Dkt. 326 at 32 (citing *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496 (2d Cir. 2013)). Thus, the Court dismissed Natera's claims based on its attacks on the Parikh Study's methodology and results,

dubbed by Natera as its "artificially inflated clinical performance metrics" theory. Dkt. 326 at 36-37 ("Here, the Parikh study has accurately reported its results and methodology.")

Moreover, Natera's proposed instruction uses legal jargon that will not be meaningful to the jury, but may create the risk of confusion. It also fails to be neutral, and instead presumes that only Natera may challenge the Parikh study as, for example, "unblinded" because clinical outcomes were disclosed prior to final data analysis, or not "prospective" because the study was initiated without a study protocol in place. However, the Reinert study on which Natera relies also described itself as blinded and prospective, even though Natera repeatedly re-analyzed samples and relied on revised results long after clinical outcomes were disclosed to Natera authors of the Reinert Study. Indeed, in disallowing Guardant's equitable defense, the Court recognized that "Natera's internal communications show that Natera optimized the study to highlight Signatera's stronger metrics," though this did not "rise[] to the egregious level of inequitable conduct" sufficient to establish unclean hands. Dkt. 326 at 42-43.

Guardant has proposed its own instruction, presented immediately hereafter, which reconciles *Southland Sod's* treatment of establishment claims for non-peer-reviewed, unpublished studies with *ONY's* exceptions, and which is further neutral and omits Natera's unnecessary jargon.

**Disputed Instruction No. 38 re False Advertising – Lanham Act – Claims Relating to Peer-Reviewed, Published Articles offered by Guardant**

Statements in a commercial advertisement or promotion based on test results from a peer-reviewed and published scientific article cannot be false or misleading unless the party challenging the advertisement proves:

1. the test results reported in the peer-reviewed, published article were fabricated or fraudulently created; or

2. the commercial advertisement or promotion conveys, by necessary implication, a false message that is beyond the scope of the peer-reviewed, published article, such as an advertisement that compares test results from different articles in a way where non-comparable circumstances are portrayed as otherwise equivalent; or

3. the commercial advertisement or promotion reports the test results from the peer-reviewed, published article in a way that is misleading and that deceived a significant portion of the commercial audience.

**Guardant's Sources**: Order on Summary Judgment, Dkt. 326, at 12-13 & 32-35 (construing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) & *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496 (2d Cir. 2013)); *see also* Order on Motions to Strike, Dkt. 493 at 7-8.

**Natera's Position:**

Guardant's proposed instruction on peer review misstates the law[6] and Natera's allegations in this case and should not be given. It is not based on Ninth Circuit law and is unnecessary and unduly prejudicial to Natera as it improperly insulates peer-reviewed work from liability. The Court denied Guardant's motion for summary judgment that it could not be liable for advertising based on a peer reviewed study. *See* Dkt. 326 at 43-44. In that Order, the Court specifically denied

[6] For preservation purposes, Natera does not concede *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013), applies here or should be followed in this circuit. Natera's claims here, in contrast to those in *ONY*, concern Guardant's commercial advertising, consistent with how other courts have drawn the line between actionable and non-actionable statements. *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 236 (5th Cir. 2014) ("Advertisements do not become immune from Lanham Act scrutiny simply because their claims are open to scientific or public debate.").

Guardant's motion as to Natera's claims that the Parikh Study falsely and inaccurately described its methodology by claiming its "ctDNA analysis was performed blinded to the clinical data" and that it was a fully "prospective study." Dkt. 326 at 34-36. Guardant's proposed instruction does not mention this "*ONY* exception," which allows a challenge to advertising based on a study where that study inaccurately describes its data and methodology. *Id.* at 34-37. Consistent with the Court's Summary Judgment Order (Dkt. 326), Natera will not argue that the Parikh Study "could be improved, optimized, or clarified," (Dkt. 326 at 37, 43). The Court has thus already decided how Natera may use the Parikh Study and how Guardant may be liable for false advertising based on advertising claims that are purportedly supported by the Parikh Study. Because the boundaries of Natera's claims have been decided by the Court, providing an instruction on peer review is unnecessary and would confuse the jury. Peer review is not perfect or infallible and is only as complete as the information shared, as the facts of this case demonstrate. The mere fact of peer review does not insulate Guardant from liability for its commercial false advertising. *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 236 (5th Cir. 2014).

Guardant's proposed instruction does not mention Natera's claims based on *Southland Sod*, 108 F.3d at 1139, which assert that Guardant's claims are literally false by (1) "attacking the validity of the defendant's tests directly" ***and*** (2) showing "that the tests even if reliable, do not establish the proposition asserted" by Guardant. Natera can prove literal falsity under either theory regardless of whether the tests were published or peer-reviewed, and Natera asserts the advertisements are misleading in the alternative. For example, the false and inaccurate description of the Parikh Study's methodology renders it wholly unreliable and, as a result, Guardant's advertising claims based on that study are literally false. Natera's proposed Instruction No. 37 provides the legal framework for the jury to evaluate the establishment claim in this case. Guardant's proposed instruction does not mention anything regarding establishment claims under *Southland Sod* and Guardant opposes giving Natera's proposed Instruction No. 37 in its entirety. Guardant's proposal should thus be rejected.

Contrary to Guardant's argument, *ONY* has not become "more broadly accepted" in the context of false advertising claims relating to commercial speech. *Pacira BioSciences, Inc. v.*

*American Society of Anesthesiologists, Inc.*, 63 F.4th 240 (3d Cir. 2023), was a trade libel case against a medical association, the editor of the association's medical journal, and the authors of published articles. *Id.* at 243. In that case, the Court noted that "a conclusion drawn from falsified or fraudulent data may be actionable." *Id.* at 248 n.14. Similarly, in *Torrey v. Infectious Diseases Society of America*, 86 F.4th 701 (5th Cir. 2023), individuals suffering from a disease brought fraudulent and negligent misrepresentation claims against a professional society for publishing guidelines for how to treat that disease. The statements, on their face, were medical opinions about whether there was "convincing" evidence or whether treatment should be recommended. *Id.* at 706. Commercial advertisements were not at issue in either case, nor was the type of fabricated or fraudulently created test results or test results based on inaccurate descriptions of the data and methodology that are at issue with respect to the Parikh Study in this case.

Although Natera disagrees that *ONY* applies to this case at all,[7] if an instruction on peer review is given, it should include the language on the *ONY* "exception" that this Court has articulated (*see* Dkt. 120 at 20-21; Dkt. 326 at 33) as well as the law on establishment claims articulated in *Southland Sod*. Natera's conditional proposal is below.

> Statements in a commercial advertisement or promotion based on test results from a peer-reviewed and published scientific article can be false or misleading if the party challenging the advertisement proves any of the following:
>
> 1. The test results were not sufficiently reliable to permit one to conclude with reasonable certainty that they established the statement in the commercial advertisement or promotion, which can be shown by (a) attacking the validity of the test results directly or by (b) showing that the tests are contradicted or unsupported by other scientific tests;
>
> 2. The test results, even if reliable, do not establish the statement in the commercial advertisement or promotion;
>
> 3. The test results were fabricated or fraudulently created;
>
> 4. The test results were based on inaccurate descriptions of the data and methodology; or
>
> 5. the commercial advertisement or promotion reports the test results

[7] *See, e.g.*, Dkt. 251 at 17-18 (Natera's Opposition to Guardant's Motion for Summary Judgment); Dkt. 100 at 21-22 (Natera's Opposition to Guardant's Motion to Dismiss or Strike Natera's Amended Counterclaims).

> in a way that is misleading and that deceived or had a tendency to deceive a significant portion of the commercial audience.

**Guardant's Position**

Unlike Natera's proposed instruction above, Guardant's proposal accurately applies this Court's analysis of both *Southland Sod* and *ONY*. Indeed, it is Natera's express and continued opposition to the Court's interpretation and adoption of *ONY*—rather than Guardant's application of this Court's rulings—that appears to drive Natera's objection. Notably, however, *ONY* has recently become even more broadly accepted. For example, in *Pacira BioSciences, Inc. v. Am. Soc. of Anesthesiologists, Inc.*, 63 F.4th 240 (3d Cir. 2023), the Third Circuit expressly adopted *ONY* in rejecting a drug company's efforts to stifle unfavorable scientific articles about its product. *Id.* at 246-48 (adopting *ONY,* holding: "mere disputes about the reliability of a scientific study's disclosed methodology cannot create an actionable falsehood for" a tort). And in *Torrey v. Infectious Diseases Soc. Of Am.*, 86 F.4th 701, 706-07 (5th Cir. 2023), the Fifth Circuit adopted both *ONY* and *Pacira*. In *Torrey*, the Fifth Circuit distinguished *Eastman Chem Co. v. Plastipure, Inc.*, 775 F.3d 230 (5th Cir. 2014), which Natera again relies upon. *Eastman* also is distinguishable here. While the defendants in that case has supported an article that was peer-reviewed and published, 775 F.3d at 233, that article never mentioned either the plaintiff or its product "by name." *Id.* at 237. Nevertheless, defendants ran negative advertising based on the study, claiming it specifically showed that "Eastman's Tritan™ resin" presented health concerns. *Id.* at 233-34 (quotations omitted). In affirming a verdict in favor of the plaintiff, the Fifth Circuit distinguished *ONY*, in part because

> the nature of the secondary distribution in *ONY* is dissimilar to that which occurred in this case. In *ONY*, the secondary distribution was limited to the issuance of a press release summarizing the article's findings and dissemination of the article itself. Here, the secondary distribution did not include any dissemination of the article; in fact, the sales brochure was distributed prior to the article's publication.

*Id.* at 237. Thus, "the different results in *ONY* and in this case reflect the difference between presenting an article's conclusions and 'transforming snippets of a paper which never mentions Tritan or Eastman by name into commercial advertisements claiming Tritan is harmful.'" *Id.* (quoting District Court decision) (brackets and ellipses omitted).

**Disputed Instruction No. 39 re False Advertising – Lanham Act – Element Two**

To establish the second element of a false advertising claim under the Lanham Act, a plaintiff must prove that the defendant's false or misleading statement actually deceived or had the tendency to deceive a substantial segment of the target audience.

If a party proves that the other party made in its advertising a statement that is literally false on its face or that is literally false by necessary implication, you may presume that consumers were deceived or had a tendency to be deceived by the false or misleading statement.

If a party proves that the other intended to deceive consumers with its advertising, you may presume that consumers were deceived or had a tendency to be deceived by that advertising.

If a party proves that the other party published deliberately false comparative claims in its advertising, you may presume that consumers were deceived or had a tendency to be deceived by that deliberately false comparative claim.

If a party proves that the other party expended substantial funds in an effort to deceive consumers and influence purchasing decisions, you may presume that consumers were deceived or had a tendency to be deceived by the party's advertising.

A party may overcome these presumptions by proving that consumers were not deceived.

If you find that the other party did not make a statement that is literally false and that it did not intend to deceive consumers, the party must prove that the misleading statement deceived or had a tendency to deceive a substantial segment of consumers.

If you find that a statement is literally false, you may presume that the literally false statement actually deceived or had the tendency to deceive a substantial segment of the target audience. The party who made the literally false statement can rebut the presumption by presenting evidence that the literally false statement did not actually deceive or have a tendency to deceive a substantial segment of the target audience. In determining whether a statement actually or had a tendency to deceive the target audience, you should take into consideration the nature of the audience, including how informed or sophisticated the audience is and how likely their purchasing decisions are to be influenced by the complained-of statements. If you find that the party who made the literally false statement has presented such evidence, then the presumption has been

rebutted and you must decide whether the plaintiff has shown by a preponderance of the evidence that the literally false statement actually deceived or had a tendency to deceive a substantial segment of their target audience. On the other hand, if you find that the presumption has not been rebutted, then you must find that the second element of the plaintiff's claim for false advertising under the Lanham Act has been proven.

If you find that a statement was true but misleading (as opposed to literally or deliberately false), then the burden is on the plaintiff to show that a substantial segment of the audience was actually deceived by the statement. In making this determination, you should again consider the nature of the audience, including how informed or sophisticated the audience is, and how likely their purchasing decisions are to be influenced by the complained-of statements

**Guardant's Sources:** *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc*., No. 17- 01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court); *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 18-CV-923-SVW, Dkt. 349 (C.D. Cal. 2018) (Jury Instructions Given in Open Court); *William H. Morris Co. v. Group W, Inc*., 66 F.3d 255, 258-59 (9th Cir. 1995) ("If [defendant] intentionally misled consumers, we would presume consumers were in fact deceived and [defendant] would have the burden of demonstrating otherwise."); *Harper House, Inc. v. Thomas Nelson, Inc*., 889 F.2d 197, 209 (9th Cir. 1989) (upholding jury instruction that "presumption that the consumers are, in fact, being deceived" applies if the jury finds "that defendants engaged in intentional deception"); *Johnson & Johnson-Merck v. Rhone-Poulenc*, 19 F.3d 125, 129 (3d Cir.1994) ("If a plaintiff proves a challenged claim is literally false, a court may grant relief without considering whether the buying public was misled."); *Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 153 (2d Cir. 2007) ("When an advertisement is shown to be literally or facially false, consumer deception is presumed, and the court may grant relief without reference to the advertisement's actual impact on the buying public."); *Apple Inc. v. Amazon.com Inc*., 915 F. Supp. 2d 1084, 1090 (N.D. Cal. 2013) ("However, if an advertisement is not false on its face (i.e., if there is no express or explicit false statement), the plaintiff must produce evidence, usually in the form of market research or consumer surveys, showing exactly what

message was conveyed that was sufficient to constitute false advertising."); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181-82 (8th Cir. 1998); *C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435 (4th Cir. 1997); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 514 (8th Cir. 1996); *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62-63 (2d Cir. 1992); *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991); *Pestube Sys. v. HomeTeam Pest Def., LLC*, 2007 U.S. Dist. LEXIS 24938 at *19-20 (D. Ariz. Mar. 29, 2007); *Lenscrafters, Inc. v. Vision World, Inc.*, 931 F. Supp. 1462, 1468 (D. Minn. 1996); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 930 F. Supp. 753, 782-83 (E.D.N.Y. 1996); *Church & Dwight Co., Inc. v. S.C. Johnson & Son, Inc.*, 873 F. Supp. 893, 903-05 (D. N.J. 1994); *Stiffel Co. v. Westwood Lighting Group*, 658 F. Supp. 1103, 1111 (D. N.J. 1987); *Order Granting in Part and Denying in Part Parties' Cross Motions for Summary Judgment,* Dkt. 326 (Mar. 22, 2023) at 12-14.

**<u>Natera's Sources:</u>** *Avid Identification Sys., Inc. v. Schering-Plough Corp.*, 33 F. App'x. 854, 856 (9th Cir. 2002) ("Because these representations were literally false, the statements carry with them the presumption that consumers relied on and were deceived by them."); *Krikor v. Sports Mall, LLC*, No. CV225600DMGMRWX, 2023 WL 2372068, at *7 (C.D. Cal. Jan. 24, 2023) ("In a false advertising claim based on misleading statements that are not literally false, courts require plaintiffs to present proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients at the summary judgment stage or at trial.") (internal marks and citation omitted); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 1541649, at *6 (S.D. Cal. Apr. 20, 2021) ("Moreover, when a statement is literally false, the elements of actual deception and materiality are presumed."); *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 635-36 (N.D. Cal. 2019) ("Reckitt is correct that when the alleged representation is not an overt false statement, the evidentiary showing required to sustain a Lanham claim is higher and proof that the advertising actually conveyed the implied message and thereby deceived a significant proportion of the recipients

becomes critical.") (internal marks and citation omitted); *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 833 (N.D. Cal. 2019) ("When the alleged representation is not an overt false statement, but merely misleading in context, the evidentiary showing required to sustain a Lanham claim is higher and proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.") (internal marks and citation omitted); *Pipe Restoration Techs., LLC v. Coast Bldg. & Plumbing, Inc.*, No. 8:13-CV-00499-JDE, 2018 WL 6012219, at *4 (C.D. Cal. Nov. 16, 2018) ("Where an advertisement is literally false, a presumption arises that consumers were in fact deceived and the burden shifts to the defendant to prove otherwise."); *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 18-CV-923-SVW, Dkt. 349 at 15 (C.D. Cal. Feb. 21, 2018) ("If you find that a statement was true but misleading (as opposed to literally or deliberately false), then the burden is on the plaintiff to show that a substantial segment of the audience was actually deceived by the statement."); *ITEX Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, 1171 (D. Nev. 2015) ("Where an advertisement is literally false, a presumption arises that consumers were in fact deceived and the burden shifts to the defendant to prove otherwise.") (internal marks and citation omitted) ("Defendants make no attempt to demonstrate how their statements do not have a tendency to deceive the consuming public. Instead, they argue that ITEX has failed to present evidence of actual deception. Had the Court found that the various statements at issue were only misleading and not literally false, then Defendants' articulation of ITEX's burden would be correct.") (internal citation omitted); *Nat'l Prod., Inc. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1237 (W.D. Wash. 2010) ("literally false advertisements create a presumption of deception and reliance"); *JHP Pharms., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1002-03 (C.D. Cal. 2014) ("[W]hen the alleged representation is not an overt false statement, but merely misleading in context, the evidentiary showing required to sustain a Lanham claim is higher. In such a case, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.") (internal marks and citation omitted); *Quidel Corp. v. Siemens Medical Solutions USA, Inc.*, No. 20-55933, 2021 WL 4622504, at *2 (9th Cir. Oct. 7, 2021) (the nature of the audience—highly-skilled and credentialed professionals—is such that representations about the type and quality of

an assay are not reasonably likely to influence their purchasing decisions); *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 456 (D. Conn. 1994) ("when promotional representations are made to physicians, the court will examine the representation in light of the context of a well informed and sophisticated audience.") (internal citations and quotations omitted).

**Guardant's Position:**

Guardant's proposal is clear that, where a statement is literally true but misleading, and no presumptions of deception apply, the claimant must prove deception. However, as Guardant's proposal also accurately summarizes, the Ninth Circuit has held that, in Lanham Act false advertising cases, actual deception may be presumed in a variety of circumstances, including:

- Where a statement is false, either on its face or by necessary implication. E.g., *Avid Ident. Sys., Inc. v. Schering-Plough Corp.*, 33 Fed. Appx. 854, 856 (9th Cir. 2002) ("Because these representations were literally false, the statements carry with them the presumption that consumers relied on and were deceived by them.") (citing *William H. Morris Co. v. Group W. Inc*. 66 F.3d 255, 258 (9th Cir.1995); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir.1989); *U–Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1040–41 (9th Cir.1986)).
- "If [defendant] intentionally misled consumers," *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258-59 (9th Cir. 1995); *see also Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989) (upholding jury instruction that "presumption that the consumers are, in fact, being deceived" applies if the jury finds "that defendants engaged in intentional deception");
- Where a party has published deliberately false comparative claims. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997) ("'[p]ublication of deliberately false comparative claims gives rise to a presumption of actual deception and reliance.'") (quoting *U–Haul Int'l, Inc. v. Jartran, Inc*., 793 F.2d 1034, 1040–41 (9th Cir.1986)).
- Where a competitor has expended substantial funds in an effort to deceive consumers and influence their purchasing decision. *U–Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041

> (9th Cir.1986) ("The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that the consumers are, in fact, being deceived.")

Natera's proposal improperly ignores most of these circumstances. Natera also appears to suggest that the presumption of deception may be overcome solely based on the "sophistication" of the audience, which is unsupported by any authority. For example, in *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 20-55933, 2021 WL 4622504 (9th Cir. Oct. 7, 2021), the Ninth Circuit affirmed a grant of summary judgment based on a conclusion that the false advertising at issue was *immaterial*. *Id.* at *1. This conclusion was based on undisputed evidence that the two customers exposed to the defendant's alleged false advertising made their purchasing decisions for reasons separate and independent from the alleged false statements. *Id.* at *2.

**<u>Natera's Position:</u>**

Unlike Guardant's proposed instruction, Natera's proposed instruction accurately summarizes the Ninth Circuit rule that a presumption of deception does not apply to misleading statements. *See William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995) ("Where a statement is not literally false and is only misleading in context, however, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical. . . . Group W should not be permitted to receive damages from Omicron in the absence of evidence that this was the message Omicron's letter actually conveyed to recipients and that the recipients were therefore deceived."); *Krikor v. Sports Mall, LLC*, No. CV-22-5600-DMG-MRWx, 2023 WL 2372068, at *7 n.10 (C.D. Cal. Jan. 24, 2023) ("Here, the Court's conclusion is that Sports Mall's statements were misleading, but not literally false, so the U-Haul presumption does not apply."); *ITEX Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, 1171 (D. Nev. 2015) ("Defendants make no attempt to demonstrate how their statements do not have a tendency to deceive the consuming public. Instead, they argue that ITEX has failed to present evidence of actual deception. Had the Court found that the various statements at issue were only misleading and not literally false, then Defendants' articulation of ITEX's burden would be correct.") (internal citation omitted).

Instead, "when the alleged representation is not an overt false statement, the evidentiary showing required to sustain a Lanham claim is higher and proof that the advertising actually conveyed the implied message and thereby deceived a significant proportion of the recipients becomes critical." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 635-36 (N.D. Cal. 2019) (internal marks and citation omitted); *see also Genus Lifesciences Inc. v. Lannett Co.*, Inc., 378 F. Supp. 3d 823, 833 (N.D. Cal. 2019) ("When the alleged representation is not an overt false statement, but merely misleading in context, the evidentiary showing required to sustain a Lanham claim is higher and proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.") (internal marks and citation omitted); *JHP Pharms., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1002-03 (C.D. Cal. 2014) (same).

Additionally, Natera's proposed instruction accurately reflects that the jury can and should take into consideration the nature and sophistication of the target audience for a given statement, and the extent to which the at-issue statements are likely to influence the decisions of the target audience. *See Quidel Corp. v. Siemens Medical Solutions USA, Inc.*, No. 20-55933, 2021 WL 4622504, at *2 (9th Cir. Oct. 7, 2021) (the nature of the audience—highly-skilled and credentialed professionals—is such that representations about the type and quality of an assay are not reasonably likely to influence their purchasing decisions); *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 456 (D. Conn. 1994) ("when promotional representations are made to physicians, the court will examine the representation in light of the context of a well informed and sophisticated audience.") (internal citations and quotations omitted). Natera's proposed instruction does not ask the jury to find that a presumption of deception may be overcome *solely* on the basis of the sophistication of the audience. Guardant's proposal, in contrast, includes overlapping, duplicative conditional instructions that will confuse and mislead the jury.

Furthermore, Guardant's proposed instruction inappropriately suggests that the expenditure of substantial funds is an absolute legal precondition to triggering a presumption of deception. *See William H. Morris*, 66 F.3d at 258-59 ("We have previously indicated that this presumption is conditioned on the expenditure of substantial funds by the defendant. In the typical

false advertising case, this condition is imposed because the misleading statements may not have reached and deceived a substantial portion of consumers unless the defendant spent enough funds to disseminate the statements widely. In this case, however, regardless of how much money Omicron spent, it is clear that all the relevant consumers received the allegedly misleading letter. The only issue, therefore, is whether we can presume these recipients were actually misled because Omicron engaged in intentional deception."); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 (9th Cir. 1989) ("The relevant jury instruction correctly followed *Jartran II*: it stated that in order for this presumption to apply, the jury must find that defendants engaged in intentional deception.").

Guardant's proposed instruction also misapplies the law by applying the necessary by implication doctrine. *See* Natera's Motion *in Limine* No. 1 (Dkt. 363); Disputed Instruction No. 35.

**Disputed Instruction No. 40 re False Advertising – Lanham Act – Element Three**

A false or misleading statement is material if it is likely to influence consumer purchasing decisions. A statement that misrepresents an inherent quality or characteristic of the product about which the statement was made is likely to influence consumer purchasing decisions and is material.

To prevail on a false advertising claim under the Lanham Act, a plaintiff must prove that the deception is material. A false or misleading statement is material if:

1. It is likely to influence a buyer's purchasing decision or
2. It misrepresented an inherent quality or characteristic of the product.

Literally false statements are presumed to be material. A defendant may rebut this presumption by proving that the literally false statement was not material.

<u>**Guardant's Sources:**</u> *Manual of Model Civil Jury Instructions for the Ninth Circuit* (2017 edition, updated December 2022) at 339 ("Elements required for a false advertising claim . . . are set forth in *Rice v. Fox Broadcasting Co*., 330 F.3d 1170, 1180 (9th Cir. 2003)."); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc*., No. 17-01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court); *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997) (listing elements); *In-N-Out Burgers v. Smashburger IP Holder LLC*, 2019 WL 1431904, at *7 (C.D. Cal. Feb. 6, 2019) ("Materiality can be shown where defendants misrepresent 'an inherent quality or characteristic' of a product."); *Broadcom Corp. v. SiRF Tech., Inc*., 2009 WL 10672287, at *4 (C.D. Cal. Oct. 8, 2009) (same); *Nat'l Basketball Ass'n v. Motorola, Inc*., 105 F.3d 841, 855 (2d Cir. 1997) ("However, in addition to proving falsity, the plaintiff must also show that the defendants 'misrepresented an inherent quality or characteristic' of the product … This requirement is essentially one of materiality, a term explicitly used in other circuits."); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc*., 299 F.3d 1242, 1250 (11th Cir. 2002) ("A plaintiff may establish this materiality requirement by proving that 'the defendants misrepresented an inherent quality or characteristic of the product.'").

**<u>Natera's Sources:</u>** Summary Judgment Order at 26-27 ("A statement is material if it is 'likely to influence the purchasing decision.'") (quoting *ThermoLife Int'l LLC v. Gaspari Nutrit. Inc.*, 648 Fed. App'x. 609, 615 (9th Cir. 2016); *Monster Energy Company v. Vital Pharmaceuticals, Inc.*, No. 5:18-cv-01882-JGB, Dkt. 889 at 44 (C.D. Cal. Sept. 29, 2022) ("A false or misleading statement is material if: 1. The statement misrepresented an inherent quality or characteristic of the product about which the statement was made; or 2. The statement is likely to influence consumer purchasing decisions."); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 1541649, at *6 (S.D. Cal. Apr. 20, 2021) ("Moreover, when a statement is literally false, the elements of actual deception and materiality are presumed."); *Clorox Co. v. Reckitt Benckiser Grp PLC*, 398 F. Supp. 3d 623, 644 (N.D. Cal. 2019) ("A false advertising claim must be material in that it is likely to influence the purchasing decision' of consumers.") (internal marks and citation omitted); *Pipe Restoration Techs., LLC v. Coast Bldg. & Plumbing, Inc.*, No. 8:13-CV-00499-JDE, 2018 WL 6012219, at *4 (C.D. Cal. Nov. 16, 2018) ("Where an advertisement is literally false, a presumption arises that consumers were in fact deceived and the burden shifts to the defendant to prove otherwise."); S*trategic Partners, Inc. v. Vestagen Protective Techs., Inc.*, No. 2:16-cv-05900-RGK, Dkt. 215 at 14 (C.D. Cal. Sept. 22, 2017) ("To establish that the deception is material, the statement at issue must be likely to influence the purchasing decision of the target audience. Literally false statements are presumed to be material."); *ITEX Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, 1173 (D. Nev. 2015) ("Moreover, if the statements at issue are found to be literally false, the court may presume materiality.")

**<u>Guardant's Position:</u>**

Guardant's proposal is accurate. As this Court explained in *Clorox Co. v. Reckitt Benckiser Grp PLC*, 398 F. Supp. 3d 623, 644 n.6 (N.D. Cal. 2019): "Historically, courts have presumed materiality for literally false statements. *See William H. Morris*, 66 F.3d at 258. Now, however, 'a majority of circuits, including the Ninth Circuit, require a separate showing of materiality for literally false statements.'" (quoting *LivePerson, Inc. v. [24]7.ai*, Inc., No. 17-cv-01268 JST, 2018

WL 5849025, at *6, 2018 U.S. Dist. LEXIS 190918, at *16 (N.D. Cal. Oct. 26, 2018) (citing *Skydive Arizona, Inc. v. Quattrocchi,* 673 F.3d 1105, 1111 (9th Cir. 2012); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc*., 299 F.3d 1242, 1250 (11th Cir. 2002)).

**Natera's Position:**

Natera's proposed instruction summarizes the approach to materiality in the Ninth Circuit in a way that will promote juror comprehension. Unlike Guardant's proposed instruction, Natera's proposed instruction orients the jury to where materiality fits in the Lanham Act element framework. Natera's proposed instruction also embraces the Court's approach to materiality in *Clorox Co. v. Reckitt Benckiser Grp PLC*, 398 F. Supp. 3d 623, 642 (N.D. Cal. 2019) and clearly communicates that a false or misleading statement is material if (1) it is likely to influence a buyer's purchasing decision, or (2) it misrepresented an inherent quality or characteristic of the product. In addition, Natera's proposed instruction also includes the presumption of materiality that arises from literally false statements. *See, e.g.*, *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 1541649, at *6 (S.D. Cal. Apr. 20, 2021) ("Moreover, when a statement is literally false, the elements of actual deception and materiality are presumed."); *Pipe Restoration Techs., LLC v. Coast Bldg. & Plumbing, Inc.*, No. 8:13-CV-00499-JDE, 2018 WL 6012219, at *4 (C.D. Cal. Nov. 16, 2018) ("Where an advertisement is literally false, a presumption arises that consumers were in fact deceived and the burden shifts to the defendant to prove otherwise."); *ITEX Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, 1173 (D. Nev. 2015) ("Moreover, if the statements at issue are found to be literally false, the court may presume materiality.").

**Disputed Instruction No. 41 re False Advertising – Lanham Act – Element Four**

A false or misleading statement enters interstate commerce if:

1. the statement was used in interstate commerce, or
2. the statement was used in intrastate commerce which affects interstate commerce.

To establish the fourth element of a false advertising claim under the Lanham Act, a plaintiff must prove that the false or misleading statement entered interstate commerce. A false or misleading statement enters interstate commerce if (1) the defendant made the advertising statement across state lines or (2) the defendant made the advertising statement within a single state but that the statement affected sales of the advertised product across state lines.

**<u>Guardant's Sources:</u>** *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 1541649, at *7 (S.D. Cal. Apr. 19, 2021) (citing *Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 992-93 (9th Cir. 1982); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826–29 (9th Cir. 2011); *Netlist, Inc. v. Diablo Techs. Inc.*, No. 13-cv-5962 YGR, 2015 WL 5138634, at *3 (N.D. Cal. Sept. 1, 2015); *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007); *Gallup, Inc. v. Bus. Research Bureau (Pvt.) Ltd.*, No. C 08-01577 WHA, 2008 WL 4857027, at *5 (N.D. Cal. Nov. 10, 2008).

**<u>Natera's Sources:</u>** *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 n.3 (9th Cir. 1997) ("[I]t is the statement itself, rather than the falsely advertised goods or services, that must be used in interstate commerce."); *Duncan v. Stuetzle*, 76 F.3d 1480, 1489 n.14 (9th Cir. 1996) ("[T]he word 'commerce' as used in the Lanham Act includes intrastate commerce which affects interstate commerce[.]"); *Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*, No. 16-05900-RGK, Dkt. 215 at 15 (C.D. Cal. Sept. 22, 2017) ("For the Lanham Act to apply, the advertising statements in question must have been made in interstate commerce, or in such a way as to have an impact on interstate commerce."); *In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 924 (C.D. Cal. 1994) (finding that "Plaintiff has adduced sufficient evidence . . . for a trier of fact to find that the advertisement and letter were used in interstate

commerce and/or affect interstate commerce.”); Seventh Circuit Pattern Civil Jury Instructions, Instruction 13.3.1 (2017 edition).

**<u>Guardant’s Position:</u>**

There is no reasonable dispute in this case that Natera’s advertising was made in interstate commerce. E.g., *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 165 (3d Cir. 2001) (“The commerce requirement has been broadly interpreted,” and “Congress's authority under the interstate commerce clause extends even to purely intrastate activity if that activity substantially affects interstate commerce.”) Guardant’s proposed instruction is straight forward and uncomplicated, but Natera’s adds unnecessary complexity.

**<u>Natera’s Position:</u>**

Guardant’s proposed instruction is tautological. In essence, it attempts to define “enters interstate commerce” with additional references to “interstate commerce.” In contrast, Natera’s proposed instruction accurately states the law while communicatively it effectively to jurors. Contrary to Guardant’s assertions, a dispute remains about whether Natera and Guardant caused the allegedly false or misleading statements to enter interstate commerce. *See* Dkt. 362 at 6-7.

**Disputed Instruction No. 42 re False Advertising – Lanham Act – Element Five**

To establish the fifth element of a false advertising claim under the Lanham Act, a plaintiff must prove that it was or is likely to be injured as a result of the false or misleading statement.

A party asserting a false advertising claim must prove injury. Injury may be proven by showing the diversion of its sales, or by the lessening of the goodwill that a party's products enjoy with the buying public.

A plaintiff may prove this element by showing either (1) that it sustained actual injury as a result of the challenged advertising statement(s), or (2) that it is likely to be injured as a result of the challenged advertising statement(s). Injury may be proven by showing the diversion of the plaintiff's sales or the lessening of the goodwill that the plaintiff's products enjoy with the buying public.

Because Guardant and Natera are direct competitors, you may presume that a misrepresentation that tends to mislead consumers caused commercial injury.

Either party may overcome this presumption by proving that the other party has suffered no injury and is not likely to suffer injury.

**Guardant's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit* (2017 edition, updated December 2022) at 339 ("Elements required for a false advertising claim . . . are set forth in *Rice v. Fox Broadcasting Co*., 330 F.3d 1170, 1180 (9th Cir. 2003)."); *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997) (listing elements); *Strategic Partners, Inc. v. Vestagen Protective Techs., Inc*., No. 16-05900-RGK, Dkt. 215 (C.D. Cal. 2017) (Jury Instructions Given in Open Court); *TrafficSchool.com*, 653 F.3d 820, 826 (9th Cir. 2011) (making a "presum[ption of] commercial injury when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers"); *Allergan USA Inc. v. Imprimis Pharms., Inc.*, No. SACV171551DOCJDEX, 2019 WL 4546897, at *3 (C.D. Cal. Aug. 2, 2019); *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc*., 648 F. App'x 609, 615 (9th Cir. 2016).

**Natera's Sources:** *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989)

("In a suit for damages under section 43(a), however, actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case.") (emphasis in original); *Monster Energy Company v. Vital Pharmaceuticals, Inc.*, No. 5:18-cv-01882-JGB, Dkt. 889 at 45 (C.D. Cal. Sept. 29, 2022); S*trategic Partners, Inc. v. Vestagen Protective Techs., Inc.*, No. 16-05900-RGK, Dkt. 215 at 16 (C.D. Cal. 2017).

**<u>Guardant's Position:</u>**

Guardant's proposal correctly states the law, while Natera's proposal contradicts this Court's Order on summary judgment. *See* Dkt. 326 at 29 ("Guardant is entitled to a presumption of commercial injury. The Ninth Circuit has 'generally presumed commercial injury when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers.' *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011). The presumption of commercial injury applies "because, when competitors vie for the same customers, a misleading ad can upset their relative competitive positions and thereby cause injury." *ThermoLife*, 648 Fed. App'x. at 615–16.") Natera's contention that the presumption does not arise because this purportedly is not "a two-player market" ignores the Court's actual holding, and is further based on an unsupported factual dispute.

**<u>Natera's Position:</u>**

Natera disputes that the recurrence monitoring marketing is a two-player market and therefore objects to Guardant's proposal that the presumption of injury applies. Accordingly, Natera believes that Guardant must prove this element of its case. *See Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) ("In a suit for damages under section 43(a), however, actual evidence of some injury resulting from the deception is an essential element of the plaintiff's case.").

**Disputed Instruction No. 43 re False Advertising – Lanham Act - Explanations and Disclaimers offered by Guardant**

False or misleading advertising claims are not excused or remedied by the use of explanations or disclaimers that purport to change the meaning of the advertising claims and to make them truthful if those explanations or disclaimers are presented in a way that readers will tend to overlook them.

**Guardant's Sources:** *K&N Engineering, Inc., v Spectre Performance*, No. 09-cv-1900-VAP-DTB, Dkt. 274 (C.D. Cal. 2011) (Jury Instructions Given in Open Court); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d. 384, 464 (D. N.J. 2009); *Johnson & Johnson-Merck Consumer Pharms. Co. v. Procter & Gamble Co.*, 285 F. Supp. 2d 389, 391-92 (S.D.N.Y.), *aff'd*, 90 Fed. Appx. 8 (2d Cir. 2003); *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 906 F. Supp. 178, 182 (S.D.N.Y. 1995).

**Natera's Position:**

This instruction is unnecessary and irrelevant, as the footnotes in Natera's advertisements do not purport to "change the meaning of the advertising claims," they merely cite to the underlying studies. The instruction is especially unnecessary in the context of advertisements directed to sophisticated customers in an industry in which the use of footnotes for attribution is routine. *See* Summary Judgment Order (Dkt. 326) at 27 ("On one hand, physicians tend to rely largely on peer-reviewed publications and clinical trials, not advertising materials and papers from companies."); *Quidel Corp. v. Siemens Medical Solutions USA, Inc.*, No. 20-55933, 2021 WL 4622504, at *2 (9th Cir. Oct. 7, 2021) ("The extensive vetting completed by these sophisticated experts leading to their eventual purchase of Siemens' assay overcomes Quidel's position that the challenged statements amount to conflicting evidence on materiality. In other words, the nature of the audience—highly-skilled and credentialed professionals—is such that representations about

the type and quality of an assay are not reasonably likely to influence their purchasing decisions even if it attracted the labs' primary interest.").

**Guardant's Position**

As this Court observed in its summary judgment ruling, Natera relied on footnoted disclaimers in its advertising. Dkt. 326 at 15 ("Thus, a jury could find that Natera's advertising statement comparing presurgical sensitivities is literally false by necessary implication. Although Natera argues that it never stated that the two studies are "equivalent," Natera lined up a side-by-side comparison of Reveal and Signatera's sensitivity metrics, with only a small footnote indicating that the numbers came from different studies.") The instruction is based on a correct construction of the law and is both necessary and appropriate.

**Disputed Instruction No. 44 re False Advertising – Lanham Act – Puffery offered by Natera**

Statements in advertisements that are vague or highly subjective are regarded as "puffery."

Advertising in general terms that one product is superior to another is considered puffery. For example, an advertiser's statement that its lamps are "far brighter than any lamp ever before offered" constitutes puffery.

However, misdescribing a specific characteristic of a product is not puffery. For example, advertising that a lamp surpasses "35,000 candle power and a 10-hour life" is not considered puffery.

If you find that the party being accused of false advertising has shown, by a preponderance of the evidence, that a claim is puffery, that claim does not constitute false advertising.

**Natera's Source:** *Falcon Stainless, Inc. v. Rino Cos.*, No. SA CV 08-00926 AHS (MLGx), Dkt. 408 (C.D. Cal. 2011) (Jury Instructions Given in Open Court).

**<u>Natera's Position:</u>**

Natera respectfully requests that the Court adopt its proposed instruction regarding puffery. The proposed instruction follows standard law as set forth in this Court's summary judgment order. Dkt. 326 at 40.

**<u>Guardant's Position:</u>**

Neither Party has argued that any of the remaining claims at issue are defensible on the grounds of "puffery." The proposed instruction is therefore unnecessary and likely to cause confusion.

**Disputed Instruction No. 45 re False Advertising – Lanham Act – Opinions offered by Natera**

In order to find a party accused of false advertising liable under the Lanham Act, you must find that the false or misleading statement is one of fact, capable of being proven true or false. A statement of fact is a description of specific characteristics of a product or a specific and measurable claim. Statements of opinion are not actionable.

**Natera's Sources:** *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false *statement of fact* . . . .") (emphasis added); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730-31 (9th Cir. 1999) ("Statements of opinion are not generally actionable under the Lanham Act.").

**<u>Natera's Position:</u>**

Natera respectfully requests that this instruction be given because it reflects basic principles of law. It is demonstrable facts capable of being shown true or false that are actionable, not opinions. Natera's statement of the law accurately reflects case law on this issue. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

**<u>Guardant's Position:</u>**

The proposed instruction is inaccurate, unnecessary, and likely to cause confusion. To begin, a defendant may not avoid liability merely by couching an advertising claim as an "opinion." *Grasshopper House, LLC v. Clean and Sober Media, LLC*, 2018 WL 6118440, at * 12 (N.D. Cal. Jul. 18, 2018) ("The doctrine of commercial speech also reaches financially motivated 'opinions' that businesses offer about their competitors or other companies")

**Disputed Instruction No. 46 re California State Common Law Unfair Competition offered by Guardant**

California common law claims are substantially congruent to claims made under the Lanham Act.

If you find that either party has violated the Lanham Act, then you may find that it has also violated California unfair competition common law.

**Guardant's Sources:** *Order Granting in Part and Denying in Part Parties' Cross Motions for Summary Judgment,* Dkt. 326 (Mar. 22, 2023) at 11, n.2; *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1180 n.1 (9th Cir. 2013) ("This court has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*, 32 F. Supp. 3d 1088, 1099 (N.D. Cal. 2014) ("the Ninth Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.") (internal quotations omitted); *Id*. ("The 'ultimate test' in both cases is whether the consumers of the good are 'likely to be deceived....'") (citing *Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1457 (9th Cir.1991) (internal quotations omitted)).

**<u>Natera's Position:</u>**

No instruction should be given for a claim for California common law unfair competition. The law is clear that, under California law, "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) (quoting *Bank of the W. v. Superior Ct.*, 833 P.2d 545, 551 (Cal. 1992)); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) (allowing a false advertising claim to proceed under the Lanham Act but affirming dismissal of a companion common law unfair competition claim, noting,

"Because Plaintiffs' allegations do not amount to 'passing off' or its equivalent, Defendants are correct that Plaintiffs' claim for unfair competition was properly dismissed."); *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1083 (N.D. Cal. 2012) ("[I]n California common law unfair competition claims are limited to cases in which a party passes off their goods as another."). The cases treating California common law unfair competition claims as "substantially congruent" with those of the Lanham Act are trademark cases, not false advertising cases. *See, e.g.*, *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (trademark claim). It would be legal error to instruct the jury on California common law unfair competition claims in this case where there are no allegations of "passing off" or its equivalent.

The sources Guardant cites do not contradict this clear holding. *Karlin Tech., Inc. v. Spine-Tech Inc.*, 117 F.3d 1425, 1997 WL 377110 (9th Cir. 1997), was published in a "Table of Decisions Without Reported Opinions" and did not address false advertising claims. The Court affirmed dismissal of plaintiffs' claims in that case, which involved allegations of intentional interference with prospective economic advantage. *Id.* at *1. *QuidelCorp. v. Siemens Medical Solutions USA, Inc.*, No. 20-55933, 2021 WL 4622504, at *1 n.1 (9th Cir. Oct. 7, 2021), did not involve a common law claim for unfair competition under California law; it addressed a claim for intentional interference with prospective economic advantage. The other "congruent" state law claims were for unfair competition under Cal. Bus. & Prof. Code § 17200 and false advertising under Cal. Bus. & Prof. Code § 17500. In *Zeltiq Aesthetics, Inc. v. BTL Industries, Inc.*, 32 F. Supp. 3d 1088, 1099 (N.D. Cal. 2014), the Court *denied* a motion for a preliminary injunction, analyzing the plaintiff's allegations together, and the parties did not object.

**Guardant's Position**

Jury instructions are not an appropriate context to raise dispositive motion arguments that were raised at neither the pleadings or summary judgment stage. Contrary to Natera's contention: "Under California law, unfair competition ***is not limited to 'passing off*** one's goods as the goods of another.'" *Karlin Tech., Inc. v. Spine-tech Inc.*, 117 F.3d 1425, 1997 WL 377110, at *1 (9th Cir. Jul. 3, 1997) (emphasis added, citation omitted). Instead, as Natera expressly argued, and this Court thus held: "Claims for false advertising in violation of Cal. Bus. & Prof. Code § 17500 *et*

*seq*., unlawful trade practice in violation of Cal. Bus. & Prof. Code § 17200 *et seq*., ***and state common law unfair competition*** are treated as 'substantially congruent' to claims under the Lanham Act." Natera Mot. S.J. [Dkt. 220] at 24 (emphasis added) (citing *Cleary v. News Corp*., 30 F.3d 1255, 1262-633 (9th Cir. 1994); *QuidelCorp. v. Siemens Med. Sol. USA, Inc.*, No. 20-55933, 2021 WL 4622504, at *1 n.1 (9th Cir. Oct. 7, 2021)); *see also* Dkt. 326 at 11 (same); *accord*, *Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*, 32 F. Supp. 3d 1088, 1099 (N.D. Cal. 2014) (Explaining that: "As both parties recognize, the Ninth Circuit 'has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act,'" and addressing Lanham Act false advertising claim and California UCL claim) (quoting *Cleary v. News Corp*., 30 F.3d 1255, 1262–63 (9th Cir. 1994)). Both Parties have asserted common law unfair competition claims, and both Parties seek punitive damages. Because punitive damages will be potentially limited according to the compensatory damages awarded by the jury, and because the Lanham Act does not allow punitive damages for a violation of the Act, 15 U.S.C. § 1117(a), it is appropriate and necessary for the jury to be instructed on the elements of the state common law claim, even though it is congruous with the Lanham Act.

**Disputed Instruction No. 47 re Lanham Act False Advertising – Monetary Recovery**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find that a party is liable for false advertising under the Lanham Act, you must determine the appropriate monetary recovery for the other party. The party bringing a claim for false advertising has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate [the party bringing a claim for false advertising for] [that party] for any injury any injury you find was caused by the other party and that is attributable only to the false advertising.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture. While damages must be established with reasonable certainty, they need not be calculated with absolute exactness proven with specificity. Damages are not uncertain because they cannot be calculated with mathematical precision or absolute exactness. Rather, there must be a reasonable basis for computation. The burden of any uncertainty in the amount of damages should be borne by the party that is liable. You may not award damages in order to punish the party being accused of false advertising.

A party bringing a claim for false advertising may recover the following:

1. Actual damages resulting from other party's false advertising; and
2. Any profits earned by the other party as a result of its false advertising.

I will instruct you on each of these.

**Guardant's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 5.1 (2017 Ed., Updated Aug. 2023); 15 U.S.C. § 1117(a); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. 17-01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995), *as amended on denial of reh'g* (Feb. 15, 1996) ("the burden of any uncertainty in the amount of damages should be borne by the

wrongdoer") (citing *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265, (1945)); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), abrogated on other grounds by *SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179 (9th Cir. 2016) ("As a general rule, damages which result from a tort must be established with reasonable certainty. The Supreme Court has held that '[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness,' yet, a reasonable basis for computation must exist.") (citations omitted; alteration in original)); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012) ("In the end, any 'uncertainty in the amount of damages should be borne by the wrongdoer.'").

**Natera's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 5.1 (2017 edition, updated August 2023) (modified); 15 U.S.C. §§ 1116, 1117; *Nat'l Prods. v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1166 (W.D. Wash. 2010) (plaintiff has burden of proving damages); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc*., No. 17-01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court); *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012) ("the Lanham Act has been construed to expressly forbid the award of damages to punish an infringer"); *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1985) (In the Ninth Circuit, an award of damages must be "attributable only to the unlawful conduct."); *Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545-IEG (POR), 2010 WL 3069690, at *8 (S.D. Cal. Aug. 3, 2010) (granting summary judgment because plaintiff "has not provided a reasonable basis for computing damages, [and] any determination of damages would be speculative, and therefore improper").

**<u>Natera's Position:</u>**

Natera respectfully requests that the Court adopt its proposed instruction because it is complete on the issue of monetary recovery and makes clear that any actual damages must be attributable to the false advertising pursuant to Ninth Circuit law. In contrast, Guardant's instruction includes excessive, argumentative language aimed at misleading the jury into thinking it can award the damages Guardant seeks even if Guardant fails to meet its burden of proving those

damages. Guardant's extraneous language is a transparent attempt to compensate for its damages expert's imprecise damages theories and calculations that are untethered to the alleged false wrongful conduct. Moreover, Natera's proposal is more complete as Guardant's proposed instruction fails to even provide the categories of damages that are available for a false advertising claim under the Lanham Act.

**<u>Guardant's Position</u>**

Guardant's proposal provides an accurate and neutral description of the remedies available under the Lanham Act. Notably, it follows the Ninth Circuit's Model Instruction much more closely than does Natera's proposal, which adds argument and statements redundant to later instructions. Guardant's proposal also provides a brief and accurate summary of the law in the Ninth Circuit that "the burden of any uncertainty in the amount of damages should be borne by the wrongdoer," *Adray v. Adry-Mart, Inc*., 76 F.3d 984, 989 (9th Cir. 1995), *as amended on denial of reh'g* (Feb. 15, 1996), and that "[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness,' yet, a reasonable basis for computation must exist," *Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179 (9th Cir. 2016); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 944 F. Supp. 2d 830, 840 (C.D. Cal. 2012) ("In the end, any 'uncertainty in the amount of damages should be borne by the wrongdoer.'") Guardant's proposed, neutral language does not detract from the burden of either party in proving damages, as it makes clear that the party seeking damages must establish them by a preponderance of the evidence. Natera's contention that Guardant's damages expert put forward "imprecise damages theories and calculations that are untethered to the alleged false wrongful conduct" already was rejected by the Court in response to Natera's *Daubert* challenges to Mr. Malackowski, Dkt. 322 at 2-12, and further is inappropriate argument for these jury instructions. In short, Natera's proposal is inaccurate, goes beyond what is appropriate or necessary, and is redundant to subsequent instructions.

**Disputed Instruction No. 48 re Lanham Act False Advertising – Actual Damages**

If you find for a party on its false advertising claim, you must determine that party's actual damages.

A party has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the party for any injury you find was caused by the other party's false advertising.

You should consider the following:

1. The injury to the party's reputation;
2. The injury to the party's goodwill, including injury to the party's general business reputation;
3. The lost profits that the party would have earned but for the other party's false advertising. Profit is determined by deducting allowable production expenses from gross revenue, as I will explain to you later;
4. The expense of preventing customers from being deceived; and
5. The cost of future corrective advertising reasonably required to correct any public confusion caused by the false advertising.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), your award of such future costs should not exceed the value of the party's business.

Actual damages may include:

1. The injured party's lost profits, which is the profits it would have earned if not for the false or misleading advertising.
   a. Profit is determined by deducting all allowable expenses from gross revenue. Expenses are all costs incurred in generating the gross revenue. When considering a claim for lost profits, you may consider evidence that some or all of those claimed losses may be caused by other market factors or reasons and not as a result of the accused false advertising.
2. The cost of corrective advertising reasonably required to correct any deception caused by the false advertising.

a. Corrective advertising costs must be attributable to the false or misleading advertising. When considering prospective costs (e.g., cost of future advertising), you must not overcompensate. Your award of such future costs should not exceed the actual damage to the party bringing a claim for false advertising.

**Guardant's Sources:** Ninth Circuit Model Instruction 15.27 (2017 Ed., updated, Aug. 2023) (citing *Adray v. Adry-Mart, Inc*., 76 F.3d 984, 989 (9th Cir. 1995) (Plaintiff may be awarded "[p]rospective costs [which] may be difficult to determine precisely.")); 15 U.S.C. § 1117(a); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014) (courts have afforded relief under 15 U.S.C. § 1125(a) where the defendant damages plaintiff's product's reputation); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc*., No. 17-01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court); *McCarthy on Trademarks and Unfair Competition* § 27:43 (5th ed.) (Monetary Recovery for False Advertising).

**Natera's Sources:** *Ninth Circuit Manual of Model Civil Jury Instructions*, Nos. 5.1, 15.27 (Plaintiff's Actual Damages) (modified) (pursuant to the comments for the Model Jury Instructions No. 15.27, "[the] [d]efendant may argue that plaintiff's loss in sales may be caused by other market factors and not as a result of defendant's infringement. If defendant makes such an argument, an appropriate instruction should be drafted."); *id.* at 15.27 ("When considering prospective costs (e.g., cost of future advertising . . . ), you must not overcompensate."); *Thrive Nat. Care v. Thrive Causemetics*, No. CV 20-9091 PA (ASx), 2021 WL 4813257, at *7 (C.D. Cal. Oct. 6, 2021) ("[A]n award of compensatory damages based on potential 'corrective advertising' costs must be tied to 'non-speculative evidence.'"); *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1180 (C.D. Cal. 2011) (declining to award requested "prospective corrective advertising" damages that were not "sufficiently tethered to correcting the nature of the harm," because corrective advertising costs cannot be supported where there is a "lack of any reasonably accurate measure with which to assess an appropriate award of corrective advertising"); *Merck Eprova AG v. Brookstone*

*Pharmaceuticals, LLC*, 920 F. Supp. 2d 404 (S.D.N.Y. 2013) ("Lost profits damages under the Lanham Act require 'subtracting any expenses associated with the lost revenues.'"); *IP Power Holdings, Ltd. v. Bam Brokerage, Inc.*, No. SACV 11-01234-JVS (ANx), 2014 WL 12589630, at *4 (C.D. Cal. Mar. 3, 2014) ("[P]rofits are calculated by subtracting total costs (including both direct and indirect costs) from total revenue."); *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1985) ("In the Ninth Circuit, an award of damages must be 'attributable only to the unlawful conduct.'"); *Computer Access Tech. Corp. v. Catalyst Enterprises, Inc.*, 273 F. Supp. 2d 1063, 1076 (N.D. Cal. 2003) ("The law requires plaintiffs to distinguish between damages caused by lawful and unlawful conduct."); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. CV-07- 8298 ABC MANX, 2010 WL 11505684, at *3 (C.D. Cal. Jan. 25, 2010), *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013) ("In calculating lost profits, a plaintiff must 'prove in a reasonable manner the link between the injury suffered and the illegal practices of the defendant.'"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985) (deduction for overhead expenses should be permitted "when the infringer can demonstrate that [the overhead expense] was of actual assistance in the production, distribution or sale of the infringing product") (citation omitted); *Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) ("[A] defendant may deduct overhead expenses where he can demonstrate they were 'of actual assistance in the production, distribution or sale of the infringing product.'") (citation omitted); *Folkens v. Wyland*, No. C-01-1241 DEL, 2002 WL 1677708, at *5 (N.D. Cal. July 22, 2002) (reducing defendants' gross revenue by direct costs, which included sales commissions); *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *8 (N.D. Cal. July 14, 2011) ("[defendants] may deduct expenses that they can prove were of actual assistance in the production, distribution or sale of the infringing products"); *Intellectual Property, Valuation, Exploitation and Infringement Damages*, G. Smith & R. Parr, Ch. 34 (costs "that should be deducted [for lost profit damages] are those that vary with the changes in sales volume"; "commission expenses directly reflect the volume of sales"); *A Practical Guide to Monetary Relief in Trademark Infringement Cases*, 85 Trademark Rep. 263, 291 (1995) at *290-91 ("deductible costs may include the following: (f) Salaries and commissions of salesmen—deductible to the

extent attributable to the infringing sales"); *K&N Engineering, Inc., v Spectre Performance*, No. 09-cv-1900-VAP-DTB, Dkt. 274 (C.D. Cal. 2011) (Jury Instructions Given in Open Court) (expenses are all costs associated with generating the gross revenue); *Operation Tech. Inc. v. Cyme Int'l T & D Inc.*, No. SACV 14-00999-JLS (DFMx), Dkt. 255 (C.D. Cal. 2016) (Jury Instructions by Judge James V. Selna) (expenses are all costs associated with generating the gross revenue).

**<u>Guardant's Position</u>**

Natera's Proposal goes beyond what is appropriate for a damages instruction and becomes advocacy for a limited recovery. For example, Natera's proposal would limit the "actual damages" suffered by Guardant to *only* lost profits and corrective advertising, which contradicts the law in the Ninth Circuit as it would preclude the jury's consideration of injury to and the loss of Guardant's goodwill and reputation caused by Natera's false and misleading advertising. Guardant's instruction accurately describes the law, which allows for recovery to the loss of reputation and good will. E.g., *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, 2016 WL 8999940, at *3 n.4 (M.D. Fla. Feb. 6, 2016) ("Damages under the Lanham Act may include a party's profits; any damages sustained by the party alleging the violation, which may include injury to business reputation or good will; and the cost of the action.") (citing 15 U.S.C. § 1117; *Aronowitz v. Health–Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008)). Ninth Circuit Model Instruction 15.27 explicitly includes these categories of damages

It also is inaccurate to state that Mr. Malackowski did not opine on Natera's loss of goodwill and reputational harm, as he opined that these types of damages were not quantifiable and therefore rendered his damages figures conservative. E.g., Dkt. 322 at 11. Moreover, whether an expert has opined on a specific amount for a form of damages does not preclude the jury, weighing the evidence, to conclude it is warranted.

With respect to corrective advertising, while Guardant's proposal largely follows the Ninth Circuit's Model Instruction, the Model's emphasis on avoiding overcompensation (which creates a risk of undercompensation) overstates the Ninth Circuit's direction in *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988–89 (9th Cir. 1995). In the context of Natera's false advertising campaign, which

was intended to destroy Reveal at its launch, the relevant limiting factor to avoid over compensation is the value of the Reveal business itself. *Id.* ("Prospective costs may be difficult to determine precisely and present a danger of overcompensation if they exceed the value of the mark.") By contrast, Natera's proposal appears designed to improperly limit the recovery of the allowable compensatory damages Guardant needs to remediate Natera's false and misleading advertising.

Guardant addresses Natera's arguments regarding allowable costs in the section below

**Natera's Position:**

Natera respectfully requests that the Court adopt its proposed instruction. Guardant proposes an introductory instruction that is repetitive of the instruction that should be given in the prior general damages instruction.

Guardant's first two categories of available "actual damages" are vague, confusing, duplicative, and improper here. The injury to a party's "reputation" or "goodwill" is not relevant given that neither party has offered a damages calculation based on injury to its reputation or goodwill. It is inappropriate to instruct the jury on a category of damages that is not at issue, and doing so will only serve to confuse the jury. The only types of actual damages sought by the parties are corrective advertising and lost profits. *See Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. 17-01613-CJC, Dkt. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court). Moreover, Guardant 's proposal asks the jury to consider injury to a party's "reputation" separate from injury to "goodwill," but does not explain how these are distinct categories. Guardant's inclusion of this language is an attempt to persuade the jury to improperly inflate its damages award despite Guardant's failure to prove any such damages.

Natera's instruction properly discusses the two types of damages that are relevant in this case—actual damages and corrective advertising costs. With respect to actual damages, Natera's proposal more appropriately describes the allowable costs as those associated with generating the revenue and does not confuse the issue with terms of art (e.g., operating costs) that are interpreted differently by different individuals. *See, e.g., Operation Tech. Inc. v. Cyme Int'l T & D Inc.*, No. SACV 14-00999-JLS (DFMx), Dkt. 255 (C.D. Cal. 2016) (As Given Jury Instructions). To the

extent the Court is inclined to adopt Guardant's instruction with respect to the expenses that should be deducted, Natera requests that overhead costs be added to the list, which is appropriate under the law. *K&N Engineering, Inc., v Spectre Performance*, No. 09-cv-1900-VAP-DTB, Dkt. 274 (C.D. Cal. 2011) (Jury Instructions Given in Open Court) (expenses are all costs associated with generating the gross revenue).

With respect to corrective advertising, Guardant's instruction is overbroad. Corrective advertising costs must be attributable to the false advertising. *Thrive Nat. Care v. Thrive Causemetics*, No. CV 20-9091 PA (ASx), 2021 WL 4813257, at *7 (C.D. Cal. Oct. 6, 2021) ("[A]n award of compensatory damages based on potential 'corrective advertising' costs must be tied to 'non-speculative evidence.'"); *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1180 (C.D. Cal. 2011) (declining to award requested "prospective corrective advertising" damages that were not "sufficiently tethered to correcting the nature of the harm," because corrective advertising costs cannot be supported where there is a "lack of any reasonably accurate measure with which to assess an appropriate award of corrective advertising"). Guardant's proposal will invariably lead the jury to calculate lost profits as gross revenue minus expenses—the "but for" is insufficient to instruct to the jury to engage in the attribution analysis it is required to perform.

Moreover, Guardant provides no support for the notion that prospective costs "should not exceed the *value of the party's business*." This is contradictory to this Court's Order on Guardant's Motions to strike (Dkt. 499-2) and Ninth Circuit case law that Guardant itself cites throughout these jury instructions. *See Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1995) ("The instruction should direct the jury to award such damages only to the extent that the amount of money needed for corrective advertising does not exceed *the damage to the value of Lou Adray's mark*.") (emphasis added).

**Disputed Instruction No. 49 re Lanham Act False Advertising – Disgorgement of Profits**

*[For submission to jury in advisory capacity]*

In addition to actual damages, Guardant, if it succeeds on its false advertising claim, is entitled to any profits earned by Natera If you find a party liable for false advertising under the Lanham Act, you may also consider whether to award the injured party any profits earned by the liable party that are attributable to its the false advertising (known as "disgorgement" of the liable party's profits), so long as such an award shall constitute compensation and not a penalty. You may not, however, include in any disgorgement award of Natera's profits any amount that you took into account in determining actual damages. In other words, you may not award an injured party both its claimed lost profit damages *and* any disgorgement of the liable party's profits you find was proven by a preponderance of the evidence to be attributable to the false advertising.

An award of profits is not automatic. In deciding whether profits should be awarded, you may consider the mental state of the liable party, including whether it had the intent to confuse or deceive, or if it acted with indifference to whether its advertising was false or misleading. You may also consider whether sales have been diverted from the injured party to the liable party as a result of the false advertising; the adequacy of other remedies for the injured party; and the public interest in making false advertising unprofitable.

Profit is determined by deducting all allowable expenses from gross revenue.

The injured party has the burden to prove by a preponderance of the evidence with reasonable certainty the gross revenue that the liable party gained from sales of the liable party's product. Gross revenue is all of Natera's receipts from the sale of Signatera. Guardant has the burden of proving Natera's gross revenue by a preponderance of the evidence.

Expenses are all costs incurred in generating the gross revenue. Allowable expenses are production costs of Signatera that actually assisted in producing the gross revenue. You may not, however, deduct any expenses that related to Natera's false advertising, such as costs associated with the conduct for which you found Natera liable.

The liable party Natera has the burden to prove by a preponderance of the evidence any of

proving allowable expenses that should be deducted from gross revenue and the portion of the profit, if any, attributable to factors other than false advertising by preponderance of the evidence. It also has the burden to prove by a preponderance of the evidence the portion of its profits that are attributable to factors other than false advertising. Unless you find that a portion of the profit from the sales of Signatera is attributable to factors other than Natera's false and misleading advertising, you should find that the total profit is attributable to the false and misleading advertising.

**Guardant's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 15.29 (2017 edition, updated August 2023); Restatement (Third) of Unfair Competition § 37(h) ("Only costs directly attributable to the production of the infringing goods are deductible . . . . [A]lthough normal accounting practice may allocate overhead and general expenses over all products, such an allocation is not necessarily appropriate for purposes of determining the net profits for which the defendant must account."); *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (Lanham Act's primary purpose "is to take all the economic incentive out of trademark infringement"; declining to permit deduction for costs of infringing product where defendant sold product "at cost" because such a result "would not remove the incentive" to violate the Lanham Act) (internal quotation omitted); Restatement (Third) of Unfair Competition § 37(g) (Computation of net profits) ("The value of a defendant's own labor, however, and salaries or wages paid to persons responsible for the tortious conduct, are not ordinarily deductible."); *id.*, Cmt. G ("Compensation paid to persons directly responsible for the infringement is not ordinarily deductible."); 4 McCarthy on Trademarks and Unfair Competition § 30:69 ("The infringer's expenses of changing infringing labels is certainly not deductible, as it is an expense due to the very wrong which prompted the litigation."); *L.P. Larson, Jr., Co. v. Wm Wrigley, Jr., Co.*, 277 U.S. 97, 100 (1928) ("[I]t does not follow that the [infringer] should be allowed [to deduct] what he paid for the chance to do what he knew he had no right to do."); *Wolfe v. National Lead Co.*, 272 F.2d 867, 873 (9th Cir. 1959) ("compensation to [infringer] and his partners for services rendered to the business. . . . is not a proper deduction under the facts of this case"); *Duro Co. of*

*Ohio v. Duro Co. of New Jersey,* 56 F. 2d 313, 315 (3d Cir. 1932) ("[T]he defendant should not be permitted to deduct his salary as part of its costs. To permit the defendant to deduct his salary as part of its costs, would be to require the plaintiff to pay him a salary for doing intentional wrongful acts in violation of the plaintiffs' rights."); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("where infringing and noninfringing elements of a work cannot be readily separated, all of a defendant's profits should be awarded to a plaintiff").

**Natera's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 15.29 (2017 edition, updated August 2023); 15 U.S.C. § 1117(a); *Intellectual Property, Valuation, Exploitation and Infringement Damages*, G. Smith & R. Parr, Ch. 34 (costs "that should be deducted [for lost profit damages] are those that vary with the changes in sales volume"; "commission expenses directly reflect the volume of sales"); *A Practical Guide to Monetary Relief in Trademark Infringement Cases*, 85 Trademark Rep. 263, 291 (1995) at *290-91 ("deductible costs may include the following: (f) Salaries and commissions of salesmen—deductible to the extent attributable to the infringing sales"); *The Comprehensive Guide to Economic Damages*, N. Fannon, et al., Vol. 1 (6th Ed.), at Chapter 14 Section 4.1 (similar); *Folkens v. Wyland*, No. C-01-1241 DEL, 2002 WL 1677708, at *5 (N.D. Cal. July 22, 2002) (reducing defendants' gross revenue by direct costs, which included sales commissions); *Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *7 (N.D. Cal. Jan. 10, 2013) (court and jury accepted deduction of commissions in disgorgement calculation); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985) (deduction for overhead expenses should be permitted "when the infringer can demonstrate that [the overhead expense] was of actual assistance in the production, distribution or sale of the infringing product") (citation omitted); *Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) ("The [Ninth Circuit] cases hold that a defendant may deduct overhead expenses where he can demonstrate they were 'of actual assistance in the production, distribution or sale of the infringing product.'") (citing *Frank Music Corp.*); *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *8 (N.D. Cal. July 14, 2011) ("Defendants are correct that they may deduct expenses that they can prove were of actual

assistance in the production, distribution or sale of the infringing products"); 5 McCarthy on Trademarks and Unfair Competition § 30:68 (5th ed.) ("[I]n the Ninth Circuit, the rule is that defendant may deduct overhead expenses where defendant can prove that they were of actual assistance in the production, distribution or sale."); *Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545-IEG (POR), 2010 WL 3069690, at *8 (S.D. Cal. Aug. 3, 2010) (granting summary judgment because plaintiff "has not provided a reasonable basis for computing damages, [and] any determination of damages would be speculative, and therefore improper"); *K&N Engineering, Inc., v Spectre Performance*, No. 09-cv-1900-VAP-DTB, Dkt. 274 (C.D. Cal. 2011) (Jury Instructions Given in Open Court) (expenses are all costs associated with generating the gross revenue); *Operation Tech. Inc. v. Cyme Int'l T & D Inc.*, No. SACV 14-00999-JLS (DFMx), Dkt. 255 (C.D. Cal. 2016) (Jury Instructions by Judge James V. Selna) (expenses are all costs associated with generating the gross revenue). Guardant's reference to "[redacted]" shows that Guardant intends to argue that all of Natera's marketing expenses to support Signatera are attributable to the alleged false advertising. Guardant's instruction thus fails to take into consideration the numerous marketing claims and materials that Guardant does *not* challenge.

**<u>Guardant Position:</u>**

Guardant's proposal adheres much more closely to the Ninth Circuit's Model Instruction, while Natera adds restrictive glosses without a basis in Ninth Circuit authority (including, e.g., references to the diversion of sales and the adequacy of other remedies). Guardant further believes that its proposed instruction appropriately states the law of disgorgement, while Natera's proposal overstates the degree to which costs may be deducted. Thus, while Natera asserts it should be allowed to deduct all costs—including fixed costs, sales commissions it paid to its sales force to engage in the false advertising at issue, or related marketing and sales costs—its position is contrary to a basic goal of the Lanham Act: to make sure violations are "unprofitable" *Maier Brew. Co. v. Fleischmann Dist. Corp.*, 390 F.2d 117, 123 (9th Cir. 1968).

That is precisely why the Restatement (Third) of Unfair Competition provides that "[o]nly costs directly attributable to the production of the infringing goods are deductible." Restatement

(Third) of Unfair Competition § 37(h); *see also Polo Fashions, Inc. v. Dick Bruhn, Inc*., 793 F.2d 1132, 1135 (9th Cir. 1986) (explaining that the Lanham Act's primary purpose "is to take all the economic incentive out of trademark infringement," and therefore declining to permit deduction for costs of infringing product where defendant sold product "at cost" because such a result "would not remove the incentive" to violate the Lanham Act) (quotations omitted).

Moreover, Guardant's proposed language that the jury may not deduct any expenses that related to Natera's false advertising is both necessary and appropriate, as allowing deduction of such costs, associated with the conduct for which Natera would be liable, would effectively reward Natera for its violation of the Lanham Act. *See L.P. Larson, Jr., Co. v. Wm Wrigley, Jr., Co.,* 277 U.S. 97, 100 (1928) ("[I]t does not follow that the [infringer] should be allowed [to deduct] what he paid for the chance to do what he knew he had no right to do."); *Wolfe v. National Lead Co.,* 272 F.2d 867, 873 (9th Cir. 1959) ("compensation to [infringer] and his partners for services rendered to the business. . . . is not a proper deduction under the facts of this case"). The Restatement (Third) of Unfair Competition § 37(g) (computation of net profits) thus states: "The value of a defendant's own labor, however, and salaries or wages paid to persons responsible for the tortious conduct, are not ordinarily deductible." *See also id*., note to Commt. G ("Compensation paid to persons directly responsible for the infringement is not ordinarily deductible.") Natera therefore should not be allowed to deduct as costs the sums it paid to incentivize its sales force and marketing staff to engage in Lanham Act violations. Natera takes its contrary position because, when the expenses for sales commissions, overhead, and related sales and marketing costs associated with [redacted] (including salaries) are included as deductions, Natera claims to have no profits to disgorge. Indeed, Natera's damages expert concluded that these deductions yielded negative gross profits of approximately $[redacted], as opposed to positive gross profits of $[redacted] when only true incremental costs were considered (spanning from Reveal's launch until June 2022). Permitting deductions for the direct costs of Natera's false advertising would inoculate Natera from any disgorgement and flout the underlying purposes of the Lanham Act to deter false

advertising and protect consumers.[8]

Natera's complaint that this instruction is not "party neutral" fails to account for this Court's rejection of Natera's sole evidence for disgorgement. *See* Dkt. 322 at 12-13 & 17 ("The Court excludes Stec's opinions on (1) disgorgement of Guardant's profits"). Because only one party has presented admissible evidence relating to disgorgement, it is appropriate for this instruction to instruct the jury as to Guardant's claim for disgorgement from Natera.

The final sentence of Guardant's proposal is an almost verbatim quote of the final sentence of Ninth Circuit Model Instruction No. 1529, which states:

> Unless you find that a portion of the profit from the sale of the [specify goods] using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

It therefore is not, as Natera declares, "is unsupported, superfluous, and intended only to improperly influence the jury."

**<u>Natera's Position:</u>**

Natera respectfully requests that the Court adopt its proposed instruction regarding disgorgement of profits. As an initial matter, Guardant's proposal fails to comply with the Court's directive that the parties submit jury instructions that are party neutral. *See* March 1, 2024 Hr'g Tr. at 74:2-6 ("I'm looking for simplicity, and what you all submitted was the opposite of simplicity. I'm not going to give you an instruction that says, oh, well, here is element 5 of the 5-factor test as applied to Guardant's claims, and here it is as applied to Natera's claims.").

Guardant's instruction wrongly limits "allowable expenses" to production costs. However, the case law and treatises make clear additional costs can be deducted. *K&N Engineering, Inc., v Spectre Performance*, No. 09-cv-1900-VAP-DTB, Dkt. 274 (C.D. Cal. 2011); *Intellectual Property, Valuation, Exploitation and Infringement Damages*, G. Smith & R. Parr, Ch. 34 (costs "that should be deducted [for lost profit damages] are those that vary with the changes in sales

---

[8] To the extent the Court considers Natera's request for deduction of fixed costs, then Guardant requests an instruction that such costs not be deducted if the jury finds that Natera's false and misleading advertising was done willfully. E.g., *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1331-33 (9th Cir. 1984) (defendant may not deduct overhead expenses if conduct was willful); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487-88 (9th Cir. 2000) (willful infringers could not deduct taxes from infringing profits) (citing *L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co.*, 277 U.S. 97, 99-100 (1928))

volume"; "commission expenses directly reflect the volume of sales"); *A Practical Guide to Monetary Relief in Trademark Infringement Cases*, 85 Trademark Rep. 263, 291 (1995) at *290-91 ("deductible costs may include the following: (f) Salaries and commissions of salesmen—deductible to the extent attributable to the infringing sales"); *The Comprehensive Guide to Economic Damages*, N. Fannon, et al., Vol. 1 (6th Ed.), at Chapter 14 Section 4.1 (similar); *Folkens v. Wyland*, No. C-01-1241 DEL, 2002 WL 1677708, at *5 (N.D. Cal. July 22, 2002) (reducing defendants' gross revenue by direct costs, which included sales commissions); *Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*, No. C 10-3428 PSG, 2013 WL 831528, at *7 (N.D. Cal. Jan. 10, 2013) (court and jury accepted deduction of commissions in disgorgement calculation); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985) (deduction for overhead expenses should be permitted "when the infringer can demonstrate that [the overhead expense] was of actual assistance in the production, distribution or sale of the infringing product.") (citation omitted); *Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529, 533 (N.D. Cal. 1993) ("The [Ninth Circuit] cases hold that a defendant may deduct overhead expenses where he can demonstrate they were 'of actual assistance in the production, distribution or sale of the infringing product.'") (citing *Frank Music Corp.*); *Quia Corp. v. Mattel, Inc.*, 2011 WL 2749576, at *8 (N.D. Cal. July 14, 2011) ("Defendants are correct that they may deduct expenses that they can prove were of actual assistance in the production, distribution or sale of the infringing products"); 5 *McCarthy on Trademarks and Unfair Competition* § 30:68 (5th ed.) ("[I]n the Ninth Circuit, the rule is that defendant may deduct overhead expenses where defendant can prove that they were of actual assistance in the production, distribution or sale.").

Natera's instruction also more appropriately describes the allowable costs as those associated with generating the revenue and does not confuse the issue with terms of art (e.g., production costs) that are interpreted differently by different individuals. *See, e.g., Operation Tech. Inc. v. Cyme Int'l T & D Inc.*, No. SACV 14-00999-JLS (DFMx), Dkt. 255 (C.D. Cal. 2016) (As Given Jury Instructions). To the extent the Court is inclined to adopt Guardant's instruction with respect to the expenses that should be deducted, Natera requests that overhead and operating costs be added to the list, which is appropriate under the law. *K&N Engineering, Inc., v Spectre*

*Performance*, No. 09-cv-1900-VAP-DTB, Dkt. 274 (C.D. Cal. 2011) (Jury Instructions Given in Open Court) (Expenses are all costs associated with generating the gross revenue).

The final sentence of this instruction, proposed by Guardant, is superfluous. Even under Guardant's own proposal, the jury will already be instructed that the liable party has the burden of proving the portion of profit "attributable to factors other than false advertising by preponderance of the evidence." An additional sentence stating that the jury otherwise "*should find*' the total profit is attributable to false and misleading advertising is unnecessary.

**Disputed Instruction No. 50 re Damages under California State Common Law offered by Guardant**

If you find a party liable for common law unfair competition, then you must determine an amount that is fair compensation for all of the injured party's actual damages. A party has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the party for any injury you find was caused by the other party's unfair competition.

You should consider the following:

1. The injury to the party's reputation;

2. The injury to the party's goodwill, including injury to the party's general business reputation;

3. The lost profits that the party would have earned but for the other party's unfair competition. Profit is determined by deducting allowable production costs from gross revenue as I just explained to you;

4. The expense of preventing customers from being deceived; and

5. The cost of future corrective advertising reasonably required to correct any public confusion caused by the unfair competition.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), your award of such future costs should not exceed the value of the party's business.

* * *[9]

If you find a party liable for common law unfair competition, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish the party found liable and to discourage similar conduct deter similar acts in the future. Punitive damages may not be awarded to compensate an injured party.

The injured party has the burden of proving by clear and convincing evidence that punitive damages should be awarded and, if so, the amount of any such damages.

---

[9] As discussed in conjunction with Disputed Instruction No. 46 and further in below in its position statement, Natera does not believe that an instruction on damages for common law unfair competition is necessary at all. However, if the Court is inclined to provide an instruction, Natera believes it should only include discussion of punitive damages.

You may award punitive damages against the liable party only if the injured party proves by clear and convincing evidence that the liable party engaged in that conduct with malice, oppression, or fraud. you find that the liable party's conduct that harmed the injured party was malicious, oppressive or in reckless disregard of the injured party's rights.

"Malice" means that the liable party acted with intent to cause injury or that the liable party's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the injured party. Conduct is in reckless disregard of the injured party's rights if, under the circumstances, it reflects complete indifference to the injured party's safety or rights, or if the liable party acts in the face of a perceived risk that its actions will violate the injured party's rights under the law.

"Oppression" means that the liable party's conduct was despicable and subjected the injured party to cruel and unjust hardship in knowing disregard of its rights. An act or omission is oppressive if the liable party injures or damages or otherwise violates the rights of the injured party with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the injured party.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that the liable party intentionally misrepresented or concealed a material fact and did so intending to harm the injured party.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

a) How reprehensible was the liable party's conduct? In deciding how reprehensible the liable party's conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;
2. Whether the liable party disregarded the health or safety of others;
3. Whether the injured party was financially weak or vulnerable and liable party knew the injured party was financially weak or vulnerable and took advantage of it;
4. Whether the liable party's conduct involved a pattern or practice; and
5. Whether the liable party acted with trickery or deceit.

b) Is there a reasonable relationship between the amount of punitive damages and the injured party's harm?

c) In view of the liable party's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because the liable party has substantial financial resources.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the liable party's conduct, including whether the conduct that harmed the injured party was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.

You may not, however, set the amount of any punitive damages in order to punish the liable party for the impact of its alleged harm to anyone other than the injured party in this case.

**Guardant's Sources:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 5.5 (2017 edition, updated August 2023); *Hernandez v. Sandoval*, Case No.: 2:12-cv-04560, 2014 WL 3705597, at *5 (C.D. Cal. July 23, 2014) ("a plaintiff may receive punitive damages for common law unfair competition under California law") (citing *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th

Cir. 1996)); *Binder v. Disability Group, Inc.*, 772 F. Supp. 2d 1172, 1183-84 (C.D. Cal. 2011) ("In assessing the appropriateness of punitive damages, we look to whether a defendant's actions were done with malice, oppression, or fraud.") (citing Cal. Civ. Code § 3294).

**Natera's Sources**: Judicial Council Of California Civil Jury Instructions, No. 3945 (last updated February 2024); Cal. Civ. Code § 3294.

**<u>Guardant's Position:</u>**

Natera again abuses the jury instruction submission process by offering excessive argument, this time spilling over 1,400 words to advocate against a claim for which Natera previously advocated. *See* Natera Mot. S.J. [Dkt. 220] at 24 ("Claims for false advertising in violation of Cal. Bus. & Prof. Code § 17500 *et seq*., unlawful trade practice in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*, ***and state common law unfair competition*** are treated as 'substantially congruent' to claims under the Lanham Act.") (emphasis added) (citing *Cleary v. News Corp*., 30 F.3d 1255, 1262-633 (9th Cir. 1994); *QuidelCorp. v. Siemens Med. Sol. USA, Inc.*, No. 20-55933, 2021 WL 4622504, at *1 n.1 (9th Cir. Oct. 7, 2021)); *see also* Dkt. 326 at 11 (same); *Karlin Tech., Inc. v. Spine-tech Inc.*, 117 F.3d 1425, 1997 WL 377110, at *1 (9th Cir. Jul. 3, 1997) ("Under California law, unfair competition is not limited to 'passing off one's goods as the goods of another.'") (citation omitted); *Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*, 32 F. Supp. 3d 1088, 1099 (N.D. Cal. 2014).

There is no reasonable dispute that "a plaintiff may receive punitive damages for common law unfair competition under California law." *Hernandez v. Sandoval*, Case No.: 2:12-cv-04560, 2014 WL 3705597, at *5 (C.D. Cal. July 23, 2014) (citing *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996)); *see also Binder v. Disability Group, Inc.*, 772 F. Supp. 2d 1172, 1183-84 (C.D. Cal. 2011) ("In assessing the appropriateness of punitive damages, we look to whether a defendant's actions were done with malice, oppression, or fraud."). Moreover, *both parties* raised a claim for punitive damages in their operative pleadings. E.g., Compl., Dkt. 1, at ¶ 80; *see also* Dkt. 90 at Countercl., ¶ 151. Further, "punitive damages must be 'reasonable and proportionate'

to the harm and compensatory damages." *Diaz v. Tesla, Inc.*, 598 F. supp. 3d 809, 844 (N.D. Cal. 2022), *appeal pending*, No. 23-3334 (9th Cir.). Thus, an instruction on damages under the common law tort, including for punitive damages, is therefore necessary and appropriate.

Although Natera has known since June of last year that Guardant intended to rely on the Ninth Circuit's Model Instruction for punitive damages, it waited until April 2, 2024—the day before these instructions were due to the Court—to protest that the California state model instruction would be more appropriate. Guardant respectfully believes that the Ninth Circuit Model Instruction is the more appropriate; indeed, reviewing both the Ninth Circuit's and California state model instructions, and setting Natera's hyperbolic arguments aside, the instructions are similar, though the Ninth Circuit's Model Instruction relies on plain English and thus will be easier for the jury to understand.

**Natera's Position:**

Natera does not believe that an instruction on damages arising from the common law unfair competition claims is legally permissible. As discussed in Natera's Position for Instruction No. 46, under California common law, a claim for unfair competition requires a showing of "passing off" or its equivalent. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) ("Because Plaintiffs' allegations do not amount to 'passing off' or its equivalent, Defendants are correct that Plaintiffs' claim for unfair competition was properly dismissed."). Accordingly, no instruction should be given regarding damages for common law unfair competition.

If any instruction is given, Natera further objects to Guardant's proposal because repeating this instruction will only confuse the jury, given that Guardant is not entitled to additional actual damages separately for the state unfair competition claim when it is based on the same alleged false advertising conduct as its federal Lanham Act claim. *See, e.g., Khraibut v. Chahal*, No. 15-CV-04463-CRB, 2021 WL 1164940, at *17 (N.D. Cal. Mar. 26, 2021) (finding that two "causes of action may give rise to only one award because they stem from the same conduct"); *Schroeder v. Hundley*, No. 17-CV-919 JLS (LL), 2021 WL 1792544, at *8 (S.D. Cal. Mar. 15, 2021 ("[A] wronged party is typically not allowed to recover twice for the same harm.") (internal quotation and citations omitted); *Burgess v. Premier Corp.*, 727 F.2d 826, 837 (9th Cir. 1984) (holding that

plaintiffs were only entitled to "one recovery" per loss, despite prevailing on claims under both state and federal securities laws, state consumer protection law, and common law claims); *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1032 (9th Cir. 1999) ("Regardless of the nature or number of legal theories advanced by the plaintiff, [he or she] is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence.") (internal quotations and citations omitted). Thus, to the extent that the Court gives any instruction on damages for common law unfair competition, any language regarding actual damages should be excluded. If the Court determines that the language regarding actual damages is appropriate here, Natera incorporates all of its positions with respect to Disputed Instruction No. 48 herein.

As for the portion of Guardant's proposal regarding punitive damages, Guardant has not identified any Ninth Circuit authority granting—or even analyzing—punitive damages for a common law unfair competition claim premised on false advertising. *Cf. Chronicle Publ'g Co. v. Legrand*, No. C-88-1897-DLJ, 1992 U.S. Dist. LEXIS 20225, at *7-22 (N.D. Cal. Sep. 3, 1992) (declining to award punitive damages and treble damages in a Lanham Act trademark and common law unfair competition case); *Trovan, Ltd. v. Pfizer, Inc.*, CV-98-0094 LGB (MCx), 2000 U.S. Dist. LEXIS 7522, at *96-98 (C.D. Cal. May 23, 2000) (analyzing punitive damages when the defendant engaged in common law unfair competition based on trademark infringement). *Hernandez v. Sandoval* merely states that punitive damages awards are available for common law unfair competition claims *generally*—but that claim was based on trademark infringement, and the court ultimately declined to award punitive damages. No. 2:12-cv-04560-CAS-JCx, 2014 U.S. Dist. LEXIS 101313, at *12-13 (C.D. Cal. July 23, 2014). Guardant also cites *Binder v. Disability Group, Inc.*, but in that case, the court declined to award punitive damages for the state law unfair competition claim that was premised on the trademark infringement claim, not the false advertising claim. 772 F. Supp. 2d 1172, 1178, 1184 (C.D. Cal. 2011).

However, if the Court is inclined to provide an instruction on punitive damages for the unfair competition claim, the instruction should be based on California's model jury instructions given that the claim is born of California common law. Natera's proposal comports with California law on punitive damages and hews closely to the Judicial Council of California Civil Jury

Instruction's model instruction (with minor modifications that leave out inapplicable language regarding, for example, the agent-principal relationship between an employee and an entity). The Court should thus give Natera's proposed instruction. Guardant does not disagree that its claim is based on California state law—yet inexplicably contends the Ninth Circuit's model instruction is still "more appropriate" and makes the untenable argument that *Natera* is to blame for *Guardant's* own failure to apply the correct jurisdiction's law for a jury instruction that *Guardant* seeks.

On the contrary, Guardant's instruction cites the Ninth Circuit's model instruction and contains language clearly meant for punitive damages arising from federal claims (*e.g.*, defining "reckless disregard" as conduct in which "the liable party acts in the face of a perceived risk that its actions will violate the injured party's rights *under federal law*."). But the comments to the Ninth Circuit Civil Model Jury Instruction 5.5, upon which Guardant's proposed instruction is based, make clear that any instruction on punitive damages claims arising under state law must comply with state law standards for recovery. *Manual of Model Civil Jury Instructions for the Ninth Circuit* at 85 ("Whether and under what criterion punitive damages are available depends upon the substantive standards applicable to the underling claims for relief," and therefore, "*punitive damages claims arising under state law are subject to state law standards for recovery*[.]") (emphasis added). Thus, any jury instruction on punitive damages arising under a California common law unfair competition claim must conform with California's state law standards for recovery. The difference is not merely a technicality, as the standard for recovery of punitive damages is heightened under California law.

For example, the Ninth Circuit's model instruction for federal claims allows punitive damages to be awarded upon a finding that the liable party acted with "*reckless* disregard of the injured party's rights." But California has specifically raised its threshold requirements for recovery of punitive damages. The California Supreme Court has held that "the central spirit of the exemplary damage statute, the demand for evil motive, ***is violated by an award founded upon recklessness alone***," and that punitive damages are available only where defendant acts "with intent" or "with a conscious disregard of the plaintiff's rights." *Taylor v. Superior Ct.*, 24 Cal. 3d 890, 895–96 (1979) (emphasis added). The California Legislature thereafter further heightened the

standard of recovery by amending the punitive damages statute to impose a "new substantive limitation" requiring that a defendant have acted with "despicable conduct" in all cases where the defendant did not act specifically with an intent to harm. *Lackner v. North*, 135 Cal. App. 4th 1188, 1210-11 (2006) ("The adjective 'despicable' connotes conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people.").

Guardant's proposal would thus erroneously permit the jury to award punitive damages where conduct is merely carried out with "reckless disregard" of the injured party in direct contravention of California law. *See* Cal. Civ. Code § 3294(c) (requiring intent, or despicable conduct with a conscious disregard for others); *Bell v. Sharp Cabrillo Hosp.*, 212 Cal. App. 3d 1034, 1044 (Ct. App. 1989) ("[T]o establish malice, it is not sufficient to show only that the defendant's conduct was negligent, grossly negligent or even reckless."); *Colucci v. T-Mobile USA, Inc.*, 48 Cal. App. 5th 442, 455 (2020) ("The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages. . . . Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate."); *In re Moore*, 186 B.R. 962, 973 (Bankr. N.D. Cal. 1995) ("[B]ecause 'conscious disregard' is required for a finding of malice under the California statute since the 1980 amendment, 'reckless disregard' is no longer sufficient to sustain a punitive damage award under California law.").

Additionally, Guardant's proposal defines "malice" as including "conduct accompanied by ill will, or spite," which directly contradicts longstanding California case law holding that "[m]ere spite or ill will is not sufficient… to justify an award of punitive damages." *Ebaugh v. Rabkin*, 22 Cal. App. 3d 891, 894 (Ct. App. 1972); *see also* 23 Cal. Jur. 3d Damages § 164 (same). Instead, in California malice requires either intent to harm or despicable conduct with conscious disregard for others. Cal. Civ. Code § 3294(c)(1) ("'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."); *see also Lackner*, 135 Cal. App. 4th at 1211. Guardant's proposal similarly defines "oppression" using the lower standard

of reflecting "unnecessary harshness or severity" when California law defines "oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights". Cal. Civ. Code § 3294(c)(2).

In sum, should the Court decide to instruct the jury on California common law unfair competition claims, it should adopt Natera's proposal because it does not include duplicative and confusing language regarding actual damages and because its punitive damages instruction is properly based on California law.

**Disputed Instruction No. 51 re Mitigation offered by Natera**

The party bringing a claim for false advertising has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The party being accused of false advertising has the burden of proving by a preponderance of the evidence:

1. That the party bringing a claim for false advertising failed to use reasonable efforts to mitigate damages; and
2. The amount by which damages would have been mitigated.

**Natera's Source:** *Manual of Model Civil Jury Instructions for the Ninth Circuit*, 5.3 (2017 edition, updated August 2023).

**<u>Natera's Position:</u>**

This instruction is set forth in the Ninth Circuit model instructions and should be given.

Guardant offers no controlling authority that an instruction on mitigation is inappropriate in the context of a Lanham Act suit. In fact, many other courts have refused to strike the affirmative defense of mitigation of damages for Lanham Act claims in light of the lack of controlling authority stating that no duty of mitigation exists. *See, e.g.*, *Fluid Control Prod. v. Aeromotive Inc.*, No. 4:09-CV-1667 CAS, 2010 WL 427765, at *4 (E.D. Mo. Feb. 1, 2010) (refusing to strike mitigation defense because plaintiff "has not cited any cases to support the proposition . . . that it has no duty to mitigate its damages under the Lanham Act"); *Luxottica Grp., S.p.A. v. Airport Mini Mall*, 186 F. Supp. 3d 1370, 1378 (N.D. Ga. 2016) (denying motion to strike mitigation defense to Lanham Act claim); *see also Safari Programs, Inc. v. Collecta Int'l Ltd.*, No. 1:15-CV-20263-UU, 2017 WL 11706557, at *3 (S.D. Fla. June 21, 2017) (denying motion for default judgment on Lanham Act claim because "[defendant] had meritorious defenses to the Complaint, including, among other things, that: (1) Plaintiff failed to mitigate damages").

Additionally, regardless of whether failure to mitigate is or is not an *affirmative defense* to Lanham Act claims (in light of the lack of controlling case law in either direction), the general

doctrine of mitigation of harm remains highly relevant to calculating the appropriate amount of damages to award. *See Bauer Bros., LLC v. Nike, Inc.*, 159 F. Supp. 3d 1202, 1215 (S.D. Cal. 2016) (denying summary judgment on Nike's affirmative defense of failure to mitigate where "Nike contends that [while] failure to mitigate damages is not a defense to a claim for trademark infringement, it *is* a defense to a claim for *damages*.") (emphasis added); *Luxottica Grp.*, 186 F. Supp. 3d 1370 at 1378 (refusing to strike failure to mitigate defense to Lanham Act claim because "a failure to mitigate may remain relevant, particularly for. . . approximat[ing] actual damages"); *IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1361 (S.D. Fla. 2010) (refusing to strike mitigation defense to Lanham Act claim because "it is entirely appropriate for a defendant to assert a defense of failure to mitigate damages when considering what amount of compensation is appropriate"); *see also id.* at 1361 (quoting Black's Law Dictionary, "[i]f the defendant can show that the plaintiff failed to mitigate damages, the plaintiff's recovery may be reduced.").

Given the lack of controlling authority excluding failure to mitigate as an affirmative defense to Lanham Act claims, the importance of the mitigation doctrine for estimating the appropriate amount of compensation, and the inclusion of the mitigation instruction in the Ninth Circuit's Manual of Model Civil Jury Instructions, the jury should be given this instruction.

**Guardant Position:**

Guardant does not believe this instruction is appropriate in a Lanham Act false advertising suit. Natera has offered no authority that mitigation is required of a false advertising plaintiff, and cases have rejected imposing such a duty. *Natreon, Inc. v. Ixoreal Biomed, Inc.*, No. 16-cv-4735, 2017 WL 3131975, at *7 (D.N.J. Jul. 21, 2017) (striking mitigation affirmative defense in Lanham Act case, stating: "this Court is unable to find any controlling authority to support the position that mitigation of damages is a valid affirmative defense to the Lanham Act, unfair competition, trade libel, defamation, or tortious interference with prospective economic relations causes of action. I do not find that such a defense is applicable to the Counterclaims asserted in this case. *See Janes v. Watson*, No. 05-473, 2006 U.S. Dist. LEXIS 59004, at *52-53, 2006 WL 2322820 (W.D. Tex. Aug. 2, 2006) (questioning 'how the failure to mitigate defense applies [to claims for] ... unfair competition, trademark infringement, trademark dilution, injury to business reputation ... tortious

interference with existing and prospective business relationships, and misappropriation of trade secrets,' since 'there is nothing Plaintiffs can do to mitigate [their] damages'")). Agreeing, the court in *Jacobs v. Fareportal, Inc.* explained:

> [C]ourts have held that failure to mitigate is not an affirmative defense to unfair competition claims, whether asserted under the Lanham Act, other statutes, or the common law. *Natreon, Inc. v. Ixoreal Biomed, Inc*., 2017 WL 3131975, at *7 (D.N.J. July 21, 2017) (striking affirmative defense of failure to mitigate); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 5 F. Supp. 3d 1368 (S.D. Fla. 2014) (striking a failure to mitigate defense to a Lanham Act claim because the defense is not listed in 15 U.S.C.A. § 1115). As in *Janes v. Watson*, 2006 WL 2322820, at *17 (W.D. Tex. Aug. 2, 2006), this court "fails to see how the failure to mitigate defense applies to [Jacobs'] unfair competition, trademark infringement, … tortious interference with existing and prospective business relationships, and misappropriation of trade secrets causes of action." *Id*

No. 8:17-cv-362, 2019 WL 11029415, at *17 (D. Neb. Sept. 19, 2019). This is all the more true where, as here, the false advertising defendant continued to engage in false advertising despite a cease-and-desist letter and lawsuit.

**Stipulated Instruction No. 52 re Return of Verdict****

A verdict form has been prepared for you. [*Explain verdict form as needed.*] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circui*t, 3.5 (2017 edition, updated August 2023).

**Stipulated Instruction No. 53 re Post-Discharge Instruction****

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.

Always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence. Please respect the privacy of the views of the other jurors.

Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me and I will assist.

**Source:** *Manual of Model Civil Jury Instructions for the Ninth Circui*t, 3.9 (2017 edition, updated August 2023).

Dated: April 3, 2024

Respectfully submitted,

SHEARMAN & STERLING, LLP

By: */s/ Saul Perloff*
Saul Perloff

*Attorneys for Plaintiff/Counter-Defendant Guardant Health, Inc.*

Dated: April 3, 2024

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Andrew J. Bramhall*

*Attorneys for Defendant/Counter-Plaintiff Natera, Inc.*

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from each of the signatories listed above.

/s/ *Andrew J. Bramhall*
Andrew J. Bramhall