**SHEARMAN & STERLING LLP**
300 West 6th Street, Suite 2250
Austin, Texas 78701
+1.512.647.1900

saul.perloff@shearman.com

**Via ECF**

April 16, 2024

The Honorable Sallie Kim
United States Magistrate Judge
Northern District of California
San Francisco Courthouse
Courtroom C, 15th Floor
450 Golden Gate Avenue
San Francisco, CA

<u>Guardant Health, Inc. v. Natera, Inc., Case No. 3:21-04062-EMC</u>

Dear Judge Kim:

    Pursuant to Judge Chen's Pretrial Conference Order (Dkt. 501) ("To the extent that the parties have disputes regarding this supplemental discovery, the parties should seek resolution from Judge Kim, who is overseeing discovery issues in this matter.") and Your Honor's Standing Order, Plaintiff Guardant Health, Inc. and Defendant Natera, Inc. respectfully submit this joint letter brief regarding discovery disputes.

    Counsel for Guardant and Natera met and conferred via Zoom, as they are located in multiple states, on Monday April 1, 2024, and had numerous subsequent email exchanges regarding these disputes through April 4, 2024. Guardant provided this letter to Natera during on April 9, 2024, and Natera's provided its portion on April 15. The parties have not been able to reach an agreement on the issues presented in this letter.

By: _/s/ Saul Perloff_
    Saul Perloff

*Attorneys for Plaintiff/Counter-Defendant
Guardant Health, Inc.*

By: _/s/ Ryan Landes_

*Attorneys for Defendant/Counter-Plaintiff
Natera, Inc.*

**SHEARMAN.COM**

Shearman & Sterling LLP is a limited liability partnership organized in the United States under the laws of the state of Delaware, which laws limit the personal liability of partners.

**Disputes, Factual Background, and Relevant Deadlines**

The parties dispute (1) Natera's expert Howard S. Hochster's response to Guardant's Rule 45 document requests; and (2) Natera's refusal to search the ESI of Dr. Matthew Rabinowitz.

Fact discovery closed on August 17, 2022. Natera served Dr. Hochster's supplemental expert report on January 31, 2024, and Guardant moved to strike. The Court denied the motion and continued trial until August 28, 2024. The Court gave Guardant until June 7 to conduct discovery as set forth in the Order and until June 24 to submit a renewed *Daubert*. Dkt. 501 (Pretrial Conference order); Dkt. 493 (Order on motions to strike). Dr. Hochster objected in part to Guardant's subpoena, responded that Natera produced responsive documents for certain requests and that he did not have responsive documents for others, and produced five documents. The parties dispute whether Dr. Hochster should be required to produce additional documents.

On February 2, 2024, Natera for the first time identified Matthew Rabinowitz (its co-founder, former CEO, and Executive Chairman) as a "Will Call" witness. Dkt. 442 at 2. Natera's disclosure identified a number of areas on which he would testify, *id.* and Guardant moved to strike Dr. Rabinowitz's testimony. Natera opposed the motion, limited his testimony to Natera's founding and background, and offered Dr. Rabinowitz for a half-day deposition. Upon continuing trial, the Court denied Guardant's motion  Dkt. 493 at 13.  The parties dispute whether Natera should be required to conduct a complete search, review, and production of Dr. Rabinowitz's ESI, and present Dr. Rabinowitz for a full day's deposition.

**Guardant's Position Issue 1: Dr. Hochster Should Be Compelled to Produce Documents**

Dr. Hochster's SER includes new opinions about the "COBRA" clinical study. Though barely mentioned in his initial report, Dr. Hochster now states: "I am very familiar with the COBRA study" having "monitored its progress and results since its initiation in 2019." SER at 2. Dr. Hochster broadly opines, based on his personal knowledge and information from a conference, that the COBRA data justify Natera's aggressive and false ad campaign claiming: "The announcement to shut down the COBRA study shook the field, including myself." *Id*. at 7.

Although the SER already significantly impacted trial, Dr. Hochster produced almost no

documents (and no emails), and during the meet and confer, Natera's counsel made clear he had not actually searched for documents or emails. Instead, he objected that Guardant's Rule 45 requests go beyond the scope of Rule 26(a)(2). But "the plain text of Rule 26(a)(2) does not state that a party is limited to *only* a report and the six specified components that the report must contain. There is nothing in the text of Rule 26(a)(2) to suggest that a party is prohibited from requesting additional written information form an opponent's testifying expert witness." *Roman v. City of Chicago*, 2023 WL 121765, at *4 (N.D. Ill. Jan. 6, 2023). Thus, "[d]istrict courts across the country have . . . held that a Rule 45 document subpoena to a testifying expert witness is appropriate[.]" *Id*. at *10; *MLC Int'l Prop. V. Micron Tech.*, 2019 WL 1318377, at *3 (N.D. Cal. Mar. 22, 2019).

Natera and Dr. Hochster also improperly try to condition the production of certain responsive documents on *Guardant's* production of documents. "The federal civil discovery rules are not a *quid pro quo* system. . . . The relevant inquiry, then, is whether discovery is 'relevant' and 'proportional,' not what the other side previously requested, received, or agreed to provide." *Brown v. Chemonics Int'l, Inc.*, 2022 WL 22233224, at *6 (D.D.C. Mar. 22, 2022).

**Category 1 – Documents/communications about COBRA (Req. 3, 6-9, & 10-12).** Dr. Hochster claims he has "been monitoring" COBRA since 2019 and offers sweeping conclusions about the results of COBRA that may be inconsistent with, or reasonably questioned by, his own comments during the 4+ years he has been monitoring COBRA's progress. *Roman*, 2023 WL 121765, at *9 ("If an expert . . . is currently working on a manuscript or article with an opposing opinion that is not publicly available or has publicly presented conflicting information that is not published, opposing counsel ought to within reason be able to dig into the expert's views, biases, and any contradictions."). Guardant proposed the simple search terms "COBRA" and "NRG-05"; thus, any burden associated with producing this category is minimal.  While Dr. Hochster now claims (for the first time) that he conducted this search but found nothing, he provides no explanation of how this search was done. He also does not reconcile how he  monitored COBRA, made a presentation that included COBRA, and believes COBRA "shook the field," yet has no email or other documents about it. Guardant is entitled to know the exact parameters of Dr.

Hochster's purported search, which is especially important considering Natera misrepresents Guardant's position and falsely claims Guardant "abandoned [its] requests for communications with 'any person' about numerous topics," including COBRA.

**Category 2 – Documents/communications about Reveal (Req. 10-11 & 14).** These are relevant and proportionate because the ultimate opinion in Dr. Hochster's SER is based on his personal views about the performance of Guardant's Reveal. *See* SER at 15 ("Reveal's poor performance in the COBRA study further reinforced my concerns regarding the test"). Guardant is entitled to discover whether Dr. Hochster made statements different from or inconsistent with his SER. Dr. Hochster is not the typical expert who applies accepted methods to the record; rather, he purports to rely primarily on his experience as a professor and practicing oncologist, along with his personal knowledge of the tests at issue and various clinical studies. Again, the burden of producing these documents should be minimal: Guardant proposed the simple search terms "Reveal" and "Lunar." Natera also misstates the thrust of Judge Chen's Order as to discovery; in provisionally allowing Dr. Hochster's opinions on COBRA, he allowed discovery to proceed, and directed the parties to meet and confer on the scope of that discovery. Dkt. 493 at 13. What he did *not* allow was Natera's stone-walling and slow-rolling of that discovery. The requested documents are directly relevant to testing Dr. Hochster's opinions about the results and impact of COBRA.

**Category 3 – Documents showing Dr. Hochster's role in other studies (Req. 4-5).** Dr. Hochster's SER offers opinions about the design of COBRA, Reveal's performance in COBRA, the broader implications of COBRA, and other studies (GALAXY and BESPOKE). Those opinions raise issues about the design of COBRA, such as (a) how the timing of blood samples may impact the performance of MRD tests, and (b) whether COBRA's interim analysis design (based on a very small sample) is sufficient to draw the conclusions Dr. Hochster offers. Guardant is, therefore, entitled to discovery about Dr. Hochster's role in similar studies where such issues may have been considered and addressed. Guardant also seeks Dr. Hochster's financial conflict disclosures for certain NCI-sponsored studies, discussed immediately below.

**Category 4 – Documents sufficient to show the date, time, activities, and amount of

**compensation Dr. Hochster received from Natera (Req. 18).** Guardant is entitled to information about the compensation Dr. Hochster has received from Natera, such as time sheets and invoices. *See Roman*, 2023 WL 121765, at *9 ("[I]nformation concerning how much a party paid an expert in prior cases is relevant for purposes of cross-examination and impeachment."). But Natera refused to produce this information and Dr. Hochster was unable to recall or even estimate at his initial deposition the amount he charged Natera for his first report.[1] And, Dr. Hochster is not only a well-compensated expert witness for Natera in this litigation, he is also a contractual "Advisor" with Natera per an agreement entered in August 2020, before this litigation began. This discovery regarding Dr. Hochester's long-term and ongoing financial relationship with Natera is essential to test Dr. Hochster's biases and motivations while testifying.

**Guardant's Position Issue 2: Natera Should Be Compelled to Search and Produce ESI from Matthew Rabinowitz and Make Him Available for a Full-Day's Deposition**

Guardant deposed every employee or officer Natera identified in its twice-amended Rule 26(a)(1) disclosures. Guardant's ability to cure the prejudice created by Natera's untimely disclosure of Dr. Rabinowitz depends on its ability take the same discovery as it would have if Natera timely disclosed him. But Natera refuses to collect ESI for him—as both parties did for virtually every other party witness identified in their own initial disclosures—as well as ESI for Guardant's co-CEO Helmy Eltoukhy, on Natera's motion. Dkt.199. Natera thus refuses to produce responsive, non-duplicative documents and refuses to make him available for more than a half-day deposition—even though it advised the Court it had "no objection" to making him available for a full day. Dkt. 455 at 7, n.3.

Natera relies on the Court's limitation of Dr. Rabinowitz's testimony in Natera's case. *See* Dkt. 493 at 13 (accepting Natera's limitation to "background and context"). The Court's limitation does not, however, mean that Guardant should be prevented from having a full and fair opportunity to develop his testimony for Guardant's own case and for impeachment. Natera admitted, through its sweeping "Will Call" designation, that Dr. Rabinowitz has information about virtually

---

[1] Natera's footnote stating Dr. Hochster received about $35,000 for advisory work is insufficient. Guardant is entitled to itemized invoices for that work and for his role as an expert in this case.

aspect of this case, including Natera's marketing of Signatera. Had Natera timely identified him three years ago, Guardant would have obtained his relevant documents, deposed him, and used his testimony and documents to develop its own case-in-chief. That Natera frustrated all of that by concealing this witness cannot excuse its refusal to mitigate the harm it already caused.[2]

Natera should do what the parties did for other witnesses: run a reasonable ESI search using previously-exchanged search terms, and promptly produce responsive non-duplicative documents. Guardant then should be able to depose him for a full day—as Natera had previously agreed.

**Natera's Positions**

**Issue 1: Guardant's Demand for Broad Discovery from Natera's Expert Should Be Denied.**

On January 31, 2024, Natera served a supplemental report from its expert Dr. Howard Hochster. That report is narrowly focused on the COBRA trial—a clinical trial using Guardant's Reveal assay. In August 2023, the COBRA trial's sponsor announced that COBRA would be terminated for "futility." Dkt. 493 at 5. The clinical data showing Reveal's COBRA performance was published in January at a conference Dr. Hochster attended. Two weeks later, Dr. Hochster submitted his report, explaining that the new data confirmed his prior opinions. *See* Dkt. 447-2.

Guardant moved to strike the report as untimely and irrelevant, arguing (*inter alia*) that allowing Dr. Hochster's opinions would require more discovery about COBRA, and a host of other studies and issues. Feb. 15, 2024 Hr'g Tr. at 13:19-22; Feb. 22, 2024 Hr'g Tr. at 8:8-13. The Court denied Guardant's motion (Dkt. 493), and permitted only "limited" and "focused discovery" related to COBRA (Dkt. 501 at 7).

Guardant's subpoena to Dr. Hochster demands production of 21 categories of documents far exceeding the COBRA trial and the scope of his supplemental report. Dr. Hochster responded by describing his role in COBRA and producing responsive documents, including presentations that addressed COBRA, a journal commentary he wrote, a letter to patients enrolled in COBRA, and his Advisor Agreement with Natera. Dr. Hochster further responded that he did not have much

---

[2] Offering no factual basis, Natera speculates "there is no reason to expect" that an actual search of Dr. Rabinowitz's ESI will produce novel documents. But per its own disclosure, this witness has independent knowledge about a host of matters, and there is in fact every reason to believe that a proper search may well uncover, e.g., relevant emails between this witness and non-custodians.

of the material Guardant was seeking, that Natera had already produced additional responsive documents, and that the subpoena was overbroad in light of the Court's order limiting discovery.

While Guardant now argues, contrary to the Court's prior orders, that it is entitled to everything from Dr. Hochster that is conceivably "relevant" to any part of this case, the question here is ***proportionality***, especially after the Court's order that discovery be "limited." Guardant does not even attempt to argue that it meets these standards, and its cited authority did not involve similar circumstances.[3] Meanwhile, Guardant has done ***nothing*** to pursue the COBRA-related discovery it told the Court was at "the heart of the matter" and "necessary" (Feb. 22, 2024, Hr'g Tr. 5:1-8)—*i.e.*, discovery from the principal investigators and sponsors of the COBRA trial.

Guardant is wrong that Dr. Hochster "had not conducted a reasonable search." Given his limited role in the COBRA study, he did not need to do a comprehensive search to know he never emailed about COBRA, and for the non-objectionable categories where he suspected he might have responsive material, he searched for ***and produced*** responsive material. For other requests that sought information from patients' medical records, Dr. Hochster provided a narrative response explaining his personal involvement in COBRA and another trial Guardant inquired about (BESPOKE). Despite Dr. Hochster's fulsome response, and the Court's order limiting discovery, Guardant asks the Court to bless its irrelevant fishing expedition in an empty lake.

As for Guardant's **Category 1**, Dr. Hochster already responded, repeatedly, that he has no responsive documents. Though it was duplicative, Dr. Hochster has searched his email (again), using Guardant's requested search terms, "COBRA" and "NRG-05," and now confirms (again) that he has no responsive documents. Guardant speculates that Dr. Hochster ***must*** have responsive emails because he has been "monitoring" the COBRA trial. But that involved attending symposiums where COBRA was discussed (*see* Dkt. 447-2 ¶10), not emailing others about it.

**Category 2** is beyond the scope of the "focused discovery" the Court allowed and has nothing to do with Dr. Hochster's supplemental report. To the extent Guardant is generally seeking

---

[3] Guardant cites *Roman v. City of Chicago*, 2023 WL 121765, at *9 (N.D. Ill. Jan. 6, 2023), arguing experts must produce any "manuscript or article with an opposing opinion that is not publicly available." Dr. Hochster already confirmed he has no such responsive material.

documents showing he "made statements different or inconsistent" with his opinions, Guardant thoroughly questioned Dr. Hochster on this topic at his deposition, and Dr. Hochster testified that he had no such documents. In any event, Dr. Hochster searched his email (again) using Guardant's requested search terms, and now confirms (again) that he has no responsive communications.

**Category 3** is similarly beyond the scope of permitted COBRA discovery. In its motion to strike (Dkt. 447 at 3-4), Guardant argued it needed discovery about other studies addressed in Dr. Hochster's *original* reports. The Court disagreed and limited discovery to COBRA. Dkt. 501 at 7. That is sufficient to deny Guardant's renewed request. Regardless, Dr. Hochster already responded to the subpoena by explaining that his "role" in the BESPOKE trial was as a participant, not a principal investigator, and that he did not file financial conflict disclosures for COBRA or BESPOKE. Guardant has never justified why it needs Dr. Hochster's financial disclosures for other unrelated studies over the course of his lengthy career.

For **Category 4**, Guardant seeks Dr. Hochster's timesheets for all his work for Natera *ever*. Guardant refuses to provide timesheets for *its* experts. Dr. Hochster already made the necessary disclosure under Rule 26(a)(2)(B)(vi), **and** produced his single advisory agreement with Natera from 2020 (despite it having nothing to do with COBRA or his opinions). Natera disclosed how much it paid Dr. Hochster over the course of this entire advisor relationship: only $34,650 total for 2020-2022. There is no bias here (Guardant has paid its experts *far* more), and Dr. Hochster's timesheets have no relationship to the "limited" issue on which the Court permitted discovery.

This subpoena has no relevance to the "focused" COBRA discovery that Guardant *should* be doing. Guardant's request as to Dr. Hochster should be denied.

**Issue 2: Guardant's Request for ESI Production from Dr. Rabinowitz Should Be Denied.**

Guardant is asking the Court to reconsider a motion that was already denied. On February 6, 2024, Natera amended its witness list to include its founder, Matthew Rabinowitz. When Guardant objected, Natera clarified that Dr. Rabinowitz would only testify about Natera's founding and early technology development, and offered a half-day deposition. Dkt. 445 at 2.

Guardant rejected that compromise, moving to strike Dr. Rabinowitz from testifying at

trial. Guardant advanced the same arguments then that it does now: that it would be prejudiced unless Natera made a full custodial ESI production from Dr. Rabinowitz and then presented him for a full-day deposition.[4] Natera refuted all of the arguments Guardant rehashes now. Dkt. 455.

The Court **denied** Guardant's motion. Rejecting the notion that additional discovery was necessary, the Court held "there is no prejudice to Guardant in permitting Dr. Rabinowitz's testimony. ***Natera offered a half-day deposition for Dr. Rabinowitz***." Two weeks later, the Court ruled that further discovery must be "limited" and "focused" on COBRA (Dkt. 501 at 7)—not the wholesale ESI discovery for 93 RFPs from a witness who will not testify about COBRA at all.

Undeterred, Guardant trots out the same arguments here. *First*, Guardant argues again that Natera "conceal[ed]" Dr. Rabinowitz. *Compare* Dkt. 445 at 2-3, 8. Natera already explained that Dr. Rabinowitz's role at Natera is publicly-known, and it timely identified him during discovery. Dkt. 455 at 1. *Second*, Guardant argues again it needs broad discovery from Dr. Rabinowitz to "develop its own case-in-chief." *Compare* Dkt. 445 at 4, 7. As briefed before (Dkt. 455 at 5), Guardant could have sought to add Dr. Rabinowitz as an ESI custodian during fact discovery if it needed to do so to develop its own case but it went after other witnesses instead (including several not on Natera's initial disclosures). *Third*, Guardant complains again that Dr. Rabinowitz is sure to have relevant documents beyond the *thousands* of documents Natera *already produced* regarding him. *Compare* Dkt. 457 at 2. As Natera explained, there is no reason to expect that the burdensome ESI custodian process for Dr. Rabinowitz would add anything beyond the 59,311 documents Guardant already has from Natera, including from Natera's 12 ESI custodians. Dkt. 455 at 6. (Guardant has produced just 7,419 documents.) *Fourth*, Guardant asserts that all witnesses on both parties' initial disclosures were subject to full ESI production. Not so. There are witnesses on Guardant's initial disclosures *and* on its trial witness list (Justin Odegaard and Thereasa Rich) who were not ESI custodians and for whom Guardant produced zero custodial documents. Guardant has not presented any reason the Court should reconsider its prior ruling.

---

[4]   *See* Dkt. 445 at 3 ("Guardant would first have to take a fully-informed deposition of Natera's former CEO—which would first require Natera to search for and produce Dr. Rabinowitz's documents."), 4 (similar), 7 (similar); Dkt. 457 at 3 (similar).