```
                   UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

         Before The Honorable Sallie Kim, Magistrate Judge


GUARDANT HEALTH, INC.,        )
                              )
          Plaintiff,          )
                              )
vs.                           )  No. C 21-04062-EMC
                              )
NATERA, INC.,                 )
                              )
          Defendant.          )
_____)
                                 San Francisco, California
                                 Thursday, April 4, 2024


  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
             RECORDING 9:32 - 9:50 = 18 MINUTES

APPEARANCES:

For Plaintiff:
                                 Shearman & Sterling, LLP
                                 300 West 6th Street
                                 Suite 2250
                                 Austin, Texas 78701
                           BY:   SAUL H. PERLOFF, ESQ.
                           BY:   ANDRE HANSON, ESQ.

                                 Keller/Anderle
                                 18300 Von Karman, Suite 930
                                 Irvine, California 92612
                           BY:   CHASE A. SCOLNICK, ESQ.

For Defendant:                   Quinn Emanuel Urquhart
                                   & Sullivan, LLP
                                 865 South Figueroa Street
                                 Los Angeles, California 90017
                           BY:   RYAN S. LANDES, ESQ.

              (APPEARANCES CONTINUED ON NEXT PAGE)
```

*Echo Reporting, Inc.*

```
                                                                  2
 1  For Defendant:
                              Quinn Emanuel Urquhart
 2                              & Sullivan, LLP
                              555 Twin Dolphin Drive
 3                            5th Floor
                              Redwood City, California 94065
 4                       BY:  ANDREW J. BRAMHALL, ESQ.

 5                            Quinn Emanuel Urquhart
                                & Sullivan, LLP
 6                            50 California Street
                              22nd Floor
 7                            San Francisco, California
                                94111
 8                       BY:  ELLE X WANG, ESQ.

 9  Transcribed by:           Echo Reporting, Inc.
                              Contracted Court Reporter/
10                            Transcriber
                              echoreporting@yahoo.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

```
 1  Thursday, April 4, 2024                           9:32 a.m.
 2                    P-R-O-C-E-E-D-I-N-G-S
 3                            --oOo--
 4         THE CLERK:  Calling civil case number 21-4062,
 5  Guardant Health, Inc. versus Natera, Inc.
 6      Counsel, please state your appearances for the record,
 7  starting with the Plaintiff.
 8            MR. PERLOFF (via Zoom):  Good morning, your Honor.
 9  Saul Perloff with Shearman and Sterling for the Plaintiff,
10  Guardant Health.  With me today from Shearman and Sterling
11  is Andre Hanson.
12            THE COURT:  Good morning.
13            MR. PERLOFF:  Chase, you're on mute.
14            MR. SCOLNICK (via Zoom):  Thank you, I apologize.
15  Good morning, your Honor.  Chase Scolnick of Keller Anderle
16  on behalf of Guardant Health.
17            THE COURT:  Good morning.
18            MR. LANDES (via Zoom):  Good morning, your Honor.
19  Ryan Landes of Quinn Emanuel on behalf of Natera.  With me
20  is Andrew Bramhall and Elle Wang.
21            THE COURT:  Good morning.
22      Okay.  So, first of all, can someone tell me what the
23  schedule is right now?  Let me just start with Plaintiff.
24  What is the schedule that you're looking at, in terms of
25  what's next?  I know the fact discovery is closed and you're
```

1  just in the expert discovery and heading towards trial;
2  what's the next set of deadlines that you have?
3           MR. PERLOFF:  So, we have a June 7th deadline for
4  this limited discovery that the judge has allowed us, and
5  I'm going to get -- the trial has been reset, to begin on
6  August 26th, I believe, and between those times we obviously
7  will have the final pretrial conference and there will be
8  one additional round of motion practice, a Daubert motion,
9  in connection with Doctor Hochster's supplemental report.
10          THE COURT:  Okay.  You folks asked for this
11 hearing.  I'll hear first from Guardant and then I'll hear
12 from Natera next.
13          MR. PERLOFF:  Chase, do you want to cover Doctor
14 Hochster first?
15          MR. SCOLNICK:  Yes.  Thank you, your Honor.
16      Your Honor, the Court reopened discovery based on
17 Doctor Hochster's supplemental report.  We're now seeking
18 discovery that will enable us to respond to the report,
19 prepare for trial and to impeach his credibility.
20      I'd like to start by pointing out that he's not the
21 typical expert who is relying on THE information only
22 provided by the parties.  Doctor Hochster is relying on his
23 familiarity with both parties, (indiscernible).  He's
24 relying his involvement and familiarity with the COBRA
25 study, which is now ongoing for years.  And he's also basing

1  his opinion on the progress and his monitoring of that
2  study.
3      So, this dispute is centered on our request for four
4  categories of documents.  First, we're requesting documents
5  regarding the COBRA study itself --
6          THE COURT:  Can I ask you, it appears that the
7  other side has said that he's already looked and hasn't
8  found anything.
9          MR. SCOLNICK:  Right, and that's a great concern
10 to us.  We don't see how it is possible for him to have been
11 so involved in the study, for him to have made express
12 opinions and statements in his own report, that he has
13 discussed the study and he has been assured by -- made
14 certain assurances by his colleagues about the study and the
15 progress of the study and there is zero -- no emails.  They
16 haven't produced a single email, your Honor.
17     So, I just -- we have great concerns regarding that
18 representation.  We'd like some more information about the
19 perimeters of his search, and, again, we just don't see how
20 it's possible that given his involvement in the study, and
21 given how central he claims the study is to the community,
22 and some of the other statements in the report, how it's
23 possible there are no email communications in four years.
24         THE COURT:  Let's hear from Mr. Landes on this
25 issue of why there is nothing in his files on this study.

1          MR. LANDES:  I'm actually going to hand this one
2 off to my colleague.  Ms. Wang is covering this --
3          THE COURT:  Okay, Ms. Wang.  Thank you.
4          MS. WANG (via Zoom):  Good morning, your Honor.
5 Yes, I -- I will -- I'm happy to answer this specific
6 question.
7      So, your Honor, the issue is, Counsel has been focusing
8 on his involvement in the study and all of that, but the
9 issue is, he's just -- he's not that involved in the COBRA
10 study, as we already informed them.  His involvement to the
11 COBRA study is limited to enrolling to patients and he is  -
12 - he is giving his opinion, based on his decades of
13 experience, decades of experience conducting -- being
14 involved in clinical trials.  And with his expertise, he is
15 -- he is well -- he is well equipped to look at the data and
16 analyze the data and draw conclusions and opine from it.
17      So, he's not -- he's not basing his opinion on his
18 involvement in the COBRA trial, but rather, as we have told
19 Counsel many times, that his involvement in the COBRA trial
20 is very limited and he was looking at the published data by
21 the COBRA investigators and the COBRA sponsors.  And then he
22 was looking at the data, analyzing the data, based on his
23 expertise, and his opining on it in his supplemental report.
24 And so, he just -- he doesn't have email communications.
25      He just is a practicing oncologist.  He doesn't -- he

1  doesn't email as much as us lawyers do, and you know, he did
2  a search.  In fact, he did a -- he did an exact search that
3  Guardant asked him to do.  He searched his inbox, he
4  searched his emails for the search terms that Guardant asked
5  in this letter brief, and the result is there's just --
6  there's just nothing responsive there.  And now Guardant is
7  asking what perimeters he searched, but your Honor, the
8  answer is really in the question here.  He used the exact
9  perimeters that Guardant asked him to use and if Guardant
10 has any question, they're free to explore this issue with
11 him in his deposition.  And, you know, if there is any
12 issue, any concern from his deposition, then we can revisit
13 this issue.  But at this point, there's -- he's not
14 withholding anything, there's just certainly nothing to
15 compel.
16         THE COURT:  Ms. Scolnick, I agree that if the
17 other side says they've looked and they can't find anything,
18 I can't order them to produce something that doesn't exist.
19 And I do agree that you can ask Doctor Hochster -- Hochster
20 -- at his deposition about this question and if there's a
21 problem, you can come back to me.  But I'm kind of stymied,
22 with regard to this issue.  I mean he's -- if he searched
23 and there's nothing, that's it.  I'm sort of stuck.
24     I know there's a different issue with regard to his
25 billing records; Ms. Wang, did he look for his billing

1  records, as well?
2        MS. WANG:  Your Honor, we think this is a -- this
3  is a separate issue.
4        THE COURT:  Uh-huh.
5        MS. WANG:  As for his billing record.  And I think
6  it's just very important to set the context here, if your
7  Honor will -- will indulge me for a minute?
8        THE COURT:  Okay.
9        MS. WANG:  So -- so this issue arised (sic),
10 because in January Doctor Hochster submitted a supplemental
11 report, narrowly focusing on the term -- narrowly focusing
12 on this issue of the COBRA trial, which is a trial that
13 involved Guardant's products and that trial is a nationwide
14 trial and it was terminated early in August 2023.  And that
15 -- and that was a major event, because that trial is
16 nationwide.  It's a large-scale trial.  And the
17 determination of that trial, it was -- it was the headline
18 of -- you know, it was the headline of the National Cancer
19 Institute.  And -- but the data didn't come out until
20 January of 2024, and within two weeks after the publication
21 of that data, Doctor Hochster submitted the 17-page
22 supplemental report, narrowly analyzing the data reported
23 publicly.  And Guardant moved to strike that report and the
24 court denied that motion and to allow limited focused
25 discovery on the COBRA trial.

1     And, your Honor, that is really the key issue that
2 Guardant has been avoiding at all costs in this -- in this
3 brief, is that the Court did not order a wide-ranging
4 discovery, rather the Court only permitted limited focused
5 discovery on COBRA.  And that -- and that is why we're here.
6          THE COURT:  So there has been -- there has been no
7 search for his billing records?
8          MS. WANG:  Your Honor, we don't -- we don't think
9 the billing records, especially --
10         THE COURT:  Has there been a search?  Has there
11 been a search?  Yes or no?
12         MS. WANG:  He did not search for his billing
13 records.
14         THE COURT:  Okay.  All right.
15    Let me hear from the other side on this issue on the
16 billing records.  That's what I'm calling them.  I don't
17 know if that's the right term.
18         MR. SCOLNICK:  Yes, your Honor.  I can't think of
19 anything that's more important to test his bias and his
20 credibility and his -- his allegiance to Natera in this case
21 than his billing records.  How much he's being paid.  The
22 case law is clear that this is relevant.  There's been no
23 dispute or contrary citation of any case law that says it's
24 not relevant.  It seems the only argument they're making now
25 is a procedural one, your Honor.

1    But this is a central witness in the case.  The Court
2 has reopened discovery to test his credibility and his
3 opinions and this information is relevant to that.  So we
4 believe, at a minimum, we're entitled to all of his billing
5 records, his invoices, not just for this -- for his work in
6 this case -- but for his other work for Natera as well,
7 because he has an ongoing financial relationship with Natera
8 that goes back for years that is relevant to test his bias
9 and his credibility in this case.
10    And, your Honor, going back to -- if I could just
11 briefly respond to another point my colleague made on the
12 other side, his opinion goes broader than Ms. Wang
13 represented.  It's -- in his report, he specifically states,
14 and I quote,
15         "In addition, the study design
16         included a safeguard in the phase two
17         stopping point on a revealed
18         performance, which I explain further
19         below.  Based on that assurance from NCI
20         and my colleagues, I recommended to my
21         patients who are eligible that they
22         participate in the COBRA study in '21
23         and '22."
24    So, your Honor, he is specifically relying on and
25 including and referencing communications with third parties

1  in his report.  And it's just not credible relief that he
2  has searched for all of these documents with the code words
3  of COBRA and nothing has come up.
4      And, in addition --
5          THE COURT:  Well, to talk to other people, he
6  could have had emails that -- he's just a practicing doctor.
7  He doesn't preserve all of his documents for all eternity.
8  I mean, I'm just telling you, I'm not going to force him to
9  give something that doesn't exist.  They said they searched.
10 They've searched.  They made representation in open court
11 and you can ask him at deposition.  Okay.  All right.
12     Let's move on to the next issue of Doctor Rabinowitz.
13 So, I understand that Natera is offering him a trial to talk
14 about background; what do you mean by that?  How the company
15 was formed, what happened?  Who's going to address that?
16         MR. LANDES:  That -- I'll address that, your
17 Honor.
18         THE COURT:  Okay.
19         MR. LANDES:  And, yes, that's essentially right.
20 Founding the company.  We only expect he'll testify for
21 about a half an hour, maybe even less, but just general
22 basic background testimony about the company, its early
23 technology development.  Sort of typical founder testimony,
24 just to set the stage and introduce the company.
25         THE COURT:  Okay.  Let me hear from the other side

1  on why they want the deposition and documents.
2          MR. PERLOFF: Yes, your Honor. If I may, because
3  I think this will help set the stage.
4      If I can share my screen, I'm going to -- yes. If you
5  can see my screen, what I'm showing here is the scope of the
6  testimony that Natera had originally proposed for Doctor
7  Rabinowitz for the first time in February of this year. So
8  by way of that --
9          THE COURT: And Judge Chen limited him.   And
10 Judge Chen limited him, correct?
11         MR. PERLOFF: Exactly. But he clearly, based on
12 this, has knowledge of a much wider range of issues than
13 simply this background. And if they had followed the rules
14 and disclosed him as a person who had this wide range of
15 knowledge, we would have asked for his ESI in the same way
16 that, for example, they requested and you ordered us to
17 provide the ESI of our CEO. Even though he might have only
18 originally been -- intended to testify as background.
19     In other words, the fact that the Court has limited
20 what he can testify to in their case in chief, doesn't cure
21 the prejudice that they failed to disclose somebody who
22 clearly has a very broad range of knowledge.
23         And, I guess my point is, if --
24         THE COURT: You knew he was -- you knew he was a
25 founder. He's not a secret. His existence and his

1 involvement in the company is not a secret.
2          MR. PERLOFF:  Absolutely, but -- yeah, he was a
3 founder and the former CEO at the time this case started,
4 but we had no reason to believe, for example, because he
5 wasn't disclosed, that he knew that -- you know, details,
6 for example, about Natera's marketing and promotion of
7 Signatera, about the collaborations and partnerships and
8 their efforts to educate the medical community.  And, of
9 course, under Rule 26, it was their obligation -- it was
10 mandatory that they disclose him if he had this knowledge,
11 which apparently he does.
12      So, I guess my point is, if what they say is true and
13 they don't believe there will be many new documents that
14 they haven't produced from some other witness, then the
15 scope of their search should be relatively simple.  They can
16 -- you know, deduplicate the documents that they're
17 reviewing in the same way that --
18          THE COURT:  In terms of the documents from him,
19 are there -- are you asking them to run all of the searches
20 that were performed in this case on Doctor Rabinowitz --
21          MR. PERLOFF:  Yes.
22          THE COURT:  -- Doctor Rabinowitz's files?
23          MR. PERLOFF:  And then -- and then to deduplicate
24 those against -- you know, even before they search it, they
25 should be able to deduplicate it against everything that

14

1 they produced.  And so, if there's anything new -- and if
2 it's as limited as they claim, it should be a small handful
3 of documents.  But the issue is, we shouldn't be left
4 guessing.
5     To cure the prejudice of their failure to disclose him,
6 we should have an opportunity to learn what he actually
7 knows, what documents he actually has.  We may -- we can use
8 those with him at his deposition to challenge his
9 credibility, or with other witnesses, if we, for example, at
10 trial choose not to open the door.  If there are new
11 documents, then we can challenge other witnesses who are
12 going to testify about these topics.  Because the scope of
13 what he knows, again, is much broader than what a typical
14 founder/ex-CEO would know.  And therein is the issue for us.
15 They should go back and do this simple search.
16         THE COURT:  (Zoom glitch).  And can you take the
17 share screen down?  Let me hear from the other side, and can
18 you take the share screen down?  Thank you.
19         MR. PERLOFF:  Yes, I apologize.
20         THE COURT:  No, that's fine.
21         MR. LANDES:  Thank you, your Honor.
22     I think it's very notable that what Mr. Perloff raised
23 on his screen, docket 445, is a prior brief from when
24 Guardant already raised this issue to Judge Chen, made all
25 of the exact arguments that you just heard.  That's at

1  docket 445 and then a reply brief at docket 457.
2       We refuted those in our opposition.  All of this came
3  up about how there would be prejudice if it was only a
4  deposition and there wasn't a full document search.  About
5  how it was necessary to test his opinions on this -- or to
6  gather documents on this wide range of issues that he's not
7  going to testify about.  All of that was in front of Judge
8  Chen, weeks if not -- probably six to eight weeks ago.
9       Judge Chen issued an order at docket 493 that said,
10 "There is no prejudice to Guardant in permitting Doctor
11 Rabinowitz's testimony.  Natera offered a half day
12 deposition."  That's what Judge Chen said.  Nothing about,
13 you have to search his documents.
14      And when Mr. Perloff says, oh, it's just a simple
15 search, it shouldn't be that much of a problem.  We're
16 talking about upwards of seven or eight years worth of
17 documents.  A full custodial collection.  Ninety three
18 requests for production, they want us to respond to with his
19 documents.  And the few search terms, it is 27 search
20 strings.  Each one of those strings containing several
21 documents.  I believe there is over 100 individual terms
22 that they're asking to search.  This is a monumental
23 undertaking on something the judge already rejected.
24      And, if there was any question, something that hasn't
25 come up today on this issue, but I think is notable, the

1  only thing that has happened since Judge Chen already ruled
2  on this issue, is that he issued his pretrial conference
3  order at docket 501, discussing what discovery was
4  permitted.  And Judge Chen said,

> "The court recently held that the COBRA study is admissible for a limited purpose at trial, and the parties may conduct focused discovery, as previously discussed.  The court orders that this limited additional discovery is to be completed by June 7th."

12  That's the only thing that's changed, is that the judge
13  has issued another order limiting discovery to COBRA and
14  saying it has to be focused.  Nothing in Guardant's
15  briefing, nothing that we heard today, even attempts to tie
16  what they're after to COBRA or to this limited discovery.
17       And so, the other arguments that Mr. Perloff made, I'm
18  happy to address them, but they've already been addressed in
19  our opposition brief that Judge Chen already ruled on.
20            MR. PERLOFF:  If I may?
21            THE COURT:  I'm going to take these matters under
22  submission and I will issue a ruling as soon as I can,
23  because I know you're under a time crunch.  I really
24  appreciate the argument, it clarified a lot of issues for me
25  and I'm going to think about them and I'm going to look back

```
                                                             17
 1  at the docket as well.  But we're going to move onto the
 2  next matter.
 3        Thank you.
 4        (Proceedings adjourned at 9:50 a.m.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

18

## CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Tuesday, April 23, 2024