1

Jennifer L. Keller (84412)
jkeller@kelleranderle.com

2

Chase Scolnick (227631)

3

cscolnick@kelleranderle.com
KELLER/ANDERLE LLP

4

18300 Von Karman Ave., Suite 930
Irvine, CA 92612

5

Telephone   (949) 476-0900

6

Saul Perloff (157092)

7

saul.perloff@aoshearman.com
Kathy Grant *(pro hac vice)*

8

kathy.grant@aoshearman.com
Andre Hanson *(pro hac vice)*

9

andre.hanson@aoshearman.com
Olin "Trey" Hebert *(pro hac vice)*

10

trey.hebert@aoshearman.com
ALEEN OVERY SHEARMAN STERLING US LLP

11

300 W. Sixth Street, 22nd Floor

12

Austin, Texas 78701
Telephone      (512) 647-1900

13

14

Christopher LaVigne *(pro hac vice)*
christopher.lavigne@aosherman.com

15

ALEEN OVERY SHEARMAN STERLING US LLP
599 Lexington Ave

16

New York, NY 10022
Telephone      (212) 848-4000

17

18

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

19

UNITED STATES DISTRICT COURT

20

NORTHERN DISTRICT OF CALIFORNIA

21

SAN FRANCISCO DIVISION

22

| | |
|---|---|
| GUARDANT HEALTH, INC., | Case No. 3:21-cv-04062-EMC |
| Plaintiff/Counterclaim-Defendant, | **GUARDANT'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS AGAINST NATERA FOR MATERIAL MISREPRESENTATIONS REGARDING NATERA'S EXPERT WITNESS DR. HOCHSTER** |
| vs. | |
| NATERA, INC., | |
| Defendant/Counterclaim-Plaintiff. | Pretrial Hearing Date: October 15, 2024 Trial Date: November 12, 2024 |
| | **[REDACTED FOR PUBLIC FILING]** |

23

24

25

26

27

28

- 1 -

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on August 29, 2024, at 1:30pm, or as soon thereafter as would be convenient for the Court, in Courtroom 5 of the United States District Court for the Northern District of California, San Francisco Division, located in the United States Courthouse at 450 Golden Gate Avenue, San Francisco, California, 94102, the Honorable Edward M. Chen presiding, Plaintiff/Counterclaim-Defendant Guardant Health, Inc. ("Guardant"), by and through its attorneys, will move for an Order imposing sanctions on Natera, Inc., pursuant to the Court's inherent powers and 28 U.S.C. § 1927, for Natera's misrepresentations to the Court regarding Natera's putative expert Howard S. Hochster, M.D.

Guardant specifically seeks the exclusion of Dr. Hochster and any other evidence Natera intends to present at trial regarding the COBRA Study.  Guardant seeks this relief on the grounds that Natera made material misrepresentations to the Court that Dr. Hochster had no email communications responsive to Guardant's document subpoena; and, in attempting to justify the untimely disclosure of Dr. Hochster's supplemental expert report, Natera misrepresented when and how Dr. Hochster learned of the COBRA Study's interim analysis results.  Guardant also seeks monetary sanctions from Natera to compensate for the attorneys' fees and costs incurred because of Natera's misrepresentations.

This motion is made upon this notice, the attached memorandum of points and authorities, the accompanying declaration of Chase Scolnick, all records, papers, and pleadings on file in this action, and all further evidence as may be presented prior to or after the filing of the motion.

Dated:  July 15, 2024

KELLER/ANDERLE LLP

By:  _/s/ Chase Scolnick_
**Chase Scolnick**

Attorney for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

## **TABLE OF CONTENTS**

I.      INTRODUCTION .......................................................................................................... 1

II.     NATERA'S MISREPRESENTATIONS TO THIS COURT ............................................ 2

    A.      Natera Repeatedly Misrepresented that Dr. Hochster Had No Emails about the
    COBRA Study with the COBRA Investigators or Natera. ..................................... 2

        1.      In Opposing Guardant's Motion to Compel, Natera Stated Definitively that
        Dr. Hochster Had No Emails About the COBRA Study. ........................... 2

        2.      The Production by Rutgers Shows that Dr. Hochster Had Numerous Email
        Communications with the COBRA Investigators and Natera. ................... 4

            a.      Upon Learning of the COBRA Study's Closure, Dr. Hochster
            Emailed Four of the Lead COBRA Investigators. .......................... 5

            b.      Dr. Hochster Obtained By Email the Confidential COBRA
            Preliminary Abstract on September 13, 2023. ................................ 7

            c.      Dr. Hochster Continued to Act as Liaison Between Natera and the
            COBRA Investigators. .................................................................... 7

    B.      Natera Also Misrepresented When and How Dr. Hochster Learned of the Interim
    Analysis Results from the COBRA Study. ............................................................. 8

III.    STATEMENT OF THE ISSUES TO BE DECIDED ........................................................ 9

IV.     NATERA'S MISREPRESENTATIONS WERE BASELESS AND IN BAD FAITH ....... 9

V.      THE APPROPRIATE EVIDENTIARY SANCTION FOR NATERA'S
MISREPRESENTATIONS IS EXCLUSION OF DR. HOCHSTER AND ANY OTHER
EVIDENCE REGARDING THE COBRA STUDY ....................................................... 14

VI.     NATERA ALSO SHOULD BE ORDERED TO PAY GUARDANT'S ATTORNEYS'
FEES INCURRED BECAUSE OF NATERA'S MISREPRESENTATIONS .................. 17

VII.    CONCLUSION ............................................................................................................. 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir.1990) .................................................................... 14

4
*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ........................................................ 9, 14, 17

5
*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
2016 WL 6609208 (C.D. Cal. July 12, 2016) ............................................ 13

6

7
*Campbell Indus. v. M/V Gemini*,
619 F.2d 24 (9th Cir.1980) ........................................................................ 14

8
*ConsumerDirect, Inc. v. Pentius, LLC*,
2023 WL 8876198 (C.D. Cal. Sept. 21, 2023) .......................................... 10

9
*Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n/Nat'l Nurses Org. Comm.*,
2014 WL 4385465 (S.D. Cal. Sept. 4, 2014) ............................................... 9

10
*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ................................................................................ 9, 17

11

12
*Haeger v. Goodyear Tire & Rubber Co.*,
813 F.3d 1233 (9th Cir. 2016) ...................................................... 10, 13, 14

13
*Haeger v. Goodyear Tire & Rubber Co.*,
906 F. Supp. 2d 938 (D. Ariz. 2012) ......................................................... 18

14
*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) ......................................................... 9

15
*In re Hawaiian Airlines, Inc.*,
2011 WL 5190931 (D. Haw. Oct. 28, 2011) ................................................ 9

16

17
*Konop v. Hawaiian Airlines, Inc.*,
641 F. App'x 689 (9th Cir. 2015) ............................................................... 10

18
*Lu v. United States*,
921 F.3d 850 (9th Cir. 2019) ..................................................................... 17

19
*Merrick v. Paul Revere Life Ins. Co.*,
500 F.3d 1007 (9th Cir. 2007) ................................................................... 14

20
*Miller v. City of Los Angeles*,
661 F.3d 1024 (9th Cir 2011) ...................................................................... 9

21

22
*Samsung Elecs. Co. v. Nvidia Corp.*,
314 F.R.D. 190 (E.D. Va. 2016) ................................................................ 16

23
*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
982 F.2d 363 (9th Cir. 1992) ..................................................................... 14

24
*Xped LLC v. Entities Listed on Exhibit 1*,
690 F. Supp. 3d 831 (N.D. Ill. 2023) ........................................................ 14

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Natera made key misrepresentations to this Court about Dr. Hochster and COBRA.  Natera represented that Dr. Hochster had *no* "inside information" or "early access" to the COBRA Study's interim results.  Based on that representation, the Court allowed Dr. Hochster's eleventh-hour supplemental report.  When Guardant sought discovery from Dr. Hochster, Natera repeatedly, in writing and during oral argument, represented that he diligently searched for emails about COBRA, but found none because he had sent *no* emails about COBRA to anyone.  Based on those representations, Judge Kim denied Guardant's motion to compel Dr. Hochster's emails.  As discovered afterwards through Guardant's subpoena to Dr. Hochster's employer (Rutgers University), Natera's representations to this Court were false:  Dr. Hochster obtained the COBRA Study's interim results *four months before* issuing his supplemental report and Dr. Hochster had extensive emails about COBRA with the lead COBRA Investigators, NRG, and with Natera itself.

The emails produced by Rutgers show that Dr. Hochster obtained the COBRA Study's interim results on September 13, 2023, actively tried to discredit Guardant and Reveal, and then lobbied NRG on Natera's behalf to consider replacing Reveal with Natera's Signatera, all while expressing serious questions about how any of the interim results — without the benefit of clinical outcomes — could be deemed "false positives," undermining the substance of his opinions.  The Rutgers production shows the falsity of Natera's representations to the Court, but it does not absolve Natera for its misrepresentations or remedy the harm and prejudice to Guardant.  The Rutgers production was severely limited in time and scope; and thus, Guardant still does not have a complete production of Dr. Hochster's emails about the COBRA Study, as sought in its motion to compel.

Candor is the cornerstone of our justice system, ensuring fairness in particular proceedings and the integrity of the entire legal process.  Natera's multiple, material misrepresentations warrant meaningful sanctions: the exclusion of Dr. Hochster, the exclusion of any other evidence from Natera about COBRA, and monetary sanctions.  Monetary sanctions alone, however, are insufficient to remedy the harm and prejudice to Guardant, or to convey to Natera the seriousness of misrepresentations to the Court and concealment of relevant documents.

## II.   NATERA'S MISREPRESENTATIONS TO THIS COURT

On January 31, 2024, Dr. Hochster issued his supplemental report discussing NRG's decision to close the COBRA Study.  Dkt. 447-2 ("Hochster SER," submitted as Ex. D).[1]   The Court denied Guardant's motion to strike, finding "Natera's delay in submitting Dr. Hochster's supplemental report was substantially justified" based on Natera's representations that the data were first available "on January 16, 2024"  and that "[t]here is no evidence of bad faith or willfulness in the late disclosure . . . because COBRA was published two weeks before Natera noticed Dr. Hochster's supplemental report."  Order on Guardant's Motions to Strike, Dkt. 493, at 5-6 (Mar. 6, 2024).  The Court continued trial and allowed limited discovery on COBRA.

### A.  Natera Repeatedly Misrepresented that Dr. Hochster Had No Emails about the COBRA Study with the COBRA Investigators or Natera.

#### 1.  In Opposing Guardant's Motion to Compel, Natera Stated Definitively that Dr. Hochster Had No Emails About the COBRA Study.

As part of the limited discovery on COBRA, Guardant sent Natera's counsel a document subpoena for Dr. Hochster on February 25, 2024, and formally served the subpoena through counsel on March 8, 2024, seeking — among other things — Dr. Hochster's email communications with the COBRA Investigators, NRG, or Natera regarding the COBRA Study.  For example, Guardant asked Dr. Hochster to produce: "Your Communications Concerning COBRA, including but not limited to Communications Concerning the COBRA abstract and data presented at ASCO-GI 2024, with any Person, including but not limited to the COBRA Investigators, NRG, NCI, Natera, Guardant or any other oncologist."  Ex. A, Guardant's Subpoena to Dr. Hochster, Request 6, at 4. Natera and Dr. Hochster responded: "[F]ollowing a reasonably diligent search, Dr. Hochster is not aware of any non-privileged communications he has had with the COBRA investigators, NRG, NCI, Natera, or Guardant regarding COBRA."  Ex. C, Response to Request No. 6, at 10-11, attached as Exhibit A to Joint Discovery Letter, Dkt. 510 & 510-1 (Apr. 16, 2024).  The discovery responses were signed by Natera's counsel as "Attorneys for Defendant and Counterclaim-Plaintiff Natera, Inc."  *Id*. at 24.  Natera and Dr. Hochster provided the same substantive response

---

[1] "Ex. __ " refers to the exhibits attached to the accompanying declaration of Chase Scolnick.

1  disavowing the existence of any responsive communications concerning the COBRA Study or

2  Reveal.  *Id.*, Responses to Requests Nos. 7 & 10, at 12-15.

3  The representations that Dr. Hochster had no responsive emails about the COBRA Study

4  were inconsistent with statements in his supplemental report that he was "very familiar with the

5  COBRA Study," has "been monitoring its progress and results since its initiation in 2019," and had

6  personally recommended patients for the COBRA Study. Ex. D, Hochster SER, ¶ 11. Accordingly,

7  Guardant brought his failure to produce any emails about COBRA to Judge Kim.

8  In the joint discovery letter to Judge Kim, Natera represented that Dr. Hochster knew he

9  had no emails about COBRA:  "Guardant is wrong that Dr. Hochster 'had not conducted a

10  reasonable search.'  ***Given his limited role in the COBRA study, he did not need to do a***

11  ***comprehensive search to know he never emailed about COBRA*** . . . ." Ex. B, Joint Discovery

12  Letter, Dkt. 510, at 7 (Apr. 16, 2024) (emphasis added).[2]  Natera further represented to the Court

13  that Dr. Hochster searched his email multiple times to confirm he had no emails about COBRA:

14  "Dr. Hochster already responded, repeatedly, that he has no responsive documents.  Though it was

15  duplicative, Dr. Hochster has searched his email (again), using Guardant's requested search terms,

16  'COBRA' and 'NRG-05,' and now confirms (again) that he has no responsive documents." *Id.*

17  At the hearing before Judge Kim, Natera again represented, definitively, that Dr. Hochster

18  had no emails regarding the COBRA Study and thus there was nothing to compel:

19  > And so, he just — he doesn't have email communications.  He just is a practicing
20  > oncologist.  He doesn't — he doesn't email as much as us lawyers do, and you know,
21  > he did a search.  In fact, he did a — he did an exact search that Guardant asked him
       > to do.  He searched his inbox, he searched his emails for the search terms that
       > Guardant asked in this letter brief, and the result is there's just — there's just nothing
22  > responsive there. . . . ***But at this point, there's — he's not withholding anything,***
       > ***there's just certainly nothing to compel.***

23  Ex. E, Tr. of Proceedings Before Judge Kim on April 22, 2024, at 6-7 (emphasis added).[3]

24  Natera's representations were more than material: They were dispositive in Judge Kim's

25  decision not to compel production (or even any further searches) of Dr. Hochster's emails. *Id.* at 7

26  _____

27  [2] The Joint Discovery Letter was signed by Natera's counsel as "Attorneys for Defendant/Counter-Plaintiff Natera, Inc." *Id.* at 1.

28  [3] The caption of the transcript states the date as "April 4, 2024," but the hearing took place on April 22, 2024, as shown in the minute entry, Dkt. 512, and Judge Kim's written order, Dkt. 515, at 1.

("I agree that if the other side says they've looked and they can't find anything, I can't order them to produce something that doesn't exist. . . . [I]f he searched and there's nothing, that's it.  I'm sort of stuck." );  *see also id*. at 11 ("They said they searched.  They've searched.  They made representation in open court and you can ask him at deposition.").  Judge Kim's written decision, accordingly, held: "Natera represented at the hearing on this matter that Hochster had searched his electronic files using the search terms recommended by Guardant and that Hochster found no responsive documents.  Thus, the Court cannot compel production of documents that do not exist."  Order Re Joint Discovery Letter, Dkt. 515, at 1 (Apr. 23, 2024).

### 2.   The Production by Rutgers Shows that Dr. Hochster Had Numerous Email Communications with the COBRA Investigators and Natera.

Following Natera and Dr. Hochster's less than credible assertions that he had *no* discoverable emails about COBRA, Guardant served a third-party document subpoena on Rutgers University, Dr. Hochster's employer, on May 8, 2024.  Given the short time remaining for COBRA-related discovery, Rutgers requested and Guardant agreed to narrow the scope of the subpoena both with respect to the time frame (June 1, 2023 – March 31, 2024) and the people with whom Dr. Hochster may have emailed with about the COBRA Study.  Ex. F, Guardant's Subpoena to Rutgers, Request No. 2, at 4 (May 8, 2024).  Rutgers produced documents on June 13, 2024 — after the formal deadline for COBRA-related discovery.[4]

The Rutgers production shows that, contrary to Natera's representations, Dr. Hochster had extensive email communications about the COBRA Study's closure with the Principal Investigator, Dr. Van Morris, at least three of the other lead COBRA Investigators (Dr. Patrick Boland, Dr. Norman Wolmark, and Dr. Thomas George), and with multiple Natera employees, including Natera's Chief Medical Officer for Oncology (Dr. Minetta Liu).  Guardant's subpoena to Dr. Hochster specifically defined the term "Cobra Investigators" to include Dr. Morris, and the other co-authors of the COBRA Study, including Drs. Boland, Wolmark, and George.  Ex. A, Guardant

---

[4] Shortly before Rutgers was to produce documents, Natera's counsel intervened, asking that all of the Rutgers documents be routed through their office before the production to Guardant.  Ex. G, Jun. 4, 2024, email from E. Wang ("please confirm that Rutgers may provide its potential production to us in advance so that we have an opportunity to review").  Rutgers ultimately directed its production to Guardant's counsel, except for Dr. Hochster's emails with Natera's counsel.

1  Subpoena to Dr. Hochster, at 1-2.  Drs. Wolmark and George also are part of NRG's leadership,

2  another specific category of Dr. Hochster's email communications sought by Guardant.

3          **a.  Upon Learning of the COBRA Study's Closure, Dr. Hochster Emailed**

4              **Four of the Lead COBRA Investigators.**

5          The Rutgers production shows that on August 30, 2023, at 3:29 pm, Dr. Hochster received

6  NRG's "Dear Colleague" letter announcing closure of the COBRA Study.  Ex. K,

7  RUTGERS_000310, at -311.  Within 10 minutes, Dr. Hochster began emailing others, including

8  Dr. Patrick Boland, a colleague at Rutgers and one of the lead COBRA Investigators, with his

9  personal critiques of Guardant's Reveal: "It's a problem with the way that Guardant Lunar (Reveal)

10  calls out the cancers.  I have been skeptical."  *Id*. at -310.  Also within minutes, Dr. Hochster

11  separately emailed Dr. George, another lead COBRA Investigator and NRG's Colorectal

12  Committee Chair, declaring: "OMG.  What a clusterf@@@!!  I never trusted that methylation

13  signature from Guardant."  Ex. L, RUTGERS_000889, at -889-890.

14          The same day, roughly an hour later, Dr. Hochster emailed the COBRA Study's Principal

15  Investigator, Dr. Morris, again expressing his personal criticisms of Guardant's Reveal: "I am really

16  sorry to hear this outcome . . . .  I think this is the result of believing the Guardant PR on the Lunar

17  test that methylation can identify cancer."  Ex. M, RUTGERS_000713, at -713.  Dr. Hochster also

18  stated in this email: "[T]he work they [Guardant] did with Parikh was manipulated over multiple

19  iterations.  So I am not surprised."  *Id.*[5]  Dr. Morris responded to Dr. Hochster later that same day.

20  *Id*.  Dr. Hochster then began his efforts to influence the COBRA Study, acting as liaison between

21  the COBRA Investigators and Natera for Signatera to be used instead of Reveal:

22          Does the NRG tumor bank have tissue and reserve blood samples?  Any chance of
          a "Mulligan" using Signatera . . . .  With the Japanese data I would think Signatera
23          would show a different result.  Even if no tissue, but blood samples, maybe we could
          still obtain tissue on a reasonable subset of those enrolled for a redo?
24

25  Ex. N, RUTGERS_000800, at -801.  After Dr. Morris responded that "[w]e do have tissue and

26  blood and will salvage this as much as possible as a retrospective analysis," *id*. at -800, Dr. Hochster

27  [5] ██████████████████████████████████████████████████

28  ████████████████████████████████████████████████████
   ████████████████████████████████████

1   suggested that Dr. Morris "[s]peak with Natera," Ex. O, RUTGERS_001092, at -092.   In a

2   subsequent email response to Dr. Morris, on September 1, 2023, Dr. Hochster offered to call

3   Michael Krainock, an Associate Medical Director at Natera, in an effort to put the COBRA

4   Investigators together with Natera.  Ex. P, RUTGERS_001152, at -152.

5          In his email communications with the COBRA Study's Principal Investigator, Dr. Hochster

6   also raised questions about why the interim results referred to "false positives" when there were no

7   clinical outcome data:

8          BTW, I am curious (in looking over this) how they decided the tests were false
          positive.  Compared to what standard of true positive?  Do they have a better test?
9          Or deeper WGS of tumor fraction?  How?

10  *Id*.  Dr. Hochster expressed the same concerns in his email with Natera (Lisa Martin-Roman,

11  Oncology District Manager) on September 1, 2023: "[T]hey said in the letter to investigators that

12  there were too many false positives . . . . ***I am not sure how they know this*** but they did terminate

13  the study."  Ex. Q, RUTGERS_001157, at -157 (emphasis added).  Those are critical questions

14  about the existence and determination of "false positives" that Dr. Hochster himself recognized but

15  largely ignored in setting forth the opinions in his supplemental report.  *See* Guardant's Mot. to

16  Exclude Dr. Hochster's Expert Testimony Regarding COBRA Study, Dkt. 568, at 14-15  (July 2,

17  2024) ("As Dr. Hochster admits there is simply no way to make that determination [about "false

18  positives"] without having clinical outcome data to prove the clinical truth of these results.").

19         The following week, Dr. Hochster reached out to another lead COBRA Investigator, Dr.

20  Norman Wolmark, who is also a group chair and member of the Executive Committee of NRG

21  Oncology, the sponsor of the COBRA Study, asking for inside information: "Quick question on

22  COBRA (I assume you are aware of the issues).  Could you call me anytime?"  Ex. R,

23  RUTGERS_000796, at -797.  Dr. Hochster and Dr. Wolmark apparently arranged a telephone

24  conversation that same day.  *Id*. at -796.

25         Thus, within a week of the announcement of the COBRA Study's closure, Dr. Hochster

26  corresponded directly with Natera about COBRA's discontinuation, and personally reached out by

27  email to at least four lead COBRA Investigators (including the Principal Investigator and two high-

28  ranking NRG officials) to denigrate Guardant's Reveal and to pave the way for Natera and

- 6 -

1  Signatera to replace Guardant and Reveal in the COBRA Study, even while expressing skepticism

2  about how any of the results from Reveal could be deemed "false positives."

3     **b. Dr. Hochster Obtained By Email the Confidential COBRA Preliminary**

4           **Abstract on September 13, 2023.**

5     On September 13, 2023, Dr. Hochster asked Dr. Boland to "[p]lease share what you get in

6  writing" regarding the COBRA Study's closure.  Ex. S, RUTGERS_001082, at -082.  Five minutes

7  later, Dr. Boland forwarded to Dr. Hochster a Preliminary Abstract summarizing the COBRA

8  Study's interim analysis that led to its closure.  Ex. T, RUTGERS_000366 at -366.  Dr. Boland

9  shared the Preliminary Abstract with Dr. Hochster despite the express caution from the Principal

10 Investigator that "we are all embargoed from sharing this abstract or discussing results reported

11 here with anyone outside of the coauthors included in this email."  *Id.*[6] ██████████████

12 █████████████████████████████████████████████████████████

13 █████████████████████████████████████████████████████████

14 ████████████████████████████

15   █████████████████████████████████████████████████

16 █████████████████████████████████████████████████████████

17 ██████████████████

18     **c. Dr. Hochster Continued to Act as Liaison Between Natera and the**

19          **COBRA Investigators.**

20    On September 26, 2023, Dr. Hochster emailed Dr. Minetta Liu, the Chief Medical Officer

21 of Natera, describing Reveal as "poo-poo" and suggesting that Natera offer to run the samples from

22 the COBRA Study on Signatera: "I . . . wanted to see if you would consider re-running the tissue

23 and blood for these patients.  I have brought this up to NRG leadership team."  Ex. U,

24 RUTGERS_000978, at 980-81.  (Dr. Hochster later told Dr. Liu that he specifically talked to Dr.

25 George and Dr. Wolmark, *id.* at -979.)  Dr. Liu expressed Natera's willingness to consider Dr.

26 ───────────────
   [6] Dr. Hochster is the Associate Director for Clinical Research and the Director of GI Oncology at
27 Rutgers, directs all GI oncology research at the Rutgers Cancer Institute, and plays an important
   role in deciding what oncology clinical research is performed at Rutgers.  Ex. H, Hochster
28 6/18/2024 Dep. at 79:8-19.  ████████████████████████████████
   ████████

Hochster's proposal. *Id*. at 980. Dr. Liu then asked Dr. Hochster to "kindly connect the dots for us" — *i.e.*, arrange a meeting between Natera and the NRG leadership. *Id*. at -979.

Dr. Hochster, in turn, emailed Dr. Morris and Dr. George about using Natera's Signatera on the samples from the COBRA Study: "I had a few emails back and forth with Minetta Liu CMO at Natera. She would be willing to discuss running samples from COBRA. Is this possible?" Ex. V, RUTGERS_000967 at -967. Dr. Morris responded the same day, noting that he had also talked to someone at Natera who was "snooping for details" about the COBRA Study. *Id*. Dr. George also responded to Dr. Hochster stating that it was not currently possible but there were "many ongoing conversations" about "next steps." Ex. W, RUTGERS_001132, at -132. Following the email responses from Dr. Morris and Dr. George, Dr Hochster reported back to Dr. Liu at Natera that: "Per the NRG leadership, they need to go through a few more steps and meetings with NCI before they can consider this." Ex. X, RUTGERS_001084, at -1084.

██████████████████████████████████████████████

████████████████████████████████████  ██████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

**B. Natera Also Misrepresented When and How Dr. Hochster Learned of the Interim Analysis Results from the COBRA Study.**

In opposing Guardant's motion to strike Dr. Hochster's supplemental report as untimely, Natera told this Court that Dr. Hochster did not have any "inside information" about the COBRA Study results until January 16, 2024: "So I'm certainly not aware of any sort of early access that Dr. Hochster may have had." Ex. I, Tr. of Remote Proceedings on 2/22/2024, at 14:23 – 15:3; *see also* Dkt. 452 at 2-3 & n.1. This Court relied on that representation in denying Guardant's motion to strike, finding that "Natera's delay in submitting Dr. Hochster's supplemental report was substantially justified" because Dr. Hochster only obtained information about the COBRA Study's

interim results on January 16, 2024.  Order on Guardant's Motions to Strike, Dkt. 493, at 5-6 (Mar. 6, 2024).  Natera's representation was false.  Dr. Hochster in fact solicited, obtained, and then concealed just such "inside information" and "early access."  Dr. Hochster obtained a Preliminary Abstract summarizing the COBRA Study's interim analysis on September 13, 2023 — four months before Natera claimed Dr. Hochster learned of those results.  *See supra* § II.A.2.b.

## III.    STATEMENT OF THE ISSUES TO BE DECIDED

Whether the Court should impose evidentiary and monetary sanctions on Natera for its misrepresentations to this Court regarding Dr. Hochster's email communications about the COBRA Study and about when and how Dr. Hochster learned of the COBRA Study's interim results.

If the Court decides to impose evidentiary sanctions on Natera, whether those sanctions should include the exclusion of Dr. Hochster's expert testimony and the exclusion of all evidence from Natera regarding the COBRA Study.

## IV.    NATERA'S MISREPRESENTATIONS WERE BASELESS AND IN BAD FAITH

Federal courts have "inherent powers" to impose "an appropriate sanction for conduct which abuses the judicial process."  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)).  "As the Supreme Court has explained, a sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id.* at 1090.  It is certainly "permissible to infer bad faith from [a party's] action[s] plus the surrounding circumstances."  *Miller v. City of Los Angeles*, 661 F.3d 1024, 1029 (9th Cir 2011).  In exercising its inherent powers, "a district court may . . . dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines."  *Rousseau*, 985 F.3d at 1088.

Sanctions may be warranted "when a party **misrepresents the law or the facts to the court**."  *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 924-25 (N.D. Cal. 2023) (emphasis added); *see also Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n/Nat'l Nurses Org. Comm.*, 2014 WL 4385465, at *2 (S.D. Cal. Sept. 4, 2014) ("Misstatements of both fact and law can support sanctions based on the court's inherent power."); *In re Hawaiian Airlines, Inc.*, 2011 WL 5190931, at *7 (D. Haw. Oct. 28, 2011) ("Courts have found bad faith where a party makes

- 9 -

knowing misrepresentations to the court."), *aff'd in part, rev'd in part sub nom. Konop v. Hawaiian Airlines, Inc.*, 641 F. App'x 689 (9th Cir. 2015).  For example, one district court in this Circuit recently explained: "Engaging in a scheme to intentionally mischaracterize evidence through misleading or inaccurate discovery responses or the 'failure to correct the false impressions created' is tantamount to bad faith." *ConsumerDirect, Inc. v. Pentius, LLC*, 2023 WL 8876198, at *6 (C.D. Cal. Sept. 21, 2023).  And, in the often-cited *Goodyear* case, the Ninth Circuit affirmed monetary and non-monetary sanctions imposed pursuant to the district court's inherent powers where the defendants misrepresented the existence of responsive documents: "[T]hroughout numerous discovery dispute filings and hearings, [the defendants] convinced the district court that Goodyear had produced all test data relevant to the Haegers' claims," when in fact the defendants had engaged in a "'bad faith attempt to hide responsive documents,' which would not have been uncovered but for the sanctions proceedings."  *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, at 1245-46 (9th Cir. 2016), *rev'd on other grounds* 581 U.S. 101.[7]

There is no justification for Natera's misrepresentations.  Natera demonstrably knew that Dr. Hochster had emails about the COBRA Study with Natera itself — Dr. Hochster emailed Lisa Martin-Roman at Natera on September 1, 2023, Ex. Q, RUTGERS_001157, at -157, and Dr. Hochster exchanged further emails with Natera's Chief Medical Officer, Dr. Minetta Liu, Ex. X, RUTGERS_001084, at -1084.  Dr. Liu, furthermore, knew that Dr. Hochster was communicating with the lead COBRA Investigators and NRG leadership. Ex. U, RUTGERS_000978, at -979; Ex. X, RUTGERS_001084, at -1084.  Thus, there is no conceivable basis for Natera's representation to this Court that "*[g]iven his limited role in the COBRA study, [Dr. Hochster] did not need to do a comprehensive search to know he never emailed about COBRA* . . . ."  Ex. B, Joint Discovery Letter, Dkt. 510, at 7 (Apr. 16, 2024) (emphasis added).

███████████████████████████████████████████████████

█████████████████████████████████   Natera told the Court that Dr. Hochster searched his email

---

[7] In reversing and remanding the Ninth Circuit's decision in *Goodyear*, the Supreme Court did not disturb the conclusion that the defendants' actions constituted bad faith and warranted sanctions, rather the Supreme Court reversed based on the specific calculation of attorneys' fees to be awarded for the sanctionable conduct.

multiple times to confirm that he had no emails about COBRA: "Though it was duplicative, Dr. Hochster has searched his email (again), using Guardant's requested search terms, 'COBRA' and 'NRG-05,' and now confirms (again) that he has no responsive documents." Ex. B, Joint Discovery Letter, Dkt. 510, at 7 (Apr. 16, 2024).  Yet, ██████████████████

████████████████████████████████████████████████████████████
████████████████
███████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████
██████
███████████████████████████

████████████████████████████████████████[8]  Given Dr. Hochster's testimony, Natera appears to have made up out of whole cloth the notion that he searched multiple times, presumably to give this Court the false appearance that a diligent search had been conducted.[9]

Given the large volume and meaningful substance of Dr. Hochster's emails with the COBRA lead investigators, NRG, and Natera that Rutgers produced, it is not plausible that any reasonably diligent search was conducted or that Dr. Hochster did not recall any of those many email communications he had with prominent figures.  Following the announcement of the COBRA Study's closure, Dr. Hochster emailed four of the lead COBRA Investigators — including the Principal Investigator and high-ranking NRG officials.  Dr. Hochster then repeatedly emailed those lead COBRA Investigators and NRG officials about the closure.  He asked for and received a copy

---

[8] Natera improperly designated as "confidential" extensive portions of Dr. Hochster's deposition testimony, such as testimony ████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████████████████████████████████████.  *See* Stipulated Protective Order, Dkt. 57, § 5.1, at 4 ("Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the designating party to sanctions.").

[9] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████

of the confidential Preliminary Abstract, four months before the COBRA data were publicly presented. He repeatedly attempted, including by email, to orchestrate a deal between Natera and the COBRA Investigators to use Signatera. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ And, ███████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████

There similarly is no basis or plausible excuse for Natera's statement to the Court that Dr. Hochster did not have any "inside information" about or "early access" to the COBRA Study's interim analysis results. Ex. I, Tr. of Remote Proceedings on 2/22/2024, at 14:23 – 15:3. ███

████████████████████████████████████████████████████████████

███████████████████████████████████████████[10]

Moreover, neither Natera nor Dr. Hochster has taken any steps to remedy the misrepresentations to the Court. They have not alerted the Court to nor attempted to correct their multiple misrepresentations. They have done nothing to provide a complete production of the emails sought by Guardant's subpoena to Dr. Hochster and related motion to compel. ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████ Natera, furthermore, flatly objected to Guardant's request to preserve Dr. Hochster's email file, even after it was abundantly clear that Natera and Dr. Hochster had misrepresented to Guardant and the Court the existence of Dr. Hochster's emails about the COBRA Study:

---

[10] Dr. Hochster issued an "Amendment" to his Supplemental Report on June 17, 2024, the afternoon before his deposition, misconstruing a re-analysis by Guardant of COBRA samples using the current commercial version of Reveal. Notably, Dr. Hochster had these data by September 13, 2023, as they were included in the draft abstract forwarded by Dr. Boland.

████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████
████████████████████████████████████████████
████████████████████████

████████████████████████████ Given the circumstances, it is inexplicable that Natera had not already taken those steps to ensure preservation of Dr. Hochster's emails, let alone would brazenly object to Guardant's legitimate request.

Natera's misrepresentations are similar to those in *Goodyear* where the defendants concealed relevant evidence through multiple misrepresentations that they were complying with the plaintiff's document requests. *Goodyear*, 813 F.3d at 1246 ("This finding of bad faith is bolstered by Hancock's repeated representations to the district court that Goodyear was complying with all discovery requests when in fact, Goodyear was withholding relevant and responsive documents."). As with Natera's misrepresentations here, the court in *Goodyear* initially accepted the defendants' misrepresentations, which would have gone uncovered but for the plaintiff's additional actions to discover the truth. *See id*. at 1245 ("It was not until the sanctions proceedings that the district court realized that the Sanctionees had 'adopted a plan of making discovery as difficult as possible, providing only those documents they wished to provide, . . . and making false statements to the Court in an attempt to hide their behavior.'"). Natera's misrepresentations are also similar to those in *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208 (C.D. Cal. July 12, 2016), rpt. and rec. adopted, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016), where the district court imposed sanctions on a party for misrepresenting that a "thorough search" had been conducted and "no further responsive documents existed." *Id*. at 14. As the court explained:

> There was simply no basis for such an assertion given [the plaintiff's] woefully inadequate search. Moreover, given the numerous emails ultimately obtained by [the defendant] through its third party discovery and forensic retrieval efforts . . . it is not plausible that [the plaintiff's] executives believed there were no such communications . . . .

*Id*. Here, there was no basis for Natera's misrepresentations given the numerous emails by Dr. Hochster about the COBRA Study that Guardant had to obtain through a third-party subpoena to

- 13 -

Rutgers; and, it is not plausible that Natera and Dr. Hochster honestly believed there were no such emails, particularly given the number of those emails, the substantive nature of those emails, and the fact that many of those emails were between Dr. Hochster and Natera itself.[11]

## V.   THE APPROPRIATE EVIDENTIARY SANCTION FOR NATERA'S MISREPRESENTATIONS IS EXCLUSION OF DR. HOCHSTER AND ANY OTHER EVIDENCE REGARDING THE COBRA STUDY

Exclusion of evidence and witnesses is a well-established sanction pursuant to a district court's inherent powers.  *See Rousseau*, 985 F.3d at 1088 ("A district court may, among other things, dismiss a case in its entirety, ***bar witnesses, exclude other evidence***, award attorneys' fees, or assess fines.") (emphasis added).   Indeed, "'[c]ourts need not tolerate flagrant abuses of the discovery process' and have 'inherent power' to exclude evidence as a sanction for such abuses." *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1014 (9th Cir. 2007) (quoting *Campbell Indus. v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir.1980)).   The Ninth Circuit repeatedly has recognized "as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.  Within this discretion lies the power . . . to exclude testimony of witnesses whose use at trial . . . would unfairly prejudice an opposing party.'"  *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Campbell*, 619 F.2d at 27).   "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990).

Natera's misrepresentations were highly and irreparably prejudicial to Guardant.   Dr. Hochster is Natera's primary, perhaps only, witness to discuss the COBRA Study.  Based entirely on hearsay, with no actual expert analysis, Natera intends to present Dr. Hochster at trial to offer

---

[11] Should Natera try to argue that it should not be held responsible for the misrepresentations of its outside counsel, "it is well established that attorneys' actions are imputed to their clients, even when those actions cause substantial harm.  A litigant bears the risk of errors made by his chosen agent." *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 854 (N.D. Ill. 2023) (quoting *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020)).  *See also Goodyear*, 813 F.3d at 1246 ("Any attempt by Goodyear to argue that the district court abused its discretion in preventing Goodyear from passing the blame on to its attorneys is unavailing. Goodyear is deemed bound by the acts of [its lawyers] and is considered to have notice of all facts, notice of which can be charged upon the attorney.") (quotation marks and citation omitted).

his personal opinions denigrating Guardant's Reveal and its performance in the COBRA Study. Yet, because of Natera's repeated, unjustifiable misrepresentations to the Court, Guardant has been precluded from obtaining simple, legitimate discovery from Dr. Hochster — his own emails about the COBRA Study.

The limited production of Dr. Hochster's emails by Rutgers shows the obvious relevance of those documents to Dr. Hochster's purported expert opinions, as well as the vital importance of those documents for Guardant to have a full and fair opportunity to cross-examine him. To be clear though, the Rutgers production was severely limited in time and scope, compared to Guardant's subpoena to Dr. Hochster and related motion to compel. The Rutgers production, therefore, does not provide a complete set of the documents that Guardant sought from Dr. Hochster. What other documents Natera and Dr. Hochster may still be concealing remains unknown.

Natera's misrepresentations prevented Guardant from having complete discovery from Dr. Hochster before deposing him last month. Guardant had to spend substantial time at Dr. Hochster's deposition asking about his email files, his purported email searches, and Natera's misrepresentations to the Court, instead of focusing on the substance of Dr. Hochster's opinions about the COBRA Study. Natera's misrepresentations also prejudiced Guardant in its recent deposition of Dr. Aleshin. Dr. Aleshin testified that Natera never asked a third party to communicate with the COBRA Investigators on Natera's behalf. Ex. J, Aleshin 5/29/2024 Dep. at 61:14 – 62:10 ("[N]obody at Natera has asked somebody who is not affiliated with NRG to communicate with NRG about the COBRA study."). The documents later produced by Rutgers show that testimony was false — that is exactly how Natera used Dr. Hochster.

Natera's misrepresentation to the Court regarding when and how Dr. Hochster first learned of the COBRA Study's interim results was also highly prejudicial to Guardant. That was the basis of the Court's decision allowing Dr. Hochster's late supplemental report in the first place. The Court allowed Natera's very late attempt to inject the COBRA Study into this litigation — even though discovery had been closed for 1.5 years — subject to Guardant having an opportunity to conduct discovery to respond fully to the claims in Dr. Hochster's supplemental report. But Natera improperly impeded Guardant's discovery efforts every step of the way — unnecessarily delaying

the responses to Guardant's subpoena to Dr. Hochster, failing to produce Dr. Hochster's emails

about the COBRA Study in a timely manner, and then misrepresenting the existence of those emails

to avoid a motion to compel.  Natera's misconduct delayed Guardant's ability to obtain any of Dr.

Hochster's emails for the entire period the Court allowed for COBRA-related discovery — from

March 8, 2024 (the date of Guardant's subpoena to Dr. Hochster) until June 13, 2024 (the date

Rutgers produced a limited set of Dr. Hochster's emails).  That seriously impeded Guardant's

efforts to respond to and depose Dr. Hochster and Guardant's ability to seek additional COBRA-

related discovery based on the issues uncovered in the Rutgers production of Dr. Hochster's emails.

Accordingly, the Court should exclude Dr. Hochster and any other evidence from Natera

about the COBRA Study.  Any lesser sanction for Natera's misrepresentations would be inadequate

and grossly unfair to Guardant.  The district court in *Samsung Elecs. Co. v. Nvidia Corp.*, 314

F.R.D. 190 (E.D. Va. 2016), for example, explained:

> [T]here is certainly a need to take a firm stance to deter nondisclosure more
> generally. . . .  Adequately communicating this position requires some measure of
> deterrent sanctions that leave the nondisclosing party worse off than it would have
> been if it had disclosed. . . .  Additionally, emphasizing counsel's obligation in such
> a fashion will help to foreclose future disruption of the sort presented here.  As such,
> the final sanction in this case must leave [the offending party] worse off than it
> would have been had it properly disclosed.

*Id.* at 201.  In short, the sanctions for Natera's misrepresentations should not leave Natera better off

than it would have been if it had timely disclosed the truth about when and how Dr. Hochster

obtained the COBRA Study's interim results, and timely produced Dr. Hochster's emails about the

COBRA Study.  Natera's misrepresentations are particularly pernicious.  Litigants and this Court

routinely rely on a party's good faith and honesty with respect to document discovery.  Judge Kim's

decision denying Guardant's motion to compel aptly shows how there are few, if any, options to

challenge a party's representations that a diligent search was conducted but no responsive

documents located.  *See* Ex. E, Tr. of Proceedings Before Judge Kim on April 22, 2024, at 7 ("I

agree that if the other side says they've looked and they can't find anything, I can't order them to

produce something that doesn't exist. . . .  [I]f he searched and there's nothing, that's it.  I'm sort

of stuck." ).

## VI.   NATERA ALSO SHOULD BE ORDERED TO PAY GUARDANT'S ATTORNEYS' FEES INCURRED BECAUSE OF NATERA'S MISREPRESENTATIONS

In addition to evidentiary sanctions, the Court should impose monetary sanctions on Natera to compensate Guardant for the additional attorneys' fees incurred because of Natera's misrepresentations.  Monetary sanctions are permissible pursuant to the Court's inherent powers. *See Rousseau*, 985 F.3d at 1088-89.  Monetary sanctions also may be imposed under 28 U.S.C. section 1927 ("Any attorney who unreasonably and vexatiously multiplies the proceedings may be required to pay the excess fees and costs caused by his conduct.").  Monetary sanctions should compensate the wronged party for the attorneys' fees "incurred because of the misconduct at issue." *Lu v. United States*, 921 F.3d 850, 859-60 (9th Cir. 2019) (quoting *Goodyear*, 581 U.S. at 108).

The attorneys' fees incurred by Guardant as a result of Natera's misrepresentations regarding Dr. Hochster's emails reflect time spent:

1) Meeting and conferring with Natera's counsel concerning Dr. Hochster's limited production in response to Guardant's subpoena during which Natera misrepresented that Dr. Hochster had no emails;

2) Preparing the joint discovery letter to Judge Kim in which Natera misrepresented that Dr. Hochster had no emails about the COBRA Study and searched multiple times to confirm no such emails existed;

3) Preparing for and attending the hearing before Judge Kim where Natera again misrepresented that Dr. Hochster had no emails about the COBRA Study, was not withholding any responsive documents, and there was nothing to compel;

4) Preparing, serving,  negotiating, and following up on, the third-party subpoena to Rutgers University, which would have been largely unnecessary but for Natera's misrepresentations regarding Dr. Hochster's emails;

5) Preparing for and taking Dr. Hochster's deposition that was severely impeded by Natera and Dr. Hochster's failure to produce his emails about the COBRA Study; and

6) Preparing this motion and an anticipated reply brief.

The specific amount of these attorneys' fees should be determined in a separate, subsequent

- 17 -

proceeding, where Guardant will provide evidence necessary to establish the attorneys' fees incurred for the activities listed above.

## VII.   CONCLUSION

"Litigation is not a game.  It is the time-honored method of seeking the truth, finding the truth, and doing justice.  When a corporation and its counsel refuse to produce directly relevant information an opposing party is entitled to receive, they have abandoned these basic principles in favor of their own interests." *Haeger v. Goodyear Tire & Rubber Co.*, 906 F. Supp. 2d 938, 941 (D. Ariz. 2012), *rev'd on other grounds* 581 U.S. 101.

Natera deliberately concealed relevant information regarding how and when Dr. Hochster learned of the COBRA Study's interim results, and then concealed Dr. Hochster's extensive email communications about the COBRA Study.   Natera's actions have irreparably prejudiced Guardant's ability to defend against Natera and Dr. Hochster's claims about the COBRA Study. The only appropriate sanction for Natera's egregious conduct is exclusion of Dr. Hochster, exclusion of Natera's other evidence regarding the COBRA Study, and monetary sanctions to compensation Guardant for the attorney's fees caused by Natera's misrepresentations.

Dated: July 15, 2024              **KELLER/ANDERLE LLP**

                          By:   */s/ Chase Scolnick*
                                **Chase Scolnick**

                          Attorneys for Plaintiff/Counterclaim-Defendant
                          GUARDANT HEALTH, INC.