# Exhibit E

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Sallie Kim, Magistrate Judge

4

5   GUARDANT HEALTH, INC.,          )
                                    )
6            Plaintiff,             )
                                    )
7   vs.                            )   No. C 21-04062-EMC
                                    )
8   NATERA, INC.,                  )
                                    )
9            Defendant.            )
    _____)

10

11                               San Francisco, California
                                 Thursday, April 4, 2024

12

13  TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
           RECORDING 9:32 - 9:50 = 18 MINUTES

14  APPEARANCES:

15  For Plaintiff:

16                               Shearman & Sterling, LLP
                                 300 West 6th Street
17                               Suite 2250
                                 Austin, Texas 78701
18                          BY:  SAUL H. PERLOFF, ESQ.
                            BY:  ANDRE HANSON, ESQ.

19                               Keller/Anderle
                                 18300 Von Karman, Suite 930
20                               Irvine, California 92612
                            BY:  CHASE A. SCOLNICK, ESQ.

21

22  For Defendant:               Quinn Emanuel Urquhart
                                    & Sullivan, LLP
23                               865 South Figueroa Street
                                 Los Angeles, California 90017
24                          BY:  RYAN S. LANDES, ESQ.

25          (APPEARANCES CONTINUED ON NEXT PAGE)

2

```
 1  For Defendant:
 2                              Quinn Emanuel Urquhart
                                  & Sullivan, LLP
                                555 Twin Dolphin Drive
 3                              5th Floor
                                Redwood City, California 94065
 4                          BY:  ANDREW J. BRAMHALL, ESQ.

 5                              Quinn Emanuel Urquhart
                                  & Sullivan, LLP
 6                              50 California Street
                                22nd Floor
 7                              San Francisco, California
                                  94111
 8                          BY:  ELLE X WANG, ESQ.

 9  Transcribed by:             Echo Reporting, Inc.
                                Contracted Court Reporter/
10                              Transcriber
                                echoreporting@yahoo.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1 <u>Thursday, April 4, 2024</u>                                    <u>9:32 a.m.</u>

2                       P-R-O-C-E-E-D-I-N-G-S

3                            --oOo--

4           THE CLERK:  Calling civil case number 21-4062,

5 Guardant Health, Inc. versus Natera, Inc.

6     Counsel, please state your appearances for the record,

7 starting with the Plaintiff.

8           MR. PERLOFF (via Zoom):  Good morning, your Honor.

9 Saul Perloff with Shearman and Sterling for the Plaintiff,

10 Guardant Health.  With me today from Shearman and Sterling

11 is Andre Hanson.

12          THE COURT:  Good morning.

13          MR. PERLOFF:  Chase, you're on mute.

14          MR. SCOLNICK (via Zoom):  Thank you, I apologize.

15 Good morning, your Honor.  Chase Scolnick of Keller Anderle

16 on behalf of Guardant Health.

17          THE COURT:  Good morning.

18          MR. LANDES (via Zoom):  Good morning, your Honor.

19 Ryan Landes of Quinn Emanuel on behalf of Natera.  With me

20 is Andrew Bramhall and Elle Wang.

21          THE COURT:  Good morning.

22     Okay.  So, first of all, can someone tell me what the

23 schedule is right now?  Let me just start with Plaintiff.

24 What is the schedule that you're looking at, in terms of

25 what's next?  I know the fact discovery is closed and you're

4

1  just in the expert discovery and heading towards trial;

2  what's the next set of deadlines that you have?

3          MR. PERLOFF:  So, we have a June 7th deadline for

4  this limited discovery that the judge has allowed us, and

5  I'm going to get -- the trial has been reset, to begin on

6  August 26th, I believe, and between those times we obviously

7  will have the final pretrial conference and there will be

8  one additional round of motion practice, a Daubert motion,

9  in connection with Doctor Hochster's supplemental report.

10          THE COURT:  Okay.  You folks asked for this

11  hearing.  I'll hear first from Guardant and then I'll hear

12  from Natera next.

13          MR. PERLOFF:  Chase, do you want to cover Doctor

14  Hochster first?

15          MR. SCOLNICK:  Yes.  Thank you, your Honor.

16      Your Honor, the Court reopened discovery based on

17  Doctor Hochster's supplemental report.  We're now seeking

18  discovery that will enable us to respond to the report,

19  prepare for trial and to impeach his credibility.

20      I'd like to start by pointing out that he's not the

21  typical expert who is relying on THE information only

22  provided by the parties.  Doctor Hochster is relying on his

23  familiarity with both parties, (indiscernible).  He's

24  relying his involvement and familiarity with the COBRA

25  study, which is now ongoing for years.  And he's also basing

5

1 his opinion on the progress and his monitoring of that

2 study.

3     So, this dispute is centered on our request for four

4 categories of documents.  First, we're requesting documents

5 regarding the COBRA study itself --

6         THE COURT:  Can I ask you, it appears that the

7 other side has said that he's already looked and hasn't

8 found anything.

9         MR. SCOLNICK:  Right, and that's a great concern

10 to us.  We don't see how it is possible for him to have been

11 so involved in the study, for him to have made express

12 opinions and statements in his own report, that he has

13 discussed the study and he has been assured by -- made

14 certain assurances by his colleagues about the study and the

15 progress of the study and there is zero -- no emails.  They

16 haven't produced a single email, your Honor.

17     So, I just -- we have great concerns regarding that

18 representation.  We'd like some more information about the

19 perimeters of his search, and, again, we just don't see how

20 it's possible that given his involvement in the study, and

21 given how central he claims the study is to the community,

22 and some of the other statements in the report, how it's

23 possible there are no email communications in four years.

24         THE COURT:  Let's hear from Mr. Landes on this

25 issue of why there is nothing in his files on this study.

6

1          MR. LANDES:  I'm actually going to hand this one

2   off to my colleague.  Ms. Wang is covering this --

3          THE COURT:  Okay, Ms. Wang.  Thank you.

4          MS. WANG (via Zoom):  Good morning, your Honor.

5   Yes, I -- I will -- I'm happy to answer this specific

6   question.

7       So, your Honor, the issue is, Counsel has been focusing

8   on his involvement in the study and all of that, but the

9   issue is, he's just -- he's not that involved in the COBRA

10  study, as we already informed them.  His involvement to the

11  COBRA study is limited to enrolling to patients and he is  -

12  - he is giving his opinion, based on his decades of

13  experience, decades of experience conducting -- being

14  involved in clinical trials.  And with his expertise, he is

15  -- he is well -- he is well equipped to look at the data and

16  analyze the data and draw conclusions and opine from it.

17      So, he's not -- he's not basing his opinion on his

18  involvement in the COBRA trial, but rather, as we have told

19  Counsel many times, that his involvement in the COBRA trial

20  is very limited and he was looking at the published data by

21  the COBRA investigators and the COBRA sponsors.  And then he

22  was looking at the data, analyzing the data, based on his

23  expertise, and his opining on it in his supplemental report.

24  And so, he just -- he doesn't have email communications.

25          He just is a practicing oncologist.  He doesn't -- he

7

1  doesn't email as much as us lawyers do, and you know, he did
2  a search.  In fact, he did a -- he did an exact search that
3  Guardant asked him to do.  He searched his inbox, he
4  searched his emails for the search terms that Guardant asked
5  in this letter brief, and the result is there's just --
6  there's just nothing responsive there.  And now Guardant is
7  asking what perimeters he searched, but your Honor, the
8  answer is really in the question here.  He used the exact
9  perimeters that Guardant asked him to use and if Guardant
10  has any question, they're free to explore this issue with
11  him in his deposition.  And, you know, if there is any
12  issue, any concern from his deposition, then we can revisit
13  this issue.  But at this point, there's -- he's not
14  withholding anything, there's just certainly nothing to
15  compel.
16        THE COURT:  Ms. Scolnick, I agree that if the
17  other side says they've looked and they can't find anything,
18  I can't order them to produce something that doesn't exist.
19  And I do agree that you can ask Doctor Hochster -- Hochster
20  -- at his deposition about this question and if there's a
21  problem, you can come back to me.  But I'm kind of stymied,
22  with regard to this issue.  I mean he's -- if he searched
23  and there's nothing, that's it.  I'm sort of stuck.
24      I know there's a different issue with regard to his
25  billing records; Ms. Wang, did he look for his billing

8

1  records, as well?

2        MS. WANG:  Your Honor, we think this is a -- this

3  is a separate issue.

4        THE COURT:  Uh-huh.

5        MS. WANG:  As for his billing record.  And I think

6  it's just very important to set the context here, if your

7  Honor will -- will indulge me for a minute?

8        THE COURT:  Okay.

9        MS. WANG:  So -- so this issue arised (sic),

10 because in January Doctor Hochster submitted a supplemental

11 report, narrowly focusing on the term -- narrowly focusing

12 on this issue of the COBRA trial, which is a trial that

13 involved Guardant's products and that trial is a nationwide

14 trial and it was terminated early in August 2023.  And that

15 -- and that was a major event, because that trial is

16 nationwide.  It's a large-scale trial.  And the

17 determination of that trial, it was -- it was the headline

18 of -- you know, it was the headline of the National Cancer

19 Institute.  And -- but the data didn't come out until

20 January of 2024, and within two weeks after the publication

21 of that data, Doctor Hochster submitted the 17-page

22 supplemental report, narrowly analyzing the data reported

23 publicly.  And Guardant moved to strike that report and the

24 court denied that motion and to allow limited focused

25 discovery on the COBRA trial.

9

1    And, your Honor, that is really the key issue that
2 Guardant has been avoiding at all costs in this -- in this
3 brief, is that the Court did not order a wide-ranging
4 discovery, rather the Court only permitted limited focused
5 discovery on COBRA.  And that -- and that is why we're here.
6         THE COURT:  So there has been -- there has been no
7 search for his billing records?
8         MS. WANG:  Your Honor, we don't -- we don't think
9 the billing records, especially --
10        THE COURT:  Has there been a search?  Has there
11 been a search?  Yes or no?
12        MS. WANG:  He did not search for his billing
13 records.
14        THE COURT:  Okay.  All right.
15    Let me hear from the other side on this issue on the
16 billing records.  That's what I'm calling them.  I don't
17 know if that's the right term.
18        MR. SCOLNICK:  Yes, your Honor.  I can't think of
19 anything that's more important to test his bias and his
20 credibility and his -- his allegiance to Natera in this case
21 than his billing records.  How much he's being paid.  The
22 case law is clear that this is relevant.  There's been no
23 dispute or contrary citation of any case law that says it's
24 not relevant.  It seems the only argument they're making now
25 is a procedural one, your Honor.

10

1    But this is a central witness in the case.  The Court

2 has reopened discovery to test his credibility and his

3 opinions and this information is relevant to that.  So we

4 believe, at a minimum, we're entitled to all of his billing

5 records, his invoices, not just for this -- for his work in

6 this case -- but for his other work for Natera as well,

7 because he has an ongoing financial relationship with Natera

8 that goes back for years that is relevant to test his bias

9 and his credibility in this case.

10    And, your Honor, going back to -- if I could just

11 briefly respond to another point my colleague made on the

12 other side, his opinion goes broader than Ms. Wang

13 represented.  It's -- in his report, he specifically states,

14 and I quote,

15        "In addition, the study design

16         included a safeguard in the phase two

17         stopping point on a revealed

18         performance, which I explain further

19         below.  Based on that assurance from NCI

20         and my colleagues, I recommended to my

21         patients who are eligible that they

22         participate in the COBRA study in '21

23         and '22."

24    So, your Honor, he is specifically relying on and

25 including and referencing communications with third parties

11

1  in his report.  And it's just not credible relief that he

2  has searched for all of these documents with the code words

3  of COBRA and nothing has come up.

4        And, in addition --

5            THE COURT:  Well, to talk to other people, he

6  could have had emails that -- he's just a practicing doctor.

7  He doesn't preserve all of his documents for all eternity.

8  I mean, I'm just telling you, I'm not going to force him to

9  give something that doesn't exist.  They said they searched.

10 They've searched.  They made representation in open court

11 and you can ask him at deposition.  Okay.  All right.

12       Let's move on to the next issue of Doctor Rabinowitz.

13 So, I understand that Natera is offering him a trial to talk

14 about background; what do you mean by that?  How the company

15 was formed, what happened?  Who's going to address that?

16           MR. LANDES:  That -- I'll address that, your

17 Honor.

18           THE COURT:  Okay.

19           MR. LANDES:  And, yes, that's essentially right.

20 Founding the company.  We only expect he'll testify for

21 about a half an hour, maybe even less, but just general

22 basic background testimony about the company, its early

23 technology development.  Sort of typical founder testimony,

24 just to set the stage and introduce the company.

25           THE COURT:  Okay.  Let me hear from the other side

12

1  on why they want the deposition and documents.

2       MR. PERLOFF: Yes, your Honor. If I may, because

3  I think this will help set the stage.

4     If I can share my screen, I'm going to -- yes. If you

5  can see my screen, what I'm showing here is the scope of the

6  testimony that Natera had originally proposed for Doctor

7  Rabinowitz for the first time in February of this year. So

8  by way of that --

9       THE COURT: And Judge Chen limited him.    And

10 Judge Chen limited him, correct?

11      MR. PERLOFF: Exactly. But he clearly, based on

12 this, has knowledge of a much wider range of issues than

13 simply this background. And if they had followed the rules

14 and disclosed him as a person who had this wide range of

15 knowledge, we would have asked for his ESI in the same way

16 that, for example, they requested and you ordered us to

17 provide the ESI of our CEO. Even though he might have only

18 originally been -- intended to testify as background.

19    In other words, the fact that the Court has limited

20 what he can testify to in their case in chief, doesn't cure

21 the prejudice that they failed to disclose somebody who

22 clearly has a very broad range of knowledge.

23    And, I guess my point is, if --

24      THE COURT: You knew he was -- you knew he was a

25 founder. He's not a secret. His existence and his

13

1  involvement in the company is not a secret.

2          MR. PERLOFF:  Absolutely, but -- yeah, he was a

3  founder and the former CEO at the time this case started,

4  but we had no reason to believe, for example, because he

5  wasn't disclosed, that he knew that -- you know, details,

6  for example, about Natera's marketing and promotion of

7  Signatera, about the collaborations and partnerships and

8  their efforts to educate the medical community.  And, of

9  course, under Rule 26, it was their obligation -- it was

10  mandatory that they disclose him if he had this knowledge,

11  which apparently he does.

12      So, I guess my point is, if what they say is true and

13  they don't believe there will be many new documents that

14  they haven't produced from some other witness, then the

15  scope of their search should be relatively simple.  They can

16  -- you know, deduplicate the documents that they're

17  reviewing in the same way that --

18          THE COURT:  In terms of the documents from him,

19  are there -- are you asking them to run all of the searches

20  that were performed in this case on Doctor Rabinowitz --

21          MR. PERLOFF:  Yes.

22          THE COURT:  -- Doctor Rabinowitz's files?

23          MR. PERLOFF:  And then -- and then to deduplicate

24  those against -- you know, even before they search it, they

25  should be able to deduplicate it against everything that

14

1   they produced.  And so, if there's anything new -- and if

2   it's as limited as they claim, it should be a small handful

3   of documents.  But the issue is, we shouldn't be left

4   guessing.

5        To cure the prejudice of their failure to disclose him,

6   we should have an opportunity to learn what he actually

7   knows, what documents he actually has.  We may -- we can use

8   those with him at his deposition to challenge his

9   credibility, or with other witnesses, if we, for example, at

10  trial choose not to open the door.  If there are new

11  documents, then we can challenge other witnesses who are

12  going to testify about these topics.  Because the scope of

13  what he knows, again, is much broader than what a typical

14  founder/ex-CEO would know.  And therein is the issue for us.

15  They should go back and do this simple search.

16            THE COURT:  (Zoom glitch).  And can you take the

17  share screen down?  Let me hear from the other side, and can

18  you take the share screen down?  Thank you.

19            MR. PERLOFF:  Yes, I apologize.

20            THE COURT:  No, that's fine.

21            MR. LANDES:  Thank you, your Honor.

22       I think it's very notable that what Mr. Perloff raised

23  on his screen, docket 445, is a prior brief from when

24  Guardant already raised this issue to Judge Chen, made all

25  of the exact arguments that you just heard.  That's at

15

1  docket 445 and then a reply brief at docket 457.

2      We refuted those in our opposition.  All of this came

3  up about how there would be prejudice if it was only a

4  deposition and there wasn't a full document search.  About

5  how it was necessary to test his opinions on this -- or to

6  gather documents on this wide range of issues that he's not

7  going to testify about.  All of that was in front of Judge

8  Chen, weeks if not -- probably six to eight weeks ago.

9      Judge Chen issued an order at docket 493 that said,

10  "There is no prejudice to Guardant in permitting Doctor

11  Rabinowitz's testimony.  Natera offered a half day

12  deposition."  That's what Judge Chen said.  Nothing about,

13  you have to search his documents.

14      And when Mr. Perloff says, oh, it's just a simple

15  search, it shouldn't be that much of a problem.  We're

16  talking about upwards of seven or eight years worth of

17  documents.  A full custodial collection.  Ninety three

18  requests for production, they want us to respond to with his

19  documents.  And the few search terms, it is 27 search

20  strings.  Each one of those strings containing several

21  documents.  I believe there is over 100 individual terms

22  that they're asking to search.  This is a monumental

23  undertaking on something the judge already rejected.

24      And, if there was any question, something that hasn't

25  come up today on this issue, but I think is notable, the

16

1  only thing that has happened since Judge Chen already ruled

2  on this issue, is that he issued his pretrial conference

3  order at docket 501, discussing what discovery was

4  permitted.  And Judge Chen said,

5          "The court recently held that the

6          COBRA study is admissible for a limited

7          purpose at trial, and the parties may

8          conduct focused discovery, as previously

9          discussed.  The court orders that this

10          limited additional discovery is to be

11          completed by June 7th."

12  That's the only thing that's changed, is that the judge

13  has issued another order limiting discovery to COBRA and

14  saying it has to be focused.  Nothing in Guardant's

15  briefing, nothing that we heard today, even attempts to tie

16  what they're after to COBRA or to this limited discovery.

17      And so, the other arguments that Mr. Perloff made, I'm

18  happy to address them, but they've already been addressed in

19  our opposition brief that Judge Chen already ruled on.

20          MR. PERLOFF:  If I may?

21          THE COURT:  I'm going to take these matters under

22  submission and I will issue a ruling as soon as I can,

23  because I know you're under a time crunch.  I really

24  appreciate the argument, it clarified a lot of issues for me

25  and I'm going to think about them and I'm going to look back

17

1  at the docket as well.  But we're going to move onto the

2  next matter.

3       Thank you.

4       (Proceedings adjourned at 9:50 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

18

1                    CERTIFICATE OF TRANSCRIBER

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14  

15

16             Echo Reporting, Inc., Transcriber

17                  Tuesday, April 23, 2024

18

19

20

21

22

23

24

25