# Exhibit H
Redacted for Public Filing

CONFIDENTIAL

```
1              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
2              SAN FRANCISCO DIVISION
       -----------------------------------------X
3      GUARDANT HEALTH, INC.,
4                      PLAINTIFF,
5
               -against-Case No.:
6                      3:21-cv-04062-EMC
7
       NATERA, INC.,
8
                       DEFENDANT.
9      -----------------------------------------X
10
11                     DATE: June 18, 2024
12                     TIME: 9:04 A.M.
13
14            CONFIDENTIAL REALTIME DEPOSITION of the
15     Defendant, NATERA, INC., by a Witness,
16     DR. HOWARD S. HOCHSTER, taken by the Defendant,
17     pursuant to a Subpoena and to the Federal Rules of
18     Civil Procedure, held at the offices of Quinn
19     Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue,
20     22nd Floor, New York, New York 10010, before Karyn
21     Chiusano, a Notary Public of the State of New York.
22
23
24
25
```

1

1          Q.      That's usually at the beginning of the
2     year; correct?
3          A.      Yes.
4          Q.      And ASCO GI 2024 was in the middle of
5     January of 2024; correct?
6          A.      That's correct.
7          Q.      And there was an abstract that was
8     prepared in connection with the COBRA Study;
9     correct?
10         A.      Yes, that's correct.

███    ██         ██████████████████████████
███    █████████████████████████████████████
███    ██████
███    ██         ████████████████████
███    ██         █████████████████████████
███    ██         █████████████
███    ██         ████     █████████████████████
███    ██         █████████████████████████
███    ██         ██████████████████████████
███    █████████████████████

21                 MR. PERLOFF:  Well, let me back up:
22         Q.      Dr. Hochster, you knew that NRG and NCI
23     had closed the COBRA Study to enrollment in -- on
24     August 30th of 2023; correct?
25         A.      Yes.

                        22

CONFIDENTIAL

1          Q.      And you knew that the same day that it
2     happened; correct?
3          A.      I believe I actually received the
4     letter that was sent out to all the physicians with
5     the request to inform the patients on the following
6     day, on the 31st.
7          Q.      Okay.  And you -- how did you receive
8     that?
9          A.      I received that from our Regulatory
10    Group's Lead Director, at -- at Rutgers Cancer
11    Institute.
12         Q.      And her name is?
13         A.      Karen Jackson.
14         Q.      Karen Jackson.
15                 Okay.  So, on or about the date that
16    NRG announced that it was closing the COBRA Study
17    for further enrollment, you -- you learned about
18    that?
19         A.      Yes.
20         Q.      Then, subsequently, there was a
21    decision made to present an abstract at the upcoming
22    ASCO GI Conference; correct?
23         A.      That's correct.
24                 MS. MAROULIS:  Objection; form.

23

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL

10          Q.      Okay.  Now, you -- in 2019, do you know

11    whether Guardant Reveal was a commercially available

12    asset?

13                  MS. MAROULIS:  Objection; form.

14          A.      I'm not certain when they were made --

15    you know, when they started marketing it and I'm not

16    sure when the FDA gave their approval.  So...

17          Q.      You don't know?

18          A.      I don't know.

19          Q.      If -- I'm going to tell you that

20    Guardant Reveal was launched as a commercial

21    product, not in a research-use-only product, but a

22    commercially available clinical product announced in

23    January of 2021, soft launch, in February or March

24    of 2021.

25                  Does that sound about right?

                            24

CONFIDENTIAL

1       Network group study champions for the COBRA Study;

2       correct?

3              A.      I'm unsure about that, but if that's

4       listed that way, then I would believe that.

5              Q.      And does Dr. Boland report to you in

6       any fashion?

7              A.      In some fashion.

8              Q.      You are the Head of Clinical Research,

9       at Rutgers.

10             Is it in that capacity that he reports

11      to you?

12             A.      Yes.

13             And also, I am the Director of GI

14      Oncology.

15             So, he has some level of supervision,

16      by myself, in that capacity, as well.

44

Veritext Legal Solutions
800-336-4000



45

Veritext Legal Solutions
800-336-4000

```
 1        other cancer patients?
 2                    MS. MAROULIS:  Objection; form.
 3        A.        At times.
 4        Q.        At all times, on average?
 5        A.        I haven't performed such an analysis --
 6        Q.        Okay.
 7        A.        -- to be able to give you that data.
 8        Q.        Okay.  And you're still the Associate
 9   Director for Clinical Research and the Director of
10   GI Oncology, at Rutgers Cancer Institute; correct?
11        A.        Correct.
12        Q.        And is it still the case that you
13   direct all GI oncology research at Rutgers Cancer
14   Institute?
15        A.        Yes.
16        Q.        And so, is it true that you play an
17   important role in deciding what clinical research --
18   oncology clinical research is performed at Rutgers?
19        A.        Yes.
20        Q.        What role do you play in reviewing and
21   approving which oncology research is performed at
22   Rutgers Cancer Institute?
23        A.        Well, we have a process that if an
24   investigator is interested in a trial, we have
25   them -- we have disease groups.  There's a review at
```

79

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL

1    present ctDNA-positive after surgery and receive

2    adjuvant chemotherapy?

3             MS. MAROULIS:  Objection; form.

4        A.    I am not aware of a consensus figure.

13       Q.    And Mr. Thom -- Dr. Thom George, he was

14   also one of the publication authors for the COBRA

15   Study?

16       A.    Yes.

94



3          MS. MAROULIS:  Objection; form.

4          Counsel, please watch your language.

20          MR. PERLOFF:  Well, let me back up:

95

Veritext Legal Solutions
800-336-4000



96

Veritext Legal Solutions
800-336-4000

1    marked as Exhibit 3104.

2              Do you remember that you spent time

3    talking to your Counsel regarding the collection of

4    those documents?

5         A.    Yes.

6         Q.    Let me hand you what I have marked as

7    3104.

8              (Whereupon, Invoice was marked as

9    Exhibit 3104 for identification as of this date by

10   the Reporter.)

141



3          MS. MAROULIS:  Objection; form.

142

Page 142

CONFIDENTIAL



22                    MS. MAROULIS:   Objection; form.

                              151

                                              Page 151

CONFIDENTIAL



8          MS. MAROULIS:  Objection; form.

14         MS. MAROULIS:  Objection; form.

16         MR. PERLOFF:  I am going to make a

17  request right at this moment that his -- a mirror

18  image of his account, his PST file, be locked down

19  for a potential forensic investigation.

20         We will probably bring it to attention

21  of the Court, but we may be able to do this all

22  behind the scenes.

23         But I'm making that request, and I am

24  serious about this:  I don't want there to be any

25  potential deletion at this point in time.

                    152

CONFIDENTIAL

```
1                    I want to see what happens, if we
2        search for "COBRA."
3                    MS. MAROULIS:  Counsel, we object to
4        that.
5                    We can obviously discuss not on the
6        witness's time here.
7                    MR. PERLOFF:  Yeah.
8                    MS. MAROULIS:  But your insinuations
9        are really inappropriate.
10                   And we can take that up, but we
11       definitely object to this request.
12                   MR. PERLOFF:  Okay.
13            Q.     Now -- now, are you aware that your
14       Counsel said that not only did you do --
15                   MR. PERLOFF:  Well, let me back up:
```

█          █              ████████████████████████
█          ████████████████████████████████████
█          ██████████████████
█                          ████████████
█              █            ████
█              █            ████
█              █            ███
█              █            ████████████████
█          ███████████████████
█                          █████████████

153

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL



19          MS. MAROULIS:  Objection; form.

20          Assumes facts.

154

Page 154



7              MS. MAROULIS:  Objection; asked and

8    answered.

155

Page 155

CONFIDENTIAL



11          MS. MAROULIS:  Objection; asked and

12    answered.

18          MS. MAROULIS:  Objection; form.

161

Page 161

CONFIDENTIAL



22          MS. MAROULIS:  Objection; form.

165

Page 165



166

Page 166

CONFIDENTIAL



MS. MAROULIS:   Objection; form.

MS. MAROULIS:   Objection; form.

174

Page 174

CONFIDENTIAL



22                    MS. MAROULIS:  Objection; form.

215

CONFIDENTIAL

2          MS. MAROULIS:  Okay.  And please don't

3    reveal the substance of the communication.

4          THE WITNESS:  Okay.

18          MS. MAROULIS:  Please don't reveal the

19    communication.

20          THE WITNESS:  Okay.

21          MS. MAROULIS:  He asked for a date.

22          THE WITNESS:  Okay.

23          MS. MAROULIS:  It's okay to say the

24    date.

25          Try to keep the record clean.

240

Page 240

CONFIDENTIAL

```
 1                C E R T I F I C A T E

 2

       STATE OF NEW YORK       )

 3                        :  SS.:

       COUNTY OF NEW YORK      )

 4

 5         I, KARYN CHIUSANO, a Notary Public for and

 6     within the State of New York, do hereby certify:

 7         That the witness whose examination is

 8     hereinbefore set forth was duly sworn and that such

 9     examination is a true record of the testimony given

10     by that witness.

11         I further certify that I am not related to any

12     of the parties to this action by blood or by

13     marriage and that I am in no way interested in the

14     outcome of this matter.

15         IN WITNESS WHEREOF, I have hereunto set my hand

16     this 20th day of June, 2024.

17

18

19

           KARYN CHIUSANO

20

21

22

23

24

25
```

318

Page 318