Jennifer L. Keller (84412)
jkeller@kelleranderle.com
Chase Scolnick (227631)
cscolnick@kelleranderle.com
KELLER/ANDERLE LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone   (949) 476-0900

Saul Perloff (157092)
saul.perloff@aoshearman.com
Kathy Grant *(pro hac vice)*
kathy.grant@aoshearman.com
Andre Hanson *(pro hac vice)*
andre.hanson@aoshearman.com
Olin "Trey" Hebert *(pro hac vice)*
trey.hebert@aoshearman.com
ALEEN OVERY SHEARMAN STERLING US LLP
300 W. Sixth Street, 22nd Floor
Austin, Texas 78701
Telephone     (512) 647-1900

Christopher LaVigne *(pro hac vice)*
christopher.lavigne@aosherman.com
ALEEN OVERY SHEARMAN STERLING US LLP
599 Lexington Ave
New York, NY 10022
Telephone     (212) 848-4000

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>          Plaintiff/Counterclaim-<br>          Defendant,<br><br>vs.<br><br>NATERA, INC.,<br><br>          Defendant/Counterclaim-<br>          Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**REPLY IN SUPPORT OF GUARDANT'S MOTION FOR EVIDENTIARY AND MONETARY SANCTIONS AGAINST NATERA FOR MATERIAL MISREPRESENTATIONS REGARDING NATERA'S EXPERT WITNESS DR. HOCHSTER**<br><br>Pretrial Hearing Date: October 15, 2024<br>Trial Date: November 12, 2024<br>**[REDACTED FOR PUBLIC FILING]** |

- 1 -

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. NATERA'S MISREPRESENTATIONS WARRANT SERIOUS, MEANINGFUL SANCTIONS PURSUANT TO THE COURT'S INHERENT POWERS .......................... 3

    A. Natera's Opposition Fails To Provide Any Reasonable or Logical Explanation for Its Misrepresentations ................................................................................................ 4

    B. Natera Failed To Take Any Corrective Actions for Its Misrepresentations ............ 7

III. EVIDENTIARY SANCTIONS ARE NECESSARY BECAUSE NATERA'S MISCONDUCT HAS CAUSED IRREPARABLE HARM AND PREJUDICE ................ 8

IV. CONCLUSION ................................................................................................................ 13

- 2 -

# TABLE OF AUTHORITIES

**Cases**

*Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406 (9th Cir.1990) ........................................................ 9

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) .................................................... 3

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208 (C.D. Cal. July 12, 2016) ... 4

*Campbell v. M/V Gemini*, 619 F.2d 24 (9th Cir. 1980) .................................................................... 9

*ConsumerDirect, Inc. v. Pentius, LLC*, 2023 WL 8876198 (C.D. Cal. Sept. 21, 2023) .................. 3

*Davis v. Alaska*, 415 U.S. 308 (1974) ............................................................................................ 12

*Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233 (9th Cir. 2016) ........................................ 3

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) ................. 8

*Wagnon v. Rocklin Un. Sch. Dist.*, 2023 WL 4352623 (E.D. Cal. Jul. 5, 2023) .............................. 7

**Rules**

Cal. R. Prof. Conduct 3.3(a)(1) ........................................................................................................ 7

Fed. R. Civ. P. 11(b) ........................................................................................................................ 7

## I.    INTRODUCTION

Guardant's motion for sanctions focuses on serious misrepresentations Natera made to the Court. Those misrepresentations severely impeded Guardant's efforts to conduct COBRA-related discovery and irreparably prejudiced Guardant's ability to present its case at trial and cross-examine Dr. Hochster on the COBRA Study. Despite the gravity of those misrepresentations, Natera's opposition trivializes its duty of candor to the Court as "tangential 'gotcha' issues" (Opp. at 9), blames Guardant for Natera's misrepresentations about its own expert's documents, and falsely argues that the Rutgers production somehow absolves Natera and Dr. Hochster of their dishonesty and cures all prejudice to Guardant.

Natera's opposition is most notable for what it does not contain. There is no meaningful explanation from Dr. Hochster, Natera's counsel, or an IT specialist of how it is possible that Dr. Hochster was unable to find any of his many emails about the COBRA Study that Rutgers located and produced.[1] Equally troubling is the absence of any effort by Natera or Dr. Hochster to correct their misrepresentations to the Court or to provide the discovery from Dr. Hochster that Guardant still does ***not*** have. Natera's opposition provides nothing to assure Guardant and the Court that Natera is not still concealing relevant documents from Dr. Hochster.

Rather than address the seriousness of its misconduct and the damage done to Guardant's ability to present its case at trial, Natera relies on a series of new misrepresentations to the Court,[2]

---

[1] Natera's claim that Dr. Hochster only failed to produce "about ten" emails, "all in reaction to COBRA's closure," Opp. at 12, is untrue. The Rutgers production included over 70 emails from Dr. Hochster's account (and even more from Dr. Boland's account *to* Dr. Hochster). These included dozens of key emails between Dr. Hochster and Drs. Morris, George, Wolmark, Boland, and Natera about COBRA, Dr. Hochster's attacks on Guardant, and his efforts as Natera's liaison to have Signatera replace Reveal in the COBRA Study.

[2] Many of Natera's misrepresentations are raised to paint Guardant and Reveal in a bad light, and thus are largely irrelevant to the question of whether Natera engaged in sanctionable conduct, and the appropriate consequences such conduct warrants. Rebutting all Natera's misstatements would be unnecessarily distracting for present purposes, but by way of brief example:

- Without any citation, Natera claims Guardant's rebuttal expert Dr. Heitjan testified that COBRA was a "catastrophic failure" and Natera insinuates that was because of the performance of Reveal. Opp. at 1. But that is not at all what Dr. Heitjan stated; Dr. Heitjan referred specifically and at length to design flaws in COBRA that led to its failure, unrelated to the performance of Reveal. Reply Ex. Z, Heitjan 7/17/2024 Dep. 157:14-158:16 ("I'll make it clear what my position is, that the . . . interim analysis was poorly planned.").

- Natera claims (again without citation) that Dr. Parikh "conceded in her recent deposition

1  and resorts to baseless "no harm, no foul" arguments. Guardant previously made clear that the
2  Rutgers production does not excuse Natera's misconduct or cure the prejudice. The Rutgers
3  production was obtained after the deadline for COBRA-related discovery and, importantly, was
4  limited in time and scope. Mot. at 4 & 15. Natera also argues that Dr. Hochster's emails are
5  irrelevant, as if that might somehow justify Natera's misrepresentations that no such emails existed.
6  Dr. Hochster's emails are in any event highly relevant — to the merits of his opinions, his bias, and
7  his credibility — which only reinforces the harm and prejudice to Guardant from the significant
8  delay in obtaining the limited set of those emails Rutgers produced, and from the fact that Guardant
9  still does not have a complete production from Dr. Hochster of his emails about the COBRA Study.

    Natera's misrepresentations require meaningful sanctions. Those sanctions should reflect
the serious harm to the litigation process caused by a party's misrepresenting the existence of
relevant discovery, as well as by a party's refusal to correct its prior misrepresentations and to take
appropriate remedial actions when those misrepresentations come to light. Given the nature of
Natera's misrepresentations, its complete failure to take corrective actions when those
misrepresentations were exposed, and the harm and prejudice to Guardant, the Court should
exclude Dr. Hochster, any other evidence from Natera about the COBRA Study, and impose

---

that Reveal does not have 100% specificity or PPV but yields 1 in 20 false positives." Opp. at 1. This too is false. Dr. Parikh testified that when "doing the work leading up to [her] 2021 paper, [she] expected an analytical specificity lower than 95 percent." Reply Ex. AA, Parikh 7/9/24 Dep. at 39:2-8. Her Rebuttal Report discusses the distinction between *analytical* specificity and *clinical* specificity, which is dependent on the study at issue; and confirms that the MGH/Harvard study showed 100% specificity for Reveal in patients with at least one-year clinical follow up. Dkt. 576-2, ¶¶ 22 & 54

- Natera claims, "[i]n an attempt to stay on the trial, Guardant introduced a new update" to Reveal, and "then started lobbying the NRG to persuade the NCI to amend the COBRA protocol to allow Guardant to use its new FDA-unapproved, clinically unvalidated test called Infinity to run COBRA samples, replacing the original commercial version, Reveal 1.2." Opp. at 8. In fact, Guardant validated and launched the algorithm update by January 2023, and proposed — and received — NRG's agreement to conduct Phase 3 of COBRA using the latest version of Reveal (which included that update) at the time, long before the interim analysis was begun. Moreover, the FDA approved the transition of COBRA to the newest version of Reveal on June 30th, about 2 months before NRG closed COBRA.

The same observations could be made regarding Natera's false claims about Reveal's CHIP filter, Opp. at 5-6, n.2, discovery motion practice, *id.* at 5 & 9, or that NRG somehow "confirmed" that calls were "false positives" in the absence of any clinical outcome data, *id.* at 8. Those misrepresentations demonstrate that Natera and its counsel are committed to a "say anything" litigation strategy, even when facing sanctions for serious misrepresentations to the Court.

1  monetary sanctions to compensate Guardant appropriately.

## II. NATERA'S MISREPRESENTATIONS WARRANT SERIOUS, MEANINGFUL SANCTIONS PURSUANT TO THE COURT'S INHERENT POWERS

The central issue in Guardant's Motion is that Natera first misrepresented to the Court when and how Dr. Hochster learned of the COBRA Study's interim results, and then Natera misrepresented to the Court that Dr. Hochster had no emails about the COBRA Study, knew he had no such emails, and searched multiple times to confirm he had no emails. The third-party production by Rutgers shows that Natera's representations were indisputably false. Natera's opposition now lays bare that Natera and Dr. Hochster have no reasonable explanation for their misrepresentations, have made no effort to correct their misrepresentations, and steadfastly refuse to do anything to ameliorate the harm and prejudice caused to Guardant. Natera and Dr. Hochster's failure to explain, correct, or remedy their misrepresentations to the Court demonstrate that those misrepresentations were baseless, in bad faith, and done for the improper purpose of concealing relevant documents and impeding Guardant's ability to present its case on the COBRA Study.

The question presented by Guardant's motion is whether the Court should impose sanctions because Natera's misrepresentations were made "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). "Engaging in a scheme to intentionally mischaracterize evidence through misleading or inaccurate discovery responses ***or the 'failure to correct the false impressions created'*** is tantamount to bad faith." *ConsumerDirect, Inc. v. Pentius, LLC*, 2023 WL 8876198, at *6 (C.D. Cal. Sept. 21, 2023) (emphasis added). Natera argues that Guardant's Motion should be considered under Rule 37(e). Opp. at 16-17. Rule 37(e) addresses the "failure to preserve electronically stored information." That is not the issue. While it is certainly possible that Dr. Hochster engaged in selective spoliation, that is not the basis of Guardant's motion. Indeed, the Rutgers production shows that the emails on which the motion is based were in fact preserved and accessible. The issue is Natera's false representations that no such documents ever existed, precisely the circumstances addressed in the leading case of *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1243-46 (9th Cir. 2016), *rev'd on other grounds* 581 U.S. 101 (2017), and numerous other cases, including *Blumenthal*

1  *Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208 (C.D. Cal. July 12, 2016), rpt. and rec. adopted, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016), where the district court imposed sanctions for misrepresentations that a "thorough search" had been conducted and "no further responsive documents existed." *Id*. at 14.

### A. Natera's Opposition Fails To Provide Any Reasonable or Logical Explanation for Its Misrepresentations

Natera's opposition provides no explanation for what actually happened with Dr. Hochster's purported search of his own emails. ████████████████████████████████████████████████████████████████████████████████████████████████████████████ Reply Ex. Y, Hochster 6/18/2024 Dep. 177:13-18.[3] It is in fact entirely unbelievable. Natera's opposition fails to address this pivotal issue. *See Blumenthal*, 2016 WL 6609208, at *14 (finding bad faith where third-party discovery showed it was not plausible that the party's "executives believed there were no such" documents).

Natera instead tries to minimize its misrepresentations as mere "imprecision." Opp. at 22. Those representations, however, were definitive, unambiguous, and repeated in both writing and oral argument. Natera, for example, represented, without caveat or nuance, that Dr. Hochster "***did not need to do a comprehensive search to know he never emailed about COBRA***." Mot. at 3 (quoting Dkt. 510 at 7) (emphasis added). Natera further represented that Dr. Hochster conducted a thorough search of his emails to confirm he had no responsive documents. *Id*. Those representations were crafted perfectly and specifically enough to convince Judge Kim to deny Guardant's motion to compel because no responsive documents existed. Mot. at 3-4.

Rutgers' subsequent production shows those representations were absolutely false. Mot. at 4-8. Yet, Natera and Dr. Hochster want Guardant and this Court now to believe two implausible propositions. ***First***, Dr. Hochster had no memory — at any time from March (when Guardant served its subpoena on Dr. Hochster) to June (when Rutgers produced Dr. Hochster's emails) —

---

[3] "Reply Ex. __" refers to the Exhibits attached to the accompanying Reply Declaration of Chase Scolnick.

1   about his extensive email communications with the Principal Investigator, Dr. Morris, his email
2   communications with his colleague and lead Investigator Dr. Boland in which Dr. Hochster
3   solicited and obtained the confidential Preliminary Abstract, or his efforts with Natera's Chief
4   Medical Office to convince the lead COBRA Investigators and NRG to use Signatera instead of
5   Guardant's Reveal.  *See* Mot. at 5-8.  These are not the circumstances where a person had one or
6   two isolated emails on ministerial or otherwise unimportant issues.  Dr. Hochster says the decision
7   to discontinue the COBRA Study "shook the field, including [himself]" and "[t]he magnitude of
8   the COBRA study failure is unprecedented in [his] 30 years of experience."  Mot., Ex. D, Hochster
9   Supp. Rpt. ¶ 25.  His supplemental report cites and relies on the written communications of
10  numerous *other* oncologists in response to the COBRA decision.  *Id*. ¶¶ 41-42.  It is implausible
11  that he did not recall his *own* written communications about this supposedly monumental event.

12         ***Second***, Natera and Dr. Hochster also want Guardant and this Court to believe that despite
13  the significant number of emails Dr. Hochster sent and received about the COBRA Study, he
14  conducted a "reasonably diligent search" and was unable to locate any of those emails.  Natera's
15  opposition provides no explanation whatsoever about how a "reasonably diligent search" could
16  have been conducted of Dr. Hochster's emails but not locate any of his many emails about COBRA
17  subsequently produced by Rutgers.  Natera's opposition contains no declaration from Dr. Hochster
18  explaining his initial search or saying he has now gone back and thoroughly searched all his email
19  files.  There is no declaration from the Rutgers IT department or an independent forensic discovery
20  specialist saying they conducted a thorough collection and search of Dr. Hochster's email files to
21  explain what happened, or to provide the Court some assurance that Natera and Dr. Hochster were
22  not deliberately concealing relevant discovery and are not continuing to do so.  There is nothing in
23  Natera's opposition to show that the emails produced by Rutgers were not sitting right in Dr.
24  Hochster's email folders all along.

25         Rather than an explanation, Natera offers pure speculation — unsupported by any
26  declaration from Dr. Hochster or Rutgers — that Rutgers had special access to Dr. Hochster's
27  emails at the "server level."  Opp. at 10 n.5 & 11.  But Natera does not show that Dr. Hochster did
28  not have the exact same access as Rutgers to his own email files.  Natera does not point to any

1  evidence suggesting that to locate Dr. Hochster's emails Rutgers had to access back-up tapes or
2  other email archives to which Dr. Hochster did not have access. ████████████████
3  ████████████████████████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████████████
6  ██████  ████████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████

9  　　　　　Natera and Dr. Hochster have had four months since Guardant's subpoena and over a month
10 since the Rutgers production.  The total absence in Natera's opposition of any real explanation for
11 the extreme difference in the misrepresentations that Dr. Hochster had no emails about COBRA
12 and the contents of the Rutgers production strongly suggests that Natera and Dr. Hochster have ***no***
13 legitimate explanation.

14 　　　　　Natera also argues that it did not misrepresent when and how Dr. Hochster first learned of
15 the COBRA Study's interim results.  Opp. at 19.  But, there can be no dispute that Natera
16 misrepresented those facts in attempting to justify the eleventh-hour disclosure of Dr. Hochster's
17 supplemental report.  Mot. at 8-9 (Natera's representations to the Court that Dr. Hochster did not
18 have any "inside information" about or "early access" to the COBRA Study results).  Natera claims
19 that it and "its counsel did not know Dr. Hochster received a draft, until receiving Rutgers'
20 document production in response to Guardant's subpoena." Opp. at 19.  There is noticeably no
21 support — no declaration from Natera's counsel or Dr. Hochster — for that claim.  Rejecting
22 Guardant's request, Natera has not provided a log of Dr. Hochster's communications with Natera's
23 counsel.  And when Guardant attempted to ask Dr. Hochster at deposition about what information
24 he shared with Natera's counsel, Dr. Hochster was instructed not to answer based on privilege.
25 Mot., Ex. H, Hochster 6/18/24 Dep. at 240:5-25.[4]  But even accepting Natera's unsupported
26 averment of ignorance, such a reckless misrepresentation — without any factual basis for knowing
27
28 [4] If the Court even entertains Natera's unsupported assertion, it may wish to conduct an *in camera* review of Dr. Hochster's communications with Natera's counsel.

1  whether it is true or false — also is inexcusable. *E.g.*, *Wagnon v. Rocklin Un. Sch. Dist.*, 2023 WL
2  4352623, at *10 (E.D. Cal. Jul. 5, 2023) (awarding sanctions for a "reckless misleading of the court
3  and reckless misrepresentations of the facts") (citations omitted); *accord*, Fed. R. Civ. P. 11(b)
4  (written representations must be "formed after an inquiry reasonable under the circumstances").

### B. Natera Failed To Take Any Corrective Actions for Its Misrepresentations

Natera's misrepresentations regarding Dr. Hochster's emails were inexplicable and alone warrant serious sanctions. But equally disturbing is Natera and Dr. Hochster's conduct after the Rutgers production showed they had falsely represented to Judge Kim that Dr. Hochster had no emails about the COBRA Study. Rutgers made its production on June 13. In over a month, neither Natera nor Dr. Hochster have amended their written responses to Guardant's document requests or corrected their statements to the Court, upon which Judge Kim relied in denying Guardant's motion to compel production of Dr. Hochster's emails. *See, e.g.*, Cal. R. Prof. Conduct 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal ***or fail to correct a false statement of material fact*** . . . .") (emphasis added).

Furthermore, Natera and Dr. Hochster have done nothing to provide Guardant with a complete production of Dr. Hochster's emails, as Guardant requested in its subpoena and later sought to compel before Judge Kim. Instead, Natera falsely tells the Court that given the Rutgers production "Guardant received the communications that it complains Dr. Hochster failed to produce well in advance of his deposition and in advance of any other relevant deadlines." Opp. at 17; s*ee also id*. at 23 ("Guardant admits it has now obtained the evidence it sought, and it obtained it before Dr. Hochster's deposition, enabling Guardant to fully explore it with Dr. Hochster at his deposition."). Natera provides absolutely no evidence that the Rutgers production in fact included all of Dr. Hochster's emails about the COBRA Study. It is unlikely that could be true.

Guardant's motion explained that, due to the short time remaining for discovery, its subpoena to Rutgers for Dr. Hochster's emails was limited in time (June 1, 2023 – March 31, 2024) and to specific people (and even specific email accounts/domains) with whom Dr. Hochster may have communicated. Mot. at 4. The Rutgers production, therefore, does not include Dr. Hochster's emails about the COBRA Study before June 1, 2023, or at any time with people beyond those

1  specified in Guardant's subpoena to Rutgers. Yet, Natera and Dr. Hochster have done nothing to
2  fill the remaining void in the production of Dr. Hochster's emails about the COBRA Study.

3  Natera's opposition contains no declaration from Dr. Hochster saying he has thoroughly
4  searched his emails files to identify his emails about COBRA that Rutgers did not produce. To the
5  contrary, ███████████████████████████████████████████████████████
6  ███████████████████████████████████████████████████████
7  ███ Mot. Ex. H, Hochster 6/18/2028 Dep. at 152:10-13. There also is no declaration showing
8  that Natera and Dr. Hochster have taken steps to retain an independent forensic discovery expert to
9  conduct a thorough search of Dr. Hochster's emails to ensure all of Dr. Hochster's responsive
10 emails are produced. In short, there is no assurance from Natera and Dr. Hochster, despite being
11 caught making serious misrepresentations to the Court, that they have taken any steps, let alone the
12 necessary steps, to ensure complete production to Guardant of Dr. Hochster's responsive emails.
13 Quite the contrary, Natera and Dr. Hochster boldly disavow any responsibility or obligation to
14 correct their misrepresentations: This "is not a problem of Natera's making, and not one that Natera
15 (or Dr. Hochster) could ever cure." Opp. at 21.

16 As even further evidence of Natera's cavalier attitude towards its duty of candor to the Court
17 and its discovery obligations, Natera tries to shift blame to Guardant for not "follow[ing] up" after
18 Dr. Hochster's deposition. Opp. at 21. It is Natera's affirmative obligation to correct its own
19 misrepresentations to the Court and the damage that those misrepresentations have caused.

20 Natera's misrepresentations to the Court, unwillingness to provide any explanation for those
21 misrepresentations, and failure to take any corrective action clearly support a finding that those
22 actions were taken in bad faith and for the improper purpose of impeding Guardant's ability to
23 obtain discovery to respond to Natera and Dr. Hochster's claims about the COBRA Study.

### III. EVIDENTIARY SANCTIONS ARE NECESSARY BECAUSE NATERA'S MISCONDUCT HAS CAUSED IRREPARABLE HARM AND PREJUDICE

26 As sanctions for Natera's misrepresentations, this Court has broad discretion to exclude
27 evidence or witnesses that "would unfairly prejudice" Guardant. *Unigard Sec. Ins. Co. v.*
28 *Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Campbell v. M/V*

1  *Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). In this context, Guardant "suffers prejudice if [Natera's]
2  actions impair [Guardant's] ability to go to trial or threaten to interfere with the rightful decision of
3  the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990). Here, Natera's
4  misconduct has impaired Guardant's ability to present its case in response to Natera and Dr.
5  Hochster's claims about the COBRA Study, and Guardant's ability to fully and fairly cross-
6  examine Dr. Hochster.

7  Natera argues that there is no prejudice because Dr. Hochster's emails produced by Rutgers
8  are "irrelevant." Opp. at 11-12 & 21. This is neither an excuse nor remotely true. Indeed, the
9  relevance of Dr. Hochster's emails further underscores the harm and prejudice to Guardant.

10  As explained in Guardant's motion, Dr. Hochster, in multiple emails, expressed serious
11  questions about how any results from Guardant's Reveal in the COBRA Study could be deemed
12  "false positives." Mot. at 6 (citing Exs. P & Q). The fundamental premise of those statements is
13  that one cannot determine whether a ctDNA result was a false positive without the clinical outcome
14  data (recurrence data) for each patient. In the *clinical* setting, a false positive arises when the assay
15  gives a positive result for ctDNA but the patient's cancer does not recur. Determining whether a
16  patient's cancer recurs requires follow-up and ultimately clinical outcome data for the patient. Dr.
17  Hochster acknowledged that without the clinical outcome data one cannot conclude that a ctDNA
18  result was an actual false positive. Reply Ex. Y, Hochster 6/18/2024 Dep. at 203:10-15 (Q: "But
19  from a clinical standpoint, in your view, without further recurrence data, we are unable to conclude
20  whether the initial ctDNA results for these patients were false positive or false negative?" A:
21  "Yes."). Here, there are no clinical outcome data available from the COBRA Study. Thus, Dr.
22  Hochster's emails directly contradict Natera's central theme that the COBRA Study shows Reveal
23  produced excessive false positives. *See* Opp. at 1-2, 4-5, & 7.

24  More broadly, a major flaw in Natera's characterizations of the COBRA Study's interim
25  results is that there are no clinical outcome data. In a grossly misleading attempt to deflect from
26  its own misrepresentations, Natera falsely accuses Guardant of misrepresenting the available
27  COBRA data. Opp. at 5 (selectively citing Feb. 22, 2024 Hr'g Tr. at 5:7-11). But what counsel
28  actually argued is at lines 12-18, deceptively omitted by Natera:

1
2
3
>And that's important here, Your Honor, because this is not a published study, and the data that's typically available that would allow us to respond, allow us to analyze the underlying data, is not currently available to Guardant. So we need to . . . seek documents from the investigators, *including the clinical data*, whatever's available, and analytical data and also to take depositions.

(emphasis added). Natera omitted the context of Guardant's statements — that clinical data are necessary to determine whether an assay result is a true or false positive (or true or false negative). The lack of clinical outcome data from the COBRA Study remains the case today — neither the Parties, their experts, or the public knows whether the interim data were correctly called by Reveal, such that the three ctDNA+ baseline patients in the observation arm who were ctDNA- at six months simply spontaneously cleared. Natera's statement that "Guardant [is] in possession of *all* the underlying data from COBRA," Opp. at 5, is intentionally false and extraordinarily misleading. And, as Dr. Hochster's emails recognize, without the clinical outcome data, there is no basis for Natera's characterization of the results from Reveal as "false positives."

The prejudice to Guardant stems from the fact that Natera's misconduct precluded Guardant from obtaining any of Dr. Hochster's emails until after the close of COBRA-related discovery, and the fact that Guardant still does not have a complete production of Dr. Hochster's emails about the COBRA Study. Given Dr. Hochster's proliferation in emailing the lead COBRA Investigators, NRG leadership, and Natera following the announcement of the COBRA Study's closure, it is highly likely that he had email communications with other colleagues and oncologists about the COBRA Study. Those emails would be essential to Guardant's ability to respond fully to Natera's mischaracterizations of the COBRA Study and to cross-examine Dr. Hochster.

For example, in addition to the lack of clinical outcome data from the COBRA Study, there are serious issues with the design of the COBRA Study and its interim futility analysis. Natera spends much of its opposition quoting various emails produced by NRG but does not reference key statements from the COBRA Study's statistician, Prof. Greg Yothers, who was responsible for conducting the interim analysis. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



Reply Ex. DD, NRG-000925, at -925.[5]  While this is not the place to argue the scientific merits and implications of the COBRA Study, Professor Yothers's statements show that Natera's and Dr. Hochster's narrative that the COBRA Study failed because of Reveal's performance is scientifically incomplete and deliberately ignores critical design flaws in the COBRA Study.

Yet, because of Natera's misrepresentations to the Court about Dr. Hochster's emails and failure to take any corrective action, Guardant has been precluded from obtaining discovery that could further undermine Natera and Dr. Hochster's mischaracterizations of the COBRA Study.  An open issue is whether Dr. Hochster himself, in emails beyond those produced by Rutgers, recognized the problems caused by the very low prevalence in the COBRA Study's population, or any of the other major issues presented by the COBRA Study's design — such as the decision to base the interim analysis on a single sample taken during chemotherapy.

Natera claims that because Guardant's two rebuttal experts on the COBRA Study (Dr. Heitjan and Dr. Parikh) did not cite any of Dr. Hochster's emails, those emails must not be relevant. Opp. at 12, 15, & 18.  This argument is specious.  That Guardant's experts did not rely on Dr. Hochster's emails says nothing about whether those emails are relevant.  Instead, Drs. Heitjan and Parikh focused on the data and scientific methodology — or lack thereof — presented by Dr. Hochster's supplemental opinions.

The emails produced by Rutgers also are unquestionably relevant to Dr. Hochster's bias and

---

[5] Natera also selectively cites NRG documents to suggest that Guardant misrepresented Reveal's performance to NRG.  Guardant accurately and timely disclosed Reveal's complete performance data, including its specificity, to NRG.  See Reply Ex. BB, Eagle Dep. at 306:13-16 ("Guardant accurately represent[ed] Reveal's performance, including specificity for Reveal 1.2 to the NRG.")

1  credibility.  The Supreme Court explained: "The partiality of a witness is subject to exploration at
2  trial, and is *always relevant as discrediting the witness and affecting the weight of his testimony*."
3  *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (internal quotation marks omitted) (emphasis added).
4  The limited set of Dr. Hochster's emails produced by Rutgers show that upon learning of the
5  COBRA Study's closure, Dr. Hochster went out of his way to denigrate Guardant and Reveal to
6  the lead COBRA Investigators and NRG — and possibly others that we may never learn about.
7  Mot. at 5 (citing Exs. K, L, & M).  Dr. Hochster then quickly pivoted to using his influence with
8  the COBRA Investigators and NRG in an attempt to convince them to continue the COBRA Study
9  with Natera's Signatera instead of Guardant's Reveal.  Mot. at 5-8.

12  The emails produced by Rutgers also show that Dr. Hochster solicited and obtained a
13  confidential Preliminary Abstract for the COBRA Study from his colleague, Dr. Boland, four
14  months before the data were presented publicly.  Mot. at 7.  Remarkably, Natera claims that the
15  fact that the abstract was embargoed excused the untimeliness of Dr. Hochster's supplemental
16  report. Opp. at 12.  But what Natera fails to address is that it was expressly embargoed from ***Dr.***
17  ***Hochster himself***.  Dr. Hochster certainly knew that anything in writing at that time would have
18  been confidential and that he was asking Dr. Boland to violate that confidentiality.  If he had any
19  doubts about the confidentiality of the data and the propriety of his request for the data, they would
20  have disappeared when he received the abstract.  As Dr. Morris wrote in sending the Preliminary
21  Abstract to Dr. Boland:

> **As a reminder, under contractual obligations with the NCI, we are all embargoed from sharing this abstract or discussing results reported here with anyone outside of the coauthors included in this email.** Specifically, *you cannot discuss this with colleagues, bosses*, people within your cooperative group, etc. I am sure that, like me, you have been getting emails and questions from outside people asking what is going on here, and because many discussions have been going on behind the scenes between NRG, CTEP, and Guardant following the NCI's decision last week, it is essential not to speak about this with anyone else.

27  Mot. Ex. T, RUTGERS_000366, at -366 (first emphasis in original, second emphasis added).
28  Despite being "specifically" told not to share this information "with colleagues" and "bosses," Dr.

- 12 -

1  Boland bowed to Dr. Hochster's request for this information about COBRA "in writing."

4  Whether Dr. Hochster went further by sharing the confidential abstract with others remains unknown given the failure to make a complete production of his emails about the COBRA Study (along with Natera's failure to provide a privilege log detailing the documents that Rutgers produced to Natera's counsel but were withheld from production to Guardant).

As a result of Natera's misrepresentations and failure to take any corrective action, Guardant is left with only the limited set of Dr. Hochster's emails produced by Rutgers. Natera and Dr. Hochster successfully prevented Guardant from obtaining that limited set until just days before Dr. Hochster's deposition and after the deadline for COBRA-related discovery. That alone was prejudicial. In addition, it is still unknown what other emails Dr. Hochster had about the COBRA Study. The lack of complete and timely discovery from Dr. Hochster seriously impairs Guardant's ability to present its case at trial and cross-examine Dr. Hochster about the COBRA Study. Exclusion of Dr. Hochster and any other evidence from Natera about the COBRA Study is the appropriate evidentiary sanction.

Monetary sanctions also should be imposed to compensate Guardant for the extraordinary amount of additional work caused by Natera's misrepresentations to the Court. Monetary sanctions, however, do not remedy the harm and prejudice to Guardant of being precluded from obtaining full, timely discovery from Natera's principal witness, Dr. Hochster, on the COBRA Study. Monetary sanctions would not address the fact that Natera and Dr. Hochster may still be concealing relevant discovery.

**IV.    CONCLUSION**

This Court conditionally allowed Natera's eleventh-hour attempt to inject the COBRA Study's interim results into this litigation through Dr. Hochster's supplemental report, even though discovery had been closed for 1.5 years. The essential compromise was that Guardant would be afforded reasonable opportunity to conduct discovery necessary to respond fully to Dr. Hochster's supplemental report. Right out of the gate, Natera and Dr. Hochster thwarted Guardant's discovery

1  efforts with egregious misrepresentations to the Court that Dr. Hochster had never emailed anyone
2  about the COBRA Study.  Those misrepresentations upended all Guardant's COBRA-related
3  discovery efforts.  It was not until after the deadline for COBRA-related discovery that Guardant
4  obtained from Rutgers a limited set of Dr. Hochster's emails about COBRA.

5  The Rutgers production exposed Natera and Dr. Hochster's misrepresentations to the Court.
6  But it came too late for Guardant to seek additional discovery.  And the limited nature of the Rutgers
7  productions means that Guardant still does not have all the discovery it sought from Dr. Hochster.
8  Natera's opposition, shockingly, provides no assurance that it and Dr. Hochster are not still
9  concealing relevant discovery.  Natera's misconduct and the resulting prejudice to Guardant
10 requires serious, meaningful sanctions: the exclusion of Dr. Hochster, the exclusion of any other
11 evidence form Natera about the COBRA Study, and monetary sanctions.

Dated: July 22, 2024         **KELLER/ANDERLE LLP**

By:  */s/ Chase Scolnick*
     **Chase Scolnick**

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.