1  Jennifer L. Keller (84412)
   jkeller@kelleranderle.com
2  Chase Scolnick (227631)
   cscolnick@kelleranderle.com
3  KELLER/ANDERLE LLP
4  18300 Von Karman Ave., Suite 930
   Irvine, CA 92612
5  Telephone   (949) 476-0900

6  Saul Perloff (157092)
7  saul.perloff@aoshearman.com
   Kathy Grant *(pro hac vice)*
8  kathy.grant@aoshearman.com
   Andre Hanson *(pro hac vice)*
9  andre.hanson@aoshearman.com
   Olin "Trey" Hebert *(pro hac vice)*
10 trey.hebert@aoshearman.com
11 ALLEN OVERY SHEARMAN STERLING US LLP
   300 W. Sixth Street, 22nd Floor
12 Austin, Texas 78701
   Telephone   (512) 647-1900
13
14 Christopher LaVigne *(pro hac vice)*
   christopher.lavigne@aosherman.com
15 ALLEN OVERY SHEARMAN STERLING US LLP
   599 Lexington Ave
16 New York, NY 10022
   Telephone   (212) 848-4000
17
18 Attorneys for Plaintiff/Counterclaim-Defendant
   GUARDANT HEALTH, INC.

19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., | Case No. 3:21-cv-04062-EMC |
| Plaintiff/Counterclaim-Defendant, | **GUARDANT'S MOTION TO COMPEL NATERA'S PRODUCTION OF DOCUMENTS FOR IN CAMERA REVIEW** |
| vs. | |
| NATERA, INC., | Pretrial Hearing Date: October 15, 2024<br>Trial Date: November 12, 2024 |
| Defendant/Counterclaim-Plaintiff. | **[REDACTED FOR PUBLIC FILING]** |

- 1 -

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on a date and at a time to be selected by the Court, in Courtroom 5 of the United States District Court for the Northern District of California, San Francisco Division, located in the United States Courthouse at 450 Golden Gate Avenue, San Francisco, California, 94102, the Honorable Edward M. Chen presiding, Plaintiff/Counterclaim-Defendant Guardant Health, Inc. ("Guardant"), by and through its attorneys, will move for an Order compelling Natera to produce for *in camera* review communications from September 2023 between Natera's counsel and Dr. Howard Hochster. Those communications, if subject to the attorney work-product doctrine, should be produced under Federal Rule of Civil Procedure 26(b)(3)(A)(ii) and, in any event, Natera waived any work-product protection.

Natera misrepresented to the Court how and when Dr. Hochster learned of the COBRA study's results. Natera's recently disclosed log suggests that Natera may have made further misrepresentations to the Court about when and how Natera's counsel learned that Dr. Hochster had obtained "early access" to the COBRA results. There is a substantial need for the September 2023 communications to determine the extent of Natera's misrepresentations, the prejudice to Guardant, and the appropriate sanction against Natera. If this Court finds any of the September 2023 communications are relevant to the misrepresentations by Natera discussed in Guardant's motion for sanctions, then the Court should order Natera to produce those documents to Guardant.

This motion is made upon this notice, the attached memorandum of points and authorities, the accompanying declaration of Chase Scolnick, all records, papers, and pleadings on file in this action, and all further evidence as may be presented prior to or after the filing of the motion.

Dated: August 26, 2024        KELLER/ANDERLE LLP

By:   */s/ Chase Scolnick*
        **Chase Scolnick**

Attorney for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

- 2 -
GUARDANT'S MOTION TO COMPEL PRODUCTION FOR IN CAMERA REVIEW
CASE NO. 3:21-CV-04062-EMC

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. STATEMENT OF THE ISSUES TO BE DECIDED ....................................................... 5

IV. THE COURT SHOULD ORDER NATERA TO PRODUCE FOR *IN CAMERA* REVIEW THE COMMUNICATIONS BETWEEN NATERA'S COUNSEL AND DR. HOCHSTER FROM SEPTEMBER 2023 ....................................................................... 5

V. CONCLUSION ................................................................................................................. 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Guardant respectfully requests that the Court order Natera to produce the communications from September 2023 between Natera's counsel and Dr. Hochster that are listed on Natera's recently disclosed log. There are ▇ entries on Natera's log for ▇▇▇▇▇. Those communications may bear directly on the issues raised in Guardant's pending motion for sanctions, including whether Natera made additional misrepresentations in opposing Guardant's motion.

As shown in Guardant's motion for sanctions, Natera misrepresented to the Court at the February 22, 2024 hearing that Dr. Hochster did not have any "inside information" or "early access" to the COBRA study's results. After Natera and Dr. Hochster falsely told this Court that Dr. Hochster had no emails about the COBRA study, Guardant obtained a third-party production from Rutgers University that showed Dr. Hochster in fact solicited and obtained a confidential, embargoed draft of the COBRA results on September 13, 2023, from his colleague and one of the lead COBRA investigators. In opposing Guardant's motion for sanctions, Natera represented that it and its counsel were not aware that Dr. Hochster had any communications about COBRA much less obtained early access to the COBRA results until the Rutgers production. Natera's log, however, shows ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

The Court, therefore, should order Natera to produce the communications from September 2023 for *in camera* review. If the Court determines that those communications are relevant to Guardant's pending motion for sanctions, then the Court should order those be produced to Guardant. Any work-product protection for those communications is waived by Natera's multiple misrepresentations to the Court regarding Dr. Hochster. *See, e.g.*, *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 392 F. Supp. 3d 179, 186 (D. Mass. 2019) ("At a minimum, the submission of those

falsehoods effectively waived whatever protections might otherwise apply."). And, in any event, Guardant has a "substantial need," under Federal Rule of Civil Procedure 26(b)(3)(A)(ii), because those communications are relevant to the existence of material misrepresentations by Natera to the Court, Guardant's pending motion for sanctions, and ultimately Dr. Hochster's bias and credibility.

The need for *in camera* review of this small set of documents is further necessitated by Dr. Hochster's recent letter to the Court. Dkt. 624. In that letter — signed 5 months after Guardant's subpoena for Dr. Hochster's emails, 4 months after Natera and Dr. Hochster represented to Guardant and Judge Kim that he had no emails about the COBRA study, and 20 days after this Court ordered a forensic examination of Dr. Hochster's email files — Dr. Hochster admits that the emails produced by Rutgers were sitting right in his email box all along. Dr. Hochster's letter thus corroborates many aspects of Guardant's pending motion for sanctions. The letter also indicates that Natera made further misrepresentations to the Court in opposing Guardant's motion, when Natera repeatedly told the Court that Dr. Hochster did not have the emails produced by Rutgers because he routinely deleted his emails and Rutgers must have had special access to his emails at the "server level." Those representations by Natera now appear to have been pure fiction.

Guardant will address the circumstances of Dr. Hochster's email search and production when the forensic examination is complete in the supplemental brief ordered by the Court. The present motion seeks only the Court's *in camera* review of a small number of documents from September 2023 that may assist in illuminating some of the unanswered questions.[1]

**II.  BACKGROUND**

Guardant's pending motion for sanctions focuses on two related categories of misrepresentations by Natera to the Court. Dkt. 578. First, the motion explains how Natera and Dr. Hochster misrepresented to the Court that Dr. Hochster had no emails about the COBRA study, that "he did not need to do a comprehensive search to know he never emailed about COBRA," and that he searched his email files multiple times to confirm he had no emails about the COBRA study.

---

[1] When the forensic examination of Dr. Hochster's email files is complete, Guardant may seek *in camera* review of additional documents on Natera's log, if that is necessary to understand further the precise nature of Natera's misrepresentations regarding Dr. Hochster emails.

- 3 -

*Id*. at 3. The Rutgers production shows that Dr. Hochster in fact had extensive, substantive email communications about the COBRA study with the lead COBRA investigators, NRG, and Natera's Chief Medical Officer — most of which occurred in the first half of September 2023. *Id*. at 4-8.

In opposing Guardant's motion, Natera nevertheless represented to the Court that Dr. Hochster did not have access to his emails produced by Rutgers because Dr. Hochster "deleted them in the normal course when he was under no duty to preserve," Dkt. 582 at 23, and Rutgers had access to his emails "at the server level," which Dr. Hochster purportedly could not access, *id*. at 22. Even after the Rutgers production and Guardant's motion for sanctions, Natera repeatedly assured the Court that Dr. Hochster did not have access to any of his responsive emails. Ex. A, Tr. from July 26, 2024 Hearing, at 6 ("He searched his computer for those emails. They did not come up."); *id*. at 7 ("[H]is email box has limited space in it, and so he reviews his emails in the morning and typically deletes them as he goes."); *id*. at 6 ("The Court: So you believe that he ran the search but all responsive documents had been deleted?" Natera's counsel: "Yes, your honor.").[2]

At the initial hearing on Guardant's motion for sanctions, the Court ordered a forensic examination of Dr. Hochster's email files. Minute Entry, Dkt. 597, at 2 (July 26, 2024). On August 15, as the parties were finalizing the protocol for that forensic examination and the examiner was getting ready for a full forensic collection of Dr. Hochster's files, Natera filed a letter from Dr. Hochster admitting that his emails that Rutgers produced were available to him all along. Dkt. 624.[3] This revelation — as the forensic examiner was proverbially knocking on Dr. Hochster's door — suggests that Natera's representations in opposing Guardant's motion for sanctions that Dr. Hochster deleted in the ordinary course his COBRA-related emails and Rutgers had some level of special access to those emails were baseless and completely fabricated. Guardant intends to address these issues further when the forensic examination is complete.

---

[2] "Ex. __" refers to the exhibits attached to the accompanying declaration of Chase Scolnick.

[3] While Dr. Hochster's letter is remarkably vague, Natera's counsel sent a contemporaneous email to Guardant's counsel stating: "We recently learned that Dr. Hochster may have access on his computer to emails previously produced by Rutgers, including communications with NRG leadership." Ex. B.

The second category of Natera's misrepresentations addressed in Guardant's pending motion for sanctions relates to how and when Natera and Dr. Hochster learned of the COBRA study's results.  Dkt. 578 at 8-9.  In opposing Guardant's motion to strike Dr. Hochster's supplemental report as untimely, Natera told the Court that Dr. Hochster had no "inside information" about the COBRA results until January 16, 2024: "So I'm certainly not aware of any sort of early access that Dr. Hochster may have had."  Ex. C, Tr. from Feb. 22, 2024 Remote Proceedings, at 14-15.  The Court relied on that representation in denying Guardant's motion to strike.  Order on Guardant's Motions to Strike, Dkt. 493, at 5-6 (Mar. 6, 2024).  The Rutgers production, however, showed that Dr. Hochster solicited, obtained, and then concealed "inside information" and "early access" to the COBRA results.  Dkt. 578 at 8-9.  He obtained from a colleague (one of the lead COBRA investigators) a draft abstract summarizing the COBRA study's interim analysis on September 13, 2023, even though the draft was "embargoed" and the lead investigators were prohibited from "sharing th[e] abstract or discussing results reported . . . with anyone outside of the coauthors . . . ."  *Id.* at 7 (quoting RUTGERS_000366 at -366).

In opposing Guardant's motion for sanctions, Natera had to concede that Dr. Hochster did have "early access" to the COBRA results.  Yet, Natera insisted to the Court that Natera and its counsel did not know about Dr. Hochster's early access to the results until the Rutgers production.  Dkt. 582, at 2, 13, & 19-20.  For example, Natera represented: "Certainly, Natera and its counsel did not know Dr. Hochster received a draft, until receiving Rutgers' document production in response to Guardant's subpoena."  *Id.* at 19; *id.* at 13 (The "abstract was never shared with Natera."); *id.* at 20 (claiming statements by Natera's counsel at the 2/22/2024 hearing were perfectly accurate).  This Court recognized how Natera's late disclosure of Dr. Hochster's supplemental report greatly disrupted the course of this litigation.  Ex. A, Tr. from July 26, 2024 Hearing, at 36 ("I don't have to get into whether that was a falsehood or not, but that was less than forthright and below the standard that I would expect from counsel, because then it caused everybody to scramble.").  And, the Court ordered that Natera produce a log of communications between Natera's counsel and Dr. Hochster.  Dkt. 597 at 2.

1   Natera produced that log on August 12, 2024.  Ex. D.  That log shows ▮▮▮▮▮
2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 1-2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## III.  STATEMENT OF THE ISSUES TO BE DECIDED

Whether the Court should compel Natera to produce the communications between Natera's counsel and Dr. Hochster from September 2023 for *in camera* review to determine whether any of those communications are relevant to Guardant's pending motion for sanctions and whether any of those communications should be produced to Guardant because any claim by Natera of work-product protection has been waived or there is otherwise a "substantial need" under Federal Rule of Civil Procedure 26(b)(3)(A)(ii).

## IV.  THE COURT SHOULD ORDER NATERA TO PRODUCE FOR *IN CAMERA* REVIEW THE COMMUNICATIONS BETWEEN NATERA'S COUNSEL AND DR. HOCHSTER FROM SEPTEMBER 2023

Federal Rule of Civil Procedure 26 permits discovery of nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case.  While communications with a testifying expert witness are extended a certain level of work-product protection by Rule 26(b)(4)(C), that protection can be waived.  Indeed, the "submission of falsehoods" by an expert "effectively waive[s] whatever protections might otherwise apply." *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 392 F. Supp. 3d 179, 186 (D. Mass. 2019).  Even if work product is not waived, an opposing party may obtain through discovery communications with a testifying expert when "it has a substantial need for the materials . . . and cannot, without undue hardship, obtain their

1  substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also id*. advisory
2  committee's note to 2010 Amendment.

3  Here, Natera's misrepresentations regarding when and how Dr. Hochster first obtained the
4  COBRA study's results, along with Natera's misrepresentations regarding Dr. Hochster's email
5  files, have waived any claim of work-production protection for communications between Natera's
6  counsel and Dr. Hochster. The decision in *Zofran* is instructive. There, the plaintiff retained a
7  consulting expert who conducted a clinical study regarding birth defects purportedly caused by the
8  defendant's product. The consulting expert submitted an affidavit containing numerous falsehoods
9  about her relationship with plaintiffs' counsel. The defendant moved to compel production of
10 certain documents concerning that relationship. Notwithstanding the attorney-client privilege and
11 work-product doctrine, the district court ordered disclosure. *Zofran*, 392 F. Supp. 3d at 186-87.
12 The district court relied on the fact that "the consulting expert made false statements to the Court
13 as to the nature of her relationship with plaintiffs' counsel" in finding that any work-product
14 protection had been waived:

> At a minimum, the submission of those falsehoods effectively waived whatever protections might otherwise apply. The need to discover the truth and correct the record surely outweighs any countervailing policy in favor of secrecy, particularly where plaintiffs' testifying experts have relied heavily on Dr. Zambelli-Weiner's study as a basis for their causation opinions. In order to effectively cross-examine plaintiffs' experts about those opinions at trial, GSK is entitled to review the documents. At a minimum, the documents shed additional light on the nature of the relationship between Dr. Zambelli-Weiner and plaintiffs' counsel, and go directly to the credibility of Dr. Zambelli-Weiner and the reliability of her study results.

21 *Id.* at 186.

22 As in *Zofran*, Natera and its expert Dr. Hochster have misrepresented numerous crucial
23 facts to the Court. "The need to discover the truth and correct the record," *id*., regarding Natera's
24 misrepresentations to the Court about Dr. Hochster certainly outweighs any policy in favor of
25 protecting the communications by Natera's counsel with Dr. Hochster during one critical month,
26 which was well before Dr. Hochster even began drafting his supplemental report.

27 Furthermore, even if Natera had not waived work-product protection, the communications
28 between Natera's counsel and Dr. Hochster from September 2023 should be produced under the

- 7 -

1  "substantial need" standard of Rule 26(b)(3)(A)(ii).  A party satisfies this "substantial need"
2  standard by "demonstrat[ing] that the materials are relevant to the case, the materials have a unique
3  value apart from those already in the movant's possession, and 'special circumstances' excuse the
4  movant's failure to obtain the requested materials itself."  *FTC v. Boehringer Ingelheim Pharm.,*
5  *Inc.,* 778 F.3d 142, 155 (D.C. Cir. 2015).

6  The September 2023 communications are relevant to the Court's determination of
7  Guardant's pending sanctions motion.  Those communications are relevant to Natera's
8  misrepresentation that Dr. Hochster had no emails and no "early access" to the COBRA results.
9  Natera's misrepresentations were serious and upended this case and the Court's calendar.  Ex. A,
10  Tr. of July 26, 2024 Hearing, at 37 ("But all this was breached at the 11th hour causing me to
11  disrupt my schedule, my calendar schedule, and having to rule on things on a moment's notice.
12  And as you can tell, I'm not pleased with that.").  Natera denies responsibility for its
13  misrepresentations by claiming that it and its counsel were unaware of Dr. Hochster's emails and
14  his "early access" to the COBRA study's results.  ███████████████████████
15  ████████████████████████████████████████████████
16  ███████████████████████████████████  The Court should review the
17  content of the September 2023 communication to determine whether Natera knowingly
18  misrepresented when it became aware of Dr. Hochster's emails generally and his "early access" to
19  the results specifically.

20  If this Court finds after *in camera* review that Dr. Hochster shared ***any*** of the embargoed
21  information with Natera's counsel, then those communications should be produced to Guardant.
22  Natera will call Dr. Hochster as an expert witness against Guardant.  The jury must determine Dr.
23  Hochster's credibility and assess his bias.  *See* Ninth Circuit Model Jury Instruction 1.14
24  (Credibility of Witnesses); Dkt. 507 at 16 (Stipulation Instruction No. 9).  When considering his
25  testimony, the jury should know Dr. Hochster obtained the draft abstract under false pretenses —
26  *i.e.*, by not disclosing that he was a paid consultant for Natera and that he would share the
27  embargoed information from the draft abstract with Natera's counsel for the purposes of ongoing
28  litigation.  Evidence that Dr. Hochster disregarded the confidential nature of the draft abstract and

1  shared *any* of the embargoed data with Natera's counsel would underscore his bias towards Natera
2  and his dishonesty.  This evidence also would refute Natera's claim that Dr. Hochster is a
3  disinterested oncologist. Ex. A, Tr. of July 26, 2024 Hearing, at 18 ("Dr. Hochster is not biased.").

4  In addition, ████████████████████████████
5  ████████████ when Dr. Hochster was emailing prolifically the COBRA lead investigators, NRG,
6  and Natera about the COBRA study.  Dkt. 578 at 6-8.  If Dr. Hochster's communications with
7  Natera's counsel revealed that he was simultaneously discussing the COBRA study with anyone
8  else, then that would clearly be relevant in assessing Natera's misrepresentations to Judge Kim that
9  Dr. Hochster had no emails about the COBRA study and counsel's representations that they
10 believed Dr. Hochster's misrepresentations.

11 Moreover, these circumstances are exceptional.  Natera has made numerous
12 misrepresentations to the Court and Guardant about Dr. Hochster and the COBRA study.  Natera
13 misrepresented to the Court when Dr. Hochster obtained the COBRA results in order to defeat
14 Guardant's motion to strike.  Dkt. 578 at 8-9.  Natera then misrepresented to Judge Kim that Dr.
15 Hochster "never emailed about COBRA. . . ." *Id*. at 10 (quoting Joint Discovery Letter, Dkt. 510,
16 at 7).  Natera further misrepresented that Dr. Hochster performed multiple searches for responsive
17 documents. *Id.* at 10-11.  Dr. Hochster's recent letter now shows that he was less than forthright at
18 his deposition in testifying about the email search that he purportedly conducted.  Dr. Hochster's
19 letter also shows that Natera likely made further misrepresentations to this Court in opposing
20 Guardant's motion for sanctions by claiming the emails produced by Rutgers were unavailable to
21 Dr. Hochster and only accessible to Rutgers' IT staff at the "server level." *See* Dkt. 582 at 22-23.
22 Natera repeated those misrepresentations to this Court at the parties' hearing on Guardant's pending
23 motion for sanctions.  Ex. A, Tr. of July 26, 2024 Hearing, at 6 ("[H]e searched his computer for
24 those emails.  They did not come up.").  This Court and Guardant are entitled to learn the extent of
25 Natera's misrepresentations to fashion an appropriate sanction.

26 Finally, the limited production sought in this motion will not unfairly prejudice Natera.
27 Natera put these communications at issue with its repeated misrepresentations regarding Dr.
28 Hochster.  The September 2023 emails were exchanged months before Dr. Hochster's report was

prepared and thus are profoundly unlikely to contain any opinion work product that may be entitled to higher protections. *See In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Litig.*, 116 F.R.D. 297, 302 (C.D. Cal. 1987).

## V. CONCLUSION

Natera's misrepresentations regarding Dr. Hochster already have derailed these proceedings and taken up an enormous amount of counsel's time and resources. At nearly every turn, Natera has thrown up new roadblocks and what appear to be additional misrepresentations. This motion seeks the Court's *in camera* review of a narrow set of communications between Natera's counsel and Dr. Hochster from September 2023. Those communications are likely to be relevant to key issues regarding the nature and extent of Natera's misrepresentations that are at issue with Guardant's pending motion for sanctions.

Dated: August 26, 2024     **KELLER/ANDERLE LLP**

By: */s/ Chase Scolnick*
       **Chase Scolnick**

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.