| | |
|---|---|
| **Saul Perloff (157092)**<br>saul.perloff@aoshearman.com<br>**Katharyn Grant** *(pro hac vice)*<br>kathy.grant@aoshearman.com<br>**Andre Hanson** *(pro hac vice)*<br>andre.hanson@aoshearman.com<br>**Olin "Trey" Hebert** *(pro hac vice)*<br>trey.hebert@aoshearman.com<br>**ALLEN OVERY SHEARMAN STERLING US LLP**<br>300 W. Sixth Street, 22nd Floor<br>Austin, Texas 78701<br>Telephone (512) 647-1900<br><br>**Christopher LaVigne** *(pro hac vice)*<br>christopher.lavigne@sherman.com<br>**ALLEN OVERY SHEARMAN STERLING US LLP**<br>599 Lexington Ave<br>New York, NY 10022<br>Telephone (212) 848-4000<br><br>Attorneys for Plaintiff/Counterclaim-Defendant<br>GUARDANT HEALTH, INC. | **Jennifer L. Keller (84412)**<br>jkeller@kelleranderle.com<br>**Chase Scolnick (227631)**<br>cscolnick@kelleranderle.com<br>**KELLER/ANDERLE LLP**<br>18300 Von Karman Ave., Suite 930<br>Irvine, CA 92612<br>Telephone (949) 476-0900 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>    Plaintiff and<br>    Counterclaim-Defendant,<br><br>  vs.<br><br>NATERA, INC.<br><br>    Defendant and<br>    Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**GUARDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS (DKT. 578)**<br><br>Pretrial Hearing Date: October 15, 2024<br>Trial Date: November 12, 2024 |

I. **Introduction**

The events since the July 26, 2024 hearing on Guardant's motion for sanctions against Natera firmly establish the accuracy of everything in Guardant's motion. *First*, the documents produced by Natera just today — pursuant to Judge Kim's recommendation following *in camera* review — show that Dr. Hochster shared with Natera's counsel on September 15, 2023, the COBRA Study results from the confidential, embargoed draft that Dr. Hochster solicited and obtained from a colleague a few days earlier. Natera's representation to the Court on February 22, 2024 that Dr. Hochster had no "inside information" or "early access" to those results was ***knowingly false***. Moreover, the repeated statements in Natera's opposition to Guardant's motion for sanctions that Natera and its counsel "certainly" did not know Dr. Hochster had obtained early access to the COBRA results in September 2023 were also ***knowingly false***.

*Second*, on August 15, 2024, Dr. Hochster's submitted a "*mea culpa*" letter to the Court and the same day Natera's counsel emailed Guardant's counsel confessing that they "recently learned that Dr. Hochster may have access on his computer to emails previously produced by Rutgers, including communications with NRG leadership." *See infra* p. 6. Those statements demonstrate that there was never any basis for Natera and Dr. Hochster's false statements to Judge Kim that he had no emails about the COBRA Study. Those statements also show that Natera's averments in opposition to Guardant's motion for sanctions — *e.g.*, Dr. Hochster deleted emails in the ordinary course, Rutgers must have had special access to his emails "at the server level," and Dr. Hochster had no memory of any of his many emails about the COBRA Study — were entirely false and baseless. That much is now clear, even though the court-ordered forensic examination of Dr. Hochster's computers remains pending.

Serious misrepresentations amounting to "repeated behavior" that Natera "will say anything at any time in order to prevail in this litigation" warrant meaningful and severe sanctions. *See Anheuser-Busch, Inc. v. Nat. Beverage Distr.*, 69 F.3d 337, 348 (9th Cir. 1995). The serious prejudice to Guardant at this point is evident. Through intentional false statements, Natera convinced the Court to allow evidence of the COBRA Study and then concealed from Guardant relevant evidence from Dr. Hochster, Natera's chief proponent of the COBRA Study. Guardant

has been forced to respond to a late-noticed clinical study that Natera knew about months earlier and Guardant has been impeded throughout discovery regarding that study because of Natera's continuing false statements about Dr. Hochster's emails and the COBRA Study. While Guardant and the forensic investigator are working with all due speed and diligence, the fact is that Guardant still does not have all of Dr. Hochster's emails about the COBRA Study. The prejudice to Guardant continues to multiply. This coming week, for example, Guardant must take the deposition of Dr. Van Morris (the principal COBRA investigator) without the benefit of full discovery from Dr. Hochster.

As the appropriate remedy for Natera's false statements, Guardant's motion seeks exclusion of the COBRA Study, exclusion of Dr. Hochster, and monetary sanctions. However, the recent events revealing how Natera's false statements were made intentionally, in bad faith, and persistently over the course of more than 6 months, combined with the continuing prejudice to Guardant, warrant the further sanction of dismissal of Natera's counterclaims against Guardant.

II. **Update on Natera's Continuing False Statements to the Court**

**A. Dr. Hochster's September 2023 correspondence with Natera's counsel confirms Natera intentionally lied to this Court.**

Natera misrepresented to the Court when and how Dr. Hochster learned of the COBRA Study's results. Dkt. 578 at 8-9. Natera told the Court that Dr. Hochster had no "inside information" about the COBRA results until January 16, 2024: "So I'm certainly not aware of any sort of early access that Dr. Hochster may have had." *Id*. at 8 (quoting Tr. from Feb. 22, 2024 Remote Proceedings, at 14-15). The Court relied on that representation in denying Guardant's motion to strike. Dkt. 493 at 5-6. Natera's representation was false. The Rutgers production shows that Dr. Hochster solicited and obtained "inside information" and "early access" to the COBRA results from a colleague, Dr. Patrick Boland (one of the lead COBRA investigators), even though the draft was "embargoed" and the lead investigators were prohibited from "sharing th[e] abstract or discussing results reported . . . with anyone outside of the coauthors . . . ." *Id*. at 7 (quoting RUTGERS_000366 at -366).

In opposing Guardant's motion for sanctions, Natera nevertheless insisted that Natera and

DOCUMENT PREPARED ON RECYCLED PAPER

1  its counsel did not know about Dr. Hochster's early access to the COBRA results until the Rutgers
2  production. Dkt. 582, at 2, 13, & 19-20. Natera stated: "Certainly, Natera and its counsel did not
3  know Dr. Hochster received a draft, until receiving Rutgers' document production in response to
4  Guardant's subpoena." *Id*. at 19; *id*. at 13 ("Certainly, that abstract was never shared with Natera.
5  Guardant's implication to the contrary is grossly misleading."); *id*. at 20 (claiming statements by
6  Natera's counsel at the 2/22/2024 hearing about "when and how Dr. Hochster first learned of
7  COBRA's results" were perfectly accurate).

8      At the initial hearing on Guardant's motion for sanctions, the Court recognized how
9  Natera's late disclosure of Dr. Hochster's supplemental report greatly disrupted the course of this
10 litigation. Ex. A, Tr. from July 26, 2024 Hearing, at 36. The Court also ordered Natera to produce
11 a log of communications between Natera's counsel and Dr. Hochster. Following *in camera* review
12 of the September 2023 documents on Natera's log, ███████████████
13 ████████████████████████████████████████
14 ████████████████████████████████████████
15 ████████████████████████████████████████
16 ████████████████████████████████████████
17 ███████████████████████ Dkt. 675 at 4.

18     Judge Kim's assessment is absolutely correct. Those documents — produced by Natera
19 just today — prove Natera's counsel knowingly lied to the Court at the February 22, 2024 hearing
20 and again more recently in opposing Guardant's motion for sanctions. ███████████
21 ████████████████████████████████████████
22 ████████████████████████████████████████
23 ████████████████ Ex. B, NATERA_501902. ████████████
24 ████████████████████████ *Compare* Ex. C, NATERA_501912, *with*
25 Dkt. 578-21, RUTGERS_000366. █████████████████████████
26 ████████████████████████████████████████
27 ████████████████ Ex. C, NATERA_501912. █████████████
28 ████████████████████████████████████████



*Id.* Moreover, this recitation is drawn directly from the COBRA draft abstract that Dr. Hochster obtained from Dr. Boland. Dkt. 578-21, RUTGERS_000366.

Natera's representation to this Court that Dr. Hochster lacked "inside information" was knowingly false. Natera's representation to this Court in its opposition to Guardant's motion for sanctions that: "Certainly, that abstract was never shared with Natera," Dkt. 582 at 13, was also knowingly false. It is now absolutely certain that Natera's counsel knew that its representations were false when they were made — and rather than correcting the record, Natera's counsel engaged in more misrepresentations that required Guardant to endure further motion practice associated with the *in camera* review.

**B. The record now shows there never was any basis for Natera and Dr. Hochster's false statements that he had no emails about the COBRA Study.**

Natera and Dr. Hochster lied to Guardant and to Judge Kim that Dr. Hochster had no emails about the COBRA Study. Dkt. 578 at 2-4. For example, in oral argument before Judge Kim, Natera's counsel stated:

> In fact, he did a — he did an exact search that Guardant asked him to do. He searched his inbox, he searched his emails for the search terms that Guardant asked in this letter brief, and the result is there's just — there's just nothing responsive there. . . . ***But at this point, there's — he's not withholding anything, there's just certainly nothing to compel.***

*Id.* at 3 (quoting Tr. of Proceedings Before Judge Kim on April 22, 2024, at 6-7). Judge Kim relied on Natera's representations to deny Guardant's motion to compel. *Id.* at 3-4.

The subsequent production by Rutgers — although limited in time and to only certain email recipients — showed that Natera's representations were outrageously false. *Id.* at 4-8. The limited

production by Rutgers contained over 70 emails that Dr. Hochster had about the COBRA Study. Those included a significant number of emails by Dr. Hochster with the principal COBRA investigator (Dr. Morris), the lead COBRA investigators and members of NRG leadership (Dr. George and Dr. Wolmark), and with Natera's own Chief Medical Officer (Dr. Minetta Liu).

Despite the Rutgers production, Natera made no effort to correct its false statements to Judge Kim or to remedy the massive deficiencies in its production from Dr. Hochster. Instead, Natera and Dr. Hochster offered a series of baseless excuses. During his deposition, Dr. Hochster testified ██████████████████████████████████ Ex. D, Hochster Dep. at 139:23-140:3, ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

*Id.* at 150:8-13. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*Id.* at 151:2-16. Beyond this, Dr. Hochster claimed to have simply forgotten the scores of emails he had sent or received and then deleted. *Id.* at 145:17-146:10.

Natera's counsel, however, knew that Dr. Hochster received the embargoed COBRA results by September 15, 2023. Nevertheless, Natera's brief in opposition to Guardant's motion failed to disclose that fact, and instead falsely claimed that Rutgers was successful in finding the

emails that Dr. Hochster denied existed because it "had access to email at the server level." Dkt. 582 at 10, n.5; *id.* at 11 ("Having access to emails at the server level, Rutgers was able to locate emails that Dr. Hochster did not find when he searched his computer."). Such access was purportedly necessary because, as Natera claimed, Dr. Hochster "has limited space in his email cache, and so he deletes emails as a matter of course." *Id.* at 11.

Natera continued these fabricated stories at oral argument. Natera vouched for Dr. Hochster's purportedly poor memory. Ex. A, Tr. from July 26, 2024 Hearing at 4:15-17 (argument of Natera counsel) ("So the simple explanation, Your Honor, Dr. Hochster testified this in his deposition, is that he did not remember having these emails."); *see also id.* at 5:1-2 (claiming to "honestly believe that"). Natera then re-affirmed its insistence that Dr. Hochster had deleted the emails Rutgers subsequently produced. *Id.* at 6:3-4 ("he deletes his emails on an ongoing basis"). Natera's counsel went into details about Dr. Hochster's pattern and practice of regularly deleting emails:

> THE COURT: What do you know about the deletion policy? Is there an automatic process that these are on – are they on a server, are they on a company server or some company server, or is it all on his personal computer? Does he have a purging – a periodic purging or something or does he just ad hoc delete things as his computer gets filled?
>
> MR. LANDES: It's the latter, Your Honor. That's what he testified at his deposition, is that his email box has limited space in it, and so he reviews his emails in the morning and typically deletes them as he goes.

*Id.* at 7:8-17. Natera's counsel again vouched for Dr. Hochster's veracity. *Id.* at 8:6-9 ("I spoke with him numerous times. I've seen his deposition testimony, and I believe it to be the case.")

Only after the Court ordered a forensic examination of Dr. Hochster's email files, Minute Entry, Dkt. 597, at 2 (July 26, 2024), and as the parties were finalizing the protocol for that forensic examination, Natera's counsel emailed Guardant's counsel (but not the Court) to explain that, remarkably, Dr. Hochster now *could* find his emails:

> We write regarding discovery into Dr. Hochster's COBRA documents. We recently learned that Dr. Hochster may have access on his computer to emails previously produced by Rutgers, including communications with NRG leadership. With the forensic examination set to begin shortly, we wanted to ask if you would like us to take steps now to collect and produce these materials or hold off on doing so while the examination is undertaken. Please let us know.

DOCUMENT PREPARED ON RECYCLED PAPER

Dkt. 630-3 (Aug. 15, 2024 email from R. Landes). The same day, Dr. Hochster submitted to the Court his remarkably vague "*mea culpa*" letter. Dkt. 624. Neither Natera nor Dr. Hochster provide any explanation to justify the repeated false statements to the Court. These revelations — as the forensic examiner was proverbially knocking on Dr. Hochster's door — demonstrate that Natera's representations in opposing Guardant's motion for sanctions were baseless and completely fabricated.

### C. Status of forensic examination of Dr. Hochster's computers

On July 26, 2024, the Court ordered Natera "to facilitate a fulsome and complete production of emails responsive to Guardant's subpoena from Dr. Hochster," and directed the Parties to retain an independent forensic expert to "examine and image Dr. Hochster's computer to determine what, if any responsive emails, have been preserved and/or deleted, and what recovery is possible." Dkt. 597 at 1. By August 5, 2024, the Parties had agreed to retain Julian Ackert, with IDS (iDiscovery Solutions) to serve as the investigator. Guardant, and subsequently Mr. Ackert, communicated with Rutgers' counsel, Stephen Nolan, about collecting Dr. Hochster's ESI and facilitating Mr. Ackert's forensic examination.

Notwithstanding Guardant's and Mr. Ackert's efforts, the forensic investigation continues to take an exceedingly long time. Part of this is due to concerns raised by Rutgers about confidential patient information on Dr. Hochster's computers. Rutgers has insisted its own IT team perform much of the initial work to collect and then to review Dr. Hochster's documents. Natera also contributed to the delay in Mr. Ackert's investigation. Natera withheld from Guardant and Mr. Ackert until late August that Dr. Hochster has both a desktop and a laptop computer, and that both devices are owned by Rutgers. Natera also withheld until the very last minute that Dr. Hochster was leaving the country on September 4 for two weeks, even though the parties and Mr. Ackert had been discussing when Mr. Ackert and his team could access Dr. Hochster's computers.

In sum, despite Guardant's best efforts, the forensic examination of Dr. Hochster's emails remains pending. Thus, at this point, Guardant still does not know what emails Dr. Hochster had about the COBRA Study beyond the limited set of those emails produced by Rutgers.

### III. The Court Should Impose Meaningful Sanctions Against Natera and Dr. Hochster for Their Continuous Course of Knowingly False Statements.

This Court has inherent and broad authority to sanction Natera and Dr. Hochster for their misrepresentations to this Court. Dkt. 578 at 9 (quoting *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021)). Serious misrepresentations amounting to "repeated behavior" that a party "will say anything at any time in order to prevail in this litigation" warrant dismissal of a claim. *Anheuser-Busch*, 69 F.3d 348. In *Anheuser-Busch*, the Ninth Circuit affirmed dismissal of the defendant's counterclaim because the defendant had "concealed" relevant documents and "continuously lied about their existence." *Id*. Here, Natera's conduct warrants the sanction of dismissal of its counter-claims against Guardant. Natera has continuously lied about when Dr. Hochster first learned of the COBRA results and Natera then lied in attempt to conceal relevant documents from Dr. Hochster. "It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Id*. at 348 (quoting *Wyle v. R.J. Reynolds Indus.*, 709 F.2d 585, 589 (9th Cir. 1983)).

And here, as in *Anheuser-Busch*, Natera's false statements and efforts to conceal Dr. Hochster's documents have impaired Guardant's ability to go to trial. *Id*. at 354. Natera's false statements convinced the Court to allow evidence of a late-noticed clinical study, long after discovery closed. Although the Court's decision was premised on Guardant being afforded ample time to conduct discovery about COBRA, Natera's false statements about Dr. Hochster's emails impeded Guardant's discovery efforts from the beginning. Now, barely a month from trial, Guardant still does not have all of Dr. Hochster's COBRA-related emails. Guardant furthermore must go ahead this coming week with the deposition of Dr. Morris (the principal COBRA investigator) without the benefit of Dr. Hochster's emails, which are particularly relevant given the numerous discussions between Dr. Hochster and Dr. Morris about the COBRA Study.

This Court also has the inherent power to exclude evidence as a sanction for Natera's course of false statements. *See* Dkt. 578 at 14. Guardant's motion seeks the exclusion of Dr.

DOCUMENT PREPARED ON RECYCLED PAPER

1  Hochster and any other evidence from Natera regarding the COBRA Study. *Id*. at 14-16. The
2  events since the July 26, 2024 hearing showing that Natera's false statements were made
3  knowingly, in bad faith, and repeatedly over the course of many months corroborate the
4  appropriateness of, at a minimum, excluding Dr. Hochster and any other evidence about the
5  COBRA Study. Exclusion of evidence is a standard remedy under Rule 37 for far less egregious
6  abuses than Natera's course of repeated false statements. *See, e.g.*, Rule 37(b)(2)(A)(ii) (listing
7  permissible sanctions as "prohibiting the disobedient party from supporting or opposing
8  designated claims or defenses, or from introducing designated matters in evidence"). And courts
9  frequently have excluded expert witnesses as a sanction for concealing relevant documents or
10 otherwise making misrepresentations to the Court. *See, e.g.*, *Meyer v. Gwinnett Cnty.*, No. 1:14-
11 CV-00066-ELR, 2021 WL 3716658, at *6 (N.D. Ga. July 26, 2021) ("As explained earlier, Dr.
12 Aldridge was excluded as a sanction for Plaintiff's untimely disclosure of documents in Dr.
13 Aldridge's possession."), aff'd 2022 WL 2439590 (11th Cir. July 5, 2022); *Demboske v. Autry*
14 *Greer & Sons*, No. 3:23-cv-24717, 2024 WL 3551031, at *8 (N.D. Fla. Jul. 15, 2024) (striking
15 expert opinion due to counsel's misrepresentations).

16       Natera's misconduct certainly warrants exclusion of Dr. Hochster and any other evidence
17 of the COBRA Study. Natera's misconduct was calculated, deliberate, and highly prejudicial to
18 Guardant. Natera made a strategic decision to delay injecting COBRA into this case, significantly
19 disrupting and delaying trial. The timing of Dr. Hochster's COBRA opinion was material to this
20 Court's consideration of Guardant's motion to strike, and so Natera misrepresented that Dr.
21 Hochster only learned of the COBRA results in January 2024. But that was false. Dr. Hochster
22 knew the results on September 13, 2023. And Natera knew that Dr. Hochster had those results by
23 September 15, 2023. Natera and Dr. Hochster then hid that fact, along with all of Dr. Hochster's
24 other COBRA-related emails, by falsely claiming he never emailed about COBRA. When Rutgers
25 produced a large volume of Dr. Hochster's emails about COBRA, Natera and Dr. Hochster did not
26 attempt to correct the record and the deficiencies in their production. Instead, they continued with
27 their misrepresentations, including in response to Guardant's motion for sanctions and in direct
28 response to questions from this Court.

An appropriate sanction for Natera's egregious misconduct must leave it "worse off than it would have been if it had disclosed" the truth about when Dr. Hochster first learned of the COBRA Study and timely produced Dr. Hochster's emails about the COBRA Study months ago. *See Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 201 (E.D. Va. 2016). There is no sign that Natera's counsel have learned any lesson, or that its deceptive conduct will not continue through trial. Natera remarkably never tried to correct the record with respect to any of its false statements at issue since February 22, 2024. Instead, Natera continued and expanded those false statements in opposing Guardant's motion for sanctions. Guardant had to seek *in camera* review to learn the truth about when Natera and its counsel learned of the COBRA results. And only when confronted with an imminent forensic examination did Dr. Hochster and Natera finally confess that he had access to the COBRA-related emails all along.

## IV. Conclusion

The integrity of our judicial system demands that parties act in good faith and adhere to the principles of honesty and transparency in all dealings with the court. When a party repeatedly lies to the court, particularly with the intent to conceal material evidence, the sanction of dismissal or, at the very least, exclusion is both warranted and necessary to preserve the fairness and integrity of the proceedings.

Accordingly, this Court should impose meaningful sanctions on Natera and Dr. Hochster. Dismissal of Natera's counterclaims is clearly justified given Natera's persistent false statements, concealment of relevant evidence, and failure to correct the record. At a minimum, the Court should exclude Dr. Hochster, exclude any other evidence from Natera regarding the COBRA Study, and impose meaningful monetary sanctions to compensate Guardant for the substantial and continuing attorneys' fees caused by Natera's false statements.

Dated: September 27, 2024         **KELLER/ANDERLE LLP**

By: */s/ Chase Scolnick*
**Chase Scolnick**

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on September 27, 2024, to the counsel of record via email to qe-natera-guardant@quinnemanuel.com.

**Counsel for Defendants:**

Kevin P.B. Johnson

Victoria F. Maroulis

Andrew J. Bramhall

Anne S. Toker

Valerie Lozano

Andrew Naravage

Ryan Landes

Elle Wang

Margaret Shyr

Ryan Hudash

Brian Cannon

Jocelyn Ma

Kaitlin Keohane

Victoria Parker

*/s/ Chase Scolnick*
Chase Scolnick