| | |
|---|---|
| Jennifer L. Keller (84412) | Christopher LaVigne *(pro hac vice)* |
| jkeller@kelleranderle.com | christopher.lavigne@aosherman.com |
| Chase Scolnick (227631) | **ALLEN OVERY SHEARMAN STERLING US LLP** |
| cscolnick@kelleranderle.com | 599 Lexington Ave. |
| Gregory M. Sergi (257415) | New York, NY 10022 |
| gsergi@kelleranderle.com | Telephone   (212) 848-4000 |
| Craig A Harbaugh (194309) | |
| charbaugh@kelleranderle.com | |

**KELLER/ANDERLE LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone   (949) 476-0900

Saul Perloff (157092)
saul.perloff@aoshearman.com
Kathy Grant *(pro hac vice)*
kathy.grant@aoshearman.com
Andre Hanson *(pro hac vice)*
andre.hanson@aoshearman.com
Olin "Trey" Hebert *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, Texas 78701
Telephone     (512) 647-1900

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., | Case No. 3:21-cv-04062-EMC |
| Plaintiff/Counterclaim-Defendant, | **REPLY IN SUPPORT OF GUARDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS (DKT. 578)** |
| vs. | |
| NATERA, INC., | Pretrial Hearing Date: October 15, 2024 |
| Defendant/Counterclaim-Plaintiff. | Trial Date:                November 5, 2024 |
| | **[REDACTED FOR PUBLIC FILING]** |

## I. INTRODUCTION

Natera's supplemental opposition is yet another submission filled with obfuscation, misdirection, and new lies. Nothing in Natera's supplemental opposition justifies its persistent campaign of false statements. Nothing in Natera's supplemental opposition shows the prejudice to Guardant is not substantial and continuing. And nothing in Natera's supplemental opposition suggests that serious, meaningful sanctions are unwarranted.

Instead of addressing the relevant issues — Natera's knowingly false statements to the Court, the prejudice to Guardant, and the appropriate sanctions — Natera spends considerable time on its grossly misleading COBRA narrative, and falsely accusing Guardant of criticizing Dr. Hochster and taking a "secret *ex parte* deposition" that Natera knows was just a meeting with a potential third-party witness. Natera's misdirection shows that it (a) has no justification for its numerous false statements, and (b) will say anything, regardless of the truth, to gain an advantage in this litigation. Such pervasive misconduct merits serious consequences.

## II. NATERA'S INTENTIONAL FALSE STATEMENTS PREJUDICED GUARDANT

The relevant facts are simple and undisputed. Those facts show that Natera knowingly and repeatedly violated three bedrock principles of litigation: (1) the duty of candor to the Court, *see* Cal. R. Prof. Conduct 3.3(a)(1); (2) the duty to correct a false statement to the Court, *id*.; and (3) the obligation "to reasonably and diligently search for and produce responsive documents," *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) (quoting *Smith v. Life Inv. Ins. Co. of Am.*, 2009 WL 2045197 at *5 (W.D. Pa. July 9, 2009)).

Natera knowingly misrepresented that Dr. Hochster had no early access to the COBRA results. Guardant Mot., Dkt. 578, at 8-9. The truth came to light only with the Rutgers production in June 2024. Even after being caught red-handed, Natera never corrected its false statement. Instead, Natera doubled down, asserting *that Natera and its counsel never knew, until the Rutgers production*, that Dr. Hochster had "early access" to the COBRA results. Guardant Supp., Dkt. 692 at 2-3. The *in camera* review showed those statements were also false. *Id*. at 3-4. ███

███████████████████████████████████████████████████████████ *Id*. at 3-4 & Exs. B-C. Mr. Bramhall, █████

1    ▮▮▮▮▮, was present at the February 22 hearing, signed Natera's opposition to Guardant's motion,
2    and was present at the July 26 hearing on that motion.

3    Natera offers no meaningful explanation for its deception.  Natera argues its false statements
4    at the February 22 hearing were just a "single statement from an extensive hearing," Supp. Opp. at
5    3, which is neither true nor an excuse for a material misrepresentation.  Natera never addresses its
6    further lies in opposing Guardant's sanctions motion — that Natera and its counsel "certainly" did
7    not know Dr. Hochster obtained early access to the COBRA results.  *See* Guardant Supp. at 2-3.
8    Natera claims that Dr. Hochster's summary to Natera's counsel on September 15 was "not the
9    ASCO-GI abstract" and "does not refer to the abstract," Supp. Opp. at 1, but Dr. Hochster's
10   summary explained it contained "confidential" information "embargoed until the GI ASCO
11   meeting in January," then replicated the COBRA draft abstract.  Guardant Supp. at 3-4.  To the
12   extent Natera implausibly suggests it did not know Dr. Hochster's summary was based on the study
13   abstract, it is nevertheless clear that Natera knew Dr. Hochster had early access to the confidential
14   COBRA results.

15   When Guardant sought documents from Dr. Hochster, Natera and Dr. Hochster falsely
16   stated a "reasonably diligent search" had been conducted but Dr. Hochster found no responsive
17   emails.  *See* Guardant Mot. at 2-4.  The Rutgers production exposed those claims as lies, but Natera
18   and Dr. Hochster made no attempt to correct the record or to fulfill their obligation to conduct a
19   diligent search.  *See V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366 (D. Nev. 2019) (document
20   subpoena recipient has "affirmative duty to seek that information reasonably available to her");
21   *Reinsdorf*, 296 F.R.D. at 615 ("[T]he discovery process relies upon the good faith and professional
22   obligations of counsel to reasonably and diligently search for and produce responsive documents.").
23   Natera and Dr. Hochster instead denied responsibility with baseless claims that Dr. Hochster had
24   no memory of his emails, that he deleted his emails, and that Rutgers unearthed them only because
25   it had special "server-level" access.  Guardant Supp. at 5-7.  Not until a court-ordered forensic
26   examination was nigh did Dr. Hochster admit they were in his inbox all along.  *Id*. at 6-7.

27   Natera gives the issue of Dr. Hochster's emails scant attention, brushing aside its false
28   statements as a mere failure of sufficient diligence about emails of "marginal relevance."  Supp.

1  Opp. at 8-9. But, it has never been credible that Dr. Hochster forgot about his extensive emails
2  relating to COBRA, or that Natera could believe Dr. Hochster had no COBRA-related emails.
3  Natera knew on September 15, 2023 that Dr. Hochster had obtained confidential COBRA results,
4  and Natera knew he had multiple emails about COBRA *with Natera* — including emails directing
5  Dr. Hochster to "connect the dots" between Natera and NRG's leadership on COBRA. And there
6  can be no question about the relevance of Dr. Hochster's emails. Those emails contradict his own
7  expert opinions and undermine Natera's central argument that COBRA purportedly showed an
8  excessive number of "false positives." *See* Guardant Mot. at 6 (Dr. Hochster's emails question
9  how it could be determined that any result was a "false positive" without decisive recurrence data).[1]

10  Natera's false statements have prejudiced Guardant's ability to respond fully and fairly
11  about COBRA. Guardant had to scramble to respond to Natera's new theories about a study that
12  was never completed, never peer-reviewed or published, and for which there is no recurrence data.
13  Yet, Natera's false statements about Dr. Hochster thwarted Guardant's discovery efforts from the
14  outset. Guardant finally obtained a limited set of Dr. Hochster's emails from Rutgers, but those
15  should have been produced months earlier. "Failing to produce documents as ordered is considered
16  sufficient prejudice" and "[t]he law also presumes prejudice from unreasonable delay" in producing
17  documents. *PPA Prods. Liability Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). And the prejudice
18  here is not just presumptive: the delay meant Guardant did not learn of Dr. Hochster's extensive
19  COBRA communications until the eve of his deposition and ***after the close of COBRA discovery***.

20  Moreover, prejudice exists where a party fails to produce documents that force the other
21  party "to rely on incomplete and spotty evidence." *Anheuser-Busch, Inc. v. Nat'l Bev. Distrs.*, 69
22  F.3d 337, 354 (9th Cir. 1995). Here, with less than a month before trial, ***Guardant still does not***
23  ***have a full production of Dr. Hochster's COBRA emails***. While Natera deflects responsibility for
24  the forensic examination delays, Supp. Opp. at 9-10, it remains that Dr. Hochster and Natera should
25  have produced all these documents, requested back in March, long ago.

---

[1] Natera continues to misrepresent that COBRA showed "excessive false positives." Supp. Opp. at 10. Natera fails to acknowledge ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. E, Morris Dep. at 198:15-22.

### III. NATERA'S FALSE STATEMENTS REQUIRE SERIOUS SANCTIONS

Natera's deliberate and repeated false statements to the Court require serious sanctions. Natera's false statements continued at every juncture. Natera has shown no remorse. And Natera's conduct shows it will continue its dishonesty whenever it might serve its purposes.[2] Monetary sanctions alone are insufficient. Natera will shrug those off as merely another cost of litigation.

In addition to monetary sanctions, the Court should exclude Dr. Hochster. That is necessary to reduce the prejudice to Guardant from the late production by Rutgers and the fact Guardant still does not have a full production of his emails. It is also necessary because Dr. Hochster and Natera violated their obligation to conduct a diligent search and because Dr. Hochster and Natera knowingly made false statements to the Court about his COBRA-related emails. This Court should not permit an expert to testify at trial who shirked his discovery obligations and then concealed relevant documents through false statements to the Court. Courts have excluded experts for far less egregious misconduct. *See* Guardant Supp. at 9. Natera notably provides no argument why this Court should not exclude Dr. Hochster entirely. *See* Supp. Opp. at 10.[3]

The Court also should exclude Natera's other evidence about COBRA. Natera's false statements at the February 22, 2024 hearing were made, knowingly, to convince the Court to deny Guardant's motion to strike. After that falsehood was exposed, Natera continued to lie by claiming it and its counsel did not know about Dr. Hochster's early access. Those false statements warrant exclusion of COBRA. Natera's false statements about Dr. Hochster emails further support exclusion of COBRA because those derailed all Guardant's COBRA-related discovery. Natera argues that this Court previously stated that Guardant would have to show COBRA was tainted by

---

[2] Natera falsely accuses Guardant of a "secret *ex parte* 'deposition'" of Dr. Morris in May 2024. Supp. Opp. at 6-8. ▮▮▮▮▮ *See* Ex. E, Morris Dep. at 185:15 – 186:8 ▮▮▮▮▮ (emphasis added). There is nothing improper about meeting with a potential third-party witness.

[3] Natera misrepresents Guardant's statements about Dr. Hochster at the July 26 hearing. Supp. Opp. at 5. It is clear Dr. Hochster emailed with the COBRA investigators and tried to orchestrate a way for COBRA to move to Signatera. Guardant Mot. at 5-8. Beyond that, Guardant candidly told the Court "the problem is we don't know what we don't know." Dkt. 692-2 at 12:9-10.

1   Dr. Hochster's involvement to exclude all of COBRA.  Supp. Opp. at 10.  But, the Court made
2   those statements *before* it was known that Natera was continuing to make false statements in
3   opposition to Guardant's motion for sanctions — and at that same hearing!  The Court also made
4   those statements before it was known that the forensic examination would not be completed until
5   well into October.  The exclusion of evidence is a common sanction for discovery and other
6   litigation misconduct.  *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021)
7   ("A district court may. . . dismiss a case in its entirety, bar witnesses, exclude other evidence, award
8   attorneys' fees, or assess fines."); Rule 37(b)(2)(A)(ii) (sanctions include "prohibiting the disobedient
9   party from . . . introducing designated matters in evidence").  This Court should not allow Natera to
10  benefit from its false statements by now presenting evidence of COBRA.  *See Samsung Elecs. v.*
11  *Nvidia Corp.*, 314 F.R.D. 190, 201 (E.D. Va. 2016).

12  Guardant also requests dismissal of Natera's counter-claims because Natera's false
13  statements continued in its opposition to Guardant's motion.  Those false statements required (a) a
14  court-ordered forensic examination to learn that Dr. Hochster had access to his COBRA emails all
15  along, and (b) *in camera* review to learn that Natera knew since September 15, 2023 that Dr.
16  Hochster had the initial COBRA results.  The Ninth Circuit's decision in *Anheuser-Busch* is on
17  point.  Guardant Supp. at 8.  Like the plaintiff there, Natera knowingly concealed Dr. Hochster's
18  relevant emails and early access to the COBRA results.  69 F.3d at 349-50.  Like in *Anheuser-*
19  *Busch*, Natera lied to Guardant and the Court about those facts "throughout every phase of this
20  litigation."  *Id*. at 350-52.  As in *Anheuser-Busch*, any lesser sanction would be ineffective because
21  Natera's persistent misconduct shows that it "does not take [its] oath to tell the truth seriously and
22  . . . will say anything at any time in order to prevail in this litigation."  *Id*. at 352.  And, as in
23  *Anheuser-Busch,* dismissal of Natera's counter-claims is warranted because Natera "has engaged
24  deliberately in deceptive practices that undermine the integrity of judicial proceedings."  *Id*. at 348.

25  **IV.   CONCLUSION**

26  Guardant asks the Court to put a stop to Natera's pervasive false statements and deceptive
27  practices by imposing meaningful sanctions in the form of monetary sanctions, exclusion of Dr.
28  Hochster, exclusion of any other evidence of COBRA, and dismissal of Natera's counter-claims.

| | |
|---|---|
| Dated: October 8, 2024 | **KELLER/ANDERLE LLP** |
| | By: */s/ Chase Scolnick* |
| | **Chase Scolnick** |
| | Attorneys for Plaintiff/Counterclaim-Defendant GUARDANT HEALTH, INC. |

- 6 -

REPLY IN SUPPORT OF GUARDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS (DKT. 578)
CASE NO. 3:21-CV-04062-EMC