UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATERA, INC.,<br><br>　　　　Defendant. | Case No. 21-cv-04062-EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER*** |

## I.　　TRIAL DATES AND LENGTH OF TRIAL

Jury Selection set for 11/5/2024, at 8:30 AM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Screening on the basis of questionnaires of prospective jurors who obviously cannot serve shall be held via virtual hearing on 11/4/2024 at 8:30 a.m.

Trial Dates and Hours are: 11/5 and 11/6 (8:30 AM-2:00 PM); 11/7 (8:30 AM-12:00 PM); 11/12 and 11/13 (8:30 AM-4:00 PM); *11/14 (8:30 AM -1:30PM); 11/15, 11/18, 11/22 and 11/25 (8:30 AM-4:00 PM) in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.

Estimated length of 6-7 court days. The Parties were limited to 18 hours each to make opening statement, present evidence (including the party's time on direct and cross examinations), and deliver closing arguments. Due to Natera's excessive deposition designations and objections, the Court deducted one hour from Natera's time—thus, Natera is limited to 17 hours. The Court expects final instructions and closings will also be complete on 11/22/2024.

## II.　　TRIAL PROCEDURES

A.　　Evidence and Objections

The Court imposes the following trial procedures regarding evidence and objections. A party must give the opposing party at least forty-eight (48) hours' notice of witnesses it intends to

1  call, exhibits it intends to use, and/or demonstratives it intends to use. Saturdays and Sundays do
2  not count. Thus, *e.g.*, for a Monday trial day that starts at 8:00 a.m., a party must give the
3  opposing party notice by 8:00 a.m. on Thursday.

4  If the opposing party has an objection, then it must notify the party by 6:00 p.m. the same
5  day of notice.

6  The parties shall meet and confer immediately to see if they can resolve objections to
7  exhibits and demonstratives. If they cannot, then they shall file with the Court a joint statement
8  twenty-four (24) hours in advance of the relevant trial day identifying their respective positions.
9  Parties are to follow the instructions/format in Docket No. 719 for any remaining objections to
10 exhibits. In short, the Court requires a full day to resolve any objections.

11 The Court emphasizes that a party that makes unreasonable objections may be subject to
12 sanction, including deductions from trial time.

13 B.  Deposition testimony for Live Witnesses

14 At the pretrial conference, Natera stated they had a right to present adverse witnesses, who
15 served as corporate designees, through deposition testimony, even if the witness was appearing
16 live. The Court ordered briefing on the issue to determine if this was a right or within the Court's
17 discretion. Dkt. No. 719. Parties filed their responses. Dkt. Nos. 720, 721. As both Parties note,
18 this issue is within the Court's discretion to efficiently manage trial and trial procedures. *See* Dkt.
19 No. 721, Natera's Brief ("Although Rule 32 allows Natera to present such testimony even if the
20 designated individual is live at trial, that rule is subject to this Court's authority to manage trials,
21 *e.g.*, ruling on FRE 403 and timing.") Natera stated they want to use "short clips" of Guardant's
22 witnesses Thereasa Rich, Kimberly Banks and Victoria Raymond. Guardant stated they did not
23 plan to use deposition testimony for live witnesses outside of impeachment purposes.

24 The Court will **not** allow deposition testimony for live witnesses who are adverse absent
25 stipulation, other than for the use of impeachment. The Court expects witnesses will be prepared
26 to testify on topics for which they were designated.

2

United States District Court
Northern District of California

## III. WITNESSES

A. Guardant's Witness List (Docket No. 731)

Fact Witnesses

1. Helmy Eltoukhy
2. AmirAli Talasaz
3. Justin Odegaard
4. Kristin Price
5. Victoria Raymond
6. Ryan Corcoran (Live or by Deposition)
7. Aparna Parikh [Court ordered Dr. Parikh to appear live, Docket No. 683. Guardant stated Dr. Parikh is available 11/18/24. *See* Dkt. No. 719, 731].
8. Steve Chapman
9. Kevin Masukawa

Expert Witnesses

1. Daniel F. Heitjan
2. James Malackowski
3. Brian Sowers

May Call Witnesses

1. Thereasa Rich
2. Nitin Sood (By Deposition)
3. Shruti Sharma
4. Kimberly Banks
5. Mark McCoy
6. Alexey Aleshin
7. Solomon Moshkevich
8. Claus Lindbjerg Andersen (By deposition)

B. Natera's Witness List (Docket No. 731)

Fact Witnesses

1. Alexey Aleshin
2. Steven Chapman
3. Helmy Eltoukhy
4. Solomon Moshkevich
5. Aparna Parikh
6. Matthew Rabinowitz
7. Kevin Masukawa

Expert Witnesses

8. Dr. Rebecca Betensky
9. Dr. Susan McDonald
10. Dr. Michael Metzker
11. Dr. Jeffery Stec

May Call Witnesses

1. Kimberly Banks
2. Ryan Corcoran
3. Craig Eagle
4. Mark McCoy
5. Justin Odegaard
6. Saul Perloff
7. Kristin Price
8. Victoria Raymond
9. Thereasa Rich
10. Nitin Sood
11. AmirAli Talasaz
12. Custodian of Records for The General Hospital Corporation d/b/a Massachusetts General Hospital ("MGH") (live): authenticity and admissibility of documents produced by MGH in this case.
13. Custodian of Records for Clinical Cancer Research ("CCR") (live): authenticity and admissibility of documents produced by CCR in this case.
14. Custodian of Records for Guardant Health (live): authenticity of documents produced by Guardant Health in this case.

## IV.    MOTION FOR LEAVE

Guardant filed a motion for leave to file an additional *motion in limine* regarding Natera's CEO Matthew Rabinowitz. Dkt. No. 712. As stated at the pretrial conference, leave is denied. However, Natera is warned that they are not to exceed the scope of the previously permitted testimony of the late-disclosed witness.

## V.    JURY INSTRUCTIONS

The Parties filed a joint list of disputed and stipulated jury instructions. Dkt. No. 506-3 (Sealed). The Court previously ruled on proposed jury instructions for the disputed instructions,

5

sharing with the Parties its intended instructions. Dkt. No. 610.  The Parties filed objections to this narrowed list of instructions.  Dkt. Nos. 626, 627.  Following discussion at the pretrial conference, the Court ordered the Parties to meet and confer and stipulate to a few of the disputed jury instructions. Dkt. No. 719. The Parties filed stipulated instructions. Dkt. No. 722.

The final jury instructions are attached, comprising of: the stipulated instructions at Dkt. No. 506-3 (Sealed), the unobjected to instructions from the Court's proposed jury instructions at Dkt. No. 610, and the Court's ruling herein.

The Court rules below on the disputed instructions of Docket No. 610: 4, 35, 37, 38, 46, 47, 48, 49, 50.

**Preliminary Instructions:**

A.  Instruction No. 4: Burden of Proof, Clear and Convincing Evidence
    When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

    **Natera's Objections**: Natera renews previous objections that nothing in the case needs a clear and convincing evidence instruction because Natera argues (again) punitive damages are improper.

    **Ruling**: The Court previously addressed this argument in Docket No. 610. The instruction is final as is.

**Final Instructions:**

B.  Instruction No. 35 re False Advertising – Lanham Act - Element One Part 1 - False or Misleading Statement
    The party asserting a Lanham Act claim must prove that one or more statement of fact was false or misleading. In making this determination, you must consider any such statement in the context of the entire advertisement**.** The party may prove a statement is false or misleading in one of two ways:
    1. By showing that the statement is literally false. Only an unambiguous message can be literally false. A statement may be literally false on its face, that is, when it explicitly states something untrue. A statement also may be literally false by necessary implication. A statement is literally false by necessary implication when it does not explicitly state something that is untrue, but considering the

advertisement in its entirety, the only reasonable interpretation of the statement is that it is untrue. Advertisements using an "apples-to-oranges" comparison are literally false by necessary implication where things that are non-comparable are portrayed as otherwise equivalent.
2. By showing that a statement is misleading. A statement is misleading if it is literally true or ambiguous but misled, confused, or deceived a significant portion of the consuming public or is likely to mislead, confuse, or deceive customers.

**Natera's Objections:** Natera renews two objections. First, they object to the phrase "apples to oranges;" and, second Natera renews its request to include "In determining whether an advertisement is false or misleading, you must consider it in the context of the entire advertisement," arguing "in the full context" is especially important because many of the advertisements are lengthy and parties shouldn't be able to "cherry pick."

**Ruling**: The Court has already considered the "apples to oranges" concept, numerous times. Dkt. No. 326 at 13-14, Dkt. No. 610. The Court will not consider this again. The Parties stipulated to the addition inserted above re: "in the context", and the Court accepts this as final.

C. Instruction No. 37 re False Advertising – Lanham Act – Element One: 37a Comparative Advertising and 37b Establishment Claims
**Natera's Objections**: The Court denied Natera's previous request for an instruction on establishment claims because "The proposal by Natera unnecessarily introduces argument into the jury instructions by outlining the theory of each parties' case instead of stating the legal requirements in a neutral manner." Docket No. 610 at 17. "In light of Instruction No. 38, which will explain each way that a party can establish a false or misleading statement for advertisements, this instruction is unnecessary." *Id*.
Natera's Objections: Natera disagrees with Court's omission, and the Court's application of the ONY doctrine and renews the objection. No new argument is raised.

**Ruling**: No new instruction will be given. The Court overrules Natera's objections.

D. Instruction No. 38 re False Advertising – Lanham Act – Claim Element One, Claims Relating to Peer-Reviewed, Published Articles
Statements in a commercial advertisement or promotion which are based on test results from a peer-reviewed, published scientific study cannot be literally false unless that party challenging the advertisement proves that:
1. The statement in the advertisement of promotion is not, on its face, supported by the peer-reviewed, published science study. In other words, even if the study is reliable, it does not establish the statement at issue in the advertisement.
2. The statement conveys a false message that is beyond the scope of the peer-reviewed, published scientific study, such as comparing test results from a different study when the results are not actually comparable.
3. The statement is supported by the peer-reviewed, published scientific study but the results of the study were fabricated or fraudulently created.

A party also may show that a commercial advertisement or promotion that relies on a peer-reviewed, published scientific study is misleading if it reports results from the study in a way that is deceptive and that deceived a significant portion of the commercial audience.

**Natera objections**: Natera takes issue with the Court's first prong, and insists that instead of the current language, the Court should adopt the exact phrase that was used in *Southland Sod Farms*, 108 F.3d 1134, 1139 (Ninth Circuit) "The statement in the advertisement is supported by testing that, even if the test is reliable, does not establish the proposition asserted." *Id*. at 1139.

The Parties were ordered to meet and confer, Dkt. No. 719, and the instruction remained in dispute.

[Guardant Proposal: <u>Even though the study is presumed reliable,</u> t̶The statement in the advertisement or promotion is not, on its face, supported by the peer-reviewed, published scientific study.]

[Natera Proposal: The statement in the advertisement of promotion is not, on its face, supported by the peer-reviewed, published science study. <u>In other words, even if the study is reliable, it does not establish the statement at issue in the advertisement.</u>]

**Ruling**: The Court accepts Natera's proposal as the final instruction.

E. <u>Instruction No. 46: California State Common Law Unfair Competition:</u>
California common law claims are substantially congruent to claims made under the Lanham Act. If you find that either party has violated the Lanham Act, then you must find that it has also violated California unfair competition common law.

**Natera's Objections:** Natera again argues that California common law claims are not substantially congruent to claims under the Lanham Act.

**Ruling:** The Court already addressed this argument. Dkt. No. 610. The instruction is final as is.

F. <u>Instruction No. 47 re Lanham Act False Advertising – Monetary Recovery</u>
   It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.
   If you find that a party is liable for false advertising under the Lanham Act, you must determine the appropriate monetary recovery for the other party.
   The party bringing a claim for false advertising has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate that party for any injury you find was caused by the other party and that is attributable to the wrongdoer's unlawful conduct.
   Your award must be based upon evidence and not upon speculation, guesswork, or conjecture. Damages need not be calculated with absolute exactness. However, there must be a reasonable basis for computation.
   A party bringing a claim for false advertising may recover the following:
   1. Actual damages resulting from other party's false advertising; and
   2. Any profits earned by the other party as a result of its false advertising, also known as "disgorgement of profits."
   I will now explain these two categories further.

**Natera's Objections**: Natera re-raises the objection to the omission of the language that the jury may not "award damages in order to punish the party being accused of false advertising."

==Ruling: The Court has already addressed Natera's argument. Dkt. No. 610. The instruction is final as is.==

G. <u>Instruction No. 48 re Lanham Act False Advertising – Actual Damages</u>

A party has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the party for any injury you find was caused by the other party's false advertising.

Actual damages may include:
1. The injured party's lost profits, which is the profits it would have earned if not for the false or misleading advertising.
    a. The injured party's lost profit is determined by deducting all allowable expenses the party incurred from gross revenue the party would have generated by the product. Allowable expenses are all costs incurred in generating the gross revenue.
    b. When considering a claim for lost profits, you may consider evidence that some or all of those claimed losses may be caused by other market factors or reasons and not as a result of the accused false advertising.

2. The cost of corrective advertising reasonably required to correct any deception caused by the false advertising.
    a. Corrective advertising costs must be attributable to the false or misleading advertising.
    b. ~~The amount of future, corrective costs may be difficult to determine precisely. This may present a danger of overcompensation. To avoid overcompensation, your award of such future costs should not exceed the projected profits of the party's product that was the subject of the false advertising.~~

Guardant proposed including "allowable expenses" in the second sentence of 48(1)(a) to match the first sentence. The Court ordered the Parties to revise this instruction in section 2 in light of the Court's exclusion of COBRA. Dkt. No. 719.

==Ruling: The Court adopts Guardant's requested inclusion of "allowable" in 1(a). The Court adopts the Parties' proposed deletion of 2(b) in light of the exclusion of COBRA. 2(a) becomes the second sentence of 2.==

H. <u>Instruction No. 49 re Lanham Act False Advertising – Disgorgement of Profits</u>

In addition to actual damages, the plaintiff is entitled to any profits earned by the defendant that are attributable to the false advertisement ~~infringement~~, which the plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is calculated by deducting expenses from gross revenue.

      Gross revenue is all of the defendant's ~~liable party's~~ earnings from the sale of its product. The plaintiff ~~wronged party~~ has the burden of proving the defendant's ~~liable party's~~ gross revenue by a preponderance of the evidence.

      Expenses are all of the defendant's ~~liable party's~~ overhead and production costs incurred in producing the gross revenue. Those expenses may include wages and sales commissions. The expenses must be directly attributable to producing the defendant's ~~liable party's~~ product. The defendant ~~liable party~~ has the burden of proving (1) the expenses and (2) the portion of the profits that is not attributable to the false advertising ~~sale of its product~~, but which is attributable instead to other factors.

**Natera's Objections:** Natera reraises prior objections to their omitted language, and to the reference to "infringement."

**Guardant's Objections:** Guardant also asks to change "infringement" to false advertisement. Guardant argues a liable party can avoid disgorgement to the extent it can prove that the profits are not attributable to the Lanham Act violation. E.g., *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993):

> The plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity. The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity . . . .

(emphasis added) (citing *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 206-07 (1942)), *abrogated on other grounds*, *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016)). Thus, changing the phrase "sale of its product" to 'false advertising" will assist the jury in assessing whether the liable party has proven that a subset of profits are not subject to disgorgement.

Guardant re raises their request to include language regarding what can constitute overhead costs. The Court already addressed this and does not see a reason to change.

Guardant's requested language is: "You may not, however, deduct any expenses that related to the liable party's false advertising, such as costs associated with the conduct for which you found the party liable. You also may not deduct any overhead expenses if you find that the liable party's false advertising was willful."

**Ruling**: The Court adopts the "false advertisement' in lieu of "infringement," as well "false advertising" instead of "sale of its product." The Court will not adopt Guardant's further requested language as Guardant fails to cite to any case with the language applied in a Lanham Act context specifically.

I.     Instruction No. 50: Damages under California State Common Law

      If you find a party liable for common law unfair competition, then you must determine an amount that is fair compensation for all of the injured party's actual damages. A party has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the party for any injury you find was caused by the other party's unfair competition.

You may not award damages for state common law unfair competition that you have already awarded as damages for a violation of the Lanham Act.

If you find a party liable for common law unfair competition, you may also award punitive damages. The purposes of punitive damages are to punish the party found liable and to discourage similar conduct in the future.

You may award punitive damages against the liable party only if the injured party proves by clear and convincing evidence that the liable party engaged in that conduct with malice, oppression, or fraud.

"Malice" means that the liable party acted with intent to cause injury or that the liable party's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when the person is aware of the probable dangerous consequences of the person's conduct and deliberately fails to avoid those consequences.

"Oppression" means that the liable party's conduct was despicable and subjected the injured party to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that the liable party intentionally misrepresented or concealed a material fact and did so intending to harm the injured party.

There is no fixed formula for determining the amount of punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

   a) How reprehensible was the liable party's conduct? In deciding how reprehensible the liable party's conduct was, you may consider, among other factors:
   1. Whether the conduct caused physical harm;
   2. Whether the liable party disregarded the health or safety of others;
   3. Whether the injured party was financially weak or vulnerable and liable party knew the
   2. injured party was financially weak or vulnerable and took advantage of it;
   3. Whether the liable party's conduct involved a pattern or practice; and
   4. Whether the liable party acted with trickery or deceit.

   b) Is there a reasonable relationship between the amount of punitive damages and the injured party's harm?

   c) In view of the liable party's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an

amount that is otherwise appropriate merely because the liable party has substantial financial resources.

Punitive damages may not be used to punish the liable party for the harm to anyone other than the injured party in this case.

**Natera's Objections:** Natera re-raises prior argument that this Court already addressed, including 1) state common law claim should not be included; 2) language on actual damages should not be included because if actual damages are awarded with the Lanham Act, they cannot be awarded again with the state law claim; 3) the Court should include language stating that punitive damages are not required.

**Ruling**: The instruction is final as is. Dkt. No. 610.

11

J.  **Instruction No. 52 re Willful False Advertising – Lanham Act**

The Court suggested the Parties add a willful instruction, as follows, Dkt. No. 719, and the Parties stipulated to its inclusion. Dkt. No. 722.

> If you find that a party engaged in false advertising, you must also determine whether that party did so willfully.  A party willfully engaged in false advertising if it knew its advertising was false or misleading, or it acted with reckless disregard for, or willful blindness to, the false or misleading nature of its advertising.

Court notes: Ninth Circuit Model Jury Instruction, No. 17.37 on copyright—damages—willful infringement; *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. 17-01613-CJC, Docket No. 259 (C.D. Cal. 2019) (Jury Instructions Given in Open Court); *K&N Engineering, Inc., v. Spectre Performance*, No. 09-cv-1900-VAP-DTB, Docket No. 274 (C.D. Cal. 2011) (Jury Instructions Given in Open Court).

Post-trial the Court will decide whether this case warrants treble enhanced actual damages, attorneys' fees, and pre-judgment interest.  In awarding such damages in a Lanham Act case, the Court may consider the totality of the circumstances, including the jury's determination of whether the defendants acted willfully.  *See Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*, 668 F. App'x 299, 300 (9th Cir. 2016); *see also Nintendo of Amer., Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (finding that the district court's trebling of actual damages was appropriate where it found that the defendant had willfully infringed the plaintiff's trademarks); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:92 (4th ed. 2014) ("Where damages have been increased, the reason usually given is that the defendant's infringement was 'knowing and willful.' "); *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982) (attorneys' fees are "available in exceptional cases, *i.e.*, in infringement cases where the acts of infringement can be characterized as 'malicious', 'fraudulent', 'deliberate', or 'willful'."). As such, the Court includes a "willfulness" instruction and a "willfulness" question on the verdict form.

K.  **Instruction re: Hochster's Credibility**

The Court instructed Parties stipulate to an adverse instruction re: Dr. Hochster's credibility. Dkt. No. 719. After being unable to stipulate, the Parties submitted two separate proposals. Dkt. No. 733.  Subsequently, Natera withdrew Dr. Hochster as a witness, thus obviating the need for an instruction. Dkt. No. 735.

# VI.  VERDICT FORM

The Court previously rules on a proposed verdict form at Docket No. 612.  Natera filed objections.  Docket No. 628.  Natera raised the following:

1) Natera reraised their request to have separate questions as to whether jury finds the accused advertising statements were literally false or whether they were

misleading.

2) Natera reraised their request to include exemplary copies of advertisements attached to verdict form.
3) Natera wants burden of proof in every question.
4) Natera reraises objections to all questions regarding punitive damages, as outlined in objections to jury instructions.

**Recommendation:** Re: 1, 2, 4; The Court has already ruled on each of these requests and overrules Natera's objections. The Court revised the verdict form to incorporate the burden of proof in Question 2. Otherwise, Natera's 3rd objection is overruled. See attached Order.

## VII.     DEPOSITION DESIGNATIONS OBJECTIONS

The Court has ruled on the Parties' objections to the initial deposition designations for the two witnesses—Nitin Sood and Ryan Corcoran at Docket Nos. 553-1 and 648-1. The Court will not rule on objections to Dr. Parikh's deposition designations, as she will be appearing live. Dkt. No. 683. The Orders are attached.

## VIII.     EXHIBITS

The Court will address the objections to the revised exhibits list for the Parties' "must use" exhibits by trial. Docket No. 732. An Order is to follow.

//
//
//

### IX.  MISCELLANY

Though the Court does not anticipate, but should the Parties require any further motion practice throughout trial, the moving party must file such papers by 6pm in order to have the argument considered the following trial day.

**IT IS SO ORDERED**.

Dated: October 25, 2024

_____
EDWARD M. CHEN
United States District Judge