**Saul Perloff (157092)**
saul.perloff@aoshearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@aoshearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@aoshearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, Texas 78701
Telephone (512) 647-1900

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

**Jennifer L. Keller (84412)**
jkeller@kelleranderle.com
**Chase Scolnick (227631)**
cscolnick@kelleranderle.com
Craig Harbaugh (194309)
charbaugh@kelleranderle.com
Gregory Sergi (257415)
gsergi@kelleranderle.com
**KELLER/ANDERLE LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GUARDANT HEALTH, INC.

Plaintiff and Counterclaim-Defendant,

vs.

NATERA, INC.

Defendant and Counterclaim-Plaintiff.

Case No. 3:21-cv-04062-EMC

**GUARDANT'S RESPONSE IN OPPOSITION TO NATERA'S EMERGENCY MOTION FOR LESSER SANCTIONS (DKT. 749)**

Motion Hearing: Nov. 4, 2024, at 8:30 am
Trial Date: November 5, 2024

DOCUMENT PREPARED ON RECYCLED PAPER

## TABLE OF CONTENTS

I. INTRODUCTION .......... II

II. THE COURT APPROPRIATELY SANCTIONED NATERA FOR ITS COUNSEL'S MISREPRESENTATIONS .......... 2

III. A "LESSER SANCTION" IS UNNECESSARY AND WOULD LET NATERA BENEFIT FROM ITS MISCONDUCT .......... 5

IV. THE COURT'S RULE 403 ANALYSIS IS APT .......... 8

V. THE FIRST AMENDMENT NEITHER APPLIES NOR CALLS FOR A LESSER SANCTION .......... 10

VI. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ....................5

*Ariix LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ....................13

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) ....................13

*Borunda v. Richmond*,
885 F.2d 1384 (9th Cir. 1988) ....................12

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) ....................14

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ....................13

*Davis v. United States*,
No. 3:02-cv-174, 2013 WL 5375628 (W.D.N.C. Sept. 25, 2013) ....................14

*Exeltis USA Inc. v. First Databank, Inc.*,
No. 17-cv-4810, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017) ....................14

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) ....................5

*Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n/Nat'l Nurses Org. Comm.*,
2014 WL 4385465 (S.D. Cal. Sept. 4, 2014) ....................5

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ....................5

*Greenspan v. Admin. Office of the U.S. Courts*,
No. 14-cv-2396, 2014 WL 6847460 (N.D. Cal. Dec. 4, 2014) ....................14

*In re Hawaiian Airlines, Inc.*,
2011 WL 5190931 (D. Haw. Oct. 28, 2011) *aff'd in part, rev'd in part sub nom. Konop v. Hawaiian Airlines, Inc.*, 641 F. App'x 689 (9th Cir. 2015) ....................5

*In re High-Tech Employee-Antitrust Litig.*,
289 F.R.D. 555 (N.D. Cal. 2013) ....................5, 6

DOCUMENT PREPARED ON RECYCLED PAPER

*Lewis v. Telephone Employees Credit Un.*, 87 F.3d 1537 (9th Cir. 1996) ....................6

*Link v. Wabash R. Co.*, 370 U.S. 626 (1962)....................5

*Merchant v. Corizon Health, Inc.* 993 F.3d 733 (9th Cir. 2021) ....................4

*Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007 (9th Cir. 2007) ....................7

*Miller v. City of Los Angeles*, 661 F.3d 1024 (9th Cir 2011) ....................5

*Munoz-Santana v. U.S. I.N.S.*, 742 F.2d 561 (9th Cir. 1984) ....................6

*Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190 (E.D. Va. 2016) ....................4

*Sanders v. Melvin*, 25 F.4th 475 (7th Cir. 2022) ....................7

*Scotto v. Gorilla Ladder Co.*, 809 Fed. Appx. 430 (9th Cir. 2020)....................6

*Sidibe v. Sutter Health*, 103 F.4th 675 (9th Cir. 2024) ....................12

*Smith v. Depasquale*, 727 Fed. Appx. 411 (9th Cir. 2018)....................12

*Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392, 2012 WL 28289 (S.D. Cal. Jan. 5, 2012) ....................6

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) ....................7

*VA. State Bd of Pharmacy v. VA. Citizens Consumer Counc., Inc.*, 425 U.S. 748 (1976)....................14

*Wendt v. Host Int'l, Inc.* 125 F.3d 806 (9th Cir. 1997) ....................5

*Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831 (N.D. Ill. 2023) ....................7

## I. Introduction

After initial briefing, supplemental briefing, and two extensive hearings, this Court issued a thoughtful, measured, and correct ruling that Natera's counsel—not just its retained expert—lied to the Court, and did so knowingly, repeatedly, and to gain litigation advantage. Order Granting in Part and Deferring in Part Guardant's Motion for Sanctions (Dkt. 730) ("Order") at 15:

> Dr. Hochster and Quinn Emanuel on behalf of Natera, made misleading and false statements to Judge Kim, Guardant, and the undersigned, regarding Dr. Hochster's email communications with COBRA investigators and the NRG, and his access to the study results, including his receipt of the draft abstract months in advance of his supplemental declaration seeking to introduce the COBRA study. ***These false and misleading statements that Dr. Hochster had no such documents were made with full knowledge of the truth to the contrary. And those misleading statements and untruths were used to gain a litigation advantage*** – to get this Court to reopen evidence to allow the introduction of the COBRA study long after discovery had closed and on the eve of trial. Relying on these misleading and false statements, ***this Court was duped*** into believing the COBRA evidence was late breaking and warranted reopening discovery and disrupting the trial schedule.

(emphasis added). In sum: "Natera's counsel's, Quinn Emanuel, [made] deliberate misrepresentations to this Court and to Judge Kim. Quinn Emanuel's conduct, simply put, was unjustified, unacceptable and sanctionable." *Id.* at 2.

Natera's "emergency" motion for lesser sanctions (Dkt. 749) ("Motion") fails to address these facts and this Court's findings. Natera's request for lesser sanctions fails to recognize—much less satisfy—the foundational goal of sanctions for such misconduct: "to leave the nondisclosing party worse off than it would have been if it had" not engaged in the sanctionable conduct. *Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 201 (E.D. Va. 2016). Natera's insistence that an appropriate "lesser" sanction should only leave it better off than if it had told the truth in the first place finds no support in the law.

Moreover, what Natera seeks to bring back into the case is not "incontestable fact" based on the science but rather fundamentally false mischaracterizations of both Guardant's false advertising claim related to CHIP filters as well as the significance of the COBRA data. Natera would mislead the jury with the now-discredited interpretation of their disgraced (and discarded) expert, Dr. Hochster. But as the Court recognized, the COBRA discovery demonstrated that there

were no clinical outcome data from which anyone could calculate clinical specificity or "false positives." Instead, as the principal investigator, Dr. Van Morris, and NRG's statistician, Dr. Greg Yothers, recognized, the COBRA study was discontinued because of an unrecognized design flaw in the study itself. In short, as the Court held, the introduction of COBRA evidence into this case would prejudice Guardant and confuse the jury.

What remains of Natera's motion is a confusing muddle of untimely and wholly inapt complaints about discovery and bewildering invocations of the First Amendment—none of which could possibly justify, much less require, a softening of the sanctions against Natera for the deliberate misconduct of its counsel.

Natera's Motion fails at every turn. It must be denied.[1]

## II. <u>The Court appropriately sanctioned Natera for its counsel's misrepresentations</u>

Natera ignores the extensive authority cited by the Court in support of its exercise of its inherent authority in issuing evidentiary sanctions. Order at 14-15 (citing, e.g., *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017); *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962); *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting *Miller v. City of Los Angeles*, 661 F.3d 1024, 1029 (9th Cir 2011); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 924-25 (N.D. Cal. 2023) *Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n/Nat'l Nurses Org. Comm.*, 2014 WL 4385465, at *2 (S.D. Cal. Sept. 4, 2014); *In re Hawaiian Airlines, Inc.*, 2011 WL 5190931, at *7 (D. Haw. Oct. 28, 2011) *aff'd in part, rev'd in part sub nom. Konop v. Hawaiian Airlines, Inc.*, 641 F. App'x 689 (9th Cir. 2015)). Not one of

---

[1] Natera's Motion is at root one for reconsideration, and thus Natera should have first sought leave before bringing it. *See* N.D. Cal. Civ. L.R. 7.9. While a request for a lesser sanction under Fed. R. Civ. 37(c) may be raised by a post-sanctions motion per the Rule's express language, *see* Rule 37(c)(1), *see also Merchant v. Corizon Health, Inc.* 993 F.3d 733, 741 (9th Cir. 2021), this Court's decision to sanction Natera did not rely on Rule 37(c), but rather under its inherent power. *See* Order, Dkt. 730, at 14-15. Moreover, as a motion for reconsideration, the Motion necessarily fails, as Natera raises no arguments that either were not or could not have been raised in the two prior briefing cycles. Notably, Natera already requested a "lesser sanction," Dkt. 704 at 10, and had multiple opportunities to be heard. E.g., Dkt. 597 & 719 (Minute Entries for Jul. 26, 2024 and Oct. 15, 2024 hearings); *see also* Tr. (Oct. 15, 2024) at 27:9-14 (Natera's counsel: "And with respect to -- with respect to remedy, I think COBRA really should be part of this trial. And if there's a lesser remedy of exclusion, perhaps it's to exclude Dr. Hochster as a witness. I don't believe that's warranted, but that is a lesser remedy than saying COBRA, this relevant information, is out.")

these cases is even cited in, much less distinguished by, Natera's Motion.

Instead, Natera relies on authority that is, at best inapt, and often miscited to boot. For example, Natera cites *Wendt v. Host Int'l, Inc.* 125 F.3d 806 (9th Cir. 1997), as "vacating [a] preclusion order," Motion at 10, but fails to explain *why* the Ninth Circuit took that step. In *Wendt*, a party failed to timely disclose an expert, and the expert was precluded. The case went to trial, then on appeal, and then was reversed and remanded. On remand, the trial court enforced the previous order of preclusion, which was error because the prior finding of prejudice no longer applied: "At that time [of the original order], counsel's failure to comply with discovery rules potentially prejudiced Host and Paramount's ability to prepare adequately for trial. Today, that is not so. Both parties now have ample opportunity to begin the expert disclosure procedure anew." 125 F.3d at 814. There are no similar circumstances here.

In a similar vein, Natera miscites *In re High-Tech Employee-Antitrust Litig.*, 289 F.R.D. 555 (N.D. Cal. 2013), as "denying motion to strike." Motion at 10. But that is incorrect; the Court resolved a motion to strike multiple, untimely declarations. It granted the motion to strike certain declarations, 289 F.R.D. at 585, denied for others, *id.*, and ordered further relief as to still other declarants. *Id.* And *Scotto v. Gorilla Ladder Co.,* 809 Fed. Appx. 430 (9th Cir. 2020), cited by Natera as holding there was "no abuse of discretion in denying plaintiffs' motion *in limine* to preclude evidence," Motion at 10, reached that conclusion only after the *moving* "counsel agreed that it was 'fair,' and "makes sense." 809 Fed. Appx. at 431.[2]

*Lewis v. Telephone Employees Credit Un.*, 87 F.3d 1537 (9th Cir. 1996), also cited by Natera, illustrates that this Court's exercise of discretion was well within that approved by the Ninth Circuit. There, the plaintiffs, suing the defendants for civil fraud, named as an expert witness a police officer who had investigated the defendants for alleged criminal fraud. However, it was disclosed that the officer had communicated directly with two of the defendants, even though they

---

[2] *Munoz-Santana v. U.S. I.N.S.*, 742 F.2d 561, 564 (9th Cir. 1984), also cited by Natera, involved the entry of a default in the absence of a finding of willfulness or bad faith, while *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392, 2012 WL 28289, at *4 (S.D. Cal. Jan. 5, 2012), declined to presume that the plaintiff satisfied the "numerosity" element of class certification because the defendant had inadvertently failed to produce requested complaints, but had "not benefitted from non-compliance."

were represented by counsel. As a sanction, the District Court excluded the officer from offering any testimony at trial. In so doing, however, the court made *no* factual findings in support of it sanctions ruling, requiring the Ninth Circuit to "review the record *de novo* to determine if the district court abused its discretion." *Id.* at 1557. Per that review, the court concluded that while sanctions were appropriate, the exclusion of the witness *in toto* went too far. Instead, the Ninth Circuit held that, on remand, the trial court "may prohibit Officer Smillie from testifying regarding his May 1994 interview of Gillyard, and prohibit the plaintiffs from introducing any documents or handwriting samples acquired by Officer Smillie from Gillyard at that interview or testimony regarding that evidence." *Id.* The Ninth Circuit's approach thus paralleled that of this Court, which excluded Dr. Hochster from offering COBRA related testimony, but nevertheless allowed him to offer his original opinions at trial. *See* Order, Dkt. 730 at 16 (allowing Dr. Hochster "to testify regarding his previous reports," but excluding "COBRA, any mention of COBRA, and any evidence from or implicating COBRA.").

Nor does Natera address this Court's extensive analysis of the evidence of Natera's counsel's misconduct which led to the sanctions ruling. Natera instead makes vague apologies for not "detect[ing]" Dr. Hochster's misstatements, Motion at 2, n.1, making it clear that all the blame must fall solely on Dr. Hochster. *Id.* at 4 (reciting that *Dr. Hochster* "failed to produce emails, misrepresented his search efforts, and provided Natera's counsel erroneous information to report to Judge Kim and this Court," "regrettably before Natera's counsel learned it to be erroneous")

That narrative is neither what the record shows or this Court found. Instead, this Court detailed the many knowing and intentional misrepresentations made by Natera's counsel, both during oral argument, in briefing, and in other submissions. Order, Dkt. 730, at 5-6 & 13-14.

Natera never suggests (much less shows) that these findings are in error. As the Court explained, "Courts have granted evidentiary sanctions, and even dismissals with prejudice, where parties engaged in deliberate falsity to gain a litigation advantage, as is this case here." Order, Dkt. 730, at 16 (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992); *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007 (9th Cir. 2007); *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831 (N.D. Ill. 2023) *Sanders v. Melvin*, 25 F.4th 475, 482 (7th

Cir. 2022)). Again, Natera fails to address even one of these cases.

In the circumstances of this case, Natera already has received a "lesser sanction"—a mere evidentiary exclusion of an at-best tangential issue, rather than a striking of its pleadings.

## III. A "lesser sanction" is unnecessary and would let Natera benefit from its misconduct

The Court clearly summarized the limited scope of its sanctions, both in its Minute Order, Dkt. 719, and in its subsequent written Order:

> The sanctions include evidentiary sanctions in the form of: (1) excluding COBRA in its entirety, Dr. Hochster's supplemental report on COBRA, and other discovery flowing from COBRA; and (2) an adverse instruction to be given by the Court regarding Dr. Hochster's credibility. Further, the Court finds monetary sanctions are likely appropriate due to Natera's counsel's, Quinn Emanuel, deliberate misrepresentations to this Court and to Judge Kim. Quinn Emanuel's conduct, simply put, was unjustified, unacceptable and sanctionable.

Dkt 730 at 2; *see also* Dkt. 719 at 2. "This evidentiary sanction is compensatory in nature—the Court is essentially turning back the clock on this issue, viewing the trial as that which would have proceeded in March 2024 in the absence of Natera seeking to submit Dr. Hochster's supplemental testimony on COBRA, with the limited exceptions listed at Dkt. No. 719." *Id.* at 16

It is not particularly clear what Natera's proposed "lesser" sanctions would include, other than encompassing the exclusion of Dr. Hochster (whom Natera has already removed from even its "may call" witness list). *See* Motion at 4-5. However, at a minimum, it appears that Natera wishes to benefit from its deception by using documents produced during COBRA discovery, including submissions from Guardant to NRG for COBRA, and NRG's letter regarding the closure of COBRA. *Id.* This is necessary, Natera insists, to prevent *Guardant* from being "free at trial to argue and present evidence contrary to basic, incontestable facts," Motion at 1, and ensure that "Guardant cannot paint as false what were *truthful* statements by Natera about historic product specificity and the potential for false positives in the Reveal test Guardant marketed and sold." *Id.*

But the supposedly "*truthful*" statements at issue have nothing to do with COBRA. Natera's 2021 "White Paper" claimed that while Signatera had a CHIP filter, plasma-only assays (and Reveal was the only such assay on the market) could *not* filter for CHIP:

Document Prepared on Recycled Paper

| **2. Filtering of CHIP and germline variants:** Signatera significantly reduces the false-positive rates by filtering out clonal hematopoiesis of indeterminate potential (CHIP) and germline-derived variants from analysis. CHIP and germline variants are well-established sources of biological noise and are a common cause of false-positives in cell free DNA (cfDNA) analysis.[27] By sequencing matched peripheral blood samples to the same depth as the biopsied tumor tissue during assay design, Signatera increases the likelihood of tracking true tumor-derived clonal variants. | • **Specificity is impacted by biological noise from germline and CHIP mutations.** Without the genomic information for each primary tumor, tumor-naive assays are unable to filter out background biological noise from CHIP or to avoid tracking driver mutations that may be subjected to selection pressure from treatment. |
|---|---|

TX-120, at NATERA_350767 & 350768. But Natera knew that was untrue;

TX-122 (NATERA_110633, at 110637; *see also* Complaint, Dkt. 1, at ¶ 32 (noting that an abstract publicly available in 2018 demonstrated excellent specificity with incorporation of CHIP filter).

Natera continues its intentional muddling of *analytical specificity* and *clinical specificity* reported in specific clinical trials. Motion at 7 (arguing: "As of 2024, Guardant's position is that Reveal did not have 100% specificity but was designed for 95% specificity.") As Natera knows, both Signatera and Reveal have analytical specificities of less than 100%, while data from a clinical trial—including the Parikh Study—may reflect 100% specificity *for those patients in that trial.*

Natera has long known that at launch, Reveal had an *analytical specificity* of about 95%. *See* LUNAR-1 MolDX deck, TX536, at GHI00036375 (Price Dep. Ex. 75).



Summary of Technical Assessment Completion

Gaps:
(BI). Method Comparison (G360)
(BI) Reagent stability
(TD/BI) Interfering Substances
(BI) Primer and Probe Specificity

| Study | Test | Result | Input (ng DNA) |
|---|---|---|---|
| **Analytical Specificity** | 74 age matched healthy donor | 70 / 74 (94.6%) | Up to100 |

This is about the same analytical specificity that was reported to NRG, Motion at 1 (citing to TX-1667). The difference between these exhibits is that Natera came by one without lying to the Court.

Natera also broadly complains that Guardant *should* have produced all of the documents produced during COBRA discovery, including those which mention iterative improvements to Reveal, after the close of discovery. Motion at 6 & 11. This is, in a word, nonsense. As Natera knows, other than agreed-to updates for summary financials, *neither* Party provided supplemental document productions following the close of discovery. This was mutually accepted between the Parties. And if Natera were unhappy with this arrangement, then it should have (1) produced additional documents itself; (2) met and conferred with Guardant prior to the close of fact discovery to discuss the issue; and (3) brought a motion during the period for non-dispositive motion practice. It did none of this.

Nor is there any question that Natera has kept concealed a wealth of information about its own assay. During his deposition, Dr. Matthew Rabinowitz—Natera's founder, Chair, and former president—

DOCUMENT PREPARED ON RECYCLED PAPER

[redacted]

Exhibit A, Rabinowitz Dep. 111:23-113:10 (objections omitted). [redacted].[3]

In sum, there is no possible unfairness to *Natera* in precluding it from benefiting from its false statements to this Court. The jury will still know that Reveal at launch had an analytical specificity of about 95%. It will still hear whatever arguments—subject to this Court's other rulings—Natera can throw at the wall to try and prove that Reveal lacked a CHIP filter in 2021, even though Natera *knew* it had one more than a year earlier. But Natera neither needs nor is entitled to wave about COBRA-related documents to make such arguments.

## IV. The Court's Rule 403 analysis is apt

In addition to disallowing COBRA evidence as a sanction, the Court also carefully assessed exclusion under Fed. R. Evid. 403:

> There already was a difficult question of cabining the COBRA evidence so that the jury would not afford the study too much significance on the issue of the core Lanham Act claims. There was a risk that the COBRA results could affect the jury's view of Reveal generally (beyond that which is relevant to the claims herein), as opposed to viewing it only for its limited relevance to a cap on future profits, and conditional relevance to two very discrete issues identified by the Court, Dkt. 493 at 12-13 (Guardant's defense of 100% specificity claim and materiality of Natera's claim of manipulation of Parikh data on specificity and sensitivity). Now, due to the huge proliferation of side issues, (*e.g.*, the evolution of the study, Dr. Hochster's possible role, Dr. Hochster's credibility (and thus the issue about the emails, his misleading testimony to the Court and counsel, sharing an embargoed abstract with Natera, etc.,)

[3] As an aside, it should go without saying that *both* Guardant and Natera of course have spent the last three and a half years of this litigation seeking to improve their respective assays. This is not only necessary to remain competitive, but it is critical for patients. But such efforts are not an admission that an earlier iteration of either assay was defective or inferior. Which is why, if this were a negligence or personal injury suit, "subsequent remedial measures" would almost certainly be excluded under Rule 407. *See* Fed. R. Evid. 407 Adv. Comm. Notes ("the rule rejects the notion that 'because the world gets wiser as it gets older, therefore it was foolish before'").

> the rebuttal experts to Dr. Hochster's supplemental report, Natera's objections to Guardant's rebuttal experts, the additional COBRA discovery and depositions of COBRA investigators, etc.), COBRA has become an issue that would result in countless mini-trials within the trial, when COBRA was only to be admitted for a limited purpose to begin with. For all the foregoing reasons, at this junction, the Court finds the prejudice, possible complications, and confusion engendered by all the COBRA evidence substantially outweighs its limited probative value. This problem is underscored by the fact that discovery into Dr. Hochster's emails has still not been completed.

Order, Dkt. 730, at 17-18.

Rather than attempting to address this Court's analysis, Natera declares that the Court's exercise of its discretion under Rule 403 is sharply limited:

> At most, this Court might exclude any extraneous details of the COBRA study that it sees as threatening to confuse or mislead the jury. Alternatively, the Court might distill the key facts down to a stipulation that would then be available to the jury and for use in possible impeachment.

Motion at 14. This is not the view of the Ninth Circuit. *Smith v. Depasquale,* 727 Fed. Appx. 411, 411 (9th Cir. 2018) ("'Trial courts have very broad discretion in applying Rule 403 and, absent abuse, the exercise of its discretion will not be disturbed on appeal.'") (quoting *Borunda v. Richmond*, 885 F.2d 1384, 1388 (9th Cir. 1988)).[4]

The threat of prejudice and lack of probative value of the COBRA documents is highlighted by Natera's repeatedly debunked mischaracterizations of the interim data. Even in its Motion, Natera declares, falsely, that "it is an undisputed fact that NRG closed a major study involving Reveal in August 2023 due to excessive false positives," and that: "It is a settled fact that patients (particularly stage IIA cancer patients) received apparent false positive results from Guardant's assay; as a result, those patients were subjected to unnecessary, harmful chemotherapy." Motion at 3 & 4. These contentions are both contested and false. As Dr. Morris testified at length, without clinical outcome information, there is no way to know if any of those results were "false positives." As Dr. Morris acknowledged, a clinical "false positive" requires clinical evidence of non-recurrence, such as a

[4] Natera cites *Sidibe v. Sutter Health*, 103 F.4th 675 (9th Cir. 2024), self-described as a "rare case," as prohibiting the "exclu[sion of] all evidence related to a particular time period rather than exclude 'a few specific pieces of evidence.'" Again, there is no comparison between the circumstances of that case and those here. In *Sidibe,* a class action, the trial court had entered a "blanket exclusion of" *all* "pre-2006 evidence," and thus had "fail[ed] to appreciate that pre-2006 evidence was highly relevant to both Plaintiffs' tying and unreasonable course of conduct claims." *Id.* at 703. No such facts apply here.

CT-scan, coupled with a sufficient follow-up period. Exhibit B, Tr. of Dep. of V. Morris ("Morris Dep.") at 151:18-152:7. Moreover, "in the clinical context," a sufficient follow-up period is necessary "to make sure the cancer does come back – or you've given enough time for that to – to declare itself." *Id.* 113:2-11; *see also id.* at 113:19-24 ("when we say in patients with a minimum of one-year follow-up, you know, we've given enough time to identify – to identify – you know, enough time to wait and see, like is the cancer going to come back."). But in COBRA, "there was no clinical data for the 16 patients that were analyzed in the interim futility analysis[.]" Morris Dep. 154:19-22 (agreeing: "We did not have that data available.") There *still* are no clinical outcome data available for COBRA. *Id.* at 134:22-135:3; 136:5-8; *id.* at 155:7-12 ("I do not know whether or not any of the 16 patients recurred.")

Dr. Morris also concurred with NRG's statistician, Dr. Greg Yothers, that NRG's design of the COBRA study did not take into account both known analytical specificity of the assay and its potential impact in a low-recurrence rate population, such as Stage IIa CRC patients. Morris Dep. 157:10-161:17. As Dr. Yothers wrote to his NRG colleagues, this underlying design flaw of the COBRA study was the "take home message that needs to be disseminated." Dkt. 618-10; *see also* Morris Dep. at 162:17-23 & 164:18-165:10.

While the Court's Order did not need to rely on any additional basis beyond the Court's inherent powers, the Court's Rule 403 analysis is both correct and fair. COBRA evidence would be far more prejudicial than probative, and would inevitably confuse the jury, waste precious trial time, and very well might lead to an unjust result.

**V. <u>The First Amendment neither applies nor calls for a lesser sanction</u>**

Finally, Natera offers a confused argument that the Court's evidentiary and sanctions rulings are somehow subject to First Amendment scrutiny because the Parties are involved in products that are important to the public. Motion at 15-16. But Natera's apparent contention that it is not involved in "commercial speech" is untrue. E.g., *Ariix LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (Courts "try to give effect to 'a common-sense distinction between commercial speech and other varieties of speech.'" ); *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983) (birth control pamphlets constituted commercial speech because they

referred to a specific product, were used as advertising, and the company sending them had "an economic motivation for mailing the pamphlets"). Here, Natera's White Paper directly promoted Signatera to customers; denigrated competing "tissue naïve" assays; and directed potential customers to "Learn more about Signatera" by calling or emailing Natera or visiting its website. It not only constitutes "commercial speech," but easily satisfies the definition of "advertising." *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

Natera also cites several important Supreme Court decisions regarding First Amendment limitations on *truthful* advertising. But as those authorities also hold, "false and misleading commercial speech is not entitled to any First Amendment protection." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 593 (1980); *accord, VA. State Bd of Pharmacy v. VA. Citizens Consumer Counc., Inc.*, 425 U.S. 748, 771-72 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake. . . . The First Amendment, as we construe it today does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely.")

All of which is ultimately beside the point. Because this Court's Order does not implicate the First Amendment in any regard. In *Greenspan v. Admin. Office of the U.S. Courts*, No. 14-cv-2396, 2014 WL 6847460, at 5-*6 (N.D. Cal. Dec. 4, 2014), the court rejected a variety of claims against officers of this Court, including that corporate plaintiffs had a First Amendment Right to proceed *pro se*, contrary to N.D. Cal. Civ. L.R. 3-9(b). In a footnote, the court

> note[d] that Plaintiff appears to be under a misconception concerning the role of the First Amendment in federal court. Federal courts are not public forums. The Federal Rules of Evidence severely limit speech to "relevant" evidence. Further, legal issues, with certain limited exceptions not applicable in the present case, are constrained by legal precedent, whether arising under constitutional, statutory, or common law.

*Id.* at *5 n.11; *accord,* e.g., *Davis v. United States*, No. 3:02-cv-174, 2013 WL 5375628, at *5 (W.D.N.C. Sept. 25, 2013) (rejecting criminal defendant's claim that his First Amendment rights were violated because he was not allowed to advise the jury that he was being re-tried, explaining: "the Federal Rules of Evidence are limits, to some extent, on any otherwise absolute First Amendment rights of both a defendant and a prosecutor. For example, prohibitions against the

introduction of hearsay, most lay opinions, certain expert opinions, speculation, and information regarding a defendant's prior convictions all limit the freedom of speech").[5]

Natera cites no apt authority that its counsel had a First Amendment right to lie to this Court with impunity, or to countermand this Court's evidentiary rulings. The argument makes no sense, and should be rejected out of hand.

## VI. Conclusion

The Court's Order assessing sanctions against Natera was both reasoned and reasonable. Natera has offered no basis for any reconsideration of the Court's Order, or the issuance of any lesser sanctions. Its Motion should be denied.

Dated: October 31, 2024

**ALLEN OVERY SHEARMAN STERLING US LLP**

**SAUL PERLOFF**
By: */s/ Saul Perloff*
Saul Perloff

Attorney for Plaintiff
GUARDANT HEALTH, INC.

[5] *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-4810, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017), cited by Natera, declined to issue a preliminary injunction in a Lanham Act case, in part due to concerns over the impact of a prior restraint. *Exeltis* may have been pertinent at the start of this case some three-and-a-half years ago—which is presumably why Natera cited it in its opposition to Guardant's motion for a TRO. Dkt. 15 at 5. But it has no possible relevance as to this Court's evidentiary rulings or its issuance of sanctions.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on October 31, 2024, to the counsel of record via email to qe-natera-guardant@quinnemanuel.com.

**Counsel for Defendants:**

Kevin P.B. Johnson

Victoria F. Maroulis

Andrew J. Bramhall

Anne S. Toker

Valerie Lozano

Andrew Naravage

Ryan Landes

Elle Wang

Margaret Shyr

Ryan Hudash

Brian Cannon

Jocelyn Ma

Kaitlin Keohane

Victoria Parker

*/s/ Saul Perloff*
Saul Perloff