QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
valerielozano@quinnemanuel.com
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Anne S. Toker (*pro hac vice*)
annetoker@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Derek L. Shaffer (Bar No. 212746)
1300 I Street, Suite 900
Washington, DC 20005
derekshaffer@quinnemanuel.com
Telephone: (202) 538-8000
Facsimile:  (202) 538-8100

Attorneys for Defendant and Counterclaim-
Plaintiff NATERA, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA,

## SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>       Plaintiff and<br>       Counterclaim-Defendant,<br><br>   vs.<br><br>NATERA, INC.<br><br>       Defendant and<br>       Counterclaim-Plaintiff. | CASE NO. 3:21-CV-04062-EMC<br><br>**NATERA, INC.'S MOTION TO EXCLUDE THE UNRELIABLE ANDERSEN HEARING TRANSCRIPTS**<br><br>Hearing:    November 4, 2024<br>Time:       8:30 a.m.<br>Place:      Zoom<br>Judge:     Hon. Edward M. Chen |

Natera Inc. objects to Guardant Health, Inc.'s use of "deposition designations" from unofficial, unsworn, and demonstrably inaccurate transcripts of the Danish hearing of the questioning of Dr. Claus Andersen ("Andersen Hearing") generated by Guardant's private court reporter when there exists an official record prepared by the Danish court.[1]  These unreliable transcripts are inadmissible pursuant to Rules 403, 604 and 901 of the Federal Rules of Evidence. Natera is not objecting to the use of evidence form the Andersen Hearing wholesale—only to the unreliable and misleading form that Guardant insists upon.[2]  Instead, because the Andersen Hearing proceeded pursuant to a request to a foreign authority for evidence, to the extent Guardant intends to rely on the proceedings, pursuant to Rule 28 of the Federal Rules of Civil Procedure, it should use a certified translation of the official court record generated by the Danish authorities themselves regarding evidence from Dr. Andersen.  The official Danish record is the relevant "evidence" under Rule 28 that may be used as a deposition in the instant case.

## I.     BACKGROUND

On October 23 and 25, 2024, pursuant to a letter of request made pursuant to the Hague Convention on Taking Evidence Abroad, Guardant and Natera ("the Parties") participated in a hearing in Viborg, Denmark whereby Danish counsel for both Parties following Danish procedure

---

[1]   At 11:33 PM on October 31, Guardant served purported designations from its unofficial transcript. Ex. C at 3. Natera objected that this was improper and proposed two alternatives: (1) designations to a properly certified translation of the Danish record; or (2) a certified translation of the Danish video recording of the Andersen Hearing. *Id.* at 2.  Guardant rejected both of these without explanation.  *Id.* at 1.  Subject to the outcome of this motion, Natera reserves its rights to serve objections and counter-designations to Guardant's designations to the unofficial, unsworn transcripts of the Andersen Hearing.

[2]   Natera makes this objection separate and apart from any objections Natera may make to any particular piece of evidence.  While the official Danish record is the appropriate document from which to designate, specific designations may be inadmissible for other reasons including the Court's previous rulings on summary judgment and motions *in limine*.  For example, the Court has indicated that evidence of the Reinert Study can only be used for a very limited purpose: "to shed light on the meaning of 'prospective' and 'blinded' — which are the subject of Natera's counter-claims against Guardant (asserting the Parikh study is fraudulent because those terms were mischaracterized) is properly admitted for purposes of impeaching Natera's assertions."  Dkt. 509 at 15.  The Court specifically ordered that "[t]his evidence **may be admitted for impeachment purposes only** – demonstrating Natera has taken inconsistent positions relative to its challenge to the Parikh study." *Id.*  Natera objects to Guardant's attempt to circumvent the Court's prior order and use this evidence in any way other than for impeachment.

questioned Dr. Andersen in Danish before a Danish judge, Honorable Stine Kvesel Mortensen. As
is customary in Danish proceedings, in addition to Danish counsel for the parties, Judge Mortensen
also asked questions of Dr. Andersen to confirm her understanding of his answers. Brinck-Jensen
Decl.[3] ¶ 4. Per the Danish court's order, the Andersen Hearing was videotaped. Guardant also made
available an interpreter, Susanne Frank, who conducted a simultaneous translation of the proceeding
from Danish to English. Ms. Frank, the sole interpreter, was responsible for translating for Dr.
Andersen, the Parties' Danish counsel, and Judge Mortensen. A court reporter engaged by
Guardant, Sherry Yan, was also present to transcribe Ms. Frank's simultaneous translation. Neither
the Danish judge, nor the court reporter, administered an oath to the interpreter, Ms. Frank. The
court reporter, Ms. Yan, prepared unofficial transcripts of Ms. Frank's simultaneous translation of
the Andersen Hearing ("Yan Transcripts") that Guardant has designated for use in the forthcoming
trial. *See.* Ex. A (Yan Tr. Vol. I); Ex. B (Yan Tr. Vol. II). Those transcripts, however, have not
been reviewed or certified by the translator.

Consistent with Danish procedure, Judge Mortensen prepared a summary of the Andersen
Hearing as part of the official court record in the Danish proceeding. Brinck-Jensen Decl. ¶ 4. Even
in Guardant's own unofficial and uncertified transcript, the record reflects that the presiding Danish
judge said "I need to make court records of todays meetings. There are lots of people making notes
as well, but it is the court record from my side that is what I presume will be used as evidence in an
American trial"—thus indicating from the Danish perspective that the Danish court's record was
the official document to be used in the United States proceeding. Ex. A (Yan Tr. Vol. I) at 6:17-22.
At the beginning of the October 25 hearing, Judge Mortensen spent hours with Dr. Andersen
reviewing her summary of the October 23 hearing to confirm with Dr. Andersen that the record was
an accurate reflection of his answers. Brinck-Jensen Decl. ¶ 5. Subsequently, during a Zoom
hearing on October 28, Honorable Mortensen again spent multiple hours with Dr. Andersen
confirming her summary of Dr. Andersen's October 25 answers was accurate. *Id.* Judge

[3] "Brinck-Jensen Decl." refers to the accompanying declaration of Danish attorney Jeppe Brink-Jensen.

1  Mortensen's summaries of the proceedings became available on October 27 and 28, and represent

2  the official record in the Danish proceeding.  *Id.* ¶¶ 4-5.

3  **II.    ARGUMENT**

4        This Court previously indicated that the Parties may use the deposition testimony of Dr.

5  Andersen at trial, but only "if otherwise admissible."  Dkt. 719 at 2.  The unofficial, unsworn Yan

6  Transcripts that Guardant has designated are not authorized under Rule 28 of the Federal Rules of

7  Civil Procedure and are inherently unreliable and, therefore, should not be admitted.[4]  Contrary to

8  Guardant's assertions, the Yan Transcripts are not "a verbatim transcript" of Dr. Andersen's

9  statements under oath.  ***These transcripts are instead a transcription of Ms. Frank's simultaneous***

10  ***and uncertified translation.***  Given that Ms. Frank was translating for the witness, the questioning

11  attorney, and the judge simultaneously, there are serious questions about the accuracy of the record

12  that Guardant is attempting to designate.  **Table 1** below shows some examples of potential improper

13  translations reflected in Guardant's designated portions of the Yan Transcripts.  *See also e.g.,* Ex. A

14  (Yan Tr. Vol. 1) at 10:15-16 (wrongly identifying Dr. Andersen, not Guardant's Danish counsel, as

15  introducing the Reinert Study as Trial Exhibit 4).  As a result, the Yan Transcripts should be

16  excluded pursuant to Rule 403 of the Federal Rules of Evidence as misleading and confusing.  Fed.

17  R. Evid. 403.

18

19

---

20   [4]  Guardant wrongly argues that Natera did not object to the admissibility of the Yan Transcripts
during the hearing.  Guardant made no effort before the hearing to notify Natera that it would be
21  seeking to admit transcriptions of real-time translations as the record of the proceeding in lieu of the
official record of the Danish Court.  Natera was justified in believing that the translation and
22  transcription were being made for the U.S. counsel to follow along with the Danish proceedings,
after which, a properly translated record would be offered.  Guardant did not announce this position
23  until the end of the first day of the proceeding, upon which Natera's Danish counsel specifically
stated that Natera did not agree that Guardant's translation of the transcript would be admissible in
24  the U.S. proceeding.  But that is immaterial.  The objection for failure to swear a witness or
interpreter can be raised at any time before the completion of the trial before it is waived.  *United*
25  *States v. Perez*, 651 F.2d 268, 273 (5th Cir. 1981) (holding that the failure to swear an interpreter is
waived if the objection is raised "after verdict or by the mere failure of counsel to notice the omission
26  before completion of the trial" and finding that defendant's objection that the interpreter was not
properly sworn pursuant to Rule 604 was waived).  Therefore, even if the Court does not consider
27  Natera's objection during the Andersen Hearing, this objection is timely.

28

| Table 1: Potential Discrepancies Between the Unsworn Translation and the Video of the Andersen Hearing | | |
|---|---|---|
| **Yan Transcript** | **Unsworn Translation from Ms. Frank** | **Translation from Video** |
| Ex. A (Yan Tr. Vol. 1) at 41:15-20 | So talking about Natera and the Reinert Study that was published in the "American Association for Cancer Research Journal," abbreviated AAC. Is that correct that they were published there?<br><br>Yes. | The first time you and Natera mentioned the results from the Reinert study was 14-18 April 2018 at the American Association for Cancer Research conference, AAC for short. Is that correct?<br><br>Yes, it is correct. |
| Ex. A (Yan Tr. Vol. 1) at 60:21-23 | But if we look at this patient, it's called a schema plot?<br><br>Yes, it's a schema plot. | But if we look at this patient, it's called a swimmer plot?<br><br>Yes, it is a swimmer plot. |
| Ex. A (Yan Tr. Vol. 1) at 61:11-12 | … and that test was then positive, based on the 14 markers. | … and that test was positive based on 9 out of 16 markers. |
| Ex. A (Yan Tr. Vol. 1) at 74:23-25 | So Signatera requires further test to work, requires for there to be tumor issue?<br><br>Yes. | So the Signatera test requires tumor tissue?<br><br>Yes. |
| Ex. A (Yan Tr. Vol. 1) at 76:16-17 | Yes, because Natera shouldn't have anything to do if there was cancer in the patient's bloods. | Yes, because pool 2 has nothing to do with whether patients have cancer DNA in their blood because it's pool 1 we use for that. |
| Ex. A (Yan Tr. Vol. 1) at 152:15-16 | But to observe how patients are doing upon standard treatment, it's not necessary to do so. | We had decided on an observational design. We follow the patients and observe them receiving standard treatment. We don't influence the patients and we don't intervene. So it was a good design for that. |
| Ex. B (Yan Tr. Vol. II) at 90:15-17 | That's produced – we are not measuring it.· That is just sent to US but according to standard operating procedures. | It's produced at the hospital where it is, and then it's sent to our biobank. But according to a standard operating procedure. |

NATERA'S MOTION TO EXCLUDE THE UNRELIABLE ANDERSEN HEARING TRANSCRIPTS

| Ex. B (Yan Tr. Vol. II) at 92:2-3 | … then the test will become inferior? | … then you get a poorer analysis? |

Furthermore, these unofficial deposition transcripts should be excluded for failure to comply with Rule 604 of the Federal Rules of Evidence because the interpreter was not under oath.  Fed. R. Evid. 604 ("An interpreter must be qualified and must give an oath or affirmation to make a true translation.").  Not only was the interpreter unsworn, but Guardant failed to provide any evidence (CV or otherwise) that Ms. Frank was a properly qualified interpreter.  Moreover, Guardant failed to provide any certification or other affirmation that the translation was true and correct and, therefore, should be excluded for failure to authenticate under Rule 901 of the Federal Rules of Evidence.  Fed. R. Evid. 901; *M&Z Trading Corp. v. Hecny Group*, 41 Fed. Appx. 141, 143 (9th Cir. 2002) ("Without providing any affidavits or testimony regarding the competency of the translators for the translations it submitted, M&Z failed to satisfy the accuracy and reliability requirements of Rule 901…the authentication [] failed under Rule 901."); *Ruiz v. APCO Const.*, No. 10-cv-1312-JAD-GWF, 2014 WL 2741547, at *3 n.6 (D. Nev. June 17, 2014) (declining to consider translated affidavits for failure to properly authenticate where the documents "want[ed] for an affidavit from the translator attesting to a true and correct translation"); *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal.*, No. CV04-2788ABCPLAX, 2007 WL 5559351, at *5 (C.D. Cal. Mar. 13, 2007) (declining to consider a Korean contract with English translation because the translation was not certified and, therefore, are "not authenticated").

Guardant was not without recourse despite the failure to use a properly sworn in interpreter.  To the extent Guardant intended to rely on a transcript from the Andersen Hearing at trial—separate from the official record—there is a proper process for preparing a certified, translated transcript.  That process would require transcribing the proceeding in Danish and then preparing a certified translation of that Danish transcription.  Guardant has access to the videos from the Danish court of the proceeding conducted in Danish and has the ability to prepare a properly certified, translated transcript, but it chose not to.

To be clear, Natera is not seeking to exclude all evidence from the Andersen Hearing.  The

evidence under Danish procedures that reflects the testimony is the official Danish record prepared by the Danish judge. The Danish record was prepared according to the procedures of the Danish court, which included the Danish judge spending multiple hours over the course of two hearings to confirm paragraph-by-paragraph with Dr. Andersen that the record was an accurate reflection of his testimony. Brinck-Jensen Decl. ¶¶ 4-5. To the extent Guardant intends to introduce evidence from the Andersen Hearing, Natera contends that a certified translation of the official Danish record is what should be submitted to the Court.

**III.     CONCLUSION**

Based on the foregoing, Natera requests that the Court preclude Guardant from relying on or using portions of the unofficial transcript of the Danish hearing of the questioning of Dr. Claus Andersen (i.e., the Yan Transcripts) as deposition designations in this case.

DATED: November 4, 2024                     QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP


                                            By /s/ *Victoria F. Maroulis*
                                               Victoria F. Maroulis
                                               Attorneys for NATERA, INC., a Delaware
                                               corporation, Defendant and Counterclaim Plaintiff

1

**ATTESTATION**

2

      I, Andrew J. Bramhall, am the ECF user whose ID and password are being used to file the

3

above document.  In compliance with Local Rule 5-1(i)(3), I hereby attest that Victoria F. Maroulis

4

has concurred in the filing of the above document.

5

6

                  By * /s/ Andrew J. Bramhall*

7

                     Andrew J. Bramhall

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28