**Saul Perloff (157092)**
saul.perloff@aoshearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@aoshearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@aoshearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, TX 78701
Telephone (512) 647-1900

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

**Jennifer L. Keller (84412)**
jkeller@kelleranderle.com
**Chase Scolnick (227631)**
cscolnick@kelleranderle.com
Craig Harbaugh (194309)
charbaugh@kelleranderle.com
Gregory Sergi (257415)
gsergi@kelleranderle.com
**KELLER/ANDERLE LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>      Plaintiff and<br>      Counterclaim-Defendant,<br><br>   vs.<br><br>NATERA, INC.<br><br>      Defendant and<br>      Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**GUARDANT'S OPPOSITION TO NATERA'S MOTION TO EXCLUDE TESTIMONY FROM DR. CLAUS LINDBJERG ANDERSEN**<br><br>Motion Hearing: Nov. 4, 2024, at 8:30 am<br>Trial Date: November 5, 2024 |

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

Guardant respectfully opposes Natera's motion to exclude from trial testimony secured from Dr. Claus Lindbjerg Andersen, Dkt. 763 ("Motion").

3

## I.   **Introduction**

4

5

6

This Court repeatedly authorized the deposition of Dr. Andersen, both in the original Letters of Request, Dkt. Nos. 153 and 157, and most recently in its Minute Order memorializing its Order excluding post-COBRA evidence:

7

8

> Guardant may depose Dr. Anderson, and the Parties may use the deposition testimony at trial if otherwise admissible. This deposition pertains to the Reinert study in 2018-2019 and has nothing to do with COBRA.

9

Dkt. 719 (Oct. 15, 2024) at 2.

10

11

12

13

14

15

Dr. Andersen's testimony is admissible, relevant, and indeed critical. His testimony addresses key issues with respect to both Parties' claims, including how the authors of the Reinert study, in describing their own study as "prospective" and "blinded," understood the terms (and contradicts how Natera's other witnesses have testified about such issues). He also was emphatic that comparisons based on two studies that used disparate volumes of blood was an unfair "apples to pears" comparison. Dkt. 763-3 (Andersen Dep., Oct. 23, 2024) at 105:1-8.

16

17

Natera's primary opposition Dr. Andersen's testimony is that it is not the official "summary" of the Danish Court. But Fed. R. of Civ. P. 28(b)(4) provides:

18

19

20

> (4) *Letter of Request—Admitting Evidence.* Evidence obtained in response to a letter of request need not be excluded merely because it is not a verbatim transcript, because the testimony was not taken under oath, or because of any similar departure from the requirements for depositions taken within the United States.

21

22

23

24

25

26

27

28

Here, even those limitations are not present: Dr. Andersen's testimony was taken under oath. At Natera's insistence, Dr. Andersen's testimony was in Danish, rather than in the English in which Dr. Andersen is fluent. Dr. Andersen's testimony was translated at his deposition by a certified interpreter, Ms. Susanne Frank, who is regarded as one of the best Danish to English translators in Denmark. That translation was provided to Natera's counsel in real time. At no point during Ms. Frank's translation did Natera's counsel complain that it was inaccurate. Dr. Andersen's testimony was transcribed—also in real time and the transcription certified, by Ms. Sherry Yan, trained in U.S. court reporting, whom Guardant flew from Ireland to be present at Dr. Andersen's testimony.

1   Again, the real-time, rough, and final transcription was provided to Natera's counsel, without

2   objection. While Natera now purports to assert there are a few errors in Ms. Yan's transcription, it

3   provides no information regarding Natera's purported counter-translation, and indeed fails even to

4   identify the translator.

5         The Court should allow the use of Dr. Andersen's testimony, as translated and transcribed

6   during his deposition, at trial.

7   **II.   Dr. Andersen's deposition was taken under oath, translated by a certified**

8   **interpreter, and transcribed by a U.S.-qualified court reporter.**

9         The Court is aware of the many hurdles Guardant overcame to obtain the sworn testimony

10  of Dr. Andersen, the principal author of the Reinert Study. E.g., Dkt. 622 (Aug. 13, 2024) (status

11  update regarding Letters of Request); Dkt. 664 (Sept. 19, 2024) (further status update regarding

12  Danish Discovery). Indeed, as recently as September 23, 2024, Natera continued to raise objections

13  before the Danish Court. *See* Ex. A att'd to Hebert Decl. at 2 (Natera's argument to Danish Court

14  that: "Guardant has not met its burden of proving that the examination of Dr. Andersen is material

15  to the US trial and has not sufficiently stated the facts sought to be proved by this examination.")

16  Natera specifically "object[ed] to allowing Guardant's American lawyers to conduct the

17  questioning," *id.* at 2, and further insisted that the examination be conducted exclusively in Danish,

18  despite Dr. Andersen's fluency in English. *Id.* at 3. After arguing that only the parties' Danish

19  counsel could question Dr. Andersen, Natera asserted Guardant's Danish counsel was not

20  permitted to access the materials necessary to question Dr. Andersen.

21        On October 23 & 25, 2024, Dr. Andersen appeared at the Magistrates Court in Viborg,

22  Denmark. As Natera insisted, Guardant's Danish lawyers questioned Dr. Andersen, and the

23  testimony was in Danish. The testimony was simultaneously translated by Ms. Susanne Frank. *See*

24  Dkt. 763-3 (Tr. of Andersen Dep., Oct. 23, 2024), and Dkt. 764-4 (Tr. of Andersen Dep., Oct. 25,

25  2024). As reflected in her CV, Ex. B, Ms. Frank is "a certified conference interpreter to the EU

26  institutions," and she is fluent in Danish and English. She is "a sworn interpreter and translator in

27  Denmark," and she works "predominantly in the legal system," were she "specialized in criminal

28  law and organized crime investigations . . . ." *Id.* Her credentials include a Masters Degree in

International Business Communication (translation and interpreting), and over a dozen years of working as a Court and Police Interpreter and Conference Interpreter. *Id.* Ms. Frank's simultaneous translation was made available in real time to Natera's counsel, who were provided headsets by the Danish Court. Ms. Frank's translation was also transcribed by a U.S.-qualified court reporter, Ms. Sherry Yan, who Guardant brought from Ireland to Denmark to transcribe Dr. Andersen's testimony. She has certified the transcriptions of both days of the proceeding. *See* Ex. C.

III.    **Dr. Andersen's deposition testimony is extremely relevant to numerous key issues**

Dr. Andersen testified about how the Reinert Study described itself as "blinded," but then explained how Natera was actually unblinded to the sample order before providing results from Signatera, and that Natera conducted numerous re-analyses and changed results after being unblinded. While he initially testified that Natera was only unblinded to sample order on March 27, 2018, Dkt. 763-3 (Andersen Dep., Oct. 23, 2024) at 31:16-23, Dr. Andersen later admitted Natera was unblinded to the sample order more than two months earlier, on January 19, 2018, more than two months before Natera produced the initial results from Signatera. Dkt. 763-4 (Andersen Dep., Oct. 25, 2024) at 149:17-150:17 ("Oh my goodness, we did it. That's what we did."). Indeed, Dr. Andersen was visibly shocked that Natera in fact had been unblinded to the sample order before providing the results.

Moreover, Dr. Andersen testified that Natera continued to adjust its assay's results that would be reported in the Reinert Study after being unblinded to the clinical outcomes:

> Q. You confirmed on Wednesday and previously as well by accepting and standing by your declaration that **Natera reanalyzed some of the tests after being unblinded; correct?**
>
> A. **Yes.**
>
> Q. And you confirmed that after my rendition and your memory was jogged that you were also—that **you also agreed that their reanalysis of some of the patients' tests changed some of the ctDNA results?**
>
> A. **Yes. Yes. Yes.**

Dkt. 723-4 (Andersen Dep., Oct. 25, 2024) at 146:8-21 (emphasis added). Dr. Andersen further confirmed that some changes to the ctDNA results reported in the Reinert Study were made after Natera was unblinded *and* were based on results from an experimental version of the assay (called

DOCUMENT PREPARED
ON RECYCLED PAPER

"Pool 2") designed in coordination with Aarhus University (not Signatera) *after Natera learned which patients would recur.* Dkt 763-3 (Andersen Dep. Oct. 23, 2024) at 76:13-15 (Pool 2 designed after unblinding); *id.* at 90:16-23 (Pool 1 and Pool 2 data pooled into one); *id.* at 77:6-9.

Dr. Andersen's testimony is all the more important because it contradicts that of Natera's other witnesses. E.g., Rabinowitz Dep. 127:18-128:2 (criticizing Parikh Study as "unblinded" because "if you know that those patients have recurred, you absolutely cannot say that a study was blinded"); *id.* at 131:2-8 ("But I can say this: If we say that a test is blinded, we report the results when the -- when the results are blinded, and we would find out anything about the result reporting after the results are unblinded, and we then would not change our results or not do subsequent work on the samples. So I mean, it's pretty basic. We don't lie about samples being blinded. It's very basic."); *see also* Moshkevich Dep. 82:14-83:2; Sharma Dep. at 85:5-19.

Dr. Andersen's testimony is also relevant to showing the falsity of Natera's comparative advertisements. For example, he testified why it was important to have a minimum of 8 mL of plasma in the Reinert Study:

> Because when looking for cancer DNA in the blood, it's needed.·The blood doesn't contain a lot of cancer DNA. So that the material you are able to extract has to be on a certain scope to be able to determine if the testing is available. . . .

> That is what we needed in order to compare our test results with Natera's, we needed to be able to analyze 8 millimeters.

> Had we been using less, we would've known that the test would have been less likely to provide us with the same quality.

Dkt. 763-3 (Andersen Dep., Oct. 23, 2024) at 21:22-23:20; *id.* at 26:1-4 ("Q. So these patients, where it has been specified that it was 4 milliliters of less, they were excluded from the Reinert Study? A. As far as I remember, yes.") He also explained that it is important, as he had advised Natera, to not compare results from studies that used different sample volumes:

> If you give the possibility of analyzing 8 milliliters of plasma from the same person on the same blood sample, using one milliliter of plasma for another test based on the same principle, then the test that has eight times as much material also have eight times as much likelihood of showing something; therefore, you cannot compare head to head.·You should've made a comparison·with 8 milliliters in each.

GUARDANT'S OPPOSITION TO MOTION TO EXCLUDE ANDERSEN TESTIMONY
CASE NO. 3:21-CV-04062-EMC

*Id.* at 105:14-22. Accordingly, "compar[ing] Signatera's performance with another test using less blood" "would be comparing apples and pears." *Id.* at 105:1-8.[1]

Dr. Andersen also testified what it means for a study to be "prospective." Dkt. 763-3 (Andersen Dep., Oct. 23, 2024) at 150:20-1. He confirmed that the Reinert Study did not have a statistical analysis plan in advance, *id.* at 96:21-24, though the authors "knew what kind of statistical analysis we wanted to make.·We had thought about it.·It was not formulated in writing, and it wasn't published in a journal, and therefore, in a classical sense, an SAP does not exist, but of course we did have one." Dkt. 763-4 (Andersen Dep., Oct. 25, 2024) at 76:14-25.

## IV.     The transcript of Dr. Andersen's deposition is admissible and will be more helpful to the jury than the Danish Court's summary

Natera's objection to the use of Dr. Andersen's actual testimony relies, first, on a misplaced insistence that as an "official" record, the Danish Court's summary of Dr. Andersen's testimony somehow will serve the jury here in its fact-finding better than the testimony itself. Motion at 1-2. But it is *this* Court, not the Magistrate in Viborg, Denmark, that is empowered to "exercise reasonable control over the mode and order of examining witnesses," in order to "make those procedure effective for determining the truth." Fed. R. Evid. 611(a)(1). While summaries of testimony *may* be admissible in some circumstance, they are scarcely preferred. E.g., *Planned Parenthood of Columbia/Willamette, Inc. v . Am. Coal. of Life Activits*, 290 F.3d 1058, 1116-17 (9th Cir. 2002) (*en banc*) (Berzon, J., dissenting) ("substituting summaries of testimony for a word-for-word transcript itself can hardly serve as an 'effective' mode 'for the ascertainment of truth'").

To be clear, the availability of an "official" summary in no way precludes use of a verbatim transcript. In fact, the Federal Rules anticipate that depositions taken in foreign countries pursuant to a Letter of Request may differ somewhat from a deposition taken in this country, but gives this Court ample discretion to admit the testimony notwithstanding these differences: "Evidence obtained in response to a letter of request need not be excluded merely because it is not a verbatim

---

[1] Dr. Andersen also acknowledged that the lead-time of a test in a given study is dependent on frequency of scans. Dkt. 763-3 (Andersen Dep., Oct. 23, 2024) at 111:25-113:1 (acknowledging that "the frequency of testing influence[s] the lead time," and explaining why Signatera's lead time in the Henriksen 2 Study was half that of Signatera's lead time in the Reinert Study).

DOCUMENT PREPARED ON RECYCLED PAPER

1    transcript, because the testimony was not taken under oath, or because of any similar departure

2    from the requirements for depositions taken within the United States." Fed. R. Civ. P. 28(b)(4).

3    That there *is* a "verbatim transcript" and the testimony *was* "taken under oath" is all the more

4    reason that this actual testimony should be admissible.

5          Natera also complains that Ms. Frank, the interpreter, is somehow unqualified and was not

6    separately sworn. Motion at 5. But her CV illustrates her ample qualifications. *See* Ex. B; *see also*,

7    e.g., *Romero v. RBS Constr. Corp.*, No. 18-cv-0179, 2022 WL 522989, at *8 (D.D.C. Feb.22,

8    2022) (qualified translator need only be "competent"). Moreover, Ms. Frank's position is that of a

9    certified, "sworn" translator, who regularly appears in court. Ex. B. Ms. Frank accordingly

10   appeared at the deposition in Denmark, her translation took place in live court, and her translation

11   was available to Natera's US and Danish counsel *at the deposition*. Natera raised no objections to

12   either her presence or the accuracy of her translation. While Guardant is of course happy to provide

13   a supplemental sworn statement from Ms. Frank averring that she faithfully translated the

14   questions and answers of Dr. Andersen's testimony, e.g., *Lakah v. UBS AG*, 996 F. Supp. 2d 250,

15   258 (S.D.N.Y. 2014) (supplemental declaration "cure[d]" any objection), Natera cannot plausibly

16   suggest that this highly credentialed, independent professional would have done anything less.

17         Finally, Natera claims, on what it belatedly acknowledged, in a late-hour email, was a

18   rough translation from unspecified staff at its own Danish counsel, that it "potential[ly]" disagrees

19   with a handful of Ms. Frank's translations. *See* Motion at 5-6. Natera fails to note that almost half

20   of the potentially disputed cites are not even found in Guardant's designations. Ex. D (spreadsheet

21   with Andersen designations, illustrating that first, fifth, and sixth entries on Natera's were not

22   designated). But the answer to a supposed difference in possible translations is not to throw the

23   baby out with the bath water, but rather to let Natera present evidence of any supposed

24   mistranslations or mistranscriptions.

25         Natera cannot gainsay that Dr. Andersen's testimony is important—and indeed, critical. It

26   can point to no authority suggesting that a Danish Court's *summary* of that testimony is superior

27   to the actual *verbatim* testimony itself—much less any controlling authority that would *mandate*

28   the use of a summary while *prohibiting* the actual testimony. What is left is a hyper-technical

complaint that a sworn interpreter was not sworn, and nit-picking disputes over a few snippets of testimony. None of these complaints warrant exclusion of Dr. Andersen's testimony.

**V.    Conclusion**

Natera's Motion should be denied, and the Court should allow the jury to hear from Dr. Andersen.

Dated: November 3, 2024

**ALLEN OVERY SHEARMAN STERLING US LLP**

**SAUL PERLOFF**
By:   */s/ Saul Perloff*
        Saul Perloff

Attorney for Plaintiff
GUARDANT HEALTH, INC.

GUARDANT'S OPPOSITION TO MOTION TO EXCLUDE ANDERSEN TESTIMONY
CASE NO. 3:21-CV-04062-EMC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on November 3, 2024, to the counsel of record via email to qe-natera-guardant@quinnemanuel.com.

**Counsel for Defendants:**

Kevin P.B. Johnson

Victoria F. Maroulis

Andrew J. Bramhall

Anne S. Toker

Valerie Lozano

Andrew Naravage

Ryan Landes

Elle Wang

Margaret Shyr

Ryan Hudash

Brian Cannon

Jocelyn Ma

Kaitlin Keohane

Victoria Parker

*/s/ Saul Perloff*
Saul Perloff

GUARDANT'S OPPOSITION TO MOTION TO EXCLUDE ANDERSEN TESTIMONY
CASE NO. 3:21-CV-04062-EMC

DOCUMENT PREPARED
ON RECYCLED PAPER