| | |
|---|---|
| Saul Perloff (157092)<br>saul.perloff@aoshearman.com<br>Kathy Grant (*pro hac vice*)<br>kathy.grant@aoshearman.com<br>Andre Hanson (*pro hac vice*)<br>andre.hanson@aoshearman.com<br>Olin "Trey" Hebert (*pro hac vice*)<br>trey.hebert@aoshearman.com<br>ALLEN OVERY SHEARMAN<br>STERLING US LLP<br>300 W. Sixth Street, 22nd Floor<br>Austin, TX  78701<br>Telephone     (512) 647-1900<br><br>Christopher LaVigne (*pro hac vice*)<br>christopher.lavigne@aoshearman.com<br>ALLEN OVERY SHEARMAN<br>STERLING US LLP<br>599 Lexington Ave<br>New York, NY 10022<br>Telephone     (212) 848-4000<br><br>Jennifer L. Keller (84412)<br>jkeller@kelleranderle.com<br>Chase Scolnick (227631)<br>cscolnick@kelleranderle.com<br>Craig Harbaugh (194309)<br>charbaugh@kelleranderle.com<br>Gregory Sergi (257415)<br>gsergi@kelleranderle.com<br>KELLER/ANDERLE LLP<br>18300 Von Karman Ave., Suite 930<br>Irvine, CA 92612<br>Telephone  (949) 476-0900<br><br>Attorneys for Plaintiff/Counterclaim-<br>Defendant GUARDANT HEALTH, INC. | Kevin P.B. Johnson (SBN 177129)<br>kevinjohnson@quinnemanuel.com<br>Victoria F. Maroulis (SBN 202603)<br>victoriamaroulis@quinnemanuel.com<br>Andrew J. Bramhall (SBN 253115)<br>andrewbramhall@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, CA 94065-2139<br>Telephone     (650) 801-5000<br>Facsimile      (650) 801-5100<br><br>Anne S. Toker (*pro hac vice*)<br>annetoker@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010-1601<br>Telephone     (212) 849-7000<br>Facsimile      (212) 849-7100<br><br>Valerie Lozano (SBN 260020)<br>valerielozano@quinnemanuel.com<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>Telephone     (213) 443-3000<br>Facsimile      (213) 443-3100<br>Attorneys for Defendant/Counterclaim-<br>Plaintiff NATERA, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>  Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NATERA, INC.,<br><br>  Defendant and Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**JOINT SUBMISSION RE OBJECTIONS REGARDING OPENINGS (Dkt. 751)** |

**Guardant's Position on Natera's Opening Slides**

Pursuant to this Court's Order, Dkt. 751 (October 25, 2024), Guardant raises the following Objections to Natera's Opening demonstratives.

The Parties exchanged their proposed presentations for Opening statements at 4:00 on Sunday, November 3, 2024. The Parties then exchanged objections, and met and conferred. Following the conference, the Parties agreed to withdrew certain exhibits that had been the subject of objections. According, Guardant objects to only three of Natera's demonstratives, including:[1]

**TX-585**. Natera has represented that it intends to use Slide No. 7 of this November 12, 2020 Guardant presentation entitled "Guardant Health New Product Introduction." The slide is directed to explaining why Guardant should obtain Local Coverage Decision approval (that is, Medicare coverage) from MolDX for Reveal. As required by MolDX rules and regulations, Guardant's document compares the performance of Guardant's Reveal in the Parikh Study to the performance of Natera's Signatera (the then MolDX LCD holder) in the Reinert Study across five metrics (landmark and surveillance sensitivity; specificity; PPV, lead time, and CEA sensitivity and specificity). In this Court's *in limine* rulings, this Court held that "statements made to MolDX are not actionable." Dkt. 509 at 3; *see also id.* at 4 (noting that Natera's attacks on Reveal made to MolDX "were not made directly to potential consumers of Guardant or Natera's colorectal screening products, or in the paradigmatic advertising context.") Guardant's discussions regarding its non-advertising efforts to satisfy MolDX's regulatory standards by comparing aspects of the Parikh and Reinert Studies therefore have no role in this Lanham Act false advertising trial. It is apparent that Natera is going to use TX-585 to seek to mislead the jury into believing that Guardant also uses comparative advertising, when in fact it does not and engaged in this performance comparison to satisfy MolDX's regulatory requirements.. The exhibit is of limited (or no) relevance, and any relevance is significantly outweighed by the undue prejudice use of the

---

[1] Based on representations made by Natera's counsel during the Parties' meet and confer, Guardant does not object to Natera's plan to use pages 35, 36, and 37 of TX-598. Similarly based on counsel's representations, Guardant does not object to Natera's use of TX-1259 and TX-1268, peer-reviewed articles concerning Signatera used for breast and lung cancer, to the extent they are used only to show that Natera has peer-reviewed publications involving use in these different cancer types.

document would entail. Natera should be instructed to not use this irrelevant exhibit during its Opening.

**TX-1786 & TX-1787**: The first of these exhibits is a very recent article authored by Dr. Parikh involving Reveal as used with patients with oligometastatic CRC (a notoriously difficult form of cancer), while the second is a series of figures drawn from the study. Published on July 15, 2024 in the journal Clinical Cancer Research, the article post-dates the March 2024 "cut-off" imposed by this Court's sanctions ruling. *See* Dkt. 719. Moreover, Natera's counsel's has refused to state for what purpose this article will be used during the Opening. Dr. Parikh is no longer an expert witness in this case, and we are not aware of any relevance for either the article or the figures drawn from it. Accordingly, the Court should preclude use of an apparently irrelevance article that post-dates this Court's restrictions on evidence.

**Response to Natera's objections to Guardant's opening**. By contrast to Guardant's restraint, Natera has indicated that it intends to object to virtually all of Guardant's Opening, notwithstanding Guardant's accommodation to Natera's objections. In initial exchanges of objections, Natera claimed that about two-thirds of Guardant's presentation was "Argumentative and Misleading/False." Because the Parties have not exchanged their separate portions of this submission in advance, it is unclear which objections Natera will stand on.

One of the objections Natera raised is that Guardant will be playing short clips of deposition testimony. To be clear, Guardant is *not* going to offer deposition testimony in lieu of live testimony—it intends to question Natera's witnesses live. Natera also raised objections with respect to any mention of Dr. Claus Lindbjerg Andersen's deposition, and separately filed a motion to preclude use of his testimony. Guardant is separately responding to Natera's objections regarding the deposition transcripts for Dr. Andersen.

Natera improperly objects to a number of Guardant's slides based on this Court's ruling on Natera's MIL No. 2, Dkt. 509. However, this Court's ruling allows Guardant's use of evidence regarding Natera's statements to and about MolDX "for the purpose of showing Natera's state of mind at the time it launched its advertising campaign." *Id.* at 9. That is precisely the purpose of Guardant's slides. Finally, Natera improperly objects to Guardant's slides based on this Court's

ruling on Natera's MIL No. 3, but again this Court's ruling allows this evidence for the purpose presented by Guardant: "For example, Guardant points to documents wherein Natera employees described the Reinert study as 'blinded' while Natera employees had access to recurrence information as to patients in the study; this may shed light on the proper meaning of 'blinded' as asserted by Natera." Dkt. 509 at 15.

## I. NATERA'S POSITION ON GUARDANT'S OPENING SLIDES

<u>MolDX Material in Violation of MIL 2.</u>  Guardant's opening slides 14, 17, 20, 23, 25, 35, 37, 38, 39, and 59 argue that Natera "[p]ressure[d] Medicare to deny access to Guardant's life-saving test."  In granting-in-part Natera's MIL 2, the Court held that Guardant's claim that Natera's statements to MolDX affected any decision by MolDX is barred under FRE 403.  Dkt. 509 at 8.  As the Court recognized, this evidence cannot be the basis of liability under the Lanham Act, and would confuse the jury.  Guardant's argument that this all goes to state of mind would allow the narrow exception in the Court's order to swallow the rule.  At a minimum, a limiting instruction is necessary.

<u>Unreliable Andersen Transcripts, also in Violation of Multiple Orders Regarding the Reinert Study.</u>  Guardant's opening slides 4, 13, 28, 36, 41, 43, 45, 48, 65, 72, 73, 75, 76, and 78 improperly present the unofficial, unsworn transcripts of the Danish hearing of the questioning of Dr. Claus Andersen ("Andersen Hearing").  These transcripts are inadmissible pursuant to FRE 403, 604 and 901.  *See* Dkt. 763.  First, the transcripts do not reflect a verbatim transcript of Dr. Andersen's statements and, instead, were a transcript of Guardant's interpreter's simultaneous and uncertified translations.  Second, the interpreter was not under oath and, therefore, the transcripts are inadmissible under FRE 604.  Finally, Guardant did not provide any certification the translation was true and correct, and so are inadmissible under Rule 901.

Guardant also cannot circumvent the Court's orders excluding this evidence.  First, on summary judgment, the Court excluded Guardant's affirmative defense of unclean hands based on allegations that "Natera engaged in inequitable conduct in the Reinert study."  Dkt. 329-2 at 42.  Second, on the parties' motions *in limine*, the Court held that evidence of the Reinert Study can only be used for a very limited purpose:  "to shed light on the meaning of 'prospective' and 'blinded' — which are the subject of Natera's counter-claims against Guardant (asserting the Parikh study is fraudulent because those terms were mischaracterized) . . . ."  Dkt. 509 at 15 ("This evidence may be admitted for impeachment purposes only . . . .").  Finally, the Court excluded certain emails related to the Reinert Study as irrelevant because Guardant's claims against Natera are unrelated to the validity of the Reinert Study.  Dkt. 611 at 14-15.

Guardant Cannot Play Deposition Testimony of Live Witnesses.  Guardant's opening slides 19, 31, 45, 56, 58, 61, 68, 70, 71, and 74 present excerpted deposition testimony from several witnesses who are appearing live for trial, including Guardant's own witness Ms. Rich.  This violates the Court's ruling on deposition testimony for live witnesses (Dkt. 751), as well as FRE 106 and 403, and backtracks on Guardant's prior representations.  The Court noted that "Guardant stated they did not plan to use deposition testimony for live witnesses outside of impeachment purposes."  Dkt. 751 at 2:22-23.  Guardant represented that it "will not present adverse witnesses by deposition if they appear live at trial."  Dkt. 720 at 2.  Guardant objected to exactly this practice.  *See* Oct. 15, 2024 Tr. at 176:9-12, 178:4-6, 179:21-23.

Argumentative, Misleading, and/or False Headings and Content.  Guardant's slides 2, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20, 21, 22, 24, 25, 26, 27, 28, 30, 33, 34, 35,  40, 42, 44, 46, 47, 48, 49, 51, 52, 53, 55, 57, 58, 59, 61, 62, 64, 65, 67, 71, 72, 73, 74, 75, 76, 77, and 79 are argumentative, false, and/or misleading.  *See U.S. v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring) (purpose of opening "is to state what evidence will be presented . . . ; it is not an occasion for argument"); *See Engineered Floors, LLC v. Lakeshore Equip.*, 2024 WL 891796, at *1 (C.D. Cal. Feb. 15, 2024) (similar).  Guardant's opening includes argumentative statements such as "Bombard cancer doctors with false advertisements," "Pressure Medicare to deny access to Guardant's life-saving test," "Natera Panicked," and "Natera's War."  Guardant also includes false statements in its slides, such as "Guardant's Reveal Can Be Used By All Cancer Patients," "Medicare Approved Reveal as Equivalent or Superior to Signatera," "Danish Study: … Used another test (not Signatera) to boost performance," and "Signatera at Post-Operative – Detects Cancer (Sensitivity) Less Than Half the Time."

Additional Objections.  Natera maintains its objections to Guardant's use of TX 41 (FRE 105, 403, Dkt. 611 at 11), and TX 156 and 227 (105, Natera MIL 2).  Natera objects to slide 7 because it contains incomplete, partial answers; slides 47 and because they lack foundation and are hearsay; slides 16, 50, 63, 66 and 79 under FRE 402 and 403; slides 34 and 41 as excluded under MIL 3 (Dkt. 509 at 14-15); and slide 77 because it contains undisclosed expert testimony.

## II. NATERA'S RESPONSES TO GUARDANT'S OBJECTIONS

TX-585 is a Guardant document in which Guardant directly compares Signatera and Reveal, and the Reinert and Parikh studies, in a presentation submitted to MolDx. It is directly relevant to Guardant's central claim that comparing Signatera and Reveal, and the Reinert and Parikh studies, is a misleading "apples-to-oranges" comparison. Guardant cannot seek to exclude evidence of its own comparisons between the Reinert and Parikh studies while claiming Natera's comparisons are misleading.  Nor is TX-585 barred by the Court's ruling on Natera's MIL 2, which related to Natera's communications with MolDx—not Guardant's.  In any event, the Court ruled that those communications with MolDx were relevant to show state of mind, and Guardant references Natera's communications with MolDx throughout its opening demonstratives.

TX-1786 (a publication) and TX-1787 (accompanying supplementary data) are not subject to the Court's Order (Dkt. 730), which issued a sanction in the form of "excluding COBRA in its entirety, Dr. Hochster's supplemental report on COBRA, and other discovery flowing from COBRA."  The Court "turn[ed] back the clock on this issue" but did not exclude all facts that have arisen in the interim.  Neither of these exhibits mention COBRA.  The publication (TX-1786) states that it was received on November 28, 2023, months before the Court's cutoff.  It was co-authored by several Guardant witnesses who will testify at trial, was co-authored by Drs. Corcoran and Parikh, and is relevant to Reveal and the 2021 Parikh study.

As to Guardant's Positions:

Dated: November 3, 2024

**A&O SHEARMAN**

By: */s/ Saul Perloff*
     Saul Perloff

Attorney for Plaintiff/Counter-Defendant
GUARDANT HEALTH, INC.

As to Natera's Positions:

DATED: November 4, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Andrew J. Bramhall*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100

Attorneys for Defendant and Counterclaim-Plaintiff, NATERA, INC.

**FILER'S ATTESTATION**

Pursuant to Civil LR 5.1(i)(3), the undersigned hereby attests that concurrence in the filing of this **JOINT SUBMISSION RE CROSS-OBJECTIONS TO OPENINGS** has been obtained from counsel for Natera, Inc. and is electronically signed with the express permission of Natera's counsel.

Date: November 3, 2024

By: */s/Saul Perloff*
Saul Perloff

Attorney for Plaintiff/Counter-Defendant
GUARDANT HEALTH, INC.

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5-5, I certify, that on November 4, 2024, this document, filed with the Court through the CM/ECF system, will be sent electronically to the registered participants at their e-mail addresses as identified in the Notice of Electronic Filing (NEF). Non-CM/ECF participants will be served via First-Class Mail.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of November.

/s/ Saul Perloff
Saul Perloff