QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
valerielozano@quinnemanuel.com
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Anne S. Toker (*pro hac vice*)
annetoker@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Derek L. Shaffer (Bar No. 212746)
1300 I Street, Suite 900
Washington, DC 20005
derekshaffer@quinnemanuel.com
Telephone: (202) 538-8000
Facsimile:  (202) 538-8100

Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NATERA, INC.<br><br>Defendant and Counterclaim-Plaintiff. | CASE NO. 3:21-CV-04062-EMC<br><br>**NATERA, INC.'S OBJECTION TO GUARDANT'S COUNSEL IMPROPERLY TESTIFYING TO THE JURY**<br><br>Hearing: November 12, 2024<br>Time: 8:00 a.m.<br>Place: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

1  Natera Inc. ("Natera") objects to counsel for Guardant Health, Inc. ("Guardant") improperly
2  arguing and mischaracterizing evidence to the jury during witness exams.  Attorney argument is not
3  evidence, and it is impermissible for Guardant's counsel to continually mischaracterize evidence to
4  the jury.  Despite this, Guardant's counsel continues to make objectionable preambles before or
5  while questioning witnesses, which include misstating evidence, falsely suggesting witnesses are
6  lying, and belittling witnesses.  We are still at the outset of the trial, and witness examinations are
7  not the appropriate time or forum for attorneys to argue the evidence or to testify.  Guardant's
8  counsel can save their soliloquies and one-liners for closing.  Natera is raising this issue with the
9  Court and outside of the purview of the jury because it has been and will continue to be prejudiced
10 if it has to either continuously object to Guardant's counsel's improper and misleading tactics,
11 suggesting to the jury it is attempting to prevent evidence from being heard, or allow the
12 improprieties to continue.  Natera requests that the Court preclude Guardant's counsel from offering
13 improper attorney argument and mischaracterizations of the evidence.

14  There are many examples where Guardant's counsel has repeatedly testified and
15 mischaracterized the evidence, a few of which are included below:

- Ex. A (2024/11/07 Trial Tr.) at 578:6-13.

   > Q.  And you didn't tell the sales force that the Reinert study, the Danish study, excluded 150 samples because they were 4 milliliters or less, the amount that was used in all the Reveal samples?  You didn't tell them that, did you?
   > ***A.  I didn't even know that.  If that is true or not, I don't know.***
   > ***Q.  It's true.***

- Ex. A (2024/11/07 Trial Tr.) at 567:8-13.

   > Q.  Okay.  I want to shift gears and ***discuss with you Signatera's apples-to-oranges comparison chart, and that would be Exhibit 126, which is already in evidence***.  You helped prepare this, didn't you?
   > A.  I'm not -- if it's the grid, then, yes.  I'm not seeing anything on my screen, though.

- Ex. A (2024/11/07 Trial Tr.) at 585:17-24.

   > Q.  Let's show you Slide 3 of that exhibit.  That's Page 3.  And this slide -- if you look up here at this box at the top right, it says [as read]:  "No changes to this grid.  All points remain valid."
   > A.  That is true.
   > ***Q.  But they weren't, were they?  They weren't still valid.  You knew better, didn't you?***

1         A. I did not.

2 •    Ex. A (2024/11/07 Trial Tr.) at 520:13-521:8.

3         [after listing the members of Project Solar at Natera]
        ***Q. It sounds like this was a pretty big threat.*** And that
4         SOLAR squad met every week; right?
        A. We met every week, yes.

5

6 Guardant's counsel has also improperly suggested that witnesses who are on the stand under

7 oath are lying by mischaracterizing documents or deposition testimony without actually showing

8 them the documents, for example:

9 • *Compare* Ex. A (2024/11/07 Trial Tr.) at 532:18:533:10 *with* Ex. B (Masukawa Dep. Tr.) at 86:9-12 ("Q. But I'm right that you wanted MolDX not to approve Guardant for reimbursement? A. *Incorrect. We wanted MolDX to look at the evidence in the right way.*").

10

11         Q. So even before the commercial launch of Reveal, you and Dr. Aleshin were already thinking of how you could interfere with Guardant Health's ability to get coverage from Medicare; right?
12         A. We wanted to make sure Medicare was evaluating the evidence appropriately.
13         ***Q. Yeah, so they wouldn't cover it, as you said in your deposition elsewhere; right?***
14         A. If it didn't meet the standard that we set, then --
        Q. Not my question. Let me ask it again. Your goal here was to keep
15         Guardant Health from getting coverage by Medicare for its Reveal test?
        A. My goal was to have MolDX educated and evaluate the evidence in
16         the right way.
        ***Q. So it would turn it down for Medicare, as you said in your***
17         ***deposition?***
        A. If MolDX had approved Guardant with the evidence they had, that
18         would have been MolDX's decision.

19 • *Compare* Ex. A (2024/11/07 Trial Tr.) at 496:14-496:20, *with* Ex. C (Masukawa LinkedIn) (correctly reflecting that Kevin Masukawa worked for Natera from *2019* through 2023).
20

21         Q. Okay. Now that we've gotten that out of the way, ***you worked for Natera from November 2015 to October of 2023; is that right?***
22         A. ***No.***
        Q. Oh, I'm sorry. ***I'm just going from your LinkedIn***. What were --
        what were the dates?
23         A. October 2019 until October-November 2023, four years.

24 Guardant's counsel also regularly cuts witnesses off, and belittles them in front of the jury,

25 for example:

26 •    Ex. A (2024/11/07 Trial Tr.) at 589:1-22.

27         ***Q. That doesn't sound very consistent with your scientific training, Doctor. It's not, is it?***
28         A. What doesn't?

1   Q. You've got a PhD in chemistry; right?
    A. Yes.
2   Q. If you were running a chemistry experiment and somebody came long and said, "Hey, somebody's complaining that your analysis is wrong and it's false and you're putting stuff out there that's false," the scientific method would require you to say, "Let me see that and examine it"; right?
    A. Well, it would require me to let me see the data that was in there. I don't care what's in the letter, actually.
    Q. How about, "Let me see the letter so I can see what data they cite in the letter"? ***I mean, this is all -- this is all pretty basic stuff, Doctor. If you were a scientist, you'd want to see it, Wouldn't you?*** If somebody says "Your whole experiment is based on false data, false advertising, you're wrong," you'd say, "Let me see that. I want to look at it, see if I can falsify my experiment"; right?A. I trust our Legal Department.

- Ex. A (2024/11/07 Trial Tr.) at 513:21-514:15

   Q. That was something you reviewed in preparing to testify; right?
   A. Yes.
   Q. You reviewed documents. You reviewed slides. And you know that was directed specifically at Reveal; right?
   A. Yes. It was to address the misleading claims that we saw.
   Q. That's not what I asked you. I understand that's what you want to say. That's not what I asked you. What I asked you was: Project SOLAR was directed at Reveal; right?
   A. I think it was directed at the claims that Reveal was making, correct.
   ***Q. Is that something you've been preparing to say in regard to any question that I ask you about SOLAR?***
   A. No.
   ***Q. Is that a canned answer that you have in case I ask you anything about SOLAR?***
   A. No.
   ***Q. Because it sure sounds like it, Doctor.***
   A. It is the truth.

- Ex. A (2024/11/07 Trial Tr.) at 521:24-522:2.

   Q. I understand. ***I understand that you want to keep saying that. And, again, I'm going to ask you: Is that a canned answer you've prepared?***
   A. No.

- Ex. A (2024/11/07 Trial Tr.) at 517:19-518:17.

   Q. It had not yet launched; right?
   A. I mean, as I mentioned previously, launching --
   ***Q. I understand. I understand that you say "launching" could mean a lot of things, and it could cover a huge time period. Okay.***
   A. Yes.
   ***Q. We get that.*** It hadn't been presented to be commercially available yet?
   A. They did not mention that in the JPMorgan conference, no.

- Ex. A (2024/11/07 Trial Tr.) at 524:22-525:7.

> Q. Okay. So back to what I was saying. You were already attacking Guardant's Reveal before it was even put into the stream of commerce; right?
> A. No. I don't know when -- Q1 could be January 1. Q1 could be February. You know, I don't know when exactly they launched.
> Q. Okay. That wasn't something you reviewed?
> A. No.
> ***Q. Because "launch" could be so vague. It could be a year and a half. You can move it up or back, however you want; right? Exhibit 94, the email thread about these slides showed Guardant had a 91 percent sensitivity for recurrence detection with surveillance samples; right?***
> A. Sorry. Where are you looking?

- Ex. A (2024/11/07 Trial Tr.) at 524:22-525:7.

> Q. And he's talking about those very slides, Guardant slides from JPMorgan, confirmed launching MRD in Q1. ***Apparently, they actually don't take the position that a launch could be up to 18 months.*** So I want you to look at the part, second sentence that says -- well, the first [as read]: "They are misrepresenting their data. They do not have 91 percent sensitivity at the landmark time point, but that's what the slide makes it look like." Do you see that?
> A. Yes, I do.

- Ex. A (2024/11/07 Trial Tr.) at 525:16-19.

> Q. That's not what I'm asking, sir. ***Let me see if -- and I want to ask you another question. Is it part of your strategy as a witness to use up as much time as possible knowing that we're all on the clock?***

- Ex. A (2024/11/07 Trial Tr.) at 561:13-20.

> Q. And you were already getting ready for a rebuttal. You wanted a key opinion leader; right?
> A. To provide their perspective, correct.
> Q. Again, before you had even seen the study; right?
> ***A. We saw the study at ESMO 2020 before --***
> ***Q. You saw a poster.*** You had not read the study because it hadn't even been published yet by Dr. Parikh; right?
> A. It had not formally been published in a journal.

These tactics are inappropriate and prejudicial, and Natera requests that the Court preclude Guardant's counsel from continuing to employ them.

DATED: November 11, 2024                QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                        By /s/ *Kevin P.B. Johnson*

1
2   Kevin P.B. Johnson
    Attorneys for NATERA, INC., a Delaware
    corporation, Defendant and Counterclaim Plaintiff
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ATTESTATION

I, Andrew J. Bramhall, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(i)(3), I hereby attest that Kevin P.B. Johnson has concurred in the filing of the above document.

By /s/ Andrew J. Bramhall
Andrew J. Bramhall