**Saul Perloff (157092)**
saul.perloff@aoshearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@aoshearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@aoshearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, TX 78701
Telephone (512) 647-1900

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

**Jennifer L. Keller (84412)**
jkeller@kelleranderle.com
**Chase Scolnick (227631)**
cscolnick@kelleranderle.com
Craig Harbaugh (194309)
charbaugh@kelleranderle.com
Gregory Sergi (257415)
gsergi@kelleranderle.com
**KELLER/ANDERLE LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>  Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NATERA, INC.<br><br>  Defendant and Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**GUARDANT'S RESPONSE TO NATERA'S TRIAL BRIEF REGARDING REFENCES TO "APPLES-TO-ORANGES" EVIDENCE (DKT. 788) AND COMPLAINTS ABOUT GUARDANT'S LAWYERS' ADVOCACY (DKT. 789)**<br><br>Next Trial Date: November 12, 2024 |

Guardant respectfully offers this response to Natera's "apples-to-oranges" trial brief, Dkt. 788, and its complaints about Guardant's lawyers' trial advocacy, Dkt. 789.

I. **It is fair and necessary for Guardant to refer to "apples-to-oranges" in its opening argument and in factual questions**

This is a case that, at its heart, is about Natera's apples-to-oranges false advertising. It is so central to the case that it is included, over Natera's repeated objections, in the Court's Final Jury Instructions. Dkt. 759 at Instruction No. 31. There is nothing improper about using the phrase "apples-to-oranges" in opening arguments, as demonstrated by Mr. Johnson's own opening on behalf of Natera:

> The evidence will show this is not apples-to-oranges. This is data from two published clinical trials that each evaluated the performance of a product used to test for recurrence of colorectal cancer.

Trial Tr. 236:19-22;

> Now, Guardant argues it was wrong for Natera's ads to compare data from the Parikh study with data from the Reinert study. That's what they call the apples-to-oranges comparison. And you'll hear that every piece of data in this ad is literally true and taken directly from the cited references.

Trial Tr. 264:20-25;

> The evidence will show the difference in sample volume size does not make the studies apples-to-oranges. Once again, Guardant says one thing when it's helpful to them and another when it's not.

Trial Tr. 268:18-23.

Nor is it in any way improper to ask a witness whether a side-by-side comparison is a fair, "apples-to-apples" comparison, or if it is an unfair, "apples-to-oranges" comparison. "Apples-to-oranges" is a concept found in both Parties' cited exhibits, including, for example, TX-056 (transcription of Mar. 21, 2021 Natera presentation, "Evidence Review: Tumor-Informed vs. Tumor-Naïve MRD," at 2) (training Natera's sales representatives that: "where it is possible to make some 'apples-to-apples' comparison, it looks like tumor-informed method performs significantly better, pretty much across every metric"); *see also* TX-1309 at 19 (earnings call transcript). In testifying about Natera's May 6, 2021 training of its sales representatives, TX-069 ("Guardant Reveal CRC Review (COS training)"), Natera's former head of oncology sales, Dr.

1

GUARDANT'S RESPONSE TO NATERA'S "APPLES-TO-ORANGES" AND TRIAL
ADVOCACY TRIAL BRIEFS, DKT. NOS. 788 AND 789
CASE NO. 3:21-CV-04062-EMC

DOCUMENT PREPARED ON RECYCLED PAPER

Kevin Masukawa, admitted he had presented Natera's side-by-side comparisons as "apples-to-apples" to Natera's sales force:

> BY MS. KELLER:
> Q. When communicating with the sales force about this performance grid, you indicated these were apples-to-apples comparisons, didn't you?
> A. Yes, in terms of the metrics that we were looking at.
> Q. You suggested it was an apples-to-apples comparison; right?
> A. ***I believe the term I used was "as close to apples-to-apples as you can get."***
> Q. Right. "As close to apples-to-apples as you can get," that was your phrase; right?
> A. Correct.

Trial Tr. 578:18-579:3 (emphasis added). In light of this testimony, it was entirely proper for Guardant to then ask:

> Q. And that wasn't true, was it?
> A. What wasn't true?
> Q. It wasn't true at all, that it was as close to an apples-to-apples comparison as you could get. It was apples-to-oranges, wasn't it?
> A. No.
> Q. Well, you now agree that it would be a mischaracterization for Natera's sales representatives to claim Signatera had outperformed Reveal in an apples-to-apples comparison? That would be a mischaracterization; right?
> A. I was cautious to use the term --
> Q. Not my question.
> You now agree it would be a mischaracterization; true?
> A. Mischaracterization to say what again? Sorry.
> Q. So if the sales representatives went out and said, "Look, this is an apples-to-apples comparison and Signatera outperforms Reveal," that would be wrong; right?
> A. I think, without context, that's -- I do not like that statement.
> Q. In fact, that would be a mischaracterization; right?
> A. I think without additional context, that statement is not the best statement.

Trial Tr. 579:4-25. But as the trial record makes clear, Dr. Masukawa's hedging was itself misleading:

> MS. KELLER: Your Honor, I'd like to read from Page 270, Lines 10 through 14, of the deposition transcript.
>
> …
>
> "QUESTION: And you agree with me that on this Signatera versus Reveal performance comparison, this is not apples-to-apples; right?
> "ANSWER: Because they're different studies.
> "QUESTION: Yeah.
> "ANSWER: Yes.
> "QUESTION: So if the sales representatives went out and said, 'Look, this is an apples-to-apples comparison and Signatera outperforms Reveal,' that would be wrong; right?

2

GUARDANT'S RESPONSE TO NATERA'S "APPLES-TO-ORANGES" AND TRIAL
ADVOCACY TRIAL BRIEFS, DKT. NOS. 788 AND 789
CASE NO. 3:21-CV-04062-EMC

"ANSWER: That would be a mischaracterization."

Trial Tr. 579:1-579:25. Preventing Guardant from asking Natera's witnesses about such admissions makes no sense, and is obviously prejudicial.

Likewise, Natera's suggestion that because "apples-to-oranges" is referenced in the jury instruction, it is somehow a legal conclusion makes no sense. That very same instruction, No. 31 (Dkt. 759), instructs the jury as to "false or misleading" advertising. It cannot be that a witness in a false advertising case cannot be asked—and cannot testify—whether a specific ad is "false." E.g., *U.S. v. DeFoor*, 625 Fed. Appx. 784, 787 (9th Cir. 2015) (in a False Claims Act case, expert allowed to testify that defendant's claims were "false").

In *DeFoor*, the Ninth Circuit explained that a witness may testify using phrases that have a legal meaning, including that a defendant "voluntarily robbed a bank" or "acted under fear of death or grave bodily harm" "because 'the average layperson would understand those terms and ascribe to them essentially the same meaning intended by the expert witness.'" *Id.* at 786 (quoting *U.S. v. Hearst,* 563 F.2d 1331, 1351 (9th Cir. 1977) (brackets omitted). And in *DeFoor,* "it is clear that, when Agents Bare and Bauer testified that Defoor's claims were 'false,' they were using the term in a manner that the average layperson would understand." *Id*. at 786-87 (quotations omitted). Importantly, the appellant in *DeFoor*, like Natera, had "not identified, nor have we found, any authority suggesting that the term 'false' has a specialized meaning in the law that is different from what the term means in the vernacular." *Id.* at 787. Similarly, Natera has not argued, much less shown, that "apples-to-oranges" was used with a specialized meaning during questioning beyond the lay jury's understanding.

Unlike questions of law, "[a] lay witness may testify as to an ultimate issue of fact, so long as the testimony is otherwise admissible." *U.S. v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001). In *Crawford,* the Ninth Circuit addressed whether three questions were acceptable questions of fact, or improper questions about the law. The first question went to the definition of "an affiliated organization," to which the witness answered: "'We consider an affiliated organization an organization that uses the University's name, facilities, personnel or equipment in the course of

3

GUARDANT'S RESPONSE TO NATERA'S "APPLES-TO-ORANGES" AND TRIAL
ADVOCACY TRIAL BRIEFS, DKT. NOS. 788 AND 789
CASE No. 3:21-CV-04062-EMC

their activities.'" 239 F.3d at 1091. This was *not* a question of law:

> The question did not call for Trentalange to explain the legal definition of "affiliated organization," or to conclude that the Arthur Wesley Dow Association was an "affiliated organization." Nor did Trentalange so testify. He simply told the jury, based on his experience with UCLA's policies, how UCLA used the term "affiliated organization."

*Id.* A question as to ownership also was not problematic. *Id.* In this regard, a witness answered "no" to the question: "does the fact that a particular item doesn't appear on an inventory mean that the University is basically saying we don't own it?" *Id.* But the witness "did not conclude that, in such circumstances, UCLA would or would not own a particular item; he only testified that such a circumstance would not signify that the University intended to forgo ownership." *Id.* The only problematic question—that in the end harmless question—went to the legal term "abandonment." *Id.* ("the jury could have read Trentalange's statement to mean that UCLA cannot, as a matter of law, be found to have 'abandoned' property).[1]

"Apples-to-oranges" is not a legal concept like "abandonment," but rather a colloquial description of a comparison between two things that are not alike. Just as a witness may testify whether advertising is truthful or false, it is entirely appropriate for a witness to be asked whether a comparison with which the witness is personally familiar is an "apples-to-apples" or "apples-to-oranges" comparison. *DeFoor*, 625 Fed. Appx. at 786-87; *see also J.G. v. Los Angeles Unified School District*, 19-cv-126, 2020 WL 6565322, at *4 (C.D. Cal. 2020) (testimony by lay witness that placement in program was "proper" and "appropriate", though probative as to the ultimate issue of fact for plaintiff's ADA claim, was nonetheless appropriate because the meaning of those

---

[1] *Imbach v. Clark*, No. 09-cv-1957, 2012 WL 3206670 (C.D. Cal. Jan. 10, 2012), the only other cases cited by Natera, involved a habeas petition arising from a state court conviction. In the section cited by Natera, the Magistrate Judge agreed with the California Court of Appeal that a prosecutor's questions to the criminal defendant's mother regarding her "son's addiction to child pornography" were "argumentative because they were asked not to elicit relevant testimony from the witness, but rather to seek to make the point that the witness did not find petitioner's 'addiction to child pornography' inappropriate, and that she did not want to know about that addiction." *Id.* at *37. The court went on to conclude that questioning did not deprive the petitioner of due process. It is not clear what possible relevance this case could have to the issues raised in Natera's trial brief; the questions about "apples-to-oranges" comparisons were not argumentative, but rather asked to secure relevant testimony.

DOCUMENT PREPARED ON RECYCLED PAPER

terms was based on common knowledge and, in context, had no legal significance that might require professional expertise); *Fulfer v. WinCo Holdings, Inc.*, 1:15-cv-999, 2019 WL 5536326, at *9 (E.D. Cal. 2019) (rejecting argument that lay testimony called for improper legal conclusion where: (1) testimony was based on personal knowledge; and (2) "it is not a legal conclusion for Plaintiff to declare that he intended to avail himself of any FMLA leave which he had available. Plaintiff does not need to exercise legal judgment in order to tell his supervisors that he himself intended to do something in the future.")

Guardant's questions about "apples-to-oranges" go to key facts of this case, and are in no way improper.

### II. Guardant's trial lawyers are acting well within the bounds of acceptably advocacy

Natera's complaint about Guardant's lawyers' trial advocacy is simply misplaced. It was plain to all that Natera's witness, Dr. Masukawa, had been thoroughly prepared to be non-cooperative. Guardant's counsel treated Dr. Masukawa respectfully but firmly. While Natera now claims that such treatment was "improper," most of the supposed examples highlighted by Natera were met with no objections at trial. E.g., Dkt. 789-2, citing excerpts of Trial Tr. 496 (no objection); 513-514 (no objection); 517-518 (no objection); 520-521 (no objection); 524-525 (no objection); 532-533 (no objection); 561 (no objection); 567 (no objection); 585 (no objection); 589 (no objection). In the few instances Natera preserved an objection, and the Court agreed with it, Guardant promptly moved on. E.g., Dkt. 789-2 (excerpts of testimony at Trial Tr. 525:21-526:4:"If the witness doesn't answer properly, I will instruct him he should answer 'yes' or no,' and I said I'll give you a short chance to explain. So please listen to the question.") This, of course, is how objections are handled: they are raised, and if appropriate, sustained, and the Court's direction is followed. There is no suggestion that Guardant has not faithfully complied with the Court's directions in this case.

But there is a potential problem highlighted by Natera's submission. As Natera notes, "[w]e are still at the outset of the trial . . . ." Dkt. 789 at 2. Although the Parties engaged in a four-hour meet-and-confer on the evening of Sunday, November 10, 2024, to discuss exhibit objections,

DOCUMENT PREPARED
ON RECYCLED PAPER

5
GUARDANT'S RESPONSE TO NATERA'S "APPLES-TO-ORANGES" AND TRIAL
ADVOCACY TRIAL BRIEFS, DKT. NOS. 788 AND 789
CASE NO. 3:21-CV-04062-EMC

Natera made no mention of its intent to file either of its Trial Briefs, or raise with counsel any concerns they had about either the use of "apples-to-oranges," or its generalized complaints about Guardant's lawyers' trial advocacy. Instead, they filed back-to-back briefs on a federal holiday.

Going forward, Guardant proposes that the Parties reduce the burden on the Court with unnecessary submissions. There is no apparent reason Natera's submissions needed to span more than a page or two. Dkt. 719 (directing Parties to submit a one-page brief regarding Court's discretion to control presentation of witness testimony); Dkt. Nos. 720 & 721 (briefs complying with Court's direction).

### III.  **Conclusion**

Natera's complaints about "apples-to-oranges" evidence and Guardant's lawyers' trial advocacy should be rejected.

Dated: November 11, 2024

**ALLEN OVERY SHEARMAN STERLING US LLP**

**SAUL PERLOFF**
By:  /s/ Saul Perloff
          Saul Perloff

Attorney for Plaintiff
GUARDANT HEALTH, INC.

6

GUARDANT'S RESPONSE TO NATERA'S "APPLES-TO-ORANGES" AND TRIAL ADVOCACY TRIAL BRIEFS, DKT. NOS. 788 AND 789
CASE NO. 3:21-CV-04062-EMC

DOCUMENT PREPARED ON RECYCLED PAPER

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on November 11, 2024, to the counsel of record via email to qe-natera-guardant@quinnemanuel.com.

**Counsel for Defendants:**

Kevin P.B. Johnson

Victoria F. Maroulis

Andrew J. Bramhall

Anne S. Toker

Valerie Lozano

Andrew Naravage

Ryan Landes

Elle Wang

Margaret Shyr

Ryan Hudash

Brian Cannon

Jocelyn Ma

Kaitlin Keohane

Victoria Parker

/s/ Saul Perloff
Saul Perloff