**Saul Perloff (157092)**
saul.perloff@aoshearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@aoshearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@aoshearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, TX 78701
Telephone (512) 647-1900

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

**Jennifer L. Keller (84412)**
jkeller@kelleranderle.com
**Chase Scolnick (227631)**
cscolnick@kelleranderle.com
Craig Harbaugh (194309)
charbaugh@kelleranderle.com
Gregory Sergi (257415)
gsergi@kelleranderle.com
**KELLER/ANDERLE LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GUARDANT HEALTH, INC.

Plaintiff and Counterclaim-Defendant,

vs.

NATERA, INC.

Defendant and Counterclaim-Plaintiff.

Case No. 3:21-cv-04062-EMC

**GUARDANT'S TRIAL BRIEF TO PRECLUDE FURTHER EVIDENCE REGARDING MOLDX DELAY OF MEDICARE COVERAGE AND MISLEADING THE JURY THAT GUARDANT'S COMMUNICATIONS WITH MOLDX CONSTITUTE "ADVERTISING" IN VIOLATION OF ORDER ON NATERA MIL NO. 2 (DKT. 509 / DKT. 572)**

Next Trial Date: November 13, 2024

Document Prepared on Recycled Paper

Guardant respectfully asks the Court to preclude Natera from offering further evidence regarding MolDX's delay of Medicare coverage for Reveal, or from misleading the jury into believing that Guardant's communications with MolDX constitute "advertising," in violation of this Court's Order on Natera's MIL No. 2, Dkt. 509, public redacted Dkt. 572.

## I. Natera has turned MIL No. 2 into a sword and a shield

As the very start of Project SOLAR, Natera identified a strategy of communicating with MolDX about "the GH test" as key to its "innovative ideas to blunt Guardant." TX 097 (Jan. 22, 2021). Following Natera's concerted (though behind-the-scenes) efforts, e.g., TX-225, MolDX delayed extending coverage for Reveal by about a year. In its second motion in *limine*, however, Natera contended that evidence of its efforts to interfere with MolDX's coverage approval for Reveal should be excluded from trial.

In addressing MIL No. 2, the Court held that to constitute "advertising," "[t]he Lanham Act requires that the communication be directed at or received by consumers." Dkt. 572 at 5. Here, "Natera's letters to MolDX"—like Guardant's own communications with MolDX—"were not disseminated to consumers directly but sent privately to MolDX." *Id.* Accordingly, the Court held that Natera's communications with MolDX were not "advertising." *Id.*

Because Natera's false statements to MolDX did not constitute "advertising," they were not actionable as false advertising under the Lanham Act. Dkt. 572 at 6-7. And for this reason, for its lost profits claim, Guardant will not be allowed to show the jury that MolDX delayed Medicare approval for Reveal. *Id.* at 7. Moreover, the Court concluded that "determining whether MolDX would not have delayed approval but for the statements made by Natera . . . would involve establishing the thoughts and motivations of MolDX officials, examination of all the materials considered by MolDX, and would thus entail a trial within a trial to prove causation." *Id.* at 8. Thus, as Natera had asked, evidence about the reasons for MolDX's delay of Medicare coverage are expressly excluded from trial. *Id.* at 9 ("Evidence regarding the outcome of statements made by Natera to MolDX ***and the decision to delay coverage is to be excluded at trial***.") (emphasis added).



DOCUMENT PREPARED ON RECYCLED PAPER

On the other hand, the Court expressly did not exclude *all* evidence regarding Natera's statements to MolDX. This is so because:

> the statements made [by Natera] to MolDX do inform Natera's state of mind when it embarked upon its advertising against Guardant's product, Reveal. Specifically, to the extent that Natera made unfounded statements to MolDX regarding issues with Reveal, this tends to show Natera's intent to disparage Guardant/Reveal, including a motivation to undermine Reveal in its advertising statements as well.

Dkt. 572 at 8. As the Court explained, "Natera's state of mind is relevant in a few ways. If Guardant establishes that Natera intended to deceive consumers, there is a presumption that consumers were in fact deceived," and "punitive damages may be appropriate if Guardant establishes that Natera acted maliciously." *Id.* (citation omitted). Similarly, Guardant is allowed to use Natera's communications with MolDX to rebut Natera's "narrative" "that in challenging Reveal, it was motivated by altruism and a desire to save patients and educate oncologists." *Id.* at 8-9 (observing: "Natera's statements to MolDX may be probative in this regard."); *accord,* Dkt. 611, public redacted Dkt. 625-3 at 11 (bellwether rulings, rejecting Natera challenges to TX-225 and similar documents, but noting: "Documents that speak to the impact of statements to MolDx will not be admissible for that purpose.")

In sum, "[b]ecause the statements to MolDX are not actionable under the Lanham Act, but are relevant to establishing Natera's state of mind," the Court will not allow "[e]vidence regarding the outcome of statements made by Natera to MolDX and the decision to delay coverage," but will allow "evidence regarding statements made to MolDX by Natera for the purpose of showing Natera's state of mind at the time it launched its advertising campaign." Dkt. 572 at 9.

Natera has aggressively tested this distinction between the uses for which MolDX evidence may be used, wielding the Court's MIL No. 2 MolDX ruling as both sword and shield. In his opening on behalf of Natera, Natera's counsel affirmatively declared that Natera is *not* responsible for MolDX's delay of Medicare coverage—to which Guardant's own opening had not alluded—and instead claimed MolDX's decision was solely due to a "data gap":

> You will hear also that when it comes to Guardant's efforts to obtain Medicare coverage, there was another important thing that will come out in this trial. And the evidence will show that although Guardant obtained some limited Medicare coverage for Reveal, they did not receive Medicare coverage for use of Reveal for



DOCUMENT PREPARED ON RECYCLED PAPER

> recurrence monitoring. That's surveillance where you take it every few months over and over, over a period of years, to see if the cancer has come back. They have not received Medicare in the surveillance setting.
>
> Guardant's counsel tried to make it sound like Natera interfered with Guardant obtaining Medicare coverage for Reveal, ***but the evidence will show that it was because of the deficiencies in Guardant's own data that it didn't get Medicare coverage for recurrence monitoring***.
>
> Guardant, again, had a data gap. That's not Natera's word. That's their word -- term, "data gap." ***And MolDX, which you'll hear about, that's the group that makes the decision about Medicare coverage for these tests, they saw the same data gap***. And the people at MolDX are highly qualified experts.

Trial Tr.268:18-269:11 (emphasis added). In this same argument to the jury, Natera's counsel represented that "when it was beneficial for Guardant to compare the studies side by side, they did it. But they now want you to believe that it was somehow wrong for Natera to do the same thing." *Id.* at 268:14-17. But Guardant's comparisons between studies to MolDX were not only *required* by the Local Coverage Decision (LCD), but per this Court's ruling, ***are not advertising***.

Guardant raised these concerns following Natera's opening, and the Court concluded "that the opening statements, because they are not evidence, does not open the door at this point." Trial Tr. at 317:18-20. The Court cautioned Natera, however: "If you introduce any kind of evidence that suggests that there was a data gap and that was the reason, that would open the door." *Id.* at 317:20-22; *see also id.* at 317:24-318:1 ("it's a warning that if you to do get into that in terms of the evidence, we may be talking about a different ballgame"). And when Natera's counsel pushed back on this warning, *id.* at 318:2-9, the Court again cautioned Natera: "you don't need to get into why it [Reveal] wasn't approved for all purposes. That's not relevant. I'm limiting this to the very narrow purpose that I had allowed this in." *Id.* at 318:10-12.

Notwithstanding these warnings, Natera spent a significant portion of its cross-examination of Dr. Odegaard on Guardant's communications with MolDX. *See* Trial Tr. at 369:22-386:7. Natera thus elicited testimony regarding the quality of data required by MolDX for approval:

> Q. Okay. Now, you agree with me that MolDX approval, just because you have a test going through that process, is not guaranteed?
> A. Agreed.
> Q. Okay. There's an application process, and you have to actually submit some clinical and analytical validation data?
> A. That's correct.





DOCUMENT PREPARED ON RECYCLED PAPER

Q. And it has to be published, peer-reviewed data; right?
A. The clinical data, yes.
Q. The clinical data.

*Id.* at 370:-16. Natera asked about the scope of coverage potentially allowed under the LCD:

Q. Now, in that decision, that LCD that you were floating around, Medicare defined two scenarios in which MRD testing for CRC would be covered; right?
A. That's correct.
Q. Adjuvant on the one hand --
A. Yes.
Q. -- correct?
And surveillance setting on the other?
A. Correct.
Q. And "surveillance" refers to recurrence monitoring where you look at patients over months or years?
A. Correct. Yeah.

*Id.* at 372:4-18. And Natera asked about the timing of Guardant's application for coverage:

Q. And then in December of 2020, Guardant applied for the same Medicare coverage under the Signatera LCD?
A. Correct.

*Id.* at 374:21-23; *see also id.* at 375:20-22 (timing of submission).

Natera's questioning also sought to confuse the jury as to the distinction between Guardant's communications with MolDX—which again ***are not advertising***—and the false advertising counterclaims raised by Natera. E.g., Trial Tr. at 377:13-25 (technical error in specific reference to "blinding" in MolDX Technical Assessment which is not repeated in any Guardant advertising). Natera also sought to liken its own comparative advertising with Guardant's non-advertising efforts to satisfy MolDX. *Id.* at 383:9-386:7 (testimony about cross-study comparisons made by Guardant to MolDX). Guardant again raised objections, *id.* at 419:10-25, but the Court again concluded that "[a]t this point, the door has not been opened." *Id.* at 420:13-14.

Undeterred, in today's examination of Dr. Eltoukhy, Natera's counsel twice tried to question Guardant's CEO about MolDX's decision-making. While the Court sustained Guardant's objections, it is plain Natera will continue—through improper questions and documents—to convince the jury that MolDX had good reasons to disapprove of Reveal. Thus, in its exhibit disclosures earlier today for Mr. Mark McCoy, a Guardant witness to be presented by Natera early



DOCUMENT PREPARED ON RECYCLED PAPER

in its case-in-chief, Natera telegraphs it plan to not just open the door, but break it down entirely. Its exhibits for Mr. McCoy focus almost exclusively on Guardant's communications with and about MolDX, including TX-610, a May 18, 2021 email from MolDX to Guardant, apologizing "that it's taking longer than anticipated,," but "[h]oping to have something back to you soon." This exhibit goes directly to the delay in Medicare coverage that Guardant is not allowed to discuss. Natera's proposed exhibits also include TX-611, a June 1, 2021 communication with MolDX (and thus well after Natera implemented the MolDX-arm of its SOLAR strategy), responding to MolDX's technical question about Reveal. This email has nothing to do with Guardant's or Natera's advertising, but instead, at most, goes to issues of delay.

In this same vein, TX-612 is a June 29, 2021 internal Guardant communication from Mr. McCoy, expressing frustration with MolDX's delay, and speculating as to MolDX's state of mind. This directly implicates the Court's reasoning for excluding such evidence, as it invites a mini-trial as to MolDX's reasons for delaying coverage. Dkt. 572 at 8 ("This would involve establishing the thoughts and motivations of MolDX officials, examination of all the materials considered by MolDX, and would thus entail a trial within a trial to prove causation"). Similarly, TX-613 is an internal Guardant communication discussing whether to send GNE bakeoff data to MolDX—which Guardant ultimately did not do, in part because of GNE's concerns over the instant lawsuit.

The exhibits Natera intends to use with Mr. McCoy—and the testimony it will try and elicit from him—are not relevant to Natera's state of mind or the advertising claims at issue in this case. Instead, Natera's intended use goes to its efforts to convince the jury that, as Natera's counsel argued at opening, "the people at MolDX, who "are highly qualified experts," in fact "saw that despite the Guardant -- what it was claiming in its ads, Guardant doesn't have the data supporting the sensitivity and specificity of Reveal in the recurrence monitoring setting." Trial Tr. at 269:11-15.

Of course, none of that is true; MolDX reviews data, not advertising. But pursuant to this Court's Order, Guardant cannot and will not present an appropriate counter-narrative to the jury. Pursuant to that same Order, as well as fundamental principles of fairness, Natera must not be



DOCUMENT PREPARED ON RECYCLED PAPER

allowed to mislead the jury into believing that Reveal's coverage was delayed because of a "data gap" or any other issues with the assay. Nor should Natera be allowed to continue to mislead the jury into believing that Guardant's communications with MolDX are "advertising."

Absent a firm ruling on this issue, Guardant would be irreparably prejudiced. Guardant already has put on much of its affirmative case and many of its expected witnesses. Guardant did so in compliance with this Court's decision on MIL No. 2. If Natera is allowed to continue violating that decision, Guardant would be unable to respond fully and effectively, as many of its key witnesses on those issues have already testified.

Respectfully submitted,

Dated: November 12, 2024

**ALLEN OVERY SHEARMAN STERLING US LLP**

**SAUL PERLOFF**
By: *__/s/ Saul Perloff__*
Saul Perloff

Attorney for Plaintiff
GUARDANT HEALTH, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on November 12, 2024, to the counsel of record via email to qe-natera-guardant@quinnemanuel.com.

**Counsel for Defendants:**

Kevin P.B. Johnson
Victoria F. Maroulis
Andrew J. Bramhall
Anne S. Toker
Valerie Lozano
Andrew Naravage
Ryan Landes
Elle Wang
Margaret Shyr
Ryan Hudash
Brian Cannon
Jocelyn Ma
Kaitlin Keohane
Victoria Parker

*/s/ Saul Perloff*
Saul Perloff



DOCUMENT PREPARED ON RECYCLED PAPER