**Saul Perloff (157092)**
saul.perloff@aoshearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@aoshearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@aoshearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, TX 78701
Telephone (512) 647-1900

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

**Jennifer L. Keller (84412)**
jkeller@kelleranderle.com
**Chase Scolnick (227631)**
cscolnick@kelleranderle.com
**Craig Harbaugh** (194309)
charbaugh@kelleranderle.com
**Gregory Sergi** (257415)
gsergi@kelleranderle.com
**KELLER/ANDERLE LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>        Plaintiff and<br>        Counterclaim-Defendant,<br><br>   vs.<br><br>NATERA, INC.<br><br>        Defendant and<br>        Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**GUARDANT'S MOTION FOR SANCTIONS FOR NATERA'S CONTINUED MISCONDUCT WITH RESPECT TO THE EXCHANGE OF CLOSING DEMONSTRATIVE SLIDES**<br><br>Next Trial Date: November 22, 2024 |

Guardant Health, Inc. respectfully moves for sanctions against Natera, Inc. for its counsel's continued misconduct related to the Parties' exchange of demonstrative slides for closing.

On Monday, November 18, this Court directed the Parties to exchange demonstrative slides for closing arguments on Wednesday, November 19, so that any disputes could be brought to the Court's attention by noon on Thursday, November 20. Trial Tr. 1953:5-1955:4. The Court made clear that the exchange would be for demonstratives "**you're going to use**," cautioning the Parties: "given the number of disputes that have arisen, I don't want to get more disputes arising in front of the jury. So **I want this to go smoothly**." *Id.* at 1953:6-9 (emphasis added). The Court stressed that "if something is out of whack and you guys are in dispute, I don't want to have to argue about that in front of the jury." *Id.* at 1953:23-25; *see also id.* at 1955:10-11 ("My main concern is I get it so I have a chance to actually look at it.")

The Parties agreed to exchange slides at 6:30 Wednesday evening (a compromise between Natera's 8:00 pm proposal and Guardant's 5:00 request), with a meet-and-confer proposed for 9:00 pm that evening. At 6:30 pm Wednesday, Guardant provided its forty-two slides to Natera for review. And Natera sent a link to a set of **three-hundred and twenty-one slides**, plus a video.

From an initial (and necessarily hurried) review, it was apparent there were a host of serious problems with the slide set Natera had sent. To begin, the slides cited to exhibits and expert reports that were never admitted into evidence at trial. For example, Natera slide no. 267 included cites to trial exhibits TX-430, TX-431, and TX-432, as well as an expert report, **none of which are introduced into evidence**. Slide no. 220 displayed a full image of TX-736—which also is not in evidence (though similar documents are).

Natera's slides also mischaracterized evidence, such as slide no. 70 assertion that the JPM conference presentation "is commercial advertisement/promotion," contrary to this Court's rulings, Dkt. 509 at 5 ("statements made to primarily influence investors, rather than consumers, but which could ultimately influence consumers, were not cognizable under the Lanham Act"), and the undisputed facts presented at trial. Masukawa, Trial Tr. 655-56 ("JPMorgan is an annual conference held here in San Francisco with investors and companies presenting this – some of their data.").

Many of Natera's slides run afoul of this Court's demarcation of what may be allowed at trial regarding MolDX, including Natera slide no. 86, that directly challenges the sufficiency of Guardant's technical assessment submission for Medicare coverage:



Other Natera slides attacked Guardant's request for corrective advertising, asserting: "there is nothing to correct because the version of Reveal validated by the Parikh Study is not longer being sold." Natera slide no. 272.



There likely are many more examples of misleading, unsupported, and blatantly improper slides, but there was no practical way for Guardant to review over three hundred pages of demonstratives in a few hours. And so Guardant promptly demanded that Natera send a reduced set of no more than 100 slides (still an extraordinary number), and to do so no later than 11:00 pm.

Natera failed to do so. Eventually, Natera sent a deck of 199 slides. In this "new" set, they removed some slides, changed some slides, and added at least one slide. And they waited to do so until exactly 11:59 pm—the specific time Guardant's counsel had asked to avoid. Trial Tr. 1955:7-

8 ("At some point Wednesday, we'll be exchanging them. Hopefully not at 11:59 p.m.")[1]

The gamesmanship here is blatant: the Court expressly directed the Parties to exchange those materials they actually intended to use during closing. Natera has precisely one hour, thirty-six minutes, and sixteen seconds remaining for that argument. Trial Tr. 1952:21-22. This means that Natera's counsel would have to go through each slide in the original set in less than 18 seconds. It is painfully obvious that Natera's counsel had no intention of using more than a fraction of this mammoth presentation. And the goal of exchanging such a bloated set is also painfully obvious: to force Guardant's counsel to waste hours and hours during the final stretch of the case, when they should have been able to focus on preparing their own closing arguments.

It is also extraordinary that, just hours before this Court directed Natera's counsel on how to proceed with the exchange of demonstratives for closing, the Court had to repeatedly instruct Natera's counsel to *not* broach issues that were off limits, including the availability of comparative advertising in light of the Joint Statement, and the need for corrective advertising in light of the generational status of Reveal. Natera's counsel knew the rules, and willfully violated them. Thus, after counsel knowingly elicited excluded testimony from its expert that "Guardant had the financial resources to actually conduct corrective advertising" but did not, Guardant objected, and this Court sustained that objection:

> THE COURT: Well, no. Sustained. That statement will be disregarded. It's not appropriate.
>
> The jury will disregard that statement. You're not to elicit that line of questioning.
>
> MS. LOZANO: I'd also like a sidebar, Your Honor. I --
>
> THE COURT: My ruling is clear. You are not to elicit that line of questioning. Go on to your next question. Again, the jury will disregard that remark.
>
> BY MS. LOZANO:
>
> Q. Is there another reason why you believe prospective advertising -- prospective corrective advertising is not appropriate?

---

[1] Slide nos. 70, 86, and 272, among those referenced above, appear to have been omitted from this second set. Whether Natera ever intended to use them, or merely included them in the first round to provoke an argument, is unclear. But to include them at all was in obvious bad faith, and forced Guardant's counsel to waste time reviewing them.

Document Prepared on Recycled Paper

> A.	Yes, there is.
>
> Q.	What is it?
>
> A.	So that reason simply is, and we've heard a lot about the Parikh study, the -- my understanding is the product that was used, the Reveal product that was used, was a version of the product that's no longer used, no longer sold.
>
> MR. LaVIGNE: Objection, Your Honor. This, again, is out of bounds.
>
> THE COURT: Sustained. I ruled that Infinity is part of the damages analysis, so that comment is stricken. I've ruled. Move on.

Trial Tr. 1869:6-1870:5.

Outside the presence of the jury, the Court made clear the seriousness of Natera's counsel's intentional flouting of the Court's Orders:

> THE COURT: Okay. With respect to Ms. Lozano's eliciting information about lack of the -- the ability of Guardant to come back with rebuttal corrective advertising and not, that -- that one runs square. That we've talked about from day one, about opening the door, about the stipulation, and we said we're not going there.
>
> . . . .
>
> [THE COURT:] If they had the means to do it, but I told you you can't get into whether they could do it, they did do it or not, it doesn't matter. It doesn't matter.
>
> ***You stepped over the line, and you've done this several times***.
>
> MS. LOZANO: Your Honor, may I --
>
> THE COURT: ***So there will be sanctions at some point***.

Trial Tr. 1889:20-1890:21 (emphasis added).

Given this exchange, it is both inexplicable and extraordinary that Natera would almost immediately proffer demonstrative slides to the jury that raised these specific, off-limits arguments.

Nor was this an isolated incident. Some examples of Natera's recent misconduct include its lodging and relodging of an ever-changing set of demonstrative slides for Dr. Metzker:

- November 13 at 8:59 am: 78 Slides
- November 14 at 8:18 pm: 71 Slides
- November 15 at 4:23 am: 52 Slides
- November 15 at 9:11 am: 45 Slides
- November 15 at 11:57 am: 41 Slides
- November 15 at 1:17 pm: 41 Slides (Final, revised heading)

Such bad faith conduct created a basis for sanctions. Trial Tr. at 1445:6-1148:11 (Natera's conduct

DOCUMENT PREPARED ON RECYCLED PAPER

with respect to the Metzker demonstratives created "a basis for sanctions," noting: "There's only one of me at the end of the day. So I don't -- I don't need to be reminded. And that's why I set these deadlines. And, you know, to get something at 7:26, email after email, revision after revision at 7:25, 7:26, 7:27, that's not what my rules were intended to permit. With the number of attorneys on this, I would expect more efficient and compliant behavior, and I'm not getting it."). It is of course striking that, a few days after being reprimanded for submitting a deck with over 70 slides, Natera would engage in virtually identical misconduct, though multiplied by a factor of four.

Also on the morning of November 15, the Court learned Natera had violated its Order that Natera was to provide Guardant notice of written discovery to be read into the record by the "early afternoon" of Thursday, November 14—but instead waited until almost midnight:

> THE COURT: Hold on.
>
> Is it accurate that you did not disclose this until 11:24 last night?
>
> MS. MAROULIS: Yes, Your Honor. We were trying to streamline our case and come up with ways to shorten it.
>
> THE COURT: Barred.
>
> MS. MAROULIS: May we --
>
> THE COURT: Barred. I told you a time frame. ***You all keep violating my rules***.
>
> For instance, I told you that with respect to Dr. Metzker, we're not going to have a narrative. So you submit 70 pages with not just charts and tables and demonstratives, but pieces of emails and everything. ***You're doing exactly what I told you not to do. Your firm has repeatedly violated my rules.***
>
> Barred. Excluded. Sustained.
>
> Next.

Trial Tr. 1428:18-1429:8 (emphasis added). Again, Natera's instant misconduct—waiting until midnight to send a revised set of demonstratives due for resolution by this Court the next day—is virtually identical to that for which Natera's counsel was just sanctioned. Nor are these the only examples of Natera's misconduct at trial. E.g., Trial Tr. 1285:25-1286:2 (warning Natera's counsel against further violations of the Court's Orders: "All right. If that happens again, I will sanction. And you know better than that. I'm going to leave it at that.")

Natera's counsel's misconduct is also not limited to trial. The Court imposed sanctions

relating to Natera's counsel's extraordinary misconduct related to COBRA. Dkt. 730 at 2 ("Quinn Emanuel, deliberate misrepresentations to this Court and to Judge Kim. Quinn Emanuel's conduct, simply put, was unjustified, unacceptable and sanctionable.") The Court also sanctioned Natera's counsel for their gamesmanship related to deposition designations and objections. *See* Dkt. 719 at 4 (noting "the Court already has charged Natera with 1 hour of deducted trial time in light of Natera's excessive deposition designations"). During the October 15 hearing, the Court expressed its valid concerns with Natera's counsel's conduct:

> And my observation is that the scope of Natera's objections and the scope of the counter-designations were excessive and almost limitless. And so just on those two depositions, we spent hours, at least seven hours, going through those and having to go through that. So why shouldn't I dock time from trial from your client? And I'm looking at Natera.

Oct. 15, 2024 Tr. at 132:1-7; *see also id.* at 138:10-139:4 ("And there was just almost no effort to make this meaningful. And that's exactly what I said not to do. So I'm going to -- although this Court spent roughly, court time, seven hours on just these two witnesses, going through this and going through the designations and the objections, and a good substantial part of that was, in my view, not reasonable, not tailored).

      The pattern has repeated itself yet again. Rather than taking this Court's Orders seriously, and rather than working in good faith with Guardant to avoid disruptions and unnecessary disputes, Natera's counsel chose to play games. They delivered a massively bloated set of demonstrative slides, loaded with unadmitted evidence and misleading arguments on off-limits issues, with no proper purpose. They did so despite the Court's express direction that it did not "want to get more disputes arising in front of the jury," and instead wanted "this to go smoothly." Trial Tr. 1953:6-9. Natera's counsel have made it impossible for Guardant to meaningfully evaluate the volume of old, new, and revised slides, sent some twelve hours before they are due to this Court for resolution of disputes. *Id.* at 1955:10-11 (cautioning counsel: "My main concern is I get it so I have a chance to actually look at it.")

      This Court has the inherent power "'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" Dkt. 730 at 14 (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)). The Court may "use this 'inherent power' to impose 'an appropriate sanction for

conduct which abuses the judicial process.'" *Id.* (quoting Am. *Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021)) (other citations omitted). "[A] sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quotations and citations omitted). "The nature of the sanctions warranted is informed by the prejudice caused by the misconduct." *Id.* (citation omitted). See Rousseau, 985 F.3d at 1089-90.

Appropriate and significant sanctions are warranted—and indeed demanded—by Natera's counsel's serious and willful misconduct. They have repeatedly, intentionally, and in bad faith flouted and violated this Court's rules, Orders, and directives, all to secure some perceived litigation advantage while making this case needlessly and significantly more challenging to try for Guardant, the Court, and the Court's staff. None of this is reasonable or acceptable. Natera must be sanctioned. The appropriate sanctions here should relate to the conduct at issue—closings. Natera should be docked another hour from its allotted trial time (since losing the first hour did not seem to make any impression on Natera's counsel), and Natera should be precluded from using any demonstratives during closing. Natera's counsel of course are free to quote from the transcripts or admitted exhibits, but they should not be allowed to benefit any further from their egregious misconduct.

DOCUMENT PREPARED ON RECYCLED PAPER

7

GUARDANT'S MOTION FOR SANCTIONS RELATED TO NATERA'S CLOSING SLIDES
CASE NO. 3:21-CV-04062-EMC

Respectfully submitted,

Dated: November 21, 2024

**ALLEN OVERY SHEARMAN STERLING US LLP**

**SAUL PERLOFF**
By:  /s/ *Saul Perloff*
          Saul Perloff

Attorney for Plaintiff
GUARDANT HEALTH, INC.

DOCUMENT PREPARED ON RECYCLED PAPER