QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
valerielozano@quinnemanuel.com
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Anne S. Toker (*pro hac vice*)
annetoker@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Derek L. Shaffer (Bar No. 212746)
1300 I Street, Suite 900
Washington, DC 20005
derekshaffer@quinnemanuel.com
Telephone: (202) 538-8000
Facsimile:  (202) 538-8100

Attorneys for Defendant and Counterclaim-Plaintiff NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NATERA, INC.<br><br>    Defendant and Counterclaim-Plaintiff. | CASE NO. 3:21-CV-04062-EMC<br><br>**NATERA, INC.'S OPPOSITION TO GUARDANT'S MOTION FOR SANCTIONS WITH RESPECT TO THE EXCHANGE OF CLOSING DEMONSTRATIVE SLIDES** |

1    Rather than litigating the merits of the case, Guardant continues to try to gain advantage through yet another frivolous sanctions request. Indeed, this is the fifth time during this trial that Guardant has asked the Court to "dock" or "reallocate" Natera's time. Day 7 Trial Tr. 1446:6-1447:4 ("I think the Court should issue a sanction and give us an hour of their time… I'm suggesting shifting an hour from their side to our side"); Dkt. 803 (Guardant requests "allotting some of Natera's time to Guardant"), *see also* Day 5 Trial Tr. 1057:18-1058:9, 1146:1-3. But there is no basis for Guardant's request for draconian sanctions that would deprive Natera of mounting any meaningful defense to Guardant's claims for nearly $170 million, and its refusal to engage in any good faith meet and confer discussions regarding Natera's closing demonstratives directly contravenes the Court's clear guidelines. Day 8 Trial Tr. 1952:22-1955:12 (directing parties to work out schedule regarding resolution of any disputes on demonstratives).

<u>Natera Discloses All Of Its Closing Slides:</u>  The parties agreed that they would exchange closing demonstratives at 6:30 p.m. on Wednesday, November 20th. As Natera's counsel explained, Natera understood "this to mean that a slide with a witness's picture and a transcript excerpt would not need to be disclosed[.]" 11/18/24 Landes email. In response, Guardant wrote back that "if there is a heading or other characterization of the testimony, then the slides must be disclosed." 11/19/24 Hanson email.

Out of an abundance of caution and to avoid disruptive objections during its closing presentation, Natera disclosed **all** of the closing slides it might use at the agreed upon time. Two-thirds of Natera's slides were simply callouts of jury instructions, verdict form, admitted exhibits or testimony excerpts with witness pictures. Guardant did not disclose any slides that contained jury instructions, verdict forms, admitted exhibits, or testimony. This was the primary contributor to Natera's disclosure being larger than Guardant's.

Also contributing to the total number of slides was the fact that Natera's closing argument will need to respond to Guardant's closing argument, and, of course, Natera does not know what testimony or exhibits Guardant will use, or what arguments it will make. Indeed, Natera was forced to disclose potential rebuttal slides to the numerous irrelevant issues Guardant has centered this trial around (*e.g.,* inaccurate characterizations about patient access, delays in Medicare, patients without

tissue). *See e.g.*, Day 4 Trial Tr. 748:23-749:21 (Guardant's CEO telling the jury that "many, many tens of thousands of patients who may not be alive today because they didn't get access to this type of testing" due to Natera's "poisonous campaign").

<u>Guardant Refuses To Meet And Confer Regarding Closing Slides</u>: Seizing on the disparity between the number of slides, Guardant refused to meet and confer. Although the parties had scheduled a meet and confer at 9:00 p.m. on Wednesday night, Guardant canceled the call not because of any issue with the substance of Natera's slides (which Guardant claimed it did not review), but because Guardant believed Natera had disclosed too many slides.[1]

Natera's disclosure of these slides gives Guardant a distinct advantage, as it previews precisely the arguments that Natera may make during closing. Guardant, by contrast, disclosed no testimony slides and no exhibit call outs, leaving Natera to guess which arguments Guardant may make at closing. Because Natera is going second, and will necessarily need to respond to Guardant's arguments, it requires greater flexibility in its presentation. *See* Day 6 Trial Tr. 1198:18-19 (Court noting this "is a complicated case with complicated issues."). Additionally, the fact that this case involves both Guardant's claims and Natera's counterclaims makes it inevitable that the number of potential issues raised is greater than a case with only one set of claims. Nevertheless and while Natera's original disclosure was in good faith, Natera immediately went to work to address Guardant's complaint based on the number of slides disclosed so that the parties could engage in a productive meet and confer and re-focus their attention on preparing for closing presentation.

<u>Natera Makes A Second Disclosure But Guardant Continues To Refuse To Meet And Confer</u>: Within hours, Natera disclosed an amended slide deck. Like the first, this disclosure contained numerous slides that did not need to be exchanged per the parties' agreement, but were included for transparency, completeness, and to avoid disruptive objections during closing. The amended deck included 68 testimony slides, 60 slides of admitted exhibits, and 13 transition slides.

Rather than meet and confer in good faith on Natera's revised closing deck, however, Guardant's counsel instead chose to spend its time drafting a motion for sanctions. In that motion

---

[1] Natera nevertheless sent its objections to Guardant's slides that evening as planned.

and despite expressly demanding that Natera provide an amended deck, Guardant highlighted objections it had to slides in Natera's *original* closing deck (all but two of which were *removed* in the amended deck), choosing to raise those objections with the Court in the first instance, rather than engage in *any* meet and confer process with Natera.

During the parties' 9:00 am meet and confer today, Natera's counsel asked Guardant whether it had any objections to Natera's slides that it wished to raise. Guardant's counsel responded only by pointing to the sanctions motion that it had filed a few minutes earlier. When asked whether there were specific slides that Guardant wished to discuss, Guardant refused. When pressed as to why Guardant was unwilling to meet and confer on Natera's slides, Guardant's counsel announced that the call was over, and hung up on Natera's counsel.

Guardant's Identified Objections Have Been Resolved: Ultimately, Guardant's motion only identifies objections to five slides. Because Guardant inexplicably chose to address Natera's original slide deck in its sanctions motion, rather than the amended deck that Guardant itself demanded, all but two of its objections were entirely moot. Had Guardant met and conferred with Natera, it would know that Natera has also agreed to amend those two slides to resolve those two objections.

More specifically, Guardant objected to Slide 220 on the grounds that it included a citation to exhibits that were not admitted. Mot. at 1. To resolve that complaint, Natera replaced TX-736 with TX-133, which is a duplicate exhibit that has been admitted. Guardant also disagreed with the footnote citation in Slide 267. *Id*. To resolve that complaint, Natera removed the citations to Dr. Stec's report and exhibits, and instead cited to the trial transcript. Guardant did not raise any further objections to any of the slides in Natera's closing deck in its motion or during the meet and confer.

However, at 11:23 a.m. this morning Guardant raised a handful of additional objections to Natera's slides for the first time. The parties have had no opportunity to confer about these given Guardant's late assertion of these objections, but they are baseless. Guardant objects to Natera's slides 8-12 and 37-40 on the basis that these slides supposedly suggest that Guardant's communications with MolDX were ads, or improperly attack Guardant's submissions to MolDX, but these slides (which are almost all simply callouts of testimony or admitted exhibits); they do

not. Instead, these slides simply note that Guardant admitted internally that the performance figures it submitted to MolDX—*which were the same figures as those in Natera's at-issue false advertisements*—were unsupported or "not clinically meaningful." Most slides rely on TX-1369 and the testimony about it, and the Court already overruled Guardant's objections on this point. Day 5 Trial Tr. 958:2-18.

<u>Guardant Raises Unrelated Trial Conduct</u>: In an attempt to bootstrap its meritless accusations of bad faith relating to the closing demonstratives, Guardant's motion also includes a litany of unrelated issues from throughout the trial. Natera disagrees with Guardant's characterizations of these issues, none have anything to do with the current dispute regarding closing demonstratives.

Guardant has consistently weaponized the Court's procedure for raising and resolving disputes about exhibits and demonstratives into a basis for sanctions throughout this trial. With respect to Dr. Metzker's slides (Mot. at 4-5), after Natera disclosed demonstratives for use with Dr. Metzker, Guardant objected to nearly every slide in Dr. Metzker's demonstrative, claiming they contained legal conclusions when, in fact, they simply reflected Dr. Metzker's opinions. Similarly, with regards to exhibits, Guardant asserted scope objections to documents that were plainly cited in Dr. Metzker's expert report. Natera continually pointed out to where the opinions and documents were disclosed in Dr. Metzker's report, but this did nothing to sway Guardant from standing on its baseless objections. Nevertheless, Natera subsequently withdrew slides to address Guardant's objections. Natera then further withdrew or modified the objected-to demonstratives for use with Dr. Metzker after further discussion with Guardant the next day in an attempt to minimize the disputes raised with the Court. Natera's withdrawal or modification in response to Guardant's objections is exactly the type of good faith behavior the Court expects of the parties. And all of this was done to avoid having to burden the Court with disputes over this material. Yet, in response and as part of the playbook that it is employing again here, Guardant refused to consider Natera's narrowed demonstratives and instead brought frivolous objections to the Court. *See* Day 7 Trial Tr. 1436:7-1441:9 (Guardant objecting to Dr. Metzker's opinions as outside the scope of his reports and the Court ruling "Well, it's in there," after Natera pointed out the paragraphs in Dr. Metzker's report

1 previously cited to Guardant during the meet-and-confer).

2 With respect to the disclosure of Interrogatory No. 25 (Mot. at 5), on the evening of November 14, Natera provided notice that it intended to read in Interrogatory No. 25 and seek to admit the four exhibits it authenticated, all of which were in the same form, and one of which had already been admitted into evidence.  The Interrogatory was intended to be read prior to the close of Natera's case on November 18.  Yet without any effort to meet and confer with Natera's counsel, Guardant immediately raised the timing of the disclosure with the Court the following morning. Natera offered on the afternoon of Friday, November 15 to meet and confer to narrow any objection before Monday, but Guardant declined.

Finally, Guardant's characterization of the trial examination and testimony counsel sought to elicit, as well as the scope of what the Court's orders have precluded, is inaccurate.  Mot. at 3. The Court expressly precluded further discussion of these issues on Monday, November 18th, instead stating they would be addressed at a later date.  Day 8 Trial Tr. 1890:20-1891:4.  Guardant's injection of them into this brief is improper, and Natera looks forward to addressing them fulsomely at the appropriate time.

Guardant is represented in this trial by not one but two law firms, one of which has more than 800 attorneys.  They found time to file an unauthorized trial brief yesterday challenging an exhibit after the close of evidence.  They found time to file a sanctions motion without once communicating to Natera their objections to specific closing slides.  But they did not find time to meet and confer with Natera either last night or this morning, nor to send Natera any written objections to the slides.  Instead, Guardant referred Natera to its sanctions motion as the source of information about their objections.  This is not good faith conduct.

## CONCLUSION

Guardant seeks nearly $170 million in damages in this action.  Yet its request for sanctions—that Natera lose nearly all of its closing time and be precluded from using any demonstratives—would effectively preclude Natera from mounting any defense to Guardant's case.  These draconian sanctions have nothing to do with the actual conduct complained of and would severely and unfairly prejudice Natera.  *See* Day 7 Trial Tr. 1445:25-1446:21 (Court refusing Guardant's request to take

1 time from Natera to give to Guardant, including because the complained-of conduct had "nothing to do with time that was used in [] the courtroom in examining witnesses"). Sanctions are not warranted, and Guardant's continued attempts to seek them should not be entertained.

DATED: November 21, 2024                QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                        By /s/ *Victoria F. Maroulis*
                                        Victoria F. Maroulis
                                        Attorneys for NATERA, INC., a Delaware corporation, Defendant and Counterclaim Plaintiff