Jennifer L. Keller (84412)
jkeller@kelleranderle.com
Chase Scolnick (227631)
cscolnick@kelleranderle.com
Craig Harbaugh (194309)
charbaugh@kelleranderle.com
Gregory Sergi (257415)
gsergi@kelleranderle.com
KELLER ANDERLE & Scolnick LLP
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone  (949) 476-0900

Saul Perloff (157092)
saul.perloff@aoshearman.com
Kathy Grant (*pro hac vice*)
kathy.grant@aoshearman.com
Andre Hanson (*pro hac vice*)
andre.hanson@aoshearman.com
Olin "Trey" Hebert (*pro hac vice*)
trey.hebert@aoshearman.com
ALLEN OVERY SHEARMAN
STERLING US LLP
300 W. Sixth Street, 22nd Floor
Austin, Texas 78701
Telephone     (512) 647-1900

Christopher LaVigne (*pro hac vice*)
christopher.lavigne@aoshearman.com
ALLEN OVERY SHEARMAN
STERLING US LLP
599 Lexington Ave
New York, NY 10022
Telephone     (212) 848-4000

Kevin P.B. Johnson (SBN 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (SBN 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (SBN 253115)
andrewbramhall@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065-2139
Telephone     (650) 801-5000
Facsimile     (650) 801-5100

Anne S. Toker (*pro hac vice*)
annetoker@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Telephone     (212) 849-7000
Facsimile     (212) 849-7100

Valerie Lozano (SBN 260020)
valerielozano@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone     (213) 443-3000
Facsimile     (213) 443-3100

Attorneys for Defendant/Counterclaim-
Plaintiff NATERA, INC.

Attorneys for Plaintiff/Counterclaim-
Defendant GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., <br><br> Plaintiff and Counterclaim-Defendant, <br><br> vs. <br><br> NATERA, INC., <br><br> Defendant and Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC <br><br> **JOINT SUBMISSION REGARDING SCOPE OF GUARDANT'S POST-TRIAL BRIEFING IN SUPPORT OF MOTION FOR SANCTIONS BASED ON NATERA'S TRIAL-RELATED MISCONDUCT** |

As directed by the Court (Dkt. 874), the Parties, Guardant Health, Inc. ("Guardant") and Natera, Inc. ("Natera") offer this Joint Submission regarding the scope of Guardant's post-trial briefing on its motion for sanctions based on Natera's trial-related misconduct.

**Guardant's Position**: In granting Guardant's motion for sanctions for Natera's COBRA-related conduct, the Court deferred the imposition of monetary sanctions pending post-trial briefing. *See* Dkt. 730 at 2 & 18.[1] As directed by the Court's order, *id*. at 18, Guardant will address the appropriate monetary sanctions in its post-trial briefing due January 17, 2024. During trial, however, Natera's counsel engaged in additional misconduct which the Court indicated may appropriately be the basis for additional sanctions. E.g., Trial Tr: at 1446:13. Guardant thus intends, and respectfully asks the Court to allow, Guardant to request in its post-trial briefing additional sanctions based on three limited categories of Natera's trial misconduct. Those categories encompass Natera's misconduct at trial that threatened severe prejudice to Guardant and vexatiously multiplied the amount of work required from Guardant and this Court.

As this Court explained, "a sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Dkt. 730 at 14 (quoting *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021)). Here, Natera has both willfully disobeyed the Court's rulings, and otherwise acted in bad faith. While Natera's counsel may consider such misconduct "run-of-the-mill," it is anything but.

**1.  Improper attempts to elicit testimony on matters determined to be off-limits by the Court, including MolDX's state of mind, post-COBRA evidence, and the ability of Guardant to engage in comparative corrective advertising.**

Before and during trial, the Court held that certain matters would be off-limits, including MolDX's state-of-mind and its reasons for delaying approval of Reveal for Medicare coverage. Dkt. 509 (redacted at Dkt. 572), at Natera MIL No. 2. As the Court held, "determining whether MolDX would not have delayed approval but for the statements made by Natera . . . would involve establishing the thoughts and motivations of MolDX officials, examination of all the materials considered by MolDX, and would thus entail a trial within a trial to prove causation." *Id.* at 8.

---

[1] The Court's COBRA-related sanctions order remains under seal. Guardant and Natera previously informed the Court that they do not intend to seek to seal any portions of that order. *See* Dkt. Nos. 753 & 755. Guardant accordingly asks the Court to unseal its sanctions order, Dkt. 730.

Thus, the court expressly excluded evidence about the reasons for MolDX's delay of Medicare coverage from trial. *Id.* at 9 ("Evidence regarding the outcome of statements made by Natera to MolDX ***and the decision to delay coverage is to be excluded at trial***.") (emphasis added).

Natera, however, treated MIL No. 2 as limiting only *Guardant* from introducing evidence on the subject. E.g., Dkt. 800 at 6 ("No matter what evidence Natera presents, Guardant cannot claim Lanham Act liability for Natera's statements to MolDX because, as the Court already found, those statements were not made to consumers.") Natera's counsel made this express argument during the Parties' conferences to discuss objections to MolDX exhibits. And Natera repeatedly raised argument and attempted to create evidence about MolDX's state of mind, including during its opening statement. *See* Trial Tr. at 269:2-15:

> [T]he evidence will show that it was because of the deficiencies in Guardant's own data that it didn't get Medicare coverage for recurrence monitoring.
>
> Guardant, again, had a data gap. That's not Natera's word. That's their word -- term, "data gap." And MolDX, which you'll hear about, that's the group that makes the decision about Medicare coverage for these tests, ***they saw the same data gap. And the people at MolDX are highly qualified experts.***

(emphasis added). The Court thus had to warn Natera that "[i]f you introduce any kind of evidence that suggests that there was a data gap and that was the reason, that would open the door." *Id.* at 317:20-318:1.

Natera ignored the Court's warning and repeatedly attempted to question Dr. Eltoukhy about MolDX's decision-making, eliciting objections from Guardant that the Court sustained. Trial Tr. at 792-793. The Court also repeatedly had to sustain objections to Natera's improper questions to Mr. Mccoy about MolDX, despite the Court's having ruled on the specific issue only minutes earlier. E.g., Trial Tr. at 1561:4-18; 1566:9-15 ("MS. KELLER: Objection, Your Honor, based on what the Court just ruled. THE COURT: Sustained. It's to be disregarded."); 1568:24-1569:2 ("MS. KELLER: Your Honor, I'm going to object to any use of this document unless we can get into it ourselves. THE COURT: Take the document down for the reasons I stated.").

The Court also made clear that documents generated after COBRA was injected into this case would be precluded. In granting Guardant's motion for sanctions, the Court "essentially turn[ed] back the clock on this issue," explaining that it would "conduct the trial in large part as

that which would have proceeded in March 2024 but for its misplaced reliance upon Dr. Hochster's supplemental testimony on COBRA." Dkt. 730 at 2; *see also* Dkt. 719 at 1. Accordingly, the Court addressed Guardant's objections to Natera's use of a post-COBRA clinical study involving Dr. Parikh. Trial Tr. 1063:16-25 (discussing TX-1786 and 1787, and the Court's ruling that: "Those are out.") Although the Court thereafter was prepared, at least conditionally, to allow Natera to establish a foundation for use of the exhibits, Trial Tr. 1072:2-1073:2, the Court thereafter held that Guardant had not opened the door to these exhibits. Trial Tr. 1195:9-1196:19; *see also id.* at 1197:23 ("The Court: It will be excluded under 403.") Natera's counsel nevertheless questioned Ms. Raymond about this 2024 clinical study, *id.* at 1224:15-1225:12, resulting in a rebuke from the Court outside the jury's presence. *Id.* at 1285:25-1286:2 ("All right. If that happens again, I will sanction. And you know better than that. I'm going to leave it at that")

The Court also made clear that Guardant's transition of Reveal to the Infinity platform was not relevant to the merits of this case. E.g., Trial Tr. 955:22 (holding that Infinity was not relevant). The Court further held that Guardant would not be allowed to disclose the Joint Statement, Dkt. 25-3, and Natera was not allowed to open the door to claim Guardant failed to mitigate by engaging in comparative corrective advertising. Dkt. 509 at 17.

In the space of a few minutes, during the direct examination of Dr. Stec, Natera's counsel violated both of these strictures. Trial Tr. 1868:14-1870:4 (eliciting testimony from Dr. Stec that although Guardant had the financial resources to actually conduct corrective advertising "when the alleged false or misleading statements were occurring," "it didn't do that," and further eliciting testimony that Guardant was not entitled to corrective advertising because "the Reveal product that was used, was a version of the product that's no longer used, no longer sold."). The Court made clear that this conduct violated the Court's orders:

> THE COURT: In my view, you violated my order.
>
> I don't care what you -- you elicited from him knowing that he was going to say they had the means to do it and didn't do it.
>
> If they had the means to do it, but I told you you can't get into whether they could do it, they did do it or not, it doesn't matter. It doesn't matter.

> You stepped over the line, and you've [referring to Natera's counsel generally[2]] done this several times.

Trial Tr. 1890:11-19; *see also* Trial Tr. at 1891:1-2 ("You can talk about it at the sanctions hearing.").

While there are more incidents of Natera's counsel openly violating this Court's clear orders and directives, Guardant will limit its continued sanctions motion to these specific examples.

**2.      Improper factual misrepresentations during closing argument.**

Natera's counsel made a blatantly and knowingly false factual statement during closing argument—and timed the misrepresentation during final rebuttal so that Guardant could not address it. While the gambit appears to have failed—as the jury rejected all of Natera's counterclaims—the conduct remains sanctionable.

A key issue for Natera's counterclaims was whether any alleged false or misleading statements Natera would attribute to Guardant were made in "commercial advertising or promotion." Natera thus was required to prove, among other things, that a challenged statement had been "sufficiently disseminated" to customers. E.g., Dkt. 759 at 36 (Instruction No. 32, elements of "Commercial Advertisement or Promotion"). The Court made clear that statements made to investors do not constitute advertising. Dkt. 509 at 5 (citing *Sigma Dynamics, Inc. v. E. Piphany, Inc.*, 2004 WL 2648370 at *3 (N.D. Cal. 2004)). This was a problem for Natera, as its focus throughout litigation and trial was on one-off emails, draft ads, Guardant's communications with MolDX, and statements to investors, none of which constitute advertising.

Guardant formally raised this issue with respect to Guardant's presentation at the 2021 JPM Conference, TX-573. *See* Dkt. 822. As Guardant documented, the only evidence regarding the JPM Conference came from Drs. Masukawa and Eltoukhy, both of whom described it as an investor conference:

> Q.    And what is the JPMorgan conference?
> A.    JPMorgan is an annual conference held here in San Francisco with investors and companies presenting their -- some of their data.

---

[2] *See* Trial Tr. 1960:22-24 ("the statement I made about having crossed the line several times, when I said 'you,' I was intending to refer to the firm.")

Trial Tr. at 655-56 (K. Masuakawa); *see also* Trial Tr. 726-27 (H. Eltoukhy) (Describing JPM Conference: "An investor conference is mostly focused on the financial performance of, you know, companies that are presenting there, their financial outlook, and then at a high level some of the products that could help that financial outlook.") Natera submitted an opposition to Dkt. 822, *see* Dkt. 824, but cited no evidence showing that the JPM Conference is attended by oncologists rather than those seeking to make or receive investments in life sciences and healthcare companies. To the contrary, Natera insisted that the *lack* of any evidence that any oncologists attended the JPM Conference was a "*non-sequitur*":

> Guardant's argument that Natera failed to prove that "oncologists" attended JPMorgan is a non-sequitur. Dkt. 822 at 2. The jury instructions do not require the jury to find that the statements were made directly to "oncologists," "doctors," or "physicians;" in fact, those terms are not mentioned at all in the instructions.

Dkt. 824 at 4.

During initial closing argument, Natera's counsel never addressed whether any of Guardant's advertising had been "sufficiently disseminated" to constitute "commercial advertising or promotion," and while he mentioned the JPM Conference presentation, counsel never claimed that it was attended by oncologists. E.g., Trial Tr. at 2060:25-2061:4. Guardant's counsel accordingly had no need to offer further argument during his rebuttal. Nevertheless, Natera's counsel took the opportunity during *Natera's* rebuttal—which was literally the last word to the jury, and to which Guardant had no opportunity to respond—to lie:

> You know, of course, these materials were sufficiently disseminated.
>
> One of the main documents was when they promoted it **at the JPMorgan conference here in San Francisco, thousands of people, oncologists, doctors that are coming.** So to stand here now and to say none of these were promotional materials is simply just not correct.

Trial Tr. 2125:9-15 (emphasis added).

Natera's counsel's factual misrepresentation to the jury constitutes a brazen and bare-faced falsehood. There is exactly *no* evidence in the trial record that a single oncologist attended the JPM Conference, much less that "thousands" of oncologists attended. Natera knew this—had been told page and line exactly what the evidence in fact showed—and effectively conceded it had no

counter-evidence. Natera's counsel nevertheless chose to lie to the jury, and did so with calculation, to mislead the jury into believing that Natera had met a necessary element of its Lanham Act counterclaim, and in a circumstance in which Guardant could not respond. While the jury apparently saw through this falsehood, Natera's deception is nevertheless sanctionable.

### 3. Repeated and abusive proffers of excessive demonstrative slides that required extensive conferences in the midst of trial.

Consistent with the Court's directives, Guardant's counsel met and conferred with Natera's counsel extensively in advance of each trial day to discuss and attempt to resolve disputes regarding exhibits to be used during trial. While the Court resolved certain disputes in advance of trial through its Orders on the motions *in limine,* Dkt. 509, the Parties' Exhibit List Objections, Dkt. 611, and regarding Objections to "Must Use" Exhibit List, Dkt. 779, Natera identified 435 "may use" exhibits for potential use for specific witnesses during trial—only 91 of which it had been previously designated as "will use" exhibits. Thus, Guardant's counsel had to spend as many as four hours in advance of each trial day attempting to resolve disputes over exhibits.

Natera's gamesmanship came to a head in two particular instances—the demonstrative slides Natera designated for use with Dr. Metzker, and its closing demonstrative slides. Rather than offering a reasonable set of materials for Dr. Metzker that complied with this Court's *Daubert* ruling, Natera initially proffered a set of 78 slides on November 13, 2024. Many of these slides indicated that Dr. Metzker would be narrating his way through documents of which he had no actual knowledge, in direct contravention of this Court's rulings. Dkt. 324 at 10, 14-15. Following objections and in the midst of a four-hour meet-and-confer, Natera began offering an ever-changing set of revised, replaced, omitted, and added slides, finally settling on a set that was half the length initially offered. The Court expressed its frustration with Natera's conduct, explaining that it created "a basis for sanctions." Trial Tr. at 1445:13; *see also id.* at 1447:25-1448:1 ("I'm going to reserve the issue of sanctions for a later date.")

This scenario repeated itself, multiplied by a factor of four, a few days later. The Court had directed the Parties to exchange demonstrative slides for closing arguments by Wednesday, November 19, so that any disputes could be brought to the Court's attention by noon on Thursday,

November 20. Trial Tr. 1953:5-1955:4. The Court made clear that the exchange would be for demonstratives "*you're going to use*," cautioning the Parties: "given the number of disputes that have arisen, I don't want to get more disputes arising in front of the jury. So *I want this to go smoothly*." *Id.* at 1953:6-9 (emphasis added). The Court stressed that "if something is out of whack and you guys are in dispute, I don't want to have to argue about that in front of the jury." *Id.* at 1953:23-25; *see also id.* at 1955:10-11 ("My main concern is I get it so I have a chance to actually look at it.")

The Parties agreed to exchange slides at 6:30 Wednesday evening, with a meet-and-confer proposed for 9:00 pm that evening. Guardant timely provided its forty-two slides to Natera for review, while Natera sent a link to a set of *three-hundred and twenty-one slides*.

As Guardant's counsel observed during argument the next morning, Natera's improperly bloated submission made it impossible for Guardant's counsel to meaningfully review this sheer volume of slides and have a productive meet-and-confer:

> We got 320 slides. If you consider just reading them and all of the complex issues in this case, they expected us to be able to review them in 15 seconds per slide in order to be able to have a meet-and-confer. If we had been able to just spend two minutes, we're talking ten hours. It was just way over the top.

Trial Tr. 1964:21-1965:1. As noted in Guardant's subsequent motion for sanctions, Dkt. 823, many of Natera's slides were plainly improper. It was obvious that Natera had no intent to actually use this massive volume of slides during the hour-and-a-half it had available for closing—a point it effectively conceded. Dkt. 826 at 1.

On Wednesday evening, Guardant directed Natera to provide a reduced set of no more than 100 slides no later than 11:00 pm. While Natera's counsel failed to do so, they nevertheless had no problem deleting over a hundred and twenty slides and thus provided a set of 199 slides one minute before midnight that evening. Natera's counsel further modified the deck at 10:16 am Thursday morning, and made additional revisions in connection with the Parties' meet-and-confer Thursday afternoon. The Parties preserved objections in a joint submission, Dkt. 828, and the Court spent the better part of an hour during the last day of trial addressing Natera's objectionable slides. Trial Tr. 1960:16-1991:1. In the end, Natera used only a small fraction of the mammoth

slide set originally proposed. Trial Tr. 2045:24-2102:24 & 2121:4-2131:20.

As the Court indicated in connection with Natera's Metzger gambit, such misconduct is sanctionable. Natera failed to act in a good faith attempt to identify exhibits and closing slides it was actually "going to use," and instead ambushed Guardant in a blatant attempt to disrupt Guardant's trial preparation, including critical closing arguments. Guardant seeks the opportunity to address such conduct in its renewed sanctions briefing.

### NATERA'S POSITION

As set forth in the Court's October 23, 2024 Order, Natera understands the parties will brief the issue of monetary sanctions relating to Dr. Howard Hochster, one of the third-party expert witnesses engaged by Natera. At the same time, this Court should reject Guardant's opportunistic attempt to expand the sanctions briefing to encompass numerous additional issues relating to trial conduct. None of the conduct identified by Guardant satisfies the high threshold attending sanctions. Nor does Guardant identify any tangible prejudice that it allegedly suffered from the identified conduct that could warrant curing. By contrast, injecting new sanctions issues would effectively tax party and judicial resources to no good end. And the Court was cognizant of that when it "cautioned" the parties to "limit the number of … proposed [sanctions] motions." Dkt. 875 at 1.

**I.   GUARDANT HAS NOT IDENTIFIED ANY VALID BASIS FOR SANCTIONS**

"When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). That is, "a sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.*

"Before awarding sanctions under its inherent powers … the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)). "The bad faith requirement sets a high threshold." *Id.* at 649. An attorney acts in bad faith only if he or she (1) "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent" or (2) "delay[s] or disrupt[s] the litigation or hampering the enforcement of a court order." *Id.* (district court's "frustration" with an attorney's conduct insufficient to support sanctions).

Additionally, "sanction[s], when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). That is, a sanction "may go no further than to redress the wronged party 'for losses sustained.'" *Id*. The sanction "may not impose any additional consequences as punishment for the sanctioned party's misbehavior." *Am. Unites for Kids*, 985 F.3d at 1089. As such, before "using its inherent sanctioning authority," the Court would need to establish a causal link between the sanctionable conduct and the penalty imposed. *Goodyear*, 581 U.S. at 108. This requires a but-for analysis: the complaining party may recover only for harm that it would not have suffered but for the misconduct. *Id.* at 109; *accord Am. Unites for Kids*, 985 F.3d at 1089-90.

Here, Guardant has not identified any sanctionable conduct. As shown in more detail below, none of the trial conduct identified by Guardant constitutes a willful violation of a court order or other bad-faith conduct. At best, Guardant has identified run-of-the-mill perceived grievances that any party could point to after a hotly-contested, nine-day trial involving a number of complex factual issues and nuanced rulings governing the admissibility of certain types of evidence. *See* Tr. 1198:18-19 (Court noting this "is a complicated case with complicated issues"). Such conduct by no means meets the "high threshold" for sanctions. *Primus*, 115 F.3d at 648.

Sanctions should be all the more out of bounds considering that Guardant does not identify any real prejudice that it suffered as a result of the challenged conduct. The jury awarded Guardant the full amount that it sought in compensatory damages—$75 million—while recommending an additional disgorgement of $42 million. Dkt. 847 at 2. The jury also awarded Guardant punitive damages of $175 million, *id*. at 3, over double the amount of compensatory damages, *id*. at 2. And the jury found that Natera had not established its claims. *Id*. at 3-4. Thus, while Guardant speculates that Natera's conduct supposedly "threatened severe prejudice" or may have "mislead the jury into believing that Natera had met a necessary element of its Lanham Act counterclaim," the jury's verdict conclusively refutes the hypothesized prejudice. The jury found in Guardant's favor on all issues and awarded substantial damages. Accordingly, the sanctions that Guardant seeks flunk the "but for" test—as they would not redress Guardant "for losses sustained" and would instead amount to impermissible "punishment." For all these reasons, this Court should reject Guardant's request to brief additional sanctions issues.

Natera responds below to the specific conduct identified by Guardant:

**A.    Natera Did Not Improperly Or Willfully Elicit Testimony On Matters Deemed To Be Off-Limits**

*MolDX.* Guardant first contends that Natera should be sanctioned for attempting to elicit

evidence regarding "MolDX's state-of-mind and its reasons for delaying approval of Reveal for Medicare coverage." But *Guardant* introduced these issues and thereby opened the door to them, starting with its opening statement, where Guardant repeatedly offered its (slanted) side of the story on precisely this point. *See e.g.*, Tr. 202:11-12 ("The second part of the war was to lie to Medicare, behind the scenes, about Reveal."); Tr. 204:7-10 ("While Guardant was presenting the research proving Reveal's positive performance, Natera had secret discussions with Medicare to convince them to deny coverage."); Tr. 206:14-19 ("Medicare's internal experts, who are neutral, were paying attention. They considered Natera's argument, including many of the same attacks Natera will repeat to you, and they rejected them. They [Medicare] approved Reveal for Medicare coverage. So Natera's claims to Medicare were false in 2021 and they're still false today.").

Tellingly, although Guardant now faults testimony elicited from Dr. Eltouky on cross-examination, these questions responded to what Guardant's counsel had elicited from Dr. Eltouky: that Medicare coverage was a very "important milestone"; Natera was "emailing the Medicare directors misinformation about Reveal"; Reveal did not receive Medicare coverage until "mid-2022" which was "many, many months" after Guardant "had expected to get [coverage]"; Guardant, unlike Natera, had never "tried to prevent a competitor from receiving Medicare coverage"; and given Natera's "poisonous campaign [] many of tens of thousands of patients" were "deprived of … [a] testing opportunity," such that there was "blood on … someone's hands" and "many tens of thousands of patients who may not be alive today because they didn't get access to th[at] … testing." Tr. 746:5-750:21. It is difficult to comprehend Guardant's notion that Natera should now be **sanctioned** for having revisited these subjects. *See, e.g.*, *D'Aquino v. United States*, 192 F.2d 338, 369 (9th Cir. 1951) (witness "subjected herself to cross-examination" on subjects when she "took the stand and undertook to testify upon direct examination concerning [those] subjects"); *Wise v. S. Tier Express, Inc.*, 780 F. App'x 477, 479-880 (9th Cir. 2019) (defendant did not violate motion *in limine* by eliciting testimony about certain subjects because plaintiff's counsel "elicited testimony on direct examination regarding" those subjects).

As to Guardant's complaints regarding questions during Mr. McCoy's examination, these questions were specifically tied to an exhibit—TX-612—that the Court had just admitted without any objection from Guardant. Tr. 1564:13-1565:6 (admission of TX-612 without objection). Furthermore, Natera's counsel repeatedly attempted to steer this Guardant witness away from any discuss of Medicare or MolDX, but the witness volunteered the information. Tr. 1565:11-1565:19 (Natera's counsel admonishing "I really don't want to talk about Medicare too much. I just want to talk about some of the views that you expressed to Mr. Eagle."); Tr. 1567:18-1568: (Natera's

counsel explaining, "I'm not asking about what MolDX or Medicare said.").

In any event, because the jury sided with Guardant on all liability issues, Guardant could never demonstrate prejudice from any question that Natera asked or attempted to ask regarding MolDX.

***Post-COBRA Study.*** Guardant also claims a basis for sanctions because Natera's counsel "questioned Ms. Raymond about [a] 2024 clinical study" referenced in TX-1786 and TX-1787. Contrary to Guardant's premise, however, the Court did not sustain Guardant's objections to the documents referencing this study. To the contrary, when Guardant asked the Court to exclude these exhibits before Ms. Raymond took the stand, the Court declined to do so. Instead, it invited Natera to try to "lay [a] foundation" for the documents with this witness and, when Guardant's counsel tried to re-argue the issue, the Court reiterated "I just said I'm going to allow that inquiry." Tr. 1072:5-1073:15. Accordingly, as expressly permitted by the Court, Natera's counsel attempted to lay the foundation for these documents. Tr. 1223:22-1224:24. While the Court ultimately prevented questioning based on Rule 403 (Tr. 1195:9-1197:23), Guardant's assertion that Natera attempted to question the witness about documents that the Court had already excluded simply does not square with the record. Natera's counsel did not ask about these documents—or the 2024 study—after the Court's rulings. While Guardant points to certain testimony claiming Natera revisited those documents, it did not. Rather, Natera's counsel attempted to elicit testimony on a different topic, showing that—contrary to Guardant's position in the litigation—it was not uncommon for the results in published studies, in particular those from Harvard cancer researchers, to be challenged, which counsel believed in good faith to be outside of the Court's prior ruling.[3] Tr. 1224:9-1225:12, 1285:15-21. Ultimately, when Natera's counsel asked "[a]re you familiar with this year, in 2024, 31 papers being challenged?" (Tr. 1225:7-8), and Guardant's counsel objected, the Court sustained the objection based on Rule 403; at that point, the questioning ended without the witness answering (Tr. 1225:9-12). Again, there could not have been any resulting prejudice.

'' ***Infinity.*** Guardant also argues that Natera violated the Court's "strictures" by questioning Natera's damages expert regarding Infinity. According to Guardant, "the Court made clear that

---

[3] When Guardant's counsel falsely accused Natera's counsel during trial of intentionally violating the Court's 403 ruling relating to these exhibits, the Court responded "If that happens again, I will sanction." Tr. 1285:25-1286:1. Guardant does not claim this happened again. Thus, even accepting Guardant's (inaccurate) interpretation of counsel's questioning, no sanctions should be imposed on this record.

Guardant's transition of Reveal to the Infinity platform was not relevant to the merits of this case" when it sustained two relevancy objections during the cross-examination of Victoria Banks. But Guardant omits to note that the Court admitted other evidence relating to Infinity over Guardant's objections (*see e.g.*, TX 1576; Tr. 1360:3-5), which refutes the notion that there had been a "blanket exclusion," as Guardant claims. Regardless, even assuming *arguendo* that the Infinity product was irrelevant to the merits of the case, it was relevant to the issue of damages, as expressly disclosed in Dr. Stec's reports. *See e.g.*, Oct. 24, 2024 Rebuttal Report at 10 ("This also undermines Mr. Malackowski's claim that Guardant is entitled to $74.5 million in corrective advertising damages given that the version of Reveal that was the subject of Natera's allegedly false/misleading advertisements is no longer even on the market."). Particularly given that Guardant never attempted to preclude this expert opinion through a *Daubert* motion and the Court permitted the introduction of some exhibits and testimony relating to Infinity during the course of the trial (Tr. 791:4-6 (Eltoukhy) (agreeing that "in 2023 Guardant transitioned to run all Reveal tests on a new platform called Guardant Infinity"); Tr. 955:4-9 (same); Tr. 1888:7-9 (Court noting that "Infinity was one generation away … and, therefore, that could be included in the lost sales")), it should not be deemed sanctionable for Natera's counsel to question Dr. Stec regarding this disclosed opinion. In any event, the jury awarded Guardant all of the corrective advertising damages it sought, thus foreclosing any prejudice from this line of questioning, which went to Dr. Stec's rebuttal opinions on Guardant's prospective corrective advertising damages. Tr. 1869:16-24 (Stec) (testifying that he did not believe that prospective corrective advertising was appropriate because the "product that was used" for the Parikh study, the Reveal product, "was a version of the product that's no longer used, no longer sold").

**Comparative Corrective Advertising**. Guardant's argues that Natera violated the Court's ruling on ***Natera's*** Motion in *Limine* No 4 (Dkt. 509 at 16-17), by attempting to elicit from Dr. Stec that Guardant could have, but did not, engage in corrective advertising. In fact, this line of questioning fell within the bounds of the Court's Order. Acknowledging that Natera was permitted to introduce mitigation evidence in defending itself against Guardant's claims for millions of dollars in prospective corrective advertising, the cited Order notes that "Guardant has been permitted to engage in a significant amount of corrective advertising, including making truthful statements about its own product and truthfully criticizing the opposing party's product." *Id*. at 16-17. The Court when on to rule that, ***if*** Natera opened the door by "argu[ing] that Guardant had an obligation and failed to mitigate damages by engaging in *comparative* corrective advertising," it would be permissible for Guardant to introduce the relevant terms of the Joint Stipulation. Dkt.

509-17 (emphasis in original).  Notably, Natera never attempted to elicit any evidence regarding Guardant's failure to engage in ***comparative*** corrective advertising.[4]  Nor can Guardant show prejudice from the identified, attempted line of questioning after the jury awarded the full amount of the prospective corrective advertising damages sought by Guardant.

### B. Natera Did Not Make Bad-Faith Factual Misrepresentations During Closing Argument

Guardant unfairly accuses Natera's counsel of misrepresenting during closing that "thousands of people," including oncologists, attended a JPMorgan Health Care Conference in San Francisco at which Guardant presented data.  Tr. 2125:9-15.  Guardant quibbles with the fact that there was no testimony that any oncologists attended the JP Morgan Health Care Conference.  But Guardant did not offer any evidence to the contrary, and the jury could have made the reasonable assumption that oncologists attended the Health Care Conference—otherwise, there would have been little point in Guardant presenting its data at the Health Care Conference.  *See* Tr. 461:10-13 (Price) ("Guardant first announced the commercial launch of Reveal on January 11 at the JPMorgan conference in 2021."), Tr. 651:4-11 (Masukawa) (confirming conference presentations are "publicly available"), Tr. 952:19-21 (Banks) ("Reveal was announced at JPMorgan.").  Indeed, as this Court recognized, "there's a debate about JPM," and so the Court was "not going to take that away from the jury"—notwithstanding Guardant's "view[] that, as a matter of law … [the conference was] not consumer-directed" and that it "was not a consumer-directed conference, et cetera, et cetera."  Tr. 1965:23-1966:2.  Indeed, the Court told Guardant's counsel it could "argue that there was no evidence that any oncologist attended it, et cetera, et cetera."  Tr. 1966:5-6.

Moreover, Guardant failed to object to the challenged statement by Natera's counsel regarding the JPMorgan Healthcare Conference.  *See* Tr. 2125:9-15.  Assuming *arguendo* that a curative instruction was warranted, Guardant forfeited its right to seek any such sanction, *see, e.g.*, *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986) (party should object to alleged instances of attorney misconduct before the jury deliberates to allow the district court "to examine the alleged prejudice and to admonish ... counsel or issue a curative instruction,

---

[4] When Guardant objected to counsel's questions regarding corrective advertising generally—which is distinct from comparative corrective advertising—Natera's counsel promptly and repeatedly sought clarification from the Court in an attempt to stay within the bounds of the Court's rulings, further confirming her good faith.  Tr. 694:14-695:23, 1869:10-11 (requesting sidebar during Dr. Stec's testimony), 1887:6-16; *cf. Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983) ("inadvertent" violation of an order does not constitute willful misconduct).

if warranted"). But it should be self-evident that a statement to which Guardant never so much as objected should not occasion post-trial sanctions proceedings. Especially now that the jury returned a verdict in Guardant's favor on Natera's claims, there could not have been any prejudice to Guardant.

    **C.    Natera Did Not Engage In Bad-Faith Conduct During Meet-And-Confers**

Guardant rehashes its complaints regarding the parties' meet-and-confer efforts over exhibits and demonstratives. *See* Dkt. 823 (Guardant's Motion for Sanctions). Having already addressed Guardant's accusations on these points, *see* Dkt. 826 (Natera's Opposition to Guardant's Motion for Sanctions), Natera will not belabor its rejoinders. In brief:

***Dr. Metzker's Demonstratives***: After Natera disclosed Dr. Metzker's demonstratives, Guardant objected to nearly every slide, as well as to exhibits that Natera planned to use with Dr. Metzker, which had been disclosed in his expert report. Natera then withdrew and modified slides to address Guardant's objections, but Guardant refused to consider Natera's narrowed demonstratives and instead made baseless objections, which the Court overruled. *See* Tr. 1436:7-1441:9 (Guardant objecting to Dr. Metzker's opinions as outside the scope of his reports and the Court ruling "Well, it's in there," after Natera pointed out the paragraphs in Dr. Metzker's report previously cited to Guardant during the meet-and-confer); *see also* Dkt. 826 at 5-6 (further addressing Guardant's complaints regarding Dr. Metzker's demonstratives).

***Natera's Closing Demonstratives.*** After Natera timely disclosed its closing demonstratives, Guardant refused to meet and confer, asserting that Natera had too many slides (and that Guardant had not reviewed the substance of those slides). *See* Dkt. 826 at 2-4 (further addressing Guardant's arguments regarding Natera's closing demonstratives). In response, Natera attempted to address Guardant's complaint by reducing the number of slides to 68 testimony slides, 60 slides of admitted exhibits, and 13 transition slides, but Guardant's counsel continued to refuse to meet and confer and instead filed a motion for sanctions, highlighting objections that Guardant had to Natera's ***original*** slide deck, as opposed to the ***amended*** slide deck, which Guardant had expressly demanded. Notably, Guardant does not even purport to identify any slide in the amended slide deck that Natera failed to use during closing argument.

At bottom, none of Guardant's complaints regarding demonstratives and exhibits show that Natera's counsel acted in bad faith. As this Court recognized, this "is a complicated case with complicated issues" (Tr. 1198:18-19), such that there would be disagreement with respect to admissibility of exhibits and propriety of demonstratives. But as the above reflects, when Guardant raised concerns, Natera attempted to address those with an eye towards minimizing the

- 15 -

number of issues that needed to be raised with the Court. Far from reflecting egregious bad faith, *Primus*, 115 F.3d at 648, Natera's withdrawal or modifications in response to Guardant's objections is emblematic of the good-faith behavior that the Court expects and encourages.

Moreover, Guardant previously asserted that the "appropriate sanction[]" for Natera's alleged misconduct on these subjects was that "Natera should be docked another hour from its allotted trial time … and … precluded from using any demonstrative during closing." Dkt. 823 at 8. But this Court rejected Guardant's request to preclude Natera from using demonstratives during closing. Tr. 1965:7-10 ("Well, I understand you're seeking sanctions to bar all slides. And, you know, that has pretty enormous implications, and I'm not going to do that."). Nor did the Court dock Natera allotted trial time on this basis. Having declined to impose the contemporaneous sanctions suggested by Guardant, the Court has even less reason now to circle back and consider such sanctions post-trial. In any event, the jury's verdict leaves no prejudice that could have resulted from the slides that Natera used in closing or the demonstratives that Natera used with Dr. Metzker. If anything, sanctioning now based on this conduct would amount to improper "punishment." *Am. Unites for Kids*, 985 F.3d at 1089.

### D. If This Court Is Inclined To Entertain Guardant's Sanction Requests, Natera Respectfully Requests That It Also Consider Guardant's Sanctionable Trial-Related Conduct

For at least the reasons above, this Court should reject Guardant's request to address additional sanctions issues and prevent this case from devolving into mudslinging over perceived grievances that occurred over a hard-fought, complex, nine-day trial. Nevertheless, if this Court is inclined to entertain Guardant's trial-related sanction requests in post-trial briefing, Natera respectfully requests that it be granted corresponding opportunity to file a brief addressing the arguably sanctionable conduct in which Guardant engaged throughout the course of this proceeding. Without belaboring points already covered, Natera simply notes that, in its respectful view, Guardant's conduct during trial would warrant the same and worse criticism as compared to what Guardant is now directing at Natera. *See, e.g.*, Dkts. 789 (Natera's objection to Guardant's counsel improperly testifying to the jury); Dkt. 800 (discussing how Guardant "repeatedly misled the jury about the scope of Medicare coverage that it received for Reveal"); Dkt. 826 (discussing Guardant's refusal to meet and confer in good faith, including by repeatedly raising baseless objections, leading to unnecessarily lengthy late-night conferences).

\*\*\*

For all these reasons, Natera respectfully requests that the Court deny Guardant's request

to brief additional sanctions issues related to conduct of the trial.

04648-00006/15518792.3

| | |
|---|---|
| Dated: January 3, 2025 | **A&O SHEARMAN** |
| | By:   */s/ Saul Perloff* <br>      Saul Perloff |
| | Attorney for Plaintiff/Counter-Defendant GUARDANT HEALTH, INC. |
| DATED: January 3, 2025 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By */s/ Derek Shaffer* <br> QUINN EMANUEL URQUHART & SULLIVAN, LLP <br> Derek Shaffer (Bar No. 212746) <br> derekshaffer@quinnemanuel.com <br> 1301 I Street NW, #900 <br> Washington, DC 20005 <br> Telephone:  (202) 538-8000 <br> Facsimile:   (650) 538-8100 |
| | Attorneys for Defendant and Counterclaim-Plaintiff, NATERA, INC. |

**FILER'S ATTESTATION**

Pursuant to Civil LR 5.1(i)(3), the undersigned hereby attests that concurrence in the filing of this **JOINT SUBMISSION REGARDING SCOPE OF GUARDANT'S POST-TRIAL BRIEFING IN SUPPORT OF MOTION FOR SANCTIONS BASED ON NATERA'S TRIAL-RELATED MISCONDUCT** has been obtained from counsel for Natera, Inc. and is electronically signed with the express permission of Natera's counsel.

Date: January 3, 2025

By: /s/ *Saul Perloff*
Saul Perloff

Attorney for Plaintiff/Counter-Defendant
GUARDANT HEALTH, INC.

**CERTIFICATE OF SERVICE**

In accordance with Local Rule 5-5, I certify, that on January 3, 2025, this document, filed with the Court through the CM/ECF system, will be sent electronically to the registered participants at their e-mail addresses as identified in the Notice of Electronic Filing (NEF). Non-CM/ECF participants will be served via First-Class Mail.

I certify under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of January, 2025.

*/s/ Saul Perloff*
Saul Perloff