| | |
|---|---|
| **Saul Perloff** (157092)<br>saul.perloff@aoshearman.com<br>**Katharyn Grant** *(pro hac vice)*<br>kathy.grant@aoshearman.com<br>**Andre Hanson** *(pro hac vice)*<br>andre.hanson@aoshearman.com<br>**Olin "Trey" Hebert** *(pro hac vice)*<br>trey.hebert@aoshearman.com<br>**ALLEN OVERY SHEARMAN STERLING US LLP**<br>300 W. Sixth Street, 22nd Floor<br>Austin, TX 78701<br>Telephone (512) 647-1900<br><br>**Christopher LaVigne** *(pro hac vice)*<br>christopher.lavigne@sherman.com<br>**ALLEN OVERY SHEARMAN STERLING US LLP**<br>599 Lexington Ave<br>New York, NY 10022<br>Telephone (212) 848-4000 | **Jennifer L. Keller** (84412)<br>jkeller@kelleranderle.com<br>**Chase Scolnick** (227631)<br>cscolnick@kelleranderle.com<br>**Craig Harbaugh** (194309)<br>charbaugh@kelleranderle.com<br>**Gregory Sergi** (257415)<br>gsergi@kelleranderle.com<br>**KELLER/ANDERLE LLP**<br>18300 Von Karman Ave., Suite 930<br>Irvine, CA 92612<br>Telephone (949) 476-0900 |

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>             Plaintiff,<br><br>vs.<br><br>NATERA, INC.,<br><br>             Defendant. | Case No. 3:21-cv-04062-EMC<br><br>**DECLARATION SAUL PERLOFF IN SUPPORT OF GUARDANT HEALTH, INC.'S MEMORANDUM IN SUPPORT OF AN AWARD OF MONETARY SANCTIONS RELATED TO NATERA, INC.'S COUNSEL MISCONDUCT CONCERNING COBRA** |

I, Saul Perloff, declare as follows:

1. I am over 18 years old and I have personal knowledge of the facts set forth herein and could and would testify competently thereto if called as a witness.

2. I am a partner with the law firm of A&O Shearman LLP, which resulted from the merger of my former law firm, Shearman & Sterling LLP with Allen & Overy (together, "A&O Shearman"). I have served as the attorney-in-charge representing Guardant Health, Inc.

- 1 –
DECLARATION OF SAUL PERLOFF ISO GUARDANT'S MEMORANDUM ISO SANCTIONS AWARD
CASE NO. 3:21-CV-04062-EMC

("Guardant") in the above-captioned proceeding. I have been licensed to practice law since 1991, and have over thirty years' of experience handling complex commercial litigation cases for both the United States government and in private practice. I am familiar with fees customarily charged by lawyers in litigation similar to the dispute in this litigation and am familiar with expenses and costs incurred in litigation similar to the dispute in this case.

3.     I offer this declaration in support of Guardant's request for monetary sanctions in the form of attorneys' fees and otherwise nontaxable costs against Natera, Inc. ("Natera") and its counsel with Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), in connection with their COBRA-related misconduct. *See generally* Dkt. 730. As set forth in Dkt. 730 and in the accompanying memorandum, as a result of Natera's and Quinn Emanuel's COBRA-related misconduct, Guardant incurred attorneys' fees and nontaxable costs during the period of February 1 through October 18, 2024, in connection with:

A. Written discovery relating to COBRA. This included obtaining (or attempting to obtain) (1) documentary evidence from Dr. Hochster; (2) documentary evidence from Natera; (3) documentary evidence from third parties, including Rutgers University, NRG, and Dr. Van Morris at MD Anderson Cancer Center. Guardant also had to address Natera's unreasonable demands for documents from Guardant. Much of this led to discovery motion practice before Judge Kim. E.g., Dkt. Nos. 510, 512, 515, & 516 (Guardant motion for discovery from Dr. Hochster); Dkt. Nos. 523, 527, & 531 (Natera motion for COBRA discovery from Guardant); Dkt. Nos. 532, 533, & 535 (further motion practice on scope of COBRA discovery); Dkt. Nos. 546, 554, & 558 (Natera motion for Rule 30(b)(6) deposition of Guardant witness on COBRA). Beyond this, I and other counsel for Guardant engaged in extensive discussions with counsel for third parties, including Rutgers University, NRG, and MD Anderson, to negotiate the scope of third party document productions. Guardant also had to expend considerable resources related to the forensic document collection and review of Dr. Hochster's emails. While Natera paid the direct costs of the forensic reviewer, it did *not* cover the time spent by Guardant's counsel in negotiating and overseeing the review.

B. Depositions related to COBRA. I and other of Guardant's counsel had to prepare for, take, and defend seven new depositions (and had to prepare for one more). These included taking the deposition of Dr. Hochster; preparing and defending Dr. Craig Eagle, Guardant's Chief Medical Officer, as a Rule 30(b)(6) witness on COBRA; taking the deposition of Natera's officer Dr. Aleshin as a newly disclosed witness on COBRA; taking the deposition of Dr. Morris as an NRG representative; preparing for the deposition of Dr. George as another NRG representative; preparing and defending the depositions of Dr. Heitjan and Parikh as COBRA experts; and taking and defending the depositions of Mr. Malackowski and Dr. Stec, who updated their expert damages opinions based on COBRA.

C. New expert opinions. Guardant expended time, effort, and money to obtain expert opinions on COBRA from Drs. Heitjan and Parikh. These updated expert reports were in rebuttal to Dr. Hochster's opinions, and required counsel's time to work with the experts and, in the case of Dr. Heitjan, fees paid to the expert. (Dr. Parikh deferred payment of any fees in lieu of a charitable donation.) In addition, Mr. Malackowski offered supplemental reports, first to address COBRA, and later to omit any consideration of COBRA.

D. Extensive motion practice. I and other of Guardant's counsel had to engage in extensive motion practice that would not have been necessary had Natera's counsel not engaged in bad faith misconduct. In addition to the extensive discovery motion practice referenced above, this included Guardant's original motion to strike Dr. Hochster's Supplemental Report, Dkt. Nos. 447, 458, & 462; multiple status conferences related to COBRA and the continuation of trial, e.g., Dkt. Nos. 471, 491, 496, 497, Guardant's *Daubert* motion to exclude Dr. Hochster's COBRA opinions, Dkt. Nos. 568, 618, & 635; Natera's *Daubert* motion against Mr. Malackowski's supplemental opinions, Dkt. Nos. 603 & 635, and the sanctions motion practice itself. Dkt. Nos. 578, 588, 597, 692, 707, & 719.

4. I was in charge and control of billing by A&O Shearman, and A&O Shearman billed Guardant only for those tasks which, in the exercise of my professional judgment, were reasonably necessary in this case, including for the tasks described above. In addition, we worked with Guardant's counsel with Keller Anderle Scolnick LLP, including attorneys Jennifer Keller, Chase

Scolnick, Craig Harbaugh, and Gregory Sergi. Mr. Scolnick separately provides his declaration to offer a summary and proof of the attorneys' fees charged by his firm to Guardant. I have reviewed Mr. Scolnick's declaration, and conclude that the fees reflected therein also were reasonably necessary in this case.

5. Having supervised and/or performed all work on behalf of this matter by A&O Shearman for Guardant, and having observed the work performed by my co-counsel with Keller Anderle Scolnick, my opinion is that a total award of attorneys' fees of **$2,321,513.50**, consisting of **$1,666,911.00** in billing from A&O Shearman and **$603,610** from Keller Anderle Scolnick, is reasonable and appropriate for work that, but for Natera and Quinn Emanuel's COBRA-related misconduct, would not have had to have been performed for and billed to Guardant. In reaching that opinion, I have considered the following criteria, as well as my experience and judgment:

A. Time and labor involved. Attached as Exhibit A to my declaration are detailed billing records for each member of my A&O Shearman team for whom Guardant is seeking recovery of fees incurred as the result of Natera's and Quinn Emanuel's COBRA-related misconduct. In summary:

| Timekeeper | Hourly billing rate | Total hours | Total fees |
|---|---|---|---|
| Saul Perloff (Partner) | ■ | 427.4 | ■ |
| Chris LaVigne (Partner) | ■ | 24.2 | ■ |
| Andre Hanson (Special Attorney) | ■ | 451.5 | ■ |
| Kathy Grant (Special Attorney) | ■ | 293.2 | ■ |
| Trey Hebert (Senior Associate) | ■ | 425.0 | ■ |
| Nathan Romo (Associate) | ■ | 18.8 | ■ |
| Jordan Campusano (Paralegal) | ■ | 79.7 | ■ |

1  [REDACTED]
2  [REDACTED]
3  [REDACTED]

4   B. **Novelty and difficulty of questions involved and skill requisite to perform the necessary legal services**. This suit represents both a complex and technical subject matter—ctDNA assays used for detecting MRD in patients diagnosed with and treated for colorectal cancer—as well as a specialized field of law, Section 43(a) of the Lanham Act's prohibition on false and misleading advertising, 15 U.S.C. § 1125(a). I selected each member of my team for their roles in this litigation because, in my professional judgment, they were sufficient experienced and skilled to carry out their assigned tasks.

   i. I am one of only eighteen lawyers ranked by Chambers for Advertising Litigation in the U.S. *See* Advertising: Litigation, USA - Nationwide, USA | Chambers Rankings (https://chambers.com/legal-rankings/advertising-litigation-usa-nationwide-5:1766:12788:1?l=en-GB ). I have been selected as a "Texas Super Lawyer" for the years 2013-2019 and 2021-2023, one of the "Best Lawyer in America" by Best Lawyers (2013-2024), a member of the Legal 500, Intellectual Property/Trademarks Litigation (2015-2018), and designated a "Stand-out Lawyer" by Thomson Reuters (2023-2024). I served as a JAG officer with the Chief Counsel's Honor Program in the U.S. Army Corps of Engineers, and have been in private practice for thirty years. During that time, I have tried to verdict a number of Lanham Act false advertising suits, as well as other high profile commercial litigation cases. A copy of my CV is attached hereto as Exhibit B-1.

   ii. My colleague and partner Chris LaVigne served as a federal prosecutor with the U.S. Attorney's Office in the Southern District of New York from 2005 to 2013. In private practice, Mr. LaVigne's work has been recognized by Benchmark Litigation (2015-2024), New York SuperLawyers (2015-2020, 2022-2024), World IP Review(2024) (trade secrets cases), and the legal 500 (2020-2024). A copy of Mr. LaVigne's CV is attached hereto as Exhibit B-2.

- 6 -

iii. Andre Hanson (Special Attorney) graduated *Magna cum laude* and *Order of the Coif* from the University of Minnesota in 1995, and served as a law clerk to the Hon. Frank Magill, U.S. Court of Appeals for the Eighth Circuit, from 1995-1998. In private practice since 1998, Mr. Hanson has written well over a thousand briefs for dispositive and non-dispositive motions over the decades, and has been a core member of my Lanham Act false advertising team since 2007. A copy of Mr. Hanson's CV is attached hereto as Exhibit B-3.

iv. Dr. Kathy Grant (Special Attorney) holds a Ph.D. in Industrial Engineering, and received her J.D. from the University of Texas, *magna cum laude,* and Order of the Coif. Prior to law school, Dr. Grant served as a Major in the U.S. Air Force, and also served as an engineer officer in the U.S. Public Health Service. Dr. Grant has been a member of my Lanham Act false advertising team since shortly after she enter private practice in 2005, and has nearly twenty years' in false advertising and complex civil litigation. A copy of Dr. Grant's CV is attached hereto as Exhibit B-4.

v. Trey Hebert (Senior Associate), has a Master's degree in bioengineering, and has been a lawyer for over nine years. In addition to Lanham Act false advertising disputes, Mr. Hebert represents clients in other complex civil litigation, including patent cases and trade secret actions. A copy of Mr. Hebert's CV is attached hereto as Exhibit B-5.

vi. Nathan Romo (associate), is a recent law school graduate (University of California—Irvine) who had a previous career as a journalist. As an associate, Mr. Romo has focused on complex civil litigation, including class actions, product liability, and Lanham Act false advertising suits. Mr. Romo also provides counsel on TCPA and data privacy compliance to SaaS providers. A copy of Mr. Romo's CV is attached hereto as Exhibit B-6.

vii. Jordan Campusano (paralegal) has nine years' experience as a Legal Specialist and as a Paralegal.

In my opinion, and based on my thirty-plus years' of experience in government and private practice litigation, my team represents an outstanding and well qualified collection of legal professionals.

- 6 -

C. **<u>Fees customarily charged for similar legal services</u>**. [REDACTED]

D. In my experience as a litigation partner with a national practice, I am familiar with the rates charged by law firms throughout the nation, including in this District, for similar legal services. A&O Shearman's rates were consistent with, if not lower than, those of other large firms with the requisite and comparable skill and ability. These rates are reasonable and customary and within the prevailing market rate for national and international law firms. A&O Shearman is ranked as the fourth largest law firm in the world based on revenue. Partners from comparable firms bill at rates significantly higher than my partner, Mr. LaVigne, and I charged Guardant for our work in this matter. A recent article from the American Lawyer, available at <u>https://www.law.com/americanlawyer/2024/01/31/big-law-rates-continue-rising-but-trail-2023-increases-so-far/</u>, provides bench mark billing information for "top partners" at comparable firms that are consistently above $2,000 per hour:



This same article states that the "Top Associate Rate" at these comparable firms at least match if not significantly exceed the rates my partner and I charged Guardant in this case, and all far exceed the rates charged by the A&O Shearman non-partner attorneys:



These data are corroborated by a 2024 report from Brightflag, entitled Hourly Rates in Am Law 100® Firms: Increases and Key Drivers.



1    A true and correct copy of this Report is attached as Exhibit C to my Declaration.[1]

2        E.    In addition to attorneys' fees incurred due to Natera's and Quinn Emanuel's COBRA-related misconduct, Guardant also incurred non-taxable costs, most notably expert witness fees and the substantial deposit paid to the Jay Hotel to reserve hotel rooms in anticipation of trial in March 2024 which the Jay Hotel kept as payment toward an even larger cancellation fee.[2] Attached hereto as Exhibit D is a true and correct copy of a summary of non-taxable costs incurred by Guardant due to Natera's and Quinn Emanuel's COBRA-related misconduct. These costs (total $613,361.74. Through his declaration, Mr. Scolnick is separately providing a summary of costs incurred by Guardant, and paid by his firm, that accrued as a result of Natera's and Quinn Emanuel's COBRA-related misconduct.

        F.    In my professional experience and judgment, the non-taxable costs incurred by Guardant were reasonable and necessary.

---

[1] In addition, case authority presented in the accompanying memorandum illustrates that the fees A&O Shearman have charged Guardant are reasonable. E.g., *HP Inc. v. Wiseta*, No. 23-cv-344, 2024 WL 1699564, at *4 (N.D. Cal. Mar. 15, 2024) (approving $1,075 per hour for a partner and $625–$725 for associates); *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557, 2022 WL 2789496, *9 (N.D. Cal. July 15, 2022) (noting that plaintiffs' counsel's hourly rates ranged from $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding these "rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 675 (C.D. Cal. 2022) (in 2022, finding rates ranging $1,160 to $1,370 for Gibson Dunn partners reasonable given size and reputation of the firm as well as the experience and expertise of the attorneys; also finding Gibson Dunn associate rates ranging from $845 to $1,060 reasonable); *Joseph S. v. Kijakazi*, No. 20-cv-09138, 2023 WL 2628243, *2 (C.D. Cal. Jan. 23, 2023) ("The Court's own research, as well as Plaintiff's counsel's own recent fee awards, suggest that an effective attorney hourly rate in the range of $1,300-$1,600 is appropriate").

[2] The Jay Hotel is seeking an additional $52,000 in cancellation fees. Similarly, WeWork is seeking $25,000 as a cancellation fee for temporary workspace in San Francisco booked in anticipation of a March 2024 trial. A&O Shearman has challenged both cancellation fees. We will inform the Court promptly if we are unsuccessful and Guardant is required to pay one or both of these charges.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 17, 2025, in Austin, Texas.

By: /s/ *Saul Perloff*
Saul Perloff