**Saul Perloff (157092)**
saul.perloff@aoshearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@aoshearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@aoshearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, TX 78701
Telephone (512) 647-1900

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

**Jennifer L. Keller (84412)**
jkeller@kelleranderle.com
**Chase Scolnick (227631)**
cscolnick@kelleranderle.com
**Craig Harbaugh** (194309)
charbaugh@kelleranderle.com
**Gregory Sergi** (257415)
gsergi@kelleranderle.com
**KELLER ANDERLE SCOLNICK LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NATERA, INC.<br><br>Defendant and Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**GUARDANT HEALTH, INC'S MEMORANDUM IN SUPPORT OF AN AWARD OF MONETARY SANCTIONS RELATED TO NATERA'S COUNSEL'S MISCONDUCT CONCERNING COBRA (DKT. 730)** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................... 1

II.  ARGUMENT .................................................................................................... 3

   A.   The Court Should Impose Monetary Sanctions to Compensate Guardant For the Attorney's Fees and Costs It Incurred Due to Natera's Misconduct ......................... 3

      1.   Natera's and Quinn Emanuel's Bad Faith Conduct Related to COBRA Caused Guardant to Incur Expenses that, But-For such Misconduct, It Would Not Have Incurred  4

         a.   Written discovery. ................................................................................. 5

         b.   Depositions. ......................................................................................... 5

         c.   Expert opinions. ................................................................................... 6

         d.   Motion practice. ................................................................................... 6

      2.   Guardant's Request for COBRA-Related Attorney's Fees and Costs is Reasonable ... 7

   B.   Attorneys From Quinn Emmanuel Should Bear Individual Responsibility. .................... 9

      1.   Andrew Bramhall and Elle Wang ............................................................... 9

      2.   Ryan Landes ...................................................................................... 11

      3.   Brian Cannon ..................................................................................... 13

      4.   The Court Has the Authority to Apportion Any Amount of Guardant's COBRA-Related Expenses to the Responsible Attorneys. ................................................ 15

      5.   The Court Should Conduct Further Proceedings for Purposes of Imposing an Appropriate Fine on Each Counsel. ............................................................... 16

III. CONCLUSION ............................................................................................... 18

DOCUMENT PREPARED
ON RECYCLED PAPER

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Am. Unites for Kids v. Rousseau*,
  985 F.3d 1075 (9th Cir. 2021) ....................................................................3, 4, 17

*B.K.B. v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) ................................................................................15

*Barber v. Miller*,
  146 F.3d 707 (9th Cir. 1998) ..................................................................................15

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) .....................................................................................7

*Caputo v. Tungsten Heavy Powder, Inc.*,
  96 F.4th 1111 (9th Cir. 2024) ...........................................................................16, 17

*Chalmers v. City of L.A.*,
  796 F.2d 1205 (9th Cir. 1986) ...................................................................................7

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..................................................................................................3, 4

*ConsumerDirect, Inc. v. Pentius, LLC, et al.*,
  No. 8:21-cv-01968, 2023 WL 8876198 (C.D. Cal. Sept. 21, 2023)...........................4

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
  No. 5:20-cv-06846, 2024 WL 5058527 (N.D. Cal. Dec. 9, 2024) ...........................3

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
  655 F. Supp. 3d 899 (N.D. Cal. 2023) .......................................................................7

*Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n/Nat'l Nurses Org. Comm.*,
  No. 13-cv-1233, 2014 WL 4385465 (S.D. Cal. Sept. 4, 2014)..................................4

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) .....................................................................................3

*Fleming v. Impax Lab'ys Inc.*,
  No. 16-cv-06557, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ...............................8

*Fleury v. Richemont N.A., Inc.*,
  No. 05-cv-4525, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) .................................7

*Fox v. Vice*,
  563 U.S. 826 (2011).....................................................................................................7

DOCUMENT PREPARED
ON RECYCLED PAPER

*Funk v. Bank of Hawaii,*
    No. 20-cv-01378, 2020 WL 3503881 (N.D. Cal. June 29, 2020)..............................................7

*Gates v. Deukmejian,*
    987 F.2d 1392 (9th Cir. 1992) ................................................................................................7

*In re Girardi,*
    611 F.3d 1027 (9th Cir. 2010) ........................................................................................15, 16

*In re GNC Corp.,*
    789 F.3d 505 (4th Cir. 2015) ...............................................................................................17

*Goodyear Tire & Rubber Co.,*
    581 U.S. 101 (2017)...............................................................................................3, 4, 7, 17

*Great Dynasty Int'l Fin. Holdings, Lt v. Li,*
    No. 13-cv-1734, 2014 WL 3381416 (N.D. Cal. Jul. 10, 2014) ................................................4

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983).................................................................................................................7

*HP Inc. v. Wiseta,*
    No. 23-cv-344, 2024 WL 1699564 (N.D. Cal. Mar. 15, 2024) ................................................8

*Hyde v. Midland Credit Mgmt, Inc.,*
    567 F.3d 1137 (9th Cir. 2009) ..............................................................................................15

*Jackson v. Wells Fargo Bank, N.A.,*
    No. 13-cv-00617, 2015 WL 13567069 (D. Ariz. Oct. 23, 2015).............................................8

*Joseph S. v. Kijakazi,*
    No. 20-cv-09138, 2023 WL 2628243 (C.D. Cal. Jan. 23, 2023).............................................9

*Kaass Law v. Wells Fargo Bank, N.A.,*
    799 F.3d 1290 (9th Cir. 2015) ..............................................................................................15

*In re Keegan Mgmt. Co., Secs. Litig.,*
    78 F.3d 431 (9th Cir. 1996) ..................................................................................................16

*Kelly v. Wengler,*
    822 F.3d 1085 (9th Cir. 2016) ................................................................................................7

*Leon v. IDX Sys. Corp.,*
    464 F.3d 951 (9th Cir. 2006) ..................................................................................................3

*Lu v. United States,*
    921 F.3d 850 (9th Cir. 2019) ...............................................................................................3, 4

*Malhiot v. S. California Retail Clerks Union,*
    735 F.2d 1133 (9th Cir. 1984) ..............................................................................................15

iii

DOCUMENT PREPARED
ON RECYCLED PAPER

*Mine Workers v. Bagwell*,
    512 U.S. 821 (1994)............................................................................3, 16, 17

*Netlist Inc. v. Samsung Elecs. Co.*,
    341 F.R.D. 650 (C.D. Cal. 2022)............................................................9

*New Alaska Dev. Corp. v. Guetschow*,
    869 F.2d 1298 (9th Cir. 1989)...............................................................15

*PA v. DE Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)...............................................................................7

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997)...............................................................3, 4

*Roadway Express, Inc. v. Piper*,
    447 U.S. 742 (1980)...............................................................................4

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir.1990)................................................................4

*TPCO US Holding, LLC v. Fussell*,
    No. 23-cv-1324, 2023 WL 5111986 (N.D. Cal. Aug. 9, 2023)...............7

*Universal Oil Prods. Co. v. Root Ref. Co.*,
    328 U.S. 575 (1946)...............................................................................3

**Statutes & Rules**

28 U.S.C. § 1927.........................................................................................15

California Rule of Professional Conduct 3.3(a)(1)......................................11

Fed. R. Civ. P. 11(b)(3)...............................................................................10

DOCUMENT PREPARED
ON RECYCLED PAPER

## I.    INTRODUCTION

This Court found "Natera's counsel's, Quinn Emanuel, deliberate misrepresentations, to this Court and Judge Kim . . . were unjustified, unacceptable and sanctionable." Order Granting in Part and Deferring in Part Guardant's Motion for Sanctions (Dkt. 730), at 2. The Court granted evidentiary sanctions and deferred ruling on monetary sanctions. The Court ordered the parties to file supplemental brief regarding monetary sanctions, including to "address specific individual attorney responsibility within Quinn Emanuel for the misconduct found" *Id.* at 18.

First, Guardant seeks monetary sanctions to compensate Guardant for the consequences of Natera's counsel's deliberate misrepresentations. Through deliberate, calculated misrepresentations about COBRA, Natera's counsel with Quinn Emanuel delayed trial from March to November and forced Guardant to spend thousands of attorney hours and millions of dollars on unnecessary discovery, needless expert testimony, and avoidable motion practice. Natera's counsel's dishonesty resulted in profound prejudice to Guardant. Natera should be ordered to pay for Guardant's reasonable attorney's fees associated with Natera and Quinn Emanuel's misconduct. Guardant seeks a total award of attorneys' fees of **$2,270,521**, including **$1,666,911** in billing from A&O Shearman and **$603,610** in billing from Keller Anderle Scolnick, and **$636,270.13** in costs, for a total sanctions award of **$2,906,791.13**.[1]

Second, individual attorneys from Quinn Emmanuel who were directly involved in the misconduct must be held accountable. Andrew Bramhall and Elle Wang intentionally misled the Court. They directly communicated with Dr. Hochster from the time the COBRA study closed and received the embargoed COBRA data from Dr. Hochster four months before he submitted his Supplemental Report on COBRA. Then, to justify the eleventh-hour disclosure of Dr. Hochster's Supplemental Report, Mr. Bramhall signed the brief misrepresenting that Dr. Hochster had no information about the COBRA study data before he went to the ASCO-GI presentation in January 2024. In opposing sanctions, Mr. Bramhall later told the Court that Natera and its counsel had not

---

[1] Guardant will be timely submitting a bill of costs to seek taxable costs. Guardant estimates that approximately $20,000 of its COBRA-related costs will be taxable. Guardant will, of course, not seek a double recovery of taxable costs. In addition, Guardant anticipates supplementing its requests for fees herein to account for additional fees incurred from January 1, 2025 in connection with this motion practice.

GUARDANT'S BRIEF ON MONETARY SANCTIONS FOR COBRA MISCONDUCT
CASE NO. 3:21-CV-04062-EMC

DOCUMENT PREPARED
ON RECYCLED PAPER

received the draft abstract of the COBRA data, even though he received a confidential summary of the abstract data directly from Dr. Hochster on September 15, 2023. Ms. Wang also received the COBRA data directly from Dr. Hochster and knew he had communicated with the COBRA investigators and had received COBRA data from them. Still, she helped Natera defeat Guardant's motion to compel Dr. Hochster's emails by misrepresenting that Dr. Hochster had no COBRA-related emails with the COBRA investigators (or Natera or NRG), and that he had confirmed this after conducting reasonable searches.

Attorneys Ryan Landes and Brian Cannon also misled the Court regarding Dr. Hochster. Mr. Landes, again to defeat discovery on Dr. Hochster, misrepresented to the Court that Dr. Hochster had no COBRA-related emails, that he still had searched for them not once but twice, and had confirmed that no such emails existed. Mr. Cannon helped defeat Guardant's motion to strike Dr. Hochster's Supplemental Report by claiming that he had no early "inside information." Even before this, in seeking to abrogate the Joint Statement, he falsely denied there were any public conferences motivating Natera to undo the Joint Statement's moratorium on comparative advertising. Mr. Cannon's co-counsel was working with Dr. Hochster in drafting his Supplemental Report during the ASCO-GI conference.

The Court has several options for sanctioning these attorneys. Because counsel's dishonesty unreasonably and vexatiously multiplied the proceedings, the Court may hold each attorney individually liable for all or part of the COBRA-related attorney's fees and costs award. For punitive sanctions, which would require further proceedings, the Court may order each attorney to pay a reasonable fine. The Court can and should refer each attorney to State Bar of California for further investigation.

Guardant and its counsel do not undertake these requests lightly or with any sense of pleasure. However, Guardant and its counsel believe these sanctions are appropriate and necessary to compensate Guardant, to deter future unethical misconduct, and to vindicate the integrity of the judicial process.

Document Prepared
on Recycled Paper

GUARDANT'S BRIEF ON MONETARY SANCTIONS FOR COBRA MISCONDUCT
CASE No. 3:21-Cv-04062-EMC

## II.    ARGUMENT

### A.    The Court Should Impose Monetary Sanctions to Compensate Guardant For the Attorney's Fees and Costs It Incurred Due to Natera's Misconduct

"If a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (quoting *Universal Oil Prods. Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946). "[S]anction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). Monetary sanctions are also warranted based upon only a finding of "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez, 239 F.3d 989*, 994 (9th Cir. 2001). The basis for monetary sanctions is considered a "much lower bar" than required for other sanctions: "all that is required to satisfy this test is some action "delaying or disrupting the litigation or hampering enforcement of a court order." *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-cv-06846, 2024 WL 5058527, at *4 (N.D. Cal. Dec. 9, 2024) (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (sanctions are appropriate in cases "where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose").

In awarding attorney's fees and costs, courts "can shift only those attorneys' fees incurred because of the misconduct at issue." *Goodyear Tire & Rubber Co.*, 581 U.S. 101, 102 (2017).[2] As long as the award is limited to the "loss sustained" due to the misconduct, the sanction remains "compensatory rather than punitive in nature." *Id.* at 107 (quoting *Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994)); *see also Lu*, 921 F.3d at 60 ("the court must establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party."). "[W]hen strictly compensatory or remedial sanctions are sought, civil procedures, rather than criminal-type procedures, may be applied." *Am. Unites for Kids*, 985 F.3d at 1088. "Imposing attorney's fees as a sanction, 'serves the dual purpose of 'vindicating judicial authority'" and "'making the prevailing

---

[2] Where the party's "entire course of conduct" amounted to a "sordid scheme" or the party engaged in "fraudulent and brazenly unethical conduct," an award of full attorney's fees and costs is appropriate. *Lu v. United States*, 921 F.3d 850, 860–61 (9th Cir. 2019).

DOCUMENT PREPARED
ON RECYCLED PAPER

party whole for expenses caused by his opponent's obstinacy.'" *Great Dynasty Int'l Fin. Holdings, Lt v. Li*, No. 13-cv-1734, 2014 WL 3381416, at *7 (N.D. Cal. Jul. 10, 2014) (quoting *Chambers,* 501 U.S. at 46) (other citations and brackets omitted); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66 (1980); *Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n/Nat'l Nurses Org. Comm.*, No. 13-cv-1233, 2014 WL 4385465, at *2 (S.D. Cal. Sept. 4, 2014).

In assessing attorneys' fees as a compensatory sanction, this Court applies a "'but-for' causation standard." *Am. Unites for Kids*, 985 F.3d at 1089. "In other words, but for the sanctionable misconduct, would there be any harm warranting compensatory relief?" *Id.* at 1089-90; *see also Goodyear,* 581 U.S. at 108 (because "[c]ompensation for a wrong . . . tracks the loss resulting from the wrong," courts may shift "those attorney's fees incurred because of the misconduct at issue"); *accord, ConsumerDirect, Inc. v. Pentius, LLC, et al.*, No. 8:21-cv-01968, 2023 WL 8876198, at *7  (C.D. Cal. Sept. 21, 2023) ("This 'granular inquiry' requires a court to evaluate the close causal link between the misconduct and the 'individual expense items or categories of such items'") (quoting *Lu*, 921 F.3d at 863).

### 1. Natera's and Quinn Emanuel's Bad Faith Conduct Related to COBRA Caused Guardant to Incur Expenses that, But-For such Misconduct, It Would Not Have Incurred

The Court has already found that Natera acted in bad faith regarding Dr. Hochster's supplemental report.[3] Dkt. 730. As the Court explained:

> Dr. Hochster and Quinn Emanuel on behalf of Natera, made misleading and false statements to Judge Kim, Guardant, and the undersigned, regarding Dr. Hochster's email communications with COBRA investigators and the NRG, and his access to the study results, including his receipt of the draft abstract months in advance of his supplemental declaration seeking to introduce the COBRA study. These false and misleading statements that Dr. Hochster had no such documents were made with full knowledge of the truth to the contrary. And those misleading statements and untruths were used to gain a litigation advantage – to get this Court to reopen evidence to allow the introduction of the COBRA study long after discovery had closed and on the eve of trial. Relying on these misleading and false statements, this Court was duped into believing the COBRA evidence was late breaking and warranted reopening discovery and disrupting the trial schedule.

---

[3] "The district court has 'broad fact-finding powers' with respect to sanctions, and its findings warrant 'great deference.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (quoting *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1366 (9th Cir.1990) (*en banc*)).

DOCUMENT PREPARED ON RECYCLED PAPER

Dkt 730 at 15.

The Court has also already identified the prejudice Guardant suffered because of Natera's counsel's misconduct: "[H]ad the Court known fully about the matters about which Dr. Hochster and Quinn Emanuel misled the Court, it would have not reopened the case for the COBRA study and would have proceeded to trial as originally scheduled for March 2024." Dkt. 730 at 17. "[R]eopening [of] discovery" resulted in a veritable "pandora's box" that "multiplied" these proceedings." Dkt. 730 at 16. But for Natera's misconduct, Guardant would not have suffered the attorney's fees and costs related to the COBRA discovery. *See* Dkt. 730 at 17 ("Guardant may be entitled to reimbursement for the fees and costs related to the unwarranted extension of discovery into COBRA related to the misconduct discussed herein."). Guardant was forced to spend considerable time, effort, and money after (and related to) this misconduct.

### a.    Written discovery.

Natera caused Guardant to waste substantial efforts on written discovery. This includes obtaining (or trying to obtain) (1) documentary evidence from Dr. Hochster; (2) documentary evidence from Natera; (3) documentary evidence from third parties, including Rutgers University, NRG, and Dr. Van Morris at MD Anderson Cancer Center. Guardant also had to address Natera's unreasonable demands for documents from Guardant. Much of this led to discovery motion practice before Judge Kim. E.g., Dkt. Nos. 510, 512, 515, & 516 (Guardant motion for discovery from Dr. Hochster); Dkt. Nos. 523, 527, & 531 (Natera motion for COBRA discovery from Guardant); Dkt. Nos. 532, 533, & 535 (further motion practice on scope of COBRA discovery); Dkt. Nos. 546, 554, & 558 (Natera motion for Rule 30(b)(6) deposition of Guardant witness on COBRA). Beyond this, Guardant engaged in extensive discussions with counsel for third parties, including Rutgers University, NRG, and MD Anderson, to negotiate document productions. Guardant also had to expend considerable resources related to the forensic document collection and review of Dr. Hochster's emails. While Natera paid the direct costs of the forensic reviewer, it did *not* cover the time spent by Guardant's counsel in negotiating and overseeing the review.

### b.    Depositions.

Guardant's counsel had to prepare for, take, and defend seven new depositions (and

DOCUMENT PREPARED
ON RECYCLED PAPER

prepared for an eighth). These included taking the deposition of Dr. Hochster; preparing and defending Dr. Craig Eagle, Guardant's Chief Medical Officer, as a Rule 30(b)(6) witness on COBRA; taking the deposition of Natera's officer Dr. Aleshin as a newly revealed witness on COBRA; taking the deposition of Dr. Morris as an NRG representative; preparing for the deposition of Dr. George as another NRG representative; preparing and defending the depositions of Dr. Heitjan and Parikh as COBRA experts; and taking and defending the depositions of Mr. Malackowski and Dr. Stec, who updated their expert damages opinions to address COBRA.

### c.    Expert opinions.

Guardant spent time, effort, and money to obtain expert opinions on COBRA from Drs. Heitjan and Parikh. These updated expert reports were to rebut Dr. Hochster's opinions and required counsel's time to work with the experts and, in the case of Dr. Heitjan, fees paid to the expert. (Dr. Parikh deferred payment of any fees instead of a charitable donation.) In addition, Mr. Malackowski offered supplemental reports, first to address COBRA, and later to omit any consideration of COBRA.

### d.    Motion practice.

Guardant had to engage in extensive motion practice that would not have been necessary but for the bad faith misconduct of Natera's counsel. In addition to the extensive discovery motion practice referenced above, this included Guardant's original motion to strike Dr. Hochster's Supplemental Report, Dkt. Nos. 447, 458, & 462; multiple status conferences related to COBRA and the continuation of trial, e.g., Dkt. Nos. 471, 491, 496, 497, Guardant's *Daubert* motion to exclude Dr. Hochster's COBRA opinions, Dkt. Nos. 568, 618, & 635; Natera's *Daubert* motion against Mr. Malackowski's supplemental opinions, Dkt. Nos. 603 & 635, and the sanctions motion practice itself. Dkt. Nos. 578, 588, 597, 692, 707, & 719.

The total amount sought by Guardant to compensate it for the fees and expenses it incurred because of this discovery, expert preparation, and motion practice is **$2,906,791.13**. *See* Decl. of S. Perloff and Decl. of C. Chase. Detailed descriptions of services in billing invoices are attached as exhibits.

### 2.    Guardant's Request for COBRA-Related Attorney's Fees and Costs is Reasonable

"Federal courts employ the 'lodestar' method to determine a reasonable attorney's fees award . . . ." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "After a court estimates the amount of fees and costs incurred 'because of' the misconduct, it then determines whether that amount is reasonable by looking to the number of hours reasonably expended on the case (deducting any unnecessary or duplicative expenses) multiplied by a reasonable hourly rate." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (citing *PA v. DE Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)). A "rough-but-conservative estimate" will suffice. *Id.* at 935; *see also Goodyear,* 581 U.S. at 110 (the sanctioning court "'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is)") (quoting *Fox v. Vice,* 563 U.S. 826, 838 (2011)).

The Court's "lodestar analysis considers two factors: the reasonableness of the number of hours and the reasonableness of the hourly rate." *TPCO US Holding, LLC v. Fussell,* No. 23-cv-1324, 2023 WL 5111986, at *1 (N.D. Cal. Aug. 9, 2023) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "When determining an attorney's reasonable hourly rate, courts weigh the experience, skill, and reputation of the attorney requesting fees, and compare the requested rates to prevailing market rates of the relevant community." *Id.* at *2 (quotations omitted) (citing *Funk v. Bank of Hawaii,* No. 20-cv-01378, 2020 WL 3503881, at *2 (N.D. Cal. June 29, 2020), and *Chalmers v. City of L.A.* 796 F.2d 1205, 1210–11 (9th Cir. 1986)). "The relevant community for purposes of determining the prevailing market rate is generally the 'forum in which the district court sits.'" *Id.* (quoting *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008)). And "[a]s to the number of hours reasonably expended, a fee applicant 'should make a good-faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary.'" *Fleury v. Richemont N.A., Inc.,* No. 05-cv-4525, 2008 WL 3287154, at *4 (N.D. Cal. Aug. 6, 2008) (quoting *Hensley,* 461 U.S. at 434). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

DOCUMENT PREPARED ON RECYCLED PAPER

The Perloff and Scolnick Declarations and exhibits attached thereto set forth the time spent per timekeeper, the rates charged for their time, a description of each time-keeper's experience, and narrative descriptions of work performed. The time Guardant's counsel spent addressing Natera's counsel's misconduct—including time spent in discovery, preparing experts, and attending to motion practice—is reasonable given the professional experience and judgment of Messrs. Perloff and Scolnick. *See* Decl. of Saul Perloff at ¶ 5(A) & (B)(i)-(vii); *see also* Decl. of Chase Scolnick at ¶¶ 7-27. The rates charged by Guardant's counsel follow those charged by firms with the requisite and comparable skill and ability. *See* Decl. of Saul Perloff at ¶ 5(C); *see also* Decl. of Chase Scolnick at ¶¶ 8, 12, 16; *cf. Jackson v. Wells Fargo Bank, N.A.*, No. 13-cv-00617, 2015 WL 13567069, at *2 (D. Ariz. Oct. 23, 2015) ("The best indicator of a reasonable hourly rate for a fee-paying client is the rate charged by the lawyer to the client."). The highest rate charged was by Mr. Perloff and Mr. LaVigne. But this rate represents a significant discount from their usual and customary rate, and is significantly less than the rate charged by similarly experienced partners at comparable firms. *See* Hourly Rates in Am Law 100 Firms: Increases and Key Drivers (2024), at 7 (average billing rates by Am Law 25 partners $1510 per hour), Ex. D to Perloff Decl. Moreover, Mr. Perloff is nationally ranked in advertising litigation, with over thirty years' experience in litigating complex commercial disputes. Perloff Decl. ¶ 5(B)(i). The lower rates charged by Guardant's remaining timekeepers is also commensurate with their experience, and Guardant's agreement to pay these rates indicates their reasonableness.[4]

Case law confirms that the fees A&O Shearman and Keller Anderle Scolnick have charged Guardant are reasonable. *E.g., HP Inc. v. Wiseta*, No. 23-cv-344, 2024 WL 1699564, at *4 (N.D. Cal. Mar. 15, 2024) (approving $1,075 per hour for a partner and $625–$725 for associates); *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557, 2022 WL 2789496, *9 (N.D. Cal. July 15, 2022) (noting that plaintiffs' counsel's hourly rates ranged from $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding these "rates in line with prevailing

---

[4] Guardant sought discovery from Natera regarding the amount of time spent by its own counsel with Quinn Emanuel, and the billing rates charged. Natera declined to provide this information. Should Natera now contest either the amount of time spent by Guardant's counsel, or the billing rates applied, Guardant respectfully renews its request that Natera be compelled to immediately produce information about its own attorneys' fees billing.

DOCUMENT PREPARED
ON RECYCLED PAPER

rates in this district for personnel of comparable experience, skill, and reputation"); *Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 675 (C.D. Cal. 2022) (in 2022, finding rates ranging $1,160 to $1,370 for Gibson Dunn partners reasonable given size and reputation of the firm as well as the experience and knowledge of the attorneys; also finding Gibson Dunn associate rates ranging from $845 to $1,060 reasonable); *Joseph S. v. Kijakazi*, No. 20-cv-09138, 2023 WL 2628243, *2 (C.D. Cal. Jan. 23, 2023) ("The Court's own research, as well as Plaintiff's counsel's own recent fee awards, suggest that an effective attorney hourly rate in the range of $1,300-$1,600 is appropriate").

The total amount sought by Guardant as a sanction, **$2,906,791.13,** is reasonable both in terms of the time spend by counsel, and in terms of the amount charged per hour. Guardant respectfully asks that the Court order Natera to pay this amount to Guardant, with post-judgment interest to apply.

**B.    Attorneys From Quinn Emmanuel Should Bear Individual Responsibility.**

Here, as the Court found, "Quinn Emanuel deliberately and knowingly misled this Court. Given the correspondence Dr. Hochster had with Quinn Emanuel, counsel knew full well there had to have been email communications between Dr. Hochster the COBRA investigators." Dkt. 730 at 13-14. And while most, if not all, of Natera's counsel with Quinn Emanuel likely share responsibility in the decision to make and continue making material misrepresentations to the Court about COBRA, the evidence confirms that at least four individuals bear clear personal responsibility: Andrew Bramhall, Elle Wang, Ryan Landes, and Brian Cannon.

**1.    Andrew Bramhall and Elle Wang**

Mr. Bramhall and Ms. Wang received the September 15, 2023, memo from Dr. Hochster after first discussing it with him. Dkt. 730 at 13 (quoting Dkt. 692, Ex. B) ("As we discussed. This is the short summary, and nothing else is really known outside of Guardant (unless a few people at NCI or NRG received a more complete discussion."). Thus, in September 2023, Mr. Bramhall and Ms. Wang *knew* for an absolute fact that Dr. Hochster had "inside information" about COBRA. They knew he had been in direct, written communication with the COBRA investigators, and they knew he had passed that "inside information" from the COBRA investigators to Natera's counsel.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Despite this personal knowledge, Mr. Bramhall and Ms. Wang made contrary, false, and

2   misleading representations to the Court and Guardant's counsel.

3       Mr. Bramhall signed the brief opposing Guardant's motion to strike the Hochster

4   Supplemental Report. Dkt. 452. He undertook a Rule 11 duty to ensure that the factual statements

5   were correct. Fed. R. Civ. P. 11(b)(3). But they were not. Instead, the brief declared, falsely, that

6   "the relevant data simply was not available until days before he provided his Supplemental

7   Report." Dkt. 452 at 3-4; *see also id.* at 3, n.1 ("an abstract describing the underlying data was first

8   published in an abstract on the ASCO-GI website on January 16, 2024, and the results were

9   presented orally during the ASCO-GI Conference on January 20, 2024. As a practicing physician,

10  Dr. Hochster attended the ASCO-GI Conference and listened to the presentation on the COBRA

11  clinical trial.") But again, Mr. Bramhall *knew* that was not true, and that the data were available to

12  Dr. Hochster by mid-September 2023.

13      Mr. Bramhall also signed Natera's opposition to Guardant's motion for sanctions. *See* Dkt.

14  582. That brief denied that counsel knew about Dr. Hochster's early possession of the COBRA

15  data:

16          Certainly, that abstract was never shared with Natera. Guardant's implication to the
            contrary is grossly misleading. Mot. at 7 (first discussing Dr. Hochster receiving
17          the COBRA abstract draft, then quoting Dr. Hochster's unrelated testimony that he
            "let [Natera] know of this information").
18

19  Dkt. 582 at 13; *see also id.* at 13, n.8: "'[T]his information' was merely the public fact that the

20  COBRA trial was closed, not the early COBRA abstract or any data therein.").

21      Mr. Bramhall then personally vouched for Dr. Hochster's veracity during the July 26

22  hearing—while blaming the doctor's poor memory and busy workload for the failure to reveal

23  communications Mr. Bramhall himself *knew* existed:

24          THE COURT: Well, it still raises the question how could he say that there are
            absolutely no documents responsive -- that he forgot that he had communications.
25          I mean, all the things you're just telling me about the depth of his relationship with
            Dr. Morris, and everything else, the boss of the PI, and everything else, and his
26          involvement of his people, his closeness to the study, how could he say that he
            forgot that he had any correspondence with them?
27
            MR. BRAMHALL: And, Your Honor, I don't have a great explanation for that.
28

I also believe his testimony. He's an older gentleman who is doing a lot of things, seeing a lot of patients, very involved. He oversees 15 or so hospitals in New Jersey. He's a very busy man. Litigation consulting and expert witness work and intersection with the legal world is not something that's foremost in his mind, I think.

Dkt. 606 at 33:20-34:10 (Tr. of Hrg. Jul. 26, 2024).

During the April 23, 2024, hearing before Judge Kim, Ms. Wang similarly declared that Dr. Hochster was not involved with COBRA beyond enrolling patients, claimed that he had no relevant emails, and insisted he had still conducted a diligent search for emails, but found none because "there's just nothing responsive there":

And so, he just -- he doesn't have email communications.

He just is a practicing oncologist. He doesn't – he doesn't email as much as us lawyers do, and you know, he did a search. In fact, he did a -- he did an exact search that Guardant asked him to do. He searched his inbox, he searched his emails for the search terms that Guardant asked in this letter brief, and the result is there's just -- there's just nothing responsive there.

Dkt. 516 at 6:7-7:15. But Dr. Hochster had directed his September 15 memo to Ms. Wang too, meaning she, like Mr. Bramhall, had personal knowledge that Dr. Hochster had obtained the COBRA data in September 2023, was aware that it came from a "CONFIDENTIAL" source, and was embargoed until the January ASCO conference. She thus knew that Dr. Hochster had more involvement with COBRA than merely enrolling patients, and had the very "inside information" that Natera's counsel publicly denied. Despite this personal knowledge, she did nothing to correct the record, and instead argued in live Court something she knew to be false: that Dr. Hochster had *no* relevant email communications.

California Rule of Professional Conduct 3.3(a)(1) directs: "A lawyer shall not: knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Here, both Mr. Bramhall and Ms. Wang violated Rule 3.3(a)(1) by knowingly making materially false statements of fact about what Dr. Hochster and Quinn Emanuel knew and when they knew it. Thus, it would be appropriate for Mr. Bramhall and Ms. Wang to bear personal accountability for their COBRA-related misconduct.

### 2.    Ryan Landes

Although not an addressee of Dr. Hochster's September 15, 2023 memo to Mr. Bramhall

and Ms. Wang, it is not credible that Mr. Landes was unaware of the communication, given his

role in the COBRA discovery generally and Dr. Hochster's documents. Mr. Landes signed the

April 16, 2024, Joint Discovery Letter brief on Natera's behalf, arguing:

> Guardant is wrong that Dr. Hochster "had not conducted a reasonable search."
> Given his limited role in the COBRA study, he did not need to do a comprehensive
> search to know he never emailed about COBRA, and for the non-objectionable
> categories where he suspected he might have responsive material, he searched for
> and produced responsive material. For other requests that sought information from
> patients' medical records, Dr. Hochster provided a narrative response explaining
> his personal involvement in COBRA and another trial Guardant inquired about
> (BESPOKE). Despite Dr. Hochster's fulsome response, and the Court's order
> limiting discovery, Guardant asks the Court to bless its irrelevant fishing expedition
> in an empty lake.

Dkt. 510 at 7. In this same brief, Mr. Landes claimed that "[t]hough it was duplicative, Dr.

Hochster has searched his email (again), using Guardant's requested search terms, 'COBRA' and

'NRG-05,' and now confirms (again) that he has no responsive documents." *Id.* This was false.

Dkt. 730 at 11 ("it was untrue to say he searched any more than once") (emphasis omitted).

Natera's brief further affirmatively argued that Dr. Hochster's involvement with COBRA was

limited to "attending symposiums where COBRA was discussed (*see* Dkt. 447-2 ¶10), not emailing

others about it." *Id.* Again, this was false. Dkt. 730 at 8 ("The [Rutgers] production revealed dozens

of emails between Dr. Hochster, and individuals identified as 'Cobra Investigators'").

Like Mr. Bramhall, Mr. Landes vouched for Dr. Hochster, despite the overwhelming

evidence that Dr. Hochster (and Natera) had withheld and concealed extensive emails:

> THE COURT: All right. Good afternoon, everyone. All right. So I guess I'd like,
> after all the briefing and everything else, I'd like a simple explanation from Natera's
> counsel as to how is it that in response to document requests we get -- and I believe
> it's dozens, I think it's represented to be like 70-something documents evidencing
> correspondence between Doc Hochster and people at, I'll just say COBRA, and
> when that same document request was propounded upon Natera, they came up with
> nothing. How could that be? What's the simple explanation?
>
> MR. LANDES: Your Honor, this is Ryan Landes on behalf of Natera.
>
> So the simple explanation, Your Honor, Dr. Hochster testified to this in his
> deposition, is that he did not remember having these emails.
>
> THE COURT: Okay. Let's stop right there.
>
> MR. LANDES: Sure.

DOCUMENT PREPARED
ON RECYCLED PAPER

THE COURT: Honestly, you think that's credible? After all this exchange, something of this import, his depth of involvement, including suggesting a substitution of his company's product in the study, and his critique and his questions and his closeness, his colleagues running that, that he had no memory, and he's a retained expert in this case; you honestly believe that?

MR. LANDES: I do, Your Honor.

Dkt. 606 at 4:3-5:2 (Tr. of Hrg Jul. 26, 2024).

Mr. Landes claimed that he had spoken with Dr. Hochster "numerous times," *id.* at 5:18-23, but failed to disclose that Dr. Hochster had the COBRA data in September 2023, discussed and shared those data with Mr. Bramhall and Ms. Wang, and had voluminous email communications with Natera, NRG, and the COBRA investigators, attacking Guardant, demeaning Reveal, and seeking to have Natera's Signatera supplant Guardant's Reveal in the COBRA trial. Dkt. 730 at 8-10 & 13. Still, Mr. Landes again vouched for Dr. Hochster's truthfulness: "I, again, I spoke with him numerous times. I've seen his deposition testimony, and I believe it to be the case." Dkt. 606 at 8:6-9. Mr. Landes speculated that Dr. Hochster's failure to locate and produce responsive documents was because his "email box has limited space in it, and so he reviews his emails in the morning and typically deletes them as he goes." Dkt. 606 at 7:14-15. But again, this was untrue. Dkt. 730 at 10 (only after "the Court ordered the parties to hire a forensic investigator to find and collect Dr. Hochster's emails (which were not actually deleted) from the server, his laptop, and computers," "did Dr. Hochster represent that he now found some of the emails with the COBRA investigators. He has not explained how he discovered these emails.")

In light of all this, the Court concluded that Natera's counsel "was more than foolish" "for (purportedly) believing Dr. Hochster's testimony." Dkt. 730 at 13. Rather, "Quinn Emanuel deliberately and knowingly misled this Court." *Id.* As with Mr. Bramhall and Ms. Wang, Mr. Landes could be held personally responsible for his own and his colleagues' repeated misrepresentations to this Court.

### 3.    Brian Cannon

Mr. Cannon also was not shown as copied on Dr. Hochster's September 15, 2023, memorandum. However, even before COBRA became an issue, Mr. Cannon argued to this Court things that, in hindsight, were misleading and lacked candor.

1
2
3
4
5
6

About two months after Dr. Hochster had shared the COBRA data with Quinn Emanuel (and shortly after Natera had referred to the COBRA trial discontinuation in its marketing), Natera moved to dissolve the Joint Statement. Dkt. 419 (Nov. 15, 2023) (Natera motion to enforce "subset provision" on joint statement). During the January 18, 2024, hearing on the motion, the Court directly asked Natera's counsel whether there was some reason that Natera wished to dissolve the agreement barring direct comparisons right before trial was to begin:

7
8

> THE COURT: Is there anything that's going to happen in the next 7 weeks that's sort of monumental in terms of marketing events or trajectory of the competing products here?

9

> MR. CANNON: Your Honor, Brian Cannon for Natera.

10
11
12

> There's no singular event that's coming up. We filed this motion in November. Shortly after, Your Honor, back in October, we set the trial for March. **There's no sort of major marketing campaign or major conference or anything like that that we're aware of.** It's just our client Natera is being restrained in a manner that we feel is inappropriate.

13
14
15
16
17
18
19
20
21
22

Dkt. 438 at 3:21-4:5 (Tr. of Hrg., Jan. 18, 2024) (emphasis added). But Natera's privilege log shows that on the same day Mr. Cannon was advising this Court that there was no "major conference or anything," his colleagues were forwarding to Dr. Hochster a draft of his supplemental report and arranging to meet with him at the January 2024 ASCO-GI conference. Dkt. 630-5 (filed under seal). The COBRA data themselves already had been published two days before, and would be publicly presented two days later at the ASCO-GI conference. Dkt. 730 at 4. Either Mr. Cannon made the argument recklessly and in unlikely ignorance of a study Natera would tout just weeks later as "devastating to Guardant's continued positions in this case," Dkt. 452 at 2, or he intentionally tried to mislead the Court to vacate the Joint Statement.

23
24

Mr. Cannon would insist that Dr. Hochster lacked any "inside information" about COBRA. *See* Dkt. 477: at 14:23-15:3:

25
26
27

> I also would like to note that there was an accusation that Dr. Hochster somehow had inside information. The abstract was available before the conference. The conference was in January, January 16th I believe. But there was an abstract available before the conference. So I'm certainly not aware of any sort of early access that Dr. Hochster may have had.

28

*See also* Dkt. 472 at 10:9-15 (Tr. of Hrg., Feb. 15, 2024) (argument of B. Cannon) ("It's not an

14

ambush. And as soon as the data was publicly disseminated at the conference in January, Dr. Hochster prepared a supplemental report. He attended the conference, and his patients were participants. He encouraged his patients to participate in the study. And we provided the supplemental report to Guardant just as quickly as we could.")

Again, none of this was true: Dr. Hochster had inside information, and he discussed and gave it to Quinn Emanuel. Dkt. 730 at 13. To date, Natera has produced no internal Quinn Emanuel emails, and Guardant thus has no way to know definitively whether Mr. Cannon's statements were merely reckless and spoken in disregard of whether they were true or false, or made intentionally with an intent to deceive. However, given Mr. Cannon's ongoing efforts first to insist that Dr. Hochster only learned of the COBRA results in January 2024, and his later efforts to shift all responsibility onto Dr. Hochster rather than himself or his firm, there is a reasonable basis for holding Mr. Cannon personally responsible for his repeated misstatements to the Court.

### 4. The Court Has the Authority to Apportion Any Amount of Guardant's COBRA-Related Expenses to the Responsible Attorneys.

Section 1927 lets the Court award fees against "any *attorney* . . . who so multiplies the proceedings in any case unreasonably and vexatiously" in any civil suit in federal court. 28 U.S.C. § 1927 (emphasis supplied); *Hyde v. Midland Credit Mgmt., Inc.*, 567 F.3d 1137, 1141 (9th Cir. 2009). The statute applies to only individual attorneys, not law firms. *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) ("28 U.S.C. § 1927 does not permit the award of sanctions against a law firm"); *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002); *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998). Sanctions under § 1927 are appropriate after a finding that an "attorney recklessly or intentionally misled the court." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010); *Malhiot v. S. California Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984) (finding "[c]ounsel's . . . misrepresentations of the record and an intentional misstatement of California law . . . constitutes the requisite bad faith and intentional misconduct for which sanctions under Section 1927 are appropriate."); *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989) ("Sanctions pursuant to section 1927 must be supported by a finding of subjective bad faith."). Sanctions are also appropriate for assertions that are "baseless

DOCUMENT PREPARED
ON RECYCLED PAPER

and made without reasonable and competent inquiry." *Girardi*, 611 F.3d at 1062; *In re Keegan Mgmt. Co., Secs. Litig.,* 78 F.3d 431, 436 (9th Cir. 1996) ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument.").

Here, compensatory sanctions are appropriate for the four attorneys who misled the Court. As to Mr. Bramhall and Ms. Wang, the overwhelming evidence is that they intentionally misled the Court. Both had direct involvement with Dr. Hochster and were aware of his email communications related to the COBRA study. They knew Dr. Hochster's statements and their own statements to the Court to excuse their failure to comply with the discovery requests were false. The evidence as to Mr. Cannon and Mr. Landes does not as clearly show that their conduct was intentional. Nevertheless, they were at least reckless in misleading the Court. In Mr. Cannon's case, even the most minimal inquiry within Quinn Emmanuel's Natera trial team would have revealed that his representations about the absence of any public conference was false. Mr. Landes, who represented having had many conversations with Dr. Hochster, knew or should have known that his denials to the Court about Dr. Hochster's emails and email searches were bogus. Neither conducted a reasonable and competent inquiry before making misrepresentations to the Court.

Guardant defers to the Court whether, and to what extent, individual counsel should be held liable for Guardant's COBRA-related expenses. The Ninth Circuit's recent decision in *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1121 (9th Cir. 2024), is instructive. There, the Ninth Circuit adopted the special master's findings of misconduct by both the party and three individual attorneys. The Ninth Circuit, following the special master's recommendation, found individual attorneys "jointly and several liable with [the party]" for attorney's fees and costs up to a percentage of the total amount. *Id.* (imposing liability of between 50% and 10% of the total amount based on respective culpability).

### 5.    The Court Should Conduct Further Proceedings for Purposes of Imposing an Appropriate Fine on Each Counsel.

The Court also has authority to sanction Natera and its counsel using non-remedial, non-compensatory measures "to vindicate the authority of the court." *Int'l Union v. Un. Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (quotations omitted) (analyzing distinction between

civil and criminal sanctions). This could include, for example, non-compensatory monetary fines. *Am. Unites for Kids,* 985 F.3d at 1088. Such non-compensatory sanctions carry with them heightened requirements of procedural safeguards. *Id.* at 831-33; *see also Goodyear,* 581 U.S. at 108. "Thus, when a court is considering using its inherent authority to impose sanctions, the first step is to determine whether the potential sanctions that may be imposed are compensatory, punitive, or both. The answer to this question will affect both the procedural requirements and the substantive limitations that apply." *Am. Unites for Kids,* 985 F.3d at 1089. Guardant respectfully states that the Court should issue additional punitive sanctions to address the gross misconduct of Natera's counsel with Quinn Emanuel.

While attorneys have a duty to zealously advocate for their clients, that duty must be balanced—and indeed superseded—by their duty of candor to the Court. *E.g.*, *In re GNC Corp.*, 789 F.3d 505, 516 n.10 (4th Cir. 2015) (observing: "a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy") (quotations and citation omitted). Our legal system cannot function if lawyers treat the overriding duty of candor as a negotiable option, subject to a cost/benefit assessment of the litigation advantages of misleading the Court weighed against the chance of getting caught and a mere "cost of doing business." Here, in addition to the serious prejudice that Natera's counsel's misconduct inflicted on Guardant, the brazenly unethical misconduct of attorneys with Quinn Emanuel injured third parties (including Rutgers University, NRG, and Dr. Morris at MD Anderson), while wreaking a grave disservice on this Court, which had to reschedule a trial that already had been delayed.

The nature of the personal responsibility to be borne by any individual attorney with Quinn Emanuel would not be directly compensatory for Guardant and would be subject to a further proceeding. If requested, Guardant will participate and provide any relevant information. However, faced with the extraordinary circumstances in this case by Quinn Emanuel's COBRA misconduct, more and individual sanctions—including, e.g., personal $10,000 fines for attorneys found to be personally responsible—would be appropriate and just. In addition, the Court should refer each responsible attorney to the State Bar of California for further investigation. *Caputo*, 96 F.4th at 1121 (directing "the Clerk of Court a copy of the attached Report and Recommendation

1   for consideration of any further discipline they deem appropriate with respect to the [attorney's

2   conduct]").

3   **III.    CONCLUSION**

4         The falsehoods of Natera and its counsel were eventually uncovered through Guardant's

5   diligent (and costly) efforts to expose the truth. But the ultimate discovery of this intentional

6   misconduct in no way mitigates the harm to Guardant or the burden on the Court. As the Ninth

7   Circuit aptly explained:

8         The vice of misrepresentation is not that it is likely to succeed but that it imposes
          an extra burden on the court. The burden of ascertaining the true state of the record
9         would be intolerable if misrepresentation was common.

10  *In re Boucher*, 837 F.2d 869, 871 (9th Cir.1988). Natera's dishonesty cannot be tolerated, as it

11  threatens to undermine the very foundation of our legal system. Nor should Guardant be forced to

12  shoulder the burden of uncovering Natera's lies. Thus, the Court should order Natera to reimburse

13  Guardant for its attorneys' fees and costs incurred due to Natera's COBRA-related misconduct,

14  consider imposition of joint and several liability for the four responsible attorneys, conduct further

15  proceedings to impose an appropriate fine, and refer those attorneys to the state bar.

16                                            Respectfully submitted,

17  Dated: January 17, 2025

18                                            **ALLEN OVERY SHEARMAN
                                              STERLING US LLP**

19                                            **SAUL PERLOFF**

20                                            By:    */s/ Saul Perloff*
                                                     Saul Perloff
21

22                                            Attorney for Plaintiff
                                              GUARDANT HEALTH, INC.

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5-5, I certify, that January 17, 2025, this document, filed with the Court through the CM/ECF system, will be sent electronically to the registered participants at their e-mail addresses as identified in the Notice of Electronic Filing (NEF).

*/s/ Saul Perloff*
Saul Perloff

DOCUMENT PREPARED
ON RECYCLED PAPER

GUARDANT'S BRIEF ON MONETARY SANCTIONS FOR COBRA MISCONDUCT
CASE NO. 3:21-CV-04062-EMC