**Saul Perloff (157092)**
saul.perloff@aoshearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@aoshearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@aoshearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, TX 78701
Telephone (512) 647-1900

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

**Jennifer L. Keller** (84412)
jkeller@kelleranderle.com
**Chase Scolnick** (227631)
cscolnick@kelleranderle.com
**Craig Harbaugh** (194309)
charbaugh@kelleranderle.com
**Gregory Sergi** (257415)
gsergi@kelleranderle.com
**KELLER ANDERLE SCOLNICK LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NATERA, INC., <br><br> Defendant. | Case No. 3:21-cv-04062-EMC <br><br> **DECLARATION SAUL PERLOFF IN SUPPORT OF GUARDANT HEALTH, INC.'S MOTION FOR AN "EXCEPTIONAL CASE" AWARD OF ATTORNEYS' FEES AND NON-TAXABLE COSTS** <br><br> **REDACTED FOR PUBLIC FILING** |

I, Saul Perloff, declare as follows:

1. I am over 18 years old and I have personal knowledge of the facts set forth herein and could and would testify competently thereto if called as a witness.

2. I am a partner with the law firm of A&O Shearman LLP, which resulted from the merger of my former law firm, Shearman & Sterling LLP with Allen & Overy (together, "A&O Shearman"). I was previously a partner with the law firm Norton Rose Fulbright LLP. I have served

- 1 –
DECLARATION OF SAUL PERLOFF ISO GUARDANT'S MOTION FOR EXCEPTIONAL CASE AND FEES
CASE NO. 3:21-CV-04062-EMC

as the attorney-in-charge representing Guardant Health, Inc. ("Guardant") in the above-captioned proceeding. I have been licensed to practice law since 1991, and have over thirty years' of experience handling complex commercial litigation cases for both the United States government and in private practice. I am familiar with fees customarily charged by lawyers in litigation similar to the dispute in this litigation and am familiar with expenses and costs incurred in litigation similar to the dispute in this case.

3.      I offer this declaration in support of Guardant's request for attorneys' fees and otherwise nontaxable costs against Natera, Inc. ("Natera") under the Lanham Act's "exceptional case" provision, 15 U.S.C. § 1117(a). As set forth in the accompany memorandum, Natera's actions in this case, including the weakness of its litigation positions as to both its defenses against Guardant's claims and the counterclaims it prosecuted, as well as the manner in which it litigated this case, significantly increased Guardant's fees and costs. These fees and costs include, e.g.:

A. Addressing Natera's initial response to this dispute. I authored and sent a cease-and-desist letter to Natera dated May 21, 2021. Had Natera complied with the cease-and-desist letter's requests, this case almost certainly would not have been brought. Instead, counsel for Natera asked for additional time to respond to the cease and desist letter. I became concerned that Natera was planning a "race to the courthouse." Thus, I went forward with filing the Complaint in this action on May 27, 2021. As I had feared, Natera in fact had used the time it had asked to evaluate the cease and desist letter to instead prepare an action against Guardant. *See Natera, Inc. v. Guardant Health, Inc.*, Case No. 6:21-cv-540 (W.D. Tex.), Dkt. No. 1 (May 28, 2021). Natera subsequently dismissed that action and brought counterclaims in the instant suit.

B. Addressing Natera's early response to the lawsuit. Natera's unreasonable litigation conduct continued after the complaint was filed. To avoid entry of a temporary restraining order, Dkt. No. 12, Natera agreed to the Joint Statement, Dkt. 25-3. Natera almost immediately filed a motion for an order to show cause why Guardant should not be held in contempt for violating the Joint Statement, Dkt. 38, which the Court summarily denied. Dkt. 54. Notably, Natera's motion proved to be a pretext for Natera's attempt to dissolve the Joint Statement.

Dkt. 55 at 8:21-25 (Tr. of Hrg. Jun. 29, 2021) (argument of Natera's counsel). Natera would go on to repeatedly (and unsuccessfully) seek to dissolve the Joint Statement, e.g., Dkt. No. 119 (Nov. 19, 2021 Tr. of Hrg.) at 74:2-75:18 (argument of Natera's counsel); *see also* Dkt. No. 419, while at the same time repeatedly violating it. E.g., Trial Exs. 133, 135, & 286; *see also* Dkt. No. 803. In this same time frame, I worked with Natera's counsel on an expedited discovery schedule and a plan to coordinate preliminary injunction motions. E.g., Dkt. 61. But within a week of that submission to the Court, Natera filed a meritless (and never discussed) application for a temporary restraining order, Dkt. 62, which the Court denied without a hearing. Dkt. 86. Natera also filed initial counterclaims, Dkt. No. 48, and after Guardant moved to dismiss, Dkt. No. 77, Natera amended rather than contest Guardant's motion. Dkt. No. 90. The Court would go on to grant in part Guardant's motion to dismiss Natera's Amended Counterclaims. Dkt. No. 120.

C. Addressing Natera's discovery tactics. The Parties had expressly agreed that they would not engage in any "document dumps" as part of written discovery, and instead would produce documents through rolling productions. Guardant complied with this agreement; Natera did not. It instead produced about 95% of its documents at (or shortly after) the deadline for such productions. E.g., Dkt. 162 at 13:22-14:1.

D. Addressing summary judgment and *Daubert* motions, and initial pretrial submissions. Reflecting both the weakness of Natera's litigation position and the unnecessarily aggressive nature of its litigation tactics, Natera's own motion for summary judgment was largely denied, while Guardant's was granted in significant part. Dkt. No. 326. Similarly, the Court denied each of Natera's *Daubert* motions, Dkt. Nos. 322 & 333, while granting in significant part Guardant's *Daubert* motions. *See id.*; *see also* Dkt No. 328. And in the Parties' joint pretrial submissions in June 2023, Natera identified some 1,300 exhibits on its list for trial (though it ultimately submitted about 100 exhibits). Natera also designated extensive testimony from each and every Guardant and third party witness deposed—some eleven witnesses in all—claiming it would to play more than 3,300 page-line designations at trial – a page/line list that exceeded a hundred single-spaced pages that, at a conservative

- 3 -

estimate, would have more than exhausted the totality of Natera's total time for trial.

E. Participating in four mediations, and also participating in two mock jury exercises to prepare for trial.

F. Addressing Natera's COBRA-related misconduct and preparing for trial and trying the case. The Court is aware of Natera's and its counsel's COBRA-related misconduct, Dkt. No. 730, and Guardant is separately seeking its fees and non-taxable costs that were incurred because of that misconduct. In short, Natera successfully delayed trial until November 2024. And during trial, Natera continued its vexatious conduct that, though not separately sanctionable, nevertheless needlessly increased Guardant's trial-related fees and costs. E.g., Dkt. No. 813.

4. I was in charge and control of billing by Norton Rose Fulbright and A&O Shearman, and Norton Rose Fulbright and A&O Shearman billed Guardant only for those tasks which, in the exercise of my professional judgment, were reasonably necessary in this case, including for the tasks described above. In addition, we worked with Guardant's counsel at Keller Anderle Scolnick LLP, including attorneys Jennifer Keller, Chase Scolnick, Craig Harbaugh, and Gregory Sergi. Mr. Scolnick separately provides his declaration to offer a summary and proof of the attorneys' fees charged by his firm to Guardant. Further, we worked with the law firm of Jones Day, which provided consultation, and also participated in the mock court exercise to help us prepare for trial. Finally, Guardant engaged the Danish law firm Kromann Reumert, which assisted in securing documents from and the deposition of Dr. Claus Andersen at Aarhus University in Denmark.

5. Having supervised and/or performed all work on behalf of this matter by Norton Rose Fulbright and A&O Shearman for Guardant, my opinion is that an award of attorneys' fees of ███████ in billing from Norton Rose Fulbright and A&O Shearman is reasonable and appropriate for work that we performed for and billed to Guardant. In reaching that opinion, I have considered the following criteria, as well as my experience and judgment:

A. Time and labor involved. Attached as Exhibit A to my declaration are detailed billing records for each member of my Norton Rose Fulbright and A&O Shearman team for whom Guardant is seeking recovery of fees:

DECLARATION OF SAUL PERLOFF ISO GUARDANT'S MOTION FOR EXCEPTIONAL CASE AND FEES
CASE NO. 3:21-CV-04062-EMC

| Timekeeper | Final billing rate | Total hours | Total fees |
|---|---|---|---|
| Saul Perloff (Partner) | ███ | 3023.3 | ███ |
| Chris LaVigne (Partner) | ███ | 3708.4 | ███ |
| Andre Hanson (Special Attorney) | ███ | 3517.4 | ███ |
| Kathy Grant (Special Attorney) | ███ | 1840.0 | ███ |
| Trey Hebert (Senior Associate) | ███ | 2343.2 | ███ |
| Mary Catherine Amerine (Associate) | ███ | 980.3 | ███ |
| Lillian Mao (Associate) | ███ | 577.2 | ███ |
| Jordan Campusano (Paralegal) | ███ | 1172.5 | ███ |
| Robert Rounder (Special Attorney) | ███ | 306.0 | ███ |
| Megan Ines (Associate) | ███ | 139.5 | ███ |
| Tammy Miller (Paralegal) | ███ | 210.4 | ███ |
| Peter Stokes (Partner) | ███ | 54.5 | ███ |
| Michael Schneider (Associate) | ███ | 58.7 | ███ |
| Sophie Walker (Associate) | ███ | 98.2 | ███ |
| Bobbi Zahn (Associate) | ███ | 80.9 | ███ |
| Frank ReDavid (Paralegal) | ███ | 109.6 | ███ |
| Nathan Romo (Associate) | ███ | 44.6 | ███ |
| Sophie Copenhaver (Associate) | ███ | 40.4 | ███ |
| Christine Horsley (Paralegal) | ███ | 36.7 | ███ |

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

**Jones Day billing:** In addition to the work I and my colleagues from Norton Rose Fulbright and A&O Shearman performed, Guardant also received legal services from the law firm of Jones Day, and specifically partners Michael C. Hendershot (█████ per hour), S. Christian Platt (█████ per hour), and A. W. Jeffries (█████ per hour), as well as associate M.A. Alvarez (█████ per hour), and of counsel L. Logiudice (█████ per hour). Copies of the Jones Day attorneys' CVs is attached hereto as Exhibit E, and a spreadsheet reflecting their time entries for billing totaling █████████ are attached hereto as Exhibit F.

**Kromann Reumert billing:** Finally, Danish attorneys with the firm Kromann Reumert assisted Guardant in securing the deposition of Dr. Claus Andersen. Copies of Kromann Reumert's invoices totaling █████████ (U.S.) are attached hereto as Exhibit G[1].

B. **Novelty and difficulty of questions involved and skill requisite to perform the necessary legal services**. This suit represents both a complex and technical subject matter—ctDNA assays used for detecting MRD in patients diagnosed with and treated for colorectal cancer—as well as a specialized field of law, Section 43(a) of the Lanham Act's prohibition on false and misleading advertising, 15 U.S.C. § 1125(a). I selected each member of my team for their roles in this litigation because, in my professional judgment, they were sufficiently experienced and skilled to carry out their assigned tasks.

  i. I am one of only eighteen lawyers ranked by Chambers for Advertising Litigation in the U.S. *See* Advertising: Litigation, USA - Nationwide, USA | Chambers Rankings (https://chambers.com/legal-rankings/advertising-litigation-usa-nationwide-5:1766:12788:1?l=en-GB ). I have been selected as a "Texas Super Lawyer" for the years 2013-2019 and 2021-2023, one of the "Best Lawyer in America" by Best Lawyers (2013-2024), a member of the Legal 500, Intellectual Property/Trademarks Litigation

---

[1] Guardant is seeking to recover the Value Added Tax (VAT) paid to the state of Demark, which we understand is 25% of the fees Guardant paid to Kromann Reumert. We will inform the Court promptly if we are successful in recovering those VAT taxes

(2015-2018), and designated a "Stand-out Lawyer" by Thomson Reuters (2023-2024). I served as a JAG officer with the Chief Counsel's Honor Program in the U.S. Army Corps of Engineers, and have been in private practice for thirty years. During that time, I have tried to verdict a number of Lanham Act false advertising suits, as well as other high profile commercial litigation matters. A copy of my CV is attached hereto as Exhibit B-1.

ii. My colleague and partner at A&O Shearman Chris LaVigne served as a federal prosecutor with the U.S. Attorney's Office in the Southern District of New York from 2005 to 2013. In private practice, Mr. LaVigne's work has been recognized by Benchmark Litigation (2015-2024), New York SuperLawyers (2015-2020, 2022-2024), World IP Review(2024) (trade secrets cases), and the legal 500 (2020-2024). A copy of Mr. LaVigne's CV is attached hereto as Exhibit B-2.

iii. Andre Hanson (Special Attorney, A&O Shearman) graduated *Magna cum laude* and *Order of the Coif* from the University of Minnesota in 1995, and served as a law clerk to the Hon. Frank Magill, U.S. Court of Appeals for the Eighth Circuit, from 1995-1998. In private practice since 1998, Mr. Hanson has written well over a thousand briefs for dispositive and non-dispositive motions over the decades, and has been a core member of my Lanham Act false advertising team since 2007. A copy of Mr. Hanson's CV is attached hereto as Exhibit B-3.

iv. Dr. Kathy Grant (Special Attorney, A&O Shearman) holds a Ph.D. in Industrial Engineering, and received her J.D. from the University of Texas, *magna cum laude,* and Order of the Coif. Prior to law school, Dr. Grant served as a Major in the U.S. Air Force, and also served as an engineer officer in the U.S. Public Health Service. Dr. Grant has been a member of my Lanham Act false advertising team since shortly after she enter private practice in 2005, and has nearly twenty years' in false advertising and complex civil litigation. A copy of Dr. Grant's CV is attached hereto as Exhibit B-4.

v. Trey Hebert (Senior Associate, A&O Shearman), has a Master's degree in bioengineering, and has been a lawyer for over nine years. In addition to Lanham Act

false advertising disputes, Mr. Hebert represents clients in other complex civil litigation, including patent cases and trade secret actions. A copy of Mr. Hebert's CV is attached hereto as Exhibit B-5.

vi. Nathan Romo (Associate, A&O Shearman), is a recent law school graduate (University of California—Irvine) who had a previous career as a journalist. As an associate, Mr. Romo has focused on complex civil litigation, including class actions, product liability, and Lanham Act false advertising suits. Mr. Romo also provides counsel on TCPA and data privacy compliance to SaaS providers. A copy of Mr. Romo's CV is attached hereto as Exhibit B-6.

vii. Mary Catherine Amerine (formerly an Associate, A&O Shearman). Ms. Amerine received her law degree *cum laude* from William & Mary Law School in 2017. She is currently a visiting professor at George Washing University Law School, and previously served as a Shearman & Sterling associate. A copy of Ms. Amerine's CV is attached hereto as Exhibit B-7.

viii. Sophie Copenhaver (Associate, A&O Shearman). Ms. Copenhaver received her law degree from St. John University School of Law, *cum laude*. A copy of Ms. Copenhaver's CV is attached hereto as Exhibit B-8.

ix. Megan Ines (Associate, A&O Shearman). Ms. Ines received her law degree from the University of California—Berkely, where she was Supervising Editor of the Berkeley Journal of International Law. Ms. Ines served as a law clerk to the Hon. Evan J. Wallach, U.S. Court of Appeals for the Federal Circuit, and the Hon. Donald C. Pogue, U.S. Court of International Trade. A copy of Ms. Ine's CV is attached hereto as Exhibit B-9.

x. Lillian Mao (previously an Associate, Shearman & Sterling). Ms. Mao received her law degree from Stanford University in 2009, and served as a law clerk to the Hon. Ronald M. Whyte, United States District Judge for the Northern District of California. Ms. Mao is currently an associate with the law firm Gibson Dunn. A copy of Ms. Mao's CV is attached hereto as Exhibit B-10.

xi. Robert Rounder (formerly Special Attorney, A&O Shearman). Mr. Rounder retired from A&O Shearman in 2023. I worked closely with Mr. Rounder for much of his legal career (both at Norton Rose Fulbright and at A&O Shearman), and he remains one of the finest lawyers with whom I have ever worked. Mr. Rouder's legal career began after he had already had a successful business career in the corporate world, including service as a Vice President of a Fortune 500 company. A copy of Mr. Rouder's CV is attached hereto as Exhibit B-11.

xii. Michael Schneider (Associate, A&O Shearman). Mr. Schneider received his law degree from the University of Houston Law Center, *cum laude* and *Order of the Coif*. Mr. Schneider served as a law clerk to the Hon. Nancy G. Edmunds, U.S. District Court for the Eastern District of Michigan. Mr. Schneider has been named a "Rising Star" by Texas Super Lawyers (2022, 2023). A copy of Mr. Schneider's CV is attached hereto as Exhibit B-12.

xiii. Peter Stokes (Partner, Norton Rose Fulbright). Mr. Stokes received his law degree from Harvard in 2000, where he served as Senior Editor for the Harvard Journal of Law and Public Policy. Mr. Stokes is a Chambers USA ranked in Securities Litigation (2015-2020, 2022-2024), a Texas SuperLawyer (2016-2024), a "Best Lawyers in America, Litigation – Securities (2024), and a Legal 500 USA Recommended Lawyer (2024). A copy of Mr. Stokes' CV is attached hereto as Exhibit B-13.

xiv. Sophie Walker (Associate, A&O Shearman). Ms. Walker received her law degree from the University of Notre Dame in 2024. A copy of Ms. Walker's CV is attached hereto as Exhibit B-14.

xv. Bobbi Zahn (Associate, A&O Shearman). Ms. Zahn received her law degree from Vanderbilt University, where she served as Executive Authorities Editor, Vanderbilt Journal of Transnational Law. Her practice focuses on corporate and commercial litigation. A copy of Ms. Zahn's CV is attached hereto as Exhibit B-15

xvi. Non-attorney fee earners also assisted Guardant in this case, most notably including Jordan Campusano (paralegal, A&O Shearman) has nine years' experience as a Legal

Specialist and as a Paralegal. Other paralegals included: Tammy Miller (A&O Shearman), Frank ReDavid (A&O Shearman), and Christine Horsley (A&O Shearman),.

In my opinion, and based on my thirty-plus years' of experience in government and private practice litigation, my team represents an outstanding and well qualified collection of legal professionals.

    C.  **Fees customarily charged for similar legal services**. █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

    D.  In my experience as a litigation partner with a national practice, I am familiar with the rates charged by law firms throughout the nation, including in this District, for similar legal services. A&O Shearman's rates were consistent with, if not lower than, those of other large firms with the requisite and comparable skill and ability. These rates are reasonable and customary and within the prevailing market rate for national and international law firms. A&O Shearman is ranked as the fourth largest law firm in the world based on revenue. Partners from comparable firms bill at rates significantly higher than my partner, Mr. LaVigne, and I charged Guardant for our work in this matter. A recent article from the American Lawyer, available at https://www.law.com/americanlawyer/2024/01/31/big-law-rates-continue-rising-but-trail-2023-increases-so-far/, provides bench mark billing information for "top partners" at comparable firms that are consistently above $2,000 per hour:



This same article states that the "Top Associate Rate" at these comparable firms at least match if not significantly exceed the rates I and my partner charged Guardant in this case, and all far exceed the rates charged by the A&O Shearman non-partner attorneys:



These data are corroborated by a 2024 report from Brightflag, entitled Hourly Rates in Am Law 100® Firms: Increases and Key Drivers.



A true and correct copy of this Report is attached as Exhibit C to my Declaration.[2]

E.    In addition to attorneys' fees that Guardant incurred in prosecuting and defending this case, Guardant also incurred costs, most notably expert witness fees, consultant fees, document management fees, mediation fees, and travel and hotel fees. Attached hereto as Exhibit D is a true and correct copy of a summary of costs incurred by Guardant in this case. These costs include taxable and non-taxable costs. These costs (either paid directly by Guardant or by A&O Shearman for reimbursement by Guardant) total $4,836,130.64. Guardant intends to separately and timely submit a bill of costs to recover those taxable costs in accordance with the local rules and local

---

[2] In addition, case authority presented in the accompanying memorandum illustrates that the fees A&O Shearman have charged Guardant are reasonable. E.g., *HP Inc. v. Wiseta*, No. 23-cv-344, 2024 WL 1699564, at *4 (N.D. Cal. Mar. 15, 2024) (approving $1,075 per hour for a partner and $625–$725 for associates); *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557, 2022 WL 2789496, *9 (N.D. Cal. July 15, 2022) (noting that plaintiffs' counsel's hourly rates ranged from $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding these "rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 675 (C.D. Cal. 2022) (in 2022, finding rates ranging $1,160 to $1,370 for Gibson Dunn partners reasonable given size and reputation of the firm as well as the experience and expertise of the attorneys; also finding Gibson Dunn associate rates ranging from $845 to $1,060 reasonable); *Joseph S. v. Kijakazi*, No. 20-cv-09138, 2023 WL 2628243, *2 (C.D. Cal. Jan. 23, 2023) ("The Court's own research, as well as Plaintiff's counsel's own recent fee awards, suggest that an effective attorney hourly rate in the range of $1,300-$1,600 is appropriate").

forms. At this time, Guardant estimates that its taxable costs are approximately $900,000. Guardant does not seek a double-recovery for those taxable costs, and will indicate that any costs awarded under the Lanham Act's exceptional case provision should not be awarded in connection with the bill of costs. Guardant's total costs include those falling into the following categories:

Depositions: $227,629.39

Deposition Videos: $63,051.26

Translation Services: $8,950.84

Mediation Fees: $94,154.50

Non-attorney trial consulting: $1,283,808.21

Court Reporters; $43,380.50

Expert Witnesses:

    Ocean Tomo (J. Malackowski): $1,468,103.62

    Applied Marketing Science (B. Sowers): $155,961.26

    IMS Consulting & Expert Services (D. Heitjan): $197,647.25

    IMS Consulting & Expert Services (Ogenstad): $100,345.50

Document Management: $650,875.39

Printing: $119,428.39

Pacer/Westlaw: $2,171.84

Subpoena Service: $2,316.24

Travel, lodging, meals: $418,306.45

Total costs sought: $4,836,130.64.

    F.    Through his declaration, Mr. Scolnick is separately providing a summary of costs incurred by Guardant, and paid by Keller Anderle Scolnick.

    G.    In my professional experience and judgment, the non-taxable costs incurred by Guardant were reasonable and necessary.

1I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 17, 2025, in Austin, Texas.

By: _/s/ Saul Perloff_
Saul Perloff

- 14 -

DECLARATION OF SAUL PERLOFF ISO GUARDANT'S MOTION FOR EXCEPTIONAL CASE AND FEES
CASE NO. 3:21-CV-04062-EMC