QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Andrew J. Bramhall (Bar No. 253115)
andrewbramhall@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Derek L. Shaffer (Bar No. 212746)
1300 I Street, Suite 900
Washington, DC 20005
dereksshaffer@quinnemanuel.com
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Valerie Lozano (Bar No. 260020)
valerielozano@quinnemanuel.com
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

WILMER CUTLER PICKERING HALE
AND DORR LLP
Seth P. Waxman (admitted *pro hac vice*)
seth.waxman@wilmerhale.com
2100 Pennsylvania Avenue
Washington, DC 20037
Telephone:    (202) 663-6800
Facsimile:    (202) 663-6363

WILMER CUTLER PICKERING HALE
AND DORR LLP
Thomas G. Sprankling (Bar No. 294831)
thomas.sprankling@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone:    (650) 858-6000
Facsimile:    (650) 858-6100

Attorneys for Defendant and Counterclaim-
Plaintiff NATERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>    Plaintiff and Counterclaim-<br>    Defendant,<br><br>    vs.<br><br>NATERA, INC.,<br><br>    Defendant and Counterclaim-<br>    Plaintiff. | CASE NO. 3:21-CV-04062-EMC<br><br>**NATERA, INC.'S OPPOSITION TO GUARDANT HEALTH INC.'S MOTION FOR EQUITABLE MONETARY REMEDIES**<br><br>Judge:       Edward M. Chen<br>Date:        March 27, 2024<br>Time:        1:30 p.m.<br>Location:    Courtroom 5, 17th Floor |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT ......................................................................................................2

      A.    Disgorgement of Signatera Profits Is Not Warranted ...............................3

            1.    No Disgorgement Should Be Awarded Because Guardant Failed to
                  Establish Any Sales "Attributable To" Natera's Conduct ............................3

            2.    No Disgorgement Should Be Awarded Because Deduction of
                  Appropriate Costs Shows Natera Has No Profits To Disgorge ...................6

            3.    No Disgorgement Should Be Awarded Under Normal Principles of
                  Equity ....................................................................................................7

            4.    Any Disgorgement Should Be Limited, Not Increased...............................11

      B.    The Circumstances of This Case Do Not Warrant Enhanced Damages .................13

            1.    Enhanced Damages Would Produce An Improper Windfall ....................13

            2.    Guardant Has Proffered No Evidence of Lost Sales, Market Share or
                  Harm to Reputation and Goodwill .........................................................15

            3.    The Jury's Willfulness Finding Cannot Be the Basis for Enhanced
                  Damages ..............................................................................................17

            4.    There Is No Basis for a 1.5x Multiplier ....................................................19

      C.    Prejudgment Interest Is Not Warranted .................................................................19

            1.    Prejudgment Interest Is Not Available Under Section 1117(a)..................19

            2.    Prejudgment Interest Is Not Warranted Here.............................................21

            3.    Prejudgment Interest Should Not Be Awarded for Time Prior to the
                  Return of the Verdict.............................................................................22

            4.    Any Prejudgment Interest Should Be Calculated Using Simple
                  Interest .................................................................................................23

            5.    Guardant's Request For Prejudgment Interest Is Premature .......................24

      D.    Postjudgment Interest Is Not Warranted .................................................................24

III.  CONCLUSION ..................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Page</u>**

3

### <u>Cases</u>

4

5
*A & M Recs., Inc. v. Abdallah*,
   948 F. Supp. 1449 (C.D. Cal. 1996), *as amended* (Nov. 21, 1996) ........................................ 18

6
*Adidas Am., Inc. v. Payless Shoesource, Inc*.,
7
   2009 WL 302246 (D. Or. Feb. 9, 2009) ................................................................................. 21

8
*Adray v. Adry-Mart, Inc*.,
   76 F.3d 984 (9th Cir. 1995) ................................................................................................... 10

9
*Anhing Corp. v. Thuan Phong Co. Ltd.*,
10
   2016 WL 6661178 (C.D. Cal. Jan. 25, 2016) ................................................................... 13, 17

11
*Apple Inc. v. Samsung Elecs. Co.*,
12
   67 F. Supp. 3d 1100 (N.D. Cal. 2014) ................................................................................... 24

13
*Binder v. Disability Grp., Inc.*,
   772 F. Supp. 2d 1172 (C.D. Cal. 2011) ....................................................................... 13, 14, 18

14
*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
15
   2009 WL 160235 (S.D. Cal. Jan. 20, 2009) ................................................................. 17, 19, 20

16
*Callaway Golf Co. v. Slazenger*,
17
   384 F. Supp. 2d 735 (D. Del. 2005) ................................................................................. 14, 15

18
*Century 21 Real Est. LLC v. All Pro. Realty, Inc*.,
   889 F. Supp. 2d 1198 (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir. 2015) ........... 17, 18

19
*Collegenet, Inc. v. XAP Corp*.,
20
   483 F. Supp. 2d 1058 (D. Or. 2007) ................................................................................. 8, 17, 20

21
*ConsumerDirect, Inc. v. Pentius, LLC*,
   2024 WL 3739162 (C.D. Cal. Aug. 9, 2024) ........................................................................... 3

22

23
*Deckers Outdoor Corp. v. Aleader Grp., Inc.*,
   2024 WL 4744028 (C.D. Cal. Oct. 9, 2024) ..................................................................... 15, 19

24
*Delta T LLC v. MacroAir Techs., Inc.*,
25
   2024 WL 4172564 (C.D. Cal. July 18, 2024) ..................................................................... 7, 22

26
*Diaz v. Kubler Corp.*,
   785 F.3d 1326 (9th Cir. 2015) ............................................................................................... 23

27

28

*Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*,
  2020 WL 503085 (W.D. Wash. Jan. 30, 2020), *aff'd*, 2021 WL 3630225
  (9th Cir. Aug. 17, 2021) ............................................................................................ 3

*Epistar Corp. v. Lowes Companies, Inc.*,
  2022 WL 18911616 (C.D. Cal. Oct. 4, 2022) ...................................................... 24

*In re Exxon Valdez*,
  484 F.3d 1098 (9th Cir. 2007) ............................................................................ 23

*Faberge, Inc. v. Saxony Prods., Inc.*,
  605 F.2d 426 (9th Cir. 1979) ................................................................................ 8

*Falcon Stainless, Inc. v. Rino Companies, Inc.*,
  2011 WL 13130487 (C.D. Cal. Aug. 2, 2011) ...................................... 13, 17, 21

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ................................................................... 3, 7, 13

*Fitness Anywhere LLC v. WOSS Enterprises LLC*,
  2018 WL 6069511 (N.D. Cal. Nov. 20, 2018) .................................................... 24

*Folkens v. Wyland*,
  2002 WL 1677708 (N.D. Cal. July 22, 2002) ...................................................... 6

*Gaboratory, Inc. v. Gaboratory Int'l, Inc.*,
  2008 WL 11406056 (C.D. Cal. June 10, 2008) .................................................. 20

*Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*,
  781 F.3d 710 (4th Cir. 2015), *as amended* (Apr. 15, 2015) .............................. 20

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  2023 WL 2652855 (C.D. Cal. Mar. 13, 2023) .................................... 3, 6, 7, 9, 11

*Herrera v. City of Ontario*,
  2017 WL 11628154 (C.D. Cal. June 28, 2017) .................................................. 24

*Highlands Ins. Co. v. Cont'l Cas. Co.*,
  64 F.3d 514 (9th Cir. 1995) ................................................................................ 22

*Innovative Health Techs. v. Urmeev*,
  2020 WL 4346751 (D. Ariz. July 29, 2020) ...................................................... 18

*K&N Eng'g, Inc. v. Spectre Performance*,
  2012 WL 12893796 (C.D. Cal. May 1, 2012) .................................................... 15

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
  752 F.2d 1326 (9th Cir. 1984) .............................................................................. 6

*Lamothe v. Atl. Recording Corp.*,
    847 F.2d 1403 (9th Cir. 1988)...................................................................................... 11

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993)......................................................................................... 3

*M.I.B. Grp. LLC v. Aguilar*,
    2024 WL 3857540 (C.D. Cal. July 16, 2024) ............................................................ 3, 7

*MGA Entertainment, Inc. v. Harris*,
    No. 20-cv-11548 (C.D. Cal. Feb. 3, 2025), Dkt. 1090 ................................................... 7

*Monster Energy Co. v. Vital Pharms., Inc.*,
    2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) ................................................... 17, 22, 23

*Multiple Energy Techs., LLC v. Casden*,
    2023 WL 11891305 (C.D. Cal. Sept. 21, 2023) ........................................................... 18

*Nat'l Grange of the Ord. of Patrons of Husbandry v. California Guild*,
    334 F. Supp. 3d 1057 (E.D. Cal. 2018) ....................................................................... 18

*Nat'l Prods., Inc. v. Arkon Res., Inc.*,
    2017 WL 5499801 (W.D. Wash. Nov. 16, 2017) ......................................................... 6, 7

*Nat'l Prods. v. Gamber-Johnson LLC*,
    734 F. Supp. 2d 1160 (W.D. Wa. 2010), *aff'd*, 449 F. App'x 638 (9th Cir. 2011)... 3, 4, 21, 23

*Nelson v. EG & G Energy Measurements Grp., Inc.*,
    37 F.3d 1384 (9th Cir. 1994)........................................................................................ 21

*Neurovision Med. Prods., Inc. v. Nuvasive, Inc.*,
    2014 WL 12567167 (C.D. Cal. Dec. 2, 2014) ........................................................... 2, 20

*Nichia Am. Corp. v. Seoul Semiconductor Co.*,
    2008 WL 11342571 (C.D. Cal. Oct. 7, 2008) .............................................................. 15

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994)........................................................................................ 17

*Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch., Inc.*,
    732 F. App'x 532 (9th Cir. 2018).................................................................................. 12

*Oxy-Health, LLC v. Performance Hyperbarics, Inc.*,
    2010 WL 11523719 (C.D. Cal. Apr. 14, 2010) ........................................................... 18

*POM Wonderful LLC v. Coca Cola Co.*,
    166 F. Supp. 3d 1085 (C.D. Cal. 2016).......................................................................... 9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    No. 3:09-cv-05235-MMC, Dkt. 667 (N.D. Cal. Nov. 25, 2014) ................................. 24

*Price v. Stevedoring Servs. of Am., Inc.*,
  697 F.3d 820 (9th Cir. 2012) ................................................................... 24

*Richter, S.A. v. Bank of Am. Nat. Tr. & Sav. Ass'n*,
  939 F.2d 1176 (5th Cir. 1991) ........................................................... 21, 22

*Skydive Arizona, Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) .......................................... 2, 13, 17, 19, 20

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ................................................................... 2

*Stonebrae L.P. v. Toll Bros., Inc.*,
  2011 WL 1334444 (N.D. Cal. 2011), *aff'd*, 521 F. App'x (9th Cir. 2013) ............................ 23

*Sugai Prods., Inc. v. Kona Kai Farms, Inc.*,
  1997 WL 824022 (D. Haw. Nov. 19, 1997) ................................................ 8

*T-Mobile USA, Inc. v. Terry*,
  862 F. Supp. 2d 1121 (W.D. Wash. 2012) ............................................... 18

*Telemac Corp. v. US/Intelicon*,
  185 F. Supp. 1084 (N.D. Cal. 2001) ........................................................ 23

*Termine ex. rel. Termine v. William S. Hart Union High Sch. Dist.*
  288 F. App'x 360 (9th Cir. 2008) ...................................................... 23, 24

*Top Brand, LLC v. Cozy Comfort Co., LLC*,
  2024 WL 3917197 (D. Ariz. July 1, 2024) ............................................... 20

*Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*,
  2014 WL 12580249 (C.D. Cal. July 11, 2014) ......................................... 19

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
  793 F.2d 1034 (9th Cir. 1986) ................................................................... 4

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
  2018 WL 4849681 (N.D. Cal. Oct. 4, 2018) ............................................. 23

*Wecosign, Inc. v. IFG Holdings, Inc.*,
  845 F. Supp. 2d 1072 (C.D. Cal. 2012) ................................................... 16

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
  555 F. Supp. 3d 829 (N.D. Cal. 2021) ....................................................... 7

*Y.Y.G.M. SA v. Redbubble Inc.*,
  2021 WL 4553186 (C.D. Cal. Oct. 5, 2021), *aff'd in part, vacated in part, and
  remanded*, 75 F.4th 995 (9th Cir. 2023) ........................................... 19, 21

NATERA'S OPPOSITION TO GUARDANT'S MOTION FOR EQUITABLE MONETARY REMEDIES

*Y.Y.G.M. SA v. Redbubble, Inc.*,
   75 F.4th 995 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 824 (2024) .................................... 20, 21

**<u>Statutes</u>**

15 U.S.C. § 1117(a) ................................................................... 2, 3, 7, 10, 11, 13, 18, 19, 20

15 U.S.C. § 1117(b) ................................................................................ 2, 17, 18, 19, 20

17 U.S.C. § 512 (DMCA) ......................................................................................... 20

20 U.S.C. § 1400 et seq. (Individuals with Disabilities Education Act) ........................................ 24

28 U.S.C. § 1961 ...................................................................................................... 25

Cal. Civ. Code § 3287 .............................................................................................. 22

## I.    INTRODUCTION

Not satisfied with a ***$250 million*** jury award based on just three documents from four years ago, Guardant makes the extraordinary request that this Court exercise its equitable powers to increase the award to ***$400 million*** (including attorney's fees and costs). Neither the fundamental principles of equity nor the evidentiary record in this case support such an unjustifiable increase, which—if approved—

To be clear, and as Natera has explained in its own pending post-trial motions, the jury's underlying finding of liability and outsized damages award based on insufficient evidence cannot stand. But at a bare minimum, Guardant should not be permitted to obtain windfall on top of windfall in disgorgement, enhanced damages, and prejudgment interest. Guardant's request is a massive overreach.

As to disgorgement, Guardant utterly failed to prove that Signatera's sales from February 16, 2021 to August 30, 2023 are attributable to Natera's challenged statements (much less through the extended period for which Guardant now seeks disgorgement). That failure firmly forecloses *any* disgorgement award. Guardant cites no binding authority for its bald assertion that simply identifying all U.S. clinical sales of Signatera during a certain time period establishes the required causal link. Moreover, the relevant principles of equity—which Guardant ignores—weigh strongly in favor of not awarding any disgorgement at all. In particular, the evidence shows that Natera did not believe its statements were false or misleading advertising or intend to disseminate false or leading advertising, and no evidence suggests that any Reveal sales were diverted by the three challenged documents. Indeed, Guardant's damages expert testified he could not identify any customer who avoided purchasing Reveal or any sale that Guardant lost as result of Natera's statements. However, if this Court concludes that some amount of disgorgement is appropriate (which it should not), Natera submits that the Court should credit Dr. Stec's unrebutted regression and cost analyses and award a maximum of $13.6 million in total disgorgement.

As to enhanced compensatory damages, Guardant already sought and received $75 million in damages for future corrective advertising—its full ask (and then some). Because that award fully

NATERA'S OPPOSITION TO GUARDANT'S MOTION FOR EQUITABLE MONETARY REMEDIES

compensates Guardant, particularly given that the Reveal product at issue in Natera's challenged statements is no longer on the market and the challenged statements were disseminated years ago, its request to enhance compensatory damages crosses the line into "a penalty," which the Lanham Act expressly forbids. 15 U.S.C. § 1117(a).  Nor should Guardant be permitted to justify an entitlement to enhancement by resurrecting its paper-thin lost profits theory of damages, which was already rejected by the jury.  Guardant's suggestion that it is owed $37.5 million for lost sales, market share and goodwill relies entirely on attorney argument and its own co-CEO's bald assertion that Guardant had suffered "irreparable harm."  Enhancement here would be punitive, which the Lanham Act expressly forbids.

Finally, as to prejudgment interest, Guardant's request should be denied as both premature and meritless.  Prejudgment interest is not available under Section 1117(a) of the Lanham Act.  Even if such interest were available, it would not be warranted here.  Guardant has already been "made whole" by the jury's damages award, and it makes no sense to award *prejudgment* interest on a *prospective* corrective advertising award as that is not money Guardant would have had—and thus could have earned interest on—back in 2021.

At the end of the day, the jury's $250 million award is already exceedingly high in light of the facts of this case.  Based on this record, further increasing the award would amount to an additional windfall to Guardant and an improper penalty against Natera.

## II.    ARGUMENT[1]

Under the Lanham Act, a plaintiff is entitled to recover defendant's profits and damages sustained by the plaintiff "subject to the principles of equity."  15 U.S.C. § 1117(a).  The ultimate amount awarded must be "compensation[;] not a penalty."  *Id.*; *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1146 (9th Cir. 1997).  Enhanced damages are "only available to ensure that the plaintiff receives compensation," (*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012) (citations and alterations omitted)), and "prejudgment interest is not available under the Lanham Act for [conduct] that does not rise to the level of counterfeiting [under 15 U.S.C. § 1117(b)]."  *Neurovision Med. Prods., Inc. v. Nuvasive, Inc.*, 2014 WL 12567167, at *2

---

[1]  "Ex." refers to exhibits attached to the Declaration of Jocelyn Ma submitted herewith.

(C.D. Cal. Dec. 2, 2014). Further, prejudgment interest "is a 'make whole' remedy" that "is appropriate in circumstances where the plaintiff will not be made whole without additional compensation in the form of prejudgment interest." *Nat'l Products, Inc. ("NPI") v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1172 (W.D. Wa. 2010), *aff'd*, 449 F. App'x 638 (9th Cir. 2011).

## A. Disgorgement of Signatera Profits Is Not Warranted[2]

While Guardant devotes the majority of its argument to rehashing liability issues (Mot. 11-14), disgorgement "is never automatic and never a matter of right" simply because liability for false advertising has been established. *M.I.B. Grp. LLC v. Aguilar*, 2024 WL 3857540, at *23 (C.D. Cal. July 16, 2024). Whether disgorgement is appropriate—and if so, the amount—is ultimately in the discretion of this Court in line with principles of equity. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075-76 (9th Cir. 2015). In making such a determination, courts must ensure that plaintiffs do not receive a "windfall" (*id*. at 1076), and that the ultimate award is "compensation and not a penalty" (15 U.S.C. § 1117(a)). Accordingly, "a court may deny recovery of a defendant's profits if … they are only remotely or speculatively attributable to the infringement." *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 2023 WL 2652855, at *3 (C.D. Cal. Mar. 13, 2023) (internal quotations and citations omitted). Indeed, it is fundamental that disgorgement "is intended to award profits only on ***sales that are attributable to***" the unlawful conduct. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993) (emphasis added); Dkt. 814 at 46.

### 1. No Disgorgement Should Be Awarded Because Guardant Failed to Establish Any Sales "Attributable To" Natera's Conduct

Guardant has not identified any evidence showing the sales it seeks to disgorge are attributable to Natera's challenged statements. Rather, Guardant wrongly contends it is entitled to

---

[2] The jury's disgorgement award was advisory. Dkt. 507 at 98 (noting the proposed jury instruction for disgorgement was "[f]or submission to the jury in advisory capacity"). It is thus "of no binding legal significance" and is entitled to no deference. *ConsumerDirect, Inc. v. Pentius, LLC*, 2024 WL 3739162, at *1, *6 (C.D. Cal. Aug. 9, 2024); *see also Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc*., 2020 WL 503085, at *2 (W.D. Wash. Jan. 30, 2020), *aff'd*, 2021 WL 3630225 (9th Cir. Aug. 17, 2021).

1   $71 million in disgorgement simply because it identified the revenues from Natera's U.S. clinical

2   sales of Signatera over a three-year period.  Mot. 15.  The Western District of Washington roundly

3   rejected Guardant's position in *NPI*, 734 F. Supp. 2d at 1167.[3]

4       In *NPI*, the plaintiff asserted Guardant's same argument that "once it shows [defendant]

5   engaged in false advertisements in selling its vehicle amounts, all [it] has to do is point to the pool

6   of money from those sales as evidence of unjust enrichment" to meet its initial burden.  734 F. Supp.

7   2d at 1170.  The district court rejected this argument, noting that the plaintiff was conflating

8   trademark law (where every product sold bore the infringing mark) with false advertising law (where

9   purchasers may have never seen the false advertising at all).  *Id.* at 1771.  Where (as here) there is

10  evidence that "only some of [the defendant's] customers would have even seen the" advertisement,

11  the plaintiff must "offer evidence at trial that segregates [the defendant's] profits from sales to [those

12  who have seen the false advertising] from all of its sales during the relevant time period."  *Id.*  In

13  other words, Guardant was required to first "prove[] that the profits earned by [Natera] are

14  ***attributable to*** the false advertising"—"***then, and only then***, does the burden shift to [Natera] to

15  prove its expenses and the portion of the profit attributable to factors other than the false

16  advertising."  *Id*. at 1166 (emphasis added).

17      Like the *NPI* plaintiff, Guardant has failed to identify sales of Signatera that are attributable

18  to Natera's statements.  Guardant's expert simply assumed that ***every*** U.S. clinical sale of Signatera

19  made between February 16, 2021 and August 30, 2023—a total of $198,376,103—resulted from the

20  challenged conduct.  Tr. 1329:24-1330:3, 1321:20-1322:11 (Malackowski).  Mr. Malackowski

21  provided no support for this assertion, which this Court has previously correctly suggested is

22  implausible.  *See* Ex. D (2/16/23 Hr'g Tr.) at 17:18-25, 18:15-18.  As Dr. Stec's unrebutted

23  regression demonstrated, at least $166 million of these revenues were attributable to factors other

---

24  [3] Guardant's reliance on the Ninth Circuit's decision in *TrafficSchool.com v. Edriver Inc.,* 653
25  F.3d 820 (9th Cir. 2011) is misplaced (Mot. 15).  The stray statement from *TrafficSchool.com*
    regarding an award of profits without a showing of harm is classic dicta because the Court was not
26  considering a comparative advertising challenge—it was merely summarizing past case law as a
    prelude to its ultimate reasoning.  *Id.* at 831.  And the comparative advertising cases that
27  *TrafficSchool.com* relies upon do not remotely suggest a plaintiff satisfies its burden merely by
    pointing to the defendant's overall revenues.  *See, e.g.*, *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d
28  1034, 1042 (9th Cir. 1986) (relying on "detailed evidence … of [the defendant's] swift revenue
    growth and the connection of that growth to [the defendant's] advertising").

1    than Natera's challenged statements.  *See* Tr. 1862:3-1863:7, 1867:2-6 (Stec); *id.* 1321:21-1322:11

2    (Malackowski).

3        Indeed, there is ample evidence that customers purchased Signatera for reasons completely

4    independent of the statements at issue.  For example, Malackowski conceded that—as the "first-

5    mover" for the kinds of tests at issue—Natera had an advantage from its established market presence

6    during the nearly two years **before** the dissemination of the challenged statements.  Tr. 1332:25-

7    1333:11.  He also agreed that Signatera had a performance edge due to its preferable tumor-informed

8    approach (*id.* 1333:12-22), which allowed for features sought by doctors—such as quantification—

9    that Reveal did not have (*id.* 1333:20-1336:3).  Signatera had also received Medicare approval

10   before Reveal, a critical event that Guardant admitted was "one of those first dominoes that needs

11   to fall before [a] test can get traction" (*id.* 746:24-747:12 (Eltoukhy)) and separately drove Signatera

12   sales (*id.* 1858:3-22 (Stec); *id.* 1367:24-1368:2 (Malackowski)).  Finally, physicians choose

13   Signatera over Reveal for the same reason Guardant's *own* expert and the author of the Parikh Study

14   does—more robust clinical data exists for Signatura than for Reveal.  *Id.* 1336:19-1337:15

15   (Malackowski); Dkt. 809-4 (Parikh Dep. Tr.) at 90:8-92:15.

16       Conversely, there is not a shred of evidence linking even a *single* sale of Signatera to the

17   challenged statements.  While Malackowski superficially referenced "the extent of the campaign"

18   and "the timing of the campaign … at launch" to justify his overreaching disgorgement opinions

19   (Tr. 1323:7-23), the fact that advertising occurred does not prove that the sales were attributable to

20   the challenged statements.  Indeed, the unrebutted evidence was that only 2-3% of Natera's drip

21   campaign emails were even opened by recipients.  Tr. 669:15-670:3 (Masukawa).  And, although

22   Malackowski took the position that this was a "two-player market,"[4] he could not identify *any*

23   customer who avoided purchasing Reveal or any sale that Guardant lost as result of Natera's

24   statements. Tr. 1323:16-23, 1368:3-13 (Malackowski).  Though gaps in proof of reliance and

25   causation can theoretically be remedied through a survey, Guardant's expert made the fatal error of

26   failing to ask whether survey respondents made any purchasing decisions based on Natera's

27

28   ───────────────
     [4]  Malackowski's assertion is also incorrect, as both Natera and Guardant view the standard of care, CEA, as their main competitor.  Dkt. 220-7 (Eltoukhy Dep. Tr.) at 100:12-15; Dkt. 274-5 (Price Dep. Tr.) at 252:10-21; Tr. 648:11-649:5 (Masukawa).

1  statements.  Tr. 850:21-851:7 (Sowers).

2      Malackowski appears to have arrived at his damages number based on a misunderstanding

3  of the law—i.e., his belief that the issue was not whether "all of [Natera's] sales [were] the result of

4  the campaign." Tr. 1323:7-11.  But that is precisely the issue when assessing disgorgement—the

5  purported misconduct "must have 'had an effect on profits' to justify disgorgement." *Harbor Breeze*

6  *Corp.*, 2023 WL 2652855, at *3.  Here, because "[e]vidence connecting [Natera's] false advertising

7  to [its] profits is lacking," Guardant's request should be denied.  *Id.* at *4.

8          2.    <u>No Disgorgement Should Be Awarded Because Deduction of Appropriate
                Costs Shows Natera Has No Profits To Disgorge</u>

9

10     Moreover, Natera's damages expert offered credible evidence that Natera did not achieve

11 any profits once appropriate costs were deducted. Tr. 1864:7-1865:14 (Stec).  Although Guardant's

12 expert deducted only a portion of the costs of goods sold in arriving at his inflated disgorgement

13 opinion, any costs that were "of actual assistance in the production, distribution, or sale of the

14 infringing product" are properly deductible. *Kamar Int'l, Inc. v. Russ Berrie & Co.,* 752 F.2d 1326,

15 1332 (9th Cir. 1984) (interpreting equivalent copyright statute); *see also Nat'l Prods., Inc. v. Arkon*

16 *Res., Inc.*, 2017 WL 5499801, at *1 (W.D. Wash. Nov. 16, 2017) (applying *Kamar* to Lanham Act

17 claim).  This metric should naturally include wages, sales commission, and overhead expenses and

18 there is no dispute that Natera incurred these other deductible costs.  Tr. 1330:8-15; 1331:5-11

19 (Malackowski); *id.* 1864:20-1865:5 (Stec); Dkt. 759 at 46; *Folkens v. Wyland*, 2002 WL 1677708,

20 at *5 (N.D. Cal. July 22, 2002) (reducing defendants' gross revenue by direct costs, which included

21 sales commissions).  Taking these appropriately deductible costs into account results in a ***loss*** of

22 $2,841,722. Tr. 1864:7-1865:14 (Stec).  This is unsurprising given that new products often operate

23 at a negative profit given high initial costs and the need to ramp up sales.  *See* Tr. 794:9-20

24 (Eltoukhy) (admitting Guardant expected it would take four years for Reveal to be profitable); Tr.

25 1086:16-1087:2 (Chapman) (explaining that Signatera remains net unprofitable).

26     Guardant's expert asserted that Natera should not receive "credit" for overhead, sales, or

27 marketing costs because they are not "associated with the production" (Tr. 1322:22-1323:6

28 (Malackowski)), but that is neither the law of this Circuit nor consistent with the language of the

Lanham Act. "If an infringer were not permitted to deduct all costs incurred in generating the gross revenues, including overhead costs, the trademark owner would be awarded *more than just profits* and the infringer would not only be deprived of whatever benefit it derived from the infringement, as was the apparent intent of Congress, but would also *suffer affirmative punishment*." *Nat'l Prods., Inc.*, 2017 WL 5499801, at *1 (emphases added). Because "[t]he proper measure of disgorgement is the 'financial benefit' the Defendant gained from the false advertising activity[,]" and Natera credibly demonstrated at trial that it has received no such benefit from the accused conduct, any disgorgement award would be a penalty. *Delta T LLC v. MacroAir Techs., Inc.*, 2024 WL 4172564, at *5 (C.D. Cal. July 18, 2024).

> 3.    <u>No Disgorgement Should Be Awarded Under Normal Principles of Equity</u>

Guardant neglects entirely to address the Lanham Act's express directive that the disgorgement remedy—if granted at all—must be done so "in light of equitable considerations.'" *Fifty-Six Hope*, 778 F.3d at 1073 (internal citation omitted); 15 U.S.C. § 1117(a). These principles include (1) a defendant's mental state, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by plaintiff in asserting its rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off. *Harbor Breeze Corp.*, 2023 WL 2652855, at *4 (enumerating the principles of equity for disgorgement); *M.I.B. Grp. LLC v. Aguilar*, 2024 WL 3857540, at *23 (same). In light of these considerations, disgorgement is not appropriate in this case. And because Guardant failed to address the factors in its opening brief, any argument contrary is waived. *See In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829, 885 (N.D. Cal. 2021).

> (a)    Natera's Mental State Does Not Favor Disgorgement

Though Natera recognizes that the jury found that its conduct was willful, this finding was only directly relevant to disgorgement and thus should be treated as advisory. *See, e.g.*, *MGA Entertainment, Inc. v. Harris,* No. 20-cv-11548 (C.D. Cal. Feb. 3, 2025), Dkt. 1090 at 6 ("Because disgorgement of profits is an equitable remedy, … the Court will consider the jury's verdict on willfulness only as an aid to the court in discharging its functions.").

Regardless of whether the jury's willfulness finding is binding, it stands on shaky ground.

1    As explained in greater detail in Natera's motion for judgment as a matter of law and Natera's

2    opposition to Guardant's motion for attorneys' fees, the evidence does not support a finding that

3    Natera willfully created and disseminated false statements. *See* Dkt. 880 at 14; Dkt. 899 at 4-7, 11-

4    14.  Natera witnesses all testified to the contrary.  Tr. 660:7-12, 662:9-14, 677:4-13 (Masukawa);

5    Tr. 1481:23-25, 1482:12-20 (Moshkevich); Tr. 1075:11-15, 20-25 (Chapman).  And consistent with

6    that testimony, after Natera received a cease-and-desist letter from Guardant, Natera conducted a

7    thorough analysis of Guardant's complaints and concluded that all the information on the

8    performance grid "remain[ed] valid."  TX76.4.

9         Guardant's insinuations that Natera must have known that its comparisons of the two studies

10    were false or misleading because they had "different patient populations, different methodologies,

11    and different plasma volume" (Mot. 12-13) are belied by the fact that ***Guardant itself also compared***

12    ***these same two studies*** (TX585.7; Tr. 384:2-12 (Odegaard)).  Moreover, the Parikh Study purported

13    to be "based on the methods employed by Reinert" and described its data as "comparable."  TX1.1,

14    TX1.2, TX1.4, TX1.6.  With respect to plasma volumes, Guardant's own scientist testified that there

15    was no minimum amount of DNA needed—Reveal uses a binary Quality Control (QC) and Quality

16    Assurance (QA) approach that measures only whether ctDNA is present—if it passes QA/QC,

17    Guardant has determined there is enough material to make a reliable detection determination

18    regardless of starting volume or input DNA amount.  Tr. 1132:13-23, 1134:13-1136:5; 1138:10-23,

19    1139:18-1140:5, 1142:19-1144:8 (Raymond); TX-501 at 9-10.  Guardant's expert also explained

20    how the DNA amplification process can render the initial volume immaterial.  Tr. 1725:2-1727:25

21    (Metzker); *see also* Tr. 1232:7-1233:16 (Raymond).

22         In any event, "[t]he Ninth Circuit … has cautioned that a showing of willful misconduct does

23    not compel an award of profits, which reflects the equitable nature of the remedy."  *Collegenet, Inc.*

24    *v. XAP Corp.*, 483 F. Supp. 2d 1058, 1065 (D. Or. 2007) (citing *Faberge, Inc. v. Saxony Prods.,*

25    *Inc.*, 605 F.2d 426, 429 (9th Cir. 1979)); *Sugai Prods., Inc. v. Kona Kai Farms, Inc.*, 1997 WL

26    824022, at *16 (D. Haw. Nov. 19, 1997) ("The Ninth Circuit has held repeatedly that, even in the

27    case of a willful infringement, disgorgement of profits is not automatic.").  That is particularly so

28    here given that the jury was not given the whole story about the parties' mental states.  At trial,

1    Guardant suggested that engaging in comparative advertising was inherently misleading and

2    Guardant's co-CEO Helmy Eltoukhy testified that Guardant does not do it.  *See* Tr. 730:19-21 ("Q:

3    Does Guardant engage in comparative advertising against its competitors?  A: No, we don't."); *see*

4    *also* Tr. 447:4-10, 490:4-13 (Price).  But on the very day Natera's JMOL brief was due, Guardant

5    filed a declaratory judgment action in Delaware federal court confessing that Guardant ***does*** engage

6    in comparative advertising and asking for a ruling that such advertising is lawful.  *See* Ex. A ¶ 24

7    ("[T]he advertising surrounding its Guardant360 product, and the comparisons between Guardant's

8    patented product and Tempus's product, Tempus xF+, are not false nor misleading based on publicly

9    available information on Tempus' products.").

10   While Natera was unable to present evidence about this new revelation to the jury due to the

11   timing, this Court can and should consider it now as it exercises its equitable authority whether to

12   award lost profits.  Indeed, Guardant's inconsistent statements implicate the "unclean hands

13   doctrine, [which] bars claims for … equitable relief" to "a plaintiff who has violated conscience,

14   good faith or other equitable principles in his prior conduct" and "who has dirtied his hands in

15   acquiring the right presently asserted."  *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d

16   1085, 1091-92 (C.D. Cal. 2016).

17   Given the circumstances and evidence in this case and Guardant's unclean hands, Natera

18   submits that its mental state does not favor disgorgement.

19               (b)      Guardant Admits There Was No Diversion of Sales

20   "That Defendants' profits are not attributable to false advertising inherently means that no

21   sales were diverted."  *Harbor Breeze*, 2023 WL 2652855, at *6; *see supra* § II.A.1.  Guardant's

22   damages expert conceded that he could not identify even *one* lost clinical sale that resulted from

23   Natera's conduct, nor could he specify a *single* clinical customer who decided not to purchase

24   Reveal because of Natera's statements.  Tr. 1368:3-13 (Malackowski).  Neither did any other

25   Guardant witness.  This is consistent with Guardant's CEO's testimony that it "didn't miss" any

26   revenue projections for Reveal (Tr. 757:14-18 (Eltoukhy)), and Guardant's repeated statements in

27   earnings calls that the "Reveal launch went as well as we could have expected," the volume of

28   Reveal sales was "as good as" or "better" than expected, and that Guardant was "very pleased" with

1    the Reveal launch trajectory.  TX1309.13 (Q1 2021 earnings call); TX1310.18 (Q2 2021 earnings

2    call); Ex. C (TX1315, Q1 2022 earnings call) at 3; Ex. B (TX1311, Q3 2021 earnings call) at 11,

3    15-16, TX1806.6, 1806.10 (Q2 2023 earnings call); TX1807.4 (Q4 2023 earnings call); Dkt. 811-

4    25 at 3 (Q1 2024 earnings call).  And, again, the jury also correctly rejected Guardant's claim of lost

5    profits.  This factor weighs strongly against disgorgement.

(c)    Other Remedies Already (More Than) Adequately Compensate<br>Guardant

6
7            With respect to the adequacy of other remedies, the jury's award of $75 million in

8    prospective corrective advertising damages—the entirety of the actual damages Guardant could

9    have received—adequately compensates Guardant.[5]  *See infra* § II.B.1.  "An award of the costs of

10   corrective advertising, like compensatory damage awards in general, is intended to make the

11   plaintiff whole."  *Adray v. Adry-Mart, Inc*., 76 F.3d 984, 988 (9th Cir. 1995).  Indeed, Guardant's

12   expert testified that $74,524,532 was what Guardant needed to "level the playing field" and to

13   "correct the impressions that have been left in the market."  Tr. 1324:15-18, 1327:15-1328:4

14   (Malackowski).  That number was almost double the ***high end*** of the corrective advertising budget

15   prepared by Guardant itself.  *Id.* 1353:13-23.  The jury adopted Malackowski's number (and, in fact,

16   rounded up by over $400,000), finding that $75 million "would ***fairly and reasonably compensate***

17   Guardant for damages … that were proximately caused by the false advertising."  Dkt. 847 at 2

18   (emphasis added).  The only other theory of harm Guardant claimed was lost profits, which the jury

19   rejected.  Granting disgorgement on top of this amount would constitute a "penalty" rather than

20   "compensation" in violation of the Lanham Act.  15 U.S.C. § 1117(a).  This factor does not support

21   an award of Natera's profits.

(d)    The Remaining Equity Principles Do Not Favor Awarding<br>Disgorgement

22
23
24           While it does not appear that there was an unreasonable delay by Guardant in asserting its

25   rights, Guardant did unreasonably delay in taking *any* mitigation efforts, including failing to

26   undertake any corrective advertising during the pendency of this lawsuit despite complaining of the

27

28   _____

         [5]  In addition, if the $175.5 million punitive damages award withstands JMOL (but see Dkt. 880
     at 14-16), it further demonstrates that Guardant has received more than adequate compensation.

1   "harm it suffered over the last 4+ years."[6]  Mot. 18.  Guardant should not be awarded for purposely

2   sitting on its hands as it supposedly continued to accrue more harm.

3          Finally, the public's "general interest" in making false advertising unprofitable should be

4   "mitigated by the competing interest of the public in robust competition." *Harbor Breeze*, 2023 WL

5   2652855, at *8 (quotation and citation omitted).  That is particularly the case here where Natera's

6   challenged conduct ceased years ago and Guardant has already discontinued the Reveal test that was

7   the subject of that conduct, such that disgorgement to deter Natera's advertising is not necessary.[7]

8   *Id.* at *5, 8 (public interest factor "only marginally favors Plaintiffs—if at all" because it was not a

9   case where "the need to deter misconduct is at its apex.").  Finally, it cannot be disputed that Natera's

10  statements do not constitute "palming off," i.e., "selling a good or service of one person's creation

11  under the name or mark of another"—a fact that further disfavors disgorgement.  *Lamothe v. Atl.*

12  *Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988).

13         More factors of equity weigh against disgorgement, including two that are given "great

14  weight"—Natera's mental state and a lack of diverted sales.  *Harbor Breeze*, 2023 WL 2652855, at

15  *9.  Natera respectfully submits that this Court should exercise its equitable powers not to award

16  disgorgement here.

17                    4.    Any Disgorgement Should Be Limited, Not Increased

18         To the extent the Court determines that *any* disgorgement award is warranted, the jury's

19  advisory verdict should be reduced based on the evidence adduced at trial.  *See* 15 U.S.C. § 1117(a).

20  The evidence did not establish that every U.S. clinical Signatera sale made between February 16,

21  2021 and August 30, 2023 (much less through February 2024) was "attributable to" Natera's

22  accused advertising.  Instead, Dr. Stec's regression and testimony showed that $166 million of

23  Signatera revenues were not attributable to Natera's statements and that, at most, only $32,278,685

24

---

25     [6]  Guardant will surely claim that it was hindered by the parties' Joint Statement, but it was
   Guardant who strenuously opposed Natera's attempts to dissolve the Joint Statement numerous

26  times (as it was never meant to remain past the preliminary injunction phase of the case).  Dkt. 430.
       [7]  Neither party would benefit from future Parikh-Reinert comparisons.  Guardant currently cites

27  principally to *Nakamura, et. al.* as the validation study for the new Infinity version of Reveal (*see*
   Ex. H (TX1783) at 2), and Signatera has been validated by dozens of publications since Reinert (*see*

28  Ex.  L  (https://www.natera.com/company/news/natera-announces-publication-of-over-100-peer-
   reviewed-papers-on-signateratm/)).

1   could even be "potentially due to" the accused statements.  Tr. 1862:11-22 (Stec).  And as the jury

2   instructions make clear, costs beyond those that Guardant's expert deducted—including wages and

3   commissions—are properly deductible.  Dkt. 814 at 45.  Natera respectfully submits that this Court

4   should at least credit Dr. Stec's analysis regarding the appropriate revenues and costs, and award a

5   maximum of $13,650,888 in disgorgement.  Tr. 1864:7-1865:18 (Stec).  Even that would be

6   inequitable because when all appropriate costs are considered, Natera incurred a loss of $2,841,722.

7        Finally, Guardant's attempt to *increase* disgorgement for profits from August 2023 through

8   February 2024 should be rejected outright.  Given that there was *no* evidence that any sale *before*

9   August 2023 was "attributable to" Natera's at-issue statements (*see supra* § II.A.1), there is certainly

10  no evidence that *additional* sales made three years after the statements were disseminated were

11  attributable to the stale statements.  *See Out of the Box Enterprises, LLC v. El Paseo Jewelry Exch.,*

12  *Inc.*, 732 F. App'x 532, 534-35 (9th Cir. 2018) (expert's "disgorgement calculation is also fatally

13  flawed" because expert "assumed that all of El Paseo's profits during the relevant period were due

14  to its advertisements, without evidence to support that assumption.").[8]

15       Guardant's argument to the contrary (Mot. 16-17) rests on another flawed premise.

16  Specifically, it asserts that because Natera produced the relevant financial information for the

17  August 2023 to February 2024 period and Guardant's expert provided an opinion on the issue, this

18  Court can appropriately adopt that opinion now as a matter of equity.  But Guardant ignores that it

19  received updated financial information for Signatera during the discovery period for COBRA and

20  that it successfully persuaded this Court to exclude the COBRA evidence from the case record and

21  from trial.  Dkt. 749.  It would be fundamentally inequitable to allow Guardant to rely on post-

22  August 30, 2023 events when it precluded Natera from doing so.  Ex. E (10/15/24 Hr'g Tr.) at 71:7-

23  72:20 (the Court noting Guardant had to "take the good with the bad" when it came to excluding the

24  COBRA evidence).

---

[8]  Guardant's assertion that its sales would have been completely unaffected by COBRA (such that it is entitled to the same proportion of those profits as recommended by the jury's advisory verdict for pre-August 2023 sales (Mot. 16-17)) is implausible.  Malackowski's rudimentary "before-and-after" analysis—in which he simply compared revenue and sales in the period before the COBRA termination with those after the COBRA termination—was not presented to the jury or subject to cross-examination and falls far short of sufficient evidence to increase any disgorgement award.  Dkt. 583-6 (7/2024 Stec Rpt.) at 40.

1

**B.     The Circumstances of This Case Do Not Warrant Enhanced Damages**

2          Section 1117(a) allows a district court to enhance damages so long as the award

3   "constitute[s] compensation and not a penalty." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d

4   1105, 1114 (9th Cir. 2012) (quoting 15 U.S.C. §1117(a)).  "[T]he Lanham Act has been construed

5   to expressly forbid the award of [enhanced] damages to punish an infringer." *Id.*  The Ninth Circuit

6   has cautioned that district courts "ought to tread lightly when deciding whether to award increased

7   profits, because granting an increase could easily transfigure an otherwise-acceptable compensatory

8   award into an impermissible punitive measure." *Fifty-Six Hope*, 778 F.3d at 1077.

9          Despite the fact that the jury awarded Guardant its full ask for prospective corrective

10  advertising damages—not to mention $175.5 million in punitive damages—Guardant now seeks an

11  *additional* $37.5 million for the three Natera "advertisements" that were disseminated years ago and

12  relate to a product that has since been retired.  Guardant's overreaching ask is unsupported by the

13  law and the facts; instead, "the thrust of [Guardant's] argument about enhancing damages" is

14  improperly "punitive rather than remedial[.]" *Falcon Stainless, Inc. v. Rino Companies, Inc.*, 2011

15  WL 13130487, at *5 (C.D. Cal. Aug. 2, 2011) (denying enhanced damages).

16                  1.     Enhanced Damages Would Produce An Improper Windfall

17         Enhanced damages are "only available to ensure that the plaintiff receives **compensation**"

18  and cannot be punitive.  *Skydive Arizona*, 675 F.3d at 1114 (citations and alterations omitted)

19  (emphasis added); *id.* ("[E]nhancing [Plaintiff]'s actual damages to punish [Defendant] … is an

20  abuse of discretion."); *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1183 (C.D. Cal. 2011)

21  ("[E]nhancement could … provide proper redress to an *otherwise undercompensated plaintiff*[.]")

22  (emphasis added).  Here, the jury already awarded $400,000 *more than* the amount of prospective

23  corrective advertising damages Guardant sought—an already exceedingly high $75 million.  Dkt.

24  847 at 2; Tr. 1327:24-1328:4 (Malackowski).  Guardant "cannot be heard to complain that the jury's

25  damages award was not fully compensatory when it was based on the highest compensatory damage

26  award proposed by [its] own damages expert." *Falcon Stainless*, 2011 WL 13130487, at *5; *cf.*

27  *Anhing Corp. v. Thuan Phong Co. Ltd.*, 2016 WL 6661178, at *5 (C.D. Cal. Jan. 25, 2016) (denying

28  enhanced damages even where the jury award was only 3.4% of what plaintiff sought because "the

1  jury award adequately compensates Plaintiff for the damages in this case based on the evidence

2  presented at trial").  No additional damages are permitted.

3      In fact, the evidence indicates that the jury's actual damages award *over*compensates

4  Guardant.  Guardant's *own* estimate of necessary corrective advertising costs ranged between $18

5  and $39 million—two to four times less than Malackowski's opinion.  TX-731; Tr. 1325:7-23,

6  1353:9-20 (Mal.).  Unsatisfied, Malackowski disregarded Guardant's own assessment in favor of a

7  different, baseless methodology: applying a 3x multiplier to the $24.8 million *Natera* spent.  TX98;

8  Tr. 1353:24-1354:8 (Malackowski).  Without any expertise in marketing, Malackowski relied on

9  dubious sources untethered to corrective advertising, unrelated to advertising in the healthcare space

10  or to medical professionals, and that never discuss a 3x multiplier.  Tr. 1329:7-21, 1368:3-13,

11  1357:11-1358:13 (Malackowski); TX109.3; Ex. G (TX285); Ex. F (TX284.3).  *See Binder,* 772 F.

12  Supp. 2d at 1183 (declining request to award corrective advertising damages of 25% of defendant's

13  advertising budget because "[a]ny award based on an arbitrary percentage of Defendants'

14  advertising budget is not sufficiently tethered to correcting the nature of the harm suffered").

15      That the awarded corrective advertising damages are prospective also overcompensates

16  Guardant given that the product at issue in Natera's statements, Reveal 1.2, has been retired.  While

17  damages may sometimes be awarded for future corrective advertising, there must be "an economic

18  rationale" for doing so.  *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 740 (D. Del. 2005).

19  But as the evidence demonstrated, Guardant no longer sells Reveal 1.2 and has released an

20  "upgraded version" which operates differently and is not clinically validated by the paper cited by

21  Natera's challenged advertisement (the Parikh Study).  Tr. 1360:3-7 (Malackowski); *id.* 955:4-9

22  (Banks); *id.* 791:4-6 (Eltoukhy); *id.* 361:11-16 (Odegaard).[9]  There is therefore "no economic

23

24  ─────────────
    [9]  In "late 2023," Guardant retired L1.2 and began selling an "upgraded" product marketed as
    GuardantINFINITY. Tr. 791:4-6 (Eltoukhy); *Id.* 1360:3-7 (Malackowski); Ex. H (TX1783). Unlike
25  L1.2, GuardantINFINITY does not look at mutations and it is not clinically validated by the Parikh
    Study.  Tr. 955:4-9 (Banks); Dkt. 585-10 (7/2024 Parikh Dep. Tr.) at 112:14-20. The Parikh Study
26  validated a version of Reveal that relied on a combination of genomic and epigenomic data (L1.2),
    whereas GuardantINFINITY uses *only* epigenomic data—a fundamental change in chemistry and
    bioinformatics.  TX1,5-1.7; Dkt. 584-10 (Eagle Dep. Tr.) at 138:14-139:10.  Guardant describes
27  GuardantINFINITY as "a quantum leap forward in the capabilities of liquid biopsies" and "a new
    assay."  TX1576.2; *see also* Dkt. 585-16 (Ex. 15 to Motion to Strike/Exclude Malackowski)
28  (Guardant publicly stating that Reveal 1.2 was "2-3 generations behind the current newest version");

1   rationale to support an award of 'prospective corrective advertising' damages," as it makes "no

2   sense for [Guardant] to receive [such] a damages award … to correct some possible public

3   misunderstanding" about a product that "ha[s] long since been off the market." *Callaway*, 384 F.

4   Supp. 2d at 741; *Nichia Am. Corp. v. Seoul Semiconductor Co.*, 2008 WL 11342571, at *10 (C.D.

5   Cal. Oct. 7, 2008) (ruling there was no basis to order defendant to engage in corrective advertising

6   when "the infringing product has … been discontinued").

7       Ultimately, Guardant has not identified any actual corrective advertising steps that it plans

8   to take using that the $75 million award, which is unsurprising in light of the fact it is selling a new,

9   different version of Reveal.  Given the prospective corrective advertising damages award, enhanced

10  damages would make Guardant *more than* whole and are thus not permitted.

11              2.      Guardant Has Proffered No Evidence of Lost Sales, Market Share or Harm
                        to Reputation and Goodwill

12      With no analysis or evidence, Guardant claims that enhanced damages are warranted because

13  the jury's award does not account for "lost sales, lost market share, and the harm to its reputation

14  and goodwill since early 2021."  Mot. 18.  These allegations of harm are entirely "too speculative"

15  and cannot be the basis for enhanced damages.  *K&N Eng'g, Inc. v. Spectre Performance*, 2012 WL

16  12893796, at *8-9 (C.D. Cal. May 1, 2012).

17      Guardant proffered *zero* actual evidence regarding any lost market share or harm to

18  Guardant's reputation and goodwill at trial, and it provides none now.  All Guardant references is a

19  single, self-serving statement from its own CEO regarding "irreparable harm" to the "reputation of

20  this product" based on nothing but his own say-so.  Mot. 18.  This is inadequate to support an award

21  of enhanced damages.  *Deckers Outdoor Corp. v. Aleader Grp., Inc.*, 2024 WL 4744028, at *5 (C.D.

22  Cal. Oct. 9, 2024) (denying enhanced damages because "plaintiff has not met its burden to show

23  that loss-of-goodwill damages are appropriate here"); *cf. K&N Eng'g, Inc.*, 2012 WL 12893796, at

24  *8–9 (declining to enhance damages because plaintiff "produced scant evidence regarding the

25

26  _____

27  Dkt. 585-22 (Ex. 21 to Motion to Strike/Exclude Malackowski) (Guardant's CEO describing the
    transition to INFINITY as an "upgrade" that "will provide a 'massive sensitivity boost' by looking
    at more than 1,000 biomarkers"); Dkt. 585-20 (Ex. 19 to Motion to Strike/Exclude Malackowski)

28  (presentation touting new version of Reveal as having greater than "5X improvement in sensitivity
    with higher specificity").

1  amount of goodwill gained from [the] false advertising").[10]  With respect to lost sales, Malackowski

2  conceded that he could not identify even *one* lost sale that resulted from Natera's conduct (Tr.

3  1368:3-13), and Guardant repeatedly admitted that its Reveal sales were as good as or better than

4  expected.  *See supra* II.A.3(b).  It is unsurprising that the jury rejected Guardant's claim of lost

5  profits.

6         Awarding enhanced damages to compensate for "lost sales" or "harm to its reputation and

7  goodwill" constitutes impermissible double recovery.  ***First***, by seeking additional damages for its

8  alleged lost profits while also demanding disgorgement of Natera's profits, Guardant is attempting

9  to subvert the principle that "recovery of both plaintiff's lost profits *and* disgorgement defendant's

10  profits" is "double recovery under the Lanham Act."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F.

11  Supp. 2d 1072, 1084 (C.D. Cal. 2012); Tr. 1309:6-25 (Malackowski) (admitting there is "overlap

12  between the sales that Guardant lost and the sales that Signatera made").  Out of the two types of

13  damages available, Guardant chose to focus on disgorgement of Natera's profits because it would

14  provide Guardant the biggest windfall; it cannot now also seek hypothetical lost sales via enhanced

15  damages.

16         ***Second***, Guardant's unsupported attorney argument that the corrective advertising award

17  needs to be enhanced because it will "take significant time to use the funds to educate oncologists

18  on the falsity of Natera's advertising" (Mot. 18), cannot be squared with what its own damages

19  expert opined—i.e., that what Guardant needed to "level the playing field" and to "correct the

20  impressions that have been left in the market" was $74.5 million (Tr. 1324:15-18, 1327:15-1328:4).

21  The jury awarded that amount (and then some), finding it "would ***fairly and reasonably***

22  ***compensate***" Guardant (Dkt. 847 at 2) (emphasis added).  Guardant cannot now contend it needs

23  more money to fully compensate it for the corrective advertising efforts it will allegedly undertake

24  in the future.[11]

---

25

26  [10]  Guardant complains that Natera now "enjoys a dominant position" (Mot. 23), but Natera has always been dominant—independent of any of the challenged statements—given that Signatera was

27  on the market nearly two years before Reveal, was the first MRD CRC test of its kind, received Medicare coverage before Reveal, is supported by more robust clinical data, and employs a tumor-informed approach gives it a performance edge.  Tr. 1332:25-1337:15 (Malackowski).

28  [11]  Again, Guardant seeks to use its decision not to undertake *any* non-comparative corrective advertising or mitigation as both a sword and a shield.

1

        3.      <u>The Jury's Willfulness Finding Cannot Be the Basis for Enhanced Damages</u>

2          Given the lack of non-speculative evidence regarding uncompensated harm, Guardant leans

3 into the jury's willfulness finding, but this argument fares no better.  Even where a jury has found

4 willfulness, that does not compel enhanced damages.  Courts routinely decline to enhance damages

5 even when a jury finds that a defendant's conduct has been willful (and even where the jury's award

6 was much lower than here).  *See, e.g.*, *Skydive Arizona*, 673 F.3d at 1114-15 (reversing enhanced

7 damages award for false advertising because despite a finding of willful conduct); *Brighton*

8 *Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 WL 160235, at *5–6 (S.D. Cal. Jan. 20, 2009)

9 (same); *Anhing Corp.*, 2016 WL 6661178, at *5 (same); *Collegenet*, 483 F. Supp. 2d at 1068 (same).

10          And courts have emphasized that, notwithstanding a willfulness finding, enhanced damages

11 are inappropriate where—as here—the actual damages awarded already compensate for the alleged

12 harm.  *See, e.g.*, *Falcon Stainless*, 2011 WL 13130487, at *5 (rejecting argument that enhanced

13 damages were warranted despite the jury's willfulness finding because that "d[id] not address

14 whether the damages awarded were fully compensatory"); *Monster Energy Co. v. Vital Pharms.,*

15 *Inc.*, 2023 WL 8168854, at *15 (C.D. Cal. Oct. 6, 2023) (declining to enhance damages because

16 they "are not necessary to 'ensure that the plaintiff receives compensation'" despite jury's

17 willfulness finding in false advertising case); *Anhing Corp.*, 2016 WL 6661178, at *5 (declining

18 enhancement "as the jury award adequately compensates Plaintiff or the damages … based on the

19 evidence presented at trial"); *see also Skydive Arizona*, 675 F.3d at 1114 ("[E]nhancement of

20 damages is only available to ensure that the plaintiff receives compensation."); *see supra* § II.B.1.

21          The cases cited by Guardant do not support a different conclusion.  Most are irrelevant, since

22 they involved treble damages awarded for the use of counterfeit marks under 15 U.S.C. § 1117***(b)***,

23 which states that a court ***shall*** award treble damages "unless [it] finds extenuating circumstances."[12]

24

25       [12]  *See Nintendo of Am., Inc. v. Dragon Pac. Int'l,* 40 F.3d 1007, 1010 (9th Cir. 1994) ("If the violation consists of 'intentionally using a mark or designation, knowing such mark or designation

26 is a counterfeit mark,' section 1117(b) instructs that the court 'shall' treble the damages."); *Century 21 Real Est. LLC*, 889 F. Supp. 2d at 1234 (awarding treble damages as punishment because "section

27 1117(b) requires the court to award treble damages" when "the infringer's use of a counterfeit mark is willful"); *A & M Recs., Inc. v. Abdallah*, 948 F. Supp. 1449, 1459 (C.D. Cal. 1996), *as amended*

28 (Nov. 21, 1996) (quoting the "extenuating circumstances" language regarding treble damages for the use of a counterfeit mark in § 1117(b)); *Nat'l Grange of the Ord. of Patrons of Husbandry v.*

The relevant provision here, § 1117(a), provides that a court "*may* enhance actual damages to a level, not to exceed three times actual damages" if actual damages are insufficient. *Century 21 Real Est. LLC v. All Pro. Realty, Inc.*, 889 F. Supp. 2d 1198, 1234 (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir. 2015) (noting the differences between the two provisions) (emphasis added).

The other cases on which Guardant relies involve either inadequate actual damages awards or case-specific circumstances under which run-of-the-mill damages calculations were inadequate. *See Binder*, 772 F. Supp. 2d at 1180-83 (granting enhancement because the court could not award corrective advertising damages despite the fact it was "likely" there were remaining misimpressions since there was no "reasonably accurate measure" with which to assess an appropriate amount); *Oxy-Health, LLC v. Performance Hyperbarics, Inc.*, 2010 WL 11523719, at *1 (C.D. Cal. Apr. 14, 2010) (enhancing damages on default judgment due in part to "apparent public safety concerns" and "the likely underestimation of Plaintiff's damages estimation"); *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1127 (W.D. Wash. 2012) (enhancing damages where defendants hacked into the company's computer systems and infringed its trademarks by fraudulently posing as a legitimate T-Mobile dealer, thus resulting in a variety of intangible harms); *Multiple Energy Techs., LLC v. Casden*, 2023 WL 11891305, at *6 (C.D. Cal. Sept. 21, 2023) (enhancing damages where defendant violated the terms of a permanent injunction from prior litigation prohibiting the precise false statements at issue in the pending litigation). None of those circumstances are present here.[13]

Nor does Guardant's perfunctory mention of deterrence support enhancement. Mot. 17. As a threshold matter, it is unrebutted that Natera ended Project SOLAR in 2021, so no deterrence is needed. Tr. 544:11-13 (Masukawa). In any event, when enhanced damages are sought with the "intent to punish," the fact that deterrence is "considered [as] a secondary … rationale" does not

---

*California Guild*, 334 F. Supp. 3d 1057, 1070 (E.D. Cal. 2018) (same); *Innovative Health Techs. v. Urmeev*, 2020 WL 4346751, at *4 (D. Ariz. July 29, 2020) (citing "extenuating circumstances" language from section 1117(b) in granting treble damages in a default judgment despite awarding damages pursuant to section 1117(a)).

[13]  Guardant also cites an out-of-circuit suggesting an enhancement may be warranted when damages calculations suffer from "imprecision" due to defendant's conduct. Mot. 17. To be clear, Guardant has never argued—nor would it have any basis to argue—that Natera withheld or destroyed any evidence probative of actual damages. Natera provided a detailed, categorized corrective advertising costs spreadsheet (TX98) and financial information beyond the relevant time period (TX421). Nor was there any assertion that Guardant had difficulty assessing damages. Tr. 1354:22-1355:6 (Malackowski).

overcome the "punitive motivation." *Skydive Arizona*, 673 F.3d at 1115.  Because Guardant's argument that Natera needs to be deterred has no connection the amount of money its own expert testified was needed for full compensation, it "sounds in punishment" and should be disregarded. *Brighton Collectibles*, 2009 WL 160235, at *5–6 (denying enhanced damages despite jury finding of willful trade dress infringement).

### 4. There Is No Basis for a 1.5x Multiplier

Moreover, Guardant's request for a 1.5 multiplier is both arbitrary and far from "modest." Mot. 19.  Not content with its arbitrary 3x multiplier, Guardant now seeks to increase its prospective corrective advertising demand to 4.5x what Natera spent on Project Solar (which would be approximately 3 to 6.25 times more than its own marketing team calculated it would need to spend).  To the contrary, granting its request would give Guardant an actual damages award of $112.5 million—

without Natera's challenged comparisons.  Dkt. 618-17 (6/14/2024 Mal Rpt.) at 24, Fig. 21-U (projecting a total of          in gross profits from 2021-2023).  The two cases Guardant references are inapposite, at the very least because as they both involved much smaller stakes.  *Deckers Outdoor Corp.*, 2024 WL 4744028, at *5 (enhancing $20,000 to $30,000 since plaintiffs sought profits for 465 units of the infringing product when there were 554 reviews on the website); *Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*, 2014 WL 12580249, at *4 (C.D. Cal. July 11, 2014) (finding circumstances "warrant[ed] a *small* increase" of $500,000 to $750,000).

### C. Prejudgment Interest Is Not Warranted

#### 1. Prejudgment Interest Is Not Available Under Section 1117(a)

As an initial matter, prejudgment interest is not available under Section 1117(a) of the Lanham Act because "[a]lthough the Lanham Act specifically provides for an award of prejudgment interest under 15 U.S.C. § 1117(b), Section 1117(a) is silent on the matter." *Y.Y.G.M. SA v. Redbubble Inc.*, 2021 WL 4553186, at *6 (C.D. Cal. Oct. 5, 2021), *aff'd in part, vacated in part, and remanded*, 75 F.4th 995 (9th Cir. 2023).  "[T]here is ample reason to believe that Congress explicitly did *not* intend for prejudgment interest to be awarded under § 1117 (a) because it provided

1    prejudgment interest as an additional remedy – along with treble damages – for the use of a

2    counterfeit mark in the very next subsection of the statute." *Neurovision*, 2014 WL 12567167, at

3    *2 ("prejudgment interest is not available under the Lanham Act for infringement that does not rise

4    to the level of counterfeiting").

5         Guardant asserts that "[c]ourts can and do award prejudgment interest under the Lanham

6    Act" (Mot. 20), but none of the cases it cites considered the statutory interpretation issue identified

7    in *Y.Y.G.M* and *Neurovision*.[14]   District courts in this Circuit regularly hold that "[r]ecovery of pre-

8    judgment interest 'is available under the Lanham Act only for counterfeiting' [under 15 U.S.C. §

9    1117(b)]."  *See, e.g., Gaboratory, Inc. v. Gaboratory Int'l, Inc.*, 2008 WL 11406056, at *15 (C.D.

10   Cal. June 10, 2008) ("Recovery of pre-judgment interest 'is available under the Lanham Act only

11   for counterfeiting'… Plaintiff does not cite 1117(b) nor allege that defendants manufactured or sold

12   'counterfeit' goods.  Accordingly, the court denies its request for an award of prejudgment

13   interest."), *set aside for other reasons*, 2008 WL 11406072 (C.D. Cal. Nov. 10, 2008).[15]   Indeed,

14   the Ninth Circuit recently extended the same basic textual reasoning to preclude prejudgment

15   interest awards under Section 1117(c) because Section 1117(c), like Section 1117(a), "makes no

16   mention of prejudgment interest" and "Congress's lack of express inclusion amounts to intentional

17   exclusion."  *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023), *cert. denied*, 144

18   S. Ct. 824 (2024).  While Guardant notes that the Ninth Circuit's *Y.Y.G.M.* decision did not reach

19   the merits of whether the same reasoning applies to Section 1117(a) (because the Court held the

20   issue was not properly in front of it) (Mot. 20), the Ninth Circuit said nothing to cast doubt on the

21

22   [14]  For example, *Tu Thien The, Inc. v. Tu Thien Telecom, Inc.* affirmed an award that did *not* include
     prejudgment interest, though Guardant wrongly represents that it did (Mot. 14).  668 F. App'x 299
23   (9th Cir. 2016).   *Neo4j Inc. v. PureThink, LLC* awarded prejudgment interest on a combined
     damages award under Lanham and DMCA.  2024 WL 3508498 (N.D. Cal. July 22, 2024).  *Skydive
24   Arizona* merely "h[e]ld that the district court did not abuse its discretion in upholding the jury's lost
     profits award," which included prejudgment interest, in light of the plaintiff's failure to preserve
25   certain arguments.  673 F.3d 1105 at 1114.  And *Cyclone USA, Inc. v. LL&C Dealer* involved
     counterfeiting claims.  2010 WL 2132378, at *2 (C.D. Cal. May 24, 2010).
26      [15]  *See also Brighton Collectibles*, 2009 WL 160235, at *5 (prejudgment interest not available
     under § 1117(a) because Lanham Act only permits such an award for counterfeiting under §
27   1117(b)); *Top Brand, LLC v. Cozy Comfort Co., LLC*, 2024 WL 3917197, at *2 (D. Ariz. July 1,
     2024) (same); *Collegenet*, 2007 WL 1667125, at *5 (same); *Georgia-Pac. Consumer Prods. LP v.
28   von Drehle Corp.*, 781 F.3d 710, 722 (4th Cir. 2015), *as amended* (Apr. 15, 2015) (same) (quoting
     unpublished Ninth Circuit opinion).

1    district court's thorough analysis and firm conclusion. *Y.Y.G.M. SA*, 75 F.4th at 1008, n.3; *Y.Y.G.M.*

2    *SA*, 2021 WL 4553186, at *6.

3                    2.    Prejudgment Interest Is Not Warranted Here

4            In any event, prejudgment interest is unwarranted under every formulation of the standard

5    and purpose for prejudgment interest awards.

6            **First**, "prejudgment interest is a ***'make whole' remedy***. That is, it is appropriate in

7    circumstances where the plaintiff will not be made whole without additional compensation in the

8    form of prejudgment interest." *Nat'l Prods.*, 734 F. Supp. 2d at 1172 (emphasis added). As such,

9    courts uniformly decline to apply prejudgment interest to damages awards that already adequately

10   compensate the plaintiff. *See, e.g., id.* (declining to award prejudgment interest because plaintiff

11   "does not meet [the make whole] standard"); *Falcon Stainless*, 2011 WL 13130487, at *6 (same);

12   *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 2009 WL 302246, at *7 (D. Or. Feb. 9, 2009) (same).

13   As discussed above, *supra* pp. 10-11, 14-16, the jury's award has already fully compensated

14   Guardant for any harm it has suffered.

15           **Second**, awarding prejudgment interest on Guardant's *prospective* corrective advertising

16   damages would be contrary to the very purpose of prejudgment interest. "Pre-judgment interest is

17   intended to cover ***the lost investment potential*** of funds to which the plaintiff was entitled." *Nelson*

18   *v. EG & G Energy Measurements Grp., Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994) (emphasis added).

19   It is intended to "compensate the plaintiff for being ***denied the opportunity to invest and earn***

20   ***interest*** on the amount" of money that it would have had in-hand but for defendant's misconduct.

21   *Richter, S.A. v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 939 F.2d 1176, 1198 (5th Cir. 1991) (emphasis

22   added).

23           Here, Guardant was not awarded lost profits, but instead seeks prejudgment interest for

24   damages awarded for money it claims it will spend in the future. *None* of Guardant's cases apply

25   prejudgment interest to an award solely for monies to spend on future expenses, and Natera is aware

26   of no such cases. On the other hand, *Illinois Tool Works Inc. v. Rust-Oleum Corp.* is exactly on

27   point. 346 F. Supp. 3d 951, 960 (S.D. Tex. 2018), *aff'd in relevant part, vacated in part, rev'd in*

28   *part*, 955 F.3d 512 (5th Cir. 2020). There, the court declined prejudgment interest under the Lanham

Act where "the jury awarded [plaintiff] monetary damages for disgorgement of [defendant]'s profits and prospective corrective advertising" because "[i]t is undisputed [plaintiff] was not awarded damages for any amount of lost profits or money [plaintiff] already spent on corrective advertising." *Id.* Here too, since Guardant "was not awarded monetary damages that [it] lost opportunity to invest, the Court [should] decline[] to award prejudgment interest in this case." *Id.* Moreover, by electing not to spend any money on corrective advertising throughout the duration of the case (including by refusing to dissolve the Joint Statement), Guardant *retained*—and certainly was not "denied"—"the opportunity to invest and earn interest on the amount" it chose not to spend. *See Richter,* 939 F.2d at 1198.

### 3. Prejudgment Interest Should Not Be Awarded for Time Prior to the Return of the Verdict

Notwithstanding the dispositive arguments above, if the Court is inclined to nonetheless consider an award of some prejudgment interest, it should reject Guardant's argument that it is entitled to it from the date the complaint was filed and consider it only from the date of the verdict. Mot. 21. When determining whether an award of prejudgment interest is appropriate under state law (*e.g.*, for Guardant's punitive damages damages), Section 3287(a) of the California Civil Code makes clear that "a person is entitled to recover interest *from the day on which the damages were 'made certain*[.]'" *Monster Energy*, 2023 WL 8168854, at *15–16, 18 (emphasis added). And at least one district court has applied the same reasoning to prejudgment interest under the Lanham Act, recognizing that "the language and reasoning" of Section 3287(a) is "instructive" to the inquiry under federal law. *Id.*; *see also Delta T*, 2024 WL 4172564, at *4, *6 (calculating prejudgment interest under Patent Act "consistent with Cal. Civ. Code § 3287" but declining to award it under Lanham Act "outside the counterfeiting context").

Applying that principle here, prejudgment interest should start at the date of the verdict because it "does not authorize pre-judgment interest as a matter of law where the amount of damages depends upon a judicial determination based upon conflicting evidence." *Highlands Ins. Co. v. Cont'l Cas. Co.*, 64 F.3d 514, 521 (9th Cir. 1995). "Damages are deemed certain or capable of being made certain … where there is essentially no dispute between the parties concerning the basis of

1  computation of damages if any are recoverable but where their dispute centers on the issue of

2  liability giving rise to damage." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015); *see*

3  *also Stonebrae L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, at *21 (N.D. Cal. 2011), *aff'd*, 521 F.

4  App'x, 592 (9th Cir. 2013).  Here, as in *Monster Energy*, the damages "were not certain until the

5  jury rendered its verdict." 2023 WL 8168854, at *15–16 (emphasis added).

6      Guardant's motion simply ignores the *Monster Energy* decision, even though one of

7  Guardant's other pending motions relies upon it.  *See* Dkt. 889 at 12-13.  The three cases Guardant

8  does cite do not support its claim that it is entitled to prejudgment interest from the date the

9  complaint was filed, as they involved different legal regimes with their own rules for prejudgment

10 interest (*e.g.*, Alaska law and federal patent law) (*In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir.

11 2007); *Telemac Corp. v. US/Intelicon*, 185 F. Supp. 1084, 1102 (N.D. Cal. 2001)), or simply

12 declined to award prejudgment interest altogether (*Nat'l Prods.*, 734 F. Supp. 2d at 1160).

13     Accordingly, to the extent any prejudgment interest is awarded, it should not run until the

14 date of the verdict (November 25, 2024).

15              4.    Any Prejudgment Interest Should Be Calculated Using Simple Interest

16     Moreover, if any prejudgment interest is awarded, it should be calculated using simple

17 interest, not compound interest.  "The determination whether to award simple or compound interest

18 is a matter largely within the discretion of the district court."  *Verinata Health, Inc. v. Ariosa*

19 *Diagnostics, Inc.*, 2018 WL 4849681, at *2 (N.D. Cal. Oct. 4, 2018) (internal citations omitted).  In

20 support of compounding, Guardant merely asserts in a footnote that "[p]rejudgment interest should

21 be calculate on a compounded basis" (Dkt. 890 at 22), but none of its cases support compounding

22 here.  Guardant cites *Termine ex rel. Termine v. William S. Hart Union High Sch. Dist.* for the simple

23 proposition that "[c]ompound prejudgment interest is the norm in federal litigation and the decision

24 whether to award it is left to the trial court's discretion[,]" 288 F. App'x 360, 363 (9th Cir. 2012),

25 but Guardant's prospective damages award is not "the norm[al]" damages award to which courts

26 apply prejudgment interest.  None of Guardant's other cited cases applied prejudgment interest to

27

28

1  an award like the one here—solely for monies to spend on future expenses.[16]  Any prejudgment

2  interest, if awarded, should be calculated using simple interest.

3              5.    Guardant's Request For Prejudgment Interest Is Premature

4          In any event, awarding prejudgment interest now would be premature.  If the Court grants

5  Natera's pending motions to vacate Guardant's damages award (see Dkt. 880 at 5-8; Dkt. 881 at 1-

6  8) or reduces it (see Dkt. 880 at 24; Dkt. 881 at 9), prejudgment interest will at the very least need

7  to be calculated based on a different damages award.  Likewise, if the Court grants Natera's request

8  for a new trial (see Dkt. 880 at 18-24), there will be no operative damages award until a new jury

9  returns a verdict.  Finally, if the jury's verdict stands, Natera intends to appeal, which will only

10  create further possibilities for modification of the damages award—not to mention the jury's liability

11  findings.  Accordingly, awarding prejudgment interest now is premature.  *See Apple Inc. v. Samsung

12  Elecs. Co.*, 67 F. Supp. 3d 1100, 1118, 1122 (N.D. Cal. 2014) (declining to calculate prejudgment

13  interest  "it will be more efficient to calculate prejudgment interest after appeal"); *Epistar Corp. v.

14  Lowes Companies, Inc.*, 2022 WL 18911616, at *24 (C.D. Cal. Oct. 4, 2022) ("considering

15  [defendant's] request for pre- and post-judgment interest is premature" because "this Order vacates

16  the jury's damages award and orders a joint report concerning a potential new trial on damages");

17  *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 3:09-cv-05235-MMC,

18  Dkt. 667 at 1 (N.D. Cal. Nov. 25, 2014) (denying motion for prejudgment interest "[i]n light of the

19  Court's order… granting a new trial on the issue of damages").

20          **D.    Postjudgment Interest Is Not Warranted**

21          Guardant's request for post-judgment interest is likewise premature.  *See* Mot. 22-23.  If the

22  jury's damages verdict and Guardant's request for disgorgement survive Natera's post-trial motions

23

---

24          [16]  *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 840 (9th Cir. 2012) (compounding
interest on past-due payments under the Longshore Act); *Termine ex. rel. Termine v. William S. Hart
25  Union High Sch. Dist.* 288 F. App'x 360, 361 (9th Cir. 2008) (compounding interest on attorneys' fees
under the Individuals with Disabilities Education Act); *Fitness Anywhere LLC v. WOSS Enterprises
26  LLC*, 2018 WL 6069511 (N.D. Cal. Nov. 20, 2018) (compounding interest on past damages for patent
and trademark infringement where "[Defendant] does not oppose [Plaintiff's] motion for pre- and post-
27  judgment interest"); *Herrera v. City of Ontario*, 2017 WL 11628154, at *2 (C.D. Cal. June 28, 2017)
(applying prejudgment interest only to the "portion of the award [for NIED and wrongful death] that
28  may be traced to past damages" as opposed to the portions attributable to future damages").

1  and the parties' anticipated appeals, the Court should address post-judgment interest in accordance

2  with 28 U.S.C. § 1961 at that time.

3  **III.     CONCLUSION**

4      For the foregoing reasons, Natera requests that the Court deny Guardant's requests for

5  disgorgement, enhanced damages, and pre- and post-judgment interest.

6

7

8  DATED:  February 14, 2025                  QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
9

10

11                                  By /s/ Derek L. Shaffer
                                       Derek L. Shaffer
12                                     Attorneys for NATERA, INC., a Delaware
                                       corporation, Defendant
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28