UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>NATERA, INC.,<br><br>    Defendants. | Case No. 21-cv-04062-EMC<br><br>**ORDER GRANTING FURTHER COMPENSATORY SANCTIONS; DEFERRING ALLOCATION AND PUNITIVE SANCTIONS**<br><br>Docket No. 884 |

## I.    INTRODUCTION

Before the Court are the Parties supplemental briefs regarding further monetary sanctions against Natera for the COBRA misconduct. *See* Docket Nos. 884-13, 887. This Court previously found "Natera's counsel's, Quinn Emanuel, deliberate misrepresentations, to this Court and Judge Kim . . . were unjustified, unacceptable and sanctionable." Order Granting in Part and Deferring in Part Guardant's Motion for Sanctions ("Prior Sanctions Order"), Docket No. 730, at 2. The Court granted evidentiary sanctions and deferred ruling on monetary sanctions. The Court ordered the parties to file supplemental briefs regarding monetary sanctions, including to "address specific individual attorney responsibility within Quinn Emanuel for the misconduct found." *Id.* at 18.

Guardant requests two actions from the Court. *First*, Guardant requests the Court award attorneys' fees and costs in the amount of **$2,985,909.63** in COBRA-misconduct related fees and costs. Reply at 12. *Second*, Guardant requests the Court award punitive sanctions, which would require a further hearing, and refer Quinn's attorneys—Andrew Bramhall, Elle Wang, Brian Cannon, and Ryan Landes, who appear to have had a hand in this conduct—to the State Bar.

Natera opposes the entirety of the request, arguing the Court has already sanctioned Natera

enough, and now, particularly in light of the jury's verdict, any further sanctions would be tantamount to a "windfall." Natera also submitted declarations from each of the attorneys involved (claiming to have new evidence), where they swear under oath, all of the representations they made to the Court were done so with a "good-faith belief" of their truthfulness after relying on Dr. Hochster. Declarations at Docket No. 888-4 through 888-10. These declarations largely continue with the same narrative Natera's counsel previously stated—they all relied on Dr. Hochster's representations. Each attorney repeatedly states "I never made any knowing misstatement to the Court or to Guardant. My representations were all based on a good faith belief that they were true and accurate at the time they were made." Natera's counsel states they were "shocked" upon the discovery that Dr. Hochster actually had emails and had received an initial draft of the COBRA study results. The Court previously found this line of argument more than foolish. *See* Prior Sanctions Order at 13-14 ("While the Court labeled Natera's counsel a 'fool' for (purportedly) believing Dr. Hochster's testimony, it turns out that counsel was more than foolish. Quinn Emanuel deliberately and knowingly misled this Court. Given the correspondence Dr. Hochster had with Quinn Emanuel, counsel knew full well there had to have been email communications between Dr. Hochster the COBRA investigators."). In view of the correspondence between Dr. Hochster and counsel, it was untruthful.

In the alternative, Natera argues that if the Court finds attorneys' fees and costs are warranted, Guardant's requests should be reduced for fees and costs that fail the "but-for" causation standard.

## II.   LEGAL STANDARD

Under the Court's inherent authority, the Court may "among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines." *Am. Unites for Kids v. Rousseau,* 985 F.3d 1075, 1088 (9th Cir. 2021). Sanctions are compensatory, as opposed to punitive, if the sanction is "calibrated to the damages caused" by the sanctionable conduct on which it is based. *Id*. at 1086. A district court acting under its inherent authority to impose compensatory sanctions must apply a "but-for" causation standard. *Id*. at 1187. The Court

2

1  should ask "but for the sanctionable misconduct, would there be any harm warranting
2  compensatory relief?" *Id.* at 1089-90. If the answer is yes, the sanction is likely compensatory,
3  whereas if the answer is no, the sanction is likely punitive and warrants a higher degree of due
4  process afforded to the sanctioned party. *Id.*

### III.  DISCUSSION

A.  Bad Faith

The Court has already held "monetary sanctions are likely appropriate due to Natera's counsel's, Quinn Emanuel, deliberate misrepresentations to this Court and to Judge Kim. Quinn Emanuel's conduct, simply put, was unjustified, unacceptable and sanctionable," Prior Sanctions Order at 2. Natera's attorney declarations do not warrant a deviation from the Court's prior finding of bad faith.

> Dr. Hochster and Quinn Emanuel on behalf of Natera, made misleading and false statements to Judge Kim, Guardant, and the undersigned, regarding Dr. Hochster's email communications with COBRA investigators and the NRG, and his access to the study results, including his receipt of the draft abstract months in advance of his supplemental declaration seeking to introduce the COBRA study. These false and misleading statements that Dr. Hochster had no such documents were made with full knowledge of the truth to the contrary. And those misleading statements and untruths were used to gain a litigation advantage – to get this Court to reopen evidence to allow the introduction of the COBRA study long after discovery had closed and on the eve of trial. Relying on these misleading and false statements, this Court was duped into believing the COBRA evidence was late breaking and warranted reopening discovery and disrupting the trial schedule.

*Id.* at 15. In short, but for the deliberate misrepresentation made to this Court, the Court would not have postponed trial and reopened discovery. The fees incurred by Guardant in connection with the reopening of discovery and preparation for an expanded trial based on the supposedly newly discovered COBRA trial results are a direct result of the sanctionable conduct. The "but for" test is satisfied as to those fees so incurred.

3

B.     Attorneys' Fees

    1.     Reasonableness

"Federal courts employ the 'lodestar' method to determine a reasonable attorney's fees award . . . ." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "After a court estimates the amount of fees and costs incurred 'because of' the misconduct, it then determines whether that amount is reasonable by looking to the number of hours reasonably expended on the case (deducting any unnecessary or duplicative expenses) multiplied by a reasonable hourly rate." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (citing *PA v. DE Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)). A "rough-but-conservative estimate" will suffice. *Id.* at 935; *see also Goodyear,* 581 U.S. at 110 (the sanctioning court "'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is)") (quoting *Fox v. Vice,* 563 U.S. 826, 838 (2011)); *In re Yagman*, 796 F.2d 1165, 1184-85 (9th Cir. 1986) (observing that sanctions awards based on attorneys' fees need not "rigidly apply the factors" that apply to loadstar fee calculations, provided that the court makes an "evaluation of the fee breakdown submitted by counsel" to assess the reasonableness of that breakdown).

"As to the number of hours reasonably expended, a fee applicant 'should make a good-faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary.'" *Fleury v. Richemont N.A., Inc.,* No. 05-cv-4525, 2008 WL 3287154, at *4 (N.D. Cal. Aug. 6, 2008) (quoting *Hensley,* 461 U.S. at 434). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

To support Guardant's request, Guardant submits declarations from its attorneys detailing the fee request, and corresponding time sheets. *See* Docket Nos. 884-2, 884-3 (Declaration of Saul Perloff in Support of Memorandum of Award of Monetary Sanctions); Docket Nos. 884-15, 884-15 (Declaration of Chase Scolnick in in Support of Memorandum of Award of Monetary Sanctions). Guardant is seeking attorneys' fees for around 2,000 hours of attorney work, and

4

1  associated costs, from February 1- October 18, 2024, that Guardant incurred as a result of Natera's
2  sanctionable misconduct relating to COBRA.  This work consisted of: written discovery, third-
3  party discovery, preparing, taking, and/or defending the depositions of numerous experts and
4  third-parties, preparing multiple new expert reports, and extensive motion practice.  Perloff Decl.
5  at 2-5.

6        The number of hours Guardant is requesting is reasonable.  As the Court has already held,
7  but-for Natera's counsel's misconduct, the trial would have proceeded in February, and fact-
8  discovery would not have been reopened. Prior Sanctions Order at 16 ("Had the Court anticipated
9  that reopening discovery would have opened a pandora's box, the consequence of which has been
10 exacerbated and multiplied by these ensuing proceedings, it would not have reopened discovery
11 and allowed the COBRA evidence to come in and delayed trial.")  Natera attempts to narrow the
12 "but-for" request for fees to argue Guardant is entitled to *only* fees and costs related to Guardant's
13 efforts to enforce its subpoena on Dr. Hochster and to secure sanctions.  Opp. at 7-10.  The Court
14 will not take such a narrow view.  But for the re-opening of discovery induced by Natera's
15 misrepresentations to the Court, Guardant's counsel would not have had to collect and review new
16 documents, take and defend new depositions, propound new discovery on Natera, or respond to
17 Natera's new requests.  But for the delay of trial and the insertion of COBRA into the case,
18 Guardant would not have incurred fees and costs related to expert discovery.

19       Guardant also supports its billing rates as "customary and within the prevailing market rate
20 for national and international law firms." *Id*. at 6-9.  Guardant's requested billing rate is within the
21 range courts have found to be reasonable. *Id*. at 9 n.1 (citing, *e.g*., *HP Inc. v. Wiseta*, No. 23-cv-
22 344, 2024 WL 1699564, at *4 (N.D. Cal. Mar. 15, 2024) (approving $1,075 per hour for a partner
23 and $625–$725 for associates); *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557, 2022 WL
24 2789496, *9 (N.D. Cal. July 15, 2022) (noting that plaintiffs' counsel's hourly rates ranged from
25 $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and
26 finding these "rates in line with prevailing rates in this district for personnel of comparable
27 experience, skill, and reputation").

28       Thus, Guardant's request for attorney's fees is **GRANTED** in the amount of

**$2,985,909.63**.  Guardant is also entitled to any further amount fees and costs[1] that are incurred in connection with the present motion.

### 2. Apportionment

The Court may award the attorneys' fees and costs to Guardant, either against Natera (the client), Natera's counsel, Quinn Emanuel the firm (under the Court's inherent authority), or against specific attorneys under Section 1927.  28 U.S.C. § 1927 ("any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" in any civil suit in federal court.)  Sanctions under § 1927 are appropriate after a finding that an "attorney recklessly or intentionally misled the court." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010); *Malhiot v. S. California Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984) (finding "[c]ounsel's . . . misrepresentations of the record and an intentional misstatement of California law . . . constitutes the requisite bad faith and intentional misconduct for which sanctions under Section 1927 are appropriate.")

Guardant defers to the Court whether, and to what extent, individual counsel should be held personally liable.  In a recent Ninth Circuit decision, *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1121 (9th Cir. 2024) the Ninth Circuit adopted the special master's findings of misconduct by both the party and three individual attorneys.  The Ninth Circuit, following the special master's recommendation, found individual attorneys "jointly and several liable with [the party]" for attorney's fees and costs up to a percentage of the total amount.  *Id.* (imposing liability of between 50% and 10% of the total amount based on respective culpability).

As the Court stated at the hearing, the Court **DEFERS** the question of apportionment and will appoint a special master to resolve in the first instance this question.

---

[1] The Court takes note of Guardant's note in Serloff Decl. at 9 n.2: "The Jay Hotel is seeking an additional $52,000 in cancellation fees. Similarly, WeWork is seeking $25,000 as a cancellation fee for temporary workspace in San Francisco booked in anticipation of a March 2024 trial. A&O Shearman has challenged both cancellation fees. We will inform the Court promptly if we are unsuccessful and Guardant is required to pay one or both of these charges."  The Court would GRANT this request if Guardant was unable to challenge the cancellations.

C.  Punitive Sanctions

The Court also has authority to sanction Natera and its counsel using non-remedial, non-compensatory measures "to vindicate the authority of the court." *Int'l Union v. Un. Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (quotations omitted) (analyzing distinction between civil and criminal sanctions).  Guardant is seeking punitive sanctions in the form of a personal fine on the corresponding attorneys, and a referral to the State Bar of California for further investigation.

Given the seriousness of Natera's counsels' violations, and as the Court stated at the hearing, the Court **DEFERS** this question and will appoint a special master to resolve in the first instance this issue.

## IV.  CONCLUSION

Plaintiff's request for attorneys' fees as related to the COBRA misconduct is **GRANTED**.  The Court will appoint a special master to resolve the issues of (1) apportionment; and (2) punitive sanctions.

Parties were ordered at the hearing on this motion to meet and confer and provide the Court with a suggestion on who should be the Special Master.  Additionally, the Parties were ordered to detail the bounds of the Court's future order appointing a Special Master as guided by Rule 53.  By **July 18, 2025,** Parties are to file a Joint Status Report with this information.

**IT IS SO ORDERED**.

Dated: July 9, 2025

_____
EDWARD M. CHEN
United States District Judge