Jennifer L. Keller (84412)
jkeller@kelleranderle.com
Chase Scolnick (227631)
cscolnick@kelleranderle.com
Akhil Sheth (294721)
asheth@kelleranderle.com
**KELLER ANDERLE SCOLNICK LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone   (949) 476-0900

Saul Perloff (157092)
saul.perloff@aoshearman.com
Kathy Grant *(pro hac vice)*
kathy.grant@aoshearman.com
Andre Hanson *(pro hac vice)*
andre.hanson@aoshearman.com
Olin "Trey" Hebert (*pro hac vice*)
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN
STERLING US LLP**
300 W. Sixth Street, 22nd Floor
Austin, Texas 78701
Telephone       (512) 647-1900

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

Christopher LaVigne *(pro hac vice)*
christopher.lavigne@aoshearman.com
**ALLEN OVERY SHEARMAN
STERLING US LLP**
599 Lexington Ave
New York, NY 10022
Telephone       (212) 848-4000

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.,<br><br>        Plaintiff and Counterclaim-<br>        Defendant,<br><br>    v.<br><br>NATERA, INC.,<br><br>        Defendant and Counterclaim-<br>        Plaintiff. | Case No.  3:21-cv-04062-EMC<br><br>**GUARDANT HEALTH, INC.'S RESPONSE TO QUINN EMANUEL PARTIES' RESPONSE AND OBJECTIONS TO SPECIAL MASTER'S SUPPLEMENTAL REPORT AND RECOMMENDATIONS** |

Even though the Quinn Emanuel Parties ("Quinn") say that they "acknowledge the Special Master's findings and are prepared to accept his recommendations," Quinn still objects to the Special Master's January 2026 and March 2026 reports on three separate grounds. (Dkt. 1023.)  None has merit.

*First*, Quinn received more than sufficient process here given the modest penalties recommended:  they engaged in numerous rounds of briefing before this Court and the Special Master to advocate for and defend their conduct; they chose to testify on their own behalf (without invoking the constitutional protections they now claim were missing), had counsel of their choice present during all questioning, and were allowed to call additional witnesses; and an independent Special Master that Quinn agreed to conducted the proceedings and prepared extensive, detailed reports describing Quinn's misconduct, which Quinn is allowed to challenge (and has done so).

*Second*, Quinn offers no justification for its position that documents produced to Guardant and testimony it provided in the presence of Guardant's counsel—both of which formed the basis of the Special Master's reports—should now be concealed from the public.  Quinn's position is perplexing given it agreed that, with narrowly tailored exceptions, the Special Master's report should be filed publicly, and the forthcoming hearing should be open to the public.  (*See* Dkt. 1025 at 1.)

*Finally*, there was nothing improper about the Special Master's proceedings as to Maroulis or Shyr.  Both Maroulis and Shyr understood the subject of the inquiry and knew their involvement in the misconduct before testifying.  The Special Master gave both Maroulis and Shyr opportunities to supplement the record before the Special Master made his final recommendations.  Neither did.

Guardant therefore requests the Court overrule Quinn's objections, adopt the findings in the Special Master's reports, and order that all documents produced to Guardant and testimony provided in Guardant's presence remain public.

## I.    Quinn's Complaints About the Special Master's Proceedings and Processes Lack Merit

### A.    Quinn Received Ample Process

First, Quinn complains about a lack of due process, and asserts it should have received "the full protection of a criminal jury trial," including the right to a disinterested prosecutor, the opportunity to present a defense, and the right to a jury trial. (Dkt. 1023 at 2.)  This argument fails

for several reasons. As the Special Master concluded, criminal due process protections only attach when the contempt is "serious." (*See* March Report at 20.) The Special Master concluded his proposed sanction is not "serious," given that Quinn generated over $2.4 *billion* in revenues last year, with profits per equity partner exceeding $8.6 million; the Special Master's proposed sanction amounts to approximately 0.004% of Quinn's revenues for 2025 alone.[1] (*See id.* at 19-20.)

The Special Master cited several authorities in support of his conclusion that the proposed penalty is not serious. (*See* March Report at 7-8, 19-20.) Quinn nevertheless argues the Special Master erred because he relied on *Coleman v. Newsom*, 131 F.4th 948 (9th Cir. 2025), which discussed both criminal and civil fines when deciding issues related to a civil contempt fine. (Dkt. 1023 at 2-3.) Quinn ignores the several other cases the Special Master cited in support of his conclusion that a court can take into consideration a contemnor's financial status when deciding whether a fine is "serious," warranting the full panoply of criminal due process protections. (*See* March Report at 7-8, 19-20 (citing cases).) One of those cited cases, *F.J. Hanshaw*, declined to decide "the precise limit for a 'serious' sanction entitling an individual to a jury trial," but nevertheless considered the resources of the specific defendant to determine the fine there was serious. *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1138 n.10 (9th Cir. 2001). Quinn does not address *F.J. Hanshaw* or the other authorities in the Special Master's March Report.

Moreover, Quinn and its attorneys have received more than sufficient process, particularly given the modest penalties recommended. Quinn and its attorneys engaged in numerous rounds of briefing before this Court and the Special Master to defend themselves and advocate their positions. Each attorney was given the opportunity to testify on their own behalf, have counsel present during all questioning, and call additional witnesses. And an independent Special Master that Quinn agreed to conducted the proceedings and prepared an extensive, detailed report describing Quinn's misconduct.[2] Quinn was allowed to object and respond to the Special Master's reports, and, indeed,

---

[1] Alternatively, the proposed sanction is 1.2% of a *single* equity partner's profit for 2025, *i.e.*, the profit a single equity partner makes for Quinn in just over 4 days.

[2] Contrary to Quinn's assertions, Guardant was not a "de facto" prosecutor. The Special Master propounded the document requests with input from the parties and conducted the vast majority of each witness's interview, with both Guardant and Quinn asking additional questions after the Special Master concluded his questioning. The Special Master was both the fact-finder and investigator; the

2

has amply availed itself of that process. (*See, e.g.*, Dkts. 1011, 1012, 1013, 1014, 1015, 1023, 1024.) Quinn received more than sufficient process here.

And, while Quinn maintains its objection that it should have been afforded the full panoply of criminal due process, Quinn and its attorneys actively participated in each step of these proceedings, without requesting a jury or prosecutor, or invoking their Fifth Amendment privilege against self incrimination. If Quinn believed it was entitled to criminal due process, it could have invoked the corresponding constitutional protections at any time, and the issue could have been litigated. Instead, Quinn objected to the proceedings, but produced documents and voluntarily provided its attorneys' testimony in a closed proceeding. Quinn's active participation at every step of the Special Master's proceeding—and Quinn's enjoying the benefits it received from participating in a closed-door proceeding, rather than a public trial—implicitly waived any complaints about a lack of sufficient process.

**B.      Rule 502(d) Is Not Intended to Shield Quinn's Misconduct From the Public**

Second, Quinn objects to the Rule 502 order, asserting there should not be "public disclosure of the[] privileged or protected materials" provided during the Special Master's proceedings, including the documents Quinn produced to Guardant and the transcripts of the witness interviews, including those portions in which Guardant participated. (Dkt. 1023 at 4.) Quinn's objection is perplexing, as it contradicts Quinn's position that the Special Master's reports (except for the redacted portions) can be public. (*See generally* Dkt. 1025.) It makes little sense for the Special Master's reports to be public, while the documents and testimony on which those reports are based remain hidden. It likewise makes no sense for the forthcoming sanctions hearing to be open to the public, but to insist that the documents and testimony which may be discussed during that hearing should remain off-limits to the public. Quinn offers no principled basis for these contradictory positions.

Quinn's position is likewise perplexing because Quinn concedes there was "a limited waiver as to certain documents containing fact work product which [the Special Master] ordered produced to Guardant." (Dkt. 1023 at 3; *see also* Dkt. 1025 at 1 ("The Special Master ordered that a limited

---

role of the parties' counsel was more appropriately considered an aid to the Special Master's investigative efforts.

3

subset of Quinn Emanuel's internal documents and Quinn Emanuel attorneys' testimony be provided to Guardant pursuant to a narrowly tailored waiver of work product protection.").) Quinn then produced those documents to Guardant. Despite the waiver and Quinn's subsequent production based on that waiver, Quinn urges the Court to restore the work-product protections for the documents and testimony. Quinn contends doing so would serve the purpose of Rule 502(d). This is incorrect.

Rule 502(d) states that a court "may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding." Under Rule 502(d), therefore, privilege is not automatically waived by a disclosure. Here, however, as Quinn conceded, there was "a limited waiver as to certain documents[.]" Thus, as there was a waiver, Rule 502(d) does not apply.

Moreover, Quinn contends—without citation to any authority—that the purpose of Rule 502(d) is "to allow parties to produce privileged materials for limited purposes . . . without effecting a broader waiver that would extend to other parties or proceedings." (Dkt. 1023 at 3-4.) This is incorrect. Rule 502(d) was "designed to enable a court to enter an order, whether on motion of one or more parties or on its own motion, that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery." Fed. R. Evid. 502, Addendum to Advisory Committee Notes, Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence, Subdivision (d)—Court orders. In other words, the purpose of Rule 502(d) is to codify "claw-back agreements" that allow parties to produce documents expeditiously during litigation while preserving their rights to "claw back" inadvertently produced privileged documents, without the fear of an opponent using the production as a basis for claiming a privilege waiver. Nothing in Rule 502 allows a party to produce a document for which there has been a waiver determination and then seek to restore the privileged status of that document during a different phase of litigation.

In short, Quinn offers no basis to conclude that the documents over which there was an actual waiver and production to Guardant should be confidential, or that the Quinn attorneys' testimony

4

provided to the Special Master while Guardant was present should be confidential.[3] Quinn's position does not comport with the text of Rule 502(d). And it does not comport with the purpose of Rule 502(d). Quinn's request to conceal wholesale the evidentiary basis for the Special Master's reports and this Court's forthcoming decision should be rejected.

### C. The Order of Operations for the Special Master's Recommendations Regarding Maroulis and Shyr Was Proper

Finally, Quinn objects to "the order of operations, in which Maroulis and Shyr testified and findings were made against them before notice was provided," because that purportedly deprived Maroulis and Shyr of due process. (Dkt. 1023 at 4.) Here, however, Maroulis and Shyr were interviewed, and the Special Master included a discussion about their roles in Quinn's misconduct in the Special Master's January Report. Once this Court issued its OSC permitting the Special Master to make recommendations as to Maroulis and Shyr, (Dkt. 1010), the Special Master offered them both the opportunity to be heard and call additional witnesses. Neither did. Indeed, the Special Master already addressed and rejected the argument Quinn advances here, stating the argument "finds no basis in Ninth Circuit law." (March Report at 9.) Quinn offers no rebuttal or response to the Special Master's previous rejection of its due process argument.

## II.    Conclusion

For the foregoing reasons, the Court should overrule Quinn's objections in their entirety.

Dated: March 26, 2026

**KELLER ANDERLE SCOLNICK LLP**
CHASE SCOLNICK

By:    */s/ Chase Scolnick*
        Chase Scolnick

Attorney for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

---

[3] As set forth in Guardant's Response to Quinn's "Brief in Response to ECF No. 1019 and Administrative Motion to Seal," Guardant does not object to the Court's sealing the redacted portions of the Special Master's reports, or the privileged materials on which those portions are based.

5

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5-5, I certify that on March 26, 2026, this document, filed with the Court through the CM/ECF system, will be sent electronically to the registered participants at their e-mail addresses as identified in the Notice of Electronic Filing (NEF).  Non-CM/ECF participants will be served via First-Class Mail.

I certify under penalty of perjury that the foregoing is true and correct.  Executed this 26th day of March 2026.

/s/ Chase Scolnick
Chase Scolnick