**Jennifer L. Keller (84412)**
jkeller@kelleranderle.com
**Chase Scolnick (227631)**
cscolnick@kelleranderle.com
**Gregory Sergi** (257415)
gsergi@kelleranderle.com
**KELLER ANDERLE SCOLNICK LLP**
18300 Von Karman Ave., Suite 930
Irvine, CA 92612
Telephone (949) 476-0900

**Saul Perloff (157092)**
saul.perloff@aoshearman.com
**Katharyn Grant** *(pro hac vice)*
kathy.grant@aoshearman.com
**Andre Hanson** *(pro hac vice)*
andre.hanson@aoshearman.com
**Olin "Trey" Hebert** *(pro hac vice)*
trey.hebert@aoshearman.com
**ALLEN OVERY SHEARMAN STERLING
US LLP**
300 W. Sixth Street, 22nd Floor
Austin, TX 78701
Telephone (512) 647-1900

**Christopher LaVigne** *(pro hac vice)*
christopher.lavigne@sherman.com
**ALLEN OVERY SHEARMAN STERLING
US LLP**
599 Lexington Ave
New York, NY 10022
Telephone (212) 848-4000

Attorneys for Plaintiff/Counterclaim-Defendant
GUARDANT HEALTH, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| GUARDANT HEALTH, INC.<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>NATERA, INC.<br><br>Defendant and Counterclaim-Plaintiff. | Case No. 3:21-cv-04062-EMC<br><br>**GUARDANT HEALTH, INC.'S MEMORANDUM IN SUPPORT OF UPDATED AWARD OF MONETARY SANCTIONS RELATED TO NATERA AND ITS COUNSEL'S MISCONDUCT CONCERNING COBRA (DKT. 730, 945, 947)** |

## I.    INTRODUCTION

The record leaves no room for doubt: Natera and its counsel, Quinn Emanuel, deliberately misled Judge Kim, this Court, and Guardant for the purpose of gaining an unwarranted and unfair litigation advantage.  Guardant has been paying for that misconduct ever since.

Natera and Quinn Emanuel knew that Natera's expert had emails and early access to the COBRA study but concealed that from the Court to convince the Court to admit evidence of the study.  When the Rutgers production made clear that Dr. Hochster received "early access" to the draft COBRA study—conclusively establishing to Natera and Quinn Emanuel's entire team that their earlier representations to the Court and Judge Kim were false—Quinn Emanuel refused to come clean or correct their earlier misrepresentations.  Instead it doubled down, telling the Court that Dr. Hochster "could not (and did not) disclose [the draft abstract] to anyone, including Natera." Dkt. 582 at 19:15-17.  What Quinn Emanuel did not disclose was that Dr. Hochster had already provided its attorneys with a summary of that abstract months earlier, on September 15, 2023. Natera_SM_0014475, 144716, 14862, 21534.

The Court called Natera and Quinn Emanuel's conduct exactly what it was: "unjustified, unacceptable and sanctionable." Dkt. 730.  The Court imposed evidentiary sanctions before trial and, after trial and further briefing, awarded nearly $3 million in monetary sanctions to compensate Guardant for the fees and costs incurred to that point.  The Court also appointed a Special Master to further investigate and recommend allocation of the sanctions award among the wrongdoers and whether punitive and disciplinary measures were appropriate.

But the harm and prejudice suffered by Guardant from Quinn Emanuel's misconduct did not end there.  Guardant has since incurred substantial fees and costs during the Special Master's proceedings, which involved document productions, many hearings, witness outlines and examinations, and numerous briefs.  As contemplated by the Court and invited by the Special Master, Guardant played an important role in the Special Master's proceedings.  The Court recognized in its prior orders on Guardant's sanctions motion that Guardant was entitled to further fees and costs it incurred in connection with the motion.  And those fees necessarily include the expenses Guardant incurred drafting during the Special Master and subsequent proceedings, none

of which would have been incurred "but for" Quinn Emanuel's misrepresentations.

The Court's July 2025 order already found Guardant was entitled to compensatory sanctions for the amount of fees it had incurred to that point, plus "any further amount" of "fees and costs that are incurred in connection with the present motion." Dkt. 945 at 5-6. Now that the Special Master's proceedings have concluded and the Court considers the Special Master's reports, Guardant's sanctions motion is nearing final resolution. But that resolution can and must ensure that Guardant is compensated for the fees and expenses it incurred due to the established wrongdoing. The Court therefore should update the amount of monetary sanctions awarded by adding $1,262,059.36 to the previously determined amount. That amount encompasses the fees and costs Guardant incurred litigating Quinn Emanuel's misconduct before the Court and the Special Master that were not addressed in the Court's prior order.

Guardant therefore respectfully requests the Court issue an order awarding Guardant a total of **$4,247,968.99** (*i.e.*, $2,985,909.63 plus $1,262,059.36) in compensatory sanctions against Quinn Emanuel and its attorneys, under the allocation structure determined by the Court after considering the Special Master's reports.

## II.    ARGUMENT

### A.    The Court Already Found Natera And Quinn Emanuel Acted In Bad Faith And That Guardant Should Be Compensated For the Fees And Costs It Incurred As A Result Of That Misconduct

As demonstrated by the Court's previous orders, this Court has discretion to impose a monetary sanction against Natera and its counsel at Quinn Emanuel for their wrongdoing. Sanctions are appropriate where a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). "If a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (citation omitted). In assessing attorneys' fees as a compensatory sanction, this Court applies a "'but-for' causation standard." *Am. Unites for Kids*, 985 F.3d at 1089. "In other words, but for the sanctionable misconduct, would there be any harm warranting compensatory relief?" *Id.* at 1089-90; *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2013)

(because "[c]ompensation for a wrong . . . tracks the loss resulting from the wrong," courts may shift "those attorney's fees incurred because of the misconduct at issue")

Here, after extensive briefing and numerous hearings, the Court issued an order requiring Natera and its counsel at Quinn Emmanuel to compensate Guardant for the fees and costs it was forced to incur due to their COBRA-related misconduct.  *See* Dkt. 730, 945.  Specifically, following trial and additional briefing, (*see, e.g.*, Dkt. 884-13, 916), the Court on July 9, 2025, issued an Order Granting Further Compensatory Sanctions; Deferring Allocation and Punitive Sanctions ("Post-Trial Sanction Order").  Dkt. 945.  The Court reiterated its finding that Natera and Quinn Emmanuel acted in bad faith, stating:   "In short, but for the deliberate misrepresentations made to this Court, the Court would not have postponed trial and reopened discovery."  Dkt. 945 at 3.  The Court also found that "the number of hours Guardant is requesting is reasonable" and that "Guardant's requested billing rate is within the range courts have found to be reasonable."  *Id* at 5.

That motion, however, was not fully resolved.  The Court awarded Guardant the fees and costs it had incurred to date tied to Quinn Emanuel's misconduct.  *Id*. at 5-6.  But the Court also found "***Guardant is also entitled to any further amount [of] fees and costs that are incurred in connection with the present motion***."  *Id*. at 6 (emphasis added).  The Court deferred ruling on an appropriate allocation or potential punitive or disciplinary sanctions until after Special Master's proceedings.  *Id*. at 7.

On July 23, 2025, the Court issued an Order Appointing the Special Master.  Dkt. 947.  The order appointed Ismail Ramsey to act as a Special Master to investigate, receive and consider documents, hold an evidentiary hearing, and issue a report and recommendation to the Court regarding (1) "the appropriate apportionment among Natera, Quinn Emanuel, and the individual Quinn Emanuel attorneys of the compensation sanctions imposed by the [Post-Trial Sanctions Order]," and (2) "any appropriate punitive sanctions or disciplinary measures."  *Id*. at 2.

The Order Appointing Special Master also stated: "At the discretion of the Special Master, Guardant's counsel of record may be permitted to participate in the proceedings before the Special Master, including by calling and questioning relevant witnesses as deemed appropriate by the

GUARDANT'S MEMORANDUM IN SUPPORT OF UPDATED AWARD OF MONETARY SANCTIONS
RELATED TO NATERA AND ITS COUNSEL'S MISCONDUCT CONCERNING COBRA

Special Master." *Id*. at 3.  The order further provided that "all parties will be afforded an opportunity to be heard" after the issuance of the Special Master's report.  *Id*. at 4.

Therefore, while the Court's Post-Trial Sanctions Order set the amount of monetary sanctions incurred by Guardant to that point, the Court also recognized and ordered that: (1) Guardant was entitled to further fees and costs associated with its sanctions motion; and (2) that the motion would not be fully resolved until completion of the Special Master proceedings in which Guardant would participate.

**B.**     **Guardant Incurred Fees And Costs Litigating Quinn Emanuel's Misconduct Before The Court And The Special Master That Were Not Addressed In The Court's Prior Order.**

As the Court repeatedly found, Quinn Emanuel's deliberate misrepresentations directly led to Guardant incurring fees and costs it would not have incurred ***but for*** those misrepresentations. The Court's award did not address the full scope of monetary harm suffered by Guardant.  That is because Guardant did not request all the fees that were necessary to litigate Quinn Emanuel's misconduct before the Court issued its award, including the time spent drafting Guardant's Memorandum in Support of its Request for Monetary Sanctions.  *See* Declaration of Saul Perloff, at 2; Dkt. 884.  Further, the monetary harm to Guardant did not end when the Post-Trial Sanctions Order issued.  Instead, the harm has continued as the Court, Special Master, and parties worked to investigate, unwind, and remedy Quinn Emanuel's misrepresentations.  As the Court recognized, Guardant would participate and assist in the Special Master proceedings, including examining witnesses to the extent desired or deemed beneficial by the Special Master.  Dkt. 947.  And the Court already determined in its Post-Trial Sanctions Award that Guardant was entitled to the "further amount" of fees and costs it incurred on its sanctions motion.  Dkt. 945.  Those fees and costs necessarily extend to and include those incurred during the Special Master's proceedings and additional post-report proceedings before the Court.

Guardant and its counsel played a significant role in the Special Master's proceedings. Shortly after being appointed, the Special Master confirmed at the initial conference he viewed Guardant as playing an important role in the proceedings.  The Special Master stated he anticipated Guardant's counsel being involved, especially given they "know the history of this and the facts"

GUARDANT'S MEMORANDUM IN SUPPORT OF UPDATED AWARD OF MONETARY SANCTIONS RELATED TO NATERA AND ITS COUNSEL'S MISCONDUCT CONCERNING COBRA

and "it will help [him] understand what's going on so that, you know, [he] hear[s] things from multiple perspectives."  Scolnick Decl., Ex. C (8/5/25 RT) at 22:15-23:16.  In anticipation of witness interviews, the Special Master invited Guardant to propose additional written document requests or produce additional documents it believed were relevant to the issues to be decided.  *Id.*, Ex. D (8/12/25 Scheduling Notice).  Guardant and the Natera Parties submitted voluminous written questions for the Special Master citing to the expansive trial record.

Guardant's attorneys also participated in the interviews of ten witnesses, including by questioning them over seven days of hearings.  The importance of Guardant's role was underscored by the Natera Parties' closing brief in the Special Master proceeding, in which they continued to assert that none of them acted in bad faith despite the Court's explicit finding to the contrary.  (*Compare* Natera Parties' 12/15/25 Closing Brief at 1 (asserting the Special Master proceeding showed "that neither Natera nor any Quinn attorney acted in bad faith" and that "the firm's attorneys did not engage in deliberate wrongdoing") *with* Dkt. 730 at 13 ("But the newly disclosed email shows that Quinn Emanuel did not simply fail to 'connect the dots.'  The dots were patently connected, and Quinn Emanuel knowingly hid that connection from Guardant and from this Court.").)  In sum, given the complexity and history of this case and the COBRA misconduct, Guardant's participation helped ensure the Special Master proceedings progressed efficiently and that the Special Master received complete, truthful, and accurate information.

Guardant should not now be forced to bear the financial expense of these fees and costs incurred in proceedings that resulted directly from Quinn Emanuel's wrongdoing.  Indeed, "but for" Quinn Emanuel's established wrongdoing and sanctionable conduct, Guardant would not have incurred such expenses.  The Court already recognized that Guardant may incur additional fees and costs related to its Sanctions Motion.  The time spent drafting Guardant's request for monetary sanctions and during the Special Master proceedings were necessary to determine the allocation and punitive measures necessary to finally resolve the Sanctions Motion.

The fees and costs related to the Sanctions Motion that were not addressed by the Court's prior order are detailed in the supporting declarations of Chase Scolnick and Saul Perloff and can be summarized as follows:

Litigating Quinn Emanuel's Misconduct Before this Court: At the time it filed its request for monetary sanctions, Guardant only sought the fees paid to A&O Shearman through October 18, 2024. *See* Declaration of Saul Perloff, at 2. Since that time, Guardant's counsel litigated evidentiary issues relating to Cobra and raised and litigated Guardant's request for monetary sanctions before this Court. Dkt. 884. This work was made necessary by Quinn Emanuel's misconduct relating to the Cobra study.

Raising Participation in Special Master Conferences: Guardant's attorneys participated in numerous conferences with the Special Master, discussing foundational and evidentiary issues before the witness interviews. They also attended the final arguments in December 2025 and February 2026.

Preparing For and Participation in Witness Interviews: The Special Master requested that both parties submit proposed written questions for him to consider before the witness interviews. Guardant's counsel scoured the record and the discovery the Natera Parties produced in the Special Master proceedings and submitted hundreds of pages of proposed questions. Those questions were carefully drafted and meticulously cited to the source documents.

After preparing those extensive materials, Guardant's attorneys traveled to New York and San Francisco to attend in-person interviews of ten essential witnesses. Guardant's attorneys assisted the Special Master's factfinding by asking follow-up questions of each witness. Guardant's attorneys' familiarity with the record and Quinn Emanuel's earlier misrepresentations made them essential to the process and ensured the Special Master received accurate information and testimony.

Preparing Closing Brief And Other Submissions To Special Master: At the Special Master's request, and to assist him in his factfinding role, Guardant submitted numerous briefs in connection with the Special Master proceedings. Those briefs addressed discovery disputes, issues of waiver, and closing briefs summarizing the extensive record before this Court and the Special Master.

**C.    The Additional Amount of Fees And Costs Incurred By Guardant During the Special Master And Post-Report Proceedings Is Reasonable**

The total amount of fees and costs incurred by Guardant litigating Quinn Emanuel's

GUARDANT'S MEMORANDUM IN SUPPORT OF UPDATED AWARD OF MONETARY SANCTIONS RELATED TO NATERA AND ITS COUNSEL'S MISCONDUCT CONCERNING COBRA

misconduct before the Court and the Special Master that were not addressed in the Court's prior order is $1,262,059.36. Together with the monetary sanctions identified and ordered by the Court in the Post-Trial Sanctions Order, the Court should order Quinn Emanuel and its attorneys (in the allocation determined by the Special Master) to compensate Guardant a total of $4,247,968.99 in monetary sanctions. *See* Scolnick Decl., Exs. A-B; Dkt. 945. Detailed descriptions of the services for the fees and costs incurred by Guardant related to the Sanctions Motion since the Post-Trial Sanctions Order are included in the billing invoices attached as exhibits to the declaration of Chase Scolnick and Saul Perloff.

Both the number of hours incurred by Guardant's counsel and the hourly rate of such fees are reasonable. "Federal courts employ the 'lodestar' method to determine a reasonable attorney's fees award . . . ." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "After a court estimates the amount of fees and costs incurred 'because of' the misconduct, it then determines whether that amount is reasonable by looking to the number of hours reasonably expended on the case (deducting any unnecessary or duplicative expenses) multiplied by a reasonable hourly rate." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (citing *PA v. DE Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)). A "rough-but-conservative estimate" will suffice. *Id.* at 935; *see also Goodyear,* 581 U.S. at 110 (the sanctioning court "'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is)") (quoting *Fox v. Vice,* 563 U.S. 826, 838 (2011)).

Here, in the Post-Trial Sanctions Order, the Court already found "Guardant's requested billing rate is within the range courts have found to be reasonable." Dkt. 945 at 5. The hourly rates for the fees not addressed by that order are consistent with those previously sought and are reasonable for the same reasons.

Likewise, the number of hours incurred by Guardant's counsel to litigate Quinn Emanuel's misconduct before this Court and in the Special Master proceedings is reasonable. Again, the Court already found the "number of hours Guardant is requesting is reasonable." Dkt. 945 at 5. The number of hours spent by Guardant's counsel participating in the Special Master's proceedings, including preparing for hearings, submitting proposed questions for the witnesses,

GUARDANT'S MEMORANDUM IN SUPPORT OF UPDATED AWARD OF MONETARY SANCTIONS RELATED TO NATERA AND ITS COUNSEL'S MISCONDUCT CONCERNING COBRA

examining witnesses, and submitting briefs, is likewise reasonable.  Scolnick Decl., Ex. A.  The Scolnick and Perloff Declarations and exhibits attached to them set forth the time spent per timekeeper, the rates charged for their time, a description of each time-keeper's background and experience, and narrative descriptions of work performed.  *Id*.

## VI.    CONCLUSION

The harm and prejudice to Guardant resulting from Quinn Emanuel's misrepresentations did not end with the Court's prior orders and has continued. Guardant's Sanctions Motion could not be fully resolved until the Special Master proceedings concluded, and Guardant incurred fees and costs in those proceedings caused solely by Quinn Emanuel's misconduct. Guardant further requests its fees and costs incurred in bringing the underlying misconduct to the Court's attention that were not included in its initial request or addressed in the Court's prior order.

The Court therefore should update the amount of monetary sanctions awarded against Quinn Emanuel by adding $1,262,059.36 to the previously determined amount of monetary sanctions.  Guardant therefore respectfully requests the Court issue an order awarding Guardant a total of **$4,247,968.99** (*i.e.*, $2,985,909.63 plus $1,262,059.36) in monetary sanctions against Quinn Emanuel and its attorneys, under the allocation structure determined by the Court after consideration of the special master's report and recommendation.

Respectfully submitted,

KELLER ANDERLE SCOLNICK LLP

Dated: April 3, 2026

By:  */s/ Chase Scolnick*
     Chase Scolnick

Attorney for Plaintiff
GUARDANT HEALTH, INC.

GUARDANT'S MEMORANDUM IN SUPPORT OF UPDATED AWARD OF MONETARY SANCTIONS
RELATED TO NATERA AND ITS COUNSEL'S MISCONDUCT CONCERNING COBRA